**EPPSTEINER & FIORICA ATTORNEYS, LLP**
Stuart M. Eppsteiner (SBN 098973)
sme@eppsteiner.com
Andrew J. Kubik (SBN 246902)
ajk@eppsteiner.com
12555 High Bluff Dr., Ste. 155
San Diego, CA 92130
Tel. (858) 350-1500
Fax (858) 350-1501

Interim Lead Counsel for Plaintiffs

Additional counsel listed on signature page

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

SHARON COBB, BEVERLY GIBSON, TRISH ISABELLA, DIANA TAIT, and NANCY WENTWORTH, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

BSH HOME APPLIANCES CORPORATION, a Delaware Corporation,

Defendant.

Case No. SACV10-711 DOC (ANx)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT**

*Assigned to:*
District Judge: David O. Carter
Discovery Magistrate Judge: Arthur Nakazato

Hearing Date: August 1, 2011
Time: 8:30 A.M.
Courtroom: 9D

# TABLE OF CONTENTS


Page

I. INTRODUCTION ....... 1

II. PROCEDURAL BACKGROUND ....... 1

III. STANDARD OF REVIEW ....... 2

ARGUMENT ....... 3

IV. THE SCAC SATISFIES RULE 9(b) ....... 3

A. Plaintiffs Have Adequately Pled Reliance ....... 3

B. Plaintiffs Have Adequately Pled a Duty to Disclose ....... 5

C. Bosch Violated the "Unfair" Prong of the UCL ....... 7

V. PLAINTIFFS' PURCHASES ARE PROTECTED BY THE CLRA ....... 9

VI. EXPRESS WARRANTY BY AFFIRMATION OF FACT ....... 10

A. Plaintiffs Have Sufficiently Alleged Affirmations of Fact Creating Express Warranties ....... 11

B. Basis of the Bargain is Presumed. BSH has the Burden of Disproving Basis of the Bargain ....... 13

C. Causation is Adequately Pled ....... 13

D. Either Privity is Not Required, or an Exception Applies ....... 14

E. Either BSH Had Notice, or Notice is Not Required ....... 15

F. BSH's "Disclaimer" Is Unenforceable ....... 16

G. The Song-Beverly Act Provides for a Cause of Action for Express Warranty Created by Affirmation of Fact ....... 17

VII. IMPLIED WARRANTY OF MERCHANTABILITY ....... 17

A. Privity Is Not Required under Song-Beverly and the "Thing-of-Danger Exception" Applies to the New York Warranty Claim ....... 17

B. Plaintiffs Sufficiently Allege Breach of Song-Beverly Implied Warranty ....... 19

C. The Washing Machines Do Not Conform to Promises or Affirmations of Fact Made on the Washers or Labels ....... 21

D. Plaintiffs' Song-Beverly Implied Warranty of Merchantability Is Timely ....... 21

E. BSH Did Not Disclaim Plaintiffs' Implied Warranty ....... 22

VIII. THE ICFDTPA CLAIM IS SUFFICIENTLY PLED ....................22

IX. THE MCPA CLAIM IS SUFFICIENTLY PLED ....................23

X. THE § 359 AND § 350 CLAIMS ARE SUFFICIENTLY PLED ....................24

XI. CONCLUSION ....................25

# TABLE OF AUTHORITIES

**Cases** **Page**

Ackerman v. Coca-Cola Co., 2010 WL 2925955, * 17 (E.D.N.Y. July 21, 2010) ………………25

Actimmune Mktg Litig., C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6. 2009)……….3

American Suzuki Motor Corp v. Superior Court, 44 Cal.App.4th 1291, 1298 (1995)……….......20

Anthony v. Kelsey-Hayes Co. (1972) 25 Cal.App. 442……………………….………………..20

Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005)……….……….12, 18

Apple & AT & TM Antitrust Litig., 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008)……….……..3

Ashcroft v. Iqbal, 556 U.S.__, 129 S.Ct. 1937 (2009)……………………………………………2

Astiana v. Ben & Jerry's Homemade, Inc., C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011……………….………………………………...2

Baba v. Hewlett-Packard Co., 2011 WL 317650 (N.D. Cal. 2011)………………………….......20

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)………………………...2

Boud v. SDNCO, Inc., 54 P.3d 1131, 1135 (Utah 2002)………………………………………12

Bros. v. Hewlett-Packard Co., C-06-02254RMW, 2007 WL 485979 (N.D. Cal. Feb. 12, 2007)……………………………………………11

Bruce v. Harley-Davidson, Inc., CV 09-6588 CAS 2010 WL 3521775 (C.D. Cal. Jan. 15, 2010)…………………………………………18

Burr v. Sherwin Williams Co., 42 Cal. 2d 682, 696 (1954)……………………………14, 18, 20

Carlson v. General Motors Corp. 883 F2d 287, 297 (4th Cir. 1989)……………………………...20

Cartwright v. Viking Indus., Inc., 249 F.R.D. 351, 357 (E.D. Cal. 2008)……………………...9, 10

CBS Inc. v. Ziff-DavisPub. Co., 75 N.Y.2d 496,50304(1990)………………………………13

Century 21-RE/MAX Real Estate Adver. Claims Litig., 882 F. Supp. 915, 926 (C.D. Cal. 1994)…………………………………………13

Charles Lomori & Son v. Globe Laboratories, 35 Cal. App. 2d 248, 256 (Cal. Ct. App. 1939)…………………………………...16

Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1024 (9th Cir. 2008)……………………...19

Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, _ (1st Cir. 2000)....................12

Comerica Bank v. McDonald, 2006 U.S. Dist LEXIS 86306 at *8 (N.D. Cal. 2006)....................6

Connick v. Suzuki Motor Co., 174 Ill.2d 482 (Ill. 1996)....................23

De Bouse v. Bayer, 235 Ill.2d 544, 557 (Ill. 2009)....................22

Dickerson v. Electrolux Home Products, Inc., CV 10-5163-R, 2011 WL 831916 *2 (C.D. Cal. Feb. 3, 2011)....................18

Doe v. Miles Laboratories, Inc., Cutter Laboratories Div., 675 F. Supp. 1466, 1469 (D. Md. 1987) aff'd, 927 F.2d 187 (4th Cir. 1991)....................16

Dorman v. International Harvester Co., 46 Cal. App. 3d 11....................16, 17

Edmunson v. Procter & Gamble Co., 10-CV-2256-IEG NLS, 2011 WL 1897625 at * (S.D. Cal. May 17, 2011)....................12

Eminence Capital, LLC v. Aspeon, Inc., 317 F.3d 1048, 1052 ((th Cir. 2003)....................25

Faigman v. AT&T Mobility LLC, 2007 U.S. Dist. LEXIS 52192, at *99 (N.D. Cal. July 17, 2007)....................8

Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007)....................6

Ferrero Litig., 2011 U.S. Dist. LEXIS 70629, *20-*21 (S.D. Cal. June 30, 2011)....................8

Fundin v. Chicago Pneumatic Too Co., 152 Cal. App. 3d 951, 957 (1984)....................11

Gonzalez v. Drew Indus. Inc., CV 06-08233 DDP, 2007 WL 7287245 at *11 (C.D. Cal. May 7, 2007)....................18

Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57, 61 (1963)....................15

Grisham v. Philip Morris, Inc., 670 F. Supp. 2d 1014, 1044 (C.D. Cal. 2009)....................5

Gusse v. Damon Corp., 470 F. Supp. 2d 1110, 1116 fn.9 (C.D. Cal. 2007)....................18

Hartless v. Clorox Co., CIV. 06CV2705JAHCAB, 2007 WL 3245260 *7 (S.D. Cal. Nov. 2, 2007)....................9, 19

Hauter v. Zogarts, 14 Cal. 3d 104, 114 fn. (1975)....................14, 20

Hubbard v. General Motors Corp., 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996)....................18

Hyde v. General Motors Corp., 1981 WL 11468, *2 (N.Y. Sup. Oct. 16, 1981)....................16

Imperia v. Marvin Windows of New York, Inc., 297 A.D.2d 621, 624 (N.Y. App. Div. 2002)....................16

Interco Inc. v. Randustrial Corp., 533 S.W.2d 257, 260 (1976)....................13

Isip v. Mercedes-Benz USA, LLC, 155 Cal. App. 4th 19, 22, 27 (Cal. Ct. App. 2007).................... 20

ISP Technologies, Inc. v. Capricorn Pharma, Inc., 2011 WL 2600674, *5 (D.Md. June 28, 2011)....................24

Jesmer v. Retail Magic, Inc., 55 A.D.3d 171, 173 (N.Y. App. Div. 2008)....................14

Johns v. Bayer Corp., 2010 U.S. Dist. LEXIS 10926, at *14 (S.D. Cal. Feb. 9, 2010)....................8

Keiholtz v. Superior Fireplace Co., 2009 U.S. Dist. LEXIS 30732 (N.D. Cal. 2009)....................8, 9

Keith v. Buchanan, 173 Cal. App. 3d 13, 20 (1985)....................10

Knievel v. ESPN, 393 F.3d 1068 (9th Cir. 2005)....................2

Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322 (2011) ....................4

Lazar v. Trans Union LLC, 195 F.R.D. 665, 668 (C.D. Cal. 2000)....................2

Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007)....................8

Marino v. Maytag Atl. Co., 141 N.Y.S. 2d 432, 437 (N.Y. Mun. Ct. 1955)....................21

Mendel v. Henry Phipps Plaza West, Inc., 6 N. Y. 3d 783, 786 (2006)....................19

Mendelson v. Gen. Motors Corp., 105 Misc. 2d 346, 351 (N.Y. Sup. Ct. 1980) aff'd, 81 A.D.2d 831 (N.Y. App. Div. 1981)....................15

Mexia v. Rinker Boat Co., Inc., 174 Cal. App. 4th 1297, 1303 (Cal. Ct. App. 2009)....................20

Mintz v. American Tax Relief, LLC, 837 N.Y.S.2d 841, 846 (Sup. Ct., NY Co. 2007)....................24

Morris v. BMW of North America, LLC, 2007 WL 3342612 (N.D. Cal. 2007)....................20

Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009)....................2

Mountz v. Global Vision Prod., 3 Misc.2d 171, 176, 770 N.Y.S.2d 603 (Sup. Ct., N.Y. Co. 2003)....................25

MTBE Prod. Liab. Litig., 175 F. Supp.2d 593, 631 (S.D.N.Y. 2001)....................24

Murphy v. Mallard Coach Co., 179 A.D.2d 187, 193 (N.Y. App. Div. 1992)........................13

Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008)..................12

Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn., 205 Cal. App. 3d 1415, 1425 (1988)........................................................5

NVIDIA GPU Litig., C 08-04312 JW, 2009 WL 4020104 at *4 (N.O. Cal. Nov. 19, 2009)........................18

Osborne v. Subaru of America, Inc., 198 Cal.App.3d 646, 656 n. 6, (1988)...........................19

Panda Capital Corp. v. Kopo Int'l, Inc., 242 A.D.2d 690, 692 (N.Y. App. Div. 1997)..............15

Parzek v. New England Log Homes, Inc., 92 A.D.2d 954 (1983)....................................12

Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005)......................................24

Purvis v. Consol. Energy Products Co., 674 F.2d 217, 221 (4th Cir. 1982)..........................16

Reed v. Bunger, 255 Iowa 322, 332 (1963)..........................................................12

Rite Aid Corp. v. Levy-Gray, 391 Md. 608, 625 (2006)............................................13, 16

Rodrigues v. Campbell Industries, 87 Cal.App.3d 494 ...............................................20

Rubio v. Capital One Bank, 613 F.3d 1195, 1204-05 (9th Cir. 2010)...................................8

Rush v. Whirlpool Corp., 07-2022, 2008 WL 509562 *1 (W.D. Ark. Feb. 22, 2008)...............15

Salkeld v. V.R. Business Brokers, 192 Ill.App.3d 663, 675-676 (1989)..............................12

Schauer v. Mandarin Gems of Cal. Inc., 120 Cal. App 949, 957 (2005)...............................19

Seely v. White Motor Co., 63 Cal. 2d 9, 14 (1965)...................................................14

Smith v. Butler, 19 Md.App. 467 (1973)..............................................................15

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997)............11, 12, 13

Stearns v. Select Comfort Retail Corp., 2009 WL 163593 (N.D. Cal. 2009).........................20

Sweet v. Pfizer, 232 F.R.D. 360, 369 (C.D. Cal. 2005)................................................11

Terrill v. Electrolux Home Products, Inc., CV 108-030, 2010 WL 4386711 at *12 (S.D. Ga. Sept. 3, 2010)...........................................................18, 21

Tietsworth Sears, Roebuck & Co., C09-00288JFHRL, 2009 WL 1363548 (N.D. Cal. May 14, 2009)..............................................................18, 19

Tobacco II, 46 4th at 327.....3

Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig., 754 F. Supp. 2d 1145, 1180 (C.D. Cal. 2010).....15

Toyota Motor Corp., 2010 U.S. Dist. LEXIS 142663 (C.D. Cal. Dec. 9, 2010).....6

Toyota Motor Corp., 2010 WL 4867562 at *23.....17

Transclean Corp. v. Bridgewood Services, Inc., 77 F. Supp. 2d 1045, 1097 (D. Minn. 1999).....12

US Roofing, Inc. v. Credit Alliance Corp., 228 Cal.App.3d 1431, 1441.....19

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).....3, 8

Wade v. Tiffin Motor House, Inc., 686 F.Supp. 2d 174, 191 (N.D.N.Y. 2009). .....18

Ward v. IPEX, Inc., CV-08-6370-VBF, 2009 WL 2634842, at *2-3 (C.D. Cal. Feb. 4, 2009).....3

Warren v. Fox Family Worldwide, Inc., 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001) aff'd, 328 F.3d 1136 (9th Cir. 2003).....2

Weinstat v. Dentsply Int'l, Inc., 180 Cal. App. 4th 1213, 1227 (Cal. Ct. App. 2010).....10, 13

Wood Products, Inc. v. CMI Corp., 651 F. Supp. 641, 649 (D. Md. 1986).....14

Xavier v. Philip Morris USA Inc., C 10-02067 WHA, 2011 WL 1464942 at *3 (N.D. Cal. Apr. 18, 2011).....14

**Statutes and Codes**


Cal. Civ. Code §1791.2(2) (West)....................17

Cal. Civ. Code §1792(2)....................17

Cal. Civ. Code §1792.3....................22

Cal. Civ. 1770(a)....................9

Cal. Civ. § 1791.1(a)(2)....................10, 19

Civ. Code § 1790.3....................22

Cal. Com. Code § 2-313....................17

Cal. Com. Code § 2313....................13

Cal. Com. Code § 2313(1)(a) (West)....................10

Cal. Com. Code § 2313(1)(b) (West)....................10

Cal. Com. Code § 2314....................20

Cal. Com. Code § 2316 (West)....................17

Cal. Com. Code § 2719(2)....................17

N.Y. General Business Law § 349....................24

N.Y. General Business Law § 350....................24

NY UCC §2-314....................18

Song-Beverly Act, Cal. Civ. Code § 1790 *et seq.*¶¶ 41....................9, 17, 18

UCC 1-201(10)....................16

Uniform Commercial Code. (4 Witkin, Summary of Cal. Law. (10th ed. 2005) Sales §52, p. 63.................... 22


**Other Authority**


The Law of Warranties, 2d § 8:8....................16

# I. INTRODUCTION

This is an omissions and warranty case. Defendant BSH Home Appliances Corporation ("BSH" or "Bosch" or "Defendant") designs, manufactures, markets, advertises, and sells defective Bosch and Siemens brand front-load automatic washing machines ("Washing Machines," "Washers"). The Washers fail to self-clean and as a result accumulate biofilm, mold and bacteria, and emit foul odors ("Mold Problem") and also cause clothes washed inside of them to emit foul odors. BSH never disclosed to consumers that its Washers are defective. BSH also failed to disclose to consumers that to combat the Mold Problem, Bosch Washers require costly and time-consuming maintenance; maintenance not required of top-load washers which consumers have used for decades.

BSH also warrants that the Washers have an "Xxtra Sanitary" cycle that can kill "99.9% of most common household bacteria," but when the Washers fail to perform as warranted, BSH denies that its Washers are defective and blames Washer owners for the Mold Problem. The Washers are also unmerchantable because their design defects and Defective Parts cause them to fail of their ordinary purpose – cleaning clothes. Indeed, a Washer that smells like mold and makes clothes smell like mold cannot "be fit for its intended purpose." In response to BSH's failure to repair or replace the Defective Parts or Washers, and to enjoin its unfair, unlawful and deceptive business practices, the consumers of four states have brought this action seeking relief.

The Second Consolidated Amended Complaint (hereinafter "SCAC") alleges violations of consumer protection statues that satisfy Rule 9(b), where appropriate. The SCAC also pleads violations of express and implied warranty laws. The SCAC gives BSH fair notice of the substance of Plaintiffs' claims such that BSH may prepare an answer. Therefore, the Court should deny BSH's Motion to Dismiss the SCAC ("MTD").

## II. PROCEDURAL BACKGROUND

Plaintiffs recount the procedural history of the case in their earlier opposition to BSH's motion to dismiss the Consolidated Amended Complaint ("CAC"). See ECF # 56. Since then, on May 12, 2011, the Court dismissed Plaintiff Cobb's TCPA claim, and Plaintiff Wentworth's unjust enrichment claim with prejudice, and all other claims without prejudice and granted Plaintiffs leave to file the SCAC. Plaintiffs Gibson, Isabella, Tait, and Wentworth filed the SCAC on June 1, 2011, addressing the Court's concerns and alleging violation of consumer protection statutes based on material omissions, as well as breach of express warranty created by affirmations of fact, and breach of the implied warranty of merchantability. On July 1, 2011, BSH filed a motion to dismiss the SCAC.

## III. STANDARD OF REVIEW

A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009), citing, *Ashcroft v. Iqbal*, 556 U.S.__, 129 S.Ct. 1937, 1949 (2009). The Court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005). Because plaintiff is the master of the complaint, the Court should not involve itself in tampering with the Complaint absent a strong reason for doing so. *Lazar v. Trans Union LLC,* 195 F.R.D. 665, 668 (C.D. Cal. 2000). "The presence of factual disputes does not render the claims inadequately pled for purposes of" a 12(b)(6) motion. *Astiana v. Ben & Jerry's Homemade, Inc.*, C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011). "Because Rule 12(b)(6) review is confined to the complaint, the court may not consider material outside the pleading (e.g., facts presented in briefs, affidavits, or discovery materials)." *Warren v. Fox Family*

*Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001) *aff'd,* 328 F.3d 1136 (9th Cir. 2003).

"Where the claim is one of fraud by omission… the pleading standard is lowered on account of the reduced ability in an omission suit 'to specify the time, place, and specific content' relative to a claim involving affirmative misrepresentations." *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008); *Ward v. IPEX, Inc.*, CV-08-6370-VBF, 2009 WL 2634842, at *2-3 (C.D. Cal. Feb. 4, 2009). "[W]hether a business practice is deceptive will usually present a question of fact and therefore dismissal… will only be appropriate in 'the rare case.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

## ARGUMENT

## IV. THE SCAC SATISFIES RULE 9(b)

The SCAC satisfies the requirements of Rule 9(b) in that it identifies and alleges in detail the who, what, when, where, why and how as to each named Plaintiff's purchase of a Washer and even includes pictures and figures from the Washers identifying the specific information omitted and locations on each Plaintiff's Machine where the information should have been. SCAC ¶¶44-65. Moreover, the requirements of Rule 9(b) do not apply to Plaintiffs' UCL "unfair" prong claim, which are stand-alone allegations that expressly do not allege fraud, as explained below.

BSH raises only two challenges under Rule 9(b) to Plaintiff's UCL claims: (1) Plaintiffs do not plead reliance; and (2) BSH had no duty to disclose. These challenges are without merit.

### A. Plaintiffs Have Adequately Pled Reliance

Plaintiffs relied on omitted material facts. "Reliance can be established by showing that but-for the defendant's fraudulent conduct, 'the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.'" *In re Actimmune Mktg Litig.*, C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6. 2009), citing, *Tobacco II*, 46 Cal.4th at 327. The SCAC expressly alleges that

Plaintiffs "would not have bought the Washing Machines" had defendant disclosed the omitted information. SCAC ¶ 129. Plaintiffs further allege that they "relied on Bosch's omissions of Material Facts at the point of sale." *Id.* ¶ 49. Specifically, each Plaintiff relied on BSH's partial representation that the Machines were "High Efficiency" and on BSH's failure to disclose that, in fact, the Machines were *not* "high efficiency" because Plaintiffs were required to run extra empty hot water cycles and purchase specialized cleaning agents (not required for top-load washers) to try to prevent mold from growing in the Machines. (Plaintiff Gibson, ¶¶50-51; Plaintiff Isabella, ¶54; Plaintiff Tait, ¶56; Plaintiff Wentworth, ¶58).

The main characteristic and benefit emphasized by BSH to sell its High Efficiency ("HE") Washers was that they used less water and energy than a conventional machine. SCAC ¶ 33. As such, the claim of "High Efficiency" is not "puffery" because efficiency is measurable. (See section VI.A, *infra.*) BSH uses the purported efficiency to justify the significantly higher price it charges for its Machines; a material factor in each Plaintiff's purchasing decision. *Id.* ¶¶ 33, 62. Therefore, contrary to BSH's insinuation, it is not coincidental that each Plaintiff would seek out and specifically read this partial representation in purchasing a front loading washer ("FLW"). Further, BSH is incorrect that Plaintiffs must show that the "phrases [relied on] were material." (MTD at 4.). It is the ***omitted information*** and BSH's ***failures to disclose*** that must be material, which they are. SCAC ¶¶ 61-63. "A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence.'" *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 332 (2011).

In addition, Plaintiff Gibson also expressly relied on BSH's representation that the Machines were "XXTRA SANITARY," certified to "eliminate 99% of bacteria" and capable of sanitizing Clothes (*Id.* ¶¶ 49, 50, 63) and that BSH failed to disclose that, in fact, the Machines are not sanitary because the Machines had Mold Problems and impregnated clothes with mold, mildew and foul odors, even when the XXTRA

SANITARY cycle was used. *Id.* ¶¶ 64, 76.[1]

**B. Plaintiffs Have Adequately Pled a Duty to Disclose**

The SCAC sets forth three (3) bases for BSH's duty to disclose.

**Partial Representations.** As set forth above, BSH represented that the Washers were high efficiency, but at the same time failed to disclose that, in fact, they were *not* "high efficiency" because consumers were required to run extra empty hot water cycles with costly cleaning agents to prevent mold from growing in the Washers. These allegations satisfy the duty to disclose. The terms "High Efficiency" (and "Energy Star" compliant) have specific meanings in the context of washing machines. SCAC ¶ 62. Once BSH touted its Machines, for example, as "High Efficiency," "Energy Star" compliant and "XXTRA SANITARY," it had a duty to speak the full truth. *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1044 (C.D. Cal. 2009) ("where one who is under no duty to speak nevertheless does so . . . he is bound to speak honestly, and not to suppress facts which materially qualify those stated."), quoting *Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn.*, 205 Cal. App. 3d 1415, 1425 (1988) (internal quotations omitted).

**Active Concealment.** The SCAC specifically alleges that "Defendant actively concealed and suppressed the Material Facts from Plaintiffs by knowing and not warning of the Defective Parts and their effects at the time of purchase and by performing warranty and/or repair work that it knew would not cure the Defective Parts or stop their effects, all of which was unknown to Plaintiffs, and by recommending remedies to complaining consumers that it knew would not cure the Defective Parts or resulting problems thereby causing damages." SCAC ¶ 65.

Bosch contends that the instructions in the Use & Care Manual (Bosch's RJN, Ex. 1) show that there was no active concealment on its part. Incorrect. Plaintiffs and consumers do not see the manual until *after* their purchases. Moreover, even

---

[1] In focusing on these particular omissions, Plaintiffs expressly do not concede that any of the other alleged omissions based on partial representations (such as "high care," "high efficiency detergent" and "Energy Star" Machines) are not actionable. Indeed, all of the omissions are actionable for the same reasons. SCAC ¶ 63.

these instructions, on pp. 23 and 24, do not come close to disclosing all the Material Facts alleged in the SCAC. *See*, Plaintiffs' Objections to Evidence, filed concurrently herewith.

BSH also cites no authority for its contention that Plaintiffs are obligated to set forth "specific detailed allegations as to how BSH 'actively concealed' facts from *each plaintiff* individually." MTD at 8 (emphasis original). The undisclosed facts were concealed from *all* purchasers. No further facts are needed, particularly where, as here, the facts lie more in the knowledge of the opposite party. *Comerica Bank v. McDonald*, 2006 U.S. Dist LEXIS 86306 at *8 (N.D. Cal. 2006).

**Exclusive Knowledge.** The SCAC sets forth specific facts and evidence that BSH was aware, from first-hand knowledge and through customer complaints, that the Washers had a propensity to develop Mold Problems necessitating Extraordinary Actions and Additional Operating Expenses, which only mitigated but did not eliminate the problem. SCAC ¶¶ 91-98, and exhibits referenced therein.

Despite this, BSH suggests that consumers could have discovered some of these undisclosed facts by reading the Use and Care Manual prior to purchase or reviewing information available online regarding the problem. MTD at 6-7. However, Plaintiffs allege deception at the ***point of sale***, and the Manual was not available until ***after purchase***. Moreover, the law does not obligate consumers to search through extraneous source material prior to making their purchasing decisions:

> It is true that prospective purchasers, with access to the Internet, could have read the many complaints about the failed speedometers (as quoted in the complaint). Some may have. But GM is alleged to have known a lot more about the defective speedometers, including information unavailable to the public. Many customers would not have performed an Internet search before beginning a car search. Nor were they required to do so.

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007).

Furthermore, publicly available material only hinted at the magnitude of the Mold Problem. Only BSH had exclusive access to the aggregate data from its retailers, its own tests, and complaints from its customers. SCAC ¶ 65. *See In re Toyota Motor Corp.*, 2010 U.S. Dist. LEXIS 142663 (C.D. Cal. Dec. 9, 2010) (despite rumors of a

defect available on the Internet, defendant had duty to disclose because it "had exclusive knowledge of the sheer magnitude and ongoing nature of the defect, as well as potential ways of identifying and correcting the defect").

BSH also compares the Extraordinary Actions to cleaning and airing out an ice chest or tent after use. Besides being improper evidence (See Plaintiffs' Objections to Evidence), these Extraordinary Actions, such as running an empty washing machine and purchasing Affresh and similar products, unlike the tent and ice chest "common sense" actions, are not normal operating procedures that consumers are accustomed to. These extraordinary acts are necessitated by BSH's use of Defective Parts which, unknown to consumers, cause Biofilm and Foul Odors.

BSH further argues that the SCAC fails to allege where the omitted information should have been disclosed. MTD at 8. This argument is contrary to the clear allegations in the SCAC which identify exactly where the omitted information should have been placed for each Machine. *See* SCAC ¶¶ 49-59 and particularly ¶60 ("Defendant omits the Material Facts on labels located on the Washers s themselves in retail stores where the Washers are sold [and] on its website bosch-home.com .").

**C. Bosch Violated the "Unfair" Prong of the UCL**

It is "unfair" conduct under the UCL to sell washing machines that develop mold problems, irrespective of any misrepresentation or omission by the seller or manufacturer. Consumers, including Plaintiffs, reasonably expect washing machines to operate without mold problems. Plaintiffs would not have purchased Washers with Mold Problems and certainly would not have paid the amounts that they paid for their Washers with Mold Problems. SCAC ¶ 32.

Further, irrespective of any omission by BSH, consumers, including Plaintiffs, buy "High Efficiency" washer for their purported efficiency. Bosch requires that consumers run extra empty hot-water cleaning cycles with costly cleaning agents to combat the Mold Problem. These extraordinary actions negate any water and energy savings. SCAC ¶ 33.

The foregoing allegations do not constitute fraud and do not sound in fraud. The unfair conduct claim is separate and apart from the course of conduct giving rise to Plaintiffs' claims under the fraudulent prong of the UCL, as well as the CLRA and FAL. The unfair allegations are pled in a separate section of the SCAC, and any allegations sounding in fraud from other sections of the SCAC expressly are not incorporated by reference in this section of the SCAC. Accordingly, Rule 9(b) does not apply to the allegations supporting the unfair prong violation.[2] BSH's alleged conduct satisfies the requirement for pleading the UCL's unfair prong. The Ninth Circuit has approved the use of *either* a balancing test or a tethering test in consumer actions alleging unfair business acts. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007); *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010). *See also In re Ferrero Litig.*, 2011 U.S. Dist. LEXIS 70629, *20-*21 (S.D. Cal. June 30, 2011) ("California courts define an unfair business practice as either a practice that undermines a legislatively declared policy or threatens competition, or a practice that has an impact on its alleged victims that outweighs the reasons, justifications and motives of the alleged wrongdoer.").

Here, the balancing test weighs in Plaintiffs' favor. There is no legitimate justification for BSH manufacturing and selling a washer that develops mold. On the other hand, the injury to Plaintiffs and consumers is substantial both in the added cost of initially purchasing the machine, as well as years of mold suppression costs; the injury is not outweighed by any countervailing benefits to consumers or competition as it simply provides no benefits; and consumers could not reasonably have avoided

[2] *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) ("a plaintiff may choose . . . to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements."); *Johns v. Bayer Corp.*, 2010 U.S. Dist. LEXIS 10926, at *14 (S.D. Cal. Feb. 9, 2010) ("Plaintiff alleges that Defendants made misrepresentations and omissions on their product packaging, but does not allege knowledge of falsity or intent to induce reliance. Accordingly, Plaintiff's claims are not 'grounded in fraud' and Rule 9(b) does not apply."); *Keilholtz v. Superior Fireplace Co.*, 2009 U.S. Dist. LEXIS 30732 (N.D. Cal. 2009) ("Plaintiffs' allegations that Defendants' conduct was within the meaning of the UCL does not sound in fraud and must satisfy the ordinary notice pleading standards."). Furthermore, any allegations in previous complaints are not relevant to the standard to be applied here. *Faigman v. AT&T Mobility LLC*, 2007 U.S. Dist. LEXIS 52192, at *9 (N.D. Cal. July 17, 2007) ("Because plaintiffs have dropped their concealment cause of action in their amended complaint, fraud is no longer a necessary element.").

the injury; once they have purchased their Washer, they must continue to expend significant amounts of money on unforeseen maintenance costs.[3]

Plaintiffs also adequately allege that BSH's conduct undermines California's legislatively declared public policy against allowing manufacturers to escape liability for defective consumer products they place in the stream of commerce by imposing liability on them, and subjecting them to penalties, under the implied warranty of merchantability and by operation of law under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq.* SCAC ¶ 41. See also, *Hartless v. Clorox Co.*, CIV. 06CV2705JAHCAB, 2007 WL 3245260, at *7 (S.D. Cal. Nov. 2, 2007)(finding "unfair" prong established under tethering test based on policy underlying Song-Beverly Act).

## V. PLAINTIFFS' PURCHASES ARE PROTECTED BY THE CLRA

"The protections of the CLRA are to be liberally construed." *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 357 (E.D. Cal. 2008); Cal. Civ. Code § 1760. BSH cites no authority for its narrow interpretation of the CLRA. MTD at 12. The only court considering the spurious argument advanced by Bosch has rejected it. *Keilholtz v. Superior Fireplace Co.*, C 08-00836 CW, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009)(denying motion to dismiss CLRA claim made on the basis that plaintiffs did not enter into transactions with manufacturer of fireplaces that were installed by builders into plaintiffs' homes). BSH's interpretation is contrary to the plain meaning of the statute that prohibits "deceptive acts and practices undertaken by **any person** in a transaction **intended to result or which results in the sale or lease of goods** or services to any consumer." Cal. Civ. Code § 1770(a)(emphasis added).

---

[3] As alleged in the SCAC (¶¶ 36-39), the injury to consumers is substantial because Washers are defective at the time of sale and develop the Mold Problem during the warranty period. Moreover, the presence of Mold Problem defeated the primary purpose of a washing machine, which is to remove stains, odors and bacteria. *Id.* ¶ 37. The injury to consumers is not outweighed by any countervailing benefits to consumers or competition. Furthermore, any purported efficiency is lost because consumers paid hundreds of dollars more for the Washers than top-loaders at the outset, and then were forced to pay to regularly run their Washers empty (as often as once per week) with the additional cost of specialized cleaning agents (as much as $3-4 per cycle when using Affresh). *Id* ¶ 38. Moreover, consumers could not have reasonably avoided injury because they did not know about the Mold Problem before they bought their Washers and the source and situs of the Mold Problem are in parts of the Machine that are not accessible to consumers.

Therefore, Bosch's violations of the CLRA are actionable.

## VI. EXPRESS WARRANTY BY AFFIRMATION OF FACT

Warranty claims are subject only to the notice pleading standards of Rule 8. *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 355 (E.D. Cal. 2008). Plaintiffs have pled enough facts to state an express warranty claim under Rule 8.

Under the Uniform Commercial Code a seller creates an express warranty by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. Cal. Com. Code § 2313(1)(a) (West). Also, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313(a)(b) (West). "Hence, to prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an "'affirmation of fact or promise' " or a " 'description of the goods' "; (2) the statement was " 'part of the basis of the bargain' "; and (3) the warranty was breached" *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (Cal. Ct. App. 2010), review denied (Apr. 14, 2010), reh'g denied (Jan. 26, 2010), citing, *Keith v. Buchanan*, 173 Cal. App. 3d 13, 20 (1985). Breach of express warranty focuses on "*the seller's* behavior and obligation - his or her affirmations, promises and descriptions of the goods – all of which help define what the seller 'in essence' agreed to sell." *Weinstat*, at 1228 (emphasis in original).

In *Weinstat*, a class of dentists sued the manufacturer of a dental cavitron for breach of express warranty based on the affirmations regarding the device's safety and suitability for certain uses. *Weinstat*, at 1225. These affirmations were made "in the Directions, and the Directions are sealed in the Cavitron package when delivered." *Id.* at 1228. Plaintiffs alleged that the device was medically unsafe for its intended uses and thus the manufacture breached its express warranties (*id.*) because

the device "was subject to the formation of a progressive biofilm coating of bacteria." *Id* at 1220.

Plaintiffs have sufficiently alleged that Bosch made affirmations of fact (SCAC ¶¶ 66-70) that became part of the basis of the bargain (*id.* ¶¶ 71, 157) that Bosch breached by not conforming the Washers to its express warranties (*id.* ¶¶ 15, 16, 18-19, 72-76, 79-80, 160), thereby causing them damages. *Id* ¶¶ 66, 161. Bosch has not met its burden of disproving the basis of the bargain and cannot do so without introducing facts extrinsic to the complaint, which is impermissible on a motion to dismiss.[4]

### A. Plaintiffs Have Sufficiently Alleged Affirmations of Fact Creating Express Warranties

The statements or descriptions creating the warranty may appear in any variety of forms. *Weinstat* at 1228 (express warranty created in operating instructions delivered with product in sealed package); *Fundin v. Chicago Pneumatic Too Co.*, 152 Cal. App. 3d 951, 957 (1984)(warranty can be created by statement in sales brochure, in labels, or advertising). "Misdescriptions of specific or absolute characteristics of a product are actionable." *Bros. v. Hewlett-Packard Co.*, C-06-02254RMW, 2007 WL 485979 (N.D. Cal. Feb. 12, 2007), citing, *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)("A specific and measurable advertisement claim of product superiority based on product testing is not puffery.").

Plaintiffs allege that Bosch made affirmations creating warranties both on the Washers through the labels "Xxtra Sanitary" and "Sanitary" (SCAC ¶ 67), and "Sanitary 170°" (SCAC ¶ 70), as well as in the Use & Care Manuals that are included with the purchase of every Washer (SCAC ¶¶ 67-68, 70). Notably, Bosch does not move to dismiss Plaintiff's express warranty claim based on the "sanitary" labels (MTD at 13), and cannot make new arguments on reply; therefore, Bosch's motion to dismiss the express warranty claim must be denied on this basis alone.

[4] Furthermore, "it is improper for a party to raise a new argument in a reply brief." *Sweet v. Pfizer*, 232 F.R.D. 360, 369 (C.D. Cal. 2005).

BSH's affirmations that Washers can sanitize clothes and "kill 99.9% of common household bacteria" are descriptions of the absolute characteristics of the Washers and are therefore actionable. Likewise, the term "sanitary" connotes a specific meaning and absolute characteristic, and is not merely Bosch's opinion.[5] As one of the cases Bosch cites explains, these statements are "actionable because they [are] specific factual allegations which could be proved or disproved through discovery". *Edmunson v. Procter & Gamble Co.*, 10-CV-2256-IEG NLS, 2011 WL 1897625 at * (S.D. Cal. May 17, 2011); *Boud v. SDNCO, Inc.*, 54 P.3d 1131, 1135 (Utah 2002)("To qualify as an affirmation of fact, a statement must be objective in nature, i.e., verifiable or capable of being proven true or false.)" Whether the Washers can achieve "sanitary" conditions, or "kill 99.9% of most common household bacteria" as warranted is objectively verifiable and can be proved or disproved through discovery, including expert testing and analysis. The cases defendant cites are inapposite because the affirmations at issue in those cases relate to value or quality of what the seller was offering, and are not objectively verifiable. MTD at 15, fn 12. Conversely, Bosch's statements can be objectively verified. Indeed, Plaintiffs have alleged that the Washers do not kill 99.9% of household bacteria or sanitize the Washers or clothes washed inside them, as laboratory tests (SCAC ¶ 19, SCAC Ex. 5) confirm the presence of bacteria, among other pathogens following Plaintiffs' use of the Xxtra Sanitary cycle (SCAC ¶¶ 75-76). Therefore, Plaintiffs have sufficiently alleged affirmations of fact creating express warranties.[6]

---

[5] At least one dictionary defines "sanitary" to mean: "favorable to health; free from dirt, bacteria, etc." http://dictionary.reference.com/browse/sanitary, last accessed July 7, 2011.

[6] Analogous affirmations creating actionable express warranties include (emphasis is added unless otherwise noted): *Transclean Corp. v. Bridgewood Services, Inc.*, 77 F. Supp. 2d 1045, 1097 (D. Minn. 1999) *aff'd in part, vacated in part,* 290 F.3d 1364 (Fed. Cir. 2002)("replace **virtually 100%** of the old automatic transmission fluid" was actionable. "**The addition of the qualifier 'virtually,' to the claim of 100%... does not transform the claims [into] 'exaggerated advertising, blustering, and boasting' ... nor [is it] 'vague or highly subjective'**"); *Salkeld v. V.R. Business Brokers*, 192 Ill.App.3d 663, 675-676 (1989)("virtually no competition" is not puffery); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008)("**deliver 95% up-time service**" is quantifiable, therefore not puffery); *Southland*, 108 F.3d at 1145("50% Less Mowing" held actionable because it is "specific and measurable"); *Reed v. Bunger*, 255 Iowa 322, 332 (1963)("'good, clean, second-calf heifers'"); *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24 (1st Cir. 2000)("Whiter is not possible" is not puffery in connection

**B. Basis of the Bargain is Presumed, BSH has the Burden of Disproving Basis of the Bargain**

"Affirmations and descriptions in product literature received at the time of delivery but after payment of the purchase price are, without more, part of the basis of the bargain, period." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th at 1234. "[O]nce affirmations have been made, they are woven into the fabric of the agreement and the seller must present "clear affirmative proof" to remove them from the agreement." *Id* (citing, Comment 3 to Cal. Comm. Code § 2313.). Here, Plaintiffs allege Bosch made affirmations both on the Machines, and like the plaintiffs in *Weinstat*, in the Use & Care Manuals that were delivered with the Washers. SCAC ¶¶ 67-70.

Although unclear, BSH appears to argue that "basis of the bargain" requires a showing of reliance. MTD at 14. However, "breach of express warranty arises in the context of contract formation in which ***reliance plays no role***." *Id* at 1227 (emphasis added). *See also*, *Rite Aid Corp. v. Levy-Gray*, 391 Md. 608, 625 (2006)("The clear implication of Official Comment 7 is that express warranties may be formed … after the sale has been consummated)(Maryland law), citing, *Murphy v. Mallard Coach Co.*, 179 A.D.2d 187, 193 (N.Y. App. Div. 1992)(New York law)("fact that [the warranty] was given to plaintiffs at the time they took delivery of the motor home renders it sufficiently proximate in time so as to fairly be said to be part of the basis of the bargain."); see also, *CBS Inc. v. Ziff-DavisPub. Co.*, 75 N.Y.2d 496, 503-04(1990) (basis-of-the bargain is not strict reliance).

**C. Causation is Adequately Pled**

Plaintiffs Gibson, Isabella, and Wentworth have sufficiently pled a breach causing

with advertising of laundry detergent); *Parzek v. New England Log Homes, Inc.*, 92 A.D.2d 954 (1983)(statement that logs were treated with a preservative "to protect the treated wood against decay, stain, termites and other insects" was actionable where beetles destroyed wood); *Anunziato*, 402 F. Supp. 2d at 1140 ("most stringent quality control tests" affirmation in laptop user manual); *Interco Inc. v. Randustrial Corp.*, 533 S.W.2d 257, 260 (1976) (a floor covering product that "will absorb considerable flex without cracking"); *In re Century 21-RE/MAX Real Estate Adver. Claims Litig.*, 882 F. Supp. 915, 926 (C.D. Cal. 1994)(statement that defendant's real estate agents outsell others "3 to 1" actionable).

damages under Rule 8. SCAC ¶¶ 160-161. Plaintiffs have also pled additional facts (which Bosch simply disregards), beyond the requirements of Rule 8, in support their allegations of breach causing damages. SCAC ¶¶ 3-7, 19, 64, 72, 73, 75. Indeed, Plaintiffs expressly plead that Bosch "breached these Express Warranties because it failed to conform the Washers to the Express Warranties… after a reasonable number of attempts to conform the Machines" (SCAC ¶¶ 18-19, 72); that the affirmations are false because "Biofilm, bacteria, deleterious organic matter… are transferred onto Clothes… during the performance of the Xxtra Sanitary cycle" (*Id* ¶75) and tests confirm the presence of bacteria and other pathogens following regular use of the Sanitary Cycle (*Id* ¶ 19); that Plaintiffs "continue to have Clothes impregnated with bacteria, mold, mildew and deleterious organic matter… after they are put through a Xxtra Sanitary cycle… [and] continue to have the Mold Problem and Foul Odors following the use of the Xxtra Sanitary, and Sanitary 170 cycles" (*Id* ¶ 76); and lastly, that Bosch's breach "caused damages through the diminished value of Plaintiff's Machines." *Id* at 66. No more is required.

BSH's argument that Plaintiff must show that defendant's breach was a "substantial factor" misinterprets the law. MTD at 15. "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Xavier v. Philip Morris USA Inc.*, C 10-02067 WHA, 2011 WL 1464942 at *3 (N.D. Cal. Apr. 18, 2011). It is merely proximate causation (*Id.*), which Plaintiffs have sufficiently pled. SCAC ¶¶ 66, 100-101, 161.

**D. Either Privity is Not Required, or An Exception Applies**

Privity is not required under California law. *Seely v. White Motor Co.*, 63 Cal. 2d 9, 14 (1965); *Hauter v. Zogarts*, 14 Cal. 3d 104, 114 fn. (1975). Even if it were required, an exception applies because the warranty was made through Bosch's labels and Use & Care Manual. *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954). Likewise, privity is not required under New York law. *Jesmer v. Retail Magic, Inc.*,

55 A.D.3d 171, 173 (N.Y. App. Div. 2008). Under Maryland law, Bosch is estopped from denying that it is in privity with Plaintiff Gibson. *Wood Products, Inc. v. CMI Corp.*, 651 F. Supp. 641, 649 (D. Md. 1986)(lack of privity defense is estopped where Defendant performs obligation under a warranty and leads the buyer to believe that it stood behind the warranty). Here, when Plaintiff Gibson complained to Bosch about the Mold Problem, Bosch sent her written instructions regarding products to purchase that Bosch assured her would rid her Machine of Biofilm, Foul Odors and Mold Problems and Bosch denied that the product was defective. SCAC ¶ 15. Bosch cannot now claim lack of privity as a defense.

**E. Either BSH Had Notice, or Notice is Not Required**[7]

Under California law, a consumer does not have to provide notice to a remote seller. *Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 61 (1963)("The injured consumer is seldom 'steeped in the business practice which justifies the rule'") (citations omitted); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1180 (C.D. Cal. 2010)("the principle enunciated by the California Supreme Court in *Greenman* has been recently applied by federal district courts")(citing cases). Nonetheless, Plaintiff Wentworth gave notice on behalf of herself, and other class members, regarding Bosch's breach. See SCAC Ex. 10. Furthermore, Bosch physically inspected Plaintiff Wentworth's Machine on at least two (2) occasions. SCAC ¶ 18-19. "The Maryland statute does not prescribe any particular form of notice and a telephone call has been held to be sufficient." *Rush v. Whirlpool Corp.*, 07-2022, 2008 WL 509562 *1 (W.D. Ark. Feb. 22, 2008), citing, *Smith v. Butler*, 19 Md.App. 467 (1973). "There is likewise no requirement as to the content of the notice. The buyer must merely apprise the seller the goods are defective." *Rush*, at *1. Plaintiff Gibson contacted Bosch and complained about the Mold Problem, it was Bosch who reassured her, falsely, that

[7] "[T]he sufficiency and timeliness of notice are ordinarily questions of fact to be determined by the jury based upon the surrounding circumstances." *Mendelson v. Gen. Motors Corp.*, 105 Misc. 2d 346, 351 (N.Y. Sup. Ct. 1980), *aff'd*, 81 A.D.2d 831 (N.Y. App. Div. 1981).

the Washer was not defective. SCAC ¶ 15. Under New York law, filing of the complaint is sufficient notice. *Panda Capital Corp. v. Kopo Int'l, Inc.*, 242 A.D.2d 690, 692 (N.Y. App. Div. 1997)("the complaint and subsequent amended complaint in this action themselves constituted such notice"). Plaintiffs have alleged numerous complaints filed against Bosch, which included allegations relating to the "Xxtra sanitary" and "kills 99.9%" of bacteria warranties. SCAC ¶ 158-159. Plaintiff Gibson also gave notice to the retailer from whom she purchase the machine. *Hyde v. General Motors Corp.*, 1981 WL 11468, *2 (N.Y.Sup. Oct. 16, 1981)(notice to immediate seller sufficient).

**F. BSH's "Disclaimer" Is Unenforceable**

First, Plaintiffs and class members did not receive Bosch's "disclaimer" until after purchasing the Washers. This alone makes the disclaimer ineffective because it is not conspicuous within the meaning of UCC 1-201(10) because it is "not so written that a reasonable person against whom it is to operate <u>ought to have noticed it</u>" at the time of contracting. UCC 1-201(10)(emphasis added). Plaintiffs never had notice of the disclaimer. "Courts generally nullify such post-contract disclaimers" as the one Bosch attempts to rely on. Barkley Clark & Christopher Smith, *The Law of Product Warranties 2d*, § 8:8. It is well settled "that it is too late to make a disclaimer of a warranty after a sale has been consummated." *Charles Lomori & Son v. Globe Laboratories*, 35 Cal. App. 2d 248, 256 (Cal. Ct. App. 1939); *Imperia v. Marvin Windows of New York, Inc.*, 297 A.D.2d 621, 624 (N.Y. App. Div. 2002)(general disclaimer unenforceable against express warranties made in brochure by affirmation of fact); *Doe v. Miles Laboratories, Inc., Cutter Laboratories Div.*, 675 F. Supp. 1466, 1469 (D. Md. 1987), *aff'd*, 927 F.2d 187 (4th Cir. 1991)("Warranties… may be excluded or modified by disclaimers, § 2-316, although as to consumers such exclusions or modifications are unenforceable. § 2-316.1."); *Rite Aid Corp. v. Levy-Gray*, 391 Md. 608, 624 (2006)(declining to enforce general disclaimer to preclude express warranty contained in pamphlet). "A social policy aimed at protecting the

average consumer by prohibiting blanket immunization of a manufacturer or seller through the use of standardized disclaimers engenders little resistance." *Purvis v. Consol. Energy Products Co.*, 674 F.2d 217, 221 (4th Cir. 1982).

Second, the disclaimer cannot be justified on a contract theory because there is no "meeting of the minds." *Dorman v. International Harvester Co.*, 46 Cal. App. 3d 11. "[N]egation or limitation is inoperative to the extent that such construction is unreasonable." Cal. Com. Code § 2316 (West).

Third, the remedies in BSH's express written warranty fail of their essential purpose. "Where circumstances cause an exclusive or limited remedy to **fail of its essential purpose**, remedy may be had as provided in this code." Cal. Com. Code § 2719(2) (emphasis added). This is precisely what Plaintiffs have alleged in the SCAC. SCAC ¶¶ 77, 79-80, 83-86. Because the warranty fails of its essential purpose as alleged, the disclaimer is also unenforceable, and Plaintiffs are entitled to the express warranty remedies of the commercial codes of their respective states. See also, *In re Toyota Motor Corp.*, 2010 WL 4867562 at *23 (finding the limitation on remedies in the written warranty inapplicable where plaintiffs' alleged theory that purported repairs were also defective).

**G. The Song-Beverly Act Provides for a Cause of Action for Express Warranty Created by Affirmation of Fact**

The Song-Beverly Act expressly provides that no specific words need be used to create an express warranty, and that in the event of a sample or model, "the whole of the goods must conform to such sample or model." Cal. Civ. Code § 1791.2(2) (West). Plaintiffs have pled that they observed samples/models of the Machines on showroom floors and online which depicted that Machines had "Xxtra Sanitary" cycles that were capable of sanitizing the Washers and clothes washed inside of them. SCAC ¶¶ 49-55, 58-59. Plaintiffs further alleged that Washers they purchased did not conform to the samples or models because following use of the "Xxtra Sanitary" cycles their Washers continued to have bacteria and other pathogens. SCAC ¶ 76. Therefore, Plaintiffs have stated an express warranty claim under the Song-Beverly

Act, as well as under Cal. Comm. Code § 2-313.

## VII. IMPLIED WARRANTY OF MERCHANTABILITY[8]

### A. Privity Is Not Required under Song-Beverly, and the "Thing-of-Danger Exception" Applies to the New York Implied Warranty Claim

Vertical privity is **not** an essential element to the breach of implied warranty under the Song-Beverly Consumer Warranty Act. *Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110, 1116 fn.9 (C.D. Cal. 2007).[9] Under New York law, an exception exists when the product may be the cause of a "thing of danger." *Hubbard v. General Motors Corp.*, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996); *Wade v. Tiffin Motor House, Inc.*, 686 F.Supp. 2d 174, 191 (N.D.N.Y. 2009). Plaintiff has alleged that the product causes mold which may result in serious health risks, thus satisfying the privity exception. SCAC ¶ 34. See also, *Dickerson*, 2011 WL 831916 *2 (applying "thing of danger" exception to moldy front-load washer claim).

Plaintiffs plead implied warranties under NY UCC § 2-314 and the California Song-Beverly Act, Cal. Civ. Code §§ 1790 *et seq.* ("Song-Beverly"). SCAC ¶¶ 163, 164, 166-170. BSH inaccurately applies authority based on Cal. Com. Code implied warranties to the Song-Beverly claim. BSH (and this Court in its Order regarding the MTD brought against Plaintiffs' Complaint) cited to *Anunziato* for authority on privity in California. BSH MTD, ECF # 67, p.17, ll. 19-24. However, *Anunziato* did not consider or hold that Song-Beverly implied warranty claims require vertical privity[10]. A case has no precedential authority and cannot be cited as authority for a matter it did not consider. *In re Ball*, 185 B.R. 595, 597 (9th Cir. BAP 1995).

---

[8] Because Plaintiff adequately plead state implied warranty claims, they have also sufficiently pled their Magnuson-Moss Consumer Warranty Act claims.

[9] See also, *Gonzalez v. Drew Indus. Inc.*, CV 06-08233 DDP, 2007 WL 7287245 at *11 (C.D. Cal. May 7, 2007); *Bruce v. Harley-Davidson, Inc.*, CV 09-6588 CAS, 2010 WL 3521775 (C.D. Cal. Jan. 15, 2010) ("the better reasoned case law does not requirement [sic] plaintiffs to be in vertical privity with defendants under the Song-Beverly Act") *citing*, *In re NVIDIA GPU Litig.*, C 08-04312 JW, 2009 WL 4020104 at *4 (N.D. Cal. Nov. 19, 2009) ("The plain language of the Song-Beverly Act does not require vertical contractual privity between a manufacturer and a consumer"); *accord*, *Terrill v. Electrolux Home Products, Inc.*, CV 108-030, 2010 WL 4386711 at *12 (S.D. Ga. Sept. 3, 2010); *Dickerson v. Electrolux Home Products, Inc.*, CV 10-5163-R, 2011 WL 831916 *2 (C.D. Cal. Feb. 3, 2011).

[10] The *Anunziato* court dismissed plaintiff's Song-Beverly claim for failure to "plead an in-state purchase." *Id.* at 1142. The *Anunziato* court's decision regarding the Song-Beverly claim was limited to standing and did not consider nor hold that vertical privity is a requisite to a Song-Beverly implied warranty claim.

The cases BSH cites are inapposite. *Tietsworth* relied on California appellate decisions that did not consider whether Song-Beverly implied warranty claims require vertical privity[11], and *In re Whirlpool Corp.* relies on California appellate cases that either pre-date the Song-Beverly Act or that considered Cal. Com. Code implied warranty law instead of Song-Beverly[12].

The great weight of authority holds that vertical privity is not required under Song-Beverly. Nonetheless, Plaintiffs also plead the "third-party beneficiary" exception, and comply with this Court's stated instruction that they "plead a contract which was made expressly for his or her benefit and one in which it clearly appears that he or she was a beneficiary" (ECF # 60, p. 5, § II.c). See, SCAC ¶¶ 178-181. Plaintiffs plead that: BSH entered into a contract with each retailer from which a Plaintiff purchased their Washer (*id* .¶ 178); each Plaintiff was intended to be a beneficiary of the contract BSH entered into with the Plaintiff's retailer (*id.*¶ 179); BSH intended that express and implied warranties between it and Plaintiffs' retailers benefit each Plaintiff (*id.* ¶ 180); and both parties to the sales contracts BSH entered into with each Plaintiff's retailer knew that the warranties were to be for the benefit of Plaintiffs and the classes they seek to represent (*id.* ¶ 181). Plaintiffs have satisfied the *Schauer* and *Mendel* pleading requirements the Court directed them to satisfy.

### B. Plaintiffs Sufficiently Allege Breach of Song-Beverly Implied Warranty

"'The core test of merchantability is fitness for the ordinary purpose for which such goods are used.'" *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303,

---

[11] *Tietsworth* dismissed the implied warranty claims on statute of limitations grounds. *Tietsworth Sears, Roebuck & Co.*, C09-00288JFHRL, 2009 WL 1363548 *3 (N.D. Cal. May 14, 2009). Only in dicta does *Tietsworth* mention that vertical privity is a prerequisite in California to recover under **non-Song-Beverly** implied warranty claims. However, its holding was based on California appellate decisions that did not consider Song-Beverly. *Tietsworth* cites *US Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 1431, 1441 and *Osborne v. Subaru of America, Inc.*, 198 Cal.App.3d 646, 656 n. 6, (1988). Both cases considered California's law on non-Song-Beverly implied warranty rights. *US Roofing, supra*, at 1443 and 1444; *Osborne, supra*, at 656.

[12] As with *Tietsworth, In re Whirlpool Corp.* also relies on cases that considered only non-Song-Beverly implied warranties: *Burr v. Sherwin Williams Co.* 42 Cal.2d 1041 (1954) (Song-Beverly did not become law until 1970); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (considered the Cal. Com. Code and not Song-Beverly); and *Hartless*, at *2 (S.D.Cal. Nov. 2, 2007) (not mentioning Song-Beverly in its analysis or holding, and relying on *US Roofing*).

(Cal. Ct. App. 2009), review denied (Aug. 26, 2009) (Citations omitted.) (Emphasis added.). Plaintiffs expressly plead facts demonstrating that the Washers are not fit for the ordinary purposes for which washers are used, and, therefore, have adequately pled a cause of action for breach of implied warranty of merchantability. Cal. Civ. Code § 1791.1(a)(2). California courts have consistently held that a product need not be inoperable to be unmerchantable under Song-Beverly[13].

Again, BSH's cases are unpersuasive. BSH relies primarily on *Tietsworth,* and secondarily on *American Suzuki Motor Corp v. Superior Court,* 44 Cal.App.4th 1291, 1298 (1995), *Carlson v. General Motors Corp.* 883 F2d 287, 297 (4th Cir. 1989) and *Baba v. Hewlett-Packard Co.,* 2011 WL 317650 (N.D. Cal. 2011). None of these cases supports a conclusion that Plaintiffs have not sufficiently pled implied warranty claims.[14]

The *Carlson* plaintiffs alleged no defect or malfunction, but rather claimed lost value based on the likelihood of later defect or malfunction. *Carlson, supra,* 297. Unlike in *Carlson,* Plaintiffs expressly plead that the Washers have defective parts that have malfunctioned and have caused resultant harm. SCAC ¶ 5-7. *Baba* considered Massachusetts implied warranty law, but because Plaintiffs do not sue under Massachusetts law, *Baba* is inapplicable. *Baba, supra,* at *7.

California Plaintiff Wentworth expressly pleads that she is suing for only breach of Song-Beverly implied warranty rights. SCAC ¶¶ 163-164. Therefore, *Tietsworth,*

---

[13] *Isip v. Mercedes-Benz USA, LLC* 155 Cal. App. 4th 19, 22, 27 (Cal. Ct. App. 2007) (A car does not have to fail to provide transportation to breach the Song-Beverly implied warranty of merchantability.); *Stearns v. Select Comfort Retail Corp.* 2009 WL 163593 (N.D. Cal. 2009) ("[T]he fact that a person still may sleep on a moldy bed does not bar as a matter of law a claim for breach of the implied warranty of merchantability"); *Morris v. BMW of North America, LLC* 2007 WL 3342612 (N.D. Cal. 2007) (Where plaintiff alleged that the subject run-flat tires prematurely wore-out they had "alleged enough to sustain claims for breach of the implied warranty of merchantability [under Song-Beverly] and, therefore, defendant's motion to dismiss these claims is DENIED."); *Mexia, supra,* 174 Cal. App. 4th at 1303 (Use of a boat for two years after which its engine developed corrosion and a two year delay in seeking repairs were facts adequate to plead breach of Song -Beverly implied warranty of merchantability.).

[14] See Fn. 11, *supra. Osborne* in turn cites to California appellate decisions that address only Cal. Com. Code § 2314: *Anthony v. Kelsey-Hayes Co.* (1972) 25 Cal.App. 442 (no mention of Song-Beverly); *Rodrigues v. Campbell Industries,* 87 Cal.App.3d 494 (no mention of Song-Beverly); *Burr v. Sherwin Williams* (1954) 42 Cal.2d 682 (decided 16 years before Song-Beverly was enacted); *Hauter v. Zogarts* 14 Cal.3d 104 (analyzes only the Cal. Com. Code); in *American Suzuki Motor Corp.*, unlike here, plaintiffs "impliedly conceded that nearly all of [the cars] have not [experienced the defect or its manifestations]." *American Suzuki Motor Corp.*, supra, 1298.

*American Suzuki Corp., Carlson* and *Baba* do not apply. Plaintiffs plead that all of the Washers have defective parts that have malfunctioned causing Biofilm, the Mold Problem and Foul Odors. SCAC ¶¶ 3, 6, 7. "A washing machine that makes laundry smell like mold and mildew has not performed its essential function of washing clothes, even if the machine is mechanically sound." *Terrill v. Electrolux Home Products, Inc.* CV 108-030, 2010 WL 4386711 at *9 (S.D. GA. Sept 2, 2010); *Marino v. Maytag Atl. Co* , 141 N.Y.S. 2d 432, 437 (N.Y. Mun. Ct. 1955) ("A washing machine that does not wash properly may also be deemed unmerchantable."). Plaintiffs plead the Washers are not merchantable as they do not perform their primary and intended purpose, e.g. to clean things washed in them. SCAC ¶¶ 14-22, 30-42, 47, 48, 62-65 & 66-81.

**C. The Washing Machines Do Not Conform to Promises or Affirmations of Fact Made on The Washers or Labels**

Plaintiffs plead and include photographs that show the promises and affirmations of fact made by BSH on the Washers themselves or on their labels. (See SCAC ¶¶ 49-59 and the photographs identified in the SAC as Figures 1-16.) Plaintiffs also repeatedly plead facts demonstrating that the Washers do not conform to those affirmations. At SCAC ¶ 176 Plaintiffs plead, "Plaintiffs' and Class members' Washers do not conform to the promises or affirmations of fact made on the labels including 'High Efficiency' 'High Care' and 'Xxtra Sanitary' as Clothes washed inside the Washers are impregnated with mold and mildew." Plaintiffs elsewhere plead that they used their Washers as recommended for their intended purpose but instead of resulting in clean Clothes, the Machines dirtied the Clothes. *Id.* ¶¶ 14-22, 30-42, 47, 48, 62-65, 66-81.

**D. Plaintiffs' Song-Beverly Implied Warranty of Merchantability Is Timely**

The California Court of Appeal has unequivocally held that a) the statute of limitations applicable to a Song-Beverly implied warranty claim is four years; b) a breach of Song-Beverly implied warranty does not have to be discovered within one

year of the date of purchase ("the Song-Beverly Act, makes clear that the statute merely creates a limited prospective duration for the implied warranty of merchantability; it does not create a deadline for discovering latent defects **or for giving notice to the seller**."); c) "[t]o 'the extent that [Song-Beverly] Act gives rights to the buyers of consumers goods, it prevails over conflicting provision of the Uniform Commercial Code.' (4 Witkin, Summary of Cal. Law. (10th ed. 2005) Sales §52, p. 63, citing, Civ. Code § 1790.3)"; and d) "[t]he implied warranty of merchantability maybe breached by a latent defect undiscoverable at the time of sale [ ]… In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery." *Mexia*, *supra*, at 288, 290-291.

Plaintiff Wentworth pleads that her Washer was defective at the time of sale (SCAC ¶ 173), and she sued within four years of purchasing her Washer. *Id.* ¶ 17. Therefore, her claim for breach of the Song-Beverly Act implied warranty of merchantability is timely.

**E. BSH Did Not Disclaim Plaintiffs' Implied Warranty**

The Song-Beverly Act express prohibits manufacturers from disclaiming the implied warranty of merchantability. Cal. Civ. Code § 1792.3 ("no implied warranty… shall be waived"). BSH does not argue that Plaintiff Wentworth's purchase was an "as is" or "with all faults" purchase. Therefore, BSH cannot claim that Plaintiff Wentworth waived her rights under Song-Beverly.

## VIII. THE ICFDTPA CLAIM IS SUFFICIENTLY PLED

BSH's argument is misplaced as it incorrectly cites Illinois law and ignores Illinois' leading omission fraud case. First, *De Bouse v. Bayer*, 235 Ill.2d 544, 557 (Ill. 2009) is limited to the realm of prescription medication – "Therefore, we limit our consideration… to whether offering prescription drugs for sale in Illinois is a representation that the drug is safe for its intended use." Secondly, BSH overlooks *De Bouse*'s repeated citing and re-affirmation of *Connick v. Suzuki Motor Co.*, 174

Ill.2d 482 (Ill. 1996), the leading case on fraudulent omissions in Illinois. As *De Bouse* states "[t]he [*Connick*] plaintiffs alleged the company knew of the dangers but never disclosed this information to consumers in its advertising. This court concluded… that consumer fraud may occur by concealment. Indeed, the [Illinois Consumer Fraud] Act itself references omissions and concealment as actionable." *De Bouse* at 555, referring to 815 ILCS 505/2. However, in *Connick*, the plaintiffs received communications from Suzuki, through a car review piece within "Car & Driver" magazine for which Suzuki provided misleading information. Viewed in this context, it is clear that the plaintiffs in *Connick* relied not on a "market theory" of causation, but on direct statements from Suzuki that contained both misleading statements and material omissions" (cites omitted). The holding of *Connick* was left unaffected by *De Bouse*. Further, the plaintiffs in this case are far more aligned with the facts in *Connick* than *De Bouse.* At SCAC ¶ 56, with photographs thereafter, Plaintiff Tait alleges that she observed and examined a Washer at ABT on July 19, 2005 at which time she specifically observed and read labels on the Washer including "High Efficiency,' 'High Care,' the warning labels as well as the recommendation to use 'High Efficiency Detergent.' Contrary to Bosch's assertion, Plaintiff Tait does allege that she saw the Machine and labels and stickers and words on the Bosch Washer. *Id.* ¶¶ 56 57, and Figs. 8-11. Plaintiff Tait pleads she was exposed and read Bosch's point of purchase advertisements and partial representations, none of which disclosed the material information at issue in this case - that the Washers have Defective Parts, a propensity to develop the Mold Problem, Foul Odors or other dangers BSH knew about its Washers.

**IX. THE MCPA CLAIM IS SUFFICIENTLY PLED**

BSH's argument that the MCPA should be dismiss is also misplaced as Plaintiff Gibson expressly pleads reliance. SCAC ¶¶ 61, 71 and 221. Regarding damages caused by BSH's omission of material information, BSH ignores the damages arising from additional costs to maintain the Machine to combat its residue/biofilm and

deleterious organic matter build-up.

Further, BSH' argument that Gibson's use and performance of the sanitary cycle should be pled are simply not required by Rule 9(b). In any event, she has pled use of the Xxtra Sanitary cycle. *Id.* ¶¶ 75-76. Perfect specificity is not required, only enough to inform the defendant of the particular circumstances for which it will have to defend at trial. *ISP Technologies, Inc. v. Capricorn Pharma, Inc.*, 2011 WL 2600674, *5 (D.Md. June 28, 2011)(Rule 9(b) does not require "the exact date and time of each misrepresentation and may be satisfied when the plaintiff names the entity, though not the specific person, making the misrepresentation)(cite omitted)." Plaintiff Gibson's pleading satisfies 9(b).

**X. THE § 349 AND § 350 CLAIMS ARE SUFFICIENTLY PLED**

As an initial matter, BSH does not maintain, beyond an argument claiming that their false representations about the washing machine are "puffery," that the Plaintiff has failed to state a claim under Section 349. Privity is not required to assert a deceptive practices claim under Section 349. *See, In Re MTBE Prod. Liab. Litig.*, 175 F. Supp.2d 593, 631 (S.D.N.Y. 2001), nor does the statute "require proof of actual reliance." *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). Contrary to BSH's arguments, "an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Id.*

> Plaintiffs must sufficiently allege and ultimately prove that the defendant made misrepresentations or omissions likely to mislead a reasonable consumer in the plaintiff's circumstances, that the plaintiff was deceived by those misrepresentation or omissions and that as a result the plaintiff suffered injury.

*Mintz v. American Tax Relief, LLC,* 837 N.Y.S.2d 841, 846 (Sup. Ct., NY Co. 2007) (citations, quotations omitted).

Here, like the other Plaintiffs, Plaintiff Isabella has detailed a range of omissions by BSH regarding her Washers (See Section IV., *supra*), including, most importantly, representing that the Washing Machines killed bacteria at the same time that BSH's internal documents reflect its awareness of serious mold and biofilm problems with

its Machines. SCAC ¶ 35. Plaintiff Isabella's complaints are not limited to some concern over the labeling on her Washing Machine; instead, no reasonable consumer would purchase a $1,000 washing machine that collects mold and bacteria, ruins clothing and presents a health hazard. Plaintiff Isabella's allegations are not based, even in part, on "puffery." Plaintiff Isabella's claims in this action go far beyond "subjective claims about products, which cannot be proven either true or false," *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, * 17 (E.D.N.Y. July 21, 2010), but rather address the very efficacy and merchantability of the product itself. Therefore, the § 349 claim is sufficiently pled.

BSH also argues that Plaintiff Isabella cannot maintain a false advertising claim under N.Y. GBL § 350 because she has not pled reliance on specific advertising. Plaintiff Isabella does plead, however, that she relied on the defendant's labels when purchasing her washing machine, as well as the omissions arising from those labels. SCAC ¶ 235. In-store advertising materials have been previously held to substantiate claims for deceptive trade practices by New York courts. *See, Mountz v. Global Vision Prod.*, 3 Misc.2d 171, 176, 770 N.Y.S.2d 603 (Sup. Ct., N.Y. Co. 2003) (interpreting, in part, Maine law). Reliance on the partial representations of the product itself is sufficient.

## XI. CONCLUSION

For the foregoing reasons, Bosch's MTD should be denied in its entirety. To the extent the Court grants Bosch's motion in any part, Plaintiffs request leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 317 F.3d 1048, 1052 (9th Cir. 2003)(The policy in favor of permitting amendment is to be applied with "extreme liberality.").

DATED: July 11, 2011

**EPPSTEINER & FIORICA ATTORNEYS, LLP**

By: ______________________
Stuart M. Eppsteiner (SBN 098973)
sme@eppsteiner.com
Andrew J. Kubik (SBN 246902)

ajk@eppsteiner.com
12555 High Bluff Drive
Suite 155
San Diego, CA 92130
Tel: (858) 350-1500
Fax: (858) 350-1501

**WEISS & LURIE**
Jordan L. Lurie (SBN 130013)
jlurie@weisslurie.com
Zev B. Zysman (SBN 176805)
zzysman@weisslurie.com
Joel E. Elkins (SBN 256020)
10940 Wilshire Boulevard
Suite 2300
Los Angeles, CA 90024
Tel. (310) 208-2800
Fax (310) 209-2348

**FREED & WEISS LLC**
Eric D. Freed (SBN 162546)
ericf@freedweiss.com
George K. Lang (*pro hac* forthcoming)
georgel@freedweiss.com
111 West Washington Street
Suite 1331
Chicago, Illinois 60602
Tel. (312) 220-0000
Fax (312) 220-7777

**LAW OFFICES OF ELMER ROBERT KEACH, III, PC**
Elmer Robert Keach, III, Esquire (*pro hac* forthcoming)
bobkeach@keachlawfirm.com
1040 Riverfront Center
Post Office Box 70
Amsterdam, NY 12010
Tel. (518) 434-1718
Fax: (518) 770-1558

**LEVIN, FISHBEIN, SEDRAN &BERMAN**
Daniel C. Levin, Esquire (*pro hac* forthcoming)
dlevin@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel. (215) 592-1500
Fax (215) 592-4663

*Counsel for Plaintiffs and the Proposed Class*