JAMES M. HANSEN, ESQ. (SBN 180177)
THOMAS M. RUTHERFORD, JR., ESQ. (SBN 192242)
**WILLIS DEPASQUALE, LLP**
725 W. Town & Country Road, Suite 550
Orange, California 92868
Tel    :    (714) 544-6000
Fax    :    (714) 544-6202
Email  :    jhansen@wdlegal.net
Email  :    trutherford@wdlegal.net

Attorneys for Defendant,
**BSH HOME APPLIANCES CORPORATION**

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| SHARON COBB, BEVERLY GIBSON, TRISH ISABELLA, DIANA TAIT, NANCY WENTWORTH, individually and on behalf of all others similarly situated <br><br> Plaintiffs, <br><br> vs. <br><br> BSH HOME APPLIANCES CORPORATION, a Delaware Corporation, <br><br> Defendant. | Case No. SACV10-711-DOC (ANx) <br><br> **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT BSH HOME APPLIANCES CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> [Filed in Support of and Concurrently with Opposition to Plaintiffs' Motion for Class Certification] <br><br> [Fed. R. Evid. 201] <br><br> **Date        :  SEPTEMBER 5, 2012** <br> **Time        :  9:00 A.M.** <br> **Courtroom   :  9D** <br><br> *Assigned to:* <br> U.S. District Judge:  David O. Carter <br> Courtroom: 9D <br><br> Discovery Magistrate Judge:  Arthur Nakazato |

- 1 -

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO MOTION FOR CLASS CERTIFICATION**                      SACV10-711-DOC (ANx)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Rule 201 of the Federal Rules of Evidence and the authorities cited below, Defendant BSH Home Appliances Corporation ("BSH"), by and through its attorneys, respectfully requests that the Court take judicial notice of the documents identified below and attached as Exhibits A through J, submitted concurrently herewith.  This request is made in connection with BSH's Opposition to Plaintiffs' Motion for Class Certification.

**Exhibit A**: "Class Action Complaint" in *Kleinman v. BSH Home Appliances Corporation,* Case No. BC417680 (Superior Court of California, County of Los Angeles, filed on July 13, 2009).

**Exhibit B**:   Court Order in *Kleinman v. BSH Home Appliances Corporation,* Case No. BC417680 (Superior Court of California, County of Los Angeles) (October 7, 2010 Minute Order Dismissing Case).

**Exhibit C**:   Court Order in *Butler, et al. v. Sears, Roebuck & Co.*, Case No. 06-CV-7023 (N.D. Ill. Sep. 30, 2011)("Order" – denying, in part, and granting, in part, Plaintiffs' Motion for Class Certification).

**Exhibit D**:   Court Order in *Dickerson, et al. v. Electrolux Home Products, Inc.*, Case No. CV10-5163-R-JEMx (C.D. Cal. Jan. 19, 2011) ("Order Denying Plaintiffs' Motion for Class Certification").

**Exhibit E**:   "First Amended Class Action Complaint" in *Dickerson, et al. v. Electrolux Home Products, Inc.*, Case No. CV10-5163-R-JEMx (C.D. Cal., filed Aug. 31, 2010).

**Exhibit F**:   "Master Class Action Complaint" in *In re: Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, Case No. 1:08-wp-65000, MDL No. 2001 (N.D. Ohio, filed Feb. 13, 2009).

**Exhibit G**:   "Class Action Complaint" in *Butler, et al. v. Sears, Roebuck & Co.*, Case No. 06-CV-7023 (N.D. Ill., filed Dec. 19, 2006).

///

- 2 -

1    **Exhibit H:**   "Class Action Complaint and Demand for Jury Trial" in

2    *Fishman v. General Electric Company*, Case No. 2:12-cv-00585-WJM-MF (D.

3    N.J., filed Jan. 31, 2012).

4    **Exhibit I:**   "Amended Class Action Complaint and Demand for Jury

5    Trial" in *Montich v. Miele USA, Inc.*, Case No. 11-2725-FLW-DEA (D. N.J., filed

6    Apr. 16, 2012).

7    **Exhibit J:**   "Consolidated Amended Complaint" in *In Re LG Front Load*

8    *Washing Machine Class Action Litigation*, Case No. 2:08-cv-00051-FSH-MAS (D.

9    N.J., filed May 6, 2008).

10

11                   **BASIS FOR REQUESTING JUDICIAL NOTICE**

12           A court may take judicial notice of facts that are "not subject to reasonable

13   dispute." Fed. R. Evid. 201(b).  This includes proceedings in other courts. *U.S. ex*

14   *rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244 (9th Cir.

15   1992) (a court "'may take notice of proceedings in other courts, both within and

16   without the federal judicial system, if those proceedings have a direct relation to

17   matters at issue.'")(Citing, *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169,

18   1172 (10th Cir. 1979)).

19           Exhibits A and B, submitted herewith, are filings from the Superior Court of

20   the State of California, for the County of Los Angeles and include Plaintiff's Class

21   Action Complaint and the Court's Minute Order dismissing the case, respectively.

22   Exhibits C and D, submitted herewith, are orders from the files of this district court

23   (Western Division of the Central District of California) and another federal district

24   (Northern District of Illinois), respectfully.  Exhibits E through J, submitted

25   herewith, are complaints from the files of this district court and other district

26   courts.  The contents of the filings set forth in each Exhibit are public records that

27   "can be accurately and readily determined from sources whose accuracy cannot

28   reasonably be questioned." Fed. R. Evid. 201(b)(2).  These Exhibits reflect

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO**
**MOTION FOR CLASS CERTIFICATION**                    SACV10-711-DOC (ANx)

1   proceedings in other state and federal courts and are appropriate for judicial notice

2   because they relate to issues similar to those being litigated here, specifically,

3   proposed classes of purchasers of washing machine claiming washing machine

4   defects.  Accordingly, BSH respectfully requests that this Court take judicial notice

5   of Exhibits A through J to demonstrate their existence and similarity to the claims

6   in this case.

7       For the foregoing reasons, Exhibits A through J may properly be considered

8   by the Court in support of BSH's opposition to Plaintiffs' Motion for Class

9   Certification.

10

11   DATED:   July 11, 2012            **WILLIS  DEPASQUALE, LLP**

12

13

14                        By **/s/ James M. Hansen**
15                        JAMES M. HANSEN
                          THOMAS M. RUTHERFORD, JR.
16                        Attorneys for Defendant,
                          **BSH HOME APPLIANCES**
17                        **CORPORATION**

18

19   250\0100005\Req. for Judicial Ntc - MCC

20

21

22

23

24

25

26

27

28

- 4 -

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO**
**MOTION FOR CLASS CERTIFICATION**                    SACV10-711-DOC (ANx)

# EXHIBIT A

Exhibit _A_ Pg. _5_

1  Jordan L. Lurie  (130013)
   jlurie@weisslurie.com
2  Zev B. Zysman (176805)
   zzysman@weisslurie.com
3  Joel E. Elkins (256020)
   jellkins@weisslurie.com
4  **WEISS & LURIE**
   10940 Wilshire Boulevard, 23rd Floor
5  Los Angeles, CA 90024
   Telephone:    (310) 208-2800
6  Facsimile:    (310) 209-2348

7  *Attorneys for Plaintiff and*
   *the Proposed Class*
8

**FILED**
Los Angeles Superior Court

JUL 13 2009

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

9

10           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                 **FOR THE COUNTY OF LOS ANGELES**

12

13

14  LESLEY KLEINMAN, on Behalf of Herself       Case No.:
    and All Others Similarly Situated,
15                                              **CLASS ACTION**
               Plaintiff,
16                                              **COMPLAINT FOR:**
         v.
17
    BSH HOME APPLIANCES CORPORATION             1.) Unlawful Business Practice in
18  and DOES 1 through 100, inclusive,          Violation of California Business &
                                                Professions Code § 17200, *et seq.*
19             Defendants.
                                                2.) False & Misleading Advertising in
20                                              Violation of California Business &
                                                Professions Code § 17500, *et seq.*
21
                                                3.) Violation of Consumer
22                                              Legal Remedies Act

23                                              4.) Breach of Consumer Warranty,
                                                California Civil Code § 1790, *et seq.*
24
                                                5.) Breach of Express Warranty
25

26

27                                              JURY TRIAL DEMANDED AS TO ALL
                                                ISSUES SO TRIABLE
28

Exhibit __1__  Pg. __6__

CLASS ACTION COMPLAINT

1    Plaintiff Lesley Kleinman brings this action against Defendant BSH Home Appliances
2  Corporation ("Defendant" or "BSH") and Does 1-100, inclusive on behalf of herself and all
3  others similarly situated, upon information and belief, except as to her own actions, the
4  investigation of her counsel, and the facts that are a matter of public record, as follows:

5                              **INTRODUCTION**

6    1.    This consumer class action arises out of design flaws and Defendant's
7  misrepresentations and omissions with respect to Defendant's Front Loading Washing Machines
8  (the "Washing Machines" or "Machines"). All of the Washing Machines possess a common
9  inherent design defect in the dryer drum and/or the door gasket seal or elsewhere that causes
10  water to not fully and properly drain after each wash cycle. The resulting water causes mold,
11  mildew or similar residue to accumulate in the Washing Machines which produces mold and foul
12  odors to escape from the Machines and to be on clothes and other items washed in the Machines.
13  Defendant marketed the defective Machines as providing superior quality and failed to disclose
14  the defects in order to sell more Machines.

15    2.    As a result of Defendant's misrepresentations and/or omissions regarding the
16  Washing Machines, Plaintiff and Class members overpaid for the Washing Machines because the
17  value of the Washing Machines was diminished at the time they were sold to consumers. Had
18  Plaintiff and Class members been made aware that the Washing Machines could not perform as
19  represented, they would not have purchased the Washing Machines, or would have paid
20  substantially less for them.

21    3.    Plaintiff asserts claims on behalf of a nationwide Class and/or a California Sub-
22  Class under, *inter alia*, California Business & Professions Code §§17200, *et seq*. ("UCL"),
23  California Business & Professions Code §§17500, *et seq*. ("FAL"), the California Consumers
24  Legal Remedies Act ("CLRA"), Civil Code §§1750, *et seq*. , and the California Consumer
25  Warranty Act, Civil Code §§1790, *et seq*., and asserts claims for breach of warranty.
26  ///
27  ///
28  ///

Exhibit __A__ Pg. __7__

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to Code of Civil Procedure § 410.10.  In the aggregate, the damages suffered and sought to be recovered by Plaintiff and the Class she seeks to represent exceed the jurisdictional minimum of this Court, but neither the Plaintiff nor any member of the Class individually has suffered damages of at least $75,000.

5.      Venue is proper in this Court since, as detailed below, a substantial number of Defendant's products involved in the action were sold in this County, Defendant received substantial compensation from sales of their products in this County by doing business here and Defendant made numerous misrepresentations and/or omissions which had effect in this County. Thus, as to the named Plaintiff, thousands of Class members and a portion of the overall Class, certain liability of the Defendant arose in part in this County.

## THE PARTIES

6.      Plaintiff Lesley Kleinman is, and at all material times was, a resident in the county of Los Angeles, California.

7.      Defendant maintains its principal place of business at 551 McFadden Avenue, Huntington Beach, California 92649.  BSH is a wholly owned subsidiary of BSH Bosch and Siemens Home Appliances Group based in Munich, Germany.   BSH is the world's third largest leading manufacturer of high-end appliances and sells under the Bosch, Siemens, Thermador and Gaggenau brand in the United States.  Defendant maintains a website at http://www.bsh-group.us. and http://boschappliances.com.  The BSH headquarters in Huntington Beach includes Executive Offices, Sales, Marketing, Finance, Logistics, IT, HR, and Customer Support.

8.      At all times herein mentioned, Defendants were the co-conspirators, agents, servants, employees, and/or joint venturers of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent of each of the other Defendants.

9.      The true names and capacities of Defendants sued in this Complaint as Does 1-100, inclusive, are currently unknown to Plaintiff, who therefore sue such Defendants by such

Exhibit ___4___ Pg. ___8___

1  fictitious names.   Each of the Defendants designated herein as a Doe is legally responsible in

2  some manner for the unlawful acts referred to herein.  Plaintiffs will amend this complaint to

3  reflect the true names and capacities of the Defendants designated herein as Does 1 through 100

4  when such identities become known.

5  **SUBSTANTIVE ALLEGATIONS**

6     10.     On or about February 17, 2007, Plaintiff purchased a Bosch Nexxt DLX Series

7  Washer, Model No. WFMC4301 and paid approximately $1,500.  Plaintiff purchased her

8  Washing Machine and used it for its intended purpose and in a manner consistent with its

9  intended use.

10     11.     Defendant provided Plaintiff and all owners of the Washing Machines with a 1

11  year full limited warranty from the date of installation, warrantying that the Washing Machines

12  were free from defects in materials and workmanship and warrantying that Bosch will repair or

13  replace, free of charge any component part that proves defective under conditions of normal use,

14  labor and shipping costs included.  Defendant also provided Plaintiff and all owners of the

15  Washing Machines with a 2 year limited warranty from date of installation, warrantying that

16  Bosch will provide replacement parts, free of charge, for any component part that proves

17  defective under conditions of normal home use, shipping costs included, labor charges excluded.

18     12.     In purchasing her Machine, Plaintiff relied upon, *inter alia,* the representations,

19  advertising and/or other promotional materials regarding the Machines which were prepared,

20  approved and disseminated by Defendant and its agents and contained the misrepresentations

21  and/or omissions alleged herein.  Nowhere did Defendant disclose that its Machines contained a

22  defect and/or that the Machines would cease to work properly or develop mold or mildew.  While

23  the Operator's Manual explains in detail various important safeguards, nowhere in the literature

24  is there any information concerning issues with mold or mildew as alleged herein.

25     13.     Defendant intended for customers to believe its uniform statements about its

26  Washing Machines and to trust that its high-end Washing Machines were of first rate quality,

27  despite Defendant's knowledge that these statements were misleading due to its omission of the

28

Exhibit __4__  Pg. __9__

CLASS ACTION COMPLAINT                                      4

1    material facts about defects in its Machine resulting in mold, mildew and foul odors, as alleged

2    herein.

3        14.    Defendant's representations regarding the Washing Machines are false,

4    misleading and/or fail to disclose material facts. Defendant knew or should have known and/or

5    were reckless in not knowing that their representations concerning the Washing Machines were

6    false, misleading and/or failed to disclose material facts.

7        15.    The non-disclosed information regarding the Washing Machines is and was

8    material to a reasonable consumer. The facts concealed or not disclosed by Defendant are

9    material in that, *inter alia*, reasonable people would have considered them important in making

10   their informed purchasing decisions. As alleged herein, the omitted information was material to

11   Plaintiff. Had the omitted information been disclosed, Plaintiff would have been aware of it and

12   acted differently. For example, Plaintiff would not have purchased the Washing Machine or

13   would have paid less for it.

14       16.    In 2008, Plaintiff noticed mold, mildew or a similar residue forming in the door

15   panel of her Washing Machine. In addition, there was a foul and noxious odor which emanated

16   from the Washing Machine when the door was opened. Plaintiff contacted Defendant's

17   customer service department and requested assistance. A service technician was dispatched to

18   Plaintiff's home to repair the malfunction. However, after spending just a few minutes

19   troubleshooting, the technician informed Plaintiff that he could find "nothing wrong," with the

20   Washing Machine.

21       17.    On or about June 15, 2009, Plaintiff again contacted Defendant's customer service

22   department regarding the persistent problems of mold, mildew and the foul smelling odor

23   emanating from her Washing Machine. The service representative at that time instructed

24   Plaintiff to purchase a cleaning agent, "AFFRESH." The service representative informed

25   Plaintiff that if after using the suggested product, the problem did not correct itself, it meant that

26   the [mold, mildew] was "imbedded in the gasket," and [it] "would have to be replaced."

27       18.    On information and belief, Defendant at various times has offered other forms of

28   "canned" responses in response to complaints from customers regarding the mold and mildew

Exhibit ___1___ Pg. _10_

1  problem.  None of these solutions was set forth in the Operator's Manual or elsewhere in

2  documentation that accompanied the sale of the Machines.

3      19.   As a result of Defendant's representations and/or omissions regarding the

4  Washing Machines, Plaintiff overpaid for the Washing Machines because the value of the

5  Washing Machines was diminished at the time of sale.   Had Plaintiff been made aware that the

6  Washer could not be used as advertised, she would not have purchased it or would have paid less

7  for it.  Plaintiff suffered injury in fact and has lost money or property as a result of Defendant's

8  actions.

9      20.   Plaintiff and Class members reasonably expected that the Washing Machines

10  would not contain design defects that would substantially impair the Machines' performance and

11  use.  Plaintiff and the Class reasonably expected that the Machines would not require extensive

12  and expensive repairs as a result of the defect which was known to Defendant at the time of sale.

13      21.   Defendant profited by concealing the nature of the defects because Defendant has

14  been able to convince a large number of consumers to buy the Washing Machines and to pay

15  Defendant for repair services to address the problems resulting from the defects at issue even

16  though Defendant has no remedy for the defects.

17      22.   Defendants was aware of the mold, mildew and odor problems with the machines

18  at issue in this case.  Defendant also has been advised by scores of Class members of this issue

19  and its negative impact on the Machines' performance.  Many members of the Class have posted

20  their experiences with the defective Machines on the Internet.  Despite such notice, Defendants

21  failed to acknowledge or remedy the issue, issue a recall, pay consumers for repairs, or provide

22  notification of the issue on its website or other forms of publication.  To this day, Defendants

23  have not taken the necessary steps to address the problems of which Defendants were well aware.

24  Defendant consistently has denied the scope and magnitude of the problems caused by the

25  defects.  Apparently unwilling to admit fault, Defendant sat silent while consumers bought this

26  defective product, knowing that it would malfunction, in an effort to "run out the clock" on the

27  warranties.  Moreover, in the face of its knowledge of the design defect that was present in the

28



Exhibit ___A___ Pg. __11__

1   Washing Machines at the time of sale, Defendant placed a one (1) year limitation on its warranty

2   that purported to cover the Washing Machines.

3       23.     Defendant had a duty to disclose the material facts alleged herein, even including

4   mold and mildew problems that occurred or manifested after the warranty period.  Plaintiff's

5   claims are not limited by the warranty period because mold and mildew are a safety issue.  These

6   safety issues were of concern to Plaintiff and the Class.  The presence of mold and mildew in the

7   machines poses a threat to Plaintiff's safety and the safety of others which Defendant had a duty

8   to disclose.  Inhaling and touching mold can cause allergic reactions, including sneezing and skin

9   rash.  Allergic reactions to mold are common.  Mold exposure can also irritate the eyes, skin,

10  nose, throat and lungs.  Severe sufferers may endure shortness of breath, tightening of the throat

11  and even respiratory distress.  Mold can also cause other problems such as severe memory

12  impairment, irritable bowel syndrome and chronic fatigue.

13      24.     Further, Defendant had a duty to disclose the material facts alleged herein

14  because Defendant had exclusive knowledge of material facts not known to Plaintiff and the

15  Class, and/or was in a superior position to know the undisclosed information and because

16  Defendant actively concealed the material information further creating a duty to disclose.

17      25.     Defendant's duty to disclose also arises from the fact that Defendant made partial

18  representations regarding the operation of the Washing Machines (such as the section on

19  "Troubleshooting" in the Owners' Manual which describes other issues but not mildew or water

20  build-up) but also suppressed other material facts *i.e.*, the facts as alleged herein regarding

21  defects in the Machines.  Defendant's conduct in issuing "partial disclosures" after the sale/lease

22  (*e.g.*, in the Owner's Manual) created a further duty to disclose.  Having spoken, Defendant had a

23  duty to speak the full and complete truth without material omissions.

24      26.     Further, as a seller, Defendant had a general duty to disclose the omitted facts

25  because they were known to Defendant but not accessible to consumers buying the Washing

26  Machines prior to the transactions.

27      27.     Defendant also had a duty to disclose facts known to Defendant that differed from

28  Plaintiff's ordinary and reasonable expectation and that were likely to deceive consumers in the

Exhibit___4___ Pg. _/2_

1   absence of such disclosures.  As alleged herein, consumers, such as Plaintiff, had a reasonable

2   expectation or assumption that their Washing Machines would not contain defects that caused

3   mold, mildew and or similar problems.

4       28.   The substantive legal provisions of the UCL also impose a duty on Defendant not

5   to engage in unfair, unlawful, fraudulent and deceptive business practices and not to conceal

6   material facts.

7       29.   As a result of Defendant's conduct, Plaintiff and the members of the Class have

8   been injured in fact and lost money or property and/or were damaged in connection with the

9   purchases of their Washing Machines.

10     30.   On information and belief, the issues as described below with the Washing

11   Machines may extend to other models or products, and Plaintiff expressly reserves the right to

12   amend this Complaint to include these other models and products.

13

14   **CLASS ACTION ALLEGATIONS**

15     31.   Without prejudice to later expansion or modification, Plaintiff brings this action as

16   a member and/or representative of the following Classes and Subclass:

17         (a)   A nationwide Class consisting of all persons or entities who purchased the

18            Washing Machines; and/or

19         (b)   A Class consisting of all persons or entities in California who purchased

20            the Washing Machines; and/or

21         (c)   A Sub-Class consisting of all class members who are "consumers" as

22            defined by California Civil Code § 1761(d).

23     32.   Excluded from the Classes and Subclass are Defendant, any entity which

24   Defendant have a controlling interest, and any of the Defendant' subsidiaries, affiliates, and

25   officers, directors, or employees, and any legal representative, heir, successor, or assignee of

26   Defendant.

27     33.   This action has been brought and may properly be maintained as a class action

28   pursuant to California Code of Civil Procedure § 382 and Civil Code § 1781, and case law

Exhibit____A____ Pg.__/3__

1  thereunder, to which the California trial courts have been directed by the California Supreme

2  Court to look for guidance.

3      34.    The members of the Classes and Subclass are so numerous that joinder of all

4  members is impracticable. While the exact number of Class and Subclass members is unknown

5  to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is

6  informed and believes, and on that basis alleges, that thousands of persons are members of the

7  Classes and Subclass.

8      35.    There is a well-defined community of interest in the questions of law and fact

9  affecting the parties represented in this action.

10     36.    Common questions of law and fact exist as to all members of the Classes and

11  Subclass. These common questions predominate over the questions affecting only individual

12  Class members.

13     37.    The questions common to members of the Classes and Subclass are, *inter alia*:

14        (a)    Whether Defendant engaged in unlawful, deceptive or unfair acts and

15            practices in violation of state consumer protection statutes, including

16            California Consumer Legal Remedies Act §1750, *et seq.*, California

17            Bus. & Prof. Code §§ 17200 and 17500, *et seq.*;

18        (b)    Whether Defendant, through their conduct, received money that, in equity

19            and good conscience, belongs to the proposed Classes and Subclass;

20        (c)    Whether Plaintiff and the Classes and Subclasses are entitled to equitable

21            relief, including but not limited to restitution and/or disgorgement;

22        (d)    Whether Plaintiff and the Classes and Subclass are entitled to the

23            injunctive relief sought herein; and

24        (e)    The nature and extent of damages and other remedies to which proposed

25            Class members are entitled as a result of Defendant' wrongful conduct.

26        (f)    Whether Defendant concealed or attempted to conceal from the Class and

27            the public that the Washing Machines have a design defect;

28

Exhibit____ Pg.____

1       (g)    Whether Defendant concealed or attempted to conceal from the Class and

2               the public that the Washing Machines are not of merchantable quality;

3       (h)    Whether Defendant's false and/or misleading statements of fact and its

4               concealment of material fact regarding the performance and reliability of

5               the Washing Machines were likely to deceive the public.

6      38.    Plaintiff's claims are typical of the claims of the members of the Classes and

7 Subclass as all members of the Classes and Subclass are similarly affected by Defendant's

8 wrongful conduct. Plaintiff has no interests antagonistic to the interests of the other members of

9 the Classes and Subclass. Plaintiff and all members of the Classes and Subclass have sustained

10 monetary damages arising out of the Defendant' violations of statutory law as alleged herein.

11      39.    Plaintiff's claims are made in a representative capacity on behalf of the other

12 members of the Classes and Subclass. Plaintiff has no interests antagonistic to the interests of the

13 other members of the proposed Classes and Subclass and is subject to no unique defenses.

14      40.    Plaintiff is similarly situated in interest to all of the members of the proposed

15 Classes and Subclass and is committed to the vigorous prosecution of this action and has retained

16 competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an

17 adequate representative of the proposed Classes and Subclass and will fairly and adequately

18 protect the interests of the Classes and Subclass.

19      41.    Plaintiff explicitly reserves the right to add additional class representatives,

20 provided that Defendant are given an opportunity to conduct discovery on the chosen

21 representative(s). Plaintiff will identify and propose class representatives with the filing of

22 Plaintiff's motion for class certification.

23      42.    A class action, particularly a nationwide class, is superior to all other available

24 methods for the fair and efficient adjudication of this controversy, since joinder of all members is

25 impracticable. Furthermore, as the damages suffered by individual Class members may be

26 relatively small, the expense and burden of individual litigation make it impossible for members

27 of the Classes and Subclass to individually redress the wrongs done to them.

28

Exhibit $\underline{A}$ Pg. $\underline{15}$

1    43.    There will be no difficulty in the management of this class action. Individualized

2  litigation presents the potential for inconsistent or contradictory judgments. A class action

3  presents far fewer management difficulties and provide the benefits of single adjudication,

4  economy of scale, and comprehensive supervision by a single court.

5    44.    Certification of such a class under the laws of California is appropriate because:

6        (a)    Defendant is a California corporation conducting substantial business in

7            and from California;

8        (b)    Defendant's principal and executive offices, as well as its corporate

9            headquarters, are located in California;

10        (c)    Defendant's marketing, promotional activities and literature are

11            coordinated at, emanate from, and/or are developed at its California

12            headquarters;

13        (d)    The Unfair Competition Laws expressly apply to claims asserted by out-

14            of-state Class members regarding false representations and/or omissions

15            emanating from California;

16        (e)    A significant number of Class members reside in California, and the

17            number of local class members is substantially larger than class members

18            from any other state. On information and belief, more than one-third of

19            the proposed Class members (and the primary Defendant) are citizens of

20            California.

21                **FIRST CAUSE OF ACTION**

22        **(Unlawful, Unfair and Deceptive Business Practices in Violation of
           California Business & Professions Code §17200, *et seq*. - As to All Defendants)**

23

24    45.    Plaintiff hereby incorporates the above allegations by reference as if set forth fully

25  herein.

26    46.    Plaintiff brings this cause of action on behalf of herself and on behalf of the

27  Classes.

28

            Exhibit __A__ Pg. __16__

_____

47.     The Unfair Business Practices Act defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.   California Bus. & Prof. Code §§ 17200 and 17500, *et seq.*  The Act also provides for injunctive relief and restitution for violations.

48.     Defendant' conduct as alleged herein constitutes unlawful, unfair and/or fraudulent business acts and practices.

49.     By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of California Bus. & Prof. Code §§ 17200 and 17500, *et seq.*

50.     Defendant's acts and practices as described herein have deceived and/or were likely to deceive Plaintiff and members of the consuming public, and Plaintiff suffered actual harm as a result.

51.     The injury to Plaintiff and consumers greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.  Specifically, Defendant sold Plaintiff and other Class members Washing Machines with a design defect that manifested shortly, if not during or immediately following the expiration of the one-year limited warranty. This injury clearly constitutes substantial injury as the Machines develop serious problems during or immediately after only one year.  The injury to Plaintiff and other Class members is not outweighed by any countervailing benefit.  Indeed, there is no benefit to consumers by allowing Defendant to knowingly market and sell a defective product and such conduct is facially unfair. The injury alleged herein could not reasonably have been avoided by Plaintiff and other Class members because it was caused by a design defect that was not disclosed by Defendant, but could have readily been avoided if Defendant had not misled Plaintiff and other Class members and concealed the existence of the design defect from them.

52.     Further, the acts and practices of Defendant are unlawful because they violate or violated one or more of the following: California Civil Code  §§1770(a)(5), (a)(7), (a)(9),(a)(16), (a)(19); California Commercial Code §2313; and California Bus. & Prof. Code §§ 17200 and 17500, *et seq.*

Exhibit _4_ Pg. _17_

1    53.    Unless Defendant is enjoined from continuing to engage in the unlawful, unfair,

2    fraudulent, untrue, and deceptive business acts and practices as described herein, consumers

3    residing within the United States, including California, will continue to be exposed to and

4    damaged by Defendant' unfair competition.

5    54.    Plaintiffs and members of the Classes suffered injury in fact and have lost money

6    or property as a result of Defendant's unfair competition, as more fully set forth herein. Plaintiff

7    and members of the Classes have been injured because they overpaid for the Washing Machines

8    since the value of the Washing Machines was diminished at the time of sale. Plaintiff and

9    members of the Classes have been injured because had they been made aware that the Washing

10   Machines could not be used as advertised, they would not have purchased the Machine, or would

11   have paid less for it.

12   55.    Defendant, through its acts of unfair competition, has unfairly acquired money

13   from the public. It is impossible for the Plaintiff to determine the exact amount of money that

14   Defendant has obtained without a detailed review of Defendant's books and records.  Plaintiff

15   requests that this Court restore this money and enjoin Defendant from continuing to violate

16   California Bus. & Prof. Code §§ 17200 and 17500, *et seq.*, as discussed above.

17   56.    Plaintiff seeks an order requiring Defendant to undertake a public information

18   campaign to inform members of the Classes of its prior acts or practices and notify members of

19   the Classes as to the presence of potential restitutionary relief.

20   57.    Plaintiff also seeks an order requiring Defendant to (a) make full restitution of all

21   monies wrongfully obtained and (b) disgorge all ill-gotten revenues and/or profits, together with

22   interest thereon.

23   58.    Plaintiff also seeks attorney's fees and costs pursuant to, *inter alia*, California

24   Civil Code §1021.5.

25   ///

26   ///

27   ///

28   ///

Exhibit ___A___ Pg. __18__

## SECOND CAUSE OF ACTION

**(False and Misleading Advertising in Violation of
California Business & Professions Code §17500, *et seq.* - As to All Defendants)**

59.     Plaintiff hereby incorporates the above allegations by reference as if set forth fully herein.

60.     Plaintiff brings this cause of action on behalf of herself and on behalf of the Classes.

61.     The misrepresentations, acts and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Bus. & Prof. Code §17500, *et seq.*

62.     At all times relevant, Defendant's advertising and promotion regarding their Washing Machines was untrue, misleading and likely to deceive the public and/or has deceived the Plaintiff and consumers.

63.     In making and disseminating the statements and/or omissions alleged herein, Defendant knew or should have known that the statements and/or omissions were untrue or misleading, and acted in violation of California Bus. & Prof. Code §§ 17200 and 17500, *et seq.*

64.     Plaintiff and members of the Classes have suffered injury in fact and have lost money or property as a result of Defendant's unfair competition, as more fully set forth herein. Plaintiff and members of the Classes have been injured because they overpaid for the Washing Machines since the value of the Washing Machines was diminished at the time of sale.   Plaintiff and members of the Classes have been injured because had they been made aware that the Washing Machines could not be used as advertised, they would not have purchased the Washing Machines, or would have paid less for it.

65.     Unless Defendant is enjoined from continuing to engage in such wrongful actions and conduct, members of the Classes will continue to be damaged by Defendant's false and/or misleading advertising.

Exhibit __4__ Pg. __19__

66.    Plaintiff also seeks an order requiring Defendant to (a) make full restitution of all monies wrongfully obtained and (b) disgorge all ill-gotten revenues and/or profits, together with interest thereon.

## THIRD CAUSE OF ACTION

**(Violation of Consumers Legal Remedies Act,
California Civil Code §1750, *et seq.* - As to All Defendants)**

67.    Plaintiff hereby incorporates the above allegations by reference as if set forth fully herein.

68.    Plaintiff brings this cause of action on behalf of herself and on behalf of the Subclass seeking permanent relief pursuant to the Consumer Legal Remedies Action, California Civil Code §1750, *et seq.*

69.    The CLRA applies to Defendant's actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale goods to consumers for personal, family or household use.

70.    Plaintiff and each member of the Subclass are "consumers" within the meaning of the Civil Code § 1761(d).

71.    Defendant's conduct as alleged herein constitutes a "transaction" within the meaning of Civil Code § 1761(cc.

72.    Defendant has violated and continue to violate, the CLRA in at least the following respects:

(a)    in violation of Civil Code § 1770(a)(5), Defendant has represented that the Washing Machines have characteristics and benefits they do not have, to wit, that they are free from defects in material or workmanship and conform to the factory specifications;

(b)    in violation of Civil Code § 1770(a)(7), Defendant has represented that the Washing Machines are of a particular standard when they are not, to wit, that they are free from defects in material or workmanship, conform to the factory specifications, and are of merchantable quality;

Exhibit ___*A*___ Pg. ___*20*___

(c)  in violation of Civil Code §1770(a)(9), Defendant has advertised the Washing Machines with an intent not to sell them as advertised, to wit, that they are reliable, they are free from defects in material or workmanship, and that they conform to factory specifications;

(d)  in violation of Civil Code §1770(a)(14), Defendant has represented to consumers that it has no obligation to repair or replace the Washing Machines even though they suffer from a common design defect of which Defendant is aware;

(e)  in violation of Civil Code §1770(a)(16), Defendant represented that the Washing Machines have been supplied in accordance with previous representations when it knew they have not, to wit, that they are free from defects in material or workmanship, and that they conform to factory specifications; and

(f)  in violation of Civil Code § 1770 (a)(19), Defendant has inserted an unconscionable provision in its limited warranty that contained a time limitation of a one (1) year period and purports to exclude serious design defects from warranty coverage. The warranty was included within the packaging of the Washing Machines and was unilaterally imposed by Defendant without negotiation on a "take it or leave it" basis. The limited warranty is unconscionable in light of Defendant's knowledge that the Washing Machines contained a design defect and would likely fail during their useful life. Provisions limiting the time and/or scope of the limited warranty provided by Defendant are unconscionable because they would cause Defendant's limited warranty to fail of its essential purpose in that, *inter alia*, the Washing Machines contain a common design defect that was present at the time of purchase and Defendant knew, or was reckless in not knowing, about the defect and the defect could not be discovered by Plaintiff and members of the Class at the time of purchase. Defendant possesses knowledge, bargaining strength and power far superior to that of Plaintiff and members of the Class. Without discussion or negotiation, Defendant

Exhibit ___4___ Pg. __21__

1   offers the limited warranty to its customers and such customers lack any

2   meaningful choice with respect to warranty terms.

3   73.   Defendant's conduct constitutes an intentional misrepresentation(s), deceit, and

4   concealment of a material fact(s) known to Defendant with the intention on the part of Defendant

5   of thereby depriving Plaintiff and members of the Subclass of property or legal rights or

6   otherwise causing injury.

7   74.   Pursuant to Civil Code § 1780(a)(2) and § 1782(d), Plaintiff and members of the

8   Subclass seek injunctive relief as to Defendant's violation of the CLRA.  Further, pursuant to

9   California Civil Code §1780(a)(3), Plaintiff and members of the Subclass seek restitution of all

10   amounts they have paid.  Plaintiff and members of the Subclass further request this Court to

11   award them their costs and reasonable attorney's fees, pursuant to California Civil Code §

12   1780(d).

13   **Notice Pursuant to Civil Code § 1782**

14   75.   Plaintiff hereby demands that within 30 days from service of this Complaint,

15   Defendant correct, repair, replace or otherwise rectify the deceptive practices complained of

16   herein for the entire subclass pursuant to California Civil Code §1770.  Failure to do so will

17   result in Plaintiff amending this Complaint to seek damages for such deceptive practices pursuant

18   to California Civil Code §1782.

19   **FOURTH CAUSE OF ACTION**

20   **(Violation of Consumer Warranty Act, Civil Code § 1790 et. seq - As to All Defendants)**

21   76.   Plaintiff hereby realleges and incorporates the above allegations by reference as if

22   set forth fully herein.

23   77.   The Washing Machines are "consumer goods" within the meaning of Civil Code

24   §1791(a).

25   78.   Defendant's express warranty and implied warranty of merchantability arose out

26   of and/or were related to the sales of the Washing Machines.

27   79.   The written warranty documents included with Defendant's Washing Machines

28   constitute express warranties that Defendant refused and/or failed to honor.

Exhibit ___1___ Pg. __22__

1    80.    Defendant's written warranty stated that the Washing Machines were free of
2    defects in materials and workmanship.

3    81.    Defendant breached its express warranties, as set forth above, by supplying the
4    Washing Machines in condition where they do not meet the warranty obligations undertaken by
5    Defendant.

6    82.    Defendant has received, upon information and belief, complaints and other notices
7    from its customers nationwide advising Defendant of the defects in the Washing Machines,
8    including from California residents.

9    83.    Despite this notice and Defendant's knowledge, Defendant refuses to honor its
10   warranty, even though it knows of the inherent defect in the Washing Machines.

11   84.    As stated above, the imposition of the one (1) year term for the limited warranty in
12   the face of Defendant's knowledge of a design defect at the time of purchase and that the
13   Washing Machines would likely fail during their useful life was unconscionable. Applying the
14   warranty limitation to limit the time and/or scope of the limited warranty provided by Defendant
15   would be unconscionable and would cause Defendant's limited warranty to fail of its essential
16   purpose in that, *inter alia,* the Washing Machines contain a common design defect that was
17   present at the time of purchase and Defendant knew, or was reckless in not knowing, about the
18   defect and the defect could not be discovered by Plaintiff and members of the Class at the time of
19   purchase. Defendant possesses bargaining strength and power far superior to that of Plaintiff and
20   members of the Class. Without discussion or negotiation, Defendant offers the limited warranty
21   to its customers and such customers lack any meaningful choice with respect to warranty terms.

22   85.    Defendant has been unable to conform the Washing Machines to the express
23   warranty.

24   86.    Further, the Washing Machines purchased by Plaintiff and the Class are not fit for
25   the ordinary purposes for which such Machines are used because the defects, among other things,
26   causes mold, mildew or similar residue to accumulate in the Washing Machines which produces
27   mold and foul odors to escape from the Machines and to be on clothes and other items washed in
28

Exhibit____A____ Pg.__23__

1   the Machines, thereby seriously impairing the use and functionality of the machines in a manner

2   which does not meet the expectations of Plaintiff or any other purchaser of the Machines.

3          87.     Plaintiff and the Class have suffered damages as a result of Defendant's failure to

4   comply with its warranty obligations and are entitled to recover damages pursuant to Civil Code

5   §1791(d) and 1794.

### FIFTH CAUSE OF ACTION

#### Breach of Express Warranty-As to All Defendants

8          88.     Plaintiff hereby realleges and incorporates the above allegations by reference as if

9   set forth fully herein.

10         89.     The written warranty documents included with Defendant's Washing Machines

11  constitute express warranties that Defendant refused and/or failed to honor.

12         90.     Defendant's written warranty stated that the Washing Machines were free of

13  defects in materials and workmanship.

14         91.     Defendant breached its express warranties, as set forth above, by supplying the

15  Washing Machines in condition where they do not meet the warranty obligations undertaken by

16  Defendant.

17         92.     Defendant has received timely notice of the breaches of warranty alleged herein

18  pursuant to California Commercial Code § 2607(3)(A).

19         93.     In addition, Defendant has received, upon information and belief, complaints and

20  other notices from its customers nationwide advising Defendant of the defects in the Washing

21  Machines, including from California residents.

22         94.     Despite this notice and Defendant's knowledge, Defendant refuses to honor its

23  warranty, even though it knows of the inherent defect in the Washing Machines.

24         95.     As stated above, the imposition of the one (1) year term for the limited warranty in

25  the face of Defendant's knowledge of a design defect at the time of purchase and that the

26  Washing Machines would likely fail during their useful life was unconscionable.  Applying the

27  warranty limitation to limit the time and/or scope of the limited warranty provided by Defendant

28  would be unconscionable and would cause Defendant's limited warranty to fail of its essential

Exhibit____A___ Pg. __24___

1 purpose in that, *inter alia*, the Washing Machines contain a common design defect that was
2 present at the time of purchase and Defendant knew, or was reckless in not knowing, about the
3 defect and the defect could not be discovered by Plaintiff and members of the Class at the time of
4 purchase. Defendant possesses bargaining strength and power far superior to that of Plaintiff and
5 members of the Class. Without discussion or negotiation, Defendant offers the limited warranty
6 to its customers and such customers lack any meaningful choice with respect to warranty terms.

7     96.    Defendant has been unable to conform the Washing Machines to the express
8 warranty.

9     97.    As a result of Defendant's breach of warranty, Plaintiff and the Class are entitled
10 to, *inter alia*, repudiation of their agreements and repayment of the money they spent to purchase
11 and/or repair their Washing Machines or actual damages equal to the diminished value of their
12 defective Washing Machines.

13

14                            **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Classes
15
and Subclass defined herein, pray for judgment and relief on all Causes of Action as follows:
16
    1.    An order certifying that the action may be maintained as a class action as defined
17
herein;
18
    2.    A temporary, preliminary and/or permanent order for injunctive relief requiring
19
Defendant to undertake an immediate public information campaign to inform members of the
20
proposed Class and the Subclass to their prior practices and notifying the members of the
21
proposed Class and the Subclass as to the presence of potential restitutionary relief;
22
    3.    An order requiring imposition of a constructive trust and/or disgorgement of
23
Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and to
24
restore to the Plaintiffs and members of the Classes all funds acquired by means of any act or
25
practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a
26
violation of laws, statutes or regulations, or constituting unfair competition;
27

28



Exhibit ___1___ Pg. ___25___

1      4.     Distribution of any moneys recovered on behalf of members of the Class via fluid

2  recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from

3  retaining the benefits of their wrongful conduct.

4      5.     Reasonable attorneys' fees pursuant to, *inter alia*,  California Code of Civil

5  Procedure §1021.5;

6      6.     Costs of this suit;

7      7.     Such other and further relief as the Court may deem necessary or appropriate.

8

9                     **JURY DEMAND**

10    Plaintiff demands a trial by jury as to all issues so triable.

11

12  Dated: July 13, 2009

                           **WEISS & LURIE**
                           Jordan L. Lurie

13                            Zev B. Zysman
                           Joel E. Elkins

14

15                  By: _____

16                           Jordan L. Lurie

17                  10940 Wilshire Boulevard, 23rd Floor
                  Los Angeles, CA 90024

18                  Telephone: (310) 208-2800
                  Facsimile:  (310) 209-2348

19                  *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

Exhibit ___A___ Pg. _26_

## AFFIDAVIT OF LESLEY KLEINMAN

I, LESLEY KLEINMAN, submit this affidavit pursuant to § 1780 (d) of the CAL. CIV. CODE, Consumers Legal Remedies Act, and declare the following:

    1.   I am the Plaintiff in the action captioned *Kleinman v. BSH Bosch Home Appliances Corporation, et. al.*

    2.   I am a resident of Los Angeles, California.

    3.   I am informed and believe that the Defendant in this action conducts substantial business activity in Los Angeles County and the transaction and wrongdoing complained of occurred in Los Angeles County and therefore this County is a proper place for trial of this action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this ___ day of July 2009, at Los Angeles, California.

LESLEY KLEINMAN

Exhibit __1__ Pg. __27__

# EXHIBIT B

Exhibit _B_ Pg. _28_

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 10/07/10 | DEPT. 23 |
| HONORABLE ZAVEN V. SINANIAN JUDGE | I. AYALA DEPUTY CLERK |
| HONORABLE #11 JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| C. LAM, C.A. Deputy Sheriff | G. AMMON, CSR #5202 Reporter |

| | | | |
|---|---|---|---|
| 8:35 am | BC417680 | Plaintiff Counsel | No Appearance |
| | LESLEY KLEINMAN VS BSH HOME APPLIANCES CORPORATION | Defendant Counsel | James M. Hansen (X) Thomas M. Rutherford (X) |
| | NON-COMPLEX (08-04-09) | | |

**NATURE OF PROCEEDINGS:**

MOTION OF PLAINTIFF, LESLEY KLEINMAN, ON BEHALF OF
HERSELF AND ALL OTHERS SIMILARLY SITUATED, FOR CLASS
CERTIFICATON;

The motion is called for hearing.

Plaintiff fails to appear.

Plaintiff's written request that the case be dismissed
is granted.

The case is ordered dismissed.

All future dates in this department are advanced and
vacated.

Defendant states that they will submit a Judgment of
Dismissal seeking costs against plaintiff.

The Court orders counsel to meet and confer regarding
the form of the judgment prior to its submission.

Page 1 of 1 DEPT. 23

MINUTES ENTERED
10/07/10
COUNTY CLERK

Exhibit _8_ Pg. _29_

# EXHIBIT C

Exhibit _C_ Pg. _30_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 31 of 309   Page ID
#:2632
Case: 1:06-cv-07023 Document #: 285 Filed: 09/30/11 Page 1 of 13 PageID #:10002

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LARRY BUTLER, JOSEPH LEONARD, )
KEVIN BARNES, VICTOR MATOS, )
ALFRED BLAIR, and MARTIN )
CHAMPION, individually and on behalf )
of all others similarly situated, )
 )
   Plaintiffs, )  No. 06-cv-7023
 )
 )
  v. )
 )  Judge Sharon Johnson Coleman
 )
SEARS, ROEBUCK AND CO., )
 )
   Defendant. )

**ORDER**

The plaintiffs in this action are purchasers of front loading, high efficiency washing

machines manufactured by Whirlpool and sold by Sears. They claim that the machines suffer

from two defects: an inability to cleanse inner surfaces which results in an accumulation of

bacteria and mold; and a faulty electronic control board unit that interrupts normal operation.

The plaintiffs allege that Sears' sale of the washers breached its express warranties against

defective products and its implied warranties of merchantability.

The plaintiffs seek certification of two class actions: a class including purchasers whose

machines suffered from the mold defect and a class including purchasers whose machines

suffered from the control board problem. They also seek to sever the two class actions into

separate proceedings. In addition, they request leave to amend their complaint to re-allege

previously dismissed claims of consumer fraud and unjust enrichment. Sears opposes each of

Exhibit _C_ Pg. _31_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 32 of 309   Page ID
#:2633
Case: 1:06-cv-07023 Document #: 285 Filed: 09/30/11 Page 2 of 13 PageID #:10003

the plaintiffs' motions, and also moves to strike testimony of a plaintiff expert offered in support

of the motion for class certification. The plaintiffs' motion to amend their complaint is denied.

Sears' motion to strike the testimony of plaintiffs' expert is denied. The plaintiffs' motion for

class certification is denied as to the proposed class of purchasers of washers suffering from the

mold defect, and granted as to the proposed class of purchasers of washers suffering from the

control unit defect. Plaintiffs' motion to sever is denied without prejudice to reconsideration of

the motion as dictated by further proceedings.

Background

Beginning in 2001, Sears sold Kenmore-brand front loading, high efficiency washers

manufactured by Whirlpool. The plaintiffs, each a purchaser of one of the machines, brought

this action, seeking damages under federal and state law for two claimed defects. According to

the plaintiffs, the wash cycles of front loading, high efficiency machines use less water overall

and water heated to lower temperatures than the cycles of top-loading, standard efficiency

machines. The plaintiffs allege that the lower volume of water and the lower water temperatures

result in diminished cleansing of dirt and other wash residue from some internal sections of their

machines. They further allege that this diminished cleansing, combined with the increased

sealing of the wash tub door compared with top loading machines, produces an environment that

results in the growth of bacteria and mold which ultimately creates odors that permeate the

laundry washed in the machines and even the areas where the machines are located. The

plaintiffs claim that this problem is inherent in the design of all of the Sears/Whirlpool front

loading high efficiency washers.

The second claimed defect is alleged to have affected a more narrowly defined group of

2

Exhibit___C___ Pg. _32_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 33 of 309   Page ID
#:2634
Case: 1:06-cv-07023 Document #: 285   Filed: 09/30/11 Page 3 of 13 PageID #:10004

machines. The parties do not dispute that all of the subject washers contain a "Central Control

Unit" (CCU), an electronic processor that instructs the machines to start and stop its various

functions. The plaintiffs claim that for machines manufactured from 2004 to 2007, the CCU was

provided to Whirlpool by a third party supplier, Bitron. They further claim that Bitron's

employees, while installing the CCU into its housing, sometimes damaged the circuit boards of

the CCUs, causing them to generate error messages that interrupted normal functioning of the

machines.

Before consolidation of their cases into this action, separate subgroups of the current

group of plaintiffs filed complaints that asserted consumer fraud claims against Sears under

various state statutes. The consumer fraud claims were dismissed by District Judge Joan H.

Lefkow for failure to make sufficient, non-conclusory allegations. The plaintiffs were allowed to

file amended complaints, and the consumer fraud claims were again dismissed, this time with

prejudice. *See Munch v. Sears, Roebuck and Co.,* 2008 WL 4450307 (N.D. Ill. 2008); *Bettua v.

Sears, Roebuck and Co.,* 2009 WL 230573 (N.D. Ill. 2009); and *Butler v. Sears, Roebuck and

Co.,* 2009 WL 3713687 (N.D. Ill. 2009). Plaintiffs' remaining claims are federal and state law

claims for breaches of express and implied warranties.

<u>Plaintiffs' Motion For Leave To File An Amended Complaint</u>

Plaintiffs seek leave to file an amended complaint which reasserts their consumer fraud

claims. Permission of any such amendment following dismissal of their claims with prejudice

would be contrary to the law of the case doctrine, which "reflects the rightful expectation of

litigants that a change of judges mid-way through a case will not mean going back to square

one." *Best v. Shell Oil Co.,* 107 F.3d 544, 546 (7th Cir. 1997). Although the law of the case

3

Exhibit _C_ Pg. _33_

doctrine is not an absolute bar to a court's reconsideration of its own rulings or those of a
different member of the same court, prior rulings should not be revisited in the absence of a
"compelling" reason, such as manifest error or a change in the law. *Minch v. City of Chicago,*
486 F.3d 294, 301 (7th Cir. 2007).

No compelling reason for revisiting Judge Lefkow's rulings has been presented by the
plaintiffs here. They contend that subsequent holdings by the Supreme Court (*Matrixx*
*Initiatives, Inc. v. Siracusano,* – U.S. –, 131 S.Ct. 1309 (2011)) and the Seventh Circuit *(In re*
*Text Messaging Antitrust Litigation,* 630 F.3d 622 (7th Cir. 2010)) establish the erroneous nature
of the dismissals of the consumer fraud counts of their complaints.

This court does not share the plaintiffs' view. In *Matrixx,* the Supreme Court held that a
plaintiff could sufficiently allege the failure to disclose materially adverse information about a
drug product without alleging a statistically significant link between the product and an alleged
harmful side effect. 131 S.Ct. at 1321-23. In contrast, the plaintiffs' consumer fraud claims in
this case were not held to be inadequate because of a failure to allege a statistically significant
number of washer problems, but because the only allegations supporting a consumer fraud claim
were conclusory assertions that Sears was aware of a high problem rate with the washers. Judge
Lefkow found that without some allegation of the comparison between problem rates for the
subject washers and those of other machines, the plaintiffs had not sufficiently alleged that the
problems were so common that Sears knew the machines were defective. *Butler,* 2009 WL
3713687 at *5. Therefore, while *Matrixx* suggests that materiality can be sufficiently alleged in
the absence of statistics, it does not suggest that the statistics provided by the plaintiff here were,
by themselves, sufficient to state a consumer fraud claim, or that the other pleading deficiencies

4

Exhibit_____*C*_____ Pg. _____*34*_____

Case 8:10-cv-00711-DOC-AN    Document 102    Filed 07/11/12    Page 35 of 309    Page ID
#:3636
Case: 1:06-cv-07023 Document #: 285 Filed: 09/30/11 Page 5 of 13 PageID #:10006

noted by Judge Lefkow could no longer serve as the basis for a 12(b)(6) dismissal.

Plaintiffs' reliance on *In re Text Messaging* is similarly misplaced. In that case the Seventh Circuit clarified that the pleading standard required to survive a 12(b)(6) dismissal motion is a "nonnegligible probability," (630 F. 3d at 629) but it did not in any way suggest that allegations of raw numbers of problem products, without further context, were sufficient to state a claim that a manufacturer knew of a product defect that it should disclose to consumers.

Plaintiffs' additional arguments in support of its assertion of compelling reasons to disregard the law of the case doctrine are unpersuasive. They contend that discovery revealed facts that would now enable them to plead their consumer fraud claims with appropriate specificity. However, they do not suggest that these revelations occurred after Judge Lefkow's most recent dismissal of those claims in November 2009. They also argue that other plaintiffs in similar actions for the same defects in Whirlpool-manufactured washers in other jurisdictions have been allowed to pursue consumer fraud claims, and that an inconsistent ruling here would be unjust. In the court's view, such inconsistency is a possibility inherent in the pursuit of multiple actions in different jurisdictions, and does not constitute a compelling basis for reconsideration of the prior dismissals of the plaintiffs' consumer fraud claims.

Plaintiffs' motion for leave to file an amended complaint is therefore denied.

<u>Defendant's Motion To Strike Opinions Of Plaintiffs' Expert</u>

Plaintiffs supported their motion for leave to certify this proceeding as a class action with the opinion of an expert, R. Gary Wilson. It is undisputed that Wilson holds a doctorate degree in mechanical engineering and that he was employed by Whirlpool from 1976 to 1999, including tenure from 1997 to 1999 as its director of laundry technology.

5

Exhibit _C_ Pg. _35_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 36 of 309   Page ID
\#:3637
Case: 1:06-cv-07023 Document #: 285 Filed: 09/30/11 Page 6 of 13 PageID #:10007

According to Wilson, the subject washers are defective in design because their basic

functional characteristics, including their use of lower water volumes at cooler temperatures than

standard machines, makes them unable to rid themselves of residue in the normal wash and rinse

cycles and makes them incubators for the growth of bacteria and mold. Wilson concluded that

the core design of all of the Whirlpool-built front loading high efficiency washers is defective,

without regard to any changes made to individual models to attempt to mitigate the problem.

It is undisputed that Wilson inspected fewer than 20 washers in total, that most of the

washers he inspected were from a group of machines known to have mold problems, and that he

did not evaluate the impact of model changes made by Whirlpool to address those problems.

Sears contends that his opinions must be excluded because they were based upon insufficient

facts and because they were not produced by reliable, scientifically valid methods.

An expert's testimony is not unreliable simply because it is founded on his experience

rather than on data. *Metavante Corp. v. Emigrant Savings Bank,* 619 F.3d 748, 761 (7th Cir.

2010). An expert knowledgeable about a particular subject need not be precisely informed about

all details of the issues raised in order to offer an opinion. *Thomas J. Kline, Inc. v. Lorillard,*

*Inc.,* 878 F.2d 791 (4th Cir. 1989). Here, Wilson's knowledge of and experience with washing

machine design is not questioned. The value of Wilson's testimony is not based upon his

sampling methods; it is instead based upon his knowledge of washer technology and his

understanding of the principles that generally keep machines functionally clean, as well as the

extent to which the subject machines depart from those principles. In the court's view, Wilson is

clearly qualified to use his knowledge of those principles to offer an opinion, for purposes of a

class certification motion, that all front loading high efficiency machines are similarly defective

Exhibit___C___Pg.___36___

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 37 of 309   Page ID
#:2638
Case: 1:06-cv-07023 Document #: 285 Filed: 09/30/11 Page 7 of 13 PageID #:10008

in design.  The fact that his opinion does not account for mitigating model changes that do not

alter the machines' basic design is relevant to the weight to be assigned to his opinion, but does

not indicate that the opinion is inadmissible in support of the certification motion.

Sears' motion to exclude Wilson's opinion is therefore denied.

<u>Class Certification - Machines With Mold Problems</u>

An action may be certified as a class action if the putative class satisfies all four

requirements of Federal Rule of Civil Procedure 23(a) - numerosity, commonality, typicality,

and adequacy of representation - and any one of the conditions of Rule 23(b).  *Siegel v. Shell Oil*

*Co.,* 612 F.3d 932, 935 (7th Cir. 2010).

Plaintiffs represent that the subject washers have been sold in several states for many

years, and Sears does not deny that the number of potential members of the putative class is

sufficiently large to make class action certification appropriate.  Plaintiffs also assert, without

dispute from Sears, that they and their counsel would be adequate representatives of the class.

Sears argues that the named plaintiffs are not typical of the class they purport to represent

because they did not notice odor problems, did not consider them significant, or were not

sufficiently troubled by them to report them to Sears within the warranty period.  A plaintiff's

claim is typical for purposes of Rule 23(a) analysis "if it arises from the same event or practice

or course of conduct that gives rise to the claims of other class members and his or her claims are

based on the same legal theory." *Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998), quoting *De*

*La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983).  Typicality may be

satisfied even if there are factual distinctions between the claims of the named plaintiffs and

those of other class members. *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009).  In the

7

Exhibit___C___ Pg.__37__

present case, even though plaintiffs may have suffered or noticed mold problems to different

degrees, their claims are all based upon the same course of Sears conduct: the sale of a washer

type that is alleged to be unduly prone to the problem.  The court therefore concludes that the

named plaintiffs' claims are typical of those of the class they seek to represent.

The court similarly concludes that the plaintiffs satisfy the commonality requirement of

Rule 23(a)(2).  To meet that requirement, "[i]t is enough that there be one or more common

questions of law or fact."  *Spano v. The Boeing Co.,* 633 F.3d 574, 585 (7th Cir. 2011).  Whether

the subject washers were uniformly defective in design, and whether their sale violates Sears'

warranties are questions that are apparently common to all members of the class, thus satisfying

the rule.

More problematic for the plaintiffs, however, is the requirement of Rule 23(b)(3): that

questions of law or fact common to class members "predominate over any questions affecting

only individual members."  A determination of whether questions common to class members

predominate begins with the elements of the underlying cause of action and an analysis of

whether they can be resolved on a common, classwide basis.  *Erica P. John Fund, Inc. v.*

*Halliburton Co.,* – U.S. – ,131 S.Ct. 2179, 2184 (2011).

Plaintiffs' complaint alleges that Sears did not have solutions that would resolve the

design defects that created the mold problem, and that it continued to sell the machines despite

its knowledge of the problem and of the inadequacy of its proposed remedies.  "Sears is aware

that the Mold Problem is caused *inter alia,* by the inability of the Machine to clean itself

following a wash cycle and that none of the proposed solutions Sears has offered Plaintiffs and

the Class members will adequately remedy the defect."  Amended Consolidated Class Action

Exhibit _C_ Pg. _38_

Complaint, Docket #162, par. 37. "Sears has long known that the Washing Machines suffer from a self-cleaning defect and do not perform as intended, because they are susceptible to and likely to experience Mold Problems as a result of *inter alia,* the water drainage defect, which Sears has been, and continues to be, unable to remedy." Id. at par. 43. The plaintiffs' allegations thus establish as central issues Sears' failure to fix the mold problem and its knowledge that the problem had not been and could not be fixed.

In response, Sears has produced evidence of numerous model changes that were aimed at fixing the mold problem, including problem areas identified by the plaintiffs' expert. One such change was a smoothing of the inside surface of the washer's water tub, eliminating crevices where mold could more easily evade rinse water. A second identified problem area was a metal cross piece component, which, according to plaintiffs' expert, also had crevices which promoted mold growth and which contained a level of copper that promoted corrosion. Sears produced unrebutted evidence that this piece was also smoothed in later models and that its copper content was reduced to lower the corrosion risk. Sears contends that these changes from model to model reduced any mold problems that the machines had. Declaration of Anthony Hardaway, Docket #231, Attachment 8, pars. 41-43

The plaintiffs do not offer any evidence suggesting that they assessed the impacts of any of these changes, and their expert's testimony indicates that he did not attempt to calculate any of those impacts in determining that the machines were defective in design, without regard to any later attempts to remedy the mold problem. The plaintiffs identify internal Whirlpool documents that characterize the problem as extending across all front loading high efficiency platforms, but these documents predate the model changes that, according to Sears, fixed the

Exhibit __C__ Pg. __39__

problem.

In the court's view, the issues raised by the effect of the washer modifications and the extent of Sears' knowledge across multiple product iterations cannot be answered on a basis as wide as the class defined by the plaintiffs' certification motion. If the washer model changes had any impact on the problem, the extent to which Sears continued to sell a defective washer and the extent of its knowledge of a continued problem are questions whose answers will differ from model to model.

Plaintiffs argue that the efficacy of such changes is an issue to be decided on the merits of their claim, and that their assertion of a design defect that defies all attempted remedies was sufficient to allow similar claims to be certified as a class action in a proceeding in the United States District Court for the Northern District of Ohio. The court notes that in the Seventh Circuit, preliminary inquiries into the facts and merits are appropriate in reviewing the predominance of common issues for certification purposes. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676-77 (7th Cir. 2001).

The model-specific issues regarding the washer modifications and Sears' knowledge of ongoing problems, in this court's view, outweigh the mold problem issues that can be resolved on a class-wide basis. See *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018-19 (7th Cir. 2002). The party seeking class certification bears the burden of demonstrating that each of the elements required for certification are present. *Retired Chicago Police Association v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993). The court concludes that this burden has not been met for the mold problem class, and accordingly denies the plaintiffs' motion to certify that class.

Exhibit _C_ Pg. _40_

Case 8:10-cv-00711-DOC-AN   Document 102    Filed 07/11/12   Page 41 of 309   Page ID
                                                                #:2642
Case: 1:06-cv-07023 Document #: 285 Filed: 09/30/11 Page 11 of 13 PageID #:10012

Class Certification - Machines With Control Unit Problems

As in its response to plaintiffs' motion to certify the mold problem class, Sears does not

dispute plaintiffs' assertion of the presence of the Rule 23(a) factors of numerosity and adequacy

of representation for certification of the proposed control unit class.  The common class

questions that satisfied the rule's moderate commonality requirement for purposes of the

proposed mold problem class achieve the same result for this proposed class.

Unlike the proposed mold problem class, the claimed predominance of common issues is

not lessened by model-specific differences within the control unit class.  This proposed class is

limited to an identified production period during which control units from a single supplier were

installed by a unique process.  The parties do not dispute that washers with the Bitron control

unit in question are readily identifiable by serial number, and Sears does not suggest that it

employed remedies that solved the problem before the end of the production run of the washers

in the proposed class.  Although Sears does contend that individual issues predominate over the

potential common issues in this proposed class, the court finds that the individual issues

identified by Sears do not outweigh the common issues raised by this class.

Sears also argues that the proposed control unit class is fatally over-inclusive because,

according to its records, the vast majority of its customers suffered no control unit issues, and

because the issues that did occur were not demonstrated to have been caused by the same defect.

The court considers Sears' assertions on this issue to be evidence of the problems for which it

received a customer complaint rather than a demonstration of the over-inclusive definition of the

class.  At this stage, it is not clear that the proposed class includes many members who were not

11

Exhibit  *C*  Pg.  *41*

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 42 of 309   Page ID
#:2643
Case: 1:06-cv-07023 Document #: 285   Filed: 09/30/11 Page 12 of 13 PageID #:10013

injured by alleged control unit defect, so Sears' assertions of overbreadth are not a basis for
denial of certification.

The court finds that the proposed control unit class meets the requirements of Rule 23(a),
that questions of law and fact common to members of the class predominate over questions
affecting only individual class members, and that a class action is superior to other methods for
fairly and efficiently adjudicating the issues of Sears' liability for the alleged control unit
problems.  Plaintiffs' motion for certification of a control unit class is therefore granted.

Plaintiffs' Motion To Sever

Plaintiffs ask that, for reasons of judicial economy, their control unit class claims be
severed from their mold problem claims.  Since the scope and direction of remaining proceeding
have not yet been determined, the court considers this motion to be premature, and accordingly
denies the motion without prejudice to its reassertion later in the proceedings.

Conclusion

The plaintiffs' motion for leave to file an amended complaint is denied.  Sears' motion to
exclude the opinions of the plaintiffs' expert is denied.  The plaintiffs' motion for certification of
a class of purchasers of machines with mold problems is denied.  The plaintiffs' motion for
certification of a class of all persons or entities who purchased, not for resale, a front-load

12

Exhibit ___C___ Pg. __42__

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 43 of 309   Page ID
#2644
Case: 1:06-cv-07023 Document #: 285 Filed: 09/30/11 Page 13 of 13 PageID #:10014

washing machine manufactured from 2004 to 2007 with a Bitron CCU, in the states of

California, Indiana, Illinois, Kentucky, Minnesota and Texas is granted.  The plaintiffs' motion

to sever is denied without prejudice.


So ordered.


September 30, 2011

Sharon Johnson Coleman
District Judge

13

Exhibit _C_ Pg. _43_

# EXHIBIT D

Exhibit \_\_\_\_\_ Pg. \_\_44\_\_

1

2

3

4

5

6

7

8

9

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| GLENN AND DEIRDRE DICKERSON, TAMMY FOX-ISICOFF, et al., | ) CASE NO.: CV-10-5163-R-(JEMx) ) |
| Plaintiffs, | ) ORDER DENYING ) PLAINTIFFS' MOTION FOR CLASS ) CERTIFICATION ) |
| v. | ) ) Date: January 3, 2011 |
| ELECTROLUX HOME PRODUCTS, INC., | ) Time: 10:00 am ) Courtroom: 8 |
| Defendant. | ) ) Hon. Manuel L. Real ) Action Filed:   July 14, 2010 ) ) ) ) ) ) ) ) ) ) ) ) |

Exhibit _2_ Pg. _45_

1        Before the Court is Plaintiffs' Motion for Class Certification under Rule

2 23 of the Federal Rules of Civil Procedure.  After reviewing the moving, opposition

3 and reply papers, and hearing counsel's additional oral argument, the Court holds as

4 follows:

5

6        The burden is on the party seeking certification to establish a prima

7 facie showing of each requirement under Rule 23(a) and an appropriate ground for

8 certification under Rule 23(b). *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1186

9 (9th Cir. 2001).  The motion to certify is denied because Plaintiffs failed to discharge

10 their burden under Rule 23(b)(3) and Rule 23(b)(2) is inapplicable in the instant case.

11        Rule 23(b)(3) incorporates a requirement of manageability as part of the

12 superiority element.  *See* Fed. R. Civ. P. 23(b)(3)(D).  It is not manageable to hold

13 one trial involving seven separate states' consumer protection and warranty laws.

14 *Woodard v. Fidelity National Title Insurance Co.*, 2008 U.S. Dist. LEXIS 108411

15 (D.N.M. Dec. 8, 2008); *Haley v. Medtronics, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996).

16 Plaintiffs allege that "the elements of each of these claims for each state are

17 remarkably similar."  But Plaintiffs provide no case-law, statutes, or in-depth

18 discussion demonstrating the supposed similarities among the states' laws with

19 respect to Plaintiffs' warranty and consumer protection claims.  As stated in *Kennedy*

20 *v. Natural Balance Pet Foods*, 2010 WL 55554, at *1 (9th Cir. 2010) (quoting *Zinser*

21 253 F.3d 1188-89), a class action plaintiff is required to provide a thorough analysis

22 of the applicable state laws where – as here – different states' laws would apply to

23 the claims at issue.  Plaintiffs here have not met that burden.

24        Finally, Rule 23(b)(2) is inapplicable in this action because the

25 predominant relief Plaintiffs seek is monetary, not injunctive or declaratory. *Molski*

26 *v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003).

27

28                                          1

[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Exhibit __2__ Pg. _46_

1            **NOW THEREFORE**:  Plaintiffs' Motion for Class Certification is

2 **DENIED**.

3

4            **IT IS SO ORDERED**.

5

6 Dated: January 19, 2011

7

8

9                                            _____

10                                 The Honorable Manuel L. Real

11 Respectfully submitted by

12         /s/ Darrel J. Hieber
DARREL J. HIEBER (CA SBN 100857)

13 darrel.hieber@skadden.com
JOHN H. BEISNER (CA SBN 081571)

14 john.beisner@skadden.com
JESSICA D. MILLER (pro hac vice)

15 jessica.miller@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16 300 South Grand Avenue
Los Angeles, California 90071-3144

17 Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600

18

19 Attorneys for Defendant
ELECTROLUX HOME PRODUCTS, INC.

20

21

22

23

24

25

26

27

28
                                         2

[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Exhibit ___ Pg. 47

# Exhibit E

Exhibit _E_ Pg. _48_



1   **EPPSTEINER & FIORICA ATTORNEYS, LLP**
    Stuart M. Eppsteiner (State Bar No. 098973)
2   Email: sme@eppsteiner.com
    Andrew J. Kubik (State Bar No. 246902)
3   Email: ajk@eppsteiner.com
    12555 High Bluff Dr., Ste. 155
4   San Diego, CA  92130
    Tel. (858) 350-1500
5   Fax (858) 350-1501

6   Counsel for Plaintiffs and the Class

7

8            IN THE UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  GLENN AND DEIRDRE DICKERSON,          )   Case No. CV10-5163R(JEMx)
    TAMMY FOX-ISICOFF, JOHN AND           )
12  SAMANTHA EDDY, GARY FRUTKOFF,         )
    DANIEL AND SHELENA HUNTER,            )   **FIRST AMENDED CLASS ACTION**
13  CHARLES AND ROSEMARY OVERLY;          )   **COMPLAINT**
    STEVE AND JENNIFER SCHRODER, AND      )
14  ISAAC AND GAIL WALKOVER, individually )
    and on behalf of all others similarly situated, )   [Jury Trial Demanded]
15                                        )
              PLAINTIFFS,                 )
16                                        )
         vs.                              )
17                                        )
    ELECTROLUX HOME PRODUCTS,             )
18  INCORPORATED,                         )
                                          )
19            DEFENDANT.                  )
                                          )
20

21       Plaintiffs Glenn and Deirdre Dickerson, Tammy-Fox Isicoff, John and Samantha Eddy;

22  Gary Frutkoff, Daniel and Shelena Hunter, Charles and Rosemary Overly, Steve and Jennifer

23  Schroder, and Isaac and Gail Walkover (jointly referred to as "Consumer Representatives") by and

24  through their undersigned counsel, individually and on behalf of all others similarly situated ("The

25  Class" or the "Class" (The Class and Consumer Representatives jointly are referred to as

26  "Plaintiffs")), allege the following facts and claims upon personal knowledge and upon

27  information and belief as to all other matters as follows:

28                               0

1

2                                    **JURISDICTION AND VENUE**

3          1.      This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2) because the

4   amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed Classes

5   consist of more than 100 members, and this is a class action in which the members of the proposed

6   Classes and Defendant are citizens of different states.

7          2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because

8   Defendant does substantial business in this district, and a substantial part of the events or

9   omissions giving rise to Plaintiffs' claims took place within this district.

10

11                                    **INTRODUCTION**

12         3.      Plaintiffs bring this class action on behalf of themselves and all others similarly

13  situated against Defendant, Electrolux Home Products Incorporated ("Defendant" or "Electrolux"

14  or "EHP"), seeking damages, restitution, a constructive trust, and injunctive relief for the proposed

15  Classes as defined herein.

16         4.      This action is brought to remedy violations of law in connection with Defendant's

17  design, manufacture, sales, performance, servicing and warranting of its Horizontal Axis/Front-

18  Loading Automatic Clothes Washers, including, but not limited to, Crosley, Electrolux, Frigidaire,

19  and White-Westinghouse branded machines (hereinafter collectively referred to as "Washing

20  Machine(s)" or "Machine(s)").   The Crosley, Electrolux, Frigidaire, and White-Westinghouse

21  Washing Machines' relevant design, parts, pieces, operation and materials are the same. There are

22  no differences in the Washing Machines that relate to, arise from, or are relevant to the cause or

23  effect of the Defects (defined below) at issue in this case.

24         5.      The North American washing machine market today is comprised of both vertical

25  (top-loading) and horizontal axis (front-loading) washing machines.  Historically, North American

26  consumers purchased vertical axis washing machines, which as part of their operation clean and rid

27  themselves of suds, detergent, softener, waste water, and bioorganic material; as a result of the

28                                          1
                                FIRST AMENDED CLASS ACTION COMPLAINT

Exhibit___*E*___ Pg.___*50*___

1    foregoing, vertical axis machines effectively clean themselves of the stated materials ("Self-

2    Clean"). American Consumers' Washing Machine expectations, habits and practices are based on

3    decades of using vertical axis washing machines that effectively Self Clean. The Washing

4    Machines do not effectively Self Clean, but instead cause Biofilm (defined below) to be deposited

5    throughout the Washing Machines, which foster and cause bioorganic material to develop inside of

6    them and emit Foul Odors (defined below).

7        6.    The Foul Odors are proof of the actual problem; the Washing Machines fail to Self

8    Clean. As a result, detergent, fabric softeners, suds, skin, hair, oils, soils, and lint combine to form

9    a filmy substance referred to as "Biofilm" that develops within the Washing Machines in places

10    where consumers cannot remove it. Bacteria, mold, fungus, and bioorganic material feed and grow

11    on and become incorporated into the Biofilm ("Mold Problem") and within a short time after being

12    put to use the Washing Machines have Biofilm and the Mold Problem which produce offensive

13    odors experienced by Plaintiffs ("Foul Odors").

14        7.    Mold, according to the Federal Centers for Disease Control and Prevention, can cause

15    symptoms that include nasal stuffiness, eye irritation, wheezing, skin irritation, fever, and shortness

16    of breath. For people with chronic lung illnesses, mold infections can develop in their lungs, and

17    exposure to mold can also bring on asthma attacks. Molds grow best in warm, damp, and humid

18    conditions, and spread and reproduce by making spores. Mold spores can survive harsh

19    environmental conditions, such as dry conditions, that do not support normal mold growth. The

20    spores can also survive bleach and hot water cleaning cycles.

21        8.    Electrolux did not, and does not provide, either prior to or at the time of purchase, any

22    information to the Representative Consumers or the Class members regarding the Washing

23    Machines' Defects and propensity to accumulate Biofilm and develop Foul Odors and the Mold

24    Problem.

25        9.    The Washing Machines' many Defects, cause Biofilm to accumulate inside the

26    Machines, and development of the Mold Problem which leads to Foul Odors even when the

27    Machines are used and maintained as recommended by Electrolux. These many Defects include,

28

2

FIRST AMENDED CLASS ACTION COMPLAINT

Exhibit _E_ Pg. _51_

1   among other things, the failure of the Washing Machines to: 1) properly drain water and to

2   evaporate, dissipate and eliminate lingering heat, humidity, and moisture following a wash cycle;

3   2) sufficiently remove during the wash cycles, detergent, fabric softener, lint, oils, suds, and soils

4   to prevent the development and accumulation of Biofilm on different parts of and surfaces within

5   the Washing Machines, including (a) on the Tub (defined below), b) the Basket (defined below), c)

6   the Basket Support Arm (defined below), d) the area near and around the sump and pump

7   components, e) detergent and softener dispenser, f) hoses and tubing and g) the gasket which is

8   located between the Basket and the Washing Machine door and which retains water and moisture

9   following the completion of the Washing Machines' cycles; 3) prevent the accumulation of

10  Biofilm, which contributes to the Mold Problem when detergent and fabric softener are used in the

11  amounts instructed and recommended by Defendant; 4) have dispenser compartments that: i)

12  communicate the amount of detergent and fabric softener that consumers should use, or ii) prevent

13  consumers from using too much detergent or fabric softener; 5) have materials made with

14  sufficient or appropriate anti-microbial additives to prevent or reduce the growth of bioorganic

15  matter that develops and lives on parts of the Washing Machines that come in contact with wash

16  water and/or wash waste water; 6) revert the air in the interior of the Tub (defined below) and

17  Basket (defined below) to the ambient humidity of the room in which the Washing Machines are

18  located within sufficient time following a wash cycle; and 7) clean themselves of Biofilm and the

19  Mold Problem, including, but not limited to, the parts described in (2)(a-g) of this paragraph. (The

20  defects described in paragraph 9 (1-7) are cumulatively hereafter referred to as the "Defects.")

21       10.   As a result of these enumerated failures, the Washing Machines do not satisfy the

22  purpose for which they were purchased; i.e. to clean clothes, towels, bedding, and other washable

23  items (hereinafter collectively referred to as "Clothes") and make Clothes smell fresh and clean.

24       11.   Plaintiffs assert claims on behalf of themselves and a series of subclasses, stated

25  below, for violations of consumer protection statutes, warranty laws, and unjust enrichment for the

26  following states: California, Florida, Maryland, Michigan, New York, Oregon, Pennsylvania, and

27  Texas.

28

Exhibit____E____ Pg.__52__

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 53 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 6   Filed 08/31/10   Page 5 of 112   Page ID #:107
#:2654

**THE PARTIES**

**Plaintiffs**

12.     Consumer Representatives Deirdre and Glenn Dickerson ("Dickersons") are citizens of Texas and reside in Houston, Texas.  On or about October 20, 2008, Deirdre and Glenn Dickerson purchased an Electrolux Washing Machine (Model No. EWFLW65HIW) from Sara Appliances & Electronics located in Houston, Texas.  Within several months of owning and operating the Machine under normal household conditions, and as recommended by Electrolux, the Washing Machine accumulated Biofilm and developed Foul Odors and the Mold Problem.  The Dickersons complained to Electrolux about the Foul Odors and Mold Problem, but Electrolux simply recommended that they run more frequent bleach and hot water cycles.  The Dickersons' Machine continues to have Biofilm, Foul Odors, and the Mold Problem.

13.     Consumer Representative Tammy Fox-Isicoff ("Ms. Fox Isicoff") is a citizen of Florida and resides in North Miami Beach, Florida.  In June 2009, Ms. Fox-Isicoff purchased a new Electrolux Washing Machine (Model No. EIFLW55HIW0; Serial No. 4C92100358) from a Sears store in Miami, Florida.  Within approximately three months after beginning use of the Machine, it began emitting Foul Odors as well as accumulating Biofilm and microbial growth on the door gasket.  Ms. Fox-Isicoff complained to Electrolux about the Foul Odors, Biofilm, and microbial growth, but an Electrolux representative told her that the mold growth on the gasket of her Machine was not covered under the Warranty (defined below).  Eventually, on April 27, 2010 Electrolux replaced her door gasket, with the same gasket that was originally installed in the Machines, at no charge (although the service technician left her a receipt stating that the value of the gasket and services performed was $264.74).  Ms. Fox-Isicoff runs weekly cleaning cycles using bleach, dries the interior of her Machine, and leaves the Machine door open between uses; however, Ms. Fox-Isicoff's Machine continues to have Biofilm, Foul Odors, and the Mold Problem.  Plaintiffs' counsel, along with their expert, and in the presence of Electrolux's expert, disassembled Ms. Fox-Isicoff' Machine on July 15, 2010.  The disassembly revealed microbial growth in the Tub (defined below), the sump area, the detergent dispenser-Tub interface, the drain

1  hose, as well as other areas.  Sampling of the microbial growth confirmed the presence of mold

2  and/or bacteria on these parts.

3       14.     Consumer Representatives John and Samantha Eddy ("Eddys") are citizens of

4  Maryland, and reside in Waldorf, Maryland.  On or about April 1, 2008 the Eddys purchased a new

5  Frigidaire Affinity Washing Machine (Model No. ATF6700FS1; Serial No. XC81008628) from a

6  Sears store in Waldorf, Maryland.  Within three to four months of owning and operating the

7  Machine under normal household conditions, and as recommended by Electrolux, the Washing

8  Machine accumulated Biofilm, and developed Foul Odors and the Mold Problem.  On February 6,

9  2009 the Eddys' Machine's door gasket was replaced under Electrolux's warranty in response to

10  due to a leak.  On November 24, 2009, the Eddys had their detergent dispenser tray replaced under

11  Electrolux's warranty.  At the time of the Sears technician's visit to replace the dispenser tray, the

12  Eddys complained of Biofilm, the Foul Odors and the Mold Problem.  The technician declined the

13  Eddys' request to repair or replace the Machine for defects in materials and workmanship that are

14  causing Biofilm, Foul Odors and the Mold Problem, and suggested that they use a product called

15  Washer Magic to clean their Machine.  The Eddys used Tide Washing Machine Cleaner, Affresh,

16  several bottles of Washer Magic as well as other Extraordinary Actions (defined below) to try to

17  clean their Machine, but their Machine continued to accumulate Biofilm, and experience Foul

18  Odors and the Mold Problem.  On July 1, 2010, the Eddys complained directly to Electrolux about

19  the accumulation of Biofilm, Foul Odors and the Mold Problem.  Without explanation, Electrolux

20  sent the Eddys a new door gasket free of charge.  Electrolux did not provide the labor to remove

21  and replace the door gasket.

22       15.     Consumer Representative Gary Frutkoff ("Mr. Frutkoff") is a citizen of California

23  and resides in Venice, California.  On or about May 6, 2008, Plaintiff Frutkoff purchased a new

24  Frigidaire Affinity Washing Machine (Model No. ATF8000FS; Serial No. C74408683) from

25  Carlsons Appliances, Inc., in Venice, California.  Within several months of owning and operating

26  the Washing Machine under normal household conditions, and as recommended by Electrolux, the

27  Washing Machine accumulated Biofilm, and developed Foul Odors and the Mold Problem.  Mr.

28  Frutkoff gave notice to Electrolux about accumulation of Biofilm, Foul Odors, and the Mold

Exhibit___E___ Pg. _54_

1   Problem. Electrolux sent Mr. Frutkoff a replacement door gasket, but refused to pay for or provide

2   the labor needed to replace the original gasket. As a result, Mr. Frutkoff removed his moldy gasket

3   and installed the new gasket himself. Mr. Frutkoff provided Electrolux with pre-suit notice of his

4   problems with Biofilm, Foul Odors and the Mold Problem in his Machine and has had to undertake

5   the Extraordinary Actions (defined below) Electrolux recommended to him. Despite performing

6   the Extraordinary Actions, Mr. Frutkoff's Washing Machine continues to have Biofilm, Foul

7   Odors and the Mold Problem.

8         16.    Consumer Representatives Daniel and Shelena Hunter ("Hunters") are citizens of

9   Oregon and reside in Damascus, Oregon. On or about September 12, 2008, the Hunters purchased

10   a new Crosley Washing Machine (Model No. CFW4000FW, Serial No. XC82815114) from

11   Gassman Appliance Repair in Boring, Oregon. The Hunters first noticed Foul Odors within one

12   year of the filing of this Complaint. The Hunters' Machine continues to have Biofilm, Foul Odors,

13   and the Mold Problem.

14         17.    Consumer Representatives Charles and Rosemary Overly ("Overlys") are citizens of

15   Pennsylvania and reside in Scottdale, Pennsylvania. On or about September 22, 2008 the Overlys

16   purchased a new Crosley Washing Machine (Model No. CFW4000FW; Serial No. XC82403006)

17   from Chroma TV & Appliances in Connellsville, Pennsylvania. The Overlys began noticing Foul

18   Odors emanating from their Washing Machine and mold appearing on their door gasket within

19   three-to-four weeks of first using the Machine. The Overlys immediately complained about the

20   Foul Odors and Mold Problem to Chroma TV and Appliances who in response sent a technician

21   from Hyatt Appliance to inspect their Machine in November of 2008. The technician merely

22   advised the Overlys to keep the Machine door open and wipe dry the rubber gasket. The Foul

23   Odors persisted and the Overlys complained directly to Electrolux regarding the Foul Odors and

24   the Mold Problem multiple times during the first year of using the Machine. In response to the

25   Overlys' complaints, Electrolux advised the Overlys to run an empty hot water cycle with bleach

26   once per week. In April of 2009, Electrolux replaced the Overlys' door gasket. Despite

27   employing the Extraordinary Actions, including wiping dry the gasket after use, running empty hot

28   water and bleach cycles on a weekly basis, and leaving the door open between cycles, the Overlys'

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 56 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 6   Filed 08/31/10   Page 8 of 112   Page ID #:110
#:2657

1    Washing Machine continued to accumulate Biofilm, emit Foul Odors, and experience the Mold

2    Problem.  Mold reappeared on the new door gasket within two months of being installed.  The

3    continued Foul Odors and Mold Problem plaguing the Overlys' Machine and the failure of

4    Electrolux to honor its warranty obligations caused the Overlys to cease using their Washing

5    Machine on or about August 13, 2010 and incur the cost of a replacement washing machine.

6          18.    Consumer Representatives Steve and Jennifer Schroder ("Schroders") are citizens

7    of Michigan and reside in Grand Rapids, Michigan. On or about November 7, 2007, the Schroders

8    purchased a new Crosley Washing Machine (Model No. CFW4000FWO; Serial No. XC71719216)

9    from Rosenberg Hardware in Grant, Michigan. The Schroders began noticing Foul Odors

10   emanating from their Washing Machine within the first year of using their Machine.   Shortly

11   thereafter, the Schroders discovered mold growing on the Machine's door gasket. The Schroders'

12   Machine continues to accumulate Biofilm, have the Mold Problem, and emit Foul Odors.

13         19.    Consumer Representatives Isaac and Gail Walkover ("Walkovers") are citizens of

14   New York and reside in Woodmere, New York. On or about July 16, 2008, the Walkovers

15   purchased a new Frigidaire Gallery Washing Machine (Model No. GLTF2940FE1; Serial No.

16   XC82909918) from P.C. Richard & Son in Rockville Centre, NY.  Within several months of using

17   the Machine, the Walkovers noticed a musty smell emanating from the Machine and discovered

18   mold growing on their Machine's door gasket. The Walkovers contacted Electrolux and explained

19   the problem.   An Electrolux representative stated that Electrolux has received many similar

20   complaints about Foul Odors and the Mold Problem, but that Electrolux would not fix the Machine

21   under warranty and that repeated bleach cleanings were the only solution.    Despite running

22   repeated bleach cycles, wiping dry the gasket and interior of the Machine, and leaving the Machine

23   door open between washes, the Walkover's Machine continues to accumulate Biofilm, have the

24   Mold Problem, and emit Foul Odors.

25   ///

26   ///

27   ///

28

7

FIRST AMENDED CLASS ACTION COMPLAINT

**Defendant**

20.     Electrolux Home Products Incorporated is a Delaware corporation and maintains its principal place of business at 250 Bobby Jones Expressway, Martinez, Georgia 30907.   EHP designs and manufactures the Washing Machines in its Webster City, Iowa and Juarez, Mexico facilities.   According to the Electrolux Group 2009 Annual Operating Report, the Webster City facility is scheduled to be closed, and production of laundry appliances is to be consolidated in Juarez, Mexico sometime in 2011.   The Webster City facility has the capacity to produce 1.5 million Machines per year.

21.     North American corporate office operations for EHP are in the process of being consolidated to a new headquarters in Charlotte, North Carolina.

22.     EHP is a subsidiary of Electrolux Group which is based in Sweden and is the second-largest appliance manufacturer in the world.

**FACTUAL BACKGROUND**

23.     Defendant is in the business of manufacturing, producing, distributing, and/or selling front-loading Washing Machines throughout the United States under the brand names Crosley, Electrolux, Frigidaire, and White-Westinghouse.   The Washing Machines sold under these brands are substantially identical, and Plaintiffs are informed and believe the brands of the Washing Machines are and were manufactured in the same facilities.

24.     Electrolux manufactured, produced, and/or distributed Washing Machines for sale by its network of authorized dealers including several leading retailers in the United States, such as ABT, Best Buy, Lowe's, Pacific Sales, Sears, and other large retail chains, as well as through independently-owned distributors.

25.     According to the 2009 Annual Report posted on Electrolux Group's website, Frigidaire-branded products are sold in the low-price and mass market segments of the appliance market, and Electrolux-branded products are sold in the premium segment of the appliance market.

26.     White-Westinghouse is a brand named used by Electrolux to market and sell Machines.   Electrolux sells appliances under this brand in more than 45 countries.   The White-

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 58 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 2659   Filed 08/31/10   Page 10 of 112   Page ID
#:112

1   Westinghouse models are identical to the lower-priced Frigidaire branded Machines.  For example,

2   White-Westinghouse model WTF330HS is identical to Frigidaire model FTF530FS, with the

3   exception of being branded with as a White-Westinghouse appliance.

4        27.     Crosley Group Incorporated ("Crosley") is a regional distribution organization that

5   consists of independently-owned distributors of home appliances and electronics such as washing

6   machines, dryers, ranges, microwave ovens, dishwashers, air conditioners, refrigerators, and

7   televisions.  It was established to help independent distributors and retailers compete in the

8   marketplace with "quality appliances at affordable prices."  Crosley is not a manufacturer.  All of

9   Crosley's appliances are manufactured by large appliance manufacturers and sold through

10  independent appliance retailers through a network of over 15,000 outlets.  Crosley Washers are

11  manufactured by Electrolux, using Frigidaire models, and by LG of Korea.  In addition to

12  designing, assembling and manufacturing the Crosley brand Machines, Electrolux labels the

13  Machines with "Crosley" badges, drafts the Operating Instructions for the Crosley badged

14  Machines, makes the Operating Instructions available through its Frigidaire internet website

15  (http://www.frigidaire.com/manuals), issues the warranty that covers the Crosley branded washers,

16  provides warranty service and replacement parts, provides a 1-800 telephone number in the

17  Operating Instructions which is the phone number of Electrolux's Frigidaire warranty and service

18  call center, and introduces the Washing Machines into the stream of commerce.  Electrolux also

19  services and repairs its Crosley branded Machines when they are recalled, such as those that were

20  recently recalled for a fire hazard.

21       28.     The Crosley branded Machines are identical to the Frigidaire Machines with the

22  exception of being branded with a Crosley badge or label instead of the Frigidaire badge or label.

23  Identical models include, but are not limited to, Crosley model numbers CFW4000FW,

24  CFW5000FW, CFW4000FW, CFW4500KW, CFW7500KB, CFW7500KR, and CFW2000FW.

25       29.     Upon information and belief, Plaintiffs allege that Crosley is an agent of Electrolux

26  Home Products, Inc.

27  ///

28  ///

9<br>FIRST AMENDED CLASS ACTION COMPLAINT

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 59 of 309   Page ID
#:2660
Case 2:10-cv-05163-R  -JEM   Document 6   Filed 08/31/10   Page 11 of 112   Page ID
#:113

**Breach of Express and Implied Warranties**

29.     EHP provides express written warranties for Crosley, Electrolux, Frigidaire, and White-Westinghouse branded Machines, sold in the United States, against defects in materials and workmanship through its Electrolux Major Appliances North America, Incorporated division.

30.     Electrolux also warrants that Crosley, Electrolux, Frigidaire, and White-Westinghouse Machines will operate properly and without Defects, and actually wash and make Clothes clean and clean smelling, or at the very least, odor free (both express written warranties and representative warranties will hereinafter be referred to as "Warranty" or "Warranties").

31.     Electrolux warrants Electrolux Machines, under its Platinum Star Warranty, for two years from the original date of purchase against defects in materials and workmanship.  During the first year Electrolux will repair or replace any parts that prove to be defective in materials or workmanship.  In the second year of the warranty period Electrolux will pay for parts needed for the Machine that have proven to be defective in materials and workmanship.  A copy of the Electrolux Platinum Star Warranty for Electrolux Machines is attached hereto as Exhibit "1".

32.     Electrolux also warrants that "[e]very Electrolux Major Appliance is guaranteed to be free of material defects or component malfunctions." (http://www.electroluxappliances.com/starwarranty).

33.     Electrolux warrants Frigidaire Machines for one year from the original date of retail purchase against defects in materials and workmanship. Electrolux warrants that it will pay all costs for repairing or replacing any parts of the Washing Machine that prove to be defective in materials or workmanship.  A copy of the Electrolux Warranty for Frigidaire Machines is attached hereto as Exhibit "2".

34.     Electrolux warrants Crosley Machines for one year from the original date of retail purchase against defects in materials and workmanship. Electrolux warrants that it will pay all costs for repairing or replacing any parts of the Washing Machine that prove to be defective in materials or workmanship. A copy of the Electrolux Warranty for Crosley Machines is attached hereto as Exhibit "3".

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 60 of 309   Page ID
Case 2:10-cv-05163-R -JEM   Document 26   Filed 08/31/10   Page 12 of 112   Page ID
#:114

35.     Electrolux warrants White-Westinghouse Machines for one year from the date of retail purchase against defects in materials and workmanship. Electrolux warrants that it will pay all costs for repairing or replacing any parts of the Washing Machine that prove to be defective in materials or workmanship. A copy of the Electrolux warranty for White-Westinghouse Machines is attached hereto as Exhibit "4".

36.     The Representative Consumers and Class members relied on the express written warranties, and EHP has failed to satisfy its obligations under the express written warranties by not repairing and/or replacing the Washing Machines or the parts therein, which cause the development and presence of Biofilm, the Mold Problem, and the Foul Odors.

37.     As to Electrolux brand Machines, Electrolux further warrants in the Operating Instructions provided with the Washing Machines that operating the "**System Clean**" cycle will "**clean and freshen the washer**" by using "**hot water and two rinses to remove residue that may cause odor.**" Electrolux brand Machines prompt the user through the Machines' LCD displays to run a "System Clean" cycle after every fifty (50) loads. Consumer Representative Fox-Isicoff and Class members with Electrolux branded Washing Machines relied on the labels and representations made by Electrolux regarding the Washing Machines' ability to sanitize or sterilize themselves. Electrolux breached this express warranty because the Washing Machines do not clean and remove odor-causing residue; rather they cause Biofilm to be deposited or develop within the plastic tub that houses the basket ("Tub"), on the basket that rotates inside the Tub and in which Clothes are washed ("Basket"), on the metal support that is attached to the backside of the basket ("Basket Support Arm") and in and near the sump and pump located within the Washing Machines and on other parts, pieces, materials and sections of the Washing Machines; and thereby distribute and spread deleterious organic material, including but not limited to, bacteria and fungus onto Clothes washed in the Washing Machines. The System Clean cycle does not remove Biofilm, or prevent or eliminate the Foul Odors and the Mold Problem.

38.     As to some Frigidaire branded Machines, including models FAFS4474L, FAFS4473L, FAFS4272L, FAFW3577K, and FAFW3517K, Electrolux warrants that the "**Clean Washer**" cycle will "**clean and freshen the washer.**"

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 61 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 26-2 Filed 08/31/10   Page 13 of 112   Page ID
#:115

39.     Electrolux further warrants, in its Operating Instructions provided with the Electrolux branded Washing Machines, that the Machines' **"deep clean sanitize"** cycle can be used **"to clean and sanitize heavily soiled, colorfast fabrics including towels, bedding, and children's clothing."**   Electrolux also warrants that **"[t]he deep clean sanitize cycle will kill 99.9% of bacteria with no carryover of bacteria between loads. No bleach or harsh chemicals are needed."**

40.     As to some Crosley branded Machines, including models CFW7500KB and CFW7500KR, which Plaintiffs are informed and believe are identical to Frigidaire branded Machines, including, but not limited to, models FAFS4474L, FAFS4473L, FAFS4272L, FAFW3577K, FAFW3517K, and ATF8000, Electrolux warrants that the Machines' **"deep clean sanitize"** or **"Sanitize"** cycles can be used **"to clean and sanitize heavily soiled, colorfast fabrics including towels, bedding, children's clothing, or other items where sanitation is desired."** Electrolux also warrants that **"[t]he *Deep Clean Sanitary* cycle will kill 99.9% of bacteria with no carryover of bacteria between loads. No bleach or harsh chemicals are required, but higher temperatures are required."**

41.     Defendant breached the Warranties above because the Washing Machines that have **"deep clean sanitize"** or **"Sanitize"** cycles do not kill 99.9% of bacteria or sanitize or sterilize themselves or the Clothes washed inside them, instead these Washing Machines continue to accumulate Biofilm and develop stronger and additional Foul Odors and greater levels of the Mold Problem inside the Washing Machines which in turn deposit bacteria and fungi on Clothes washed inside of them.

42.     The limitations on remedies contained in EHP's express written Warranties fail of their essential purpose and are unenforceable with respect to the Mold Problem, Biofilm, and Foul Odors alleged herein. When Washing Machine owners notify Electrolux that their Washing Machines have the Foul Odors and Mold Problem, EHP fails to provide any repairs, replacement of parts, or any other remedy that repairs or replaces the parts and components that cause the existence of Biofilm, the Foul Odors and/or the Mold Problem.   For the same reason, to the extent there is any notice requirement imposed by law, notice is excused because Defendant has (and had)

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 62 of 309   Page ID
Case 2:10-cv-05163-R -JEM   Document #:2663 Filed 08/31/10   Page 14 of 112   Page ID
#:116

1   actual knowledge of defects in the Washing Machines that result in Biofilm, Foul Odors, and the

2   Mold Problem; therefore notice to it has been, is and will be futile, in that EHP has failed to

3   remove or replace parts, pieces, materials or components that eliminate Biofilm, the Foul Odors

4   and the Mold Problem and these problems from returning to the Washing Machines.

5         43.    As part of the sale of each Washing Machine, Defendant warranted, marketed, and

6   advertised that the defective Washing Machines were of merchantable quality fit for the ordinary

7   purpose for which Washing Machines are used, i.e. to clean Clothes, make them smell appealing,

8   and clean the Washing Machines themselves, and were free from defects, including the

9   accumulation of Biofilm, Foul Odors, the Mold Problem, and damage to Clothes that users

10  attempted to clean by using the Washing Machines.

11        44.    As to those Washing Machine owners to whom EHP offered to repair or replace a

12  part within their Washing Machines under its Warranty in response to their complaints of Biofilm,

13  Foul Odors or the Mold Problem, the repair fell short of EHP's Warranty obligations because all

14  EHP "repairs" failed to remedy the defects in the Machines that cause the accumulation of Biofilm,

15  and the development of Foul Odors and/or the Mold Problem.   As a result of the foregoing,

16  Washing Machines that EHP "repaired," after a Washing Machine owner complained of Biofilm,

17  Foul Odors or the Mold Problem, continue to have Biofilm, Foul Odors or the Mold Problem.

18  Despite its legal obligations, and at least two pre-litigation notice and demand letters, Defendant

19  has refused to recall the Washing Machines to repair or replace the parts or materials that are

20  defective and cause Biofilm, the Foul Odors and the Mold Problem, or refund all or part of the

21  monies the Representative Consumers and Class members paid for their Washing Machines.

22        45.    Finally, while recognizing the scope and magnitude of the problems caused by the

23  Defects, both internally and at conferences with salespeople and national outlets such as Best Buy,

24  Pacific Sales and Lowes, as well an independent distributors, Electrolux consistently has denied to

25  Plaintiffs that its Washing Machines develop Biofilm, Foul Odors and the Mold Problem.

26  ///

27  ///

28

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 63 of 309   Page ID
Case 2:10-cv-05163-R -JEM   Document 26 Filed 08/31/10   Page 15 of 112   Page ID
#:117
#:664

**Misrepresentations and Omissions**

46.     At the most basic level, Electrolux fails to disclose the Defects, and falsely advertises and misrepresents the characteristics, benefits, quality, grade, standard, and/or uses of its Washing Machines by representing them as "washer(s)" and "machines that wash," since the Machines fail their most fundamental intended purpose – making things washed in them clean. Clothes washed in the Washing Machines smell foul due to the fundamental Defects in the Washing Machines, the accumulation of Biofilm, and the development of Foul Odors and the Mold Problem in the Washing Machines. Electrolux represents the Washing Machines are "washers" or "machines that wash" prior to the time of purchase on the Electrolux, Frigidaire and White-Westinghouse internet websites[1],  in the Operating Instructions, and on the Washing Machines themselves as they are displayed and appear at the time of purchase in retail stores where the Washing Machines are sold.

47.     Electrolux also fails to disclose, at the retail display of the Machines, on its websites and at the point of purchase, the extraordinary maintenance that its Machines require in order to combat the accumulation of Biofilm, Foul Odors, and the Mold Problem. The extraordinary maintenance, includes but is not limited to, keeping the door open between washes (which poses a safety risk, as explained below), running frequent and lengthy empty cleaning cycles, the need to buy and use bleach and/or special washing machine cleaning detergents, and wiping dry the interior of the Machine, the door glass, and the folds of the rubber door gasket after every wash.  This information is material because a reasonable consumer would want to know how much maintenance is required for an "automatic" washing machine before buying it, especially since the reason consumers buy automatic clothes washers is to expedite daily chores, not add to them.

48.     All Electrolux brand Washing Machines were and are shipped from Electrolux's control with writings on them that state a benefit, characteristic, use, and quality of the Machines includes the availability of the "**System Clean**" cycle. The Operating Instructions that come with

---

[1]  Electrolux: http://www.electroluxappliances.com/laundry-appliances/washers
Frigidaire: http://www.frigidaire.com/products/home-appliances/washers
White-Westinghouse: http://www.white-westinghouse.com/products/WW/washers/prod_WTF330HS.asp

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 64 of 309   Page ID
Case 2:10-cv-05163-R  -JEM  Document 2-5  Filed 08/31/10  Page 16 of 112   Page ID
#:118
#:2665

1   the Machines represent that the "**System Clean**" cycle will "**clean and freshen the washer**" by

2   using "**hot water and two rinses to remove residue that may cause odor.**"  Electrolux also

3   represents, as to Electrolux brand models, that the Machines' "**deep clean sanitize**" cycle can be

4   used "**to clean and sanitize heavily soiled, colorfast fabrics including towels, bedding, and**

5   **children's clothing**" and that "**[t]he deep clean sanitize cycle will kill 99.9% of bacteria with**

6   **no carryover of bacteria between loads. No bleach or harsh chemicals are needed.**"

7          49.     Similarly, some Frigidaire brand models, including, but not limited to, FAFS4474L,

8   FAFS4473L, FAFS4272L, FAFW3577K, and FAFW3517K, are shipped from Electrolux's control

9   with writings on them that state that a benefit and quality of the Machines includes the availability

10  of a "**Clean Washer**" cycle.  Electrolux represents in its Operating Instructions that come with

11  these Machines that this cycle will "**clean and freshen the washer.**"

12         50.     In addition to the foregoing representations, some Frigidaire and Crosley branded

13  Machines, including, but not limited to, ATF8000, FAFS4474L, FAFS4473L, FAFS4272L,

14  FAFW3577K, FAFW3517K, CFW7500KB and CFW7500KR are shipped from Electrolux's

15  control with writings on them that state that a benefit, characteristic, use, and quality of the

16  Machines includes the availability of "**deep clean sanitize**" or "**Sanitize**" cycles.  Electrolux

17  represents in Frigidaire and Crosley Operating Instructions that these cycles can be used "**to clean**

18  **and sanitize heavily soiled, colorfast fabrics including towels, bedding, children's clothing, or**

19  **other items where sanitation is desired**"  and that "**[t]he *Deep Clean Sanitary* cycle will kill**

20  **99.9% of bacteria with no carryover of bacteria between loads. No bleach or harsh chemicals**

21  **are required, but higher temperatures are required**" (the Crosley, Electrolux, and Frigidaire

22  models described are collectively referred to hereinafter as "Electrolux Sanitary Models" unless

23  otherwise noted).

24         51.     These foregoing representations are false and misleading because operating "System

25  Clean" "Clean Washer" "Sanitize" and/or "deep clean sanitize" cycles using the Electrolux

26  Sanitary Models does not make the Washing Machines or the Clothes washed in these cycles

27  sanitary, bacteria or fungus free, clean, free of bioorganic material, Biofilm, Foul Odors, or the

28  Mold Problem.  Therefore, following the operation of the sanitary or cleaning cycles, the Washing

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 65 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 2606   Filed 08/31/10   Page 17 of 112   Page ID
#:119

Machines and Clothes continue to emit Foul Odors that are transferred onto, impregnated into, and/or made present on Clothes "washed" in the Washing Machines. Also, the failure of these cycles to eliminate all Biofilm and bioorganic material in the Tub and adjacent areas of the Washing Machine means that these cycles do not prevent "any carryover bacteria into future loads" washed in the Machines.

52.     The foregoing representations are also false and misleading because Electrolux omits the material information that Biofilm will accumulate in the Washing Machine regardless of using the sanitary or cleaning cycles as the high-temperature water does not come in contact with all surfaces within the Tub and areas adjacent thereto in sufficient quantity, or for adequate duration to kill most common household bacteria that develop and accumulate in the Washing Machines. Electrolux omits this material information in its communications made available to the Class members.

53.     Electrolux made these misrepresentations: 1) as to Electrolux branded Machines, on the Machines themselves at the time of purchase in retail stores where the Machines are sold regarding the availability of the cycles, and on the Electrolux internet website prior to purchase, and the Electrolux Operating Instructions available with the Machines; 2) as to Frigidaire branded models on the Machines themselves in retail stores where the Machines are sold regarding the availability of the cycles at the time of purchase, and on the Frigidaire internet website prior to the time of purchase, and the Frigidaire Operating Instructions available with the Machines; and 3) as to the Crosley brand models on the Machines themselves at the time of purchase in retail stores where the Machines are sold regarding the availability of the cycles, and in the Crosley Operating instructions available with the Machines.

54.     Given the continued presence of Biofilm and bioorganic material on parts of the Machines and the Foul Odors that are transferred onto Clothes washed in the Machines and emitted from the Machines themselves following the completion of a "System Clean", "Clean Washer", "Sanitize", and/or "deep clean sanitize" cycle, the Electrolux Sanitary Models do not have the

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 66 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 26-7   Filed 08/31/10   Page 18 of 112   Page ID
#:120
#:2667

characteristics, benefits, qualities, grade, standard and/or uses that Electrolux represents and advertises they have.

55.    Electrolux also fails to inform users prior to and at the time of purchase, and in the Operating Instructions, which it provides to consumers with the purchase of every Washing Machine, that even if consumers operate the Washing Machines as instructed, Biofilm, the Foul Odors and the Mold Problem will develop and accumulate in each Washing Machine regardless of the owner's use and maintenance of the Washing Machine, due to the Defects in the Washing Machine. The Defects render the Washing Machines unusable for the ordinary purpose for which they were advertised, marketed and sold.

56.    In response to consumer complaints about the Foul Odors and the Mold Problem, made after the time of purchase after consumers had used the Machines, Electrolux recommends that consumers: periodically run extra empty bleach and hot water cleaning cycles (or with washers equipped with the "System Clean" or "Clean Washer" cycles, they have recommended running these cycles more often); purchase Glisten <u>dishwasher cleaner</u> through Frigidaire's website; wipe dry the basket, door glass, and rubber door gasket after each wash; wipe the gasket with vinegar and/or bleach; and/or leave the door open between washes  (collectively referred to as the "Extraordinary Actions").

57.    Based on the foregoing, Electrolux has misrepresented the quality and performance of the Washing Machines prior to and at the time of purchase.  For example, on the Machines themselves, their packaging, and on the Electrolux and Frigidaire websites Electrolux promotes the Washing Machines as "High Efficiency."  Electrolux also labels the Washing Machines as "Energy Star"[2] compliant on stickers or placards it places on or in the Washing Machines themselves, and on its product descriptions found on its website.

---

[2] ENERGY STAR is a voluntary labeling program designed to identify and promote energy-efficient products through a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy. Electrolux tests its own Washing Machines and submits its tests results to the U.S. Department of Energy who then applies a standard formula to calculate the energy rating. The tests performed by Electrolux do not take account of the empty-hot water cleaning cycles that Electrolux recommends Class members run to avoid or remedy the Mold Problem.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 67 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 26   Filed 08/31/10   Page 19 of 112   Page ID
#:121

1       58.    These representations are false and were known by Electrolux to be false when they

2  were made because Electrolux recommends to complaining consumers only well after the time of

3  purchase that they must regularly run extra empty hot-water cycles or more frequent cleaning

4  cycles to combat Biofilm, Foul Odors, and the Mold Problem in the Washing Machines. When

5  Washing Machine owners run these additional cycles, they lose the water and energy efficiency

6  savings that Electrolux represented were the benefits and characteristics of owning its Energy Star-

7  compliant Washing Machines. Effectively Electrolux has spoken out of both sides of its mouth.

8  However, it only speaks, before selling to the public, out of the side that represents the Washing

9  Machines are energy and water efficient, while concealing its knowledge that consumers must

10  frequently run extra empty hot-water cycles for its Washing Machines to operate as it intends,

11  which necessarily result in the Machines not being as energy or water efficient as represented. This

12  is material information because front-load washers often sell at a premium to top load washers, and

13  many consumers justify spending the premium based on the energy and water savings they expect

14  to attain based on the Energy Star ratings.

15       59.    The Extraordinary Actions are not part of normal washing machine ownership. The

16  Extraordinary Actions that Electrolux now, post-sale, recommends consumers take to reduce the

17  incidence of Biofilm, the Foul Odors and the Mold Problem, require Washing Machine owners to

18  spend money and time they did not expect to spend. The Extraordinary Actions require Washing

19  Machine owners to pay for the additional energy, water, and bleach, or other cleaning agents such

20  as Glisten, Affresh or Tide Washing Machine Cleaner needed to regularly run hot-water cycles in

21  an attempt to redress the effects of the Defects in the Washing Machines (the additional cost for

22  energy, water, bleach, and cleaning agents to perform the Extraordinary Actions are hereafter

23  referred to as "Undisclosed Additional Operating Expenses").

24       60.    As a result of Electrolux's concealment of the Extraordinary Actions and the

25  resulting Undisclosed Additional Operating Expenses, Washing Machine owners are not provided

26  material information, known by Electrolux, before they decide which brand of washing machine to

27  buy. The Washing Machines are worth less than the price Consumer Representatives and the Class

28

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 68 of 309   Page ID
Case 2:10-cv-05163-R -JEM   Document #:2669   Filed 08/31/10   Page 20 of 112   Page ID
#:122

1    members paid for them and ownership and operation of the Washing Machines will cost more than

2    Defendant represented.

3         61.    Electrolux was obliged to disclose the material facts because: a) it had exclusive

4    knowledge of the material facts not known to Plaintiffs, since only Defendant had access to the

5    aggregate data from its retailers, its own tests, and complaints from its customers; b) it actively

6    concealed and suppressed the material facts from Plaintiffs by not warning of the Defects at the

7    time of purchase and by performing warranty and/or repair work that it knew would not cure the

8    Defects unknown to Plaintiffs; c) by recommending remedies to complaining consumers that it

9    knew would not cure the Defects or resulting problems, thereby causing damages; and/or d)

10   Defendant recommended futile actions, such as advising Plaintiffs to run empty hot-water and

11   bleach cycles, and wipe dry the door gasket, door glass and basket after every wash, but at the same

12   time suppressed the material fact that the Machines had inherent defects that caused Biofilm, the

13   Mold Problem and the Foul Odors.

14

15   **Electrolux's Suggested Remedies and Repairs Do Not Cure The Defects, Are Dangerous, and Accelerate the Break-Down of The Machines.**

16        62.    One of the Extraordinary Actions that Electrolux recommends its customers

17   perform is to wipe down the door gasket after every wash or use a water and bleach and/or water

18   and vinegar mixture for the purpose of removing Biofilm and bioorganic material that develop on

19   and in the rubber door gasket material.   However these recommended actions accelerate the

20   deterioration of the door gasket.   Deteriorated rubber door gaskets do not properly seal, thereby

21   causing consumers to spend additional money to replace door gaskets more frequently than they

22   would if they did not have to wipe them with bleach mixtures to mitigate Biofilm, Foul Odors and

23   the Mold Problem.

24        63.    Electrolux also recommends to Class Members that they leave the Washing

25   Machine door open between washes to reduce the incidence and affects of Biofilm and the Mold

26   Problem. Not only does this recommendation not solve or prevent the problems, it creates a risk of

27   injury to children and pets.   Ironically, in the Operating Instructions for all models, Electrolux

28
                                           19
                              FIRST AMENDED CLASS ACTION COMPLAINT

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 69 of 309   Page ID
Case 2:10-cv-05163-R -JEM   Document 62-70   Filed 08/31/10   Page 21 of 112   Page ID
#:2670
#:123

1   warns under the heading "ENTRAPMENT and TIP-OVER HAZARD" – "Do not leave the door

2   open if there are small children or pets present. An open door could entice children to hang on the

3   door or crawl inside the washer."

4          64.     Indeed, the Consumer Product Safety Commission is investigating the death of a 4

5   year-old girl who climbed into a front load machine that her younger brother turned on and EHP

6   has been named a defendant in a wrongful-death action removed to the Central District of

7   California (Case No. SACV10-00832 JVS (RNBx)) which is believed to have originated from the

8   same incident.  As such, Electrolux has knowledge of the danger of this recommendation and how

9   consumers would find this information material prior to purchasing a Washing Machine.  This

10  omission directly relates to safety of the Machines and therefore is a material fact that Electrolux

11  was obliged to disclose.

12         65.     Electrolux was in exclusive possession of information about the Defects, Biofilm,

13  the Foul Odors, the Mold Problem, and the Undisclosed Additional Operating Expenses which

14  were material to Plaintiffs' decisions to buy the Washing Machines.  Electrolux had a duty, under

15  the circumstances, to disclose the Defects, and the Machines' propensity to accumulate Biofilm,

16  developed Foul Odors and the Mold Problem, and cause their owners to incur Undisclosed

17  Additional Operating Expenses, prior to their purchases.  Nevertheless, Electrolux has failed and

18  refused to disclose to its customers the serious Defects inherent in the Washing Machines or to

19  warn them about Biofilm, Foul Odors, the Mold Problem and Undisclosed Additional Operating

20  Expenses they will incur.  Instead, Electrolux has kept silent while uninformed consumers, lacking

21  the material information known to Electrolux, purchased and continue to purchase the defective

22  Washing Machines.

23         66.     Electrolux has also refused, and continues to refuse, to modify the Washing

24  Machines to repair the Defects so that the Machines no longer have Biofilm, the Foul Odors, and

25  the Mold Problem or cause their owners to incur Undisclosed Additional Operating Expenses.

26  Electrolux could eliminate the Defects by altering the Washing Machine's design, how the

27  Washing Machine operates and/or using different parts and/or materials.

28                                    20
                          FIRST AMENDED CLASS ACTION COMPLAINT

                              Exhibit __E__ Pg. __69__

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 70 of 309   Page ID
Case 2:10-cv-05163-R -JEM   Document 267 Filed 08/31/10   Page 22 of 112   Page ID
#:124

67.     In light of Electrolux's knowledge of the serious problems caused by the Defects in the Washing Machines, Electrolux knew, or should have known, that when it sold the Washing Machines to consumers that they had a value that was substantially less than their actual retail purchase price.

68.     The Representative Consumers and Class members reasonably expected that the Washing Machines would not contain the Defects.  The presence of the Defects substantially reduce the Washing Machines' value, in that: a) Electrolux sold the Washing Machines without the intent to sell them as advertised; b) the Washing Machines do not have uses, benefits and characteristics Electrolux represented they would have; and c) are not of the standard, quality or grade Electrolux represented; d) extensive use of corrosive chlorine bleach as recommended by Electrolux post-sale will shorten the expected life of the Machines; (e) the Machines do not clean Clothes; and (f) Machines known to have defects are less desirable to subsequent purchasers and thus have a lower market re-sale value.

69.     Further, Electrolux's concealment of the Defects, the accumulation of Biofilm, the Foul Odors, the Mold Problem and the Undisclosed Additional Operating Expenses that will result under normal operating conditions is a deceptive, unlawful, unfair, and fraudulent business act and practice.  Furthermore, Electrolux's concealment of Biofilm, the Foul Odors, the Mold Problem and the Undisclosed Additional Operating Expenses means its advertising of the Machines was unfair, deceptive, untrue and misleading.  The Representative Consumers and Class members also reasonably expected that the Washing Machines would not require extensive and expensive repairs (or the purchase of extended or third party warranties needed to pay for significant costs to continuously attempt to fix problems inherent in the Washing Machines) as a result of the Defects, which were known to Electrolux before and at the time the Washing Machines were sold to Representative Consumers and the Class members.  If Electrolux had not misrepresented and concealed material information regarding the Washing Machines' Defects, Plaintiffs would not have purchased the Washing Machines at premium prices on the terms offered.

70.     Electrolux also has profited, either directly or indirectly, by concealing the nature of the Defects because Electrolux has been able to convince a large number of consumers to purchase

21
FIRST AMENDED CLASS ACTION COMPLAINT

Exhibit __E__ Pg. __70__

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 71 of 309   Page ID
Case 2:10-cv-05163-R -JEM   Document #:2672led 08/31/10   Page 23 of 112   Page ID
#:125

1  the Washing Machines and to pay for Electrolux's repair services and replacement parts (from

2  which Electrolux earns a profit), such as new door gaskets, to address the Biofilm, Foul Odors,

3  Mold Problem and the Undisclosed Additional Operating Expenses *even though Electrolux has no*

4  *cost-effective remedy for the Defects*, knows that replacement parts it offers the Class cannot cure

5  the Defects, and has in fact profited by failing and refusing to correct the Defects in the Washing

6  Machines.

7

8  **Electrolux's Knowledge and/or Reckless Disregard of the Defects and Mold Problem**

9      71.   Electrolux is aware of the Defects, the accumulation of Biofilm, the resultant

10  development of Foul Odors and the Mold Problem, and the Undisclosed Additional Operating

11  Expenses associated with the Washing Machines, and has been for some time.  The Representative

12  Consumers and many Class members have alerted Electrolux to the presence of Biofilm, Foul

13  Odors, and the Mold Problem by complaining to Electrolux directly and/or to Electrolux's

14  authorized retailers and service representatives and/or through the Electrolux and Frigidaire

15  internet web sites.

16      72.   Indeed, the Internet is replete with references and complaints regarding the Washing

17  Machines that mirror allegations in this Complaint.  Relevant excerpts from a sampling of these

18  complaints are set forth below:

19

| | |
|---|---|
| **Feb 22, 2010**<br><br>**viewpoints.com**<br><br>**Crosley Washer**<br><br>http://www.viewpoints.com/Crosley-Front-Load-Washer-review-23a04<br><br>last accessed 4/6/10 | **I bought a Crosley CFW4000FW1 Front Loading washing machine 10/09 every seems OK until now. 2/10.** The gasket that seals the door has developed black mold and an awful smell, which also affect my clothes.  **Apparently it does not drain all the water out between washings.** |
| **[undated]**<br><br>**washerreviews.net** | Unfortunately, a White Westinghouse washer falls under the category of "washers to stay away from." |

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 72 of 309   Page ID
Case 2:10-cv-05163-R -JEM   Document 62-3   Filed 08/31/10   Page 24 of 112   Page ID
#:126
#:2673

| | |
|---|---|
| **White Westinghouse Washer**<br><br>http://www.washerreviews.net/white-westinghouse-washer.html<br><br>last accessed 4/6/10 | Of all the product reviews on the Internet, the number of negative reviews about these is overwhelming and devastating especially to the producers.<br><br>First off, they have, in the past, needed to recall a lot of washers because of their being fire hazards.<br><br>Other complaints include:<br><br>Inefficient design – **front load washer doors collect water that enable mold to develop**<br><br>**Clothes smell bad after washing even with application of detergent and fabric softener (which is normally scented)**<br><br>Has problems draining water after cycles, which **results to molds and/or contribute to the bad smell of washed clothes** |
| **February 1, 2010**<br><br>**consumeraffairs.com**<br><br>**Frigidaire Washer**<br><br>http://www.consumeraffairs.com /homeowners/frigidaire_washer.html<br><br>last accessed 4/6/10 | We purchased a Frigidaire Affinity Washer (ATF6000ES) & Dryer July 24, 2007. Paid 599 for washer and 489 for dryer. Also we bought an 5 year extended warranty for an additional 169.96. No problem with the dryer but the washer stinks and is full of mold. **I have been leaving the door open, which isn't safe because my 10 year old found my 3 year old daughter in the washer with the door closed the other day.** She was fine, but.... **I have tried to scour the rubber seal and run vinegar thru the cycle also to no avail.** I am trying to get the company to take this back. I have already called Frigidaire and they say that their warranty was only for 1 year and that I have to deal with the company that sold us the 5 yr. warranty. So far, Jim L has avoided me since a couple weeks before Christmas...when he said, "I'm on this." I just got done reading all about the poor other people that are dealing with this problem with these front loaders. And they are still selling them?!?!? What are we suppose to do?? |
| | |

Exhibit____*E*____ Pg.___*72*___

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 73 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 26   Filed 08/31/10   Page 25 of 112   Page ID
#:127
#:2674

| | |
|---|---|
| **October 11, 2009**<br><br>**fixya.com**<br><br>White Westinghouse Washer<br><br>http://www.fixya.com/support/t3161127-dirty_smelly_front_loading_washing<br><br>last accessed 4/7/10 | I have a Westinghouse Mastermind 708 front loading washing machine. **There is a terrible smell from it, and I can found a thick gray buildup of hair and goo around the edge of the drum.** |
| **Apr 18, 2009**<br><br>**fixya.com**<br><br>**Frigidaire Washer**<br><br>http://www.fixya.com/support/t238848-frigidaire_washing_machine_collects<br><br>last accessed 4/6/10 | **I have the same problem with the mold growing on the gasket.** The stench has become so bad that my parents have pulled me aside to inform me about how my family's clothes smell. I was told that many other manufactures with front load machines have issued recalls for this issue, but it looks like Frigidaire will not be standing by their product. I was told that they are one of the best manufactures, but am finding their washing machine sub par. How many of us have to complain before they will take action. |
| March 17, 2010<br><br>**fixya.com**<br><br>Electrolux Washing Machine<br><br>http://www.fixya.com/support/t4356926-mold_growing_rubber_ring_in_door<br><br>last accessed 4/7/10 | Generic problem for all Electrolux Washing Machines:<br><br>**i have mold growing on the rubber ring in door what has caused this and how do i get rid on this?? also the electrolux EW1280f doesn't seem to be washing my clothes properly the still come out dirty.** |

72.     As a result of the flurry of consumer complaints regarding the defects that Defendant would not and/or could not remedy, several entrepreneurs created and marketed products designed to treat, eliminate and/or minimize the Foul Odors and Mold Problems caused by the defective Washing Machines. These products include SmellyWasher, NuFreshNow, Tide Washing Machine Cleaner, and Affresh.  Due to the widespread and intractable nature of the Foul Odors and the Mold Problem once they have manifested, these entrepreneurs have sold tens of

24
FIRST AMENDED CLASS ACTION COMPLAINT

Exhibit____*E*____ Pg. _73_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 74 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document #:6267 Filed 08/31/10   Page 26 of 112   Page ID
#:128

1    thousands, if not millions, of their products to consumers.   However, all are ineffective in

2    preventing and/or fixing the Defects that cause Biofilm, the Foul Odors, the Mold Problem and the

3    Undisclosed Additional Operating Expenses.   Indeed, these products are but one more Undisclosed

4    Additional Operating Expense.

5          73.    Not to be outdone, Electrolux has begun marketing Glisten Dishwasher Cleaner as a

6    remedy       for       moldy       washing       machines       through       its       website

7    (http://frigidaire.stores.yahoo.net/glisten2pack.html) through which Electrolux represents "a little

8    Glisten in your front-loading washing machine will remove odors from the tub." Electrolux directs

9    complaining consumers to purchase Glisten from the Frigidaire website. See Exhibit "5".

10         74.    By reviewing the latest edition of one of Defendant's "Use and Care"

11   Guides/Operating Instructions, it is also clear that Electrolux knew or recklessly disregarded the

12   problem.   In what, upon information and belief, is Frigidaire's March 2010 edition of its

13   FAFS4473l model Use & Care Guide, under the heading "Inside Routine Cleaning (Preventative),"

14   Electrolux states "[t]o help prevent **odors, mold or mildew**, leave the door open for a few hours

15   after use or whenever the washer is not in use."    Under the heading "Inside Cleaning

16   (Aggressive)" Electrolux states "in cases where the Clean Washer cycle along with care and

17   cleaning of rubber gasket folds isn't done, and **sever odor, mold, mildew, or residue** have

18   developed... pour eight (8) cups of bleach into the "MAIN WASH" detergent compartment... for

19   **especially contaminated areas** visible inside the drum (including the front rubber seal), these

20   areas might be more effectively cleaned by spraying a Bleach Cleaner on a scrub brush, soft

21   sponge, or towel and scrubbing."

22         75.    As further evidence of Electrolux's knowledge of the Defects, according to

23   Appliance Service News (January 2008 issue), an appliance industry periodical for service

24   professionals, Electrolux redesigned the door gasket/boot for Frigidaire branded models sometime

25   in 2007 to remove "the convolutions of the boot" in an attempt to reduce the amount of water that

26   collected after each wash and the growth of Biofilm (the newer design is bellows kit part #

27   123415300).   Despite this effort and the redesigned gasket, the Machines with the newer gasket

28   develop Biofilm, the Foul Odors and the Mold Problem.

                                      25
                        FIRST AMENDED CLASS ACTION COMPLAINT


                        Exhibit_____𝐸___ Pg._74__

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 75 of 309   Page ID
Case 2:10-cv-05163-R -JEM   Document 62676 iled 08/31/10   Page 27 of 112   Page ID
#:129

76.     Electrolux failed to adequately design and/or test the Washing Machines to ensure that they are free from the Defects that cause Biofilm, Foul Odors, the Mold Problem, and do not cause their owners to incur Undisclosed Additional Operating Expenses.  Before Electrolux began selling the Washing Machines, Electrolux knew, or was reckless in not knowing, that the Machines: (a) contain the Defects in design, programmed operation, parts, materials, assembly and workmanship; and (b) are not of merchantable quality or fit for their ordinary purpose.

77.     Plaintiffs are informed and believe Electrolux acknowledged internally that the Defects causing Biofilm, Foul Odors, and the Mold Problem related to, *inter alia,* the Defects in the Washing Machines' design, programmed operation, parts, pieces, materials, assembly and workmanship.

78.     Electrolux continues to conceal material information, even post-sale, from users, consumers, and the public, through its customer service representatives, by not disclosing to Class members that the Washing Machines are: (a) inherently defective; (b) not of merchantable quality or fit for their ordinary purpose; and/or (c) will not sanitize or sterilize Clothes and cannot be made virtually free of household bacteria, fungus and/or Foul Odors.

79.     Despite having repeated notice of the Defects in its Washing Machines and the reasonable expectations of consumers created by Electrolux's marketing of its Washing Machines, Electrolux has engaged and continues to engage in the following routine, albeit, wrongful course of conduct, where it:

a)     Designs, manufactures and sells Washing Machines with Defects which cause Biofilm, the Foul Odors, the Mold Problem and Class Members to incur the Undisclosed Additional Operating Expenses;

b)     Fails to disclose that the Washing Machines have Defects that cause Biofilm, Foul Odors, the Mold Problem and Undisclosed Additional Operating Expenses;

c)     Continues to represent the Washing Machines are "washers", "washing machines," and/or "machines that wash" when they fail to i) effectively clean themselves, and ii) make Clothes washed in them clean and odor free;

26
FIRST AMENDED CLASS ACTION COMPLAINT

Exhibit ___E___ Pg. _75_

Case 8:10-cv-00711-DOC-AN Document 102 Filed 07/11/12 Page 76 of 309 Page ID
Case 2:10-cv-05163-R -JEM Document 26-7 Filed 08/31/10 Page 28 of 112 Page ID
#:130

d)  Continues to represent expressly or by necessary implication that the Washing Machines Plaintiffs purchased are dependable, cost effective, and would provide outstanding cleaning performance as washing machines when it knew that these statements were false;

e)  Continues to manufacture, market, advertise, distribute, and sell the Washing Machines to consumers when it knew or should have known the Washing Machines were not dependable and would not withstand normal operation;

f)  Fails to disclose to Plaintiffs the substantial risk of Washing Machine failure;

g)  Fails to disclose the nature of the Defects to consumers;

h)  Fails to disclose the many complaints of Biofilm, the Foul Odors, and the Mold Problem in the Washing Machines that it received from consumers (or the high incidence of attempted but futile repairs of the Washing Machines);

i)  Fails to implement a recall or repair program to adequately announce to Plaintiffs the presence of the Defects, and Biofilm, the Foul Odors, the Mold Problem and Undisclosed Additional Operating Costs caused by the Defects.  And fails to provide, without charge to Plaintiffs a solution to remedy and correct the Defects;

j)  Fails to disclose to Plaintiffs that EHP is not committed to make repairs, under its Warranties, that would correct and eliminate the defects in materials and workmanship that caused Biofilm, the Foul Odors, the Mold Problem and Undisclosed Additional Operating Expenses;

k)  Fails to take action to correct its concealment of material information or false and misleading implied or express representations about the use, benefits, characteristics, standard, quality, grade and performance of its Washing Machines; and

l)  Fails to disclose that despite following its recommendations on how to operate the Washing Machines, found within the Operating Instructions, the Washing Machines will accumulate Biofilm, and develop Foul Odors and the Mold Problem, and that Plaintiffs would incur Undisclosed Additional Operating Expenses.

80.  As a result of Electrolux's deceptive conduct and concealment of material information about its Washing Machines, as well as its other acts and omissions described in this

Exhibit _E_ Pg. _76_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 77 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 6   Filed 08/31/10   Page 29 of 112   Page ID
#:2678
#:131

Complaint, Electrolux has caused Plaintiffs to suffer injury as result of the Defects in the Washing

Machines, including, but not limited to:

      a)    Plaintiffs overpaid for a defective product;

      b)    The value of Plaintiffs' Machines is less than it would have been, if the Washing

Machines did not have the Defects; and

      c)    Plaintiffs reasonably spent money for attempted repairs of the Defects, and other

purported remedies, which money they would not have spent but for Electrolux's concealment of

material information and misrepresentations about the Washing Machines and the efficacy of the

altered use or repairs it recommended Plaintiffs perform on their Washing Machines.

      81.    If Plaintiffs had known about the Defects in the Washing Machines, and about the

Machines' propensities to accumulate of Biofilm, develop Foul Odors and the Mold Problem, and

incur Undisclosed Additional Operating Expenses caused thereby, they would not have paid the

significant sums of money that they paid for the Washing Machines.

      82.    In sum, Electrolux manufactures and sells Washing Machines with inherent Defects

that cause them to accumulate Biofilm, develop the Mold Problem and emit Foul Odors all of

which Electrolux fails to disclose, and misrepresents the Washing Machines' benefits,

characteristics, uses, and qualities. Then Electrolux denies Warranty claims and instead

recommends that the Plaintiffs undertake previously undisclosed, impractical, costly, and

inefficient Extraordinary Actions which cause them to incur Undisclosed Additional Operating

Expenses.

## TOLLING OF STATUTES OF LIMITATIONS

      83.    Any applicable statutes of limitation have been tolled by Defendant's continuing,

knowing and active concealment of the facts alleged herein. Defendant has kept Plaintiffs ignorant

of vital information essential to the pursuit of their claims without any fault or lack of diligence on

their part. For example, Defendant told complaining Plaintiffs that they were not operating or

maintaining their Machines correctly and suggested remedies that only delayed discovery of the

Defects, or replaced parts (e.g. the door gasket) that Defendant knew would not cure the problem

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 78 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 26-79   Filed 08/31/10   Page 30 of 112   Page ID
#:132

1   while leading Plaintiffs to believe the problem would be cured.  As such, Plaintiffs could not have

2   reasonably discovered the facts giving rise to the claims asserted herein until recently.

3        84.    In the alternative, Defendant should be estopped from relying on any statutes of

4   limitation.  Defendant has been under a continuing duty to disclose the true character, quality, and

5   nature of its Washing Machines to Plaintiffs, and to repair the Defects, but have failed to do so.

6   Because Defendant is and was in exclusive possession of the facts and information concerning the

7   true character, quality and nature of the Washing Machines, Defendant is estopped from relying on

8   any statutes of limitations.

9

10   **CLASS ACTION ALLEGATIONS**

11        85.    Consumer Representatives bring this action on behalf of themselves and all others

12   similarly situated as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of

13   Civil Procedure.

14        86.    The Classes which the Consumer Representatives seek to represent are defined as

15   follows:

16       **California Subclass:** All Class members who purchased a Washing Machine in the State

17   of California and who purchased the Machine for primarily personal, family or household use.

18       **Florida Subclass:** All Class members who purchased a Washing Machine in the State of

19   Florida for primarily personal, family, or household purposes, and not for resale.

20       **Maryland Subclass:** All Class members who purchased a Washing Machine in the State of

21   Maryland for primarily personal, family, or household purposes, and not for resale.

22       **Michigan Subclass:** All Class members who purchased a Washing Machine in the State of

23   Michigan for primarily personal, family, or household purposes, and not for resale.

24       **New York Subclass:** All Class members who purchased a Washing Machine in the State

25   of New York for primarily personal, family, or household purposes, and not for resale.

26       **Oregon Subclass:** All Class members who purchased a Washing Machine in the State of

27   Oregon for primarily personal, family, or household purposes, and not for resale.

28

Exhibit _6_ Pg. _78_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 79 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 2689iled 08/31/10   Page 31 of 112   Page ID
#:133

1      **Pennsylvania Subclass:** All Class members who purchased a Washing Machine in the

2   State of Pennsylvania for primarily personal, family, or household purposes, and not for resale.

3      **Texas Subclass:** All Class members who purchased a Washing Machine in the State of

4   Texas for primarily personal, family, or household purposes, and not for resale.

5      87.   Excluded from the Classes are (i) Defendant, any entity in which Defendant has a

6   controlling interest or which has a controlling interest in Defendant, and Defendant's legal

7   representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's

8   employees, officers, directors, agents, and representatives and their family members; and (iv) the

9   Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

10  Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation

11  reveals the Classes should be expanded or otherwise modified.

12     88.   This action has been brought and may properly be maintained as a class action,

13  pursuant to Federal Rule of Civil Procedure 23, subsections (b)(2) and (b)(3), because there is a

14  well-defined community of interest in the litigation and the proposed classes are easily

15  ascertainable:

16     a)   <u>Numerosity.</u>   The Washing Machines were sold and distributed by Electrolux

17  throughout the United States.   Plaintiffs are informed and believe that the proposed putative

18  Classes are made-up of tens of thousands of residents of the Consumer Representative states.

19     b)   <u>Common Issues Predominate.</u>   Common questions of law and fact exist as to all

20  members of the Class and predominate over any questions which affect only individual members

21  of the Class.   The Washing Machines are all the same and do not differ in any manner that is

22  relevant to Plaintiffs' allegations of Defects, and the damage and harm caused thereby.   Plaintiffs

23  allege herein that the Machines all have the same inherent Defects (and that they were defective

24  when made, when they left Electrolux's possession and control, and are presently defective as they

25  are now being used by Class members). There is a well-defined community of interest in the

26  questions of law and fact involved and that affect Plaintiffs who purchased the Washing Machines,

27  and they all suffer from inherent and common defects.   These questions of law and fact

28  predominate over questions that affect only individual class members.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 80 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 26 Filed 08/31/10   Page 32 of 112   Page ID
#:134

The common questions of law and fact include, without limitation:

(1)     Whether the Washing Machines are defective;

(2)     Whether Electrolux knew and/or recklessly disregarded the fact that the Washing Machines were and are defective;

(3)     Whether Electrolux concealed, and failed to disclose to the Class, material facts in its communications and disclosures to Plaintiffs and Class members regarding the Defects, which are inherent in the Washing Machines;

(4)     Whether Electrolux has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the Washing Machines;

(5)     Whether Electrolux violated the consumer protection statutes of Consumer Representatives' respective states;

(6)     Whether Electrolux breached express written and/or representative warranties and/or extended warranties;

(7)     Whether Electrolux breached its implied warranties;

(8)     Whether Electrolux has been unjustly enriched;

(9)     Whether, as a result of Electrolux's conduct, Plaintiffs have suffered damages; and if so the appropriate amount thereof; and

(10)    Whether, as a result of Defendant's misconduct, Plaintiffs are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

These questions of law and fact predominate over questions that affect only individual Class members and there is a well-defined community of interest in the questions of law and fact involved and that affect the Class.

c) Typicality. The Consumer Representatives' claims are typical of the claims of the Class members in that the Consumer Representatives and the Class members have the same Washing Machines, which share the same design, parts, materials, workmanship and manufacture and about which Defendant repeatedly made the same or nearly identical, uniform representations and

Exhibit  Pg.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 81 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 26-2 Filed 08/31/10   Page 33 of 112   Page ID
#:135

1   omissions. Therefore the claims of the Consumer Representatives are and will be typical of Class

2   members.

3       d) The Classes are Ascertainable. The Representative Consumers have adequately defined

4   the Classes, as detailed above, so the Court will be able to use the definitions to determine class

5   membership.

6       e)   Adequacy.   The Consumer Representatives will fairly and adequately represent the

7   interests of all Class members. The Consumer Representatives have each purchased a Washing

8   Machine and are adequate representatives of the Class as they have no interests which are adverse

9   to the interests of absent Class members. The Consumer Representatives have retained counsel

10  with substantial experience and success in the prosecution of complex defective product and

11  consumer protection class action litigation.

12      f)  Superiority.  A class action is superior to other available means for the fair and efficient

13  adjudication of this controversy. Class action treatment will permit a large number of similarly

14  situated persons to prosecute their common claims in a single forum simultaneously, efficiently

15  and without the unnecessary duplication of effort and expense that numerous individual actions

16  would engender. The disposition of their claims in this case and as part of a single class action

17  lawsuit, rather than thousands of individual lawsuits, will benefit the parties and greatly reduce the

18  aggregate judicial resources that would be spent if this matter were handled as hundreds of separate

19  lawsuits. Furthermore, given the extraordinary expenses and burden in conducting the discovery

20  and presentation of evidence about the inherent defects in the Washing Machines, the burden of

21  individual litigation would make it extremely difficult, if not impossible for individual members of

22  the Class to redress the wrongs asserted herein, while an important public interest will be served by

23  addressing the matter as a class action. Moreover, separate prosecution by thousands of individual

24  members of the Class would likely establish inconsistent standards of conduct for the Defendant

25  and result in the impairment of, and potential harm to, Class members' rights and the disposition of

26  their interests through actions to which they were not parties. Plaintiffs are informed and believe

27  that a great amount of time and expense will be saved by conducting the discovery and presentation

28  of evidence about the inherent Defects in the Washing Machines in a single class action lawsuit, in

                                            32
                        FIRST AMENDED CLASS ACTION COMPLAINT

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 82 of 309   Page ID
#:2683
Case 2:10-cv-05163-R -JEM   Document 6   Filed 08/31/10   Page 34 of 112   Page ID
#:136

1  contrast to the repeated discovery and presentation of evidence in hundreds or thousands of

2  separate lawsuits brought on the common questions presented by the allegations of this complaint.

3  The Consumer Representatives know of no difficulty that will be encountered in the management

4  of this litigation which would preclude its maintenance as a class action.

5

6  ### FIRST CAUSE OF ACTION

7  **Asserted On Behalf Of the California Class**
   **(Violations of Cal. Bus. & Prof. Code § 17200 *et seq*.))**

8

9  89.    Consumer Representative Frutkoff repeats and re-alleges all prior paragraphs and

10  incorporates them as if fully set forth herein.

11  90.    Defendant has engaged in unfair, unlawful, and fraudulent business acts or practices

   as set forth above.

12

13  91.    Gary Frutkoff brings this cause of action on behalf of himself and the California

14  Class, pursuant to California Business and Professions Code, §17200, *et seq*.

15  92.    Defendant's conduct constitutes **unfair** business acts and/or practices because

16  Defendant's practices have caused and are likely to cause substantial injury to Plaintiffs which

17  injury is not reasonably avoidable by Plaintiffs in light of Defendant's exclusive knowledge of the

   Defects in the Washing Machines, and is not outweighed by the practice's benefits, if any, to

18  Plaintiffs. Such conduct is ongoing and continues to this date.

19  93.    Defendant's acts and practices of selling Washing Machines while omitting the

20  material facts that the Washing Machines have a high propensity to accumulate Biofilm, and

21  develop Foul Odors and the Mold Problem, and cause Machine owners to incur Undisclosed

22  Additional Operating Expenses offends an established public policy and is immoral, unethical,

23  oppressive, unscrupulous or substantially injurious to consumers. Furthermore, these acts,

24  practices and omissions threaten an incipient violation of antitrust laws and/or consumer protection

25  statutes, or violate the policy and spirit of one of those laws because the effect of the acts and

26  practices are comparable to or the same as a violation of the law or otherwise significantly threaten

27  or harm competition.

28

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 83 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 26   Filed 08/31/10   Page 35 of 112   Page ID
#:137
#:2684

94.     Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, 1711. Defendant's acts and practices are also unlawful because they violate the Song-Beverly Act, Civil Code §§ 1790 et seq., the Consumer Legal Remedies Act, Civil Code 1750 *et seq.*, Cal. Commercial Code §§ 2313 and 2314, and Bus. & Prof. Code § 17500, and the Magnuson-Moss Warranty Act ("MMWA").

      i.    Defendant violates Civ. Code § 1668 by attempting to exempt itself from liability for selling defective washers and by unlawfully limiting the warranty period of the Washing Machines it knows to be defective.

      ii.   Defendant violates Civ. Code §§ 1709, 1710, and 1711 by not disclosing to the public the material fact that the Machines have a high propensity to develop and accumulate Biofilm when used in a reasonably foreseeable manner, which in turn causes the development of Foul Odors, the Mold Problem and Plaintiffs to incur Undisclosed Additional Operating Expenses. Defendant knowingly or recklessly concealed or suppressed from Plaintiffs that the Washing Machines develop Biofilm, the Foul Odors and the Mold Problem and that as a result Plaintiffs will incur Undisclosed Additional Operating Expenses, thereby defrauding Plaintiffs. Plaintiffs were unaware of the Defects and that the Defects would cause the development of Biofilm, the Foul Odors and the Mold Problem. Plaintiffs would not have purchased the Machines had they known of the Defects before they purchased the Machines. As a result of Defendant's concealment of the Defects, and the Machines' propensity to accumulate Biofilm, develop Foul Odors and the Mold Problem, and the Extraordinary Actions that result in Undisclosed Additional Operating Expenses, Plaintiffs lost money by overpaying for the Washing Machines, and paying for repairs and/or costs associated with Defendant's suggested remedies.

Case 8:10-cv-00711-DOC-AN    Document 102    Filed 07/11/12    Page 84 of 309    Page ID
#:2685
Case 2:10-cv-05163-R    -JEM    Document 6    Filed 08/31/10    Page 36 of 112    Page ID
#:138

            iii.     Defendant violates Cal. Bus. & Prof. Code § 17500 as alleged throughout this Complaint and in the Second Cause of Action, incorporated hereto by reference.

            iv.     Defendant violates the CLRA, Cal. Civ. §§ 1750 *et seq.*, as alleged throughout this Complaint and the third cause of action, incorporated by reference hereto.

            v.     Defendant violates Cal. Civ. Code §§ 1790 *et seq.* and Cal. Comm. Code §§ 2313 and 2314, the common law, and the MMWA as alleged throughout this Complaint, and in the Fourth, Fifth, and Sixth Causes of Action, incorporated hereto by reference.

    95.     Defendant's acts and practices are fraudulent in that they have deceived and/or are likely to deceive Plaintiffs and members of the consuming public.  Defendant knowingly sold Plaintiffs Washing Machines with Defects that have rendered the Washing Machines essentially unusable for the purposes for which they were purchased.

    96.     Plaintiffs relied upon Defendant's unfair, unlawful, and fraudulent business acts and practices - the material misrepresentations, omissions, and non-disclosures – to their detriment.

    97.     Plaintiffs have suffered injury in fact and have lost money as a result of Defendant's unfair competition in that they have overpaid for the Washing Machines, incurred Undisclosed Additional Operating Expenses, and/or would not have bought the Washing Machines had Defendant not misrepresented and failed to disclose that the Washing Machines' are unable to effectively self clean, that they have a propensity to accumulate and/or develop Biofilm, Foul Odors, and the Mold Problem, and that owners of the Machines will have to spend money for the Undisclosed Additional Operating Expenses.

    98.     Plaintiffs seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.*, plus interest, attorneys' fees, and costs.

///

///

///

35
FIRST AMENDED CLASS ACTION COMPLAINT

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 85 of 309   Page ID
#:2686
Case 2:10-cv-05163-R -JEM  Document 6  Filed 08/31/10   Page 37 of 112   Page ID
#:139

1

## SECOND CAUSE OF ACTION

2

### Asserted On Behalf of the California Class
3
### (Violations of Cal. Bus. & Prof. Code § 17500 *et seq.*))

4          99.    Representative Consumer Frutkoff repeats and re-alleges all prior paragraphs and

5    incorporates them as if fully set forth herein.

6          100.   Gary Frutkoff brings this cause of action on behalf of himself  and the California

7    Class, pursuant to California Business and Professions Code, §17500, *et seq*.

8          101.   Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

9          102.   Defendant falsely advertised the performance, uses, benefits, characteristics, and

10   the quality, grade and standard of the Washing Machines by, *inter alia*, representing that the

11   Washing Machines are "washers" or "machines that wash" or "washing machines" as these terms

12   and phrases are normally understood, and by representing that operating the "System Clean",

13   "Clean Washer", "deep clean sanitize", and/or "Sanitize" cycles on Electrolux Sanitary Models

14   would result in the Washing Machines being sanitized, the Clothes washed in the Washing

15   Machines being made sanitary and that by sanitizing the Washing Machines, any bacteria in the

16   Washing Machines before the sanitizing cycles were run would not be carried forward to Clothes

     washed in the Machines after the operation of the sanitizing cycles.

17         103.   Defendant also falsely advertised by failing to disclose the material facts that the

18   Washing Machines would accumulate Biofilm, and develop Foul Odors and the Mold Problem,

19   would require Extraordinary Actions to try to prevent these problems, and would cause Plaintiffs to

20   incur Undisclosed Additional Operating Expenses.

21         104.   These and other representations and omissions, as more fully described above, have

22   deceived and are likely to deceive Plaintiffs.

23         105.   Mr. Frutkoff and members of the California Class relied upon these material

24   misrepresentations and omissions to their detriment.

25         106.   Defendant's above-described false and misleading advertising continues to this day

26   and present a threat to the general public in that Defendant has not acknowledged its wrongdoing

27   to consumers, publicly issued an appropriate conspicuous notice to existing or prospective

28                                          36
                            FIRST AMENDED CLASS ACTION COMPLAINT

Exhibit____*E*__ Pg. *85*

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 86 of 309   Page ID
#:2687
Case 2:10-cv-05163-R   -JEM   Document 6   Filed 08/31/10   Page 38 of 112   Page ID
#:140

1    purchasers of its Washing Machines, or disclosed the presence of the Defects, Biofilm, Foul Odors,

2    the Mold Problem and Undisclosed Additional Operating Expenses, all of which resulted in

3    Plaintiffs being deceived and mislead.

4         107.    As a result of the above-described conduct, Defendant has been, and will continue

5    to be unjustly enriched at the expense of Plaintiffs.

6         108.    Had Plaintiffs known of the Defects, they would not have purchased the Washing

7    Machines, would have paid less for them, or would have purchase alternative washing machines.

8    As such, Plaintiffs did not receive the benefit of the bargain.

9         109.    Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiffs seek an order 1)

10   requiring Defendant to immediately cease the unlawful, unfair, and or fraudulent business acts

11   and/or practices and false and misleading advertising complained of herein; 2) enjoining Defendant

12   from continuing to misrepresent the Washing Machines' uses, benefits, characteristics, standard,

13   quality and grade by omitting from its advertising and communications which explain that the

14   Washing Machines develop Biofilm, Foul Odors, the Mold Problem and cause their owners to

15   incur Undisclosed Additional Operating Expenses; and 3) requiring Defendant to repair or replace

16   the Washing Machines or provide full restitution to Plaintiffs and Class members of all monies

17   wrongfully acquired by means of such acts of unfair competition and false advertising, plus interest

18   and attorneys' fees.

19

20                             **THIRD CAUSE OF ACTION**

21              **Asserted on Behalf of the California Class**
          **(Violations of the California Consumer Legal Remedies Act)**

22        110.    Consumer Representative Frutkoff repeats and re-alleges all prior paragraphs and

23   incorporates them as if fully set forth herein.

24        111.    Consumer Representative Frutkoff seeks to recover on behalf of the California

25   Class for Defendant's violation of the California Consumer Legal Remedies Act ("CLRA"),

26   California Civil Code §§ 1750 *et seq.*

27

28                                    37
                      FIRST AMENDED CLASS ACTION COMPLAINT

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 87 of 309   Page ID
#:2688
Case 2:10-cv-05163-R  -JEM   Document 6-5   Filed 08/31/10   Page 39 of 112   Page ID
#:141

1      112.   At all times relevant hereto, Plaintiffs were "consumer[s]" as that term is defined in

2   Civ. Code § 1761(d).

3      113.   At all times relevant hereto, the Machines constituted "goods" as that term is

4   defined in Civ. Code § 1761(a).

5      114.   At all times relevant hereto, Defendant constituted a "person" as that term is

6   defined in Civ. Code § 1761(c).

7      115.   At all times relevant hereto, Plaintiffs' purchases of Defendant's Washing

8   Machines and replacement parts constituted a "transaction" as that term is defined in Civ. Code §

9   1761(e).

10      116.   At all times relevant hereto, Defendant provided "services" to Plaintiffs within the

11   meaning of Civil Code § 1761(b).

12      117.   The CLRA provides in relevant part that "[t]he following unfair methods of

13   competition and unfair or deceptive acts or practices undertaken by any person in a transaction

14   intended to result or which results in the sale or lease of goods or services to any consumer are

unlawful: (5) Representing that goods . . . have . . . characteristics, uses, benefits . . . which they do

15   not have; ... (7) Representing that goods ... are of a particular standard, quality or grade . . . if they

16   are of another; ...  and (9) Advertising goods ... with intent not to sell them as advertised; Civil

17   Code §§ 1770(a)(5),(7), and (9).

18      118.   Defendant made uniform written representations that the Washing Machines are

19   high quality products that will perform as such and, as set forth above, made specific

20   representations regarding the characteristics, uses, benefits, standards, and quality of the Washing

21   Machines that were false, deceptive and/or misleading, and in violation of the CLRA.

22      119.   Defendant intentionally concealed and/or failed to disclose the following material

23   facts: a) the Machines have the Defects, b) the Defects cause Biofilm, the Foul Odors, the Mold

24   Problem; c) Machine owners must undertake Extraordinary Actions to combat Biofilm, Foul

25   Odors, and the mold Problem; and d) Machine owners will incur Undisclosed Additional

26   Operating Expenses.  This concealment was done for the purpose of inducing Consumer

27

28                38

Case 8:10-cv-00711-DOC-AN  Document 102  Filed 07/11/12  Page 88 of 309  Page ID
Case 2:10-cv-05163-R  -JEM  Document 36-9  Filed 08/31/10  Page 40 of 112  Page ID
#:2689
#:142

1  Representative Frutkoff and members of the California Class into purchasing Defendant's Washing

2  Machines.

3  120.  The information Defendant concealed and/or did not disclose to Plaintiffs are

4  material facts in that reasonable consumers expect their automatic clothes washers to clean clothes

5  and reduce the time they spend on chores and thus would have considered the omitted facts

6  important in deciding whether to purchase, or whether to pay the stated price for, the Washing

7  Machines. Plaintiffs would have behaved differently by not buying the Washing Machines, not

8  paying for repairs, and/or paying less for the Washing Machines, had they been aware of the

9  material facts.

10  121.  The omissions of material facts, as alleged above, are contrary to representations

11  actually made by Defendant, including but not limited to, that the Washing Machines are

12  "washers", "machines that wash", and "High Efficiency", clean or sanitize themselves and Clothes

13  washed in them, are capable of "killing 99.9% of bacteria, with no carryover between loads" and

14  therefore would actually clean Clothes. In addition, Defendant was obliged to disclose the material

15  facts because: a) Defendant had exclusive knowledge of the material facts not known to Plaintiffs,

16  since only Defendant had access to the aggregate data from its retailers, its own tests, and

17  complaints from its customers; b) Defendant actively concealed and suppressed the material facts

18  from Plaintiffs by not warning of the Defects at the time of purchase and by performing warranty

19  and/or repair work that it knew would not cure the Defects unknown to Plaintiffs; c) by

20  recommending remedies to complaining consumers that it knew would not cure the Defects or

21  resulting problems, thereby causing damages; and/or d) Defendant recommended futile actions,

22  such as advising Plaintiffs to run empty hot-water and bleach cycles, and wipe dry the door gasket,

23  door glass and basket after every wash, but at the same time suppressed the material fact that the

24  Machines had inherent defects that caused Biofilm, the Mold Problem and the Foul Odors.

25  122.  Plaintiffs justifiably acted or relied to their detriment upon the concealment and/or

26  non-disclosure of material facts as evidenced by their purchases of the defective Washing

27  Machines.

28

39
FIRST AMENDED CLASS ACTION COMPLAINT

Exhibit _E_ Pg. _88_

Case 8:10-cv-00711-DOC-AN  Document 102   Filed 07/11/12   Page 89 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 26  Filed 08/31/10   Page 41 of 112   Page ID
#:143
#:2690

123.    Had Defendant disclosed to Plaintiffs, before they purchased their Machine, that the Machines had the inherent Defects, Plaintiffs would not have purchased the Washing Machines, would have paid less for them, or would have purchase alternative washing machines. As such, Plaintiffs did not receive the benefit of the bargain.  Had Defendant disclose to Plaintiffs, at the time of making a warranty claim that the Machines were inherently defective and that replacement parts would not cure the Defects, Plaintiffs would not have paid for the replacement parts and or labor to install them.

124.    Civil Code § 1780 (a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770. Plaintiff and Class members are also entitled to recover damages as provided by statute, as well as costs, attorney's fees, rescission, and other relief as is deemed appropriate.

125.    Pursuant to Civil Code § 1782, Plaintiff Frutkoff notified Defendant in writing of the particular provisions of Civil Code § 1770 which it had violated and made a demand for corrective action.  Plaintiff Frutkoff sent this notice by certified mail, return receipt requested, to Defendant's principal place of business. See Exhibit "6".


## FOURTH CAUSE OF ACTION

### Asserted On Behalf of the California Class
### (Breach of Express Warranty under the Song Beverly Act, Cal. Civ. Code 1790 *et seq*., Cal. Comm. Code § 2313, and California Common Law)

126.    Consumer Representative Frutkoff repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

127.    Consumer Representative Frutkoff seeks recovery for the California Class for Defendant's breach of express warranty under the laws of the State of California.

128.    Defendant warranted all of the Washing Machines against defects in materials or workmanship at a time when they knew that these Washing Machines suffered from the Defects and, nevertheless, continued to market and sell the Washing Machines with the express Warranties referenced above.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 90 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 269  Filed 08/31/10   Page 42 of 112   Page ID
#:144

1      129.    Defendant also warranted that the Washing Machines would clean Clothes by

2  affirmation of fact.  For example, as to Electrolux Sanitary Models, Defendant warranted that the

3  Washing Machines where capable of cleaning themselves and/or killing 99.9% of bacteria as more

4  fully described above.

5      130.    These affirmations and promises created express warranties that the Washing

6  Machines would operate properly and without defects and would conform to Defendant's

7  affirmations and promises.  Defendant's affirmations and promises became part of the basis of the

8  bargains between Plaintiffs and Electrolux.

9      131.    Defendant is obligated under the terms of its express Warranties to repair and/or

10  replace the parts or materials that are the Defects in the Washing Machines sold to Plaintiffs,

11  and/or to make the Washing Machines conform to the Warranty under the Song-Beverly Act, Civil

12  Code § 1793.2(b) and (d), Cal. Comm. Code § 2313, and California Common Law.

13      132.    Defendant breached its express warranties, as set forth above, by selling and

14  supplying the Washing Machines in a condition which does not meet the warranty obligations

15  undertaken by Defendant and by failing to repair or eliminate the Defects that are inherent in the

16  Washing Machines or to cause the Washing Machines to conform to Defendant's Warranties after

17  a reasonable number of repair attempts.

18      133.    Defendant has received sufficient and timely notice of the breaches of warranties

19  alleged herein. [See Warranty Breach Notice Letter – Attached as Exhibit "7"].  Despite this notice

20  and Defendant's knowledge, Defendant refuse to honor its Warranties, even though it know the

21  Defects exist in the Washing Machines and cause them to accumulate and develop Biofilm, Foul

22  Odors, the Mold Problem and cause their owners to incur Undisclosed Additional Operating

23  Expenses.

24      134.    In addition, Defendant has received thousands of complaints and other notices from

25  their customers throughout the United States which complaints notified Defendant that Plaintiffs

26  Machines were experiencing Biofilm, the Foul Odors and the Mold Problem.

27

28

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 91 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 269   Filed 08/31/10   Page 43 of 112   Page ID
#:145

135. Even if notice were not given, or is somehow deemed defective, notice should be excused because of Defendant's knowledge of the Defects as alleged herein and because notice would have been and is futile as evidenced by EHP's policy and practice of not repairing or replacing the Washing Machines.

136. Plaintiff Frutkoff has complied with his obligations under the Warranty and the law and has given Defendant a reasonable opportunity to cure the breaches of their Warranties and Defendant failed to do so.

137. Defendant knew of its Warranty obligations to pay for new Washing Machines, as needed, because of the Defects in the Machines as described in this Complaint. However, Defendant has willfully refused to replace the Washing Machines. Therefore, Defendant is liable for damages, as well as civil penalties pursuant to Civil Code § 1794.

138. EHP's time limits on its express Warranties are unconscionable, since it knowingly and/or recklessly sold a defective product that was defective at the time of sale, without conspicuously informing consumers about the Defects and that the Defects caused the Washing Machines to develop Biofilm, the Foul Odors, the Mold Problem and their owners to incur Undisclosed Additional Operating Expenses. The time limits on the express Warranties are grossly inadequate to protect Plaintiffs. The Warranties were written by Defendant, without input of Plaintiffs; the term of the express Warranties unreasonably favor Defendant by unreasonably limiting the Warranty to 1-2 years on a product that is expected to last 10 or more years; a gross disparity in bargaining power existed as between Defendant and Plaintiffs; Plaintiffs had no meaningful choice in determining those time limitations; and Defendant knew or should have known that the Washing Machines were defective at the time of sale and would develop and accumulate Biofilm, Foul Odors and the Mold Problem before the end of their useful lives thereby rendering the time limitations in Defendant's express warranties insufficient, inadequate, and unconscionable.

139. As a proximate result of Defendant's breach of express Warranty, Plaintiffs have sustained damages and other losses in an amount to be determined at trial. Plaintiffs are entitled to

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 92 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 2695 Filed 08/31/10   Page 44 of 112   Page ID
#:146
#:2695

1    recover damages as provided by statute, as well as costs, attorneys' fees, rescission, and other relief

2    as is deemed appropriate.

3

4                                    **FIFTH CAUSE OF ACTION**

5                            **Asserted On Behalf of the California Class**
                     **(Breach of Implied Warranty under the Song Beverly Act,**
6     **Cal. Civ. Code 1790 *et seq*. Cal. Comm. Code § 2314, and California Common Law)**

7           140.    Plaintiff Frutkoff alleges and incorporates the above allegations by reference as if

8    fully set forth herein.

9           141.    Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792 *et*

10   *seq*., every sale of consumer goods is accompanied by both a "manufacturer's and retailer's"

11   implied warranty that the goods are merchantable.

12          142.    The Washing Machines are "consumer goods" within the meaning of Cal. Civ.

13   Code § 1791(a).

14          143.    Defendant is a "manufacturer" within the meaning of Cal. Civ. Code §§ 1791(j).

15          144.    Plaintiff Frutkoff bought a Frigidaire branded Washing Machine sold at retail in the

16   State of California.

17          145.    At the time of sale, and currently, Defendant is in the business of manufacturing and

18   selling Washing Machines.

19          146.    By operation of law, Defendant impliedly warranted to Plaintiffs that its Washing

20   Machines were of merchantable quality and fit for the ordinary purposes for which they are used.

21          147.    Defendant knowingly and/or recklessly sold a defective product without

22   conspicuously informing consumers about the Defects.    Defendant possessed actual superior

23   knowledge of Biofilm, the Foul Odors, Undisclosed Extraordinary Operating Expenses and the

24   Mold Problem based on pre-market testing, complaints posted on the internet, and complaints

25   made to Defendant's call center and internet websites.

26          148.    Defendant's waiver and/or limits on implied warranties are unconscionable, illegal,

27   and unenforceable, since Plaintiffs had no meaningful choice in determining those time limitations;

28                                              43
                         FIRST AMENDED CLASS ACTION COMPLAINT

                            Exhibit __E__ Pg. __92__

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 93 of 309   Page ID
Case 2:10-cv-05163-R -JEM   Document 26   Filed 08/31/10   Page 45 of 112   Page ID
#:147

1   the warranties were written by Defendant, without input of Plaintiffs; the Warranty

2   overwhelmingly favors Defendant by unreasonably limiting the warranty to 1 year on a product

3   that is expected to last over 10 years; a gross disparity in bargaining power existed as between

4   Defendant and Class members; Defendant knew or should have known that the Washing Machines

5   were defective at the time of sale and would accumulate Biofilm and develop the Foul Odors and

6   the Mold Problem before the end of their useful lives, and Plaintiffs were unfairly surprised by the

7   limitations.

8        149.   Defendant breached the implied warranty at the time of sale.

9        150.   Consumer Representative Frutkoff's Washing Machine became unfit for its

10   ordinary purpose of cleaning Clothes during the implied warranty period because it accumulated

11   Biofilm, produced Foul Odors, and developed the Mold Problem, causing the Clothes washed in

12   his Machine to have a foul smell.

13       151.   Defendant's Washers are not adequately contained, packaged, and/or labeled.

14       152.   Plaintiffs were the intended third-party beneficiaries of the implied warranty made

15   by Defendant. Defendant, who is the manufacturer of the Washing Machines knew that the

16   retailers to whom it sold the Washing Machines were not going to own the Washing Machines any

17   longer than it took to sell them to Plaintiffs. Further, Defendant intended that any warranty,

18   whether express or implied, that applied to the Washing Machines were for the benefit of the

19   Plaintiffs; who are the people that own and use the Washing Machines.

20       153.   Defendant knew and intended that Plaintiffs were the ultimate beneficiaries of

21   Defendant's implied warranties as they are the owners of the Washing Machines.

22       154.   Defendants, who manufacture and market the Washing Machines, and/or

23   sellers/resellers of the Washing Machines, had knowledge that Plaintiffs were the end users of the

24   Washing Machines when Defendant entered into any and all sales contracts and subcontracts for

25   the Washing Machines and Defendant's intent to benefit Plaintiffs arises by operation of law

26   pursuant to the "implied covenant of good faith and fair dealing" contained within any and all sales

27   contracts and subcontracts for the Washing Machines entered into by Defendants.

28

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 94 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 26   Filed 08/31/10   Page 46 of 112   Page ID
#:2695
#:148

155.   As a proximate result of Defendant's breach of implied warranty, Plaintiffs have sustained damages and other losses in an amount to be determined at trial.  Plaintiffs are entitled to recover damages and attorneys' fees as provided by statute, as well as costs, rescission, and other relief as is deemed appropriate.

## SIXTH CAUSE OF ACTION

**Asserted On Behalf of All State Classes**
**(Violations of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301 *et seq.*) –**
**Breach of Written Warranty)**

156.   The Consumer Representatives repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

157.   The Washing Machines are "consumer products" as that term is defined under 15 U.S.C. §2301(1).

158.   Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 2301(3), and utilized the Machines for personal and household use and not for resale or commercial purposes.

159.   EHP is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

160.   EHP provided Plaintiffs with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

161.   In its capacity as a warrantor, and by the conduct described herein, any attempt by EHP to limit the express warranties in a manner that would exclude coverage for the Defects in the Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for its defective Washing Machines is null and void as alleged above.

162.   This Court has jurisdiction over this cause of action under 28 U.S.C. 1332.

163.   By EHP's conduct as described herein, including EHP's knowledge of the Defects in the Washing Machines and its action, and inaction, in the face of that knowledge, EHP has

Case 8:10-cv-00711-DOC-AN Document 102 Filed 07/11/12 Page 95 of 309 Page ID
Case 2:10-cv-05163-R -JEM Document 2696 Filed 08/31/10 Page 47 of 112 Page ID
#:149

1    failed to comply with its obligations under its written and implied promises, Warranties, and

2    representations.

3       164.    Plaintiffs fulfilled their obligations under the Warranties.

4       165.    As a result of Defendant's breach of express warranties, Plaintiffs are entitled to

5    revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain

6    attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

7

8                           **SEVENTH CAUSE OF ACTION**

9                        **Asserted On Behalf Of All State Classes**
10                                **(Unjust Enrichment)**

11      166.    The Consumer Representatives repeat and re-allege all prior paragraphs and

12    incorporate them as if fully set forth herein.

13      167.    At all relevant times relevant hereto, Defendant manufactured and sold the Washing

14    Machines with the Defects as alleged herein.

15      168.    Defendant has been unjustly enriched by Plaintiffs' purchases of the Washing

16    Machines.

17      169.    Plaintiffs unknowingly conferred a benefit, directly and indirectly, on Defendant to

18    their detriment through the purchase of the Washing Machines, replacement parts through

19    Electrolux's customer service personnel or third party authorized Electrolux service agencies, and

20    Glisten Dishwasher cleaner through Frigidaire's website as directed by Electrolux' customer

21    service personnel, of which Defendant had knowledge, since Defendant was aware of the presence

22    of the Defects in the Washing Machines and that the Defects caused the Machines to develop

23    Biofilm, the Foul Odors, the Mold Problem and cause their owners to incur Undisclosed

24    Additional Operating Expenses. However, Defendant failed to disclose this material information

25    and misled Plaintiffs regarding the nature, benefits, characteristics, and quality of the Washing

26    Machines while profiting from this deception.

27

28                                     46
                        FIRST AMENDED CLASS ACTION COMPLAINT

                            Exhibit____E____ Pg. __95__

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 96 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 2697 Filed 08/31/10   Page 48 of 112   Page ID
#:150

1     170.    The circumstances are such that it would be inequitable, unconscionable and unjust

2  to permit Defendant to retain the benefit of these funds that it unfairly obtained from Plaintiffs.

3  Defendant would be unjustly enriched if they were allowed to retain such funds and, therefore, a

4  constructive trust should be imposed on all monies wrongfully obtained by Defendant and the

5  money should be ordered returned to Plaintiffs.

6

7                    **EIGHTH CAUSE OF ACTION**

8                 **Asserted On Behalf Of The Florida Class**

9    **(Violation of the Florida Deceptive and Unfair Trades Practices Act,**
                      **Fla. Stat. § 501.201 *et seq.*)**

10     171.    Consumer Representative Fox-Isicoff repeats and re-alleges all prior paragraphs and

11  incorporates them as if fully set forth herein.

12     172.    Consumer Representative Fox-Isicoff brings this cause of action against Defendant

13  pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

14     173.    FDUTPA prohibits, *inter alia*, any unfair methods of competition, unconscionable

15  acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

16     174.    Consumer Representative Fox-Isicoff and members of the Florida Class are

17  "consumers" as that term is defined in Fla. Stat. Ann § 501.211.

18     175.    Defendant is a "person" as that term is defined in Fla. Stat. Ann. § 1.01(3).

19     176.    Plaintiffs reasonably expected their Washing Machines not to accumulate Biofilm,

20  develop Foul Odors and the Mold Problem, and cause them to incur Additional Undisclosed

21  Operating Expenses.

22     177.    Defendant developed, marketed and sold the Defective Washing Machines.  The

23  Washing Machines are Defective as explained in detail above.

24     178.    At all relevant times related hereto, Defendant knew of or recklessly disregarded the

25  Defects and knew or recklessly disregarded that their statements and omissions of material facts

26  were false or misleading as alleged above.

27

28                       47

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 97 of 309   Page ID
#:2698
Case 2:10-cv-05163-R  -JEM   Document 6   Filed 08/31/10   Page 49 of 112   Page ID
#:151

179.     Electrolux violated the FDUTPA by concealing from Plaintiffs the existence of the Defects, concealing materials facts such as the Washing Machines' propensity to accumulate Biofilm, develop Foul Odors, and the Mold Problem, or cause them to incur Additional Undisclosed Operating Expenses, and misrepresenting the Electrolux Sanitary Models' abilities to clean and/or sanitize themselves, and Clothes washed in them.

180.     Defendant's representations and omissions did deceive, and are likely to deceive reasonable consumers, and reasonable consumers would have relied on these representations and omissions.

181.     Had Defendant disclosed all material information regarding the Washing Machines to Plaintiffs, they would not have purchased the Washing Machines, or would have paid less for them.

182.     As a proximate result of Defendant's wrongful conduct, Plaintiffs lost money by overpaying for the Machines, paying for repairs and/or Undisclosed Additional Operating Expenses, and through diminution in value of their Washing Machines and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

### NINTH CAUSE OF ACTION

**Asserted on Behalf of the Florida, Maryland, Michigan, New York, Oregon, Pennsylvania, and Texas Classes**
**(Breach of Express Warranties)**

183.     Representative Consumers Tammy Fox-Isicoff, Steve and Jennifer Schroder, Isaac and Gail Walkover, Daniel and Shelena Hunter, Charles and Rosemary Overly, and Glenn and Deirdre Dickerson repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

184.     This cause of action is brought on behalf of the Florida, Maryland, Michigan, New York, Oregon, Pennsylvania, and Texas Classes.

///

///

Exhibit ___E___ Pg. _97_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 98 of 309   Page ID
#:2699
Case 2:10-cv-05163-R  -JEM   Document 9  Filed 08/31/10   Page 50 of 112   Page ID
#:152

185.   EHP expressly warranted all of the Washing Machines against defects in materials and workmanship when it knew that the Washing Machines were defective, but continued to market and sell them with the express Warranties attached hereto as exhibits.

186.   Defendant also made affirmations of fact and promises to Plaintiffs which related to the Washing Machines as more fully described herein.

187.   These affirmations and promises created express warranties that the Washing Machines would operate properly and without defects and would conform to Defendant's affirmations and promises.  Defendant's affirmations and promises became part of the basis of the bargains between consumers and Defendants.

188.   EHP has breached its express Warranties, as set forth above, by supplying the Washing Machines in a condition that does not meet the Warranty obligations undertaken by EHP, and by failing to repair or replace the defects and/or defective parts such that the Machines do not accumulate Biofilm, or develop Foul Odors or the Mold Problem.

189.   EHP's warranty fails in its essential purpose and, accordingly, Plaintiffs and members of the Classes cannot and should not be limited to the remedies set forth in EHP's written warranty.  Instead, Plaintiff should be permitted to recover all measure of appropriate relief.

190.   EHP has received sufficient and timely notice of the breaches of warranty alleged herein.  EHP also has actual and constructive notice of its breach due to notorious litigation involving similarly designed washing machines that are pending against other front-loading washing machine manufacturers.

191.   Plaintiffs have notified Defendant of the Defects in their Machines and the presence of the Foul Odors and the Mold Problem and afforded it a reasonable opportunity to cure the Defects, but Defendant has failed to provide Plaintiffs a sufficient repair to eliminate the defects and resulting problems, or replacement Machines that conform to the qualities and characteristics that Defendant warranted when it sold the Washing Machines.

192.   EHP has failed and refused to honor its Warranty obligations, even though it knows of the Defects inherent in the Washing Machines.

193.   Plaintiffs relied on Defendant's express Warranties to their detriment.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 99 of 309   Page ID
#:270
Case 2:10-cv-05163-R  -JEM   Document 6   Filed 08/31/10   Page 51 of 112   Page ID
#:153

1    194.    As a result of Defendant's breach of express Warranties, Plaintiffs have suffered

2  damages in an amount to be determined at trial

3

4                           **TENTH CAUSE OF ACTION**

5  **Asserted on Behalf of the Florida, Maryland, Michigan, New York, Oregon, Pennsylvania,
    and Texas Classes**
6  **(Breach of Implied Warranty of Merchantability)**

7    195.    Representative Consumers Tammy Fox-Isicoff, Steve and Jennifer Schroder, Gail

8  and Isaac Walkover, Daniel and Shelena Hunter, Charles and Rosemary Overly, and Glenn and

9  Deirdre Dickerson repeat and re-allege all prior paragraphs and incorporate them as if fully set

10  forth herein.

11    196.    Defendant is a "merchant" pursuant to Uniform Commercial Code § 2-314 and

12  relevant Florida, Maryland, Michigan, New York, Oregon, Pennsylvania, and Texas statutes.

13    197.    Defendant impliedly warrants that the Washing Machines are merchantable and fit

14  for their ordinary use at the time they leave Defendant's control.

15    198.    Because the Washing Machines are sold with Defects, accumulate Biofilm, develop

16  Foul Odors and the Mold Problem, and require Extraordinary Actions that cost their owners

17  Undisclosed Additional Operating Expenses, the Washing Machines are unfit and unmerchantable

18  when sold for their ordinary use as automatic Clothes washers.

19    199.    Defendant has not validly disclaimed, excluded, or modified the implied warranties

20  and/or duties described herein, and/or any attempted disclaimer or exclusion of the same was and is

21  void, illegal, and ineffectual.

22    200.    As a direct and proximate result of Defendant's breach of implied warranty,

23  Plaintiffs have suffered actual damages in the form of diminished value of their machines, costs of

24  repair, and costs at attempting the futile remedies recommended by Defendants.

25    201.    Upon information and belief, as documented in Defendant's own business records,

26  Defendant had notice that the Washing Machines were not merchantable at the time of sale and/or

27  within a reasonable time after the latent Defects manifested themselves to Plaintiffs.

28                                      50

Case 8:10-cv-00711-DOC-AN Document 102 Filed 07/11/12 Page 100 of 309 Page ID
Case 2:10-cv-05163-R -JEM Document 27 Filed 08/31/10 Page 52 of 112 Page ID
#:154

1   202. Representative Consumers Tammy Fox-Isicoff, Steve and Jennifer Schroder, Isaac

2 and Gail Walkover, Daniel and Shelena Hunter, Charles and Rosemary Overly, and Glenn and

3 Deirdre Dickerson on behalf of themselves and all others similarly situated, demand judgment

4 against Defendant for damages in an amount to be proven at trial, plus attorneys' fees, interest and

5 costs.

6          **ELEVENTH CAUSE OF ACTION**

7       **Asserted on Behalf of the Maryland Class**

8     **(Violation of the Maryland Consumer Protection Act,**
        **Md. Code Ann., Com. Law § 13-101)**

9   203. Consumer Representatives John and Samantha Eddy repeat and re-allege all prior

10 paragraphs and incorporate them as if fully set forth herein.

11   204. Consumer Representatives John and Samantha Eddy are "consumers" and

12 "persons" within the meaning of Md. Code Ann., Com. Law § 13-101(c) and (h); Defendant is a

13 "merchant" within the meaning of Md. Code Ann., Com. Law § 13-101(f).

14   205. The Washing Machines are "consumer goods" and "merchandise" within the

15 meaning of Md. Code Ann., Com. Law § 13-101(d) and (f).

16   206. The Maryland Consumer Protection Act proscribes any "[f]alse, falsely disparaging,

17 or misleading oral or written statement, visual description, or other representation of any kind

18 which has the capacity, tendency, or effect of deceiving or misleading consumers" in connection

19 with sale of consumer goods." Md. Code Ann., Com. Law § 13-301(1);

20   207. The Maryland Consumer Protection Act also proscribes "any representation that…

21 [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory,

22 characteristic, ingredient, use, benefit, or quantity which they do not have"; and "[c]onsumer

23 goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or

24 model which they are not." Md. Code Ann., Com. Law § 13-301(2)(i) and (2)(iv).

25   208. The Maryland Consumer Protection Act also proscribes as unfair and deceptive

26 trade practices: "[f]ailure to state a material fact if the failure deceives or tends to deceive;

27 [a]dvertisement or offer of consumer goods… [w]ithout intent to sell… them as advertised or

28

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 101 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 27-2  Filed 08/31/10   Page 53 of 112   Page ID
#:155
#:270

1   offered; [k]nowingly false statement that a service, replacement, or repair is needed; [d]eception,

2   fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or

3   omission of any material fact with the intent that a consumer rely on the same in connection with

4   … [t]he promotion or sale of any consumer goods, consumer realty, or consumer service… or [t]he

5   subsequent performance of a merchant with respect to an agreement of sale. Md. Code Ann., Com.

6   Law § 13-301(3),(5)(1), (7), (9)(i) and (9)(iii).

7       209.   Defendant falsely represented material facts regarding the Machines which misled

8   the Eddys and members of the Maryland Class as more fully alleged herein.

9       210.   Defendant misrepresented the characteristics, uses, benefits, standard, quality, and

10   grade of the Machines as alleged herein.

11       211.   Defendant failed to disclose that the Washing Machines have a high propensity to

12   accumulate Biofilm, Foul Odors and the Mold Problem and require Extraordinary Actions which

13   cause their owners to incur Undisclosed Additional Operating Expenses.

14       212.   Defendant advertised the Machines without the intent to sell them as advertised as

15   alleged herein.

16       213.   Defendant falsely advised the Eddys and other members of the Maryland Class that

17   service, replacement, and or a repair to the Machines is needed by sending replacement door

18   gaskets which would require Machine owners to incur the cost of labor to install the new door

19   gaskets while Defendant knew that new door gaskets would not remedy the accumulation of

20   Biofilm, and development of Foul Odors and the Mold Problem.

21       214.   Defendant intentionally deceived the Eddys and members of the Maryland Class by

22   misrepresenting and/or omitting material facts in connection with the sale of the Washing

23   Machines as alleged herein in violation of  Md. Code Ann., Com. Law § 13-301(9)(i). Defendant

24   also violated Md. Code Ann., Com. Law § 13-301(9)(iii) by falsely representing to the Eddys and

25   Maryland Class members that the Washing Machines were not defective, recommending futile

26   Extraordinary Actions, and advising replacement and repairs, such as new door gaskets, that

27   Electrolux knew would not cure the problems, all in breach of Defendant's Warranty agreements.

28

Exhibit____E____ Pg. _101_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 102 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document #:2703ed 08/31/10   Page 54 of 112   Page ID
#:156

1     215.    Defendant knew of the falsity of its representations of fact and/or omissions and

2  intended to induce reliance by the Eddys and members of the Maryland Class as alleged herein.

3     216.    As a result of Defendant's conduct, Consumer representatives John and Samantha

4  Eddy and members of the Maryland Class did not receive the benefit of the bargain because they

5  overpaid for the Machines.

6     217.    As a result of Defendant's conduct, Consumer representatives John and Samantha

7  Eddy and members of the Maryland Class lost money through the diminution in value of their

8  Machines, as well as money spent on Undisclosed Additional Operating Expenses.

9     218.    Consumer Representatives John and Samantha Eddy and members of the Maryland

10  Class seek restitutionary and injunctive relief, as well as damages, costs and attorneys fees.

11

12               **TWELFTH CAUSE OF ACTION**

13                  **Asserted on Behalf of the Michigan Class**
          **(Violation of the Michigan Consumer Protection Act, M.C.L.A § 445.901 *et seq.*)**

14     219.    Consumer Representatives Steve and Jennifer Schroder repeat and re-allege all prior

15  paragraphs and incorporate them as if fully set forth herein.

16     220.    This cause of action is brought against Defendant pursuant to the Michigan

17  Consumer Protection Act ("MCPA"), § 445.901 *et seq.*

18     221.    Defendant is a "person" as that term is defined by M.C.L.A § 445.902(d).

19     222.    Defendant's sale of the Washing Machines, repair services, and Glisten Dishwasher

20  Cleaner were acts that occurred in or affect "trade or commerce" as those terms are defined by

21  M.C.L.A § 445.902(g).

22     223.    Defendant developed, marketed and sold the defective Washing Machines. The

23  Washing Machines had Defects within them at the time they were sold by Defendants.   The

24  Washing Machines are defective as set forth above in this complaint.

25     224.    The MCPA prohibits "unfair, unconscionable, or deceptive methods, acts, or

26  practices in the conduct of trade or commerce" including "(a) causing a probability of confusion or

27  misunderstanding as to the source, sponsorship, approval, or certification of goods or services…;

28                  53

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 103 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 270 Filed 08/31/10   Page 55 of 112   Page ID
#:157
#:2704

1   (c) representing that good have sponsorship, approval, characteristics, … uses, benefits… that they

2   do not…; (e) representing that goods or services are of a particular standard, quality, or grade …, if

3   they are of another…; (g) advertising or representing goods or services with intent not to dispose of

4   those goods or services as advertised or represented…; (p) disclaiming or limiting the implied

5   warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously

6   disclosed…(s) failing to reveal a material fact, the omission of which tends to mislead or deceive

7   the consumer, and which fact could not reasonably be known by the consumer…; (cc) failing to

8   reveal facts that are material to a transaction in light of other representations of fact made in a

9   positive manner."

10         225.   Defendant violated these subsections of the MCPA by concealing from Plaintiffs

11   the existence of the Defects, concealing material facts such as the Washing Machines' propensity

12   to accumulate Biofilm, develop Foul Odors, and the Mold Problem, or cause their owners to incur

13   Additional Undisclosed Operating Expenses, misrepresenting the Washing Machines as "washers"

14   or "machines that wash", misrepresenting the Electrolux Sanitary Models' abilities to clean and/or

15   sanitize themselves, and Clothes washed in them, and breaching express and implied warranties.

16         226.   The omissions of material facts were important to the transactions and would have

17   affected Plaintiffs' decision to enter into the transaction in that Plaintiffs either would not have

18   purchased the Machines or would have paid less for them and thus have suffered an ascertainable

19   loss.  The omissions of material fact were not reasonably discoverable by Plaintiffs prior to the

20   time of purchase.

21         227.   Defendant had knowledge of or recklessly disregarded the Defects and falsity of

22   their representations at all relevant times as alleged herein.

23         228.   Defendant's misrepresentations and omissions did deceive and are likely to deceive

24   the Schroders and reasonable consumers, and reasonable consumers would have relied and did rely

25   on these misrepresentations and omissions.

26         229.   Defendant's acts and practices are the actual and proximate cause of Plaintiffs'

27   damages.  As such, Plaintiffs request relief under the MCPA, including actual damages, interest,

28   attorneys' fees, and cost.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 104 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document #:2705 Filed 08/31/10   Page 56 of 112   Page ID
#:158

**THIRTEENTH CAUSE OF ACTION**

**Asserted on Behalf of the New York Class**
**(Violations of § 349 of New York General Business Law: Deceptive Acts and Practices)**

230.    Consumer Representatives Isaac and Gail Walkover repeat and reallege all prior paragraphs and incorporate them as if fully set forth herein.

231.    NY GBL § 349 makes unlawful any deceptive act or practice, including false advertising, in the conduct of any trade or commerce or in the furnishing of any service in New York.

232.    The Walkovers are consumers who purchased their Washing Machines in New York and bring this action pursuant to NY GBL § 349 on behalf of themselves and all New York residents that purchased the Washing Machines.

233.    Defendant has engaged in deceptive practices through misrepresentations and omissions of material facts directed at the Walkovers and members of the New York Class, as more fully described above, in connection with the sale of Washing Machines that have inherent Defects that cause them to accumulate Biofilm, develop the Mold Problem and emit Foul Odors and cause their owners to incur Undisclosed Additional Operating Expenses. Electrolux also has denied and continues to deny valid Warranty claims and instead suggests futile, costly, and inefficient Extraordinary Actions that cause New York Class members to incur Undisclosed Additional Operating Expenses.

234.    Defendant's misrepresentations and omissions are likely to mislead and did materially mislead the Walkovers and reasonable consumers by causing them to purchase machines that they would not have purchased (or would have paid less for) and to pay for Undisclosed Additional Operating Expenses, but for Defendant's misrepresentations and omissions.

235.    Defendant made numerous misrepresentations and omitted material facts upon which the Walkovers and members of the New York Class relied to their detriment.

236.    The unfair and deceptive trade practices have directly, foreseeably, and proximately caused damages and injury to the Walkovers and members of the New York Class as described above.

55
FIRST AMENDED CLASS ACTION COMPLAINT

Exhibit 5 Pg. 104

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 105 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 27-6 Filed 08/31/10   Page 57 of 112   Page ID
#:159

237.    Plaintiffs seek to enjoin Defendant's deceptive conduct, as well as damages and attorneys' fees, and all other relief available under NY GBL § 349.

### FOURTEENTH CAUSE OF ACTION

**Asserted on Behalf of the Oregon Class**
**(Violations of the Oregon Revised Statutes § 646.605 *et seq*.)**

238.    Consumer Representatives Daniel and Shelena Hunter repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

239.    Consumer Representatives Daniel and Shelena Hunter bring this cause of action on behalf of themselves and all similarly situated Oregon consumers.

240.    Defendant is a "person" as defined by Oregon Revised States ("ORS") § 646.605(4), the Washing Machines are "goods" as defined by ORS § 646.605(6), and Defendant sold, advertised, distributed, and marketed the Washing Machines in "trade" and "commerce" as defined by ORS § 646.605(8), and has employed "unconscionable tactics" as defined by ORS § 646.605(9).

241.    Consumer Representative Daniel and Shelena Hunter purchased their Washing Machine for personal, family, and/or household purposes.

242.    Defendant violated ORS § 646.607(1) and (2) by, as more fully alleged above, not disclosing the Washing Machines' Defects and the material facts that the Washing Machines accumulate Biofilm, develop the Mold Problem and emit Foul Odors. Electrolux also failed to disclose the material facts that the Washing Machines require Extraordinary Actions that cause Class members to incur Undisclosed Additional Operating Expenses.

243.    ORS § 646.608 makes the following practices unlawful: (e) represent[ing] that... goods or services... have sponsorship, approval, characteristics... uses, benefits or qualities that they do not have...; (g) represent[ing] that... goods or services... are of a particular standard, quality, or grade... if they are of another; (i) advertising ... goods or services... with intent not to provide them as advertised...; and (t) concurrent with tender or delivery of any... goods or services fails to disclose any known material defect or material nonconformity.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 106 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 370   Filed 08/31/10   Page 58 of 112   Page ID
#:160

244.   Defendant violated these and other subsections of ORS § 646.608, as more fully alleged above, by willfully concealing from Plaintiffs the existence of the Defects, and material facts that the Washing Machines have a propensity to accumulate Biofilm, develop the Mold Problem, Foul Odors, and cause Machine owners to incur Undisclosed Additional Operating Expenses in taking Extraordinary Actions related to maintaining the Machines; willfully misrepresenting the Washing Machines as "washers" or "machines that wash", and willfully misrepresenting the Electrolux Sanitary Models' abilities to clean and/or sanitize themselves, and Clothes washed inside them.

245.   Defendant's misrepresentations and omissions are likely to deceive, and did deceive the Hunters and members of the Oregon Class.

246.   The Hunters and Oregon Class members relied on Defendant's omissions of material facts, and misrepresentations to their detriment.

247.   The Hunters and Oregon Class members suffered an ascertainable loss of money as a direct and proximate result of Defendant's conduct in that they would not have purchased the Washing Machines, or would have paid less for them had they known of the Defects and omitted material facts prior to purchase, and their Washing Machines' value has diminished now that the Defects and facts are known.

248.   The Hunters discovered Defendant's unlawful methods, acts, and or practices on or about February 1, 2010.

249.   Plaintiffs seek to enjoin Defendant's unlawful conduct, as well as restitution, actual damages, punitive damages, and attorneys fees, and costs pursuant to ORS § 646.638.

## FIFTEENTH CAUSE OF ACTION

**Asserted on Behalf of the Pennsylvania Class**
**(Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Const. St § 201-1 *et seq*.)**

250.   Consumer Representatives Charles and Rosemary Overly repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 107 of 309   Page ID
Case 2:10-cv-05163-R   -JEM   Document 27   Filed 08/31/10   Page 59 of 112   Page ID
#:2708
#:161

251. This cause of action is brought against Defendant for unfair, deceptive and unlawful trade practices pursuant to 73 Pa. Const. St § 201-1 *et seq.*

252. Defendant is a "person" as defined by 73 Pa. Const. St § 201-2(2).

253. Defendant marketed and sold the Washing Machines within "trade" and "commerce" as defined by 73 Pa. Const. St § 201-2(3).

254. The Overlys and members of the Pennsylvania Class purchased the Washing Machines primarily for personal, family, or household purposes.

255. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") makes unlawful specific unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, including: (v) representing that goods . . . have . . . characteristics, uses, benefits . . . which they do not have; ... (vii) representing that goods ... are of a particular standard, quality or grade . . . if they are of another; (ix) advertising goods ... with intent not to sell them as advertised; (xiv) failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after contract for the purchase of goods or services is made; and (xxi) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

256. Defendant violated these sections of the UTPCPL, as alleged herein, by concealing from Plaintiffs the existence of the Defects and material facts that the Washing Machines' have a propensity to accumulate Biofilm, develop the Mold Problem, Foul Odors, and cause Machine owners to incur Undisclosed Additional Operating Expenses in taking Extraordinary Actions related to maintaining the Machines; misrepresenting the Washing Machines as "washers" or "machines that wash", and misrepresenting the Electrolux Sanitary Models' abilities to clean and/or sanitize themselves, and Clothes washed inside them.

257. Defendant also violated the UTPCPL by not adequately repairing or replacing the defective washers, and misleading members of the Pennsylvania Class into believing that a door gasket replacement would cure the Foul Odors and Mold Problem and deceiving them into believing that their machines were repaired only long enough for the 1 year warranty to expire.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 108 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 27-09   Filed 08/31/10   Page 60 of 112   Page ID
#:162

258.   The Overlys and members of the Pennsylvania Class relied on Defendant's material omissions and misrepresentations to their detriment in that they would not have purchased the Washing Machines or would have paid less for them had Defendant not misrepresented them and omitted material facts as alleged herein.

259.   Defendant's deceptive conduct created a likelihood of confusion and misunderstanding and is likely to deceive, and did deceive, the Overlys and members of the Pennsylvania Class as alleged herein.

260.   As a result of Defendant's use and employment of acts and practices declared unlawful by the UTPCPL, the Overlys and members of the Pennsylvania Class lost money through the diminution in value of their Washing Machines, by overpaying for a defective product, and/or by incurring Undisclosed Additional Operating Expenses through the employment of Defendant's recommend, albeit futile, Extraordinary Actions.

261.   Consumer Representatives Charles and Rosemary Overly seek to enjoin Defendant's unlawful conduct, as well as an award of treble damages, restitution, costs, and attorneys' fees.

## SIXTEENTH CAUSE OF ACTION

### Asserted on Behalf of the Texas Class
### (Violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et seq.*)

262.   Consumer Representative Glenn and Deirdre Dickerson repeat and re-allege all prior paragraphs and incorporate them as if full set forth herein.

263.   This cause of action is brought against Defendant for false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty pursuant to the Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus. & Com. Code § 17.41 et seq.

264.   The Washing Machines are "goods" as defined by Tex. Bus. & Com. Code § 17.45(1). Defendant is a "person" as defined by Tex. Bus. & Com. Code § 17.45(3).

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 109 of 309   Page ID
Case 2:10-cv-05163-R -JEM   Document #:2710   Filed 08/31/10   Page 61 of 112   Page ID
#:163

265.    The Dickersons are "consumer(s)" as defined by Tex. Bus. & Com. Code § 17.45(4).

266.    Defendant marketed, advertised, distributed and sold the Washing Machines within "trade" and "commerce" as defined by V.T.C.A, Bus. & C. § 17.45(6).

267.    The TDTPA makes unlawful the following acts and practices pursuant to Tex. Bus. & Com. Code § 17.46: (5) representing that goods have sponsorship, approval, characteristics, ... uses, benefits... which they do not have...; (7) representing that goods or services are of a particular standard, quality, or grade ..., if they are of another...; (9) advertising goods or services with intent not to sell them as advertised; (12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; (13) knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service; (20) representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve...; (24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

268.    The TDTPA also makes unlawful the breach of an express or implied warranty pursuant to Tex. Bus. & Com. Code § 17.50(a)(2).

269.    Defendant violated the TDTPA by recklessly and/or intentionally failing to disclose to Plaintiffs the existence of the Defects and material facts that the Washing Machines have a propensity to accumulate Biofilm, develop the Mold Problem, Foul Odors, and cause Machine owners to incur Undisclosed Additional Operating Expenses in taking Extraordinary Actions related to maintaining the Machines thereby inducing Class members into purchasing the Machines; misrepresenting and advertising the Washing Machines as "washers" or "machines that wash", and misrepresenting and advertising the Electrolux Sanitary Models' abilities to clean and/or sanitize themselves, and Clothes washed inside them.

270.    Defendant violated the TDTPA by issuing a warranty which represented that defects in materials and workmanship would be repaired or replaced when in fact they would not.

Exhibit____E____ Pg. _109_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 110 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 27   Filed 08/31/10   Page 62 of 112   Page ID
#:164

271.   Defendant violated the TDTPA by knowingly making false and misleading statements of fact concerning the need for a replacement door gasket at the time Class members complained about Foul Odors and the Mold problem, since Frigidaire knew, as alleged herein, that a new door gasket would not and could not cure the Defects in the Washing Machines.

272.   Defendant violated the TDTPA by breaching express and implied warranties as alleged herein.

273.   The Dickersons and members of the Texas Class relied on Defendant's omissions and misrepresentations of materials facts to their detriment.

274.   As a result of Defendant's numerous violations of the TDTPA, the Dickersons and Texas Class members lost money through the diminution in value of their Washing Machines, by overpaying for a defective product, and/or by incurring Undisclosed Additional Operating Expenses through the employment of Defendant's recommend, albeit futile, Extraordinary Actions.

275.   Consumer Representatives Glenn and Deirdre Dickerson seek to enjoin Defendant's unlawful conduct, as well as damages, restitution, treble damages for knowing violations of the TDTPA, costs, pre-judgment interest, and attorneys' fees pursuant to Tex. Bus. & Com. Code § 17.50.

276.   Pursuant to Tex. Bus. & Com. Code §§ 17.505 and 17.501 the Dickersons sent a notice letter to Defendant and the Texas Attorney General Consumer Protection Division. See Ex. "8". Sixty (60) days have elapsed since Defendant received the notice letter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against the Defendant for the following:

1.   An order certifying California, Florida, Maryland, Michigan, New York, Oregon, Pennsylvania, and Texas Classes and appointing Tammy Fox-Isicoff, Gary Frutkoff, Steve and Jennifer Schroder, Isaac and Gail Walkover, Daniel and Shelena Hunter, Charles and Rosemary Overly and Glenn and Deirdre Dickerson as representative Plaintiffs and their counsel, Stuart M. Eppsteiner of Eppsteiner & Fiorica Attorneys, LLP to be class counsel for the Classes;

Exhibit _____ Pg. _110_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 111 of 309   Page ID
Case 2:10-cv-05163-R  -JEM   Document 27   Filed 08/31/10   Page 63 of 112   Page ID
#:165

2.    A constructive trust on and restitution of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

3.    All recoverable compensatory, punitive, and other damages sustained by Plaintiffs;

4.    Actual and/or statutory damages for injuries suffered by Plaintiffs in the maximum amount permitted by applicable law;

5.    An order (1) enjoining Defendant's wrongful, unlawful, fraudulent, deceptive, and unfair conduct as set forth above; (2) directing Defendant to engage in a corrective notice campaign; and (3) directing Defendant to repair the Washing Machines or refund to Plaintiffs the funds paid to Defendant for the defective Washing Machines;

6.    Statutory pre-judgment and post-judgment interest on any amounts;

7.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8.    Such other relief as the Court may deem just and proper.

The Consumer Representatives, individually and on behalf of all others similarly situated, hereby demand a trial by jury on all issues so triable.

DATED: August 31, 2010                    EPPSTEINER & FIORICA ATTORNEYS, LLP


By:  _____
     Stuart M. Eppsteiner, Esq.
     Andrew J. Kubik, Esq.

# Exhibit  F

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 113 of 309   Page ID
#:2714
Case: 1:08-wp-65000-JG   Doc #: 7   Filed: 02/13/09  1 of 66.  PageID #: 267

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| In re: WHIRLPOOL CORP. FRONT-LOADING WASHER PRODUCTS LIABILITY LITIGATION | 1:08-wp-65000 |
| | MDL No. 2001 |
| | Class Action |
| | Judge: James S. Gwin |

### MASTER CLASS ACTION COMPLAINT

Plaintiffs Gina Glazer, Chris and Trina Allison, Jeff Glennon, Mara Cohen, Karen P. Hollander, Jane Werman, Sonja Sandholm-Pound, Shannon Schaeffer, Bonnie Beierschmitt, Phil Torf, Sylvia Bicknell, Rebecca Nordan, Maggie O'Brien, Andrea Strong, Pramila Gardner, and Tracie Snyder (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege as follows:

### INTRODUCTION

1.     Plaintiffs bring this class action individually and on behalf of the Classes defined below (the "Classes" or collectively, the "Class"), against Whirlpool Corporation ("Whirlpool" or "Defendant"), to obtain relief, including, among other things, damages and injunctive relief.

2.     This action is brought to remedy violations of law in connection with Whirlpool's design, manufacture, marketing, advertising, selling, warranting, and servicing of its Duet, Duet HT and Duet Sport Front-Loading Automatic Washers (the "Washing Machines" or "Machines").  These Washing Machines have serious design defects (collectively "Design Defects") that cause them to (a) accumulate mold and

1

mildew and/or residue or growth within the Washing Machines, (b) produce a moldy or mildewy odor that permeates the Washing Machines and/or consumers' homes, (c) produce a mold or mildew odor on clothes and other items washed in the Machines, (d) fail to clean the Machines and remove moisture, residue, growth and/or bacteria that lead to the formation of mold, mildew and/or associated foul odors; and (e) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold.  The problems caused by the Design Defects are collectively referred to as "Mold Problems."

3.      Plaintiffs assert claims for violations of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01 *et seq.*; tortious breach of warranty; negligent design and failure to warn; the Magnuson-Moss Act (15 U.S.C. §§2301-2312) with respect to Whirlpool's written and implied warranties; breach of express and implied warranty and unjust enrichment under various States' laws; and for violation of various States' Consumer Protection/Deceptive Practices acts.

## THE PARTIES

### PLAINTIFFS

4.      Plaintiff Gina Glazer is and at all relevant times has been a resident and citizen of Ohio.

5.      Plaintiffs Chris and Trina Allison are and at all relevant times have been residents and citizens of Ohio.

6.      Plaintiff Jeff Glennon is and at all relevant times has been a resident and citizen of New York.

7.      Plaintiff Mara Cohen is and at all relevant times has been a resident and

2

citizen of New York.

8.     Plaintiff Karen P. Hollander is and at all relevant times has been a resident and citizen of Florida.

9.     Plaintiff Sylvia Bicknell is and at all relevant times has been a resident and citizen of Florida.

10.     Plaintiff Jane Werman is and at all relevant times has been a resident and citizen of Illinois.

11.     Plaintiff Phil Torf is and at all relevant times has been a resident and citizen of Illinois.

12.     Plaintiff Sonja Sandholm-Pound is and at all relevant times has been a resident and citizen of New Jersey.

13.     Plaintiff Shannon Schaeffer is and at all relevant times has been a resident and citizen of California.

14.     Plaintiff Bonnie Beierschmitt is and at all relevant times has been a resident and citizen of New Jersey.

15.     Plaintiff Rebecca Nordan is and at all  relevant times has been a resident and citizen of Maryland.

16.     Plaintiff Maggie O'Brien is and at all relevant times has been a resident and citizen of Indiana.

17.     Plaintiff Andrea Strong is and at all relevant times has been a resident and citizen of  Arizona.

18.     Plaintiff Pramila Gardner is and at all relevant times has been a resident and citizen of Texas.

3

19.     Plaintiff Tracie Snyder is and at all relevant times has been a resident and citizen of North Carolina.

20.     As set forth below, each of the Plaintiffs purchased a Washing Machine for household purposes, and at all pertinent times used the Machine for its intended purpose with the use of the recommended high-efficiency ("HE") detergent, and each has been experiencing Mold Problems in the Machine and on items washed in the Machine. Plaintiffs provided Whirlpool with sufficient pre-suit notice of Mold Problems and unsuccessfully tried Whirlpool's various recommendations to fix the problems.

**WHIRLPOOL**

21.     Whirlpool is a Delaware corporation and maintains its principal place of business at 2000 M-63 N, Benton Harbor, Michigan 49022.

**JURISDICTION AND VENUE**

22.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and this is a class action in which the Class members and Whirlpool are citizens of different states.

23.     Venue is proper in this judicial district under 28 U.S.C. §1391, because Whirlpool does business throughout this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. At all pertinent times, Whirlpool was and is in the business of marketing, advertising, distributing and selling products, including the Washing Machines, throughout Ohio and this judicial district, and nationwide, by and through various authorized dealers. The Washing Machines that form the basis of this Complaint were purchased from Whirlpool and/or from Whirlpool's

4


Exhibit _F_ Pg. _116_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 117 of 309   Page ID
#:12718
Case: 1:08-wp-65000-JG   Doc #: 7   Filed: 02/13/09   5 of 66.   PageID #: 271

authorized dealers and placed in the stream of commerce by Whirlpool.

24.     Furthermore, the United States Judicial Panel on Multidistrict Litigation

has transferred all similar actions to this jurisdiction.  Plaintiffs reserve their right to seek

remand for trial of all actions transferred by the MDL Panel.

## FACTUAL BACKGROUND

### Facts Common To The Class

25.     Whirlpool holds itself out to the public as a manufacturer of safe, cutting-

edge, and easy-to-use home appliances, including washing machines.  Whirlpool is in the

business of manufacturing, producing, distributing, and/or selling washing machines

throughout the United States.

26.     Whirlpool manufactured, produced, and/or distributed front-loading

Washing Machines for sale by its network of authorized dealers including several leading

retailers in the United States, such as Lowe's, Sears, Best Buy, PC Richard and Son, and

other large retail chains.

27.     Whirlpool provided Plaintiffs and each purchaser of the subject Washing

Machines with an express one-year factory warranty as follows:

> For one year from the date of purchase, when this major appliance is
> operated and maintained according to instructions attached to or furnished
> with the product, Whirlpool Corporation or Whirlpool Canada LP
> (hereafter "Whirlpool") will pay for Factory Specified Parts and repair
> labor to correct defects in materials or workmanship.

Whirlpool has these same obligations with respect to Plaintiffs and all Class members,

but has failed to satisfy these obligations.

28.     In recognition of the anticipated useful life of the Machines, Whirlpool

also provided a "limited lifetime warranty on the stainless steel drum" for most of the

5

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 118 of 309   Page ID
#:2749
Case: 1:08-wp-65000-JG  Doc #: 7  Filed: 02/13/09  6 of 66.  PageID #: 272

Whirlpool Duet and Duet HT Machines.  This warranty stated that, "for the lifetime of

the washer," Whirlpool would "pay for FSP® (factory specified products), replacement

parts for the Stainless Steel wash drum if defective in materials or workmanship."

29.     In conjunction with each sale, Whirlpool marketed, advertised, and

warranted that the defective Washing Machines were of merchantable quality fit for the

ordinary purpose for which such goods were used and were free from defects, or at a

minimum would not cause Mold Problems.

30.     Whirlpool also made express representations about the quality of its

Washing Machines.  For example, Whirlpool sold the Washing Machines as "High

Efficiency" and labeled the Machines as "ENERGY STAR" compliant.  ENERGY STAR

is a voluntary labeling program designed to identify and promote energy-efficient

products through a joint program of the U.S. Environmental Protection Agency and the

U.S. Department of Energy.  Members of the Class have purchased the Washing

Machines in part, on the basis that the Machines would save money and energy.  In

reality, at the recommendation of Whirlpool and independently, Class Members are

having to run empty cycles of hot water and/or bleach and/or other products to combat

the Mold Problems within the Machines.  Further, as the Mold Problems became

undeniable, Whirlpool began recommending that Machine owners run three successive

washer cleaning cycles with an Affresh™ tablet in each cycle to ameliorate Mold

Problems.  Affresh is a product designed, manufactured, and marketed by Whirlpool

specifically to address Mold Problems in Washing Machines.  Upon information and

belief, the ratings (Modified Energy Factor) provided by Whirlpool to the government

entities are not taking into account the extra loads run through the Machines to try to

6

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 119 of 309   Page ID
#:2720
Case: 1:08-wp-65000-JG  Doc #: 7   Filed: 02/13/09  7 of 66.  PageID #: 273

clean the Machines.

     31.    Whirlpool provides care instructions within the "Use & Care Guides"
provided after the purchase and installation of the Washing Machines.  None of the Use
& Care Guides make any disclosure about any risk of Mold Problems when the
recommended HE detergent is used as instructed.  Whirlpool fails to inform consumers,
through the Use & Care Guides or any other written disclosure, that even when
consumers operate the Washing Machines as instructed by Whirlpool, Mold Problems
will occur with virtually every machine, and that they will result regardless of washer
maintenance, due to defects in the design of the Washing Machines.

     32.    Some of the Use & Care Guides only mention that "noticeable mold and
mildew" issues may arise when using "regular" detergent rather than the recommended
"HE" or "High Efficiency" detergent.  Plaintiffs used the recommended HE detergent.
Other Use & Care Guides suggest that Washing Machine owners leave the washer door
open between uses to ameliorate "Washer odor."   That suggestion poses obvious safety
risks to children and pets; indeed, a young child recently drowned in a Kenmore front-
loading washing machine manufactured by Whirlpool, causing the U.S. Consumer
Product Safety Commission to open an investigation regarding safety standards for front
loaders.  Despite following Whirlpool's sometimes risky instructions, Plaintiffs all still
experienced Mold Problems with their Washing Machines.

     33.    Each Washing Machine has a separate compartment/dispenser with a "fill
line" for the recommended amount of liquid and/or powder HE detergent.  Similarly,
each Washing Machine has a separate compartment/dispenser with a "fill line" for the
recommended amount of liquid fabric softener.

7

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 120 of 309   Page ID
Case: 1:08-wp-65000-JG  Doc #: 7  Filed: 02/13/09  8 of 66.  PageID #: 274
#: 2721

34.    Plaintiffs and Class Members experienced, and continue to experience, Mold Problems even though they followed the instructions and recommendations by Whirlpool in its Use & Care Guide and elsewhere.

35.    Whirlpool intended for customers to believe its statements and representations about its Washing Machines and to trust that its high-end Washing Machines were and are of first-rate quality.  Whirlpool concealed material facts regarding the Washing Machines, including serious design defects, which cause the Washing Machines to (a) accumulate mold and mildew residue or growth within the Washing Machines, (b) produce a moldy or mildewy odor that permeates consumers' Machines and homes, (c) produce a mold or mildew odor on clothes washed in the Machines, and (d) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold, even though consumers used the Washing Machine as instructed by Whirlpool, including using HE detergent and fabric softener in the amounts instructed by Whirlpool.

36.    The Washing Machines are defective in many respects.  Due to those defects, the use of the Washing Machine—as instructed by Whirlpool—results in conditions creating an excessive propensity for the Washing Machines to accumulate mold and mildew, residue or growth and moldy odors.  These defects include, among other things, (a) the failure of the Washing Machines to properly drain water and to avoid lingering moisture; (b) the failure of the Washing Machines to sufficiently rinse away HE detergent and liquid fabric softener to prevent the accumulation of residues that contribute to the formation of mold and mildew and moldy odors; (c) the failure of the Washing Machines to prevent the accumulation of residues and growths that contribute to

8

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 121 of 309   Page ID
#:2722
Case: 1:08-wp-65000-JG   Doc #: 7   Filed: 02/13/09   9 of 66. PageID #: 275

the formation of mold and mildew and moldy odors when products such as HE detergent
and liquid fabric softener are used in the amounts instructed and recommended by
Whirlpool; (d) the failure of the Washing Machines to have dispenser compartments that
contain proper fill lines for HE detergent and liquid fabric softener to prevent the
accumulation of residues that contribute to the formation of mold and mildew and moldy
odors; and (e) the failure of the Washing Machines to clean themselves in a manner
necessary for the proper functioning of the Machine for the purpose for which it was
intended.

37.     Upon information and belief, the defects in the stainless steel drums,
which come with a lifetime warranty, also play a role in causing the Mold Problems.  Due
to the defects in the drums, *inter alia*, the Machines do not fully or properly drain in
connection with each and every wash cycle and/or do not sufficiently permit the rinsing
away and/or prevent the accumulation of residues and growths.  As a result, the defects in
the drums do not permit the Machines to clean themselves after each load.  Defects in the
door seal ("boot") also play a role in the accumulation of mold, mildew and/or foul odors.
Among other things, the door seal does not fully or properly drain and/or remove residues
and growths after each wash.

38.     Whirlpool knew and was aware, or should have known and been aware,
before marketing and selling the Washing Machines, that they were inherently defective
because even when operated as instructed, the Machines were substantially likely to
experience Mold Problems. Whirlpool nonetheless failed to warn its customers of the
Design Defects inherent in the Washing Machines or the Mold Problems which would
result from the alleged defects.

9


Exhibit____F____  Pg. _121_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 122 of 309   Page ID
#:2723
Case: 1:08-wp-65000-JG  Doc #: 7   Filed: 02/13/09  10 of 66.  PageID #: 276

39.     As a result of the Design Defects that have plagued and continue to plague
the Washing Machines, Plaintiffs and the other Class members overpaid for the
Machines.   For the reasons detailed herein, moreover, Whirlpool knew or should have
known that the value of the Washing Machines it was selling to consumers was
significantly inflated by its misrepresentations and misleading information concerning
those Machines.  If Plaintiffs and the other Class members had known about the design
defects affecting the Washing Machines, they would not have paid the significant sums
that they paid for the Machines.

40.     As a result of the mold or mildew odor that permeates items "washed" in
the Machines, many consumers have been forced to re-wash or even replace clothes,
towels and other items that have been ruined by the Design Defects in these Washing
Machines.

41.     Whirlpool has profited, either directly or indirectly, by concealing the
nature of the Design Defects and misrepresenting the cause of the Mold Problems
associated with the defects, which have enabled it (a) to sell the Washing Machines at
premium prices, (b) to profit on repair services purportedly to fix the Mold Problems, (c)
and to sell Whirlpool Washing Machine-related products such as Affresh (from which
Whirlpool earns a profit) which it misrepresented as capable of addressing and resolving
the Mold Problems arising from the defects at issue.  In fact and in truth, Whirlpool has
no effective remedy for the Design Defects and Mold Problems and has taken no action
to correct the defects.

42.     As a result of Whirlpool's false and misleading statements and
concealment, and Whirlpool's other misconduct described in this Complaint, Plaintiffs

Exhibit___F___ Pg. _122_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 123 of 309   Page ID
#:2724
Case: 1:08-wp-65000-JG  Doc #: 7   Filed: 02/13/09  11 of 66.  PageID #: 277

and the Class bought thousands of the Washing Machines and have suffered—and
continue to suffer—injury as a result of the defective nature of these Washing Machines
and as a result of Whirlpool's misconduct.

     43.    Far from being an innocuous or isolated defect or problem, in addition to
Plaintiffs, thousands of other Washing Machine purchasers have complained directly (and
indirectly) to Whirlpool and its authorized dealers and service personnel, and on Internet
web sites about the Design Defects and Mold Problems with the Machines.

     44.    Indeed, the Internet is replete with references and complaints regarding the
Washing Machines that mirror allegations in this Complaint. *See, e.g.*,
http://www.my3cents.com/productReview.cgi?compid=226&product=duet+washer;
http://www.consumeraffairs.com/homeowners/whirlpool_washing_machine.html

     45.    As a result of the avalanche of consumer complaints regarding the defects
that Whirlpool would not and/or could not remedy, several entrepreneurs created and
marketed products designed to treat, eliminate and/or minimize the Mold Problems
caused by the Design Defects in the Washing Machines.  These products include
SmellyWasher and NuFreshNow.  Due to the widespread and intractable nature of the
Mold Problems, these entrepreneurs have sold tens of thousands, if not hundreds of
thousands, of units of their products to consumers.  As further evidence of the serious
nature of these problems, Proctor & Gamble recently created a new product called Tide
Washing Machine Cleaner in an attempt to address these intractable Mold Problems.

     46.    Reflecting its knowledge that the Design Defects resulted in serious Mold
Problems in its Washing Machines, Whirlpool developed a new product called Affresh™
to try and address these serious problems.  As part of its marketing program for

11

Exhibit _F_ Pg. _123_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 124 of 309   Page ID
#:3735
Case: 1:08-wp-65000-JG  Doc #: 7  Filed: 02/13/09  12 of 66.  PageID #: 278

Affresh™, in September 2007, Whirlpool finally disseminated information about the "potential" for buildup of "mold and mildew stains" in the washers and offered for sale Affresh™ tablets as an alleged solution to the problems.  On the packaging for this product, Whirlpool represented that Affresh "[r]emoves odor-causing residue in HE Washers[,]" and "[u]sed once a month, it keeps your machine fresh and clean by removing the odor-causing residue that can build up in all HE Washers."  On its website affresh.com, Whirlpool admitted that Whirlpool Washing Machines "up to 1 year in age should be cleaned once a month with Affresh™ cleaner to prevent odor-causing residue from accumulating."  Despite its representations, Whirlpool's Affresh™ failed to prevent and/or fix Mold Problems experienced by Plaintiffs and other class members.

47.     Due to the ineffectiveness of Affresh™, Whirlpool modified Affresh™ and created and marketed an Affresh™ Washing Cleaner Kit that included Power Puck™ tablets and Grit Grabber™ cloths.  On its Affresh website, Whirlpool represented that its Washing Machines "older than 1 year require special attention, particularly if odor has set in," and that the Grit Grabber cloths were designed to "help remove the residue and odor you can't reach with Power Puck Tablets."  Despite its representations, Whirlpool's Affresh™ Washing Cleaner Kit also fails to prevent and/or fix the Mold Problems experienced by Plaintiffs and other class members.

48.     Nonetheless, Whirlpool unjustly enriched itself through the sale of its Affresh™ products, while failing to remedy the defect.

49.     The Washing Machines purchased by Plaintiffs and Class members failed to work due to a defect in design (which failure to work did not result from the ordinary course of usage by Plaintiffs or Class members).

12

Case 8:10-cv-00711-DOC-AN Document 102 Filed 07/11/12 Page 125 of 309 Page ID
#:2726
Case: 1:08-wp-65000-JG Doc #: 7 Filed 02/13/09 13 of 66. PageID #: 279

50. On its website at affresh.com, Whirlpool admits that newer front-loading high efficiency Machines are more prone than older top-loading washers to build up residue that lead to odors. Despite this knowledge, Whirlpool failed to take the necessary steps to adequately design and/or test the Washing Machines to ensure that they were free from the Design Defects complained of herein. Instead, Whirlpool sold and continues to sell these Washing Machines even though it knew, or was reckless in not knowing, that they (a) contained inherent material defects; (b) were not of merchantable quality; and (c) would result in the formation of mold, mildew, residue or growth and moldy/mildewy and other foul odors, even when used as instructed.

51. Despite having repeated notice of the above-described Design Defects in its Washing Machines and despite the reasonable expectations of consumers created by Whirlpool's marketing of its Washing Machines, Whirlpool has engaged in the following routine, albeit wrongful course of conduct, where Whirlpool:

    a. Designed, manufactured and sold Washing Machines with Design Defects that cause Mold Problems;

    b. Failed to disclose that the Washing Machines had Design Defects that cause Mold Problems;

    c. Continued to represent expressly or by implication that the Washing Machines that Plaintiffs and Class Members purchased were dependable, cost effective, and would provide outstanding cleaning and performance as washing machines when it knew that these statements were false;

    d. Continued to manufacture, market, advertise, distribute, and sell the Washing Machines to consumers when it knew or should have known the Washing Machines were not dependable and would not withstand normal operation;

    e. Failed to disclose to consumers the substantial risk of Washing Machine failure and the material defects in the Washing Machines;

13

Exhibit _F_ Pg. _125_

    f.      Failed to disclose the nature of the defects to consumers;

    g.      Failed to disclose the many complaints it received from consumers (or the high incidence of attempted but futile repairs of the Washing Machines);

    h.      Failed to implement a recall to adequately announce, remedy, and correct the defects for consumers;

    i.      Failed to disclose to consumers that Whirlpool was not committed to making effective repairs under its warranties to address Mold Problems;

    j.      Failed to take action to correct its omissions or false or misleading implied or express representations about the use, efficacy, qualities, and benefits of its Washing Machines; and

    k.      Failed to disclose that despite following the recommended procedures within the Whirlpool Use & Care Guide, consumers would still experience Mold Problems.

52.      By engaging in the foregoing course of conduct, Whirlpool has caused consumers—including Plaintiffs and Class Members—to be aggrieved and suffer ascertainable losses, in that, among others things, Whirlpool's course of conduct systematically:

    a.      Caused Plaintiffs and the Class members to pay premium prices for a defective product;

    b.      Reduced the value of the Washing Machines purchased by Plaintiffs and Class members; and

    c.      Caused reasonable consumers like Plaintiffs and Class members to spend money for attempted repairs and other purported remedies of the defects in their Machines that they would not have spent but for Whirlpool's common course of conduct.

53.      To this day, Whirlpool continues to conceal material information from users, consumers, and the public, that (a) the Machines are inherently defective; and (b) the Machines are not of merchantable quality.

14

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 127 of 309   Page ID
#:2728
Case: 1:08-wp-65000-JG   Doc #: 7   Filed: 02/13/09   15 of 66.   PageID #: 281

54.     All jurisdictional prerequisites have been and/or are hereby satisfied by and through the filing and service of this Complaint and the similar complaints previously filed and transferred to this Multidistrict Litigation.  Moreover, in light of the thousands of complaints consumers have made directly to Whirlpool, Whirlpool's authorized dealers, and manufacturers of products that attempt to remediate the Mold Problems, and complaints posted on the internet and other forums, and Whirlpool's refusal to effectively resolve the  Mold Problems, any additional pre-suit complaints or other notice to Whirlpool would have been futile.

**Plaintiff Gina Glazer's Experiences with Her Washing Machine**

55.     Plaintiff Glazer bought a new Duet Sport washing machine (serial number 1-416382928) from a Best Buy store in Ohio in 2006.  Plaintiff Glazer began to experience Mold Problems in her Washing Machine.  Glazer complained to Whirlpool on January 9, 2008 about the "terrible smell."  Whirlpool responded on January 10, 2008— advancing numerous suggestions, which did not work in any material way.  On May 21, 2008, Glazer contacted Whirlpool again by email—explaining that its suggested remedies did not work.  Whirlpool responded by phone—suggesting that Glazer pay for a service call, that she have the rubber gasket on the inside of the Machine door replaced, and that she clean behind the rubber gasket after each load.

**Plaintiff Chris and Trina Allison's Experiences with Their Washing Machine**

56.     Plaintiffs Chris and Trina Allison purchased a Duet HT in Oct. 2005 from hhgregg in Ohio for over $1,000 along with a 5 year extended warranty for $84.99.  After a few months of use, their towels started smelling like mold or mildew.  Mrs. Allison called Whirlpool to complain in or about February 2006.  Whirlpool sent a technician to

15

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 128 of 309   Page ID
#:2729
Case: 1:08-wp-65000-JG   Doc #: 7   Filed: 02/13/09   16 of 66.   PageID #: 282

look at the washer, who said the machine was clean. The technician recommended that

the Allisons run Affresh tablets through the machine every few weeks, and keep the door

open when the machine is not in use. The Allisons also have noticed black mold in the

rubber door seal, which they tried to clean with Clorox bleach. The Allisons have tried

those solutions but the Mold Problems persist.

**Plaintiff Jeff Glennon's Experiences With His Washing Machine**

57.     Plaintiff Glennon purchased a new Duet Washing Machine from PC

Richard & Son in Greenvale, New York on or about August 16, 2006 and took delivery

on or about August 22, 2006. He paid $838.97. Glennon began to experience Mold

Problems within weeks of delivery of his Washing Machine. Plaintiff Glennon contacted

Whirlpool numerous times concerning the problem. In response, Whirlpool

representatives advised him to run his Washing Machine on a hot cycle with bleach and

to wipe down the door and gasket. He followed these recommendations but continued to

experience Mold Problems.

58.     Whirlpool sent numerous repair representatives to Glennon's home to

remedy the Mold Problems. Several of the Whirlpool representatives told him that the

Mold Problems he was experiencing were widespread among Whirlpool's Washing

Machines. One of the Whirlpool representatives advised Glennon to run a cycle of

bleach and use the clean washer cycle. Glennon followed these recommendations but

continued to experience the Mold Problems.

59.     After ten service calls, Glennon eventually obtained a store exchange from

PC Richard & Son. On or about November 27, 2007, Glennon had PC Richard & Son

pickup his first Washing Machine and deliver a replacement Washing Machine.

801149.5                          Exhibit _F_ Pg. _128_

60.     Within three months, Glennon noticed that the second machine also developed the same Mold Problems.  He contacted Whirlpool again about the problem.  Whirlpool advised Glennon to leave the door open, run hot cycles from time to time, and run cycles with Affresh.  He followed these recommendations, but has continued to experience Mold Problems.

**Plaintiff Mara Cohen's Experiences with Her Washing Machine**

61.     Plaintiff Cohen purchased a new Duet Washing Machine from Berger Appliance in Hawthorne, New York on or about February 16, 2006.  She paid approximately $959.00.

62.     Shortly thereafter, a constant stench began to emanate from Plaintiff Cohen's washer.  Despite Cohen's compliance with all instructions and recommendations associated with her Machine, including using HE detergent, the stench has persisted to date.  Further, mold appeared on the inside of the front door, and has persisted to the present.

63.     Cohen complained to Whirlpool about the Mold Problems in or about January 2007.  In response, a Whirlpool repairman told Cohen, "You have to leave the door open.  We know there's a problem."  Cohen later received a letter from Whirlpool advising her to purchase Affresh tablets in order to address the ongoing Mold Problems.  Cohen purchased and used the Affresh tablets, but they have not alleviated the Mold Problems.  Plaintiff's Washing Machine currently has buildup of dark mold on the bottom of the door.

**Plaintiff Karen Hollander's Experiences with Her Washing Machine**

64.     Plaintiff Hollander purchased a Duet Washing Machine from BrandsMart

17

Exhibit _F_ Pg. _129_

U.S.A. in Deerfield Beach, Florida on or about January 11, 2006 and took delivery on January 16, 2006. She paid about $1,100 (plus delivery charges and extended warranty).

65.     Hollander began to experience Mold Problems several months after she bought the Machine despite using only HE detergent. She called Whirlpool in or about December 2007. During the call, she complained about Mold Problems, but the Whirlpool representative only offered cleaning solutions like using Affresh. Hollander tried Affresh but it was ineffective. She called Whirlpool back, but was told Whirlpool could not offer any additional solutions.

66.     Hollander's independent efforts of running a diluted Clorox solution through the Machine (following the procedures suggested in the Whirlpool manual that came with the Machine), keeping the door to the Machine open, and cleaning the rubber seal, also did not relieve the Mold Problems. In researching the issue, Hollander visited a retailer and learned of other similar complaints.

67.     A technician from Hollander's extended warranty company inspected her Machine twice, but he also was unable to offer any solutions to fix the Mold Problems.

**Plaintiff Jane Werman's Experiences with Her Washing Machine**

68.     Plaintiff Werman purchased a new Duet Washing Machine from ABT Electronics, Inc. in Glenview, Illinois on or about February 15, 2004 and took delivery in or about August 2004. She paid about $880.00.

69.     Werman began to experience Mold Problems within a year after delivery despite using only high-efficiency detergent. She began to leave the door on the Machine open at all times. She began to run bleach cycles through her Machine. Despite this, the Mold Problems continued. Then, about a year and a half after delivery of her Machine,

18

Werman began experiencing Mold Problems including mold and mildew accumulation in the Washing Machine (thereby affecting items washed in the Machine).

70.     Werman complained about the Mold Problems to Whirlpool retailer ABT. Werman's remediation efforts of cleaning the Machine by hand and continuing to run bleach through it were ineffective.  Through Internet research she learned of similar complaints regarding Mold Problems, including that numerous other people were experiencing extensive mold and mildew growth behind the rubber seal.  Similar to the complaints on the Internet, when Werman pulled back the rubber seal on her Machine, the area behind the rubber seal was caked with mold.  As a result, after every few loads of laundry, Werman cleans out the mold behind the rubber seal, but the Mold Problems continue.

**Plaintiff Sonja Sandholm-Pound's Experiences with Her Washing Machine**

71.     Plaintiff Sandholm-Pound bought a Washing Machine ("First Machine") on or about May 2003 in New Jersey.  She bought a second Washing Machine ("Second Machine") on or about May 2005 in New Jersey.  She began to experience Mold Problems affecting items washed in the Second Machine, in or around November 2005 despite use of only the recommended high-efficiency detergent.  She promptly complained to Whirlpool in December 2005, and several times thereafter.  Whirlpool sent a repair person twice to repair Sandholm-Pound's Second Machine.  Each time, the repair person replaced the gasket around the door of the Second Machine.

72.     Despite the gasket replacements, Sandholm-Pound continues to experience Mold Problems with her Second Machine.  In or around April 2008, she began to experience Mold Problems in her First Machine.  With respect to both of her Machines,

19

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 132 of 309   Page ID
#:2733
Case: 1:08-wp-65000-JG  Doc #: 7  Filed: 02/13/09  20 of 66.  PageID #: 286

Sandholm-Pound followed Whirlpool's maintenance instructions—specifically to run frequent cycles of bleach and to leave the door open. Neither got rid of the Mold Problems. As a result of the Mold Problems, Sandholm-Pound's clothing, towels, and other items still smell like mildew after they are "washed" in each of the Machines. She has had to throw away numerous towels because she could not get rid of the moldy smells.

**Plaintiff Shannon Schaeffer's Experiences with Her Washing Machine**

73.     Plaintiff Schaeffer purchased a new Duet Washing Machine from Cagle's Appliance Center in Ontario, California on or about February 19, 2005.

74.     Schaeffer began to smell mildew emanating from the Washing Machine in 2006 despite using only high-efficiency detergent. Shortly thereafter, she discovered black mold or mildew inside and around the door seal. She attempted to clean the mold/mildew but the smell continued.

75.     Schaeffer researched the Internet and discovered numerous postings from other consumers who had complained to Whirlpool about similar problems. She followed the advice Whirlpool gave to these other consumers and attempted to remedy the Mold Problems by leaving the door open on the Washing Machine after use, manually drying the door after use, using hot water, reducing the amount of HE detergent in each cycle, switching from liquid to powder HE detergent, not using liquid fabric softeners and also running empty cycles with bleach. Each of these attempted remedies failed to resolve the Mold Problems.

76.     Schaeffer took further efforts in an attempt to remedy the Washing Mold Problems by removing the front panel of the machine and accessing the plastic trap cover

20

whereby she discovered chunks of mold and mildew. She cleaned the reservoir with bleach and reassembled the trap and cover. This attempted fix also failed to resolve the Mold Problems.

77.     On or about January 6, 2009, Schaeffer contacted Whirlpool directly to seek assistance in remedying the Mold Problems. A Whirlpool representative advised her to leave the door of the Washing Machine open and also suggested use of Affresh tablets. Schaeffer requested that a free sample be sent to her from Whirlpool since they were a required accessory for the Machine. Whirlpool declined Schaeffer's request for a free-sample. Schaeffer subsequently obtained two packages of Affresh from Cagle's Appliance Center. Per the instructions on the Affresh package, she ran an empty cycle with three Affresh tablets, but the Mold Problems returned shortly thereafter.

**Plaintiff Bonnie Beierschmitt's Experiences with Her Washing Machine**

78.     Plaintiff Beierschmitt bought a Duet Washing Machine in New Jersey, on or about January 4, 2005 and took delivery of the Washing Machine shortly thereafter. She paid about $990 (plus an extended four year warranty). About one month after the delivery, Beierschmitt began to experience Mold Problems that affected items washed in the Washing Machine. She followed Whirlpool's recommendations, provided in a video tape which accompanied her Washing Machine, to leave the front door and the soap drawer open to eliminate the foul odor made. Whirlpool's own recommendations failed to correct the problem.

**Plaintiff Phil Torf's Experiences with His Washing Machine**

79.     Plaintiff Torf bought a Duet Washing Machine for household purposes in Illinois on or about August 22, 2005 and took delivery on or about August 28, 2005. He

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 134 of 309   Page ID
#:2735
Case: 1:08-wp-65000-JG  Doc #: 7   Filed: 02/13/09  22 of 66.  PageID #: 288

paid about $975 (plus an extended four year warranty).  Several months later, Torf began

experiencing Mold Problems that affected items washed in the Machine.  Torf promptly

contacted Whirlpool to correct the problem.  Whirlpool refused to cover the Mold

Problems—stating that the problem was not covered under the warranty because,

allegedly, the Machine did not contain a defective component.

**Plaintiff Sylvia Bicknell's Experiences with Her Washing Machine**

80.    Plaintiff Bicknell bought a Duet Washing Machine in Florida on or about

January 25, 2006 and took delivery of the Washing Machine on or about January 26,

2006.  She paid about $1,200 (plus delivery charges and extended five year warranty).

Several months later Bicknell experienced Mold Problems that affected items washed in

the Machine.  She promptly contacted Whirlpool to correct the problem.  Whirlpool

refused to cover the drainage and mold and mildew problems—stating that the problem

was not covered under the warranty because, allegedly, the Machine did not contain a

defective component.

**Plaintiff Rebecca Nordan's Experiences With Her Washing Machine**

81.    Plaintiff Nordan purchased a Duet Washing Machine from ABC

Appliance Sales & Services, Inc. in Edgewater, Maryland on or about April 22, 2005 for

approximately $989.95 and began to experience Mold Problems that affected items

washed in the Machine four months after the delivery of her Washing Machine.

82.    Although Plaintiff Nordan raised the Mold Problems with a Whirlpool

representative in late 2005 through a telephone service call, the Whirlpool representative

only offered cleaning solutions such as bleach and water mixture to run through the

machine.  Plaintiff Nordan's independent efforts of running a dishwasher detergent

through the Machine, keeping the door to the Machine open and cleaning the rubber seal, glass door and detergent compartment tray of the Machine with a cloth and bleach solution, also did not relieve the Mold Problems.  In researching the issue, Plaintiff Nordan learned of other similar complaints.

83.    Plaintiff Nordan called Whirlpool again in 2007 and in March 2008, and the representative offered the use of Affresh™ tablets.  Plaintiff Nordan asked if the instruction to use Affresh™ tablets was in the manual that accompanied Plaintiff's Machine.  Whirlpool responded by saying that this technique was not in the manual and that the Affresh™ tablets were invented after the problem started occurring.  Plaintiff Nordan tried the Affresh™ tablets but ultimately this proved to be ineffective as well.

84.    Plaintiff Nordan purchased an extended warranty plan for her Machine for two years.  Whirlpool, however, refused to come to Plaintiff Nordan's home to service her Machine's Mold Problems under the extended warranty, although it offered to replace the gasket, at Plaintiff Nordan's expense.  As a result of Whirlpool's response, Plaintiff Nordan did not renew her two year extended warranty plan with Whirlpool.

**Plaintiff Maggie O'Brien's Experience With Her Washing Machine**

85.    Plaintiff O'Brien purchased a Duet Washing Machine on or about February 11, 2005 and received delivery of that Machine shortly thereafter from Rouch's TV & Appliance, Inc. in Valparaiso, Indiana for approximately $999.00.  Plaintiff O'Brien began to experience Mold Problems that affected items washed in the Machine soon after the purchase of her Washing Machine.

86.    As a result of Plaintiff O'Brien's complaints to Whirlpool, on or about January 13, 2006, a Whirlpool repairman came to Plaintiff O'Brien's home to look at the

23

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 136 of 309   Page ID
#:2737
Case: 1:08-wp-65000-JG  Doc #: 7  Filed: 02/13/09  24 of 66.  PageID #: 290

Machine. Due to the Mold Problems, the repairman replaced the rubber seal on the front of the Machine. The repairman also advised Plaintiff O'Brien to leave the door open on the Machine and to clean the Machine with soap. Neither the replacement of the rubber seal, nor the cleaning instructions were effective, as the Mold Problems continued.

87.    On or about February 22, 2006, Plaintiff O'Brien again complained to Whirlpool concerning the mold growth in her Washing Machine. Plaintiff O'Brien informed Whirlpool that she had been running bleach through the Machine and leaving the door open. Whirlpool responded by sending Plaintiff a set of cleaning instructions on how to prevent molding. At this time, Whirlpool recommended, "Select the 'heavy duty' cycle and 'hot' water. Start empty washer and at 7 to 8 minutes into the cycle, fill the detergent dispenser with BLEACH. At the end of the cycle, open the door, gently roll the rubber gasket toward you and wipe the underside of the rubber gasket, the area directly under the gasket ("well" area), and the top of the gasket with bleach (1 cup bleach to a gallon hot water)." Plaintiff followed the instructions given to her by Whirlpool; however the mold continued to grow inside Plaintiff's Machine.

88.    Plaintiff O'Brien raised the Mold Problems issue again with a Whirlpool representative on September 17, 2007. The Whirlpool representative only offered cleaning solutions that ultimately proved to be ineffective, such as using hot water with bleach, removing the clothes very soon after the cycle, leaving the door open to ensure that the unit does not dry out, periodically wiping the rubber seal and "well" area with bleach solution, and using Affresh™. Plaintiff O'Brien's efforts of running bleach through the Machine, using High Efficiency detergent and wiping the inside of the Machine with a cloth coated in bleach did not relieve the Mold Problems.

24

### Plaintiff Andrea Strong's Experiences With Her Washing Machine

89.     Plaintiff Strong purchased a Duet Washing Machine from Spencer's TV & Appliances in Mesa, Arizona on or about November 19, 2004 and took delivery of the Washing Machine in or about December 11, 2004.  Plaintiff Strong began to experience Mold Problems.

90.     Plaintiff Strong contacted Whirlpool in November 2007 concerning the Mold Problems.  In response, the Whirlpool representative advised Plaintiff Strong to wipe and dry the boot on her Washing Machine, and to run empty cycles with Affresh. Plaintiff Strong tried with these recommendations, but has continued to experience the Mold Problems.  The Whirlpool representative told Plaintiff Strong that the Mold Problems were caused by the failure of the Washing Machine to fully drain water after washing cycles.  She contacted Whirlpool again in January 2008 about her continuing Mold Problems, but Whirlpool told her she was out of warranty.

### Plaintiff Pramila Gardner's Experiences With Her Washing Machine

91.     Plaintiff Gardner purchased a Duet Washing Machine from Best Buy Co. Inc. in Pearland, Texas on or about December 27, 2004 and took delivery of the Washing Machine on December 28, 2004.  She paid approximately $999.99 (plus delivery charges and pedestal). Plaintiff Gardner began to experience Mold Problems that affected items washed in the Machine in May of 2006.

92.     Plaintiff Gardner promptly called Whirlpool to complain.  While waiting on hold for about 20 minutes, she reviewed information about Mold Problems on Whirlpool's website (www.whirlpool.com).  She followed the instructions on Whirlpool's website, but they did not fix the Mold Problems.  Plaintiff Gardner tried

25

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 138 of 309   Page ID
#:2739
Case: 1:08-wp-65000-JG  Doc #: 7  Filed: 02/13/09  26 of 66.  PageID #: 292

keeping the door to the Machine open, only washing clothing with hot or warm water,
running bleach through the Machine, and cleaning the inside of the Machine with Tilex®
(a product advertised as a mold and mildew remover).   Nonetheless, the Mold Problems
persist, her Washing Machine smells like mildew, and her clothing smells like mildew
after it is "washed" in the Machine.

**Plaintiff Tracie Snyder's Experiences With Her Washing Machine**

93.      Plaintiff Snyder purchased a Duet Washing Machine from Plaza Brand
Source in Concord, North Carolina on or about June 4, 2005 and took delivery of the
Washing Machine on June 6, 2005.  Plaintiff paid approximately $1,200.00.  She also
purchased a 5 year extended warranty.

94.      Within a year, Plaintiff Snyder began to experience Mold Problems.  She
complained to her retailer, who advised her to leave the door open.  That did not resolve
her Mold Problems, so later in 2006, she contacted her extended warranty company,
which suggested she keep the door open, run bleach through the Machine, and run the
sanitary cycle.  Those remedial measures did not work either.

95.      In June 2008, Plaintiff Snyder complained about Mold Problems to
Whirlpool, whose representative told her that because she had an extended warranty,
Whirlpool would not  help her.

96.      Plaintiff Snyder tried various measures to fix the Mold Problems,
including running a diluted bleach solution through the Machine, running "Odoban®"
through the Machine with her laundry, cleaning the rubber seal of the Machine with a
cloth, and cleaning behind the rubber seal by moving the seal away from the drum.
These efforts did not relieve the Mold Problems.  In researching the issue, Plaintiff

Snyder visited a Sears store and learned of other similar complaints with the Washing Machines.

## CLASS ACTION ALLEGATIONS

97.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

98.     The Classes that Plaintiffs seek to represent is defined as follows:

**Ohio:** All persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Ohio.

**California:** All persons who purchased a Washing Machine in the State of California and who purchased the Machine for primarily personal, family or household purposes as defined by California Civil Code § 1791(a).

**Florida**: All  persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Florida.

**Illinois**: All persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Illinois.

**New Jersey**: All  persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in New Jersey.

**New York**: All persons  who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in New York.

**Arizona:** All  persons who purchased a Washing Machine for primarily personal, family or household purposed, and not for resale, in Arizona.

**Indiana:** All persons who purchased a Washing Machine for primarily personal, family or household purposed, and not for resale, in Indiana.

**Maryland:** All  persons who purchased a Washing Machine for primarily personal, family or household purposed, and not for resale, in Maryland.

27

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 140 of 309   Page ID
#:2741
Case: 1:08-wp-65000-JG  Doc #: 7   Filed: 02/13/09  28 of 66.  PageID #: 294

> **North Carolina:**  All persons who purchased a Washing Machine for
> primarily personal, family or household purposed, and not for resale, in
> North Carolina.
>
> **Texas:**  All persons who purchased a Washing Machine for primarily
> personal, family or household purposed, and not for resale, in Texas.

Excluded from the Classes are Whirlpool, its affiliates, employees, officers and directors,

persons or entities that distribute or sell the Washing Machines, the Judge(s) assigned to

this case, and the attorneys of record in this case.  Plaintiffs reserve the right to amend the

Class definitions if discovery and further investigation reveal that any of the Classes

should be expanded or otherwise modified.

99.     **Numerosity/Impracticability of Joinder**:  The members of the Classes

are so numerous that joinder of all members would be impracticable.  The proposed

Classes each include thousands of members.  The precise numbers of members can be

ascertained through discovery, which will include Whirlpool's sales, warranty service,

and other records.

100.    **Commonality and Predominance**:  There are common questions of law

and fact that predominate over any questions affecting only individual members of each

Class.  These common legal and factual questions, include, but are not limited to the

following:

> (a)     Whether the Washing Machines are materially defective—
> and what are the defects;
>
> (b)     Whether Whirlpool knew that the Washing Machines were
> and are materially defective;
>
> (c)     Whether Whirlpool omitted and concealed material facts
> from its communications and disclosures to Plaintiffs and
> the Classes regarding the defects inherent in the Washing
> Machines;

28


Exhibit ___F___ Pg. _140_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 141 of 309   Page ID
#:2742
Case: 1:08-wp-65000-JG   Doc #: 7   Filed: 02/13/09   29 of 66.  PageID #: 295

      (d)      Whether Whirlpool has engaged in unfair methods of
competition, unconscionable acts or practices, and unfair or
deceptive acts or practices in connection with the sale of
the Machines;

      (e)      Whether Whirlpool violated the consumer protection
statutes applicable to each class;

      (f)      Whether Whirlpool breached its warranty and/or extended
warranties;

      (g)      Whether Whirlpool breached its implied warranties;

      (h)      Whether Whirlpool has been unjustly enriched;

      (i)      Whether, as a result of Whirlpool's conduct, Plaintiffs and
the Classes have suffered damages; and if so, the
appropriate amount thereof; and

      (j)      Whether, as a result of Whirlpool's misconduct, Plaintiffs
and the Classes are entitled to equitable relief and/or other
relief, and, if so, the nature of such relief.

101.    **Typicality**:  The representative Plaintiffs' claims are typical of the claims

of the members of the Classes.  Plaintiffs and all Class members have been injured by the

same wrongful practices of Whirlpool.  Plaintiffs' claims arise from the same practices

and course of conduct that give rise to the claims of the Class members and are based on

the same legal theories.

102.    **Adequacy**:  Plaintiffs are representatives who will fully and adequately

assert and protect the interests of the Classes, and have retained class counsel who are

experienced and qualified in prosecuting class actions.  Neither Plaintiffs nor their

attorneys have any interests contrary to or conflicting with the Classes.

103.    **Superiority**:  A class action is superior to all other available methods for

the fair and efficient adjudication of this lawsuit, because individual litigation of the

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 142 of 309   Page ID
#:2743
Case: 1:08-wp-65000-JG  Doc #: 7  Filed: 02/13/09  30 of 66.  PageID #: 296

claims of all Class members is economically unfeasible and procedurally impracticable.
While the aggregate damages sustained by the Classes are likely in the millions of
dollars, the individual damages incurred by each Class member are too small to warrant
the expense of individual suits.  The likelihood of individual Class members prosecuting
their own separate claims is remote, and even if every Class member could afford
individual litigation, the court system would be unduly burdened by individual litigation
of such cases.  Further, individual members of the Classes do not have a significant
interest in individually controlling the prosecution of separate actions, and individualized
litigation would also result in varying, inconsistent, or contradictory judgments and
would magnify the delay and expense to all of the parties and the court system because of
multiple trials of the same factual and legal issues.  Plaintiffs know of no difficulty to be
encountered in the management of this action that would preclude its maintenance as a
class action.  In addition, Whirlpool has acted or refused to act on grounds generally
applicable to the Classes and, as such, final injunctive relief or corresponding declaratory
relief with regard to the members of the Class as a whole is appropriate.

104.    Plaintiffs do not anticipate any difficulty in the management of this
litigation.

105.    Whirlpool has, or has access to, address information for the Class
members, which may be used for the purpose of providing notice of the pendency of this
action.

801149.5

Exhibit ___F___ Pg. __142__

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 143 of 309   Page ID
#:3744
Case: 1:08-wp-65000-JG  Doc #: 7   Filed: 02/13/09  31 of 66.  PageID #: 297

### FIRST CAUSE OF ACTION
### Asserted On Behalf Of The Ohio Class
### (Violation Of The Ohio Consumer Sales Practices Act ("CSPA"))

106.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

107.    Plaintiffs Glazer and Chris and Trina Allison (collectively "Ohio Plaintiffs") assert this cause of action on behalf of themselves and the other members of the Ohio Class.

108.    The CSPA is codified at OHIO REV. CODE ANN. § 1345.01, *et seq.*  The statute is broad, applying to the sale of consumer goods "to an individual for purposes that are primarily personal, family, or household [uses]."  OHIO REV. CODE ANN. § 1345.01(A).  Accordingly, the conduct at issue in this case falls within the scope of the CSPA.

109.    The CSPA prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions.  OHIO REV. CODE ANN. § 1345.02(A).  The CSPA further provides that "a consumer" has a private cause of action for violations of the statute, and expressly allows for class actions.  OHIO REV. CODE ANN. § 1345.09.

110.    Whirlpool has engaged in unfair, deceptive, and unconscionable practices by: (1) marketing and selling Washing Machines with defects that cause lack of dependable operation and thorough cleaning of things with normal use and/or created a substantial risk that such problems would occur with normal use; and (2) intentionally failing to disclose and/or concealing these known defects and risks.

111.    Whirlpool acted in the face of prior notice that its conduct was deceptive, unfair, or unconscionable.  Indeed, it is well established in CSPA jurisprudence that

31

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 144 of 309   Page ID
#:2745
Case: 1:08-wp-65000-JG  Doc #: 7  Filed: 02/13/09  32 of 66.  PageID #: 298

material omissions and misrepresentations concerning a product constitutes a violation of

the statute.   It is also considered a deceptive act or practice for purposes of the CSPA if a

supplier makes representations, claims, or assertions of fact in the absence of a

reasonable basis in fact.  *See* OHIO ADMIN. CODE. § 109:4-3-10(A).

112.    As a direct and proximate result of Whirlpool's violations of the CSPA,

the Ohio Plaintiffs and other members of the Ohio Class have been injured.

### SECOND CAUSE OF ACTION
### Asserted On Behalf Of The Ohio Class
### (Tortious Breach of Warranty)

113.    Plaintiffs incorporate by reference each preceding and succeeding

paragraph as though fully set forth herein.

114.    The Ohio Plaintiffs assert this cause of action on behalf of themselves and

the other members of the Ohio Class.

115.    Whirlpool impliedly warranted that its Washing Machines were of good

and merchantable quality—fit and safe for their ordinary intended use.

116.    There were Design Defects in the Washing Machines manufactured,

distributed, and/or sold by Whirlpool to middlemen who then resold the Machines to the

Ohio Plaintiffs and the other members of the Ohio Class; those Design Defects existed at

the time the Machines were sold to the Ohio Plaintiffs and the other members of the Ohio

Class; and those Design Defects were the direct and proximate cause of injury to the Ohio

Plaintiffs and the other members of the Ohio Class.

117.    The Design Defects—which cause noxious odors to permeate the home,

disturb the repose of its inhabitants, and produce a smelly wash—render Whirlpool's

Washing Machines unfit for their intended purpose (that of producing a clean and clean-

smelling wash), and not of merchantable quality.

118.    As a direct and proximate result of Whirlpool's warranty breach, the Ohio

Plaintiffs and the other members of the Ohio Class were caused to suffer loss attributable

to the decreased value of the product itself, and consequential damages—losses sustained

by the purchase of the defective product—and the Ohio Plaintiffs and the other members

of the Ohio Class will have to spend monies to repair and/or replace the washers.

### THIRD CAUSE OF ACTION
### Asserted on Behalf of the Ohio Class
### (Negligent Design and Failure to Warn)

119.    Plaintiffs incorporate by reference each preceding and succeeding

paragraph as though fully set forth herein.

120.    The Ohio Plaintiffs assert this cause of action on behalf of themselves and

the other members of the Ohio Class.

121.    Whirlpool knew—or by the exercise of reasonable care should have

known—that its Washing Machines would have and had the alleged design defect.

122.    Whirlpool knew that the Ohio Plaintiffs and the other members of the

Ohio Class— who used Whirlpool's Washing Machines for their intended use—were

members of a foreseeable class of persons who were and are at risk of suffering serious

inconvenience and expense solely because of the defect.

123.    Whirlpool's suggestion to leave the washer door open (which does not

solve the problem anyway), if tried, is a danger to children.

124.    At the time Whirlpool manufactured, distributed, and/or sold the Washing

Machines, it owed a non-delegable duty to persons like the Ohio Plaintiffs and the  other

members of the Ohio Class to exercise ordinary and reasonable care to properly design

33

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 146 of 309   Page ID
#:2747
Case: 1:08-wp-65000-JG   Doc #: 7   Filed: 02/13/09   34 of 66.   PageID #: 300

the Machines, and it owes a continuing duty to warn about the problem and to repair
and/or recall its defective Machines.

125.   Whirlpool had a pre-sale duty to warn potential purchasers that the
Washing Machines carried with them greater risks of foul orders and health hazards than
an ordinary consumer would expect when using the Machines in their intended or
reasonably-foreseeable manner.

126.   Any benefits by way of lower energy or water use are outweighed by the
risks inherent in the Washing Machines' design.

127.   Whirlpool failed to use appropriate design, engineering, and parts in
manufacture—and Whirlpool in other respects breached its duties by being wantonly
reckless, careless, and negligent.

128.   As a direct and proximate result of Whirlpool's wanton recklessness,
carelessness, and negligence, the Ohio Plaintiffs and the other members of the Ohio Class
were caused to suffer damages and losses—and the Ohio Plaintiffs and the other
members of the Ohio Class will have to spend money to repair and/or replace the
defective Washing Machines.

129.   The Ohio Plaintiffs and the other members of the Ohio Class have not
committed any contributory negligence.

## FOURTH CAUSE OF ACTION
### Asserted on Behalf of the Ohio Class
### (Unjust Enrichment)

130.   Plaintiffs incorporate by reference the allegations contained in all
preceding paragraphs of this Complaint as though set forth fully herein.

131.   The Ohio Plaintiffs assert this cause of action on behalf of themselves and

34

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 147 of 309   Page ID
#:3748
Case: 1:08-wp-65000-JG   Doc #: 7   Filed: 02/13/09   35 of 66.   PageID #: 301

the other members of the Ohio Class.

132.    This claim is asserted in the alternative on behalf of the members of the

Ohio Class, to the extent that the warranties do not govern all of the Ohio Plaintiffs' and

Class members' claims or there is any determination that the Ohio Plaintiffs or the other

members of the Ohio Class do not have standing to assert any contractual claims asserted

against Whirlpool because of any alleged absence of contractual privity or otherwise.

133.    Whirlpool has been unjustly enriched by the purchases of the Washing

Machines by the Ohio Plaintiffs and the other members of the Ohio Class.

134.    The Ohio Plaintiffs and the other members of the Ohio Class unknowingly

conferred a benefit on Whirlpool of which Whirlpool had knowledge, since Whirlpool

was aware of the defective nature of the Washing Machines and the problems that

plagued them, but failed to disclose this knowledge and misled the Ohio Plaintiffs and the

other members of the Ohio Class regarding the nature and quality of the Washing

Machines while profiting from this deception.

135.    The circumstances are such that it would be inequitable, unconscionable,

and unjust to permit Whirlpool to retain the benefit of profits that it unfairly has obtained

from the Ohio Plaintiffs and the other members of the Ohio Class.

136.    The Ohio Plaintiffs and the other members of the Ohio Class, having been

damaged by Whirlpool's conduct, are entitled to recover or recoup damages as a result of

the unjust enrichment of Whirlpool to their detriment.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 148 of 309   Page ID
#:3749
Case: 1:08-wp-65000-JG   Doc #: 7   Filed: 02/13/09   36 of 66.   PageID #: 302

## FIFTH CAUSE OF ACTION
### Asserted on Behalf of All Classes
### (Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) -
### Written Warranty)

137.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

138.    Whirlpool's Washing Machines are "consumer products" as that term is

defined by 15 U.S.C. § 2301(1).

139.    Plaintiffs and Class members are "consumers" as that term is defined by

15 U.S.C. § 2301(3).

140.    Whirlpool is a "warrantor" and "supplier" as those terms are defined by 15

U.S.C. § 2301(4) and (5).

141.    Whirlpool provided Plaintiffs and Class members with "written

warranties" as that term is defined by 15 U.S.C. § 2301(6).

142.    In its capacity as a warrantor, and by the conduct described herein, any

attempt by Whirlpool to limit the express warranties in a manner that would exclude

coverage of the defective Washing Machines is unconscionable and any such effort to

disclaim, or otherwise limit, liability for the defective Washing Machines is null and

void.

143.    All jurisdictional prerequisites, including pre-suit notice, have been

satisfied herein.

144.    By Whirlpool's conduct as described herein, including Whirlpool's

knowledge of the defective Washing Machines and its action, and inaction, in the face of

that knowledge, Whirlpool has failed to comply with its obligations under its written and

301149.5                              Exhibit __E__ Pg. _148_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 149 of 309   Page ID
#:2750
Case: 1:08-wp-65000-JG   Doc #: 7   Filed: 02/13/09   37 of 66.   PageID #: 303

promises, warranties, and representations.

145.    As a result of Whirlpool's breach of express warranties, Plaintiffs and

Classes members are entitled to revoke their acceptance of the Washing Machines, obtain

damages and equitable relief, and obtain attorneys' fees and costs under 15 U.S.C. §

2310.

### SIXTH CAUSE OF ACTION
### Asserted on Behalf of All Classes
### (Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) -
### Implied Warranty)

146.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

147.    Whirlpool's Washing Machines are "consumer products" as that term is

defined by 15 U.S.C. § 2301(1).

148.    Plaintiffs and Class members are "consumers" as that term is defined by

15 U.S.C.    § 2301(3).

149.    Whirlpool is a "warrantor" and "supplier" as those terms are defined by 15

U.S.C. § 2301(4) and (5).

150.    Whirlpool provided Plaintiffs and Class members with "implied

warranties" as that term is defined by 15 U.S.C. § 2301(7).

151.    In its capacity as a warrantor, and by the conduct described herein, any

attempt by Whirlpool to limit the implied warranties in a manner that would exclude

coverage of the defective Washing Machines is unconscionable and any such effort to

disclaim, or otherwise limit, liability for the defective Washing Machines is void.

152.    All jurisdictional prerequisites, including pre-suit notice, have been

37

Case 8:10-cv-00711-DOC-AN  Document 102  Filed 07/11/12  Page 150 of 309  Page ID
#:2751
Case: 1:08-wp-65000-JG  Doc #: 7  Filed: 02/13/09  38 of 66.  PageID #: 304

satisfied herein.

153.    Plaintiffs and members of the Classes are in privity with Whirlpool in that

they purchased their Washing Machines directly from Whirlpool, or from an actual or

apparent agent of Whirlpool such as Whirlpool's authorized dealers.

154.    Plaintiffs and the members of the Classes are also in privity with

Whirlpool by virtue of the contractual relationship stemming from Whirlpool's

manufacturer's warranty provided in conjunction with the purchase of the Washing

Machines, which is enforceable by Plaintiffs and the Classes as against Whirlpool

regardless of where, or from whom, the Washing Machines were acquired.

155.    By Whirlpool's conduct as described herein, including Whirlpool's

knowledge of the defective Washing Machines and its action, and inaction, in the face of

that knowledge, Whirlpool has failed to comply with its obligations under its written and

implied promises, warranties, and representations.

156.    As a result of Whirlpool's breach of implied warranties, Plaintiffs and

members of the Classes are entitled to revoke their acceptance of the Washing Machines,

obtain damages and equitable relief, and obtain attorneys' fees and costs under 15 U.S.C.

§ 2310.

**SEVENTH CAUSE OF ACTION**
**Asserted On Behalf Of All Classes**
**(Breach Of Express Warranty)**

157.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

158.    This cause of action is brought on behalf of all Classes.

159.    Whirlpool made affirmations of fact and promises to Plaintiffs and

38

members of the Classes which related to the Washing Machines as more fully described herein.

160.    Whirlpool's affirmations of fact and promises became part of the basis of the bargain between the parties.

161.    These affirmations of fact and promises created an express warranty that the Washing Machines would conform to Whirlpool's affirmations and promises.

162.    Whirlpool uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from serious defects and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

163.    Whirlpool is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Plaintiffs and members of the Classes.

164.    Whirlpool has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by Whirlpool, and by failing to repair or replace the defects and/or defective parts.

165.    As set forth above, Whirlpool's warranty fails in its essential purpose and, accordingly, Plaintiffs and members of the Classes cannot and should not be limited to the remedies set forth in Whirlpool's written warranty and, instead, should be permitted to recover all measure of appropriate relief.

166.    Whirlpool has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Whirlpool' knowledge of the defects in

39

the Washing Machines, Whirlpool has failed and refused to honor its warranty, even though it knows of the defects inherent in the Washing Machines.

167. Plaintiffs and members of the Classes have given Whirlpool a reasonable opportunity to cure its failures with respect to its warranty, and Whirlpool has failed to do so.

168. Whirlpool has failed to provide Plaintiffs and members of the Classes, as a warranty repair and/or replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiffs and members of the Classes.

169. As a result of Whirlpool's breach of warranty, Plaintiffs and members of the Classes have suffered damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**Asserted On Behalf All Classes**
**(Breach of Implied Warranty of Merchantability)**

170. Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully stated herein.

171. This cause of action is brought on behalf of Plaintiffs and the members of all Classes.

172. Whirlpool is a merchant in the sale of the Washing Machines to Plaintiffs and the members of the Classes and the Washing Machines are goods under applicable law.

173. Plaintiffs and members of the Classes are in privity with Whirlpool in that they purchased their Washing Machines directly from Whirlpool, or from an actual or apparent agent of Whirlpool such as Whirlpool's authorized dealers.

40

174.   Plaintiffs and the members of the Classes are also in privity with Whirlpool by virtue of the contractual relationship stemming from Whirlpool's manufacturer's warranty provided in conjunction with the purchase of the Washing Machines, and which is enforceable by Plaintiffs and the Classes as against Whirlpool regardless of where, or from whom, the Washing Machines were acquired.

175.   At all times relevant hereto, there was a duty imposed by law which requires that Whirlpool's Washing Machines be reasonably fit for the purposes for which washing machines are used, that they are of fair average quality within their description, and that they be acceptable in trade for their description.

176.   Whirlpool has not validly disclaimed, excluded, or modified the implied warranties and/or duties described herein, and/or any attempted disclaimer or exclusion of the same was and is ineffectual.

177.   Notwithstanding the aforementioned duty, at the time of delivery, the Washing Machines sold to Plaintiffs and the Classes were not merchantable, and not fit for the ordinary purposes for which they were sold.  The Washing Machines are not fit for the ordinary purpose of cleaning clothing and other articles, because, *inter alia*, the Washing Machines are defective in that they contain Design Defects that result in Mold Problems.

178.   As documented in its own business records and elsewhere, Whirlpool was notified that the Washing Machines were not merchantable within a reasonable amount of time after the latent defects manifested itself to Plaintiffs and the Classes.

179.   As a direct result of the non-merchantability of the Washing Machines described herein, Plaintiffs and other members of the Classes have sustained damages in

41

an amount to be determined at trial.

### NINTH CAUSE OF ACTION
#### Asserted On Behalf Of All Classes
#### (Unjust Enrichment)

180.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

181.    This claim is asserted in the alternative on behalf of Plaintiffs and the members of the Classes, to the extent that the warranties do not govern all of Plaintiffs' and Class members' claims or there is any determination that Plaintiffs do not have standing to assert any contractual claims asserted against Whirlpool on because of any alleged absence of contractual privity or otherwise.

182.    Plaintiffs and the members of the Classes conferred a benefit on Whirlpool, of which benefit Whirlpool had knowledge.  By its wrongful acts and omissions described herein, including selling the Washing Machines, Whirlpool was unjustly enriched at the expense of Plaintiffs and the members of the Classes.

183.    Plaintiffs' detriment and Whirlpool's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

184.    It would be inequitable for Whirlpool to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

185.    Plaintiffs and the members of the Classes seek restitution from Whirlpool and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Whirlpool from its wrongful conduct and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

Exhibit _F_ Pg. _154_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 155 of 309   Page ID
#:2756
Case: 1:08-wp-65000-JG  Doc #: 7   Filed: 02/13/09  43 of 66.  PageID #: 309

## TENTH CAUSE OF ACTION
### Asserted On Behalf Of The California Class
### The Song-Beverly Act - Breach Of Express Warranty
### (Violations Of Civil Code § 1790 et seq.)

186.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

187.    Plaintiff Schaeffer asserts this cause of action on behalf of herelf and the other members of the California Class.

188.    Whirlpool warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from serious defects and, nevertheless, continued to market, distribute, and sell these Machines with these express warranties.

189.    Whirlpool also sold extended warranties to some members of the California Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market, distribute, and sell extended warranties with respect to the Machines despite the serious defects in the Washing Machines.

190.    Whirlpool further warranted the stainless steel drums for their lifetime.

191.    As an express warrantor and manufacturer, Whirlpool had certain obligations under the Song-Beverly Act, and, in particular, Civil Code §1793.2(b) and (d), to conform the Washing Machines to its express warranties.

192.    Whirlpool is obligated under the terms of its express warranties to repair and/or replace the defective Machines sold to Plaintiff Schaeffer and the other members of the California Class.

43

193.   Whirlpool has breached its express warranties, as set forth above, including its extended warranties, by selling Washing Machines in a condition that does not meet the warranty obligations undertaken by Whirlpool, and by failing to repair the defects and/or replace the defective parts in the Machines.

194.   Plaintiff Schaeffer and the other members of the California Class have used the Washing Machines for their intended and ordinary purpose of cleaning things.

195.   Plaintiff Schaeffer and the other members of the California Class have performed each and every duty required under the terms of the express warranties, except as may have been excused or prevented by the conduct of Whirlpool or by operation of law in light of Whirlpool's unconscionable conduct.

196.   Whirlpool has received sufficient and timely notice of the breaches of express warranty alleged herein.  Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its express warranties, even though it knows of the inherent defects in the Washing Machines.

197.   In addition, Whirlpool has received thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines.

198.   Plaintiff Schaeffer and the other members of the California Class have given Whirlpool a reasonable opportunity to cure its failures with respect to its express warranties, and Whirlpool failed to do so.

199.   In its capacity as a warrantor, and by the conduct described herein, any attempt by Whirlpool to limit the express warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is null and

44



void.

200.    Whirlpool has failed to provide to Plaintiff Schaeffer or the other members

of the California Class, as a warranty replacement, a product that conforms to the

qualities and characteristics that Whirlpool expressly warranted when Plaintiff Schaeffer

and the other members of the California Class purchased their Washing Machines.

201.    Whirlpool has not conformed the Washing Machines to the express

warranty.  Whirlpool is, therefore, required to either pay damages or reimburse the buyer

the purchase price and incidental damages under Civil Code §§ 1793.2(d) and 1794.

202.    Whirlpool knew of its obligations under its express warranties to pay for a

new Machine, as needed, caused by the defects described herein.  However, Whirlpool

has willfully refused to pay for a new Machine as required under its express warranties.

Whirlpool is, therefore, liable for not only damages, but also a civil penalty under Civil

Code § 1794.

### ELEVENTH CAUSE OF ACTION
#### Asserted On Behalf Of The California Class
#### The Song-Beverly Act - Breach Of Implied Warranty
#### (Violations Of Civil Code § 1790 et seq.)

203.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as

if fully set forth herein.

204.    Plaintiff Schaeffer asserts this cause of action on behalf of herself and the

other members of the California Class.

205.    Whirlpool was a merchant in the sale of the Washing Machines to Plaintiff

Schaeffer and the other members of the California Class.  Whirlpool designs,

manufactures, markets, advertises, distributes and sells the Washing Machines.

45


Exhibit ___F___ Pg. _157_

206.    By operation of law, Whirlpool provided Plaintiff Schaeffer and the other

members of the California Class with an implied warranty of merchantability in the sale

and lease of the Washing Machines.

207.    Whirlpool breached its implied warranty by selling Washing Machines

that were not fit for the ordinary purposes of dependable operation and effective cleaning

of things, and by failing to repair the defects and/or replace the defective parts in the

Machines.

208.    Whirlpool knew or had reason to know that Plaintiff Schaeffer and the

other members of the California Class purchased the Washing Machines to effectively

and dependably wash their things.

209.    The Washing Machines do not conform to the promises and affirmations

uniformly issued by Whirlpool in its sales materials and warranties.

210.    Plaintiff Schaeffer and the other members of the California Class have

used the Washing Machines for their intended and ordinary purpose of cleaning things.

211.    Plaintiff Schaeffer and the other members of the California Class have

performed each and every duty required by law, except as may have been excused or

prevented by the conduct of Whirlpool or by operation of law in light of Whirlpool's

unconscionable conduct.

212.    Plaintiff Schaeffer and the other members of the California Class have

provided sufficient and timely notice to Whirlpool regarding the problems they

experienced with the Washing Machines and, notwithstanding such notice, Whirlpool has

failed and refused to offer Plaintiff Schaeffer and the other members of the California

Class an effective remedy.

46



213.    In addition, Whirlpool has received thousands of complaints and other notices from consumers advising them of the defects associated with the Washing Machines.

214.    Plaintiff Schaeffer and the other members of the California Class have given Whirlpool a reasonable opportunity to cure its failures with respect to its implied warranty, and Whirlpool failed to do so.

215.    By failing to repair the Washing Machines and by failing to replace the Washing Machines as needed, Whirlpool has breached the implied warranty of merchantability.

216.    In its capacity as a warrantor, and by the conduct described herein, any attempt by Whirlpool to limit the implied warranty in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is null and void.

217.    Plaintiff Schaeffer and the other members of the California Class have been damaged as a result of Whirlpool's breach of the implied warranty of merchantability.

218.    Plaintiff Schaeffer and the other members of the California Class are entitled to the remedies provided by California Civil Code § 1794.

### TWELFTH CAUSE OF ACTION
### Asserted on Behalf of the Florida Class
### (Violation of Florida's Deceptive and Unfair Trade Practices Act, F.S.A., 501.201 *et seq.* ("FDUTPA"))

219.    Plaintiffs incorporate by reference the allegations contained in all

801149.5                                        Exhibit _E_ Pg. _159_

preceding paragraphs of this Complaint as though set forth fully herein.

      220.    At all relevant times, Plaintiffs Hollander and Bicknell and all members of

the Florida Class were consumers within the meaning of FDUTPA.

      221.    At all relevant times hereto, Whirlpool engaged in trade and/or commerce

within the meaning of FDUTPA.

      222.    The practices of Whirlpool violate FDUTPA for, among other things, one

or more of the following reasons:

      a.    Whirlpool omitted and concealed material facts from its
communications and disclosures to Plaintiffs Hollander and
Bicknell and all members of the Florida Class regarding the
defect inherent in the Washing Machines;

      b.    Whirlpool made false and/or misleading statements of
material fact regarding the Washing Machines, which
statements were likely to deceive the public; and

      c.    Whirlpool knew, or was reckless in not knowing, that its
statements about the Washing Machines were false and/or
misleading.

      223.    By the conduct described herein, Whirlpool has engaged in unfair methods

of competition, unconscionable acts or practices, and unfair or deceptive acts or practices

in the conduct of trade or commerce.

      224.    The representations and omissions by Whirlpool were likely to deceive

reasonable consumers and a reasonable consumer would have relied on these

representations and omissions.

      225.    Had Whirlpool disclosed all material information regarding the Washing

Machines to Plaintiffs Hollander and Bicknell and all of the Florida Class members, they

would not have purchased the Washing Machines.

      Exhibit___E___ Pg. _160_

226.     The foregoing acts and practices proximately caused Plaintiffs Hollander

and Bicknell and other members of the Florida Class to suffer actual damages in the form

of, among other things, monies spent to repair the Washing Machines and/or diminution

in value of the Washing Machines, and are entitled to recover such damages, attorneys'

fees, and costs of suit.

### THIRTEENTH CAUSE OF ACTION
### Asserted on Behalf of the Illinois Class
### (Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("CFDBPA"))

227.     Plaintiffs incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

228.     At all relevant times, Plaintiffs Werman and Torf and all members of the

Illinois Class were consumers within the meaning of CFDBPA.

229.     At all relevant times hereto, Whirlpool engaged in trade and/or commerce

within the meaning of CFDBPA.

230.     Despite knowing that the Washing Machines are manufactured and sold

with Design Defects which cause Mold Problems, when it marketed and sold the

Machines, Whirlpool uniformly represented to customers and the general public that the

Machines are free from defects and will perform in the manner and for the purpose that

they are intended.

231.     Under all circumstances, Whirlpool's representations and/or omissions

regarding the defect in the Washing Machines were misleading and deceptive, and

Whirlpool intentionally made these misleading and deceptive representations and/or

omissions (while knowing they were deceptive and misleading) for the purpose of

49

deceiving Plaintiffs Werman and Torf and other Illinois Class members. Whirlpool intended that Plaintiffs Werman and Torf rely on Whirlpool's deceptive and misleading practice.

232.   Whirlpool's conduct was unfair and deceptive and constituted an improper concealment, suppression, or omission of material facts—in violation of the CFDPA's prohibition against unfair business practices.

233.   Whirlpool violated the CFDPA's prohibition against misrepresenting and omitting material information during commercial transactions, as well as the CFDPA's prohibition against unfair business practices.

234.   Whirlpool's misconduct, including the misrepresentations and/or concealment of the defective condition of the Machines, as described in this Complaint, took place in the course of trade or commerce in Illinois, and arose out of transactions that occurred at one or more of its retail outlets in Illinois.

235.   As a direct and proximate result of Whirlpool's violations of the CFDPA, Plaintiffs Werman and Torf and other Class members suffered damages, in the form of, among other things, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines.

### FOURTEENTH CAUSE OF ACTION
**Asserted on Behalf of the New York Class**
**(Violations of Section 349 of New York General**
**<u>Business Law:  Deceptive Acts And Practices</u>)**

236.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

237.   Plaintiffs Glennon and Cohen and the other members of the New York

50

Class are consumers in New York who purchased the defective Washing Machines and

bring this action under NY GBL §349.

238.    Whirlpool has engaged in deceptive practices in the sale of the defective

Washing Machines including: (1) selling the Machines with Design Defects that cause

Mold Problems to occur with normal use and/or created a substantial risk of Mold

Problems; and (2) failing to disclose and/or concealing this known defect and risk.

239.    The unfair and deceptive trade acts and practices of Whirlpool have

directly, foreseeably, and proximately caused damages and injury to Plaintiffs Glennon

and Cohen and the other members of the New York Class.

**FIFTEENTH CAUSE OF ACTION**
**Asserted On Behalf Of The New Jersey Class**
**(Violations Of New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1 et seq.)**

240.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as

if fully set forth herein.

241.    Plaintiffs Sandholm-Pound and Beierschmitt assert this cause of action on

behalf of themselves and the other members of the New Jersey Class.

242.    Plaintiffs Sandholm-Pound and Beierschmitt, the other members of the

New Jersey Class, and Whirlpool are "persons" within the meaning of the CFA.

243.    Plaintiffs Sandholm-Pound and Beierschmitt and the other members of the

New Jersey Class are "consumers" within the meaning of the CFA.

244.    At all relevant times material hereto, Whirlpool conducted trade and

commerce in New Jersey and elsewhere within the meaning of the CFA.

245.    The CFA is, by its terms, a cumulative remedy, such that remedies under

its provisions can be awarded in addition to those provided under separate statutory

51

schemes.

246.    Whirlpool has engaged in deceptive practices related to the sale of the

defective Washing Machines, including: (1) marketing and selling Washing Machines

with Design Defects that cause Mold Problems with normal use and/or created a

substantial risk that Mold Problems would occur with normal use; and (2) intentionally

failing to disclose and/or concealing these known defects and risks.

247.    Whirlpool consciously failed to disclose material facts to Plaintiffs

Sandholm-Pound and Beierschmitt and the other members of the New Jersey Class with

respect to the alleged defects.

248.    Whirlpool's unconscionable conduct described herein included the

omission and concealment of material facts concerning the Washing Machines.

249.    Whirlpool intended that Plaintiffs Sandholm-Pound and Beierschmitt and

the other members of the New Jersey Class rely on the acts of concealment and

omissions, so that Plaintiffs Sandholm-Pound and Beierschmitt and the other members of

the New Jersey Class would purchase the Washing Machines.

250.    Had Whirlpool disclosed all material information regarding the Washing

Machines to Plaintiffs Sandholm-Pound and Beierschmitt and the other members of the

New Jersey Class, they would not have purchased the Machines.

251.    The foregoing acts, misrepresentations, omissions, and unconscionable

commercial practices caused Plaintiffs Sandholm-Pound and Beierschmitt and the other

members of the New Jersey Class to suffer an ascertainable loss in the form of, among

other things, monies spent to repair, purchase cleaning products or replace the Washing

Machines and loss in value of the Washing Machines, and they are entitled to recover

such damages, together with appropriate penalties, including treble damages, attorney's

fees, and costs of suit.

**SIXTEENTH CAUSE OF ACTION**
**Asserted On Behalf Of The California Class**
**(Unfair Competition Law (Bus. & Prof. Code §17200, _et seq._).)**

252.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as

if fully set forth herein.

253.    Plaintiff Schaeffer asserts this cause of action on behalf of herself and the

other members of the California Class.

254.    Whirlpool has engaged in unfair, unlawful, and fraudulent business

practices by: (1) marketing and selling Washing Machines with Design Defects that cause

Mold with normal use and/or created a substantial risk that Mold Problems would occur

with normal use; and (2) intentionally failing to disclose and/or concealing these known

defects and risks.

255.    By engaging in the above-described acts and practices, Whirlpool has

committed one or more acts of unfair competition within the meaning of Business and

Professions Code §17200, _et seq._

256.    Whirlpool's acts and practices have deceived and/or are likely to deceive

members of the consuming public and the members of the California Class.

257.    Whirlpool knowingly sold Plaintiff Schaeffer and the other members of

the California Class and other consumers Washing Machines with defects that have

rendered the Machines essentially unusable for the purposes for which they were sold.

258.    The injury to consumers by this conduct is greatly outweighed by any

alleged countervailing benefit to consumers or competition under all of the

53

circumstances.  Moreover, in light of Whirlpool's exclusive knowledge of the defects, the

injury is not one that Plaintiff Schaeffer or the other members of the California Class

could have reasonably avoided.

259.    Whirlpool's acts and practices are unlawful because they violate Cal. Code

§§ 1668, 1709 and 1710.  Whirlpool's acts and practices are also unlawful because they

violate the Song-Beverly Act, Cal. Civil Code § 1790, *et seq*. and Cal. Commercial Code

§ 2313.

260.    Plaintiff Schaeffer, on behalf of herself and the other members of the

California Class, seeks an order from this Court awarding restitution, disgorgement,

injunctive relief, and all other relief allowed under Section 17200, *et seq*., plus interest,

attorneys' fees, and costs.

**SEVENTEENTH CAUSE OF ACTION**
**Asserted On Behalf Of The California Class**
**Consumers Legal Remedies Act**
**(Violation of California Civil Code §§ 1750 et seq.)**

261.    Plaintiffs allege and incorporate the above allegations by reference as if

set forth herein at length.

262.    Plaintiff Schaeffer brings this claim on behalf of herself and the California

Class.

263.    This claim arises under the California Consumer Legal Remedies Act,

California Civil Code §§ 1750 *et seq*.

264.    At all times relevant hereto, Plaintiff Schaeffer was a "consumer" as that

term is defined in Civ. Code § 1761(d).

265.    At all times relevant hereto, the Washing Machines constituted "goods" as

54

that term is defined in Civ. Code § 1761(a).

266.   At all times relevant hereto, Whirlpool constituted a "person" as that term is defined in Civ. Code § 1761(c).

267.   At all times relevant hereto, Plaintiff's purchases of Whirlpool's Washing Machine constituted a "transaction" as that term is defined in Civ. Code § 1761(e).

268.   At all times relevant hereto, Whirlpool provided "services" to Plaintiff Schaeffer within the meaning of Civil Code § 1761(b).

269.   The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods . . . have . . . approval, characteristics, uses, benefits . . . which they do not have; ... (7) Representing that goods . . . are of a particular standard, quality or grade . . . if they are of another; ... (9) Advertising goods . . . with intent not to sell them as advertised; and (19) Inserting an unconscionable provision in the contract." Civil Code §§ 1770(a)(5),(7), (9) and (19).

270.   Whirlpool made uniform written representations that the Washing Machines are a high quality product that will perform as represented and, as set forth above, made specific representations regarding the capacity and characteristics of the Washing Machines that, as set forth above, were false, deceptive and/or misleading and were made in violation of the CLRA.

271.   Plaintiff Schaeffer was a consumer under Civil Code §1761(d). Civil Code § 1780 (a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770.

55

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 168 of 309   Page ID
#:3769
Case: 1:08-wp-65000-JG  Doc #: 7   Filed: 02/13/09  56 of 66.  PageID #: 322

**EIGHTEENTH CAUSE OF ACTION**
**Asserted on Behalf of the Maryland Class**
**(Violation of Maryland Consumer Protection Act,**
**Md. Code Ann. § 13-303 _et seq._ ("MCPA"))**

272.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

273.     Plaintiff Nordan brings this claim on behalf of herself and the Maryland Class.

274.     Pursuant to the MCPA §§ 13-301(3), (9), deceptive trade practices include the "[f]ailure to state a material fact if the failure deceives or tends to deceive," and also include the "knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same."

275.     Whirlpool knew of the Design Defects in the Washing Machines.

276.     Whirlpool knew that the existence of the Design Defects in the Washing Machines was material to Plaintiff Nordan and the Maryland Class.

277.     Whirlpool failed to disclose that the Washing Machines were inherently defective to Plaintiff Nordan and the Maryland Class.

278.     Whirlpool's failure to disclose the material fact of the Design Defects deceived Plaintiff Nordan and the Maryland Class.

279.     Whirlpool failed to disclose the Design Defects in the Washing Machines with the intent that consumers would rely upon that omission to purchase the Washing Machines.

280.     Plaintiff Nordan and the Maryland Class have suffered injury as a result in that they purchased Washing Machines that they would not have otherwise purchased had

56

they known of the defect.

281.    As a result, Plaintiff Nordan and the Maryland Class have suffered actual

damages in the form of, *inter alia,* monies spent to repair the Washing Machines and/or

diminution in value of the Washing Machines, and are entitled to recover such damages,

together with appropriate exemplary damages, attorneys' fees, and costs of suit.

### NINETEENTH CAUSE OF ACTION
### Asserted on Behalf of the North Carolina Class
### (Violation of North Carolina Unfair and Deceptive Trade Practices Act §75-1.1
### ("NCGS"))

282.    Plaintiffs incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

283.    Plaintiff Snyder brings this claim on behalf of herself and the North

Carolina Class.

284.    Pursuant to NCGS §75-1.1(a), "unfair methods of competition in or

affecting commerce, and unfair or deceptive acts or practices in or affecting commerce,

are declared unlawful."

285.    At all relevant times, Whirlpool's acts and commissions were in and

affected commerce within the meaning of NCGS.

286.    Whirlpool omitted and concealed material facts from its communications

and disclosures to Plaintiff Snyder and all members of the North Carolina Class regarding

the Design Defects in the Washing Machine.

287.    Whirlpool's acts and omissions had a tendency or capacity to deceive

Plaintiff Snyder and the North Carolina Class.

288.    Plaintiff Snyder and the North Carolina Class were injured by reason of

801149.5                              Exhibit _E_ Pg. _169_

Whirlpool's acts and omissions.

289.    Whirlpool's conduct as described herein was unfair, deceptive, violating of public policy, and substantially injurious to Plaintiff Snyder and the North Carolina Class.

290.    Plaintiff Snyder and the North Carolina Class have suffered actual damages in the form of, *inter alia* monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees, and costs of suit.

## TWENTIETH CAUSE OF ACTION
### Asserted on Behalf of the Arizona Class
### Violation of Arizona's Consumer Fraud Act (A.R.S. §§44-1521, *et seq.*)

291.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

292.    Plaintiff Strong brings this claim on behalf of herself and the Arizona Class.

293.    Arizona's Consumer Fraud Act ("CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Whirlpool's conduct, as described herein, is in violation of the CFA.

294.    Whirlpool violated the CFA when it represented, through its advertising, warranties and other express representations, that the Washing Machines had

58

Exhibit___F___ Pg. 170

characteristics and benefits that they did not actually have.

295.    Whirlpool violated the CFA when it falsely represented, through its
advertising, marketing, and other express representations, that the Washing Machines
were of a certain quality or standard when they were not.

296.    Whirlpool violated the CFA by fraudulently concealing from and/or
intentionally failing to disclose, to Plaintiff Strong and the Arizona Class, material
information about the Washing Machines in a manner that was deceptive.

297.    Whirlpool violated the CFA by holding the Washing Machines out as
superior in quality, when, in fact, they are defective.

298.    Whirlpool continues to violate the CFA by continuing to actively conceal
material information about the Washing Machines and by representing to Plaintiff Strong
and the members of the Arizona Class that the Washing Machines are free of defects
and/or provide superior cleaning power.

299.    As a direct and proximate result of Whirlpool's violations of the CFA,
Plaintiff Strong and the Arizona Class have suffered injury in fact and/or actual damage,
in that they purchased Washing Machines that have Design Defects that cause Mold
Problems.

300.    Plaintiff Strong and the Arizona Class members relied on Whirlpool's
misrepresentations and omissions.  Had Whirlpool disclosed in its marketing and sales
statements the true quality of the Washing Machines, Plaintiff Strong and the Arizona
Class would not have purchased, or would have paid significantly less for, the Washing
Machines.  Plaintiff Strong and the Arizona Class have suffered damages as a result.

301.    Plaintiff Strong and the Arizona Class members have suffered an injury in

59

fact and lost money in that had Whirlpool disclosed the true nature and quality of the

Washing Machines, they would not have purchased, or would have paid significantly less

for, the Washing Machines.

302.    Plaintiff Strong, on behalf of herself and all others similarly situated,

demands judgment against Whirlpool for injunctive relief in the form of restitution and/or

proportional disgorgement of funds paid by Plaintiff Strong and the Arizona Class to

purchase the Washing Machines and/or disgorgement of funds received by Whirlpool

from the sale of the Washing Machines, along with interest, attorneys' fees and costs.

**TWENTY-FIRST CAUSE OF ACTION**
**Asserted on Behalf of the Texas Class**
**(Violation of Texas Deceptive Trade Practices - Consumer Protection Act, TEX.**
**BUS & COM CODE §17.41 *et seq*. ("DTPA"))**

303.    Plaintiffs incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

304.    Plaintiff Gardner brings this claim on behalf of herself and the Texas

Class.

305.    At all relevant times, Plaintiff Gardner and all members of the Texas Class

were consumers within the meaning of DTPA.

306.    At all relevant times hereto, Whirlpool engaged in trade and/or commerce

within the meaning of DTPA.

307.    The practices of Whirlpool violate DTPA for, *inter alia*, one or more of

the following reasons:

        a.    Whirlpool omitted and concealed material facts from its
communications and disclosures to Plaintiff Gardner and all
members of the Texas Class regarding the Design Defects inherent
in the Washing Machines;

60

b.    Whirlpool made false and/or misleading statements of material fact regarding the Washing Machines, which statements were likely to deceive the public;

c.    Whirlpool knew, or was reckless in not knowing, that their statements about the Washing Machines were false and/or misleading;

d.    Whirlpool represented that a guarantee or warranty confers or involves rights or remedies which it does not have;

e.    Whirlpool represented that the Washing Machines had sponsorship, approval, characteristics uses and benefits that they did not have; and

f.    Whirlpool represented that the Washing Machines were of a particular standard, quality or grade, when they were not.

308.    By the conduct described herein, Whirlpool has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

309.    The representations and omissions by Whirlpool were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

310.    Had Whirlpool disclosed all material information regarding the Washing Machines to Plaintiff Gardner and all of the Texas Class members, they would not have purchased the Washing Machines.

311.    The foregoing acts and practices proximately caused Plaintiff Gardner and other members of the Texas Class to suffer actual damages in the form of, *inter alia*, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

61

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 174 of 309   Page ID
#:2775
Case: 1:08-wp-65000-JG  Doc #: 7  Filed 02/13/09  62 of 66.  PageID #: 328

## REQUEST FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, pray for judgments against Whirlpool as follows:

        a.      For an order certifying the Classes, under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), and appointing Plaintiffs as representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes;

        b.      For all recoverable compensatory, statutory and other damages sustained by Plaintiffs and the Classes;

        c.      For costs;

        d.      For both pre-judgment and post-judgment interest on any amounts awarded;

        e.      For appropriate injunctive relief;

        f.      For payment of attorneys' fees and expert fees as may be allowable under applicable law; and

        g.      For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY

Plaintiffs demand trial by jury.

62

Exhibit _F_ Pg. _174_

Respectfully Submitted,


/s/ Jonathan D. Selbin
Jonathan D. Selbin
LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
jselbin@lchb.com

Mark P. Chalos
LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, Tennessee 37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965
mchalos@lchb.com

George K. Lang
FREED & WEISS LLC
111 West Washington Street,
Suite 1331
Chicago, IL 60602
Telephone:  (312) 220-0000
Facsimile:  (312) 220-7777
george@freedweiss.com

James C. Shah
Natalie Finkelman
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 East State St.
Media, PA 19063
Telephone:  (610) 891-9880
Facsimile:  (610) 891-9883
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

Exhibit ___F___ Pg. _175_

Steven A. Schwartz
CHIMICLES & TIKELLIS LLP
One Haverford Centre
Haverford, PA 19041
Telephone:  (610) 642-8500
Facsimile:  (610) 649-3633
sas@chimicles.com

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street
Philadelphia, PA 19102
Telephone:  (215) 564-2300
Facsimile:  (215) 851-8029
jshub@seegerweiss.com

Brian Ruschel, Esquire
925 Euclid Ave Ste 660
Cleveland OH 44115
Telephone:  (216) 621-3370
Facsimile:  (216) 621-3371
bruschel@aol.com

Mark Schlachet, Esquire
LAW OFFICE OF MARK SCHLACHET
3637 South Green Road--2d Floor
Beachwood, Ohio  44122
Telephone:  (216)896-0714
Facsimile:  (216)514-6406
mschlachet@clevelandnet.com

Jacqueline Sailer
Murray, Frank & Sailer LLP
275 Madison Avenue
New York, NY  10016
Telephone: 212-682-1818
Fax: 212-682-1892
email: jsailer@murrayfrank.com

Steven L. Wittels
Sanford Wittels & Heisler, LLP
950 Third Avenue, 10th Floor
New York, NY 10022

Tel:  (646) 723-2947
Fax: (646) 723-2948
Cell: (914) 319-9945
swittels@nydclaw.com


ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASS


65

## PROOF OF SERVICE

     I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants today (February 13, 2009).

/s/ Mark P. Chalos
Mark P. Chalos
LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, Tennessee 37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965
mchalos@lchb.com

66

# Exhibit  G

FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DEC 1 9 2006 NF,
DEC 19 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

SUSAN MUNCH, LARRY BUTLER, JOSEPH
LEONARD, KEVIN BARNES and VICTOR
MATOS, individually and on behalf of all others
similarly situated;

                    Plaintiff,

    v.

Sears Roebuck & Co.,

                    Defendant.

06CV7023
JUDGE LEFKOW
MAGISTRATE JUDGE NOLAN

## CLASS ACTION COMPLAINT

Plaintiffs Susan Munch, Larry Butler, Joseph Leonard, Kevin Barnes and Victor Matos,

individually and on behalf of all others similarly situated, allege as and for their Class Action

Complaint against defendant Sears Roebuck & Co. ("Sears" or "Defendant"), upon personal

knowledge as to themselves and their own acts, and as to all other matters upon information and

belief, based upon, *inter alia*, the investigation made by their attorneys, as follows:

### INTRODUCTION

1. This is a proposed class action brought by Plaintiffs on behalf of themselves and

other consumers of Kenmore HE3, HE3t, HE4, and HE4t washing machines (collectively,

"Kenmore HE Series Washing Machines"), as defined more fully herein. Plaintiffs and the

proposed class purchased Kenmore HE Series Washing Machines from Sears.

2. This action arises out of the sales of Kenmore HE Series Washing Machines that

Sears knew or should have known were defective and unreliable while continually marketing the

washers as being innovative, cost effective and dependable. The Kenmore HE Series Washing

Exhibit _C_ Pg. _180_

Machines fail to perform their intended purpose as a durable and suitable home clothes washing machine. Due to inherent design flaws, Kenmore HE Series Washing Machines repeatedly break down, do not clean clothes effectively, and otherwise fail to perform during normal home use. Kenmore HE Series Washing Machines fail to circulate and drain completely, resulting in the growth of mold and mildew in the machine, which causes strong, unpleasant odors in the machine and in the clothes "cleaned" in the machine.

3. Sears' acts and omissions in connection with its sale and delivery of these defective washing machines violates the consumer protection laws of the states of residence of Plaintiffs and the other members of the class, and constitutes common law fraud, breach of implied warranty and unjust enrichment.

## PARTIES

4. *Susan Munch.* Plaintiff Susan Munch is a natural person and citizen of Illinois.

5. *Larry Butler.* Plaintiff Larry Butler is a natural person and citizen of Indiana.

6. *Joseph Leonard.* Plaintiff Joseph Leonard is a natural person and citizen of Minnesota.

7. *Victor Matos.* Plaintiff Victor Matos is a natural person and citizen of Kentucky.

8. *Kevin Barnes.* Plaintiff Kevin Barnes is a natural person and citizen of Texas.

9. *Sears Roebuck & Co.* Defendant Sears Roebuck & Co. is a foreign corporation with its principal place of business in Hoffman Estates, Illinois.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value



of $5,000,000, exclusive of interest and costs, and is a class action in which members of the putative plaintiff class are citizens of States different from Defendants.

11.     Venue is proper pursuant to 28 U.S.C. § 1391. Defendant is subject to personal jurisdiction in the Northern District of Illinois.

## OVERVIEW

12.     Sears marketed and sold a line of front-loading washers, the Kenmore HE Series Washing Machines, throughout the United States. The machines are used primarily for consumer and household purposes. Sears sold the machines as part of its trade or business.

13.     Sears marketed the Kenmore HE Series Washing Machines as a product that saved energy and water while providing outstanding cleaning and dependability, and consumers paid a premium for the machines, which were priced at the top of the washing machine market. Consumers often paid in excess of $1,000.00 for a Kenmore HE Series Washer.

14.     Sears provided an express warranty with Kenmore HE Series Washing Machines that guaranteed for the first year from the date of purchase free replacement of parts without labor charge.

15.     Sears received a significant number of complaints regarding the performance of the Kenmore HE Series Washing Machines. Many of the complaints concerned premature and repeated mechanical failure; electronic control panel failure; clothes not being cleaned properly, including clothes being stained; mold and mildew growing in the machines; and otherwise not performing as a durable and dependable washing machine. The product as designed did not perform in accordance with the representations made by Sears or with the reasonable expectations of Plaintiffs and class members.

Exhibit _G_ Pg. _182_

16. Despite receiving a high level of complaints about the product, Sears continued to market Kenmore HE Series Washing Machines as being dependable and providing outstanding cleaning. Sears never disclosed the many claims it received or the high incidence of repair of the Kenmore HE Series Washing Machines.

17. Sears manufactured and sold Kenmore Series HE Series Washing Machines to consumers when it knew or should have known the washers were not dependable and would not withstand normal operation. Kenmore HE Series Washing Machines were not of the standard, quality or grade that Sears represented them to be and were not fit for their expected uses. Sears omitted, or otherwise concealed or failed to disclose to Plaintiffs and the class members, the true unreliable and defective nature of Kenmore HE Series Washing Machines, and Sears failed to take other remedial action to correct its omissions or concealments.

18. Sears falsely represented that Kenmore HE Series Washing Machines provided outstanding performance as home washing machines, even though it knew or should have known that major components of the machines would fail when used and operated in a normal manner well before the reasonable expectations of the consumers using the product.

19. Moreover, prior to the Kenmore HE Series Washing Machines, Sears marketed and sold Calypsos Washing Machines which had many of the same defects as alleged herein, and which resulted in major litigation against Sears with Sears ultimately agreeing to pay damages to the owners of Calypsos Washing Machines. Because of the previous problems with Calypso Washing Machines, Sears knew or should have known defective washing machines, and failure to disclose those defects, would cause substantial damage to consumers.

20. As a result of Sears' failures and misconduct as detailed herein, Plaintiffs and the proposed class members have suffered actual damages in that their Kenmore HE Series Washing

-4-

Exhibit _____ Pg. _____

Case 8:10-cv-00711-DOC-AN Document 102 Filed 07/11/12 Page 184 of 309 Page ID
#:2785
Case: 1:06-cv-07023 Document #: 1 Filed: 12/19/06 Page 5 of 29 PageID #:5

Machines have not operated as represented by Sears. Plaintiffs and the proposed class have had to pay too high a purchase price for a washing machine that is defective and not fit for use. Additionally, Plaintiffs and the proposed class have been damaged by having to pay for costs associated with service calls, buy replacement parts, and buy extended warranties.

## NAMED PLAINTIFFS' ALLEGATIONS

21. **Susan Munch.** On or about December 2004, Plaintiff purchased a Kenmore HE3t washing machine for approximately $1,000. Plaintiff used the washer for normal home use.

22. On or about June 2006, Plaintiff began experiencing problems with the HE3t washer in that the machine would stop running, break down or otherwise fail to operate. Additionally error codes such as F11 and FDL would appear.

23. Plaintiff contacted Sears to correct the problem. Sears refused to repair the machine for free since the one year warranty had elapsed, and estimated repairs costs at $655.00.

24. Moreover, during the time Sears was requested to repair the machine, Sears repeatedly suggested Plaintiff purchase an additional extended warranty for approximately $300.00 which Plaintiff was coerced into buying due to the already evident poor performance of the HE3t washer despite its having only been used for less than 18 months.

25. **Larry Butler.** On or about February 2005, Plaintiff purchased a Kenmore HE3t washing machine for approximately $1,200. Plaintiff used the washer for normal home use.

26. On or about November 2006, Plaintiff began experiencing problems with the HE3t washer in that the machine would stop running, break down or otherwise fail to operate.

-5-

Additionally error codes such as F11 and FDL would appear.  Furthermore, the HE3t also developed a moldy musty smell.

27.     Plaintiff contacted Sears to correct the problem.  Sears refused to repair the machine without a $54.00 service fee since the one year warranty had elapsed.  Plaintiff paid approximately $50 for replacement relays.

28.     **Joseph Leonard.**          On or about May 2005, Plaintiff purchased a Kenmore HE3t washing machine for approximately $1,000.  Plaintiff used the washer for normal home use.

29.     On or about October 2006, Plaintiff began experiencing problems with the HE3t washer in that the machine would stop running, break down or otherwise fail to operate.  Additionally error codes such as F11 and FDL would appear.

30.     Plaintiff contacted Sears to correct the problem, and was charged $55.00 for a service call.

31.     Moreover, during the time Sears was requested to repair the machine, Sears repeatedly suggested Plaintiff purchase an additional extended warranty.

32.     **Kevin Barnes.**          On or about March 2005, Plaintiff purchased a Kenmore HE4t washing machine for approximately $1,150.00.  Plaintiff used the washer for normal home use.

33.     On or about October 2006, Plaintiff began experiencing problems with the HE4t washer in that the machine would stop running, break down or otherwise fail to operate.  Additionally error codes such as F11 and FDL would appear.   Plaintiff spent approximately $100.00 for parts to repair the machine.

Exhibit___6___ Pg. 185

34.     **Victor Matos.**      On or about January 2005, Plaintiff purchased a Kenmore HE4t washing machine for approximately $1,200.  Plaintiff used the washer for normal home use.

35.     On or about August 2005, Plaintiff began experiencing problems with the HE4t washer in that the machine would stop running, break down or otherwise fail to operate. Additionally error codes such as F11 and FDL would appear.

36.     Plaintiff contacted Sears to correct the problem.  Sears refused to repair the machine for free since the one year warranty had elapsed.  Plaintiff paid approximately $141.00 for parts to repair the machine.

37.     Moreover, during the time Sears was requested to repair the machine, Sears repeatedly suggested Plaintiff purchase an additional extended warranty.

## CLASS ACTION ALLEGATIONS

38.     Plaintiffs bring all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the class defined below.

A.      **Class Definition(s)**

39.     The (b)(2) Injunctive Relief Class consists of:

All consumers who own a Kenmore HE Series washing machine.[1]

40.     The (b)(3) State Sub-Classes consist of:

**Illinois:**  All persons in Illinois who own a Kenmore HE Series washing machine (the "Illinois Sub-Class");

**Indiana:**  All persons in Indiana who own a Kenmore HE Series washing machine (the "Indiana Sub-Class");

---

[1]     Plaintiff reserves the right to amend the class definition based upon future investigation, discovery and the proofs at trial.

**Minnesota:**  All persons in Minnesota who own a Kenmore HE Series washing machine (the "Minnesota Sub-Class");

**Texas:**  All persons in Texas who own a Kenmore HE Series washing machine (the "Texas Sub-Class");

**Kentucky:**  All persons in Kentucky who own a Kenmore HE Series washing machine (the "Kentucky Sub-Class");

Excluded from the Class(es) are:  Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons immediate families, and the presiding judge(s) in this case and his, her or their immediate family.

  **B.**  **Numerosity**

  41. At this time, Plaintiffs do not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiffs believe that the Class members are so numerous that joinder of all members is impracticable.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery.

  **C.**  **Commonality**

  42. There are questions of law or fact common to the class, including at least the following:

    (a) Whether Sears knew or should have known that Kenmore Series HE Washing Machines are not dependable and are not suitable for use as home washing machines, and otherwise are not as warranted and represented by Sears;

    (b) Whether Sears concealed from and/or failed to disclose to Plaintiffs and the class members material facts including that Kenmore HE Series Washing Machines are not suitable;

-8-

(c) Whether Sears engaged in unfair or deceptive acts and/or practices when it failed or omitted to disclose either through advertising, warranties and other express representations, the unreliability of Kenmore HE Series Washing Machines;

(d) Whether Sears was unjustly enriched by its conduct;

(e) Whether Sears had a pattern and practice of marketing extended warranties to further profit from Plaintiff and the class;

(f) Whether Plaintiffs and the class members are entitled to compensatory damages, and the measure of such damages; and

(g) Whether Plaintiffs and the class members are entitled to punitive damages, and the measure of such damages.

**D.  Typicality**

43.  Plaintiffs have the same interests in this matter as all other members of the Class, and their claims are typical of all members of the class.

**E.  Adequacy**

44.  Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiffs will fairly and adequately represent the interests of the class members and do not have interests adverse to the class.

**F.  The Prerequisites of Rule 23(b)(2) are Satisfied**

45.  The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive and equitable relief with respect to the class as a whole.

46.  The prosecution of separate actions by members of the class would create a risk of establishing incompatible standards of conduct for Defendant. For example, one court might

-9-

Exhibit __G__ Pg. __188__

decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal. Individual actions may, as a practical matter, be dispositive of the interest of class members, who would not be parties to those actions.

47. Defendant's actions are generally applicable to the class as a whole, and Plaintiffs seek, *inter alia*, equitable remedies with respect to the class as a whole.

48. Defendant's systemic policy and practices make declaratory relief with respect to the class as a whole appropriate.

### G. The Prerequisites of Rule 23(b)(3) are Satisfied

49. This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual class member. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the class defined above.

### FRAUDULENT CONCEALMENT

50. Throughout the Class period, Defendant affirmatively concealed from Plaintiffs and class members the defects described herein.

51. Defendant had a duty to inform Plaintiffs and Class of the defects described herein, which it knew of or should have known. Notwithstanding its duty, Defendant never

-10-

disclosed the defects to Plaintiffs or the Class; rather, Defendant attributed resulting mechanical failures to soap, water issues or other conduct.

52. Moreover, as part of the scheme, after the warranty period had expired Defendant marketed extended warranties for hundreds of dollars, thus further attempting to profit from the misfortune of Kenmore HE Series Washer purchasers.

53. Despite exercising reasonable diligence, Plaintiffs and Class could not have discovered the defects or Defendants' scheme to avoid disclosure of the defect. Thus, running of the statute of limitations has been tolled with respect to any claims that Plaintiffs or the Class have brought or could have brought as a result of the unlawful and fraudulent course of conduct described herein.

54. Defendants are further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of its acts of fraudulent concealment.

## CAUSES OF ACTION

### COUNT I – Brought on Behalf of Illinois Class
### (Violation of Illinois Consumer Fraud and Deceptive Business Practices Act)

55. Plaintiffs repeat and reallege the allegations of the prior paragraphs as if fully stated herein.

56. 56. At all times relevant hereto, there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (the "Act").

57. Section 2 of the Act provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of or employment of any deceptive, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or

-11-



omission of such material fact, or the use of employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby, In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2 (footnotes omitted).

58. Plaintiffs and other class members, as purchasers of Kenmore HE Series Washing Machines, are consumers within the meaning of the ICFA given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

61. Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, renders unlawful the "use or employment of any deception [including the] concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce..." Illinois case law holds that reliance on the deception is not an element of a consumer fraud claim.

62. Consumers (such as Plaintiffs) were entitled to disclosure of all material facts because

(a) A significant risk of failure would be a material fact in a consumer's decision-making process, and

(b) Without Sears' disclosure, consumers would not know that there is any risk of failure.

63. Moreover, because Sears' warranties are limited in duration, consumers were further entitled to know that failures might not exhibit themselves until after the warranties expired, and if that occurred, Sears was not committing to repair the condition. All of these facts were material to consumers' (such as Plaintiffs') purchase decisions.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 192 of 309   Page ID
#:2793
Case: 1:06-cv-07023 Document #: 1 Filed: 12/19/06 Page 13 of 29 PageID #:13

64.     Specifically, at all times relevant, Sears continuously and consistently failed to

disclose to consumers (such as Plaintiffs):

> (a)   there was a substantial risk of mechanical failure and/or moldy smells;
>
> (b)   that failures might not exhibit themselves until after the warranty has
>        expired; and
>
> (c)   that if failures exhibit themselves after the warranty period expired that
>        Sears was not committing to making repairs.

65.     Sears intended that Plaintiffs and the class would rely on the deception by

purchasing the Kenmore HE Series Washing Machines, unaware of the material facts described

above.  This conduct constitutes consumer fraud within the meaning of the ICFA.

66.     Defendant has committed deceptive acts or practices within the meaning of the

ICFA by engaging in the acts and practices alleged herein, including, but not limited to, its failure

to disclose the material defects.

67.     Defendant's conduct alleged herein is furthermore unfair insofar as it offends

public policy; is so oppressive that the consumer has little alternative but to submit; and causes

consumers substantial injury.

68.     As a direct and proximate result of the unfair acts or practices of Defendant

alleged herein, Plaintiffs and other members of the class were damaged.

WHEREFORE, Plaintiffs, individually and on behalf of the class of persons described

herein, pray for an Order as follows:

> A.     Finding that this action satisfies the prerequisites for maintenance as a
>         class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and
>         certifying the class defined herein;
>
> B.     Designating Plaintiffs as representatives of the class and their counsel as
>         class counsel;

-13-

Exhibit  G  Pg.  192

C.     Entering judgment in favor or Plaintiffs and the class and against Defendant;

D.     Awarding Plaintiffs and class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.     Awarding Plaintiffs and the class members punitive damages, in an amount to be determined at trial;

F.     Imposing a constructive trust on amounts wrongfully collected from Plaintiffs and the class members pending resolution of their claims herein;

G.     Compelling Defendant to establish a program to inspect, repair and replace defective Kenmore HE Series Washing Machines;

H.     Compelling Defendant to establish a program to reimburse its warranty claims denied or paid in part, reimburse Sears customers who have had to pay to repair and/or replace defective Kenmore HE Series Washing Machines, reimburse customers who have purchased extended warranties; and

I.     Granting such further relief as the Court deems just.

### COUNT II – Brought on Behalf of Indiana Class
### (Violation of Indiana Deceptive Consumers Sales Act)

69.     Plaintiffs repeat and reallege the allegations of the prior paragraphs as if fully stated herein.

70.     This Count is brought on behalf of Plaintiff Butler and the Indiana Class. At all times relevant hereto, there was in full force and effect the Indiana Deceptive Consumers Sales Act, Ind. Code § 24-5-0.5 et seq. (the "Act").

71.     Section 0.5-4 of the Act provides in relevant part as follows:

(a) A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act. The court may award reasonable attorney fees to the party that prevails in an action under this subsection.

-14-

72. Plaintiffs and other class members, as purchasers of Kenmore HE Series Washing Machines, are consumers within the meaning of the Act given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

73. Once the Kenmore HE Series Washing Machine's failure risk became significant, consumers (such as Plaintiffs) were entitled to disclosure of that fact because:

     (a) A significant risk of failure would be a material fact in a consumer's decision-making process, and

     (b) Without Sears' disclosure, consumers would not know that there is any risk of failure.

74. Moreover, because Sears' warranties are limited in duration, consumers were further entitled to know that failures might not exhibit themselves until after the warranties expired, and if that occurred, Sears was not committing to repair the condition. All of these facts were material to consumers' (such as Plaintiffs') purchase decisions.

75. Specifically, at all times relevant, Sears continuously and consistently failed to disclose to consumers (such as Plaintiffs) that:

     (a) there was a substantial risk of mechanical failure and/or moldy smells;

     (b) failures might not exhibit themselves until after the warranty has expired; and

     (c) if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs.

76. Sears intended that Plaintiffs and the class would rely on the deception by purchasing the Kenmore HE Series Washing Machines, unaware of the material facts described above. This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

-15-

Exhibit __G__ Pg. _194_

Case 8:10-cv-00711-DOC-AN  Document 102  Filed 07/11/12  Page 195 of 309  Page ID
#:2796
Case: 1:06-cv-07023 Document #: 1 Filed: 12/19/06 Page 16 of 29 PageID #:16

Defendant has committed deceptive acts or practices within the meaning of the

Act by engaging in the acts and practices alleged herein, including, but not limited to, its failure

to disclose the material defects.

Defendant's conduct alleged herein is furthermore unfair insofar as it offends

public policy; is so oppressive that the consumer has little alternative but to submit; and causes

consumers substantial injury.

As a direct and proximate result of the unfair acts or practices of Defendant

alleged herein, Plaintiffs and other members of the class were damaged.

WHEREFORE, Plaintiffs, individually and on behalf of the class of persons described

herein, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a
class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and
certifying the class defined herein;

B.    Designating Plaintiffs as representatives of the class and their counsel as
class counsel;

C.    Entering judgment in favor or Plaintiffs and the class and against
Defendant;

D.    Awarding Plaintiffs and class members their individual damages and
attorneys' fees and allowing costs, including interest thereon;

E.    Awarding Plaintiffs and the class members punitive damages, in an
amount to be determined at trial;

F.    Imposing a constructive trust on amounts wrongfully collected from
Plaintiffs and the class members pending resolution of their claims herein;

G.    Compelling Defendant to establish a program to inspect, repair and replace
defective Kenmore HE Series Washing Machines;

H.    Compelling Defendant to establish a program to reimburse its warranty
claims denied or paid in part, reimburse Sears customers who have had to
pay to repair and/or replace defective Kenmore HE Series Washing

Exhibit _G_ Pg. _195_

Machines, reimburse customers who have purchased extended warranties; and

I.    Granting such further relief as the Court deems just.

### COUNT III – Minnesota
### (Violation of Minnesota Prevention of Consumer Fraud Act)

80.    Plaintiffs repeat and reallege the allegations of the prior paragraphs as if fully stated herein.

81.    This Count is brought on behalf of Plaintiff Leonard and the Minnesota Class.

82.    At all times relevant hereto, there was in full force and effect the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. § 325F et seq. (the "Act").

83.    Section 69 of the Act provides in relevant part as follows:

"Subdivision 1: The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein."

"Subdivision 4: Solicitation of money for merchandise not ordered or services not performed. The act, use, or employment by any person of any solicitation for payment of money by another by any statement or invoice, or any writing that could reasonably be interpreted as a statement or invoice, for merchandise not yet ordered or for services not yet performed and not yet ordered, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein."

84.    Plaintiffs and other class members, as purchasers of Kenmore HE Series Washing Machines, are consumers within the meaning of the Act given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

85. Once the Kenmore HE Series Washing Machine's failure risk became significant, consumers (such as Plaintiffs) were entitled to disclosure of that fact because:

   (a) A significant risk of failure would be a material fact in a consumer's decision-making process, and

   (b) Without Sears' disclosure, consumers would not know that there is any risk of failure.

86. Moreover, because Sears' warranties are limited in duration, consumers were further entitled to know that failures might not exhibit themselves until after the warranties expired, and if that occurred, Sears was not committing to repair the condition. All of these facts were material to consumers' (such as Plaintiffs') purchase decisions.

87. Specifically, at all times relevant, Sears continuously and consistently failed to disclose to consumers (such as Plaintiffs):

   (a) there was a substantial risk of mechanical failure and/or moldy smells;

   (b) that failures might not exhibit themselves until after the warranty has expired; and

   (c) that if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs.

88. Sears intended that Plaintiffs and the class would rely on the deception by purchasing the Kenmore HE Series Washing Machines, unaware of the material facts described above. This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

89. Defendant has committed deceptive acts or practices within the meaning of the Act by engaging in the acts and practices alleged herein, including, but not limited to, its failure to disclose the material defects.

90.   Defendant's conduct alleged herein is furthermore unfair insofar as it offends public policy; is so oppressive that the consumer has little alternative but to submit; and causes consumers substantial injury.

91.   As a direct and proximate result of the unfair acts or practices of Defendant alleged herein, Plaintiffs and other members of the class were damaged.

WHEREFORE, Plaintiffs, individually and on behalf of the class of persons described herein, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the class defined herein;

B.   Designating Plaintiffs as representatives of the class and their counsel as class counsel;

C.   Entering judgment in favor or Plaintiffs and the class and against Defendant;

D.   Awarding Plaintiffs and class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.   Awarding Plaintiffs and the class members punitive damages, in an amount to be determined at trial;

F.   Imposing a constructive trust on amounts wrongfully collected from Plaintiffs and the class members pending resolution of their claims herein;

G.   Compelling Defendant to establish a program to inspect, repair and replace defective Kenmore HE Series Washing Machines;

H.   Compelling Defendant to establish a program to reimburse its warranty claims denied or paid in part, reimburse Sears customers who have had to pay to repair and/or replace defective Kenmore HE Series Washing Machines, reimburse customers who have purchased extended warranties; and

I.   Granting such further relief as the Court deems just.

## COUNT IV – Kentucky
### (Violation of Kentucky Consumer Fraud and Deceptive Business Practices Act)

104.    Plaintiffs repeat and reallege the allegations of the prior paragraphs as if fully

stated herein.

105.    At all times relevant hereto, there was in full force and effect the Kentucky

Consumer Fraud and Deceptive Business Practices Act, Ky. Rev. Stat. § 367.220 et seq (the

"Act").

106.    Section 170 of the Act provides in relevant part as follows:

> (1) Unfair, false, misleading, or deceptive acts or practices in the
> conduct of any trade or commerce are hereby declared unlawful.
> (2) For the purposes of this section, unfair shall be construed to
> mean unconscionable.

107.    Plaintiffs and other class members, as purchasers of Kenmore HE Series Washing

Machines, are consumers within the meaning of Consumer Fraud Acts given that Defendant's

business activities involve trade or commerce, are addressed to the market generally and

otherwise implicate consumer protection concerns.

108.    Once the Kenmore HE Series Washing Machine's failure risk became significant,

consumers (such as Plaintiffs) were entitled to disclosure of that fact because:

(a)    A significant risk of failure would be a material fact in a consumer's
decision-making process, and

(b)    Without Sears' disclosure, consumers would not know that there is any
risk of failure.

109.    Moreover, because Sears' warranties are limited in duration, consumers were

further entitled to know that failures might not exhibit themselves until after the warranties

expired, and if that occurred, Sears was not committing to repair the condition.  All of these facts

were material to consumers' (such as Plaintiffs') purchase decisions.

-20-

110.   Specifically, at all times relevant, Sears continuously and consistently failed to disclose to consumers (such as Plaintiffs):

(a)   there was a substantial risk of mechanical failure and/or moldy smells;

(b)   that failures might not exhibit themselves until after the warranty has expired; and

(c)   that if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs.

111.   Sears intended that Plaintiffs and the class would rely on the deception by purchasing the Kenmore HE Series Washing Machines, unaware of the material facts described above.  This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

112.   Defendant has committed deceptive acts or practices within the meaning of the Act by engaging in the acts and practices alleged herein, including, but not limited to, its failure to disclose the material defects.

113.   Defendant's conduct alleged herein is furthermore unfair insofar as it offends public policy; is so oppressive that the consumer has little alternative but to submit; and causes consumers substantial injury.

114.   As a direct and proximate result of the unfair acts or practices of Defendant alleged herein, Plaintiffs and other members of the class were damaged.

WHEREFORE, Plaintiffs, individually and on behalf of the class of persons described herein, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the class defined herein;

Exhibit  6  Pg. 200

B.   Designating Plaintiffs as representatives of the class and their counsel as class counsel;

C.   Entering judgment in favor or Plaintiffs and the class and against Defendant;

D.   Awarding Plaintiffs and class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.   Awarding Plaintiffs and the class members punitive damages, in an amount to be determined at trial;

F.   Imposing a constructive trust on amounts wrongfully collected from Plaintiffs and the class members pending resolution of their claims herein;

G.   Compelling Defendant to establish a program to inspect, repair and replace defective Kenmore HE Series Washing Machines;

H.   Compelling Defendant to establish a program to reimburse its warranty claims denied or paid in part, reimburse Sears customers who have had to pay to repair and/or replace defective Kenmore HE Series Washing Machines, reimburse customers who have purchased extended warranties; and

I.   Granting such further relief as the Court deems just.

## COUNT V
### (Common Law Fraud by Omission)

115.   Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully stated herein.

116.   Sears, through its experience, was in a position of superiority over Plaintiffs and class members with respect to knowledge that: (a)   there was a substantial risk of mechanical failure and/or moldy smells; (b) that failures might not exhibit themselves until after the warranty has expired; and (c) that if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs.

-22-

117. In other words, once the risk of the failures becomes significant, consumers (such as Plaintiffs and the class members) were entitled to disclosure of that fact because:

        (a)    A significant risk of failure would be a material fact in a consumer's decision-making process, and

        (b)    Without Sears' disclosure, consumers would not know that there is any risk of failure.

118. Moreover, because Sears' warranties are limited in duration, consumers were further entitled to know that failures might not exhibit themselves until after their warranties expire, and if that occurred, Sears was not committing to repair the condition. And at that time, at the cost of hundreds of dollars, Plaintiffs and the class would be coerced into buying an extended warranty. All of these facts were material to consumers' (such as Plaintiffs') purchase decisions.

119. Plaintiffs and the class reasonably relied on Sears to disclose those material facts. If Sears had disclosed the above facts to Plaintiffs and the class, they could have (and would have) prevented economic injury by either negotiating a lower price to reflect the risk or simply avoiding the risk by purchasing a different manufacturer's windows.

120. Specifically, at all times relevant, Sears continuously and consistently failed to disclose to consumers (such as Plaintiffs):

        (a)    there was a substantial risk of mechanical failure and/or moldy smells;

        (b)    that failures might not exhibit themselves until after the warranty has expired; and

        (c)    that if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs.

121. Sears failed to disclose those material facts and, as a proximate result, Plaintiffs and the class have been damaged because: (a) they purchased Kenmore HE Series Washing

Machines that developed the undisclosed risk – failures, (b) the condition exhibited itself after Plaintiffs' warranty period expired, and (c) Sears refused to repair the condition because the warranties had expired.

WHEREFORE, Plaintiffs, individually and on behalf of the class of persons described herein, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the class defined herein;

B.   Designating Plaintiffs as representatives of the class and their counsel as class counsel;

C.   Entering judgment in favor or Plaintiffs and the class and against Defendant;

D.   Awarding Plaintiffs and class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.   Awarding Plaintiffs and the class members punitive damages, in an amount to be determined at trial;

F.   Imposing a constructive trust on amounts wrongfully collected from Plaintiffs and the class members pending resolution of their claims herein;

G.   Compelling Defendant to establish a program to inspect, repair and replace defective Kenmore HE Series Washing Machines;

H.   Compelling Defendant to establish a program to reimburse its warranty claims denied or paid in part, reimburse Sears customers who have had to pay to repair and/or replace defective Kenmore HE Series Washing Machines, reimburse customers who have purchased extended warranties; and

I.   Granting such further relief as the Court deems just.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 204 of 309   Page ID
#:2805
Case: 1:06-cv-07023 Document #: 1 Filed: 12/19/06 Page 25 of 29 PageID #:25

## COUNT VI
### (Breach of Implied Warranty of Merchantability)

122.    Plaintiffs repeat and reallege the allegations of the prior paragraphs as if fully
stated herein.

123.    At all times relevant hereto, there was duty imposed by law which requires that a
manufacturer or seller's product be reasonably fit for the purposes for which such products are
used, and that product be acceptable in trade for the product description.

124.    Notwithstanding the aforementioned duty, at the time of delivery, Kenmore HE
Series Washing Machines sold to Plaintiffs and the class were not merchantable.

125.    As documented in its own business records and elsewhere, Defendant was notified
that the Kenmore HE Series Washing Machines were not merchantable with a reasonable time
after the latent defect manifested itself to Plaintiffs and the class.

126.    As a result of the non-merchantability of the Kenmore HE Series Washing
Machines described herein, Plaintiffs and other members of the class sustained a loss or
damages.

WHEREFORE, Plaintiffs, individually and on behalf of the class of persons described
herein, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a
class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and
certifying the class defined herein;

B.    Designating Plaintiffs as representatives of the class and their counsel as
class counsel;

C.    Entering judgment in favor or Plaintiffs and the class and against
Defendant;

D.    Awarding Plaintiffs and class members their individual damages and
attorneys' fees and allowing costs, including interest thereon;

Exhibit___G___ Pg.__204

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 205 of 309   Page ID
#:2806
Case: 1:06-cv-07023 Document #: 1 Filed: 12/19/06 Page 26 of 29 PageID #:26

E.      Awarding Plaintiffs and the class members punitive damages, in an
        amount to be determined at trial;

F.      Imposing a constructive trust on amounts wrongfully collected from
        Plaintiffs and the class members pending resolution of their claims herein;

G.      Compelling Defendant to establish a program to inspect, repair and replace
        defective Kenmore HE Series Washing Machines;

H.      Compelling Defendant to establish a program to reimburse its warranty
        claims denied or paid in part, reimburse Sears customers who have had to
        pay to repair and/or replace defective Kenmore HE Series Washing
        Machines, reimburse customers who have purchased extended warranties;
        and

I.      Granting such further relief as the Court deems just.

## COUNT VII
### (Unjust Enrichment (Alternative Count))

127     Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully

stated herein.

128     Plaintiffs and the class have conferred benefits on Defendant by purchasing

Kenmore HE Series Washing Machines.

129     Defendants have knowingly and willingly accepted these benefits from Plaintiffs

and the class.

130     Under the circumstances, it is inequitable for Defendant to retain these benefits at

the expense of Plaintiffs and the class.

131     Defendant has been unjustly enriched at the expense of and detriment of Plaintiffs

and the class by wrongfully collecting money to which Defendant, in equity, is not entitled.

132     Plaintiffs and the class are entitled to recover from Defendant all amounts

wrongfully collected and improperly retained by Defendant, plus interest thereon.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 206 of 309   Page ID
#:2807
Case: 1:06-cv-07023 Document #: 1 Filed: 12/19/06 Page 27 of 29 PageID #:27

133. As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and

the class have suffered injury and are entitled to reimbursement, restitution and disgorgement

from Defendant of the benefits conferred by Plaintiffs and the class.

134. Plaintiffs and the class have no adequate remedy at law.

135. Plaintiffs seek to obtain a pecuniary benefit for the class in the form of all

reimbursement, restitution and disgorgement from Defendant. Plaintiffs' counsel are entitled to

recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary

benefit on behalf of the class, and will seek an award of such fees and expenses at the appropriate

time.

WHEREFORE, Plaintiffs, individually and on behalf of the class of persons described

herein, pray for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a
class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and
certifying the class defined herein;

B. Designating Plaintiffs as representatives of the class and their counsel as
class counsel;

C. Entering judgment in favor or Plaintiffs and the class and against
Defendant;

D. Awarding Plaintiffs and class members their individual damages and
attorneys' fees and allowing costs, including interest thereon;

E. Awarding Plaintiffs and the class members punitive damages, in an
amount to be determined at trial;

F. Imposing a constructive trust on amounts wrongfully collected from
Plaintiffs and the class members pending resolution of their claims herein;

G. Compelling Defendant to establish a program to inspect, repair and replace
defective Kenmore HE Series Washing Machines;

H.  Compelling Defendant to establish a program to reimburse its warranty claims denied or paid in part, reimburse Sears customers who have had to pay to repair and/or replace defective Kenmore HE Series Washing Machines, reimburse customers who have purchased extended warranties; and

I.  Granting such further relief as the Court deems just.

## COUNT XIII
### Declaratory Relief Pursuant To 28 U.S.C. § 2201

136. Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully stated herein.

137. There is an actual controversy between Defendant and all class members concerning the legality of Defendant's marketing of Kenmore HE Series Washing Machines as innovative, cost effective and dependable when it knew or should have known them to be defective and unreliable.

138. Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Plaintiffs and class members are interested parties who seek a declaration of their rights and legal relations vis-à-vis Defendant with regard to sales of the Kenmore HE Series Washing Machines.

139. Specifically, Plaintiffs seek an Order by this Court:

A.  Declaring the warranty void;

B.  Declaring the time limit void;

C.  Compelling Defendant to establish a program to inspect, repair and replace defective Kenmore HE Series Washing Machines

D.  Compelling Defendant to establish a program to reimburse its warranty claims denied or paid in part, reimburse Sears customers who have had to

-28-

Case 8:10-cv-00711-DOC-AN  Document 102  Filed 07/11/12  Page 208 of 309  Page ID
#:2809
Case: 1:06-cv-07023 Document #: 1 Filed: 12/19/06 Page 29 of 29 PageID #:29

pay to repair and/or replace defective Kenmore HE Series Washing
Machines, reimburse customers who have purchased extended warranties;
and

E.      Granting such further relief as the Court deems just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  December 19, 2006              Respectfully submitted,

                                       **SUSAN MUNCH, LARRY BUTLER, JOSEPH
                                       LEONARD, KEVIN BARNES and VICTOR
                                       MATOS,**
                                       **Class Plaintiffs,**

                                       By:
                                           One of Their Attorneys

                                       Paul M. Weiss #6217260
                                       George K. Lang #6211537
                                       **FREED & WEISS LLC**
                                       111 West Washington Street, Suite 1331
                                       Chicago, Illinois 60602
                                       (312) 220-0000
                                       paul@freedweiss.com
                                       george@freedweiss.com


                                       Christopher A. Seeger
                                       David R. Buchanan
                                       **SEEGER WEISS LLP**
                                       One William Street
                                       New York, NY 10004
                                       (212) 584 0700

Exhibit ___G___ Pg. _208_

# Exhibit  H

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 210 of 309   Page ID
#:2811
Case 2:12-cv-00585-WJM-MF   Document 1   Filed 01/31/12   Page 1 of 26 PageID: 1

James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Attorneys for Plaintiff*


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STANLEY FISHMAN, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br>vs.<br><br>GENERAL ELECTRIC COMPANY,<br><br>                Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT<br>AND DEMAND FOR JURY TRIAL** |

Plaintiff Stanley Fishman, individually and on behalf of all others similarly situated, alleges as follows:

### INTRODUCTION

1.      Plaintiff brings this class action individually and on behalf of the Classes defined below (the "Classes" or collectively the "Class") against General Electric Company ("GE") to obtain relief, including, among other things, damages and injunctive relief.

2.      This class action is brought to remedy violations of law in connection with GE's design, manufacture, marketing, advertising, selling, warranting, and servicing of its front-

Exhibit __11__ Pg. __210__

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 211 of 309   Page ID
#:2812
Case 2:12-cv-00585-WJM-MF   Document 1   Filed 01/31/12   Page 2 of 26 PageID: 2

loading washer machines (the "Washing Machines"). These Washing Machines have serious
design defects (collectively, "Design Defects") that cause them to:

    a. accumulate mold and mildew and/or residue or similar growth within the
       Washing Machines;

    b. produce a moldy, mildewy or similar odor that permeates the Washing Machine
       and clothes and other items washed in the Washing Machine;

    c. fail to clean the Washing Machines and remove moisture, residue, growth, and/or
       bacteria or like substances that lead to the formation of mold, mildew, and/or like
       substances and/or associated foul odors;

    d. be unusable in the manner, to the extent to, and for the purpose for which the
       Washing Machines were advertised, marketed, and sold;

    e. require regular and repeated cleaning and maintenance expenses that were never
       disclosed prior to purchase.

The problems caused by the Design Defects are collectively referred to as "Mold Problems."

    3.    The automatic clothes washer market is comprised of both vertical axis (*i.e.*, top-
loading) and horizontal axis (*i.e.*, front-loading) washing machines. GE offers both top-loading
and front-loading washers. Historically, consumers purchased vertical axis washing machines,
which as part of their operation clean and rid themselves of the byproducts of washing clothes.
Although consumers expect, based upon decades of experience, that GE's Washing Machines
will also effectively clean and rid themselves of these washing byproducts, the machines do not.

    4.    The Washing Machines do not effectively clean and rid themselves of the
byproducts of washing clothes due to the Design Defects, which include, among other things,
the failure of the Washing Machines to:

Exhibit *11* Pg. *211*

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 212 of 309   Page ID
#:2813
Case 2:12-cv-00585-WJM-MF   Document 1   Filed 01/31/12   Page 3 of 26 PageID: 3

a.  Properly rinse and drain the internal components of the Washing Machine;

b.  Sufficiently eliminate the byproducts of washing clothes;

c.  Utilize materials made with sufficient or appropriate anti-microbial additives to prevent, impede, or reduce the growth of mold, mildew, or biofilm (*i.e.*, the filmy substance that develops within the Washing Machines).

5.     As a result of these failures, the Washing Machines do not satisfy the purpose for which they were purchased (*i.e.*, to clean clothes, towels, bedding, and other washable items and to make those items smell fresh and clean).

6.     GE fails to disclose the Design Defects and Mold Problems, and falsely advertises and misrepresents or omits or fails to disclose the characteristics, benefits, quality, grade, standard, and uses of its Washing Machines by representing them as "washers" since the machines fail their most basic and fundamental purpose: making items washed within them clean.  Items washed in the Washing Machines smell foul due to the Mold Problems.

7.     GE also fails to disclose the extraordinary maintenance and associated expenses that its Washing Machines require to combat the accumulation of mold, mildew, and biofilm. The extraordinary maintenance includes, but is not limited to: keeping the door open between washes, which presents a safety risk; running frequent and lengthy hot-water cleaning cycles; running monthly "BasketClean" cycles with bleach; the need to buy and use special washing machine cleaners; and the need to wipe the interior of the Washing Machines, the door glass, and the folds of the rubber door gasket dry after use.  This information is material because a reasonable consumer would want to know how much maintenance is required for the Washing Machines before purchasing one.

3

8.      As a result of GE's concealment and failure to disclose the Design Defects, Mold

Problems, and the extraordinary maintenance required, the Washing Machines are worth less

than the price paid by Plaintiff and the Class and cost more to own and operate than GE

represented.

9.      Plaintiff asserts claims for violation of the New Jersey Consumer Fraud Act,

breach of express warranty, breach of implied warranty, and unjust enrichment.

### JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)

because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this

is a class action involving more than 100 class members in which Plaintiff and other Class

members and GE are citizens of different states.

11.      Venue is proper under 28 U.S.C. § 1391 because GE does substantial business in

this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's

claims occurred in this district.   At all pertinent times, GE was and is in the businesss of

marketing, advertising, distributing, and selling products, including the Washing Machines,

throughout New Jersey and nationwide.   The Washing Machines that form the basis of this

Complaint were purchased from GE and/or from GE's authorized dealers and placed in the

stream of commerce by GE.

### PARTIES

12.      Plaintiff Stanley Fishman is a citizen of New Jersey, and resides in West Orange,

New Jersey.   On or about November 2006, Plaintiff purchased a GE Washing Machine, which

was installed in his home.   Within approximately six months of delivery, Plaintiff began to

experience mold, mildew, and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Washing Machine.

13.      Defendant GE is a New York corporation with its principle place of business at 3135 Easton Turnpike, Fairfield, Connecticut.

14.      GE manufactures and sells thousands of Washing Machines each year, a substantial portion of which are sold or offered for sale in New Jersey.  GE has sold, either directly or indirectly, thousands of its defective Washing Machines nationwide and in the State of New Jersey.

## FACTUAL BACKGROUND

15.      GE holds itself out to the public as a manufacturer of safe, technologically advanced, and easy-to-use home appliances, including Washing Machines.  GE is the largest company in the world.  The company proudly boasts of its innovation and advanced technology, its prominence as a catalyst for change, and the benefits that it provides customers and society. GE's breadth of operations includes more than 20 industries and the company employs more than 40,000 engineers and scientists.  Given its size and prominence, consumers trust that GE products will meet or exceed GE's representations.

16.      GE, as one part of its business, manufactures, produces, distributes, and sells Washing Machines, which it makes available throughout the United States.

17.      GE sells Washing Machines both directly and through its network of authorized dealers including leading retailers and on-line merchants.

18.      GE provided Plaintiff and each purchaser of a Washing Machine with an express one-year factory warranty.

Exhibit___11___Pg._214_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 215 of 309   Page ID
#:2816
Case 2:12-cv-00585-WJM-MF   Document 1   Filed 01/31/12   Page 6 of 26 PageID: 6

19.     In conjunction with each sale, GE marketed, advertised, and warranted that the
Washing Machines were of merchantable quality and fit for the ordinary purpose for which such
goods were used and were free from defects, or at a minimum would not cause Mold Problems.

20.     GE also made express representations about the quality of its Washing Machines.

21.     In addition to making express representations of the quality of its Washing
Machines, GE also touted its Washing Machines as ENERGY STAR washers.

22.     To qualify for the ENERGY STAR label, a manufacturer must comply with
current ENERGY STAR Eligibility Criteria, which define the performance criteria that must be
met for use of the ENERGY STAR certification mark on clothes washers and specifying the
testing criteria for clothes washers.

23.     Every Washing Machine has the ENERGY STAR logo indicating that the
machine is ENERGY STAR compliant.  The ENERGY STAR logo appears prominently on the
front of the machines to ensure that customers see the logo.

24.     Members of the Class purchased the Washing Machines, in part, because the
machines were ENERGY STAR compliant and would lead to water and energy savings.  In
reality, at the recommendation of GE, Class members have to regularly run empty cycles of hot
water and/or bleach and/or other products to combat the Mold Problems, contrary to the
representation that the machines would lead to water and energy savings.

25.     GE had exclusive knowledge that the Washing Machines have a Design Defect
and that the Design Defect causes Mold Problems.  These facts were not known to Plaintiff and
the other members of the proposed Classes.  GE's exclusive knowledge of these material facts
gave rise to a duty to disclose such facts, which GE failed to perform.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 216 of 309   Page ID
#:2817
Case 2:12-cv-00585-WJM-MF   Document 1   Filed 01/31/12   Page 7 of 26 PageID: 7

26.     GE represented that the Washing Machines were ENERGY STAR compliant, while concealing from customers the need to run extra cycles of hot water and/or bleach and/or other products to combat the Mold Problems.  GE's representations concerning the efficiency of the Washing Machines gave rise to a duty to disclose the need to run extra cycles.  Upon information and belief, GE has neither considered nor taken into account the extra loads run through the Washing Machines in an attempt to clean the machines.

27.     Further, as the Mold Problems became undeniable, GE began selling or recommending that consumers purchase Tide Washing Machine cleaner to ameliorate the Mold Problems.  Tide Washing Machine cleaner is one of several products designed, manufactured, and marketed to address Mold Problems in the Washing Machines.

28.     GE provides care instructions with its Owner's Manual & Installation Instructions.  The manual does not make any disclosure about the Mold Problems when used as instructed.  GE fails to inform or otherwise disclose to consumers that, even when operated as instructed by GE, Mold Problems will occur in the Washing Machines and that the Mold Problems will result regardless of washer maintenance due to the Design Defects.

29.     Plaintiff purchased a Washing Machine for household purposes, and at all pertinent times used the machine for its intended purpose, used the recommended high-efficiency ("HE") detergent, and have nonetheless experienced Mold Problems.  Plaintiff contacted GE concerning the Mold Problems and unsuccessfully tried GE's various recommendations to fix the problem.

30.     GE falsely represented that Plaintiff and members of the Class would "spend less time on family laundry and more time doing family activities" due to the extraordinary maintenance required of its Washing Machines.

Exhibit _H_ Pg. _216_

31.     After all of the extraordinary maintenance failed, GE suggested that Plaintiff leave the washer door open between uses to ameliorate the Mold Problems.  Leaving the door open, however, changes the appearance of the Washing Machines and poses obvious safety risks to children and pets; indeed, a young child drowned in a Kenmore front loading washer, which prompted the U.S. Consumer Product Safety Commission to open an investigation regarding safety standards for front loaders.  Despite following GE's instruction to leave the washer door open between uses, Plaintiff still experienced Mold Problems with his Washing Machine.

32.     Plaintiff and other Class members experienced and continue to experience Mold Problems even though they have followed the instructions provided by GE including those set forth in GE's manual.

33.     GE intended for customers to believe its statements and representations about its Washing Machines and to trust that its Washing Machines were and are of first-rate quality.  GE concealed material facts regarding the Washing Machines, including the Design Defects, which cause the Washing Machines to experience the Mold Problems, even though consumers used the Washing Machines as instructed by GE.

34.     The Washing Machines are defective in many respects.  Due to those defects, the use of the Washing Machines – as instructed by GE – resulted in conditions creating an excessive propensity for the Washing Machines to accumulate mold and mildew, residue or growth, and moldy odors.  These defects include, among other things,

a. the failure of the Washing Machines to properly drain water and to avoid lingering moisture;

8

Exhibit __11__ Pg. __217__

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 218 of 309   Page ID
#:2819
Case 2:12-cv-00585-WJM-MF   Document 1   Filed 01/31/12   Page 9 of 26 PageID: 9

b.  the failure of the Washing Machines to sufficiently rinse away soils and residues left after a washing cycle to prevent the accumulation of residues and similar items that contribute to the formation of mold and mildew and moldy odors;

c.  the failure of the Washing Machines to prevent the accumulation of residues and growths that contribute to the formation of mold and mildew and moldy odors and like substances when used as instructed and recommended by GE; and

d.  the failure of the Washing Machines to clean themselves in a manner necessary for the proper functioning of the machines for the intended purpose.

35.     Upon information and belief, defects in the drum also play a role in causing Mold Problems.  Due to the defects in the drum and tubs, the machines do not fully or properly drain in connection with each and every wash cycle and/or do not sufficiently permit the rinsing away and/or prevent the accumulation of residues and growths.  As a result, the defects in the drums and tubs do not permit the Machines to clean themselves after each load.  Defects in the door seal also play a role in the accumulation of mold and mildew and moldy odors.  Among other things, the door seal does not fully or properly drain and/or remove residues and growths after each wash.

36.     GE was aware, or should have known, before marketing and selling the Washing Machines, that they were inherently defective because even when operated as instructed, the machines were substantially likely to experience Mold Problems.  GE nonetheless failed to warn or omitted from telling its customers of the Design Defects inherent in the Washing Machines or the Mold Problems that would result from the Design Defects.

37.     As a result of the Design Defects that have plagued and continue to plague the Washing Machines, Plaintiff and other Class members overpaid for the Washing Machines.  For

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 219 of 309   Page ID
#:2820
Case 2:12-cv-00585-WJM-MF   Document 1   Filed 01/31/12   Page 10 of 26 PageID: 10

the reasons detailed herein, GE knew or should have known that the value of the Washing Machines it was selling to consumers was significantly inflated by its misrepresentations and misleading information concerning those machines. If Plaintiff and other Class members had known about the Design Defects affecting the Washing Machines, they would not have paid the significant sums – often more than $1,000 per machine – that they paid for the Machines.

38.     As a result of the mold and/or mildew odor that permeates items "washed" in the Machines, many consumers have been forced to re-wash or even replace clothes, towels, and other items that have been ruined by the Design Defects in the Washing Machines.

39.     GE has profited, either directly or indirectly, by concealing the true nature of the Design Defects and misrepresenting the cause of the Mold Problems associated with the defects, which has enabled it to

    a.   sell the Washing Machines at premium prices;

    b.   profit on repair services and parts purportedly used to fix the Mold Problems; and

    c.   sell Tide Washing Machine-related products, which it misrepresented as capable of addressing and resolving the Mold Problems arising from the Design Defects.

In fact, GE has no effective remedy for the Design Defects and Mold Problems and has taken no action to correct the defects.

40.     As a result of GE's false and misleading statements and concealment, and GE's other misconduct described in this Complaint, Plaintiff and the Class bought tens of thousands of Washing Machines and have suffered – and continue to suffer – injury as a result of the defective nature of these Washing Machines and as a result of GE's misconduct.

41.     Far from being an innocuous or isolated defect of problem, in addition to Plaintiff, upon information and belief, thousands of other Washing Machine purchasers have complained

Exhibit____11___ Pg. _219_

directly and indirectly to GE and its authorized dealers and service personnel and on internet websites about the Design Defects and Mold Problems with the Machines.

42.     As a result of the avalanche of consumer complaints regarding the defects that GE would not and/or could not remedy, several companies and entrepreneurs created and marketed products designed to treat, eliminate, and/or minimize the Mold Problems caused by the Design Defects in the Washing Machines.   These products include, among others, SmellyWasher, NuFreshNow, Affresh, Clorox Washing Machine Cleaner, and Tide Washing Machine Cleaner. Due to the widespread and intractable nature of the Mold Problems, consumers have purchased tens of thousands of units of these products.

43.     Reflecting its knowledge that the Design Defects resulted in serious Mold Problems in the Washing Machines, GE sells Tide Washing Machine Cleaner on its website, as shown in the following picture.   Despite the representations on GE's website and from other media, Proctor & Gamble's Tide Washing Machine Cleaner fails to prevent and/or fix the Mold Problems experienced by Plaintiffs and other Class members.



44.    Upon information and belief, GE developed a new line of high-efficiency top-loading washers known as the GE Profile Harmony™ Topload Washer due, in part, to the Design Defects and Mold Problems.

45.    Despite having repeated notice of the above-described Design Defects and Mold Problems in the Washing Machines and despite the reasonable expectations of consumers created

12

Exhibit 4 Pg. 221

by GE's marketing of its Washing Machines, GE has engaged in the following routine, albeit wrongful course of conduct, where GE:

    a.   designed, manufactured and sold Washing Machines with Design Defects that cause Mold Problems;

    b.   failed to disclose that the Washing Machines had Design Defects that cause Mold Problems;

    c.   continued to represent expressly or by implication that the Washing Machines that Plaintiffs and Class members purchased were dependable, cost effective, and would provide outstanding cleaning and performance as washing machines when it knew that these statements were false;

    d.   continued to manufacture, market, advertise, distribute, and sell the Washing Machines to consumers when it knew or should have known that the Washing Machines were not dependable and would not withstand normal operation;

    e.   failed to disclose to consumers the substantial risk of Washing Machine failure and the material defects in the Washing Machines;

    f.   failed to disclose the nature of the Design Defects to consumers;

    g.   failed to disclose the many complaints it received from consumers or the high incidence of attempted, but futile, repairs of the Washing Machines;

    h.   failed to implement a recall to adequately announce, remedy, and correct the defects for consumers;

    i.   failed to disclose to consumers that GE was not committed to making effective repairs under its warranties to address Mold Problems;

     j.   failed to take action to correct its omissions or false or misleading express representations about the use, efficacy, qualities, and benefits of its Washing Machines; and

     k.   failed to disclose that despite following the recommended procedures within the GE Owner's Manual & Installation Instructions consumers would still experience Mold Problems.

46.    By engaging in the foregoing course of conduct, GE has caused consumers – including Plaintiff and the Class – to be aggrieved and suffer ascertainable losses in that, among other things, GE's course of conduct systematically:

     a.   caused Plaintiff and the Class members to pay premium prices for a defective product;

     b.   reduced the value of the Washing Machines purchased by Plaintiff and the Class; and

     c.   caused reasonable consumers like Plaintiff and other Class members to spend time and money for attempted repairs and other purported remedies, such as Washing Machine cleaners, of the defects in their Washing Machines that they would not have spent, but for GE's wrongful conduct.

47.    To this day, GE continues to conceal material information from users, consumers, and the public that

     a.  the Washing Machines are inherently defective; and

     b.  the Washing Machines are not of merchantable quality.

48.    Any limitations on remedies contained in GE's express warranties fail of their essential purpose and are unenforceable with respect to the Mold Problems at issue here.  When

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 224 of 309   Page ID
#:2825
Case 2:12-cv-00585-WJM-MF   Document 1-4 Filed 01/31/12   Page 15 of 26 PageID: 15

GE is notified of the Mold Problems, it fails to provide any repairs, replacement of parts, or any

other remedy that adequately addresses the Mold Problems.  For the same reason, to the extent

that there is any notice requirement imposed by law, notice is not required because GE has (and

had) actual knowledge of the Mold Problems and notice to it would be futile (in that GE failed to

provide an effective remedy).

### PLAINTIFF STANLEY FISHMAN'S EXPERIENCE WITH HIS WASHING MACHINE

49.     Plaintiff purchased a Washing Machine for household purposes on or about

November 2006.  He paid approximately $1,000 for the Washing Machine and at all times used

the Washing Machine as instructed by GE's manual or otherwise directed by GE.

Approximately six months after purchasing his Washing Machine, Plaintiff noticed a foul, mold,

or mildew odor emanating from the Washing Machine.  Plaintiff attempted a "BasketClean"

cycle with bleach, but it failed to correct the Mold Problems.

50.     Plaintiff contacted GE so that GE could correct the Mold Problems or instruct

Plaintiff so that he may correct the problems.

51.     Surprisingly, GE recommended to Plaintiff that he leave his Washing Machine

door open between washes to reduce the incidence and affects of the Mold Problem.  Not only

did this recommendation not solve or prevent the problem, it creates a risk of injury to children

and pets and contradicts the instructions for all Washing Machines sold by GE.  Specifically, GE

warns consumers that they should "not leave the washer door open.  An open door could entice

children to hang on the door or crawl inside the washer."  GE Owner's Manual & Installation

Instructions at page 2.  Indeed, at least one child, a four-year old girl, has lost her life by

climbing into a front load washer that her younger brother turned on.  GE has knowledge of the

danger of this recommendation and also realizes that leaving the door open neither corrects the

Design Defects nor solves the Mold Problems.

52.     Plaintiff's Washing Machine continues to suffer from Mold Problems.

53.     GE refused to correct the Mold Problems and instead, provided Plaintiff a check

for $75.00.

## FRAUDULENT CONCEALMENT

54.     The statute of limitations has been tolled by GE's knowing and active

concealment of the fact that the Washing Machines cause Mold Problems.  GE kept Plaintiff

ignorant of vital information essential to the pursuit of his claim, without any fault or lack of

diligence on the part of Plaintiff.  Plaintiff could not have reasonably discovered the fact that his

Washing Machine would experience Mold Problems due to the Design Defects.

55.     GE was and is under a continuous duty to disclose to Plaintiff the true character,

quality, and nature of the Washing Machines.  At all relevant times, and continuing to this day,

GE knowingly, affirmatively, and actively misrepresented and concealed the true character,

quality, and nature of the Washing Machines.  Plaintiff reasonably relied upon GE's affirmative

misrepresentations and knowing, affirmative, and/or active concealment.  Based on the

foregoing, GE is estopped from relying on any statutes of limitation in defense of this action.

## CLASS ACTION ALLEGATIONS

**A.     Definition of the Class**

56.     Plaintiff brings this action on behalf of himself and all other persons similarly

situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

57.     The Classes, of which Plaintiff is a member, that Plaintiff seeks to represent are

defined as follows:

16

Exhibit _____H_____ Pg. ___225___

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 226 of 309   Page ID
Case 2:12-cv-00585-WJM-MF   Document 28  Filed 01/31/12   Page 17 of 26 PageID: 17
#:2827

<u>**Class A**</u>:

All persons who own a Washing Machine for personal, family, or household purposes, and not for resale, in the United States.

<u>**Class B (New Jersey Sub-Class)**</u>:

All persons who own a Washing Machine for personal, family, or household purposes, and not for resale, in New Jersey.

Excluded from the Classes are GE, its affiliates, employees, officers and directors, persons or entities that distribute or sell the Washing Machines, the Judges assigned to this case, and the attorneys of record in this case. Plaintiff reserves the right to amend the Class definitions if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

**B.      Numerosity**

58.      The members of the Classes are so numerous that joinder of all members would be impracticable. GE has sold thousands of Washing Machines throughout the nation. While the precise numbers of members are unknown to Plaintiffs, that information can be ascertained through discovery.

**C.      Commonality**

59.      There are common questions of law and fact that predominate over any questions affecting only individual members of each Class. Those common legal and factual questions, include, but are not limited to the following:

a.      Whether GE Washing Machines contain a common design defect that results in mold or mildew from normal use;

17

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 227 of 309   Page ID
Case 2:12-cv-00585-WJM-MF   Document 28   Filed 01/31/12   Page 18 of 26 PageID: 18
#: 2828

    b.  Whether GE knew or should have known that the Washing Machines are not dependable and/or not suitable for use as home washing machines;

    c.  Whether GE concealed from and/or failed to disclose to Plaintiff and putative Class material facts;

    d.  Whether GE engaged in unfair or deceptive acts and/or practices when it failed or omitted to disclose the unreliability of, and/or design defect inherent in, GE Washing Machines;

    e.  Whether GE's actions violated the New Jersey Consumer Fraud Act;

    f.  Whether GE is/was unjustly enriched; and

    g.  Whether Plaintiff and the Class have been damaged, and if so, what is the proper measure of such damages?

**D.**    **Typicality**

60.    Plaintiff has the same interests in this matter as all other members of the Class. Plaintiff and all Class members have been injured by the same wrongful practices of GE.

61.    Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of all Class members and are based on the same legal theories.

**E.**    **Adequacy**

62.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Neither Plaintiff nor his counsel have any interests contrary to or conflicting with the Classes.

**F.**    **The Prerequisites of Rule 23(b)(2) are Satisfied**

63.    The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Rule 23(b)(2) exist as Defendant has acted or refused to act on grounds generally

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 228 of 309   Page ID
#:2829
Case 2:12-cv-00585-WJM-MF   Document 1   Filed 01/31/12   Page 19 of 26 PageID: 19

applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

64.     The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendant.  For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal.   Individual actions may, as a practical matter, be dispositive of the interest of Class members, who would not be parties to those actions.

65.     Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seek, *inter alia*, equitable remedies with respect to the Class as a whole.

66.     Defendant's systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

**G.     The Prerequisites of Rule 23(b)(3) are Satisfied**

67.     This case satisfies the prerequisites of Rule 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.

68.     Plaintiff does not anticipate any difficulty in the management of this litigation.

69.     GE has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

Exhibit _11_ Pg. _228_

70.     This action will be prosecuted in a fashion to ensure the Court's able management

of this case as a class action on behalf of the Class defined above.

## COUNT I

### (Violation of New Jersey Consumer Fraud Act)

71.     Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set

forth herein.

72.     At all times relevant hereto there was in full force and effect the New Jersey

Consumer Fraud Act (NJCFA), N.J.S.A. 56:8-1 *et seq.*, which was enacted and designed to

protect consumers against unfair, deceptive, or fraudulent business practices.

73.     N.J.S.A. 56:8-2 provides:

> The act, use or employment by any person of any unconscionable commercial
>
> practice, deception, fraud, false pretense, false promise, misrepresentation, or the
>
> knowing, concealment, suppression, or omission of any material fact…whether or
>
> not any person has in fact been misled, deceived or damaged thereby, is declared
>
> to be an unlawful practice.

74.     At all relevant times, Plaintiff, Class members and GE were "persons" within the

meaning of N.J.S.A. 56:8-1.

75.     The Washing Machines sold by GE are merchandise within the meaning of the

NJCFA, and Plaintiff and Class members are consumers within the meaning of the NJCFA and

entitled to the statutory remedies made available in the NJCFA.

76.     GE has violated the NJCFA through the sale of its Washing Machines, *inter alia*,

by selling said machines with the Design Defects that cause the Mold Problems and failing to

disclose and/or concealing the Design Defects and Mold Problems from Plaintiff and Class members.

77.    GE intended that Plaintiff and the Class would, in the absence of disclosure and due to its misrepresentations and omissions, purchase Washing Machines while unaware of the Design Defects and Mold Problems described above.  This conduct constitutes consumer fraud within the meaning of the NJCFA.

78.    GE's conduct constitutes unlawful, unfair and deceptive business practices within the meaning of the NJCFA.

79.    Defendant's conduct has proximately caused damage to Plaintiff and Class members to suffer an ascertainable loss in an amount to be proven at trial.

## COUNT II

### (Breach of Express Warranty)

80.    Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

81.    GE made affirmations of fact and promises to Plaintiff and members of the Classes that related to the Washing Machines as more fully described herein.

82.    GE's affirmations of fact and promises became part of the basis of the bargain between the parties.

83.    These affirmations of fact and promises created an express warranty that the Washing Machines would conform to GE's affirmations and promises.

84.    GE uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from serious defects

and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

85.    GE is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Plaintiff and members of the Class.

86.    GE has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition that does not meet the warranty and obligations undertaken by GE and by failing to repair or replace the defects and/or defective parts.

87.    As set forth above, GE's warranty fails in its essential purpose and, accordingly, Plaintiff and members of the Classes cannot and should not be limited to the remedies set forth in GE's written warranty and, instead, should be permitted to recover all measure of appropriate relief.

88.    GE has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and GE's knowledge of the defects in the Washing Machines.  GE has failed and refused to honor its warranty, even though it knows of the defects inherent in the Washing Machines.

89.    Plaintiff and members of the Classes have given GE a reasonable opportunity to cure its failures with respect to its warranty, and GE has failed to do so.

90.    GE has failed to provide Plaintiff and members of the Classes, as a warranty repair and/or replacement, a product that conforms to the qualities and characteristics that GE expressly warranted when it sold the Washing Machines to Plaintiff and members of the Classes.

91.    As a result of GE's breach of express warranty, Plaintiff and members of the Classes have suffered damages in an amount to be determined at trial.

### COUNT III

Exhibit _11_ Pg. _231_

**(Breach of Implied Warranty of Merchantability)**

92.     Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

93.     GE is a merchant in the sale of the Washing Machines to Plaintiff and the members of the Classes and the Washing Machines are goods under applicable law.

94.     Plaintiff and members of the Classes are in privity with GE in that they purchased their Washing Machines directly from GE or from an actual or apparent agent of GE such as its authorized dealers.

95.     Plaintiff and members of the Classes are also in privity with GE by virtue of the contractual relationship stemming from GE's manufacturer's warranty provided in conjunction with the purchase of the Washing Machines, which is enforceable by Plaintiff and the members of the Classes as against GE regardless of where, or from whom, the Washing Machines were acquired.

96.     GE, as the manufacturer and seller of the Washing Machines, was obligated to make certain that the Washing Machines were reasonably fit for the purposes for which such products are used, and that the Washing Machines are acceptable in trade for the product description.

97.     Notwithstanding the aforementioned duty, at the time of delivery, the Washing Machines sold to Plaintiff and the Class were not merchantable.

98.     As documented in its own business records and elsewhere, Defendant was aware, or should have known, that that the Washing Machines were not merchantable within a reasonable time after the latent defect manifested itself to Plaintiff and the Class.

Exhibit _H_ Pg. _232_

99.     As a result of the Design Defects, Mold Problems and overall non-merchantability of the Washing Machines described herein, Plaintiff and other members of the Class have sustained damages in an amount to be determined at trial.

## COUNT IV

### (Unjust Enrichment)

100.     Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

101.     This claim is asserted in the alternative on behalf of Plaintiff and the members of the Classes to the extent that the warranties do not govern all of Plaintiff's and Class members' claims or there is any determination that Plaintiff does not have standing to assert any contractual claims against GE because of any alleged absence of contractual privity or otherwise.

102.     Defendant received and retained a benefit conferred by Plaintiff and Class members at their expense through the purchase of GE Washing Machines.

103.     GE has benefitted unjustly at Plaintiff's and Class members' expense.

104.     It would be inequitable and unjust for GE to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

105.     Plaintiffs and Class members have no adequate remedy at law because of GE's conduct.

106.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class members have suffered non-monetary and monetary injury.

107.     Plaintiff and the members of the Classes seek restitution from GE and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by GE

from its wrongful conduct and establishment of a constructive trust from which Plaintiff and

members of the Classes may seek restitution.

WHEREFORE, Plaintiff, individually and on behalf of the Classes described herein, pray

for judgment against GE as follows:

A.   For an Order certifying the Classes under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), appointing Plaintiff as Class representative, and appointing the lawyers and law firms representing Plaintiff as Class Counsel.;

B.   Entering judgment in favor of Plaintiff and the members of the Class and against Defendant;

C.   For all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Classes;

D.   For both pre-judgment and post-judgment interest on any amounts awarded;

E.   For appropriate injunctive relief;

F.   For payment of attorneys' fees and costs; and

H.   For such other and further relief as the Court deems proper.

CARELLA, BYRNE, CECCHI,
 OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiffs

By:___/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated: January 31, 2012

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all claims so triable.

> CARELLA, BYRNE, CECCHI,
>  OLSTEIN, BRODY & AGNELLO, P.C.
> Attorneys for Plaintiffs
>
> By:____/s/ James E. Cecchi_____
>      JAMES E. CECCHI

Dated: January 31, 2012

# EXHIBIT I

Exhibit _I_ Pg. _236_

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Jonathan Shub
Scott Alan George
SEEGER WEISS LLC
1515 Market St., Suite 1380
Philadelphia, Pennsylvania 19102
(215) 564-2300

Jamie E. Weiss
Julie D. Miller
COMPLEX LITIGATION GROUP LLC
513 Central Ave.
Suite 300
Highland Park, Illinois 60035

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAISY MONTICH, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff<br><br>   v.<br><br>MIELE USA, INC.,<br><br>                       Defendant. | Civil Action No. 11-2725(FLW)(DEA)<br><br><br>**AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Daisy Montich, individually and on behalf of all others similarly situated, complains against defendant Miele USA. ("Miele" or "Defendant"), upon personal knowledge as to herself and own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by her attorneys, as follows:

### OVERVIEW OF THE ACTION

1.     This is a proposed class action brought by Plaintiff individually and on behalf of a proposed Class of consumers of Miele front load washing machines (collectively, "Machines" or

Exhibit___*I*___ Pg. _237_

"Miele Washing Machines"), as defined more fully herein, which were purchased by Plaintiff and the putative class.

2.      This action arises from the sale of Miele Washing Machines that Miele knew or should have known contained a design flaw and/or defect, which results in the Machines exhibiting mold and/or mildew under normal use.

3.      Miele's conduct gives rise to Plaintiff's claims for violation of state consumer protection laws, breach of implied warranty, and unjust enrichment.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).  This is a class action involving more than 100 class members.  At least one member of the Class is a citizen of a State different from defendant, and the amount in controversy, in the aggregate, exceeds the sum of $5,000,000.00 exclusive of interest and costs.

5.      Venue is proper under 28 U.S.C. § 1391.  Defendant conducts substantial business in this District.  Defendant is headquartered in New Jersey, transacts business in New Jersey and committed illegal acts in, maintains agents or representatives in, and is otherwise found in this District.  Defendant regularly and continuously conducts business in interstate commerce that is carried out in part in this District.

## PARTIES

6.      Plaintiff Daisy Montich is a citizen of California, and resides in Torrance, California.  On or about July 27, 2007, Plaintiff purchased a Miele Washing Machine from a Ferguson Enterprises, Inc. store in California and took delivery of the Machine on or about September 25, 2007.  Within one year of delivery, Plaintiff began to experience mold, mildew

Exhibit  _I_  Pg. _238_

and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Washing Machine.

7.     Defendant Miele USA, Inc. is a Delaware corporation with its principal place of business at 9 Independence Way, Princeton, New Jersey 08540.  Miele manufactures thousands of washing machines each year, a substantial portion of which are sold or offered for sale in New Jersey.  Miele has sold, either directly or indirectly, thousands of its defective Washing Machines nationwide and in the State of New Jersey.

**FACTS**

**<u>Miele Washing Machines</u>**

8.     Defendant marketed and sold a line of front-loading washers, the Miele Washing Machines, throughout the United States.  The machines are used primarily for consumer and household purposes.  Miele sold the machines as part of its trade or business.

9.     Defendant marketed Miele Washing Machines as a product that saved energy and water while providing outstanding cleaning and dependability, and consumers paid a premium for the machines, which were priced at the top of the washing machine market.  Consumers often paid in excess of $1,700.00 for a Machine.

10.     Defendant provided an express warranty with Machines that guaranteed, for the first year from the date of purchase, free replacement of parts without labor charge.

11.     The Machines contain a common design defect that causes them to develop mold and/or mildew with normal use.  On information and belief, the Machine suffers from a common design defect that prevents proper water drainage failure, particularly at the door seal, which design defect manifests itself by exhibiting mold and/or mildew.  Consequently, the Machines otherwise do not perform as durable and dependable washing machines.

3

Exhibit _I_  Pg. _239_

12.     The Machines as designed do not perform in accordance with the reasonable expectations of Plaintiff and Class members.

13.     On information and belief, Defendant has received a significant number of complaints regarding performance of the Machines, and in particular, problems regarding mold and mildew.

14.     The inability of the Miele Washing Machines to properly drain, especially the door seal, is due to a common design defect.  Miele knew, or should have known, of the design defect at the time it sold the Machines.

15.     The development of mold and mildew in a washing machine is a material fact that any consumer would consider in selecting a machine for purchase as are the economic benefits of dependability, durability and efficiency/conservation when paying a premium price for a top-tier machine, like those manufactured and sold by Miele.

16.     At no time has Miele disclosed the design defect to purchasers of Miele washing machine or to the general public, who would not otherwise know of the defect.  On information and belief, Miele actively concealed the existence of the defect, even when purchasers began contacting Miele about the development of mold and mildew in their machines.

17.     As a result of Defendant's failures and misconduct as detailed herein, Plaintiff and the proposed Class members have been damaged.

### Named Plaintiff's Facts

18.     On or about July 27, 2007, Plaintiff purchased a Miele Washing Machine for approximately $1,799.  Plaintiff used the washer for normal home use.

19.     Plaintiff was unaware of the defect in the Miele Washing Machine before her purchase.  Rather, given marketing and other materials about the Miele washing machines she

4

Exhibit ___I___ Pg. _240_

had read and to which she had been exposed prior to her purchase of a Miele washing machine,

she expected to purchase a washing machine that saved energy and water while providing

outstanding cleaning and dependability, including a long useful life.  Such qualities were

material to and played a substantial part in her decision to purchase a Miele washing machine.

Indeed, she paid more for the Miele washing machine expecting that it would meet such

expectations, and was unaware of the defect which Miele omitted from these materials and

concealed from the public.

      20.     Starting around the summer of 2008, Plaintiff began experiencing problems with

her Miele Washing Machine, specifically the machine began to have a mildew/mold odor.

Additionally, her laundry had a mildew odor on it after being washed in the Miele Washing

Machine.

      21.     Plaintiff regularly leaves the door open on her Washing Machine.

      22.     Plaintiff contacted Defendant about this problem, but Defendant continued its

active concealment of the defect in its machines.  Defendant sent her a Descaler to run in the

machine on an empty cycle to allegedly remediate the mold/mildew problem.  Plaintiff continues

to have a mold/mildew odor issue even after use of the Descaler.

      23.     If Plaintiff had known about the defect in the Miele Washing Machine (which

Miele actively concealed) when she was shopping for a washing machine, she would not have

purchased a Miele and certainly would not have paid the premium price that she did for the

Miele Washing Machine.

Exhibit _I_ Pg. _241_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 242 of 309   Page ID
Case 3:11-cv-02725-FLW-DEA   Document 23   Filed 04/16/12   Page 6 of 18 PageID: 240
#2843

## CLASS ACTION ALLEGATIONS

### A.     Definition of the Class

24.     Plaintiff brings all claims herein as class claims pursuant to Fed. R. Civ. P. 23.

The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the classes

defined below, of which Plaintiff is a member:

> Class A:
>
> All persons and entities who own a Miele Washing Machine
>
> Class B (Multi-State Sub-Class):
>
> All persons and entities in New Jersey, California, Florida, Illinois,
> Maryland, Michigan, Minnesota, Missouri, New York, Wisconsin
> and Washington who own a Miele Washing Machine

25.     The class/es (collectively, "class") may be modified pending discovery. Excluded

from the Class are members of the judiciary, Defendants, any entity in which they have a

controlling interest, and their officers and directors and the members of their immediate families.

### B.     Numerosity

26.     At this time, Plaintiff does not know the exact size of the Class; however, due to

the nature of the trade and commerce involved, Plaintiff believes that the Class members are so

numerous that joinder of all members is impracticable.  The number of Class members can be

determined through appropriate discovery.

### C.     Commonality

27.     There are questions of law or fact common to the Class, including at least the

following:

> (a)  Whether Miele Washing Machines contain a common design defect that
>      results in mold or mildew from normal use;

6

(b)   Whether Defendant knew or should have known that Miele Washing Machines are not dependable and/or not suitable for use as home washing machines;

(c)   Whether Defendant concealed from and/or failed to disclose to Plaintiff and putative Class material facts;

(d)   Whether Defendant engaged in unfair or deceptive acts and/or practices when it failed or omitted to disclose the unreliability of, and/or design defect inherent in, Miele Washing Machines;

(e)   Whether Defendant's actions violated the New Jersey Consumer Protection Act, and/or consumer protection laws of various states;

(f)   Whether Defendant is/was unjustly enriched;

(g)   Whether Declaratory Relief is appropriate; and

(h)   Whether Plaintiff and the Class have been damaged, and if so, what is the proper measure of such damages?

**D.      Typicality**

28.      Plaintiff has the same interests in this matter as all other members of the Class, and her claim is typical of all members of the Class.

**E.      Adequacy**

29.      Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiff will fairly and adequately represent the interests of the Class members and do not have interests adverse to the Class.

**F.      The Prerequisites of Rule 23(b)(2) are Satisfied**

30.      The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

7

31.     The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendant.  For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal.   Individual actions may, as a practical matter, be dispositive of the interest of Class members, who would not be parties to those actions.

32.     Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

33.     Defendant's systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

**G.      The Prerequisites of Rule 23(b)(3) are Satisfied**

34.     This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.  This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class defined above.

8

Exhibit ___*I*___ Pg. _244_

**COUNT I**
**Brought on Behalf of Class B**
**(Cal. Bus. & Prof. Code § 17200 *et seq.* and substantially similar consumer protection
laws[1])**

35.     Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set

forth herein.

36.     Defendant has engaged in unfair, unlawful, and fraudulent business acts or

practices as set forth above.

37.     Defendant's conduct constitutes unfair business acts and/or practices because

Defendant's actions have caused and are likely to cause substantial injury to Plaintiff and other

purchasers of its washing machines, which injury is not reasonably avoidable by Plaintiff and

other purchasers in light of Defendant's exclusive knowledge of the defect in the Washing

Machines, and is not outweighed by the acts' and practices' benefits, if any, to Plaintiff and other

purchasers.

38.     Such conduct is ongoing and continues to this date.

39.     Defendant's acts and practices of selling washing machines while omitting and

concealing the material fact that these machines have a high propensity to develop mold and/or

mildew in the usual course of regular use offends an established public policy or are immoral,

unethical, oppressive, unscrupulous or substantially injurious to consumers.  Furthermore, these

acts and practices threaten an incipient violation of consumer protection statutes or violate the

policy and spirit of such laws because the effect of the acts and practices are comparable to or the

same as a violation of the law or otherwise significantly threaten or harm competition.

---

[1]     *See* e.g., Fla. Stat. Ann. § 501.201 *et seq.* (Florida); 815 ILCS § 505/1 *et seq.* (Illinois); Md. Code
Ann., Com. Law § 13-101 *et seq.* (Maryland); Mich. Stat. Ann. § 19.418(1) *et seq.* (Michigan); Minn.
Stat. § 8.31 *et seq.* (Minnesota); Mo. Rev. Stat. § 407.010 *et seq.* (Missouri);  N.J.S.A. 56:8-1 *et seq.*
(New Jersey); N.Y. Gen. Bus. Law. § 349 *et seq.* (New York); Wash. Rev. Code § 19.86.010 *et seq.*
(Washington); Wis. Stat. § 100.18 *et seq.* (Wisconsin).

Exhibit    *I*    Pg. 245

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 246 of 309   Page ID
#:2847
Case 3:11-cv-02725-FLW-DEA   Document 35   Filed 04/16/12   Page 10 of 18 PageID: 244

40.     Defendant's omissions and misrepresentations are anticompetitive because consumers are lured into buying Defendant's washing machines when, had they been made aware of the true facts, they would have bought a different machine, such as a traditional or high-efficiency top loading washing machine or other alternatives.

41.     Defendant's acts and practices are unlawful because they violated California Civ. Code. §§ 1668, 1709, 1710, and 1711.  Defendant's acts and practices are also unlawful because they violated the Cal. Comm. Code § 2313, Bus. & Prof. Code § 17500, and the common law as alleged throughout this complaint in an the claims for relief that follow.

    i.  Defendant violated Civ. Code  § 1668 by attempting to exempt itself from liability for selling defective washers and by unlawfully limiting the warranty period of the washers it knows to be defective.

    ii.  Defendant violates Civ. Code §§ 1709, 1710, and 1711 by not disclosing to the public the material fact that the washing machines have a high propensity to develop mold and/or mildew. Defendant knowingly or recklessly conceals this fact.   Plaintiff and other purchasers were not aware of this fact and would not have purchased the Miele Washing Machines had they known of the defect.  As a result, Plaintiff and other purchasers lost money by overpaying for the Miele Washing Machines.

42.     Defendant's acts and practices are fraudulent in that they have deceived and/or are likely to deceive Plaintiffs and other purchasers.  Defendant knowingly sold Plaintiff and others washing machines essentially unusable for the purposes for which they were purchased.

43.     Plaintiff and other purchasers relied upon Defendant's unfair, unlawful, and fraudulent business acts and practices – the material misrepresentations, omissions, and non-

10

Exhibit _I_ Pg. _246_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 247 of 309   Page ID
#:2648
Case 3:11-cv-02725-FLW-DEA   Document 26   Filed 04/16/12   Page 11 of 18 PageID: 245

disclosures – to their detriment in that they would not have purchased the washers had they
known the true facts.

44.     Plaintiff and other purchasers have suffered injury in fact and have lost money as
a result of Defendant's unfair competition in that they have overpaid for the Miele Washing
Machines, incurred expenses in attempting to repair these machines or remedy the mold and/or
mildew, and/or would not have purchased a Miele Washing Machine had Defendant not
misrepresented and omitted disclosing the fact that these machines have a propensity to develop
mold and/or mildew.

WHEREFORE, Plaintiff, individually and on behalf of the Class of persons described
herein, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action
set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class
defined herein;

B.     Designating Plaintiff as representative of the Class and her counsel as Class
counsel;

C.     Entering judgment in favor or Plaintiff and the Class and against Defendant;

D.     Awarding Plaintiff and Class members their individual damages and attorneys'
fees and allowing costs, including interest thereon;

E.     Imposing a constructive trust on amounts wrongfully collected from Plaintiff and
the Class members pending resolution of their claims herein;

F.     Compelling Defendant to establish a program to inspect, repair and replace
defective Miele Washing Machines;

G.     Compelling Defendant to establish a program to reimburse its warranty claims
denied or paid in part, reimburse Miele customers who have had to pay to repair
and/or replace defective Miele Washing Machines, reimburse customers who
have purchased extended warranties; and

H.     Granting such further relief as the Court deems just.

Exhibit __I__ Pg. _247_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 248 of 309   Page ID
Case 3:11-cv-02725-FLW-DEA   Document 25-4   Filed 04/16/12   Page 12 of 18 PageID: 246
#:2649

**COUNT II**
**Brought on Behalf of Class B**
**(Violation of Cal. Bus. & Prof. Code § 17500 *et seq.* and substantially similar consumer protection laws[2])**

45.     Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

46.     Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

47.     Defendant falsely advertised the performance, uses, benefits, characteristics, quality, grade and standard of its washing machines by, *inter alia*, representing that these machines were "washers" or "washing machines" as that tern and phrase are normally understood, and by otherwise representing that the washing machines  were machines that saved energy and water while providing outstanding cleaning and dependability.

48.     Defendant also falsely advertised by failing to disclose (and actively concealed) the defect and the material fact that its machines would accumulate mold and/or mildew through regular operation and normal use.

49.     These and other representations and omissions did deceive and are likely to deceive Plaintiff and other consumers.

50.     Plaintiff and other consumers relied upon these material misrepresentations and omissions to their detriment in that  they would not have purchased the washers had they known the true facts.

51.     The false and  misleading advertising conducted by Defendant continues to this day and presents a threat to the general public in that Defendant has not acknowledged it wrongdoing to consumers or publicly issued an appropriate conspicuous notice to existing or prospective purchasers of its washing machines.

---

[2]     *See* note 1.

Exhibit *I* Pg. *248*

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 249 of 309   Page ID
#:2950
Case 3:11-cv-02725-FLW-DEA   Document 6   Filed 04/16/12   Page 13 of 18 PageID: 247

52.    As a result of the above, Defendant has been, and will continue to be, unjustly

enriched at the expense of Plaintiff and other consumers.

53.    Defendant's conduct has proximately caused damage to Plaintiff and Class

members in an amount to be proven at trial.

WHEREFORE, Plaintiff, individually and on behalf of the Class of persons described

herein, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action
set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class
defined herein;

B.    Designating Plaintiff as representative of the Class and her counsel as Class
counsel;

C.    Entering judgment in favor or Plaintiff and the Class and against Defendant;

D.    Awarding Plaintiff and Class members their individual damages and attorneys'
fees and allowing costs, including interest thereon;

E.    Imposing a constructive trust on amounts wrongfully collected from Plaintiff and
the Class members pending resolution of their claims herein;

F.    Compelling Defendant to establish a program to inspect, repair and replace
defective Miele Washing Machines;

G.    Compelling Defendant to establish a program to reimburse its warranty claims
denied or paid in part, reimburse Miele customers who have had to pay to repair
and/or replace defective Miele Washing Machines, reimburse customers who
have purchased extended warranties; and

H.    Granting such further relief as the Court deems just.

## COUNT III
### Brought on Behalf of Class A, or Alternatively, Class B
### (Breach of Implied Warranty of Merchantability)

54.    Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set

forth herein.

13



Exhibit ___I___ Pg. ___249___

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 250 of 309   Page ID
#:2851
Case 3:11-cv-02725-FLW-DEA   Document 28   Filed 04/16/12   Page 14 of 18 PageID: 248

55.     At all times relevant hereto, there was duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used, and that product be acceptable in trade for the product description.

56.     Notwithstanding the aforementioned duty, at the time of delivery, Miele Washing Machines sold to Plaintiff and the Class were not merchantable.

57.     As documented in its own business records and elsewhere, Defendant was notified that the Miele Washing Machines were not merchantable with a reasonable time after the latent defect manifested itself to Plaintiff and the Class.

58.     As a result of the non-merchantability of the Miele Washing Machines described herein, Plaintiff and other members of the Class sustained a loss or damages.

WHEREFORE, Plaintiff, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class defined herein;

B.     Designating Plaintiff as representative of the Class and her counsel as Class counsel;

C.     Entering judgment in favor or Plaintiff and the Class and against Defendant;

D.     Awarding Plaintiff and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.     Imposing a constructive trust on amounts wrongfully collected from Plaintiff and the Class members pending resolution of their claims herein;

F.     Compelling Defendant to establish a program to inspect, repair and replace defective Miele Washing Machines;

G.     Compelling Defendant to establish a program to reimburse its warranty claims denied or paid in part, reimburse Miele customers who have had to pay to repair and/or replace defective Miele Washing Machines, reimburse customers who have purchased extended warranties; and

14

Exhibit _I_ Pg._250_

H.     Granting such further relief as the Court deems just.

**COUNT IV**
**Brought on Behalf of Class A**
**(Unjust Enrichment (Alternative Count))**

59.     Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

60.     Defendant received and retained a benefit conferred by Plaintiff and Class Members at their expense through the purchase of Miele Washing Machines.

61.     As hereinabove alleged, Miele has benefited unjustly at Plaintiff's and Class Members' expense, which in equity and good conscience, Miele should not be permitted to retain.

62.     Plaintiffs and Class Members have no adequate remedy at law because of Miele's conduct.

63.     Under the circumstances, where Defendant has reaped these benefits by misleading the Class as to the fitness of the washing machines and failing to disclose that there was a substantial risk of mold or mildew that far exceeded the risk of such defect normally associated with similar consumer products; and that mold or mildew was not covered under the warranty, it is inequitable for Defendant to retain these benefits at the expense of Plaintiff and the Class.

64.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class members have suffered non-monetary and monetary injury.

65.     Plaintiff seeks to obtain a pecuniary benefit for the Class in the form of all reimbursement, restitution and disgorgement from Defendant.

15

Exhibit _I_ Pg. _251_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 252 of 309   Page ID
#:2853
Case 3:11-cv-02725-FLW-DEA   Document 38   Filed 04/16/12   Page 16 of 18 PageID: 250

WHEREFORE, Plaintiff, individually and on behalf of the Class of persons described

herein, pray for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action
    set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class
    defined herein;

B.  Designating Plaintiff as representative of the Class and her counsel as Class
    counsel;

C.  Entering judgment in favor or Plaintiff and the Class and against Defendant;

D.  Awarding Plaintiff and Class members their individual damages and attorneys'
    fees and allowing costs, including interest thereon;

E.  Imposing a constructive trust on amounts wrongfully collected from Plaintiff and
    the Class members pending resolution of their claims herein;

F.  Compelling Defendant to establish a program to inspect, repair and replace
    defective Miele Washing Machines;

G.  Compelling Defendant to establish a program to reimburse its warranty claims
    denied or paid in part, reimburse Miele customers who have had to pay to repair
    and/or replace defective Miele Washing Machines, reimburse customers who
    have purchased extended warranties; and

H.  Granting such further relief as the Court deems just.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiffs

By:  /s/ James E. Cecchi
     JAMES E. CECCHI

Dated: April 16, 2012

Jamie E. Weiss
Julie D. Miller
COMPLEX LITIGATION GROUP LLC
513 Central Ave.
Suite 300
Highland Park, Illinois 60035

Jonathan Shub
Scott Alan George
SEEGER WEISS LLC

Case 8:10-cv-00711-DOC-AN Document 102 Filed 07/11/12 Page 253 of 309 Page ID
#:2854
Case 3:11-cv-02725-FLW-DEA Document 25 Filed 04/16/12 Page 17 of 18 PageID: 251

1515 Market St., Suite 1380
Philadelphia, Pennsylvania 19102
(215) 564-2300

Richard J. Burke
COMPLEX LITIGATION GROUP LLC
1010 Market Street
Suite 650
St. Louis, Missouri 63101
(314) 621-8647

17

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 254 of 309   Page ID
#:2855
Case 3:11-cv-02725-FLW-DEA   Document 35   Filed 04/16/12   Page 18 of 18 PageID: 252

**DEMAND FOR JURY TRIAL**

The undersigned hereby demands a trial by jury as to all claims so triable.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C

Attorneys for Plaintiffs

By:     /s/ James E. Cecchi
JAMES E. CECCHI

Dated: April 16, 2012

Jamie E. Weiss
Julie D. Miller
COMPLEX LITIGATION GROUP LLC
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
(847) 433-4500

Jonathan Shub
Scott Alan George
SEEGER WEISS LLC
1515 Market St., Suite 1380
Philadelphia, Pennsylvania 19102
(215) 564-2300

Richard J. Burke
COMPLEX LITIGATION GROUP LLC
1010 Market Street, Suite 650
St. Louis, Missouri  63101
(314) 621-8647

Exhibit____I____ Pg. 254

# EXHIBIT J

Exhibit __J__ Pg. _255_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 256 of 309   Page ID
Case 2:08-cv-00051-FSH-MAH   Document 33-7   Filed 05/06/08   Page 1 of 54 PageID: 300
#:3857

James C. Shah
Natalie Finkelman Bennett
Nathan C. Zipperian
Shepherd, Finkelman, Miller & Shah, LLP
475 White Horse Pike
Collingswood, NJ 08107                    **DOCUMENT ELECTRONICALLY FILED**
Telephone: (856) 858-1770
Facsimile: (856) 858-7012
jshah@sfmslaw.com
nfinkelman@sfmslaw.com
nzipperian@sfmslaw.com

**Counsel for Plaintiffs and the Class**

**(Additional Counsel appear on the signature page)**


### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY


IN RE LG FRONT LOAD WASHING     :
MACHINE CLASS ACTION            :     Case No. 2:08-cv-00051-FSH-MAS
LITIGATION                      :
_____ :


## CONSOLIDATED AMENDED COMPLAINT

Plaintiffs, Ralph Ashe ("Ashe"), Lyla Boone ("Boone"), Jill Burke ("Burke"), Mark Cook

("Cook"), Paula Cook-Sommer ("Sommer"), Richard Demski ("Demski"), Marcia Figueroa

("Figueroa"), Mike Franko ("Franko"), Glenn and Lori Grosso ("Grosso"), Cheryl Harder

("Harder"), Jason and Gina Harper ("Harper"), Cristen Irving ("Irving"), Cindy Launch

("Launch"), Edward Manzello ("Manzello"), James and Wendy McClure ("McClure"), Jill

Olejniczak ("Olejniczak"), Kim Scalise ("Scalise"), Ann Trethewey ("Trethewey"), Nancy

Vanasse ("Vanasse"), and Jonathan and Carolyn Zimmerman ("Zimmerman") by and through

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 257 of 309   Page ID
Case 2:08-cv-00051-FSH-MAH   Document 58   Filed 05/06/08   Page 2 of 54 PageID: 301
#2858

their undersigned counsel, on behalf of themselves and all other persons and entities similarly

situated, allege the following facts and claims upon knowledge as to matters relating to

themselves and upon information and belief as to all other matters and, by way of this

Consolidated Amended Complaint ("Complaint"), aver as follows:

## INTRODUCTION

1.      Plaintiffs bring this class action on behalf of themselves and all others similarly

situated against Defendant, LG Electronics USA, Inc. ("Defendant" or "LG"), seeking damages

and injunctive relief for the proposed Classes as defined herein.

2.      This action is brought to remedy violations of applicable law in connection with

Defendant's design, manufacture, sale and servicing of its Front-Loading Automatic Washers

(the "Washing Machines" or "Machines").  The Machines have inherent design defects that cause

them to (a) accumulate mold, mildew or  similar residue within the Washing Machines; (b)

produce foul and noxious odor that escapes from the Washing Machines; (c) produce mold,

mildew and/or foul odor on clothes washed in the Machines; and (d) be unusable for the ordinary

purpose which the Washing Machines were sold.

3.      Plaintiffs assert claims on behalf of themselves and a nationwide class under the

New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* ("CFA") or,  in the alternative, state

law claims under other similar consumer protection statutes of other states.  Plaintiffs also assert

claims on behalf of themselves and a nationwide class for violation of the Magnuson-Moss

Warranty Act, 15 U.S.C. §2301, *et seq.* ("Magnuson-Moss Act"), and claims on behalf of

themselves and a nationwide class for breach of express and implied warranty and unjust

enrichment  under New Jersey law, and, in the alternative, under the laws of the states of

2

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 258 of 309   Page ID
#:2959
Case 2:08-cv-00051-FSH-MAH   Document 31-5   Filed 05/06/08   Page 3 of 54 PageID: 302

purchase.

## THE PARTIES

### PLAINTIFFS

4.     Plaintiff Ashe is a citizen of New Jersey, and resides in Thorofare, New Jersey.
On or about October 23, 2005, Plaintiff purchased a LG Washing Machine from a Home Depot
store in New Jersey and took delivery of the Machine on or about October 30, 2005.  Within one
year of delivery, Plaintiff began to experience mold, mildew and/or foul odor accumulation in the
Washing Machine and on clothes and other items washed in the Washing Machine.

5.     Plaintiff Boone is a citizen of California and resides in Redding, California.  In or
about December 2005, Plaintiff purchased a LG Washing Machine in California and took
delivery of the Machine on or about January 2, 2006.  Plaintiff began to experience mold, mildew
and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in
the Machine after only seven months of use.  Plaintiff promptly contacted LG concerning the
problem with the mold, mildew and/or foul odors in her Machine.

6.     Plaintiff Burke is a citizen of New York and resides in Manorville, New York.
Plaintiff purchased a LG Washing Machine in New York in May 2005.  Plaintiff began to
experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes
and other items washed in the Machine) within approximately one year of purchase.  In
approximately July 2006, the Machine produced mold, mildew and/or foul odors on a regular
basis.  Plaintiff arranged for the repair of her Washing Machine pursuant to her extended
warranty in February 2007.  The repair person was unable to fix the Machine so that the mold,
mildew and/or foul odors would not return.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 259 of 309   Page ID
Case 2:08-cv-00051-FSH-MAH   Document 31-60   Filed 05/06/08   Page 4 of 54 PageID: 303
#:2860

7.      Plaintiff Cook is a citizen of Colorado and resides in Littleton, Colorado.  Plaintiff

purchased an LG Washing Machine in Colorado in November 2007.  Plaintiff began to

experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes

and other items washed in the Machine after only about five washes.  Plaintiff promptly

contacted LG, and notified LG again on at least three occasions concerning the problem with the

mold, mildew and/or foul odors in his Machine.  An LG representative also came to Plaintiff's

home in response to his complaints with his Machine.

8.      Plaintiff Cook-Sommer is a citizen of Colorado and resides in Golden, Colorado.

Plaintiff purchased an LG Washing Machine in Colorado in July 2006.  Plaintiff began to

experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes

and other items washed in the Machine after only six months of use.  Plaintiff promptly contacted

Home Depot concerning the problem with the mold, mildew and/or foul odors in her Machine.

9.      Plaintiff Demski is a citizen of Florida and resides in Bradenton, Florida.  On or

about August 19, 2006, while residing in Wisconsin, Plaintiff purchased a LG Washing Machine

in Wisconsin and took delivery of the Machine on or about September 2, 2006.  Within two

months of delivery and while residing in Wisconsin, Plaintiff began to experience mold, mildew

and/or foul odors accumulation in the Washing Machine and on clothes and other items washed

in the Machine.  Plaintiff contacted LG concerning the problem with the mold, mildew and/or

foul odors in his Machine in March 2007.

10.     Plaintiff Figueroa is a citizen of New York and resides in New York.  In or about

February 2005, Plaintiff purchased an LG Washing Machine in New York.  Plaintiff began to

experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 260 of 309   Page ID
#:2861
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 5 of 54 PageID: 304

and other items washed in the Machine no later than approximately eight months after she purchased the Machine. Plaintiff contacted LG concerning the mold, mildew and/or foul odors in her Machine in or about April 2006.

11.    Plaintiff Franko is citizen of Ohio and resides in Broadview Heights, Ohio. In or about June 2006, Plaintiff purchased an LG Washing Machine from a Home Depot in Ohio. Shortly after purchasing the Machine, Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine. Plaintiff promptly contacted Home Depot concerning the mold, mildew and/or foul odors in the Machine.

12.    Plaintiffs Grosso are citizens of Michigan and reside in Grosse Pointe Woods, Michigan. On or about July 19, 2006, Plaintiffs purchased an LG Washing Machine from Best Buy in Michigan and took delivery of the Machine on July 22, 2006. Plaintiffs began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine after several months of use of the Machine. Plaintiffs promptly notified Best Buy about the mold, mildew and/or foul odors in the Machine.

13.    Plaintiff Harder is a citizen of Ohio and resides in Batavia, Ohio. On May 6, 2007, Plaintiff purchased a LG Washing Machine from a Best Buy store in Ohio, and took delivery of the Machine shortly thereafter. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items she had put through the Machine within two months of delivery. Plaintiff contacted LG several times in late Summer/early Fall 2007 concerning the problem with the mold, mildew and/or foul odors in her Machine.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 261 of 309   Page ID
#:2862
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 6 of 54 PageID: 305

14.    Plaintiffs Harper are citizens of Florida and reside in Sarasota, Florida.  On or about April 25, 2006, Plaintiffs purchased an LG Washing Machine in Florida and took delivery on May 20, 2006.  Plaintiffs began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine within one month of using the Machine. Plaintiffs contacted LG concerning the mold, mildew and/or foul odor problem.  In response, LG sent out a repairperson, who was unable to resolve the problem. Plaintiffs subsequently called LG again to complain and left a voicemail message, to which they never received a response.

15.    Plaintiff Irving is a citizen of Connecticut and resides in Ridgefield, Connecticut. On or about July 23, 2006, Plaintiff purchased an LG Washing Machine at a Home Depot store in Connecticut and took delivery of the Machine within a few days.  Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine within a few months of delivery.  Plaintiff promptly contacted LG several times concerning the problem with the mold, mildew and/or foul odors in the Machine.

16.    Plaintiff Launch is a citizen of Florida and resides in Santa Rosa Beach, Florida. On or about June 29, 2006, Plaintiff purchased an LG Washing Machine in Florida and took delivery of the Machine on or about July 1, 2006.  Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine after several months of use of the Machine.  On or about January 25, 2008, Plaintiff wrote to LG advising LG of her problems concerning the mold, mildew and/or foul odors in her Machine.  The next day, Plaintiff called LG concerning the problems with her Washing Machine.

Exhibit ___J___ Pg. _261_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 262 of 309   Page ID
#:2863
Case 2:08-cv-00051-FSH-MAH   Document 31-3   Filed 05/06/08   Page 7 of 54 PageID: 306

17.    Plaintiff Manzello is a citizen of New York and resides in Shoreham, New York. In or about October 2006, Plaintiff purchased an LG Washing Machine in New York. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine almost immediately after using the Machine. Plaintiff called the LG service line about the mold, mildew and/or odor problems almost immediately after purchasing the Machine.

18.    Plaintiffs McClure are citizens of Texas and reside in Cypress, Texas. In or about August 2006, Plaintiffs purchased an LG Washing Machine in Texas. Plaintiffs began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine within four to six months. Plaintiffs contacted LG on several occasions concerning the mold, mildew and/or foul odor problem in the Machine.

19.    Plaintiff Olejniczak is a citizen of Texas and resides in Fulshear, Texas. In or about January 2006, Plaintiff purchased an LG Washing Machine in Texas and took delivery of the Machine on January 25, 2006. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine after approximately three to four months of use of the Machine. Plaintiff contacted LG on several occasions concerning the mold, mildew and/or foul odor problems.

20.    Plaintiff Scalise is a citizen of Illinois and resides in Huntley, Illinois. In or about June 2005, Plaintiff purchased an LG Washing Machine in Illinois. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine within a year of using the Machine. Plaintiff promptly contacted LG concerning the mold, mildew and/or foul odors in her Machine.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 263 of 309   Page ID
#:2864
Case 2:08-cv-00051-FSH-MAH   Document 31-4   Filed 05/06/08   Page 8 of 54 PageID: 307

21.     Plaintiff Trethewey is a citizen of Pennsylvania and resides in Downingtown, Pennsylvania. On or about October 6, 2007, Plaintiff purchased an LG Washing Machine at a Home Depot store in Pennsylvania, and took delivery of the Machine within approximately two weeks. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine within five months of delivery. Plaintiff promptly complained to LG concerning the mold, mildew and/or foul odors in her Machine.

22.     Plaintiff Vanasse is a citizen of Massachusetts and resides in Clinton, Massachusetts. In or about February 2006, Plaintiff purchased an LG Washing Machine in Massachusetts. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine after about two months of using the Machine. Plaintiff promptly contacted LG on at least four occasions concerning the mold, mildew and/or foul odor problem in the Machine.

23.     Plaintiffs Zimmerman are citizens of North Carolina and reside in Hickory, North Carolina. In or about December 2006, Plaintiffs purchased an LG Washing Machine in North Carolina. On or around March 2007, Plaintiffs began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine. Plaintiffs contacted LG concerning the mold, mildew and/or foul odor problem in the Machine. LG put in service orders for three separate companies, only two of which showed up and the third stated that it had "stopped selling and fixing LG machines because there were so many problems." When the service visits failed to stop the mold, mildew and/or foul odors, Plaintiffs called LG several times and left messages about the problems. LG, however, never

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 264 of 309   Page ID
#:2865
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 9 of 54 PageID: 308

returned their calls. In January 2008, Plaintiffs finally succeeded in contacting LG, only to be told that the warranty had expired, and LG would not fix the Machine.

24.     Each of the Plaintiffs named above purchased a LG Washing Machine and used it for its intended purpose, and in a manner consistent with its intended use. At the time of the Plaintiffs' purchases, LG failed to disclose that the Washing Machines were defective, as evidenced by the fact that Plaintiffs experienced and continue to experience mold, mildew and/or foul odors in their Machines and on clothing and other items washed in their Machines.

25.     In response to the various notices from the Plaintiffs to LG regarding the defects in their Washing Machines and the mold, mildew and/or foul odor problems, LG personnel, LG's retailers, and LG's repairmen made form or "canned" responses. For example, LG proposed, *inter alia*: running double rinse cycles with each load; wiping down the gasket, door and inside of the Washing Machines after each use; wiping the inside of the stainless steel drum with a washcloth after use of the Washing Machine; running empty loads with bleach and baking soda through the Machine; wiping the seal of the Machines; cleaning the filter of the Machines; running vinegar through the Machines; leaving the door open after each wash (despite the obvious danger to children and inconvenience in tight spaces normally associated with laundry rooms); running the sanitary cycle all the time; using only a teaspoon of laundry detergent; running Clorox through the Machines; using the product Whirlout;  cleaning the rubber seal on a regular basis with Fantastik®; switching from liquid High Efficiency ("HE") detergent to powdered HE detergent;  hand-drying the Machines out after each use; running weekly hot water cycles and wiping the gasket with bleach and hot water after every use of the Machine; using sanitizer; running back-to-back empty-load cycles of water and bleach; draining the Machines

through the drain plug; and refraining from using liquid fabric softener (even in LG Machines that have a compartment specifically for liquid fabric softener).

26.     Tellingly, neither the mold, mildew and/or foul odor problems nor the alleged "solutions" were set forth in Plaintiffs' Owner's Manuals that accompanied the LG Machines. Moreover,  none of these alleged "solutions" methods stopped the mold, mildew and/or foul odor problems that plague Plaintiffs' and Class Members' LG Washing Machines.

27.     As a result of the mold, mildew and/or foul odor problems, Plaintiffs collectively have been forced to endure, *inter alia*, mold, mildew and/or foul odors in their Machines and on their clothes and other items.

**DEFENDANT**

28.     LG is a Delaware corporation and maintains its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, where it employs approximately 400 people and concentrates its base of operations.  LG is a wholly-owned subsidiary of LG Korea.  LG manufactures thousands of washing machines each year, a substantial portion of which are sold or offered for sale in New Jersey.  LG has sold, either directly or indirectly, thousands of its defective Washing Machines nationwide and in the State of New Jersey.

29.     LG's New Jersey office serves as the headquarters for its design, marketing and sales in the United States and provides all sales support.  Upon information and belief, all corporate decisions regarding the Washing Machines, and the representations and acts of concealment which are the subject of this lawsuit were directed by, or emanated from, LG representatives working in New Jersey or directly reporting to superiors situated in New Jersey. In addition, upon information and belief, LG's investigation regarding the defective Washing

Exhibit_____J_____ Pg. _265_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 266 of 309   Page ID
#:2867
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 11 of 54 PageID: 310

Machines primarily was undertaken by personnel working from and within New Jersey.

30.     Several different teams of LG employees who are involved in and are

knowledgeable about the marketing and advertising of LG's Washing Machines, including LG's

product development, marketing, training and public relations groups, are located in New Jersey

and all documents related to these functions are located in New Jersey.  Members of these teams

in New Jersey who will likely be material witnesses in this case include the following:

| Name | Corporate Title | Position: "Digital Appliances Division" |
|------|-----------------|------------------------------------------|
| Kang, Jung Hoon | Manager | Sales Engineer |
| Kavanaugh, Tim | Director | Director, Merchandising |
| Lee, Tae Jin | Manager | Product Manager for Laundry Washers |
| Martella, Janine | Manager | Category Merchandising Manager |
| Park, David | Assistant | Market Analyst |
| Soh, Jinwon | Manager Sr. Manager | Product Planning |
| Weinstock, John | Vice President | Vice President, Marketing |

31.     In addition to the New Jersey LG personnel, the LG Korea-based personnel that

are involved in matters relevant to this action routinely travel to LG's New Jersey headquarters,

participate in LG's activities there and are expected to continue to travel to New Jersey.

## JURISDICTION AND VENUE

32.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)

because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of

interest and costs, and this is a class action in which certain of the Class members and Defendant

are citizens of different states.

33.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because

Defendant is a resident of this judicial district and does business throughout this district, and a

substantial part of the events or omissions giving rise to Plaintiffs' claims took place within this

11

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 267 of 309   Page ID
#:2868
Case 2:08-cv-00051-FSH-MAH   Document 32   Filed 05/06/08   Page 12 of 54 PageID: 311

district.

## FACTUAL BACKGROUND

**Facts Common To The Class**

34.     Defendant LG Electronics USA, Inc. holds itself out to the public as a

manufacturer of safe, cutting-edge, and easy-to-use home appliances, including washing

machines.  Defendant is in the business of manufacturing, producing, distributing, and/or selling

washing machines throughout the United States.

35.     Defendant has manufactured, produced, and/or distributed front-loading washing

machines for several leading retailers in the United States, such as Home Depot, Sears and Best

Buy.

36.     LG provided Plaintiffs and each owner of the subject Washing Machines

with a one-year factory warranty for parts and labor, a two-year factory warranty for the

electronic control board, a seven-year factory warranty for the drum motor, and a lifetime

warranty for the stainless steel drum.  LG's express warranty provides coverage for repairs to

correct any Washing Machine defect related to materials or workmanship occurring during the

warranty period.  Under this warranty, LG was obligated, *inter alia*, to repair the defect at no

charge.  Defendant has these same obligations with respect to Plaintiffs and all Class members,

but has failed to satisfy these obligations.

37.     LG intended for customers to believe its uniform statements about its Washing

Machines and to trust that its high-end Washing Machines were and are of first-rate quality

(compared with other machines) for washing and cleaning clothing and protecting clothing

fabrics, despite LG's knowledge that these statements were misleading due to its omission of

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 268 of 309   Page ID
Case 2:08-cv-00051-FSH-MAH   Document 32-9 Filed 05/06/08   Page 13 of 54 PageID: 312
#:2869

material facts about defects in its Machines.

38.    In conjunction with each sale, Defendant warranted that the defective Washing Machines were fit for the ordinary purpose for which such goods were used and were free from defects.

39.    LG has concealed material facts regarding the Washing Machines, including design defects, which cause mold, mildew and/or foul odors to accumulate within the Washing Machines, escape from the Machines if the doors to the Machines are left open, and contaminate clothes washed in the Machines.  These defects render the Machines to be unusable for the ordinary purpose for which they were advertised, marketed and sold.

40.    Upon information and belief, the stainless steel drums (which come with a lifetime warranty), among other things, play a role in the accumulation of mold, mildew and/or foul odor within the Washing Machines, by *inter alia*, not fully or properly draining in connection with each and every wash cycle.  Also playing a role in the accumulation of mold, mildew and/or foul odors is the door seal, which, among other things, does not fully or properly drain.  Furthermore, while offering the Washing Machines for sale to the general public, Defendant was aware of a defect with the stainless steel drum and/or door seal and that none of the proposed solutions it offered Plaintiffs and Class members would adequately remedy the defects, and has succeeded in effectively profiting by failing and refusing to correct the defects in the Washing Machines.

41.    LG was in exclusive possession of this information about any potential defects, which were material to Plaintiffs and Class members, and LG had a duty, under all of the circumstances, to disclose the defects to Plaintiffs and Class members.  Nevertheless, LG has

failed and refused to warn its customers of the serious defects inherent in the Washing Machines

or to warn them regarding the problems and that they have a material likelihood of encountering

regarding mold, mildew and/or foul odors due to the defects; and instead, LG has sat silent while

consumers purchased and continue to purchase its defective Machines.

42.     LG has also refused, and continues to refuse, to effectively remedy the problems

and defects inherent in the Machines.

43.     Furthermore, LG failed to cure the defect, long since known, through application

of appropriate engineering of LG front load washers, tooling in the manufacturing process, and/or

use of a reasonable alternative design.

44.     In light of LG's knowledge of the problems associated with, and the serious nature

of the defects at issue, LG knew, or should have known, that it was selling the Washing

Machines to consumers with a value that was substantially diminished.

45.     Plaintiffs and Class members reasonably expected that the Washing Machines

would not contain design defects that would substantially impair the Machines' performance and

use. Plaintiffs and Class members also reasonably expected that the Machines would not require

extensive and expensive repairs (or the purchase of extended or third party warranties to

continuously attempt to fix problems inherent in the Washers) as a result of the defects, which

defects were known to LG at the time of sale. If LG had not misrepresented and concealed

material information regarding the defective nature of the Washing Machines, Plaintiffs and

other members of the Class would not have purchased the Machines at premium prices, and on

the terms offered.

46.     LG also has profited, either directly or indirectly, by concealing the nature of the

14

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 270 of 309   Page ID
#:2871
Case 2:08-cv-00051-FSH-MAH   Document 33   Filed 05/06/08   Page 15 of 54 PageID: 314

defects because LG has been able to convince a large number of consumers to purchase the

Washing Machines and to pay LG for repair services (from which LG earns a profit) to address

the problems arising from the defects at issue -- even though LG has no effective remedy for the

defects, and has in fact profitted by failing and refusing to correct the defects in the Washing

Machines.

47.     As a result of LG's deceptive conduct and material concealments, as well as LG's

other misconduct described in this Complaint, Plaintiffs and the Class bought thousands of the

Washing Machines and have suffered -- and continue to suffer -- injury as a result of the

defective nature of these Washing Machines, and not resulting from the ordinary course of usage

by Plaintiffs and Class members.

48.     As described above, LG is aware of the mold, mildew and/or foul odor problems

at issue in this case, and has been for some time.  Plaintiffs and many members of the Class have

alerted Defendant to the mold, mildew and/or odor problems by complaining to Defendant

directly and/or to Defendant's authorized dealerships and service persons.  Indeed, many

members of the Class have posted their experiences with the defective Washing Machines on the

Internet, including, but not limited to, postings appearing in two on-line forums: http://www.dld

123.com/ci&a/index.php?cid=443; and

http://www.consumeraffairs.com/homeowners/lg_washing_machine.html.

49.     During 2007, at LG's customer call center in Northern Alabama, service

representatives each fielded dozens of calls on a daily basis regarding mold, mildew and/or odor

accumulation in the Washing Machines.  The complaints were not limited to one model of the

Washing Machines but, instead, related to all LG's front-loading Machines, and these complaints

Case 8:10-cv-00711-DOC-AN  Document 102  Filed 07/11/12  Page 271 of 309  Page ID
#:2872
Case 2:08-cv-00051-FSH-MAH  Document 28-7  Filed 05/06/08  Page 16 of 54 PageID: 315

(regarding mold, mildew and/or foul odor in the Washing Machines) were, by far, the most common complaints received by LG customer service representatives of all electronic products sold by LG in the United States.  Upon information and belief, LG acknowledged internally that the defects causing this mold, mildew and/or foul odor accumulation related to, *inter alia*, defects in the Washing Machines' stainless steel drums and door seals, among other things, which resulted in its failing to drain properly, and that LG had no effective way to repair or remedy the defects in the Machines.  Even if LG did offer a repair under its limited warranty (as opposed to the lifetime warranty pertinent to the stainless steel drum) for customers under certain circumstances, this repair "effort" did not meet or fulfill LG's warranty obligations because the "repair" failed to remedy the defect and the Machines still continued to accumulate mold, mildew and/or odor.  Despite its legal obligations, LG has not and will not consider any refunds of any kind to customers affected by this pervasive problem.  Finally, while recognizing the scope and magnitude of the problems caused by the defects, both internally and at conferences with salespeople and national outlets such as Best Buy, LG consistently has denied to the consuming public the scope and magnitude of the problems caused by these defects.

50.     Upon information and belief, LG has even verified to its technicians at training seminars - by physically opening up the washing machines - that its front-loading Washing Machines are predisposed to the formation of mold, mildew and/or odor.

51.     Upon information and belief, LG is aware that large numbers of Washing Machines sold nationwide through Home Depot alone suffered from these mold, mildew and/or odor problems.  Moreover, LG representatives have admitted to persons employed by Best Buy that the Machines suffer from these problems.

Exhibit ___J___ Pg. _271_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 272 of 309   Page ID
#:2876
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 17 of 54 PageID: 316

52.     During 2006 and 2007, a large percentage of returns of LG front-loading Washing Machines (perhaps as many as 50%) were returned to LG due to mold, mildew and/or odor problems.

53.     LG failed to adequately design and/or test the Washing Machines to ensure that they were and are free from material defects.  Before these models even reached the market, LG knew, or was reckless in not knowing, that they:  (a) contained inherent defects; and (b) were not of merchantable quality or fit for their ordinary purpose.

54.     To this day, Defendant continues to conceal material information from users, consumers, and the public, through its customer service representatives, that:  (a) the Washing Machines are inherently defective; and (b) the Washing Machines are not of merchantable quality or fit for their ordinary purpose.

**New Jersey's Substantive Law Applies To The Proposed Nationwide Class**

55.     New Jersey's substantive laws apply to the proposed Nationwide Class, as defined herein, because Plaintiffs properly bring this Complaint in this District.  Further, a number of actions were originally filed in this District.

56.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Nationwide Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by each Plaintiff and all Class members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

57.     Defendant's United States headquarters and principal place of business is located

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 273 of 309   Page ID
#:2874
Case 2:08-cv-00051-FSH-MAH   Document 33-7   Filed 05/06/08   Page 18 of 54 PageID: 317

in New Jersey.  LG also owns property and conducts substantial business in New Jersey, and

therefore New Jersey has an interest in regulating Defendant's conduct under its laws.

Defendant's decision to reside in New Jersey and avail itself of New Jersey's laws renders the

application of New Jersey law to the claims herein constitutionally permissible.

58.     New Jersey is also the location where Plaintiff Ashe and a significant number of

Class members were injured by virtue of the misconduct alleged herein.  Plaintiff Ashe resides in

New Jersey and bought his Washing Machine in New Jersey.  A substantial number of members

of the proposed Nationwide Class also reside in New Jersey and bought LG Washing Machines

in New Jersey.

59.     New Jersey is also the State from which Defendant's alleged misconduct

emanated.  This conduct similarly injured and affected all Plaintiffs and Class members residing

in the United States.  For instance, Defendant's marketing efforts relating to LG's Washing

Machines were created and orchestrated from its headquarters in New Jersey.  More specifically,

New Jersey has the following significant contacts to the claims of Plaintiffs and Class members:

a.     LG's New Jersey office serves as the headquarters for its marketing and

sales in the United States and provides all sales support;

b.     Upon information and belief, all corporate decisions regarding the

Washing Machines, and the representations and acts of concealment which are the subject of this

lawsuit were directed by, or emanated from, LG representatives working in New Jersey or

directly reporting to superiors situated in New Jersey;

c.     Several different teams of LG employees who were involved in and are

knowledgeable about the marketing and advertising of LG's Washing Machines, including LG's

Exhibit___J___ Pg.__273__

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 274 of 309   Page ID
#:2875
Case 2:08-cv-00051-FSH-MAH   Document 33-7   Filed 05/06/08   Page 19 of 54 PageID: 318

product development, marketing, training and public relations groups, are located in New Jersey

and all documents related to these functions are located in New Jersey;

        d.     Furthermore, upon information and belief, all customer complaints

received at LG's customer call centers were and are forwarded to LG representatives working in

New Jersey, who in turn dictate the scripted responses that are to be given to complaining

customers; and

        e.     In addition to the New Jersey LG personnel, the LG Korea-based

personnel that are involved in matters relevant to this action routinely travel to LG's New Jersey

headquarters and are expected to continue to travel to New Jersey.

     60.     The application of New Jersey's laws to the Nationwide Class is also appropriate

under New Jersey's choice of law rules because New Jersey has significant contacts to the claims

of the Plaintiffs and the proposed Nationwide Class, and New Jersey has a greater interest in

applying its laws here than any other interested state.

     61.     In the alternative, the Court may apply the substantive law of the States where the

named Plaintiffs reside and/or bought their Washing Machines: California, Colorado,

Connecticut, Florida, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina,

Ohio, Pennsylvania, Texas and Wisconsin.

## CLASS ACTION ALLEGATIONS

     62.     Plaintiffs bring this action on behalf of themselves and all other persons similarly

situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

     63.     The Class that Plaintiffs seek to represent is defined as follows:

**Nationwide Class:**

Exhibit ___J___ Pg. _274_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 275 of 309   Page ID
#:2876
Case 2:08-cv-00051-FSH-MAH   Document 33   Filed 05/06/08   Page 20 of 54 PageID: 319

All persons or entities residing in the United States who purchased,
not for resale, a Washing Machine ("Class").

64.     In the alternative to the claims asserted on behalf of the Class, Plaintiffs also bring

this action on behalf of the following Sub-Classes, as more fully set forth below and to the extent

appropriate:

### Sub-Classes:

**California:** All Class members who purchased a Washing Machine in the State of
California and who purchased the Machine for primarily personal, family or
household purposes as defined by California Civil Code § 1791(a).

**Colorado:** All Class members who purchased a Washing Machine for primarily
personal, family or household purposes, and not for resale, in Colorado.

**Connecticut:** All Class members who purchased a Washing Machine for
primarily personal, family or household purposes, and not for resale, in
Connecticut.

**Florida:** All Class members who purchased a Washing Machine for primarily
personal, family or household purposes, and not for resale, in Florida.

**Illinois:** All Class members who purchased a Washing Machine for primarily
personal, family or household purposes, and not for resale, in Illinois.

**Massachusetts:** All Class members who purchased a Washing Machine for
primarily personal, family or household purposes, and not for resale, in
Massachusetts.

**Michigan:** All Class members who purchased a Washing Machine for primarily
personal, family or household purposes, and not for resale, in Michigan.

**New Jersey:** All Class members who purchased a Washing Machine for primarily
personal, family or household purposes, and not for resale, in New Jersey.

**New York:** All Class members who purchased a Washing Machine for primarily
personal, family or household purposes, and not for resale, in New York.

**North Carolina:** All Class members who purchased a Washing Machine for
primarily personal, family or household purposes, and not for resale, in North

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 276 of 309   Page ID
#:2877
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 21 of 54 PageID: 320

Carolina.

**Ohio:**  All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Ohio.

**Pennsylvania:**  All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Pennsylvania.

**Texas:**  All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Texas.

**Wisconsin:** All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in the State of Wisconsin.

Excluded from the Class and Sub-Classes ("Classes") are Defendant, its affiliates, employees, officers and directors, persons or entities that distribute or sell the Washing Machines, the Judge(s) assigned to this case, and the attorneys of record in this case.  Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

65.     **Numerosity/Impracticability of Joinder:** The members of the Classes are so numerous that joinder of all members would be impracticable.  The proposed Classes include thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control.

66.     **Commonality and Predominance:** There are common questions of law and fact which predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions, include, but are not limited to the following:

(a)     Whether the Washing Machines are defective;

(b)     Whether LG knew that the Washing Machines were and are defective;

21

    (c)      Whether LG omitted and concealed material facts from its communications and disclosures to Plaintiffs and the Classes regarding the defects inherent in the Washing Machines;

    (d)      Whether LG has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the Machines;

    (e)      Whether New Jersey law can and should be applied to the Nationwide Class;

    (f)      Whether LG violated various state consumer protection statutes;

    (g)      Whether LG breached its warranty and/or extended warranties;

    (h)      Whether LG breached its implied warranties;

    (i)      Whether LG has been unjustly enriched;

    (j)      Whether, as a result of LG's conduct, Plaintiffs and the Classes have suffered damages; and if so the appropriate amount thereof; and

    (k)      Whether, as a result of LG's misconduct, Plaintiffs and the Classes are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

67.    **Typicality**: The representative Plaintiffs' claims are typical of the claims of the members of the Class and, as applicable, each respective Sub-Class. Plaintiffs and all Class members have been injured by the same wrongful practices in which LG has engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and, as applicable, members of the Sub-Classes, and are based on the same legal theories.

68.    **Adequacy**: Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests

Exhibit ___J___ Pg. _277_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 278 of 309   Page ID
#:2879
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 23 of 54 PageID: 322

which are contrary to or conflicting with the Classes.

69.     **Superiority**: A class action is superior to all other available methods for the fair

and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class

members is economically unfeasible and procedurally impracticable.  While the aggregate

damages sustained by the Classes are likely in the millions of dollars, the individual damages

incurred by each Class member resulting from LG's wrongful conduct are too small to warrant

the expense of individual suits.  The likelihood of individual Class members prosecuting their

own separate claims is remote, and even if every Class member could afford individual litigation,

the court system would be unduly burdened by individual litigation of such cases.  Individual

members of the Classes do not have a significant interest in individually controlling the

prosecution of separate actions, and individualized litigation would also present the potential for

varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all

of the parties and to the court system because of multiple trials of the same factual and legal

issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that

would preclude its maintenance as a class action.  In addition,  LG has acted or refused to act on

grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding

declaratory relief with regard to the members of the Class as a whole is appropriate.

70.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

71.     Defendant has, or has access to, address information for the Class members,

which may be used for the purpose of providing notice of the pendency of this action.

### Notice To Attorneys General Of Action

72.     A copy of this Complaint shall be mailed to the Attorneys General,

Administrators, Commissioners, or other officers, as required by law, and upon and at the time

of the filing of the Complaint pursuant to: N.J.S.A. § 56:8-20, and Tex. Bus. & Com. Code §

l7501(a)(1).

## FIRST CAUSE OF ACTION
### Asserted On Behalf Of The Nationwide Class Against LG,
### And Alternatively, On Behalf of The New Jersey Sub-Class Against LG
### (Violations Of New Jersey Consumer Fraud Act ("CFA") (N.J.S.A. § 56:8-1 *et seq.*))

73.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

74.     Plaintiffs, other members of the Class, and LG are "persons" within the meaning

of the CFA.

75.     Plaintiffs and other members of the Class are "consumers" within the meaning of

the CFA.

76.     At all relevant times material hereto, LG conducted trade and commerce in New

Jersey and elsewhere within the meaning of the CFA.

77.     The CFA is, by its terms, a cumulative remedy, such that remedies under its

provisions can be awarded in addition to those provided under separate statutory schemes.

78.     LG has engaged in deceptive practices in the sale of the defective front-loading

Washing Machines including: (1) selling Washing Machines with a design flaw that causes mold,

mildew and/or foul odor to occur with normal use and/or created a substantial risk that mold,

mildew and/or foul odor would occur with normal use; and (2) intentionally failing to disclose

and/or concealing this known defect and risk.

79.     LG consciously omitted to disclose material facts to Plaintiffs and other members

Case 8:10-cv-00711-DOC-AN Document 102 Filed 07/11/12 Page 280 of 309 Page ID
#:2881
Case 2:08-cv-00051-FSH-MAH Document 31 Filed 05/06/08 Page 25 of 54 PageID: 324

of the Class with respect to the defects that cause mold, mildew and/or odor to occur with normal use and/or creates a substantial risk that mold, mildew and/or odor would occur with normal use.

80. LG's unconscionable conduct described herein included the omission and concealment of material facts concerning the Washing Machines.

81. LG intended that Plaintiffs and the other members of the Class rely on the acts of concealment and omissions, so that Plaintiffs and other Class members would purchase the Washing Machines.

82. Had LG disclosed all material information regarding the Washing Machines to Plaintiffs and other members of the Class, they would not have purchased the Machines.

83. The foregoing acts, misrepresentations, omissions and unconscionable commercial practices caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to repair and replace the Washing Machines and diminution in value of the Washing Machines, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

84. Application of the CFA to all Class members located throughout the country, regardless of their state of residence, is appropriate as described herein and because, *inter alia*:

a. LG controlled and directed their nationwide sales operations and support operations from New Jersey;

b. LG's marketing operations and decisions, including the decisions as to how to advertise, promote and sell Washing Machines, were made in New Jersey and Defendant's sales and marketing personnel all are based here;

c. LG's principal place of business is located in New Jersey;

25

Exhibit _____ J _____ Pg. 280

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 281 of 309   Page ID
#:2882
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 26 of 54 PageID: 325

    d.    The majority of significant employees of LG are based in New Jersey, and the LG Korea-based personnel relevant to this action routinely travel to LG's New Jersey headquarters and are expected to continue to do so;

    e.    The majority of significant documents of LG are located in New Jersey;

    f.    The facts and circumstances of this case bestow numerous contacts with the State of New Jersey so as to create a state interest in applying the CFA to LG, thereby making application of New Jersey law to the entire Class appropriate.

85.    Alternatively, Plaintiff Ashe seeks all available remedies on behalf of himself and the New Jersey Sub-Class.

## SECOND CAUSE OF ACTION
### Asserted On Behalf Of Nationwide Class Against LG
### (Violations Of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) --Written Warranty)

86.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

87.    LG's Washing Machines are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

88.    Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3), and utilized the Washing Machines for personal and household use and not for resale or commercial purposes.

89.    Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

90.    Defendant provided Plaintiffs and Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

26

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 282 of 309   Page ID
#:2883
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 27 of 54 PageID: 326

91.     In its capacity as a warrantor, and by the conduct described herein, any attempt by Defendant to limit the express warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is null and void.

92.     All jurisdictional prerequisites have been satisfied.

93.     By Defendant's conduct as described herein, including Defendant's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge Defendant has failed to comply with its obligations under its written and implied promises, warranties, and representations.

94.     As a result of Defendant's breach of express warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

### THIRD CAUSE OF ACTION
### Asserted On Behalf Of The Nationwide Class Against LG, And Alternatively, On Behalf Of Each Sub-Class Against LG Pursuant To State Law
### (Breach Of Express Warranty)

95.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

96.     Plaintiffs seek to recover for LG's breach of express warranty under the laws of the State of New Jersey.

97.     LG warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from a serious defect and, nevertheless, continued to market and sell these Machines with this express warranty.

98.    LG also sold extended warranties to Plaintiffs and some members of the Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market and sell extended warranties with respect to the Machines despite the serious defects in the Washing Machines.

99.    LG further warranted the stainless steel drums for their lifetime.

100.    LG is obligated under the terms of its express warranty to repair and/or replace the defective Machines sold to Plaintiffs and the Class.

101.    LG has breached its express warranties, as set forth above, including its extended warranties, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by LG and by failing to repair or replace the defect and/or defective parts, including the stainless steel drum, inherent in the Machines.

102.    LG has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and LG's knowledge, LG refuses to honor its warranty, even though it knows of the inherent defect in the Washing Machines.

103.    In addition, LG has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines.

104.    Plaintiffs have given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so.

105.    LG has failed to provide to Plaintiffs or the Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that LG expressly warranted when it sold the Washing Machines to Plaintiffs and members of the Class.

Exhibit____J____Pg. *283*

Case 8:10-cv-00711-DOC-AN Document 102 Filed 07/11/12 Page 284 of 309 Page ID
#:2885
Case 2:08-cv-00051-FSH-MAH Document 31 Filed 05/06/08 Page 29 of 54 PageID: 328

106. As a result of LG's breach of warranty, Plaintiffs and the Classes have suffered

damages in an amount to be determined at trial.

107. Alternatively, Plaintiffs seek to recover for LG's breach of express warranty under

the substantially similar laws of the states of purchase, specifically: California (Song-Beverly

Act, Civil Code §1790 *et seq.*), Colorado (C.R.S.A. §4-2-313), Connecticut (C.G.S.A. §42a-2-

313), Florida (F.S.A. §672.313), Illinois (810 ILCS 5/2-313), Massachusetts (M.G.L.A. 106 §2-

313), Michigan (Michigan Uniform Commercial Code, § 440.2313), New Jersey (N.J.S.A.

12A:2-313), New York (New York Uniform Commercial Code §2-313), North Carolina

(N.C.G.S.A. §25-2-313), Ohio (Ohio Rev. Code §1302.26), Pennsylvania (13 Pa. C.S.A. §2313),

Texas (Tex. Bus. & Com. Code Ann. §2-313) and Wisconsin (W.S.A. §402.313).

### FOURTH CAUSE OF ACTION
**Asserted On Behalf Of The Nationwide Class Against LG, And Alternatively, On
Behalf Of Each Sub-Class Against LG Pursuant To State Law
(Breach Of Implied Warranty Of Merchantability)**

108. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

109. Plaintiffs seek to recover for LG's breach of implied warranty under the laws of

the State of New Jersey.

110. Defendant's implied warranty of merchantability accompanied the sale of the

Washing Machines to Plaintiffs and members of the Class.

111. LG is a merchant in the sale of the Washing Machines to Plaintiffs and the Class

members. LG manufactures, markets and sells the Washing Machines. LG provided Plaintiffs

and the Class members with an implied warranty that the Washing Machines were merchantable

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 285 of 309   Page ID
#:2886
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 30 of 54 PageID: 329

and fit for the ordinary purposes for which they were sold. The Washing Machines are not fit for

the ordinary purpose of cleaning clothing and other articles, because, *inter alia*, the Washing

Machines are defective in that they contain design defects that cause the Washing Machines to

accumulate mold, mildew and/or foul odors within the Washing Machines and to produce a

moldy odor that permeates consumers' homes and clothing. Accordingly, clothing is not cleaned

in the Machines.

112.    The alleged defects are so basic that they render the Washing Machines unfit for

the ordinary purpose of cleaning clothing and other articles.

113.    LG knew or had reason to know that Plaintiffs and the Class members purchased

the Washing Machines to effectively wash their clothing and other articles.

114.    The Washing Machines do not conform to the promises and affirmations

uniformly issued by Defendant in its sales materials and warranties.

115.    Plaintiffs and the Class members have used the Washing Machines for their

intended and ordinary purpose of cleaning clothing and other articles.

116.    Plaintiffs and the Class members have performed each and every duty required

under the terms of the warranties, except as may have been excused or prevented by the conduct

of Defendant or by operation of law in light of Defendant's unconscionable conduct.

117.    Plaintiffs and the Class members have provided sufficient and timely notice to

Defendant regarding the problems they experienced with the Washing Machines and,

notwithstanding such notice, Defendant has failed and refused to offer Plaintiffs and the Class

members an effective remedy.

118.    In addition, Defendant has received, on information and belief, thousands of

Exhibit____J____ Pg. _285_

Case 8:10-cv-00711-DOC-AN    Document 102    Filed 07/11/12    Page 286 of 309    Page ID
#:2887
Case 2:08-cv-00051-FSH-MAH    Document 31    Filed 05/06/08    Page 31 of 54 PageID: 330

complaints and other notices from consumers advising them of the defects associated with the

Washing Machines.

119.    By virtue of the conduct described herein, Defendant breached the implied

warranty of merchantability.

120.    Plaintiffs and the Class members have been damaged as a direct and proximate

result of LG's breach of the implied warranty.

121.    Alternatively, Plaintiffs seek to recover for LG's breach of implied warranty,

warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, 2301(7), 2310, and the

substantially similar laws of the states of purchase, specifically:  California (Song-Beverly Act,

Civil Code §1790 *et seq.*), Colorado (C.R.S.A. §4-2-314), Connecticut (C.G.S.A. §42a-2-314),

Illinois (810 ILCS 5/2-314), Massachusetts (M.G.L.A. 106 §2-314), Michigan (Michigan

Uniform Commercial Code, § 440.2314), New Jersey (N.J.S.A. 12A:2-314), New York (New

York Uniform Commercial Code §2-314), Ohio (tortious breach of warranty), Pennsylvania (13

Pa. C.S.A. §2314), Texas (Tex. Bus. & Com. Code Ann. §2-314) and Wisconsin (W.S.A.

§402.314).

## FIFTH CAUSE OF ACTION
### Asserted On Behalf Of The Nationwide Class Against LG, And Alternatively, On Behalf Of Each Sub-Class Against LG Pursuant To State Law
### (Unjust Enrichment)

122.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

123.    In the alternative, LG has been unjustly enriched by the purchases of the Washing

Machines by Plaintiffs and the Class members.

124.    Plaintiffs seek to recover for LG's unjust enrichment under the law of the State of New Jersey.

125.    Plaintiffs and the Class members unknowingly conferred a benefit on LG of which LG had knowledge since LG was aware of the defective nature of the Washing Machines and the problems that plagued them, but failed to disclose this knowledge and misled Plaintiffs and the Class members regarding the nature and quality of the Washing Machines while profiting from this deception.

126.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit LG to retain the benefit of these profits that it unfairly has obtained from Plaintiffs and the Class members.

127.    Plaintiffs and the Class members, having been damaged by LG's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of LG to their detriment.

128.    Alternatively, Plaintiffs and the Class members seek to recover for LG's unjust enrichment under the substantially similar laws of the states of purchase, specifically:  California, Colorado, Connecticut, Florida, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas and Wisconsin.

## SIXTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The California Sub-Class Against LG
### (Unfair Competition Law (Bus. & Prof. Code §17200 *et seq.*)

129.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

130.    Plaintiff Boone asserts this cause of action on behalf of herself and the California

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 288 of 309   Page ID
#:2889
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 33 of 54 PageID: 332

Sub-Class.

131.   Defendant has engaged in unfair, unlawful, and fraudulent business practices as set forth above.

132.   By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of Business and Professions Code §17200 *et seq.*

133.   Defendant's acts and practices have deceived and/or are likely to deceive members of the consuming public and the Class.

134.   LG knowingly sold Plaintiff Boone and the California Sub-Class and other consumers Washing Machines with design defects that have rendered the Machines essentially unusable for the purposes for which they were sold.

135.   The injury to consumers by this conduct is greatly outweighed by any alleged countervailing benefit to consumers or competition under all of the circumstances.  Moreover, in light of LG's exclusive knowledge of the defects, the injury is not one that Plaintiff Boone and members of the California Sub-Class could have reasonably avoided.

136.   Defendant's acts and practices are unlawful because they violate Civil Code §§1668, 1709 and 1710.  Defendant's acts and practices are also unlawful because they violate the Song-Beverly Act, Civil Code § 1790 *et seq.* and California Commercial Code § 2313.

137.   Plaintiff Boone, on behalf of herself and the California Sub-Class, seeks an order of this Court awarding restitution, disgorgement, injunctive relief and all other relief allowed under Section 17200 *et seq.*, plus interest, attorneys' fees and costs.

Exhibit  J  Pg. 288

## SEVENTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The California Sub-Class Against LG
### The Song-Beverly Act - Breach Of Express Warranty
### (Violations Of Civil Code § 1790 *et seq.*)

138.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

139.   Plaintiff Boone asserts this cause of action on behalf of herself and the California Sub-Class.

140.   As an express warrantor and manufacturer, LG had certain obligations under the Song-Beverly Act, and, in particular, Civil Code §1793.2(b) and (d), to conform the Washing Machines to the express warranty.

141.   LG has been unable to conform the Washing Machines to the express warranty after a reasonable number of attempts at repair.  Defendant is, therefore, required to either pay damages or reimburse the buyer the purchase price and incidental damages pursuant to Civil Code §§ 1793.2(d) and 1794.

142.   Defendant knew of its obligations under its warranty to pay for a new Machine, as needed, caused by the defect described herein.  However, LG has willfully refused to pay for a new Machine as required under the warranty.  LG is, therefore, liable for not only damages, but also a civil penalty pursuant to Civil Code § 1794.

## EIGHTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The California Sub-Class Against LG
### The Song-Beverly Act - Breach Of Implied Warranty
### (Violations Of Civil Code § 1790 *et seq.*)

143.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

Exhibit ___J___ Pg. _289_

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 290 of 309   Page ID
#:2891
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 35 of 54 PageID: 334

144.    Plaintiff Boone asserts this cause of action on behalf of herself and the California
Sub-Class.

145.    LG was a merchant in the sale of the Washing Machines to Plaintiff Boone and
the Sub-Class members.

146.    By operation of law, LG provided Plaintiff Boone and the members of the
California Sub-Class with an implied warranty of merchantability in the sale and lease of the
Washing Machines.

147.    Plaintiff Boone's Washing Machine and the Machines purchased by members of
the California Sub-Class are not fit for the ordinary purposes for which such Machines are used,
because the defects cause the Machines to, among other things, produce and accumulate mold,
mildew and/or odor, thereby seriously impairing the use and functionality of the Machines in a
manner that does not meet the reasonable expectations of Plaintiff Boone or any other purchaser
of the Machines.  Thus, the Machines do not operate as they should when used for their ordinary
purposes, and the manner in which the defective Machines do perform is so deficient and below a
minimum level of quality so as to render them unfit for their ordinary use and purpose.

148.    By failing to repair the Washing Machines and by failing to replace the Washing
Machines as needed, LG has breached the implied warranty of merchantability.

149.    Plaintiff Boone and the members of the California Sub-Class have been damaged
as a result of LG's breach of the implied warranty.

150.    Plaintiff Boone and the members of the California Sub-Class are entitled to the
remedies provided by California Civil Code § 1794.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 291 of 309   Page ID
#:2892
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 36 of 54 PageID: 335

### NINTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The Colorado Sub-Class Against LG
### (Violation Of Colorado Consumer Protection Act ("CCPA"), C.C.P.A. § 6-1-101, et seq.)

151.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

152.   LG's business acts and practices alleged herein constitute unfair, unconscionable

and/or deceptive methods, acts or practices under the CCPA.

153.   At all relevant times hereto, Plaintiffs Cook and Cook-Sommer ("Colorado

Plaintiffs") were "persons" under the CCPA.

154.   At all relevant times hereto, LG was a "person" engaged in "trade or commerce"

under the CCPA and its actions and inactions significantly impact the public as consumers of LG

Washing Machines.

155.   Under all of the circumstances set forth, LG's conduct in employing these unfair

and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the

conscience of the community and warrant the imposition of punitive damages.

156.   The foregoing acts, omissions and practices proximately caused Colorado

Plaintiffs and other members of the Colorado Sub-Class to suffer an ascertainable loss in the

form of, *inter alia*, monies spent to replace the Washing Machines and/or diminution in value of

the Washing Machines, and are entitled to recover such damages, together with appropriate

exemplary damages, attorneys' fees and costs of suit.

### TENTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The Connecticut Sub-Class Against LG
### (Violations Of Connecticut Unfair Trade Practices Act ("CUTPA"),
### Conn. Gen. Stat. Ann. § 42-110a, et seq.)

157.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 292 of 309   Page ID
#:2893
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 37 of 54 PageID: 336

set forth herein.

158.   The Connecticut Unfair Trade Practices Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a).

159.   CUTPA explicitly provides for a private cause of action for anyone who has suffered an ascertainable loss of money or property as a result of the use or employment of a method, act, or practice prohibited by CUTPA.  Conn. Gen. Stat. Ann. § 42-110g.

160.   LG knowingly concealed, suppressed and failed to disclose material facts in connection with its marketing and sale of the Defective Washing Machines.

161.   LG's conduct, as set forth above, constitutes an unfair method of competition and/or unfair and/or deceptive acts and practices prohibited under CUTPA.

162.   As a result of such conduct, Plaintiff Irving and other members of the Connecticut Sub-Class have suffered an ascertainable loss of monies and/or property.

163.   Plaintiff Irving and other members of the Connecticut Sub-Class are entitled to compensatory damages, as well as costs and reasonable attorneys' fees pursuant to Conn. Gen. Stat. Ann. § 42-110g(d).

164.   Plaintiff Irving and other members of the Connecticut Sub-Class are also entitled to punitive damages because LG's conduct reveals a reckless indifference to the rights of others and/or an intentional and wanton violation of those rights.

### ELEVENTH CAUSE OF ACTION
**Asserted, In The Alternative, On Behalf Of The Florida Sub-Class Against LG
(Violation Of Florida's Deceptive And Unfair Trade Practices Act,
<u>F.S.A., 501.201 *et seq.* ("FDUTPA"))</u>**

165.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if

fully set forth herein.

166.    At all relevant times, Plaintiffs Harpers and Launch ("Florida Plaintiffs") and all members of the Florida Sub-Class were consumers within the meaning of FDUTPA.

167.    At all relevant times hereto, LG engaged in trade and/or commerce within the meaning of FDUTPA.

168.    The practices of Defendant violate FDUTPA for, *inter alia*, one or more of the following reasons:

      a.    LG omitted and concealed material facts from its communications and disclosures to Florida Plaintiffs and all members of the Florida Sub-Class regarding the defects inherent in the Washing Machines; and

      b.    LG knew, or was reckless in not knowing, that its statements about the Washing Machines were false and/or misleading due to the omission of material facts.

169.    By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

170.    The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

171.    Had LG disclosed all material information regarding the Washing Machines to Florida Plaintiffs and all of the members of the Florida Sub-Class, they would not have purchased the Washing Machines.

172.    The foregoing acts and practices proximately caused Florida Plaintiffs and other members of the Florida Sub-Class to suffer actual damages in the form of, *inter alia*, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 294 of 309   Page ID
#:2895
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 39 of 54 PageID: 338

are entitled to recover such damages, together with appropriate exemplary damages, attorneys'

fees and costs of suit.

### TWELFTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The Illinois Sub-Class Against LG
### (Violation Of Illinois Consumer Fraud And Deceptive Practices Act, ("CFDPA")
### Ill. Comp. Stat. Ann. 505/1 *et seq.*, 510/1 *et seq.*)

173.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

174.    At all relevant times, Plaintiff Scalise and all members of the Illinois Sub-Class

were consumers within the meaning of CFDPA.

175.    At all relevant times hereto, LG engaged in trade and/or commerce within the

meaning of CFDPA.

176.    Despite knowing that the Washing Machines are manufactured and sold with an

inherent defect, as described herein, that causes mold, mildew and/or odor to accumulate within

the Washing Machines, produces a moldy odor that permeates consumers' homes if the doors to

the Washing Machines are left open, and produces mold, mildew and/or odor on clothes washed

in the Machines, when it markets and sells the Machines, LG uniformly represents to customers

and the general public that the Machines are free from defects and will perform in the manner

and for the purpose for which they are intended.

177.    Under all circumstances, LG's representations and/or omissions regarding the

defects in the Washing Machines were misleading and deceptive, and LG intentionally made

these misleading and deceptive representations and/or omissions (while knowing they were

deceptive and misleading) for the sole purpose of deceiving Plaintiff Scalise and members of the

Illinois Sub-Class.  Defendant intended that Plaintiff Scalise and members of the Illinois Sub-



Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 295 of 309   Page ID
#:2896
Case 2:08-cv-00051-FSH-MAH   Document 32   Filed 05/06/08   Page 40 of 54 PageID: 339

Class rely on LG's deceptive and misleading practice.

178.    LG's conduct was unfair and deceptive and constituted an improper concealment,

suppression or omission of material facts, in violation of the CFDPA's prohibition against unfair

business practices.

179.    LG violated the CFDPA's prohibition against misrepresenting and omitting

material information during commercial transactions, as well as the CFDPA's prohibition against

unfair business practices.

180.    LG's misconduct, including the misrepresentations and/or concealment of the

defective condition of the Machines, as described in this Complaint, took place in the course of

trade or commerce in Illinois, and arose out of transactions that occurred at one or more of its

retail outlets in Illinois.

181.    As a direct and proximate result of LG's violations of the CFDPA, Plaintiff

Scalise and other members of the Illinois Sub-Class suffered damages, in the form of, *inter alia*,

monies spent to repair the Washing Machines and/or diminution in value of the Washing

Machines.

**THIRTEENTH CAUSE OF ACTION**
**Asserted, In The Alternative, On Behalf Of The Michigan Sub-Class Against LG**
**(Violation Of Michigan Consumer Protection Act ("MCPA"),**
**( M.C.L.A. § 445.901 *et seq.*)**

182.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

183.    At all relevant times hereto, Plaintiffs Grosso and the members of the Michigan

Sub-Class  were "persons" and LG was a "person" engaged in "trade or commerce" under the

MCPA.

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 296 of 309   Page ID
#:2897
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 41 of 54 PageID: 340

184.   Plaintiffs Grosso purchased their Washing Machine primarily for personal, family and household purposes.

185.   The practices of Defendant violate MCPA for, *inter alia,* one or more of the following reasons:

a.   LG engaged in unconscionable commercial practices in failing to reveal material facts and information about the Washing Machines, which did, or tended to, mislead Plaintiffs and the Class about facts that could not reasonably be known by the consumer;

b.   LG failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

c.   LG intended that Plaintiffs Grosso and the members of the Michigan Sub-Class rely on their omissions, so that Plaintiffs Grosso and the members of the Michigan Sub-Class would purchase the Washing Machines; and

d.   Under all of the circumstances, LG's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

186.   LG's violation of the MCPA did not result from a *bona fide* error notwithstanding the maintenance of procedures reasonably adopted to avoid the violations alleged herein.

187.   The foregoing acts, omissions and practices proximately caused Plaintiffs Grosso and the members of the Michigan Sub-Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to repair or replace the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

Exhibit ___J___ Pg. _296_

## FOURTEENTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The New York Sub-Class Against LG
### (Violations Of Section 349 Of New York General Business Law:
### Deceptive Acts And Practices)

188.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

189.   Plaintiffs Burke, Figueroa, and Manzello ("New York Plaintiffs") and the

members of the New York Sub-Class are consumers in New York who purchased the Washing

Machines and bring this action pursuant to NY GBL §349.

190.   LG has engaged in deceptive practices in the sale of the defective front loading

washing machines including: (1) selling washing machines with a design flaw that caused mold,

mildew and/or odor to occur with normal use and/or created a substantial risk of this; and (2)

failing to disclose and/or concealing this known defect and risk.

191.   The unfair and deceptive trade acts and practices of LG have directly, foreseeably

and proximately caused damages and injury to New York Plaintiffs and the other members of the

New York Sub-Class.

## FIFTEENTH CAUSE OF ACTION
### Asserted, In The Alternative On Behalf Of The North Carolina Sub-Class Against LG
### (Violations Of North Carolina's Unfair And Deceptive Trade Practices Act ("NCUDTPA"),
### N.C. Gen. Stat. § 75.1-1)

192.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

193.   North Carolina's Unfair and Deceptive Trade Practices Act prohibits "[u]nfair

methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or

affecting commerce." LG's business acts and practices alleged herein are a violation of the

statute and affected commerce within the meaning of NCUDPTA.

42


Exhibit ____ J ____ Pg. 297

194.    The purchase of LG Washing Machines by Plaintiffs Zimmerman and the North Carolina Sub-Class as described herein constitute transactions in commerce within the meaning of NCUDTPA.

195.    The practices of Defendant violate the NCUDTPA for, *inter alia*, one or more of the following reasons:

a.    LG failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

b.    LG caused Plaintiffs Zimmerman and the members of the North Carolina Sub-Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

c.    LG failed to disclose material facts regarding the defect in the Washing Machines and omitted material facts related to the defect in its marketing and sale of the Washing Machines;

d.    LG intended that Plaintiffs and the other members of the Class rely on their conduct and material omissions, so that Plaintiffs and other Class members would purchase the Washing Machines.

196.    LG omitted and concealed material facts from its communications and disclosures to Plaintiffs Zimmerman and all members of the North Carolina Sub-Class regarding the defects inherent in the Washing Machine.

197.    LG's acts and omissions had a tendency or capacity to deceive Plaintiffs Zimmerman and the North Carolina Sub-Class.

198.    Plaintiffs Zimmerman and the North Carolina Sub-Class were injured by reason of Defendant's acts and omissions.

43

Exhibit _J_ Pg. _298_

199.    LG's conduct as described herein was unfair, deceptive, in violation of public

policy, and substantially injurious to Plaintiffs Zimmerman and the North Carolina Sub-Class.

200.    Plaintiffs Zimmerman and the North Carolina Sub-Class have suffered actual

damages in the form of, *inter alia* monies spent to repair or replace the Washing Machines and/or

diminution in value of the Washing Machines, and are entitled to recover such damages, together

with appropriate exemplary damages, attorneys' fees, and costs of suit.

### SIXTEENTH CAUSE OF ACTION
**Asserted, In the Alternative, On Behalf Of The Pennsylvania Sub-Class Against LG**
**(Violation Of Pennsylvania Unfair Trade Practices And Consumer Protection**
**Laws ("UTPCPL"), 73 Pa.C.S.A. §§ 201-1, *et seq*)**

201.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

202.    LG is a manufacturer, marketer, seller and/or distributor of the Washing

Machines.

203.    The conduct alleged above constitutes unfair methods of competition or unfair or

deceptive acts or practices in violation of Section 201-2(4)(v),(vii), (xiv) and (xxi) of the

UTPCPL, 73 Pa.C.S.A. §§ 201-1, *et seq*.

204.    The UTPCPL applies to the claims of Plaintiff Ann Trethewey and the other

members of the Pennsylvania Sub-Class because the conduct which constitutes violations of the

UTPCPL by the Defendant occurred within the Commonwealth of Pennsylvania.

205.    Plaintiff Trethewey and the other members of the Pennsylvania Sub-Class are

consumers who purchased Washing Machines and did so primarily for personal, family or

household purposes within the meaning of 73 Pa.C.S.A. § 201-9.2.

206.    LG used and employed unfair methods of competition and/or unfair or deceptive

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 300 of 309   Page ID
#:2901
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 45 of 54 PageID: 344

acts or practices within the meaning of 73 Pa.C.S.A. §§ 201-2 and 201-3.  Such unfair methods

of competition and/or unfair or deceptive acts or practices include, but are not limited to the

following:

            a.        Failing to comply with any written guaranty or warranty given to the buyer

at, prior to, or after a contract for the purchase of goods or services was made (§ 201-2(4)(xiv))

(LG failed to comply with the written warranties set forth above); and

            b.        Engaging in any other fraudulent or deceptive conduct which creates a

likelihood of confusion or of misunderstanding (§ 201-2(4)(xxi)) (LG deceptively created the

likelihood of confusion or misunderstanding about the quality of the Washing Machines and LG's

intention to honor its warranties with respect to the Washing Machines).

        207.    LG knew or should have known that the Washing Machines were defective,

would fail prematurely, were not suitable for use, and otherwise were not as warranted and

represented by LG.

        208.    LG's concealments, omissions, deceptions and conduct were likely to deceive and

likely to cause misunderstanding and/or in fact caused Plaintiff Trethewey and the other members

of the Pennsylvania Sub-Class to be deceived and to misunderstand the suitability of the

Washing Machines for use and LG's intent to honor its warranties.

        209.    LG intended that Plaintiff Trethewey and the other members of the Pennsylvania

Sub-Class would rely on its misrepresentations, concealment, warranties, deceptions and/or

omissions.

        210.    Plaintiff Trethewey and the other members of the Pennsylvania Sub-Class have

been damaged as a proximate result of LG's violations of the UTPCPL and have suffered actual,

ascertainable losses by virtue of having purchased the Washing Machines.

211.     As a direct and proximate result of LG's violations of the UTPCPL as set forth

above, Plaintiff Trethewey and the other members of the Pennsylvania Sub-Class have suffered

an ascertainable loss of money and are therefore entitled to relief, including damages, plus triple

damages, costs and attorney's fees under Section 201-9.2 of the UTPCPL.

## SEVENTEENTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The Texas Sub-Class Against LG
### (Violation of Texas' Deceptive Trade Practices-Consumer Protection Act ("DTPA"), § 17.41, *et seq.*)

212.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

213.     At all relevant times, Plaintiff Olejniczak and the members of the Texas Sub-

Class were consumers within the meaning of DTPA.

214.     At all relevant times hereto, LG engaged in trade and/or commerce within the

meaning of DTPA.

215.     The practices of Defendant violate DTPA for, *inter alia*, one or more of the

following reasons:

a.     LG omitted and concealed material facts from its communications and

disclosures to Plaintiff Olejniczak and the members of the Texas Sub-Class regarding the defect

inherent in the Washing Machines;

b.     LG made false and/or misleading statements of material fact regarding the

Washing Machines, which statements were likely to deceive the public;

c.     LG knew, or was reckless in not knowing, that its statements about the

Washing Machines were false and/or misleading;

d.     LG represented that a guarantee or warranty confers or involves rights or

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 302 of 309   Page ID
#:2902
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 47 of 54 PageID: 346

remedies which it does not have;

        e.     LG represented that the Washing Machines had sponsorship, approval,
characteristic uses and benefits that they did not have; and

        f.     LG represented that the Washing Machines were of a particular standard,
quality or grade, when they were not.

    216.    By the conduct described herein, Defendant has engaged in unfair methods of
competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the
conduct of trade or commerce.

    217.    The representations and omissions by Defendant were likely to deceive reasonable
consumers and a reasonable consumer would have relied on these representations and omissions.

    218.    Had LG disclosed all material information regarding the Washing Machines to
Plaintiff Olejniczak and the members of the Texas Sub-Class, they would not have purchased the
Washing Machines.

    219.    The foregoing acts and practices proximately caused Plaintiff Olejniczak and the
members of the Texas Sub-Class  to suffer actual damages in the form of, *inter alia*, monies
spent to repair or replace the Washing Machines and/or diminution in value of the Washing
Machines, and are entitled to recover such damages, together with appropriate exemplary
damages, attorneys' fees and costs of suit.

**EIGHTEENTH CAUSE OF ACTION**
**Asserted, In the Alternative, On Behalf Of The Wisconsin Sub-Class Against LG**
**(Violations Of Wisconsin Deceptive Trade Practices Act, ("WDTPA")**
**Wis. Stat. Ann. § 100.18, *et seq.*)**

    220.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully
set forth herein.



Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 303 of 309   Page ID
#:2904
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 48 of 54 PageID: 347

221.   LG made, published, disseminated, circulated, and/or placed before the public,

and/or caused to be made, published, disseminated, circulated, or placed before the public,

advertisements, announcements, statements and representations to the public relating to the

purchase, sale, hire, and use of its Washing Machines, that contained assertions, representations

and statements of fact concerning the qualities and characteristics of such products.

222.   Such advertisements, announcements, statements and representations were made,

published, disseminated, circulated, and/or placed before the public pursuant to LG's intent: 1) to

sell, distribute and increase the consumption of its Washing Machines; and/or 2) to induce the

public to enter into contracts and/or obligations relating to the purchase, sale, hire, use or lease of

its Washing Machines.

223.   LG's aforementioned assertions, representations and statements of fact concerning

the qualities and characteristics of its Washing Machines were untrue, deceptive and misleading,

in violation of the WDTPA.

224.   LG's assertions, representations and statements of fact concerning the qualities

and characteristics of its Washing Machines were untrue, deceptive and misleading because they

misrepresented and concealed, suppressed and failed to disclose facts concerning defects in its

products that cause the formation of mold, mildew and/or odor within such products.

225.   LG's untrue, deceptive and misleading assertions, representations and statements

of fact concerning the qualities and characteristics of its Washing Machines materially induced

Plaintiff Demski and other members of the Wisconsin Sub-Class to purchase LG's Washing

Machines.

226.   Plaintiff Demski and other members of the Wisconsin Sub-Class suffered

pecuniary loss as result of LG's untrue, deceptive and misleading assertions, representations and

statements of fact concerning the qualities and characteristics of its Washing Machines.

227.    Plaintiff Demski and other members of the Wisconsin Sub-Class are entitled to damages equal to their pecuniary loss and costs, including reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and, where applicable, the Sub-Classes, pray for judgment against Defendant granting the following relief:

a.    An order certifying this case as a class action and appointing Plaintiffs' counsel to represent the Class and the Sub-Classes;

b.    Restitution and disgorgement of all amounts obtained by LG as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

c.    All recoverable compensatory and other damages sustained by Plaintiffs and the Class and Sub-Classes;

d.    Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class and Sub-Classes in the maximum amount permitted by applicable law;

e.    An order (1) requiring LG to immediately cease its wrongful conduct as set forth above; (2) enjoining LG from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering LG to engage in a corrective notice campaign; and (4) requiring LG to refund to Plaintiffs and all members of the Class the funds paid to LG for the defective Washing Machines;

f.    Statutory pre-judgment and post-judgment interest on any amounts;

g.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and



Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 305 of 309   Page ID
#:2906
Case 2:08-cv-00051-FSH-MAH   Document 32   Filed 05/06/08   Page 50 of 54 PageID: 349

h.      Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action so triable.

May 6, 2008                               Respectfully submitted,

                                          /s/James C. Shah
                                          James C. Shah
                                          Natalie Finkelman Bennett
                                          Nathan C. Zipperian
                                          SHEPHERD, FINKELMAN, MILLER &
                                          SHAH, LLP
                                          475 White Horse Pike
                                          Collingswood, NJ 08107
                                          Telephone:  (856) 858-1770
                                          Facsimile:  (856) 858-7012
                                          jshah@sfmslaw.com
                                          nfinkelman@sfmslaw.com
                                          nzipperian@sfmslaw.com

                                          Steven A. Schwartz
                                          Daniel B. Scott
                                          Alison R. Gabe
                                          CHIMICLES & TIKELLIS, LLP
                                          One Haverford Centre
                                          361 West Lancaster Avenue
                                          Haverford, PA 19041
                                          Telephone:  (610) 642-8500
                                          Facsimile:  (610) 649-3633
                                          stevenschwart@chimicles.com
                                          danielscott@chimicles.com
                                          arg@chimicles.com

                                          Oren Giskan
                                          Catherine E. Anderson

Darnley D. Stewart
GISKAN SOLOTAROFF & ANDERSON LLP
11 Broadway- Suite 2150
New York, NY 10004
Telephone: (212) 847-8315
ogiskan@gslawny.com
canderson@gslawny.com
dstewart@gslawny.com

Paul M. Weiss
George K. Lang
FREED & WEISS, LLC
111 West Washington Street, Suite 1331
Chicago, IL 60602
Telephone: (312) 220-0000
paul@freedweiss.com
george@freedweiss.com

James E. Miller
Patrick A. Klingman
Karen M. Leser-Grenon
SHEPHERD FINKELMAN MILLER &
SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
jmiller@sfmslaw.com
pklingman@sfmslaw.com
kleser@sfmslaw.com

Ronald S. Kravitz
Matthew Borden
LINER YANKELEVTTZ SUNSHINE
& REUENSTREIF LLP
199 Fremont Street, 20th Floor
San Francisco, CA 94105-2255
Telephone: (415) 489-7700
Facsimile: (415) 489-7701
rkravitz@linerlaw.com
mborden@linerlaw.com

Michael Boni
BONI & ZACK LLC

51

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 307 of 309   Page ID
#:2908
Case 2:08-cv-00051-FSH-MAH   Document 31   Filed 05/06/08   Page 52 of 54 PageID: 351

15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone:  (610) 822-0200
Facsimile:  (610) 822-0206
mboni@bonizack.com

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone:  (215) 553-7980
jshub@seegerweiss.com

Arthur L. Shingler, III
Hal Cunningham
SCOTT & SCOTT, LLP
600 B. Street, Suite 1500
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508
ashingler@scott-scott.com
hcunningham@scott-scott.com

Daniel R. Scott
SCOTT + SCOTT, LLP
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone:  (860) 537-5537
Facsimile:  (860) 537-4432
drscott@scott-scott.com

Beth Kaswan
SCOTT + SCOTT, LLP
29 West 57th Street
New York, NY 10019
Telephone:  (212) 223-6444
Facsimile:  (212) 223-6334
bkaswan@scott-scott.com

Marc Bradley Kramer

52

Case 8:10-cv-00711-DOC-AN   Document 102   Filed 07/11/12   Page 308 of 309   Page ID
#:2900
Case 2:08-cv-00051-FSH-MAH   Document 32   Filed 05/06/08   Page 53 of 54 PageID: 352

LAW OFFICES OF MARC B.
KRAMER, P.C.
150 JFK Parkway, Suite 100
Short Hills, NJ 07078
Telephone: (973) 847-5924
Facsimile: (973) 847-6005
marcbkramer@cs.com

Jacqueline Sailer
MURRAY, FRANK & SAILER LLP
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892
jsailer@murrayfrank.com


Mark Schlachet
3637 South Green Road
Beachwood, OH 44122
Telephone: (216) 896-0714
Facsimile: (212) 514-6406
mschlachet@clevelandnet.com

James E. Cecchi
Lindsey H. Taylor
CARELLA BYRNE BAIN GILFILLAN
CECCHI STEWART & OLSTEIN, PC
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
ltaylor@carellabyrne.com

Richard J. Burke
RICHARD J. BURKE, LLC
1010 Market Street, Suite 650
St. Louis, MO 63101
Telephone: (314) 621-8647
rich@richardjburke.com

Robert K. Shelquist
LOCKRIDGE, GRINDAL & NAUEN, P.L.L.P.

100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile:  (612) 339-0981
rkshelquist@locklaw.com

Brian Ruschel
925 Euclid Avenue, Suite 660
Cleveland, OH 44115
Telephone:  (216) 621-3770
Facsimile:  (216) 621-3771
bruschel@aol.com