1

2

3

4

5

6

7

8

9

10

11

12

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

13

| | |
|---|---|
| DIANA TAIT at el., on behalf of herself and others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| BSH HOME APPLIANCES CORPORATION, | ) ) ) |
| Defendant. | ) ) ) ) ) ) ) ) ) |

**Case No.: SA CV 10-0711 DOC (ANx)**

**ORDER**
1) **GRANTING IN PART PLAINTIFFS' MOTION TO CERTIFY CLASS (Dkt. 87)**
2) **DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT CHIN YANG (Dkt. 103)**
3) **DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT BRIAN CLARK (Dkt. 104)**

23

24    Before the Court are three motions: (1) Plaintiffs' Motion for Class Certification (Dkt.

25    87); (2) Defendant's Motion to Exclude Expert Chin S. Yang (Dkt. 103); and (3) Defendant's

26    Motion to Exclude Expert Brian Clark (Dkt. 104). After considering the filings and

27    supplemental briefing related to all motions and oral argument, the Court rules as follows. In

28    Part III, this Court concludes that Plaintiffs have satisfied the requirements of Rule 23(a), with

the exception that Plaintiff Tait has not shown that she is typical of the entire Illinois Class but

rather only of  a narrow class whose members are also subject to the same statute of limitations

defense.  In Part IV, this Court concludes that Plaintiffs have satisfied the requirements of Rule 23(b)(3).  Finally, in Part V, this Court addresses certain arguments by Defendant that are unpersuasive because they are not grounded in a Rule 23 analysis, including Defendant's argument in its Motions to Exclude that Plaintiffs' expert testimony is subject to a full *Daubert* analysis at the class certification stage.

Thus, this Court GRANTS IN PART Plaintiff's Motion for Class Certification.  This Court DENIES both of Defendant's Motions to Exclude.

## I.   Background

The gravamen of the Second Consolidated Amended Complaint ("SCAC") is that Defendant BSH Home Appliances Corporation ("Defendant") knew it had manufactured washing machines ("Washers") with a defective design resulting in a propensity to develop biofilm, mold, mildew, bacteria and foul odors ("BMFO") and failed to disclose this material fact to consumers.  Plaintiffs are Beverly Gibson ("Gibson"), Trish Isabella ("Isabella"), Diana Tait ("Tait"), and Nancy Wentworth ("Wentworth") (collectively, "Plaintiffs").

On May 17, 2012, Plaintiffs filed the instant Motion to Certify Class.  (Dkt. 87).  Plaintiffs seek class certification of four classes for violation of the following four states' laws: (1) California; (2) Illinois; (3) Maryland; and (4) New York.  Alternatively, in Supplemental Briefing requested by this Court, Plaintiffs sought certification of a narrower class under Illinois laws ("Illinois SOL Class").  The Court will refer to the four classes and the Illinois SOL Class collectively as "Five Classes."

### a.  California Class

Plaintiffs seek certification of a California Class ("California Class") comprised of: All persons who purchased a Washer (defined as Bosch and Siemens brand 27" Front-Loading Automatic Washers) in California for primarily personal, family or household purposes, and not for resale, in California, excluding (1) BSH Home Appliances Corporation ("Bosch"), any entity in which Bosch has a controlling interest, and its legal representatives, officers directors, employees, assigns, and successors; (2) Washers purchased through Bosch's Employee Purchase Program;

(3) the Judge to whom this case is assigned, any member of the Judge's staff, and any member of the Judge's immediate family; (4) persons or entities who distribute or resell the Washers; (5) government entities; and (6) claims for personal injury, wrongful death, and/or emotional distress.

Plaintiff proposes to certify this California Class for violation of:

(1) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.

(2) False Advertising Law ("FAL"), *id.* § 17500 et seq.

(3) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, § 17200 et seq.

(4) Breach of implied warranty, Cal. Civ. Code § 1790 *et seq.*

(5) Magnuson-Moss Warranty Act, 15 U.S.C. § 2301.

Mem. (Sealed Dkt. 90) at 2 n.2.

### a. Illinois Class

Plaintiffs seek to certify an Illinois Class defined basically in the same terms as the California Class, but with the word "Illinois" substituted for "California." Thus, the Illinois Class is comprised of:

All persons who purchased a Washer (defined as Bosch and Siemens brand 27" Front-Loading Automatic Washers) in Illinois for primarily personal, family or household purposes, and not for resale, in Illinois, excluding (1) BSH Home Appliances Corporation ("Bosch"), any entity in which Bosch has a controlling interest, and its legal representatives, officers directors, employees, assigns, and successors; (2) Washers purchased through Bosch's Employee Purchase Program; (3) the Judge to whom this case is assigned, any member of the Judge's staff, and any member of the Judge's immediate family; (4) persons or entities who distribute or resell the Washers; (5) government entities; and (6) claims for personal injury, wrongful death, and/or emotional distress.

Alternatively, in a Supplemental Brief solicited by this Court regarding Defendant's argument that Plaintiff Tait is atypical because she is subject to a statute of limitations defense, Plaintiffs propose to certify a narrower class ("Illinois SOL Class"). This Illinois SOL Class is defined in

the same terms as the Illinois Class except that the former requires class members' purchase date to be prior to June 3, 2007:

> All persons who purchased a Washer (defined as Bosch and Siemens brand 27"
> Front-Loading Automatic Washers) in Illinois for primarily personal, family, or
> household purposes, and not for resale, in Illinois prior to June 3, 2007, excluding
> (1) BSH Home Appliances Corporation ("Bosch"), any entity in which Bosch has
> a controlling interest, and its legal representatives, officers, directors, employees,
> assigns, and successors; (2) Washers purchased through Bosch's Employee
> Purchase Program; (3) the Judge to whom this case is assigned, any member of the
> Judge's staff, and any member of the Judge's immediate family; (4) persons or
> entities who distribute or resell the Washers; (5) government entities; and (6)
> claims for personal injury, wrongful death, and/or emotional distress.

Pls.' Supp. Br. (Dkt. 164) at 4.  Plaintiff proposes to certify the Illinois Class or, alternatively, the Illinois SOL Class for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), IL ST CH 815 § 505/2. Mem. (Sealed Dkt. 90) at 2 n.2.

### b.  Maryland Class

Plaintiffs seek to certify a Maryland Class defined basically in the same terms as the California Class, but with the word "Maryland" substituted for "California."  Thus, the Maryland Class is comprised of:

> All persons who purchased a Washer (defined as Bosch and Siemens brand 27"
> Front-Loading Automatic Washers) in Maryland for primarily personal, family or
> household purposes, and not for resale, in Maryland, excluding (1) BSH Home
> Appliances Corporation ("Bosch"), any entity in which Bosch has a controlling
> interest, and its legal representatives, officers directors, employees, assigns, and
> successors; (2) Washers purchased through Bosch's Employee Purchase Program;
> (3) the Judge to whom this case is assigned, any member of the Judge's staff, and
> any member of the Judge's immediate family; (4) persons or entities who distribute

or resell the Washers; (5) government entities; and (6) claims for personal injury, wrongful death, and/or emotional distress.

Plaintiff proposes to certify the Maryland Class for violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301.  Mem. (Sealed Dkt. 90) at 2 n.2.

### c.  New York Class

Plaintiffs seek to certify a New York Class defined basically in the same terms as the California Class, but with the word "New York" substituted for "California."  Thus, the New York Class is comprised of:

All persons who purchased a Washer (defined as Bosch and Siemens brand 27" Front-Loading Automatic Washers) in New York for primarily personal, family or household purposes, and not for resale, in New York, excluding (1) BSH Home Appliances Corporation ("Bosch"), any entity in which Bosch has a controlling interest, and its legal representatives, officers directors, employees, assigns, and successors; (2) Washers purchased through Bosch's Employee Purchase Program; (3) the Judge to whom this case is assigned, any member of the Judge's staff, and any member of the Judge's immediate family; (4) persons or entities who distribute or resell the Washers; (5) government entities; and (6) claims for personal injury, wrongful death, and/or emotional distress.

Plaintiffs seek to certify a New York Class for violation of:

(1) New York General Business Law ("GBL") § 349;

(2) New York GBL § 350;

(3) Breach of implied warranty, N.Y. U.C.C. Law § 2-31;

(4) Magnuson-Moss Warranty Act, 15 U.S.C. § 2301.

Mem. (Sealed Dkt. 90) at 2 n.2.

### V.  Legal Standard

Federal Rule of Civil Procedure 23 governs class actions.  Fed. R. Civ. P. 23.  A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of

plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)). The party may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977) (citing *Gillibeau v. Richmond*, 417 F.2d 426, 432 (9th Cir. 1969)).

After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action.  Fed. R. Civ. P. 23(b)(1-3).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion.  *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).  However, a party seeking class certification must affirmatively demonstrate compliance with Rule 23—that is, the party must be prepared to prove that there are *in fact* sufficiently numerous parties and common questions of law or fact.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).  This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  *Id.*

## VI.   Class Certification Under Rule 23(a)

The Court first concludes that Plaintiffs have satisfied the requirements of Rule 23(a), with the exception that Plaintiff Tait has not shown that she is typical of the entire Illinois Class but is typical of the Illinois SOL Class.

### a.   Numerosity

Numerosity, the first prerequisite of class certification, requires that the class be "so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1).  A proposed

class of at least forty members presumptively satisfies the numerosity requirement.  *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds by County of Los Angeles v. Jordan*, 459 U.S. 810 (1982); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).

Here, Defendant does not dispute that each of the Five Classes satisfy the numerosity requirement, and the evidence that Plaintiffs presented in this motion confirm that this prerequisite is satisfied.  Specifically, Plaintiffs contend, and Defendant does not dispute, that Defendant admits to having sold 196,558 Washers from 2005-2011, including 73,040 in California, 41,420 in Illinois, 7,998 in Maryland and 74,100 in New York.  *See* Mem. (Sealed Dkt. 90) at 18; Kubik Decl. Ex. 17 at 110.  Alternatively, the Illinois SOL Class would also satisfy the numerosity requirement because about 12,000 Washers were sold prior to June 3, 2007. *See* Pls.' Supp. Br. (Dkt. 164) at 1 n.1.

Thus, the Court concludes each of the Five Classes contain at least forty members and the numerosity requirement of Rule 23 is satisfied.  *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011) ("Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied.").

### b.  Commonality

The "commonality" prerequisite mandates that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality requires that class members share a common claim and this claim is "capable of classwide resolution," meaning that determination of the claims' "truth or falsity will resolve an issue that is central to [the claims'] validity."  *Wal-Mart Stores, Inc. v. Dukes* (*Dukes III*), 131 S. Ct. 2541, 2551 (2011).  Claims arising under consumer protection statutes are well-suited for class certification.  *See, e.g., Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re First Alliance Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006).

The requirements of Rule 23(a)(2) have "been construed permissively," and just one common question of law or fact will satisfy the rule.  *See Ellis v. Costco Wholesale Corp.*, 657

F.3d 970, 981 (9th Cir. 2011).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion [predominance] requirements of Rule 23(b)(3)."  *Id.*

Plaintiffs present the following common questions of law and fact that will be resolved by this action, namely, whether:

(1) the Washers have a propensity to develop BMFO;

(2) Defendant knew that the Washers have a propensity to develop BMFO;

(3) Defendant's omissions of the material fact that the Washers have a propensity to develop BMFO was likely to deceive a reasonable consumer;

(4) Plaintiffs and the rest of the classes are entitled to equitable relief, including but not limited to restitution;

(5) as a result of Defendant's conduct, Plaintiffs have suffered damages and, if so, the proper amount thereof.

*See* Mem. (Sealed Dkt. 90) at 19.  These common questions of law and fact are susceptible to common proof—that is, testimony by named Plaintiffs' and their experts explaining how a defective design caused the Washers' propensity for BMFO, as well as Defendant's internal documents indicating Defendant's knowledge of such propensity—the "truth or falsity" of which "will resolve an issue that is central to [the claims'] validity."  *See Dukes III*, 131 S. Ct. at 2551. As Plaintiffs' expert explains, all "models" at issue in this case "have similar key components, such as the plastic outer tub, clothes basket support, tub-to-pump hose, and door gasket."[1]  Clark Decl. (Dkt. 91) Ex. 1 at 12.  Because the claims of all prospective class members involve the same alleged defect and found in Washers containing the same key components, they are susceptible to common proof sufficient to meet the commonality requirement of Rule 23(a)(2). *See Keegan v. Am. Honda Motor Co., Inc.*, --- F.R.D. ---, CV 10-09508 MMM AJWX, 2012 WL

---

[1] As explained at length in Part V of this Order, the opinion of Plaintiff's expert, Brian Clark, on this issue is reliable and thus supports Plaintiffs' contention of commonality.

2250040, *12 (certifying class under California's UCL and CLRA, as well as New York's GBL § 349, and holding that commonality requirement was met in products liability action against automobile manufacturer alleging that vehicles' defective rear suspensions caused propensity for irregular tire wear because the claims of all prospective class members involved same alleged defect in vehicles of same make and model).

Defendant does not appear to substantively dispute that these common questions satisfy the commonality requirement, instead focusing its challenge on Plaintiffs' ability to satisfy the predominance requirement of Rule 23.  *See* Defs. Opp'n (Dkt. 110) at 10 (discussing class certification standard in the context of "whether questions of law or fact common to class members predominate").[2]  Defendant argues in its motion that one of its Washer "platforms," the "Vision," is a "different design" from the platform of Plaintiffs' Washers, despite using "some of the same parts."  *See* Defs. Opp'n (Dkt. 110) at 10.  However, argument without support from an expert or citation to the record is insufficient to defeat Plaintiffs' showing of commonality.

In sum, all Five Classes satisfy the commonality requirement of Rule 23(a)(2).

---

[2] To the extent that Defendant's frequent invocation of *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) is intended to suggest that certification of *consumer* class action has become more difficult, the Court rejects this argument.  As other courts in the Central District have held, allegations that a defendant made misrepresentations or omission to consumers reflect a defendant's common business practice and thus are distinguishable from the allegations found insufficient in *Dukes*.  *See, e.g., Johnson* v. *General Mills, Inc.*, 276 F.R.D. 519, 521-22 (C.D. Cal. 2011) (in stark contrast to *Dukes*, plaintiffs' UCL and CLRA claims "have at their heart a common contention"); *Wong* v. *AT&T Mobility Servs., LLC*, 2011 U.S. Dist. LEXIS 125988, at *5 (C.D. Cal. Oct. 20, 2011) (noting the enduring validity of *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) even after *Dukes*); *see also Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 172 (S.D.N.Y. 2011) (rejecting defendant's urging to analogize *Dukes* to plaintiffs' claims of "deceptive business practices under New York's General Business Law" because "[u]nlike [the] discrimination claims" in *Dukes*, plaintiffs' claims "do not necessarily depend on any specific motivation" by defendant).

### c.  Typicality

The typicality requirement demands that a named plaintiff's claims be "reasonably co-extensive with those of absent class members," although "they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  "The purpose of the typicality requirement is to assure that the interests of the named representative aligns with the interests of the class."  *Hanon*, 976 F.2d at 508.

Defendant challenges the typically of all the named Plaintiffs except for Plaintiff Isabella. The Court addresses each one in turn.

### i. California Class

Defendant contends that Plaintiff Wentworth is not typical of the California Class because she testified that her mother purchased the Washer and paid for it with a credit card.  Defs. Opp'n (Dkt. 110) at 9-10.   Defendant contends that this testimony contradicts Plaintiff Wentworth's declaration wherein she states "I purchased" and "I bought" the Washer at issue. *Id.*; Wentworth Decl. at 2.  Defendant cites no authority to explain how this purported discrepancy could be used as a unique defense against Plaintiff Wentworth, although Defendants allude to the UCL's requirement that a plaintiff lose money or property as a result of the unfair competition for which she sues.  *See* Cal. Bus. & Prof. Code § 17204.

Regardless, Plaintiffs have cured any infirmity by providing a declaration from Plaintiff Wentworth explaining that her parents loaned her the funds for the Washer and that the loan is now memorialized in writing.  Pls. Reply at 27.  Alternatively, to the extent that Plaintiff Wentworth's parents have any rights in the Washer, that same writing memorializing the loan also assigns those rights to Plaintiff Wentworth.  *Id.*  Thus, while this Court doubts that Plaintiff Wentworth could have been subject to any unique defense due to a purported failure to have lost money or property, she certainly can not be subject to that defense now.

In sum, the Court concludes that Plaintiff Wentworth is typical of the California Class.

### ii.  Maryland Class

Defendant contends that Plaintiff Gibson is not typical of the Maryland Class because her spouse, who is not a named plaintiff in this suit, was the one who visited Defendant's website

and purchased the Washer.  Defs. Opp'n (Dkt. 110) at 8.  Defendant contends that "a spouse who relies exclusively on [the] other spouse for a transaction has no MCPA claim," citing *Bank of Am. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505 (D. Md. 2011).  Defs. Opp'n (Dkt. 110) at 8.

As Plaintiff contends, *Mitchell* merely stands for the proposition that a person who is not exposed to a misrepresentation can not sue for a violation of the MCPA.  As Plaintiff explains, the court in *Mitchell* simply held that the wife could not bring a counterclaim based on oral misrepresentations and omissions in communications to which she was never exposed where those communications occurred exclusively between her husband and the counter-defendant.  *Mitchell*, 822 F. Supp. 2d at 514 (finding undisputed that the counter-defendant "did not make the statement to" the wife, the wife "failed to read" the contract at issue, and she "played no role in the negotiation process").

In contrast to *Mitchell*, Plaintiff Gibson's theory of liability is not premised on *oral communications to which she was not exposed*.  Rather, Plaintiff Gibson contends that Defendant omitted warnings to all customers about the Washers' design defect that created a propensity for BMFO; for example, Defendant's senior management expressed the desire to eliminate references to odor problems in the Washers in any point-of-purchase labeling.  *See* (Dkt. 92) Ex. 10 at 77.  Because Defendant's alleged omissions applied to all class members by virtue of their purchasing the product, there is nothing unique about Defendant failing to warn Plaintiff Gibson specifically.  Indeed, Plaintiffs handily distinguishes *Mitchell* by presenting the testimony of Plaintiff Gibson that: (1) her husband relayed to her his research on the Washers (Eppsteiner Reply Decl. at 80); (2) her husband purchased the Washer for their home (*id.* at 77); (3) she consented to the purchase (*id.* at 76); (4) the purchase was made via a joint credit account (*id.* at 78); and (5) Plaintiff Gibson paid the credit card bill for the Washer (*id* at 79).

The Court is satisfied with Plaintiffs' distinctions between *Mitchell* and the present case, and thus the Court concludes that Plaintiff Gibson is typical of the Maryland Class.  In addition, any concerns the Court might have had are assuaged by the additional representations by Plaintiff Gibson's husband that he "is ready to act" if necessary.  *See* Pls. Reply at 32 n.33.

### iii.   Illinois Class

Defendant contends that Plaintiff Tait is not typical of the Illinois Class because she testified that she noticed a foul odor just two months after she bought her Washer on July 4, 2005, and thus the three-year statute of limitations had run by the time she sued on June 3, 2010. Defs. Opp'n (Dkt. 110) at 9.  The statute of limitations for an action under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") "is three years and begins to run when the cause of action accrues."  *Gredell v. Wyeth Laboratories, Inc.*, 346 Ill. App. 3d 51, 57, 803 N.E.2d 541, 546 (2004) (citing 815 ILCS 505/10a(e)).  "For the purposes of statute of limitations, a cause of action accrues when 'a reasonable person knows, or in the exercise of reasonable diligence should have known of both the injury *and the governing cause*."  *Fries v. Chicago & Northwestern Transp. Co.,* 909 F.2d 1092, 1095 (7th Cir.1990) (emphasis added). The Court requested supplemental briefing on this issue and the parties have kindly obliged.

Plaintiff Tait is obviously typical of the narrower Illinois SOL Class whose members may be subject to the same statute of limitations defense as Tait because they bought their Washers more than three years before Plaintiffs filed their Complaint.  *See Alexander v. JBC Legal Group, P.C.*, 237 F.R.D. 628, 631 (D. Mont. 2006) (holding that typicality requirement was met where "at least some of the other class members may also have received the letter outside of the statute of limitations").  Thus, Plaintiff Tait has satisfied the typicality requirement with respect to the Illinois SOL Class.

Plaintiff Tait is not typical of the entire Illinois Class because it appears that roughly three-quarters of the Illinois Class bought their Washers less than three years prior to Plaintiffs filing their Complaint, and thus most of the Illinois Class would not be subject to statute of limitations defense that Defendants can raise against Plaintiff Tait.  However, as an alternative to denying certification of the Illinois Class, this Court provides Plaintiffs with the opportunity to locate a class representative who could represent the entire Illinois Class because, "[a]s long as the proposed class satisfies the requirements of Rule 23, the court may certify the class conditioned upon the substitution of another named plaintiff."  *Nat'l Fed'n of Blind v. Target Corp.*,  582 F.  Supp. 2d 1185, 1209 (N.D. Cal. 2007) (giving plaintiffs leave to locate a class

representative to replace the person initially proposed as the class representative); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 673 (C.D. Cal. 2009) (gving plaintiff who failed to satisfy typicality requirement "leave to substitute in an appropriate class representative"); *Kremens v. Bartley*, 431 U.S. 119,  134-35 (1977) (ordering "substitution of class representatives with live claims" where named  plaintiffs' claims were determined to be moot).

Thus, this Court GRANTS Plaintiffs leave to amend to substitute another class representative who can represent the entire Illinois Class.  Plaintiff shall file a proposed amendment to the operative SCAC **on or before February 6, 2012**.  To expedite this process of locating an Illinois Class representative and to deliver notice to the class members, this Court ORDERS Defendant to produce to Plaintiffs, **within 10 days** of the entry of the present class certification Order, Defendant's documents, hardcopy and electronic, with unredacted information about the identity of all Washer owners.  *See Kamm v. Califorrnia City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975) ("The propriety of a class action cannot be determined in some cases without discovery, as for example, where discovery is necessary to determine the existence of a class or set of subclasses."); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (l978) (noting that district courts are empowered to enter appropriate orders in handling of class actions including the authority to issue order directing defendants to help compile a list of class members).

### iv.   Conclusion regarding typicality

In sum, this Court holds that all Plaintiffs have satisfied the typicality requirement, although Plaintiff Tait is typical of only the Illinois SOL Class, not the entire Illinois Class.  As an alternative to denying certification of the Illinois Class, this Court gives Plaintiffs leave to amend to substitute another class representative who can represent the entire Illinois Class.

### d.  Adequacy of the Named Representative

An adequate representative is one who will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Due process requires that absent class members have an adequate representative.  *See Hansberry v. Lee*, 311 U.S. 32, 43 (1940).  A representative is adequate where: (1) there is no conflict of interest between the representative and her counsel

and absent class members; and (2) the representative and her counsel will "pursue the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 120 (internal citations and quotations omitted).

### i. Class counsel are competent

To be adequate, plaintiffs' counsel must be qualified, experienced, and generally able to conduct the proposed litigation. *See Lerwill* v. *Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Defendant does not dispute and the evidence confirms that, as detailed in their declarations, Plaintiffs' counsel have significant experience in prosecuting consumer fraud and warranty class actions. Eppsteiner Decl. ¶¶ 13-17, 35-41; Ex 2-5.

Plaintiffs also request that their counsel be appointed class counsel pursuant to Rule 23(g)(1). Mem. (Sealed Dkt. 90) at 28 n.13. The Court GRANTS the request.

### ii.    Plaintiffs are adequate representatives

The evidence confirms that the interests of Plaintiffs and the members of the classes are fully aligned in determining the questions common to the Five Classes, such as whether Defendant sold defective Washers and failed to disclose the Washer's propensity to develop BMFO. Plaintiffs aver that they do not have any conflicts with the members of the classes and will continue to vigorously pursue relief on behalf of the proposed classes. Tait Decl. (Dkt. 87-5) at ¶¶ 7-9; Gibson Decl. at ¶¶ 7-9; Wentworth Decl. at ¶¶ 10-12; Isabella Decl. at ¶¶ 6-8.

Defendant briefly argues that Plaintiff Tait lacks a "stake in the case" because her attorneys have given her $973.17, which is equivalent to the cost of her Washer. Defs. Opp'n (Dkt. 110) at 8:26-28, 9:1-11. Defendant cites no authority and provides no explanation by which this Court can glean *to which* of the Rule 23 requirements this argument applies; the Court addresses it here because it is as good a place as any.

The Court rejects Defendant's unsupported argument because Plaintiff Tait has demonstrated her commitment to "pursu[ing] the action vigorously on behalf of the class" due to her devotion of time and energy in this lawsuit that far exceeds the value of her Washer. *See Hanlon*, 150 F.3d at 120. As Plaintiff Tait avers, she has traveled from Norridge Illinois to San Diego California to meet with her attorney the day before her deposition, stayed overnight, and

was deposed the following day.  Tait Decl. (Dkt. 87-5) at ¶ 8.  She also has provided information and documents to her attorneys to respond to Defendant's interrogatories.  *Id.*  Even if Plaintiff Tait had not done so much, this Court would still be inclined to reject Defendant's argument because it fails to account for the sacrifices endured by a class action representative on behalf of the class; lawsuits are stressful endeavors in which class action representatives are often subjected to sinister scrutiny and significant loss of privacy.  The Court sees no reason why it should punish those who will make that personal sacrifice on behalf of their fellow consumers to ensure that consumer protections are enforced.

Thus, the Court concludes that both Plaintiffs' counsel and the named Plaintiffs have and will continue to adequately represent the Five Classes.

### e.  Conclusion

For the reasons stated above, the Court concludes that Plaintiff has satisfied Rule 23(a), with the exception that the Court Plaintiff Tait is not typical of the entire Illinois Class.

## VII.   Class Certification under Rule 23(b)(3)

After satisfying the requirements of Rule 23(a), the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b).  The Court has concluded that the prerequisites of Rule 23(a) are met.  Thus, the Court turns to the requirements of Rule 23(b)(3): whether common questions of law or fact predominate among class members and whether the class device offers a superior means of resolving the dispute.

### a.  Predominance

The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation," a standard "far more demanding" than the commonality requirement of Rule 23(a).  *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  However, predominance is also "readily met in certain cases alleging consumer . . . fraud."  *Id.* at 625; *In re First Alliance Mortg. Co.,* 471 F.3d 977, 992 (9th Cir. 2006).

The Court concludes that the central questions in this case predominate over any individual question.  Here, the central predominating questions are whether:

(1) the Washers have a propensity to develop BMFO;

(2) Defendant knew that the Washers have a propensity to develop BMFO;

(3) Defendant's omissions of the material fact that the Washers have a propensity to develop BMFO was likely to deceive a reasonable consumer;

(4) Plaintiffs and the rest of the classes are entitled to equitable relief, including but not limited to restitution; and

(5) as a result of Defendant's conduct, Plaintiffs have suffered damages and, if so, the proper amount thereof.

*See* Mem. (Sealed Dkt. 90) at 19; *see also Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 285, 287, 289 (C.D. Cal. 2011) (holding that similar common questions predominated and thus certifying consumer class action under California's UCL and CLRA).

### i. Defendant's misuse defense as applied to all Five Classes

Defendant contends that class certification is somehow improper due to Defendant's defense that the BMFO in Plaintiffs' Washers is caused by consumer misuse rather than a defective design. While Defendant provides no explanation as to *which* of the Rule 23 requirements its argument applies, the Court addresses it here because Defendant seems to suggest that individual inquiries will predominate. Charitably construed, Defendant's argument appears to be that consumer misuse, such as failure to leave the Washer door ajar, requires individual inquiries in to the class members' use of the product. *See, e.g.,* Defs. Opp'n (Dkt. 110) at 13:7-13; *see also id.* at 12:1-14 (arguing that whether an odor is "foul" is inherently subjective), 13:14-22 (arguing that some customers may use "too much soap" or that the wrong detergent can "affect washer drainage and operation").[3]

To the extent Defendant argues that its consumer misuse defense will require individual inquiries, this argument fails because the Ninth Circuit and other circuits have roundly rejected the relevance of such a defense where the plaintiff's theory is based on a design defect. For example, in *Wolin v. Jaguar Land Rover North Am.*, the district court denied class certification

---

[3] As Plaintiffs note, Defendant's speculation about Plaintiff Wentworth's installation of her washer is irrelevant because Defendant did not raise installation as an affirmative defense in its Answer and thus can not do so now. *See* Reply 4 n. 7; Defs. Opp'n at 12:15-18 – 13:1-6.

due to plaintiffs' "fail[ure] to prove that their tires wore prematurely due to a defect" in the tire alignment, rather than to customer misuse, and the Ninth Circuit reversed.  617 F.3d 1168, 1173 (9th Cir. 2010).  The defendant contended that denial of certification was proper because its defense was based on evidence that "tire wear [was] due to *individual* factors such as driving habits and weather."  *Id.* (emphasis added).  The Ninth Circuit explained that, "[a]lthough individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect."  *Id.*  The Ninth Circuit rejected this argument, reasoning that, plaintiffs "assert that the defect exists in the [design], that [defendant] failed to reveal material facts in violation of consumer protection laws, and that [defendant] was unjustly enriched when it sold a defective vehicle" and "[a]ll of these allegations are susceptible to proof by generalized evidence."  *Id.*

The Sixth Circuit recently relied on *Wolin* to uphold certification of a consumer class action where, like in the present case, the plaintiffs contended that the defendant omitted to tell consumers about the defective design of its washer.  *See In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.,* 678 F.3d 409, 420 (6th Cir. 2012).  In *In re Whirlpool*, the Sixth Circuit rejected the defendant's argument that its consumer misuse defense required individual inquiries, citing *Wolin* for the proposition that "class plaintiffs may be able to show that each class member was injured at the point of sale upon paying a premium price for the [washer] as designed, even if the washing machine purchased by some class members have not developed the mold problem."  *Id.*  (citing *Wolin*, 617 F.3d at 1173).  District courts have also followed suit.  *See Keegan v. Am. Honda Motor Co., Inc.*, --- F.R.D. ---, CV 10-09508 MMM AJWX, 2012 WL 2250040, *20 (C.D. Cal. June 12, 2012) (following *Wolin* to certify consumer class action under several different states' laws).

As in *Wolin* and *In re Whirlpool*, Plaintiffs' theory of liability is that they overpaid for a product because Defendant never warned consumers that the product had a defective design, namely, the Washer's propensity to develop BMFO.  As *Wolin* and *In re Whirlpool* make clear, Plaintiffs need only prove that Defendant's products had a common design and the design created a *propensity* for the products to develop an undesirable condition; Plaintiffs need not

prove that every product *actually* developed this undesirable condition.  Plaintiffs need not prove that the undesirable condition—here, BMFO—*actually* developed in every product because the harm for which Plaintiffs sue is not the *actual manifestation* of BMFO, but for Defendant's *failure to disclose* the Washers' *propensity* to develop BMFO.  Thus, Defendant's arguments and evidence about alternative explanations for the actual manifestation of BMFO in Plaintiffs' Washers is simply a red herring.

Thus, the Court rejects Defendant's argument to the extent it contends that its consumer misuse defense will cause individual inquiries to predominate over Plaintiffs' common questions.

### ii.    California Class

Plaintiffs seek to certify claims of a California Class for violation of: (1) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (2) False Advertising Law ("FAL"), *id.* §§ 17500 et seq.; and (3) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200 et seq.  Mem. (Sealed Dkt. 90) at 2 n.2.

California's UCL, "FAL and CLRA rely on the same objective test, that is, whether 'members of the public are likely to be deceived.'" *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 532 (C.D. Cal. 2011) (quoting *In re Tobacco II Cases,* 46 Cal. 4th 298, 312 (2009); *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (holding that, under CLRA, "[c]ausation, on a classwide basis, may be established by *materiality*," meaning that "[i]f the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class").  This objective test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate "class members' individual interaction with the product."  *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 535 (C.D. Cal. 2011); *Yumul v. Smart Balance, Inc.,* 733 F.Supp.2d 1117, 1125 (C.D.Cal.2010) ("California courts have held that reasonable reliance is not an element of claims under the UCL, FAL, and CLRA.").

For this reason, district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL.  *See e.g., Keegan v. Am. Honda*

*Motor Co., Inc.*, CV 10-09508 MMM AJWX, --- F.R.D. ---, 2012 WL 2250040 (certifying "a California UCL/CLRA class of purchasers" of vehicles); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012) (denying reconsideration of nationwide class certified under California's UCL, FAL, and CLRA and noting that "[d]istrict courts routinely apply the . . . California Consumers Legal Remedies Act (CLRA) and Unfair Competition Law (UCL) . . . to nationwide classes"); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 375–80 (N.D.Cal.2010) (Walker, J.) (certifying class under California's CLRA and UCL); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D.Cal.2008) (same).

Nonetheless, Defendant argues that the California Class should not be certified because: (1) Plaintiffs' CLRA claim is premised on Defendant's omission of a fact exclusively within Defendant's knowledge, namely, the Washers' propensity to develop BMFO, and Plaintiffs can not show Defendant's exclusive knowledge because articles existed regarding BMFO in washers other than Defendants' Washers (Defs. Opp'n (Dkt. 110) at 19-20); and (2) the presumption of reliance on Defendant's misrepresentation does not arise unless the consumers are exposed to the same misrepresentations (Defs. Opp'n (Dkt. 110) at 15).

### 1.   The *Judkins* test requiring proof of Defendant's exclusive knowledge does not require individual inquiries that predominate such that they defeat class certification

Where, as here, Plaintiffs' CLRA claim is premised on an "omission," the omission must be either: (1) "contrary to a representation actually made by the defendant"; or (2) "an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006). An obligation to disclose exists for purposes of a CLRA claim based on "failure to disclose a fact" in either of "four circumstances": "(1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; [or] (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Collins v. eMachines, Inc.*,

202 Cal. App. 4th 249, 255-56 (2011) (citing *LiMandri v. Judkins* 52 Cal.App.4th 326, 336 (1997)).

These "four circumstances" are commonly referred to as the "*Judkins* test" based on the name of the most commonly-cited case.  *See Tait v. BSH Home Appliances Corp.*, SACV 10-00711 DOC, 2011 WL 3941387, *3 (C.D. Cal. Aug. 31, 2011).  This Court previously denied Defendant's motion to dismiss the SCAC because "Plaintiffs have alleged sufficient facts to establish a duty to disclose under at least the second and third prong of the *Judkins* test."  *Tait*, 2011 WL 3941387 at *3.  Only the second circumstance is relevant here, namely, "when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff."  *Collins*, 202 Cal. App. 4th at 255-56.

Defendant contends that the California Class should not be certified because individual issues will predominate regarding the proof that Defendant's omission in this case was of a material fact exclusively within its knowledge.  Defendant argument is that, to the extent that Plaintiff's CLRA claim is premised on Defendant's omission of a fact exclusively within Defendant's knowledge—namely, the Washers' propensity to develop BMFO—individual issues will predominate because articles existed regarding BMFO in washers other than Defendants' Washers.  Defs. Opp'n (Dkt. 110 at 19-20.

First, Defendant's argument that a CLRA claim can not be certified fails because it does not address *all* the *Judkins* circumstances through which Plaintiffs *might* prove their CLRA claim.  Thus, even if individualized inquires are required to determine the facts satisfying the second circumstance of the *Judkins* test, this says nothing about whether individualized inquiries would be required if Plaintiffs instead prove their CLRA claim through any of three other *Judkins* circumstances.  For example, Plaintiffs contend that the third *Judkins* circumstance—Defendant's active concealment of a material fact from Plaintiffs—can by shown by common proof.  Mem. (Sealed Dkt. 90) at 7-10.  This common proof includes the desire expressed by Defendant's senior management to eliminate references to odor problems in the Washers in any point-of-purchase labeling.  *See* (Dkt. 92) Ex. 10 at 77.  The common proof also entails Defendant's repeated denial of the existence of a defect to complaining customers and

authorities.  *Id.* Ex. 1-3; Ex. 8 at 55 ("there is no defect, and no safety issue"); Ex. 9.  Defendant has made no argument that this third *Judkins* circumstance is not susceptible to common proof, and the Court concludes that it is.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,* & *Products Liab. Litig.,* 754 F. Supp. 2d 1145, 1192 (C.D. Cal. 2010) ("[A]llegations that [manufacturer] repeatedly denied the existence of the alleged [] defect [] are sufficient to demonstrate active concealment.").

Second, to the extent that Plaintiffs do seek to prove their CLRA claim via the second *Judkins* circumstance, this Court is not persuaded by Defendant's argument that individual inquires will predominate regarding whether Defendant's omission is a material fact not known or reasonably accessible to the class.  Defendant relies on *Sanchez v. Wal Mart Stores, Inc.*, which denied certification for failure to satisfy *every* Rule 23 requirement and reached its predominance holding by citing a Seventh Circuit case for the proposition that "[c]lass members are likely to react differently to the" material fact that defendants allegedly failed to disclose to consumers.  *Sanchez v. Wal Mart Stores, Inc.*, CIV 206CV02573JAMKJM, 2009 U.S. Dist. Lexis 48428, at *8, 2009 WL 1514435, *3 (E.D. Cal. May 28, 2009).  To the extent the holding in *Sanchez* was ever accurate—which this Court very much doubts—*Sanchez* is certainly no longer good law and has been recognized by courts to be "directly contradicted by the *In re Tobacco II* decision" that the California Supreme Court "handed down at approximately the same time as *Sanchez*."  *See Guido v. L'Oreal, USA, Inc.*, CV 11-1067 CAS JCX, 2012 WL 1616912 at *7 (C.D. Cal. May 7, 2012) *holding undisturbed on reconsideration by* CV 11-1067 CAS JCX, 2012 WL 2458118 (C.D. Cal. June 25, 2012); *compare Sanchez*, 2009 WL 1514435, at *3 (suggesting that "innumerable variations in the experiences and information possessed by consumers" for purchasing a product had some bearing on predominance under Rule 23) *with In re Tobacco II Cases,* 46 Cal. 4th 298, 320 ("[R]elief under the UCL is available without individualized proof of deception, reliance and injury") (2009); *see also Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1020-21 (9th Cir. 2011) (holding that district court erred in Rule 23 analysis by concluding that class members' "individualized proof of reliance and causation

would be required" for liability under the California UCL because *In re Tobacco II Cases* held to the contrary).[4]

### 2. Reliance under the CLRA, FAL, and UCL do not present individual inquiries that predominate such that they defeat class certification

Defendant fleetingly argues that class members' reliance on Defendant's omission will require an individualized inquiry because a presumption of reliance does not arise unless the consumers are exposed to the same misrepresentations, citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012).  Defs. Opp'n (Dkt. 110) at 21.

In *Mazza*, the Ninth Circuit held that a "presumption of reliance does not arise when class members 'were exposed to quite disparate information from various representatives of the defendant.'"  666 F.3d 581, 596 (9th Cir. 2012).  In that case, the plaintiff alleged misrepresentations in a variety of brochure and TV advertising to which few class members could have been exposed.  The Ninth Circuit reasoned that "the limited scope of that advertising makes it unreasonable to assume that all class members viewed it."  *Id.* at 595.

Thus, *Mazza* stands for the unremarkable proposition that it is difficult to certify a class where the class members are not all exposed to the same representations.  This proposition has no relevance to the present case, where Plaintiffs' theory is that Defendant's *omissions* violated the UCL, FAL, and CLRA and that partial representations *on the product itself* are misleading.  *See* SCAC ¶¶ 44-65.

### 3. Conclusion regarding California Class

---

[4] In addition, Defendant cites *Gray v. Toyota Motor Sales, U.S.A.*, in which the district court granted a motion to dismiss plaintiff's California's "common law fraud" claim because "the newsworthiness and the mainstream-media attention" regarding the very vehicle that plaintiff alleged to be defective suggested that this material fact was reasonably accessible to the class.  CV 08-1690 PSG JCX, 2012 WL 313703, *9 (C.D. Cal. Jan. 23, 2012).  However, that holding did not require an individual inquiry into the plaintiff's knowledge about specific articles; if anything, it confirms that the analysis applies an objective test.

1

2

3    In sum, the Court concludes that Plaintiff has shown that common questions predominate regarding the California Class.

4

### iii.   Illinois class

5

6    Plaintiffs seek to certify the Illinois Class and Illinois SOL Class for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), IL ST CH 815 §

7    505/2.[5]  Mem. (Sealed Dkt. 90) at 2 n.2.  This statute requires that Plaintiff prove: (1) "the

8    misrepresentation or concealment of a material fact"; (2) "an intent by the defendant that

9    plaintiff rely on that misrepresentation or concealment"; and (3) "the deception occurred in the

10   course of conduct involving trade or commerce."  *Mackinac v. Arcadia Nat. Life Ins. Co.*, 271

11   Ill. App. 3d 138, 141, 648 N.E.2d 237, 239 (1995).  Under this statute, an "omission is 'material'

12   if the plaintiff would have acted differently had she been aware of it, or if it concerned the type

13   of information upon which she would be expected to rely in making her decision to act."  *Id.*

14   The ICFA statute at issue here contains language very similar to California's CLRA.[6]

15

16   _____

17   [5] The ICFA provides in relevant part: "Unfair methods of competition and unfair or deceptive

18   acts or practices, including but not limited to the use . . . of any deception, . . . misrepresentation

19   or the concealment, suppression or omission of any material fact, with intent that others rely

20   upon the concealment, suppression or omission of such material fact, or the use or employment

21   of any practice described in [IL ST CH 815 § 510/2] . . . are hereby declared unlawful whether

22   any person has in fact been misled, deceived or damaged thereby."  IL ST CH 815 § 505/2.

23   [6] *Compare* IL ST CH 815 § 510/2(a)(5) (stating that a "person engages in a deceptive trade

24   practice when" she "represents that goods or services have . . . characteristics, . . . benefits, . . .

25   that they do not have") *and* IL ST CH 815 § 510/2(a)(7) (stating that a "person engages in a

26   deceptive trade practice when" she "represents that goods or services are of a particular standard,

27   . . . if they are of another") *with* Cal. Civ. Code § 1770(a)(5) (banning "[r]epresenting that goods

28   or services . . . have . . . characteristics, . . . benefits, . . . which they do not have") *and* Cal. Civ.

Code § 1770(a)(7) (banning "[r]epresenting that goods or services . . . are of a particular

standard, . . . if they are of another").

As with Plaintiffs' California claims, common questions predominate because individualized inquires into the class members' reliance will not be necessary to resolve Plaintiffs' ICFA claims.  *See P.J.'s Concrete Pumping Serv., Inc. v. Nextel W. Corp.*, 345 Ill. App. 3d 992, 1003 (2004) (certifying class's ICFA claim and holding that predominance requirement was met where the "primary factual issue in this case is a uniform billing practice that allegedly violated the Consumer Fraud Act in the same manner as to all class members"); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 WL 2224892, *5 (N.D. Ill. May 27, 2008) (certifying class's ICFA claim and holding that predominance was met where "[c]ommon questions . . . include how numbers were generated from [d]efendant's database").  This is because, like Plaintiffs' California claims, the "standard for materiality under the ICFA is an objective standard" whereby a plaintiff's reliance on a material omission is presumed.  *See Cirone-Shadow* v. *Union Nissan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997); *Kitzes* v. *Home Depot, U.S.A., Inc.*, 374 Ill.App.3d 1053, 1061 (1st Dist. 2007) ("materiality is tested with a reasonable person standard—*i.e.*, whether the omission 'concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase'"); *cf. Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 501 (1996) ("Plaintiff's reliance is not an element of statutory consumer fraud."); *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001) ("[T]he Illinois Supreme Court has repeatedly held that, unlike a claim for common law fraud, reliance is not required to establish a consumer fraud claim.").

The Court agrees with Plaintiffs that the ICFA statute imposes an objective test and thus, as with the California statutes under which Plaintiffs sue, Defendant's liability to the Illinois class will not require individual inquiries.  While Defendant makes some other arguments regarding the Illinois class, none of them are relevant to predominance and thus the Court does not address them here.

Thus, the Court concludes that Plaintiff has shown that common questions predominate regarding the Illinois Class and Illinois SOL Class.

### iv.   Maryland Class

Plaintiffs seek to certify a Maryland Class for violation of the Maryland Consumer Protection Act ("MCPA"). Mem. (Sealed Dkt. 90) at 2 n.2. The section of the MPCA under which Plaintiffs sue defines several "[u]nfair or deceptive trade practices," which includes "[f]ailure to state a material fact if the failure deceives or tends to deceive." Md. Code Ann., Com. Law § 13-301(3). The MCPA defines "[u]nfair or deceptive trade practices" to also "include" the "[r]epresentation that . . . [c]onsumer goods . . . or consumer services": (1) "have a . . . characteristic, . . . benefit, . . . which they do not have" (Md. Code Ann., Com. Law § 13-301(2)(i)); and (2) "are of a particular standard, . . . which they are not" (Md. Code Ann., Com. Law § 13-301(2)(iv)). This language in the MCPA is virtually identical to that in California's CLRA and Illinois' ICFA. *Compare* Md. Code Ann., Com. Law § 13-301(2)(i) *and* Md. Code Ann., Com. Law § 13-301(2)(iv) *with* IL ST CH 815 § 510/2(a)(5) *and* IL ST CH 815 § 510/2(a)(7) *and* Cal. Civ. Code § 1770(a)(5) *and* Cal. Civ. Code § 1770(a)(7).

Defendant contends that a MPCA claim requires Plaintiff to prove reliance and that such reliance is not susceptible to common proof, citing two federal district courts cases interpreting Maryland law, one of which is unpublished and by a court in New Jersey. As an initial matter, this Court notes the dearth of class actions applying Maryland law; a Westlaw search reveals only 36 cases that cite the MPCA and use the word "class" within the same sentence as "certification" or "certify," very few of which are useful. One such case reveals that it is certainly possible to "certifying a nationwide class of consumers with respect to claims under the Maryland Consumer Protection Act." *See Amerix Corp. v. Jones*, 457 F. App'x 287, 293 (4th Cir. 2011) (rejecting defendant's argument that an arbitrator "acted in manifest disregard of the law" by certifying nationwide class under the MCPA).

Plaintiffs direct this Court to what appears to be the seminal case from the Maryland Court of Appeals, the highest state court in Maryland, which indicates that the "materiality element in a deceptive practice" under the MPCA is an objective standard. *See Luskin's, Inc. v. Consumer Prot. Div.*, 353 Md. 335, 358-59 (1999). In *Luskin's*, the Maryland Court of Appeals reasoned as follows:

"The basic question is whether the act or practice is likely to affect the consumer's conduct or decision with regard to a product or service. If so, the practice is material, and consumer injury is likely, because consumers are likely to have chosen differently *but for* the deception. In many instances, materiality, and hence injury, can be presumed from the nature of the practice. In other instances, evidence of materiality may be necessary."

. . . .

"a material misrepresentation . . . involves information that is important to consumers and, hence, likely to affect their choice of . . . a product.  Consumers thus are likely to suffer injury from a material misrepresentation."

*Id.*  This analysis in *Luskin's* quotes from *Matter of Cliffdale Associates, Inc.*, 103 F.T.C. 110 (1984).  *See id.* at 358-59.  The Maryland Court of Appeals followed *Cliffdale* in part by relying on a related section of the MPCA, which provides that the MPCA "shall be construed and applied liberally to promote its purpose" and that "the intent of the General Assembly [is] that in construing the term 'unfair or deceptive trade practices', due consideration and weight be given to the interpretations of § 5 (a)(1) of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts."  *Id.* at 352-53 (quoting Md. Code Ann., Com. Law § 13-105).

Luskin's has been cited for the proposition that, "[i]n Maryland, whether a statement is 'misleading' is judged from the point of view of a reasonable, but unsophisticated consumer." *Sager v. Hous. Comm'n of Anne Arundel County*, 855 F. Supp. 2d 524 (D. Md. 2012).  This same objective standard applies to omissions as well.  *See Green v. H & R Block, Inc.*, 355 Md. 488, 524 (1999) ("An omission is material if a significant number of unsophisticated consumers would find that information important in determining a course of action.").

Thus, this Court concludes that the MPCA imposes an objective test whereby a plaintiff's reliance on a defendant's omission can be presumed by the materiality of the omitted fact.  First, the plain language of the statute suggests an objective test by defining "[u]nfair or deceptive trade practices" to include a "[f]ailure to state a material fact if the failure . . . tends to deceive."

Md. Code Ann., Com. Law § 13-301(3).  The phrase "tends to deceive" implies an objective test.  Second, the holding in *Luskin's* that "in many instances, materiality, and hence injury, can be presumed from the nature of the practice," as well as the progeny of *Luskin's*, further supports the conclusion that a plaintiff's reliance can be presumed where a defendant's omission is material.  Therefore, the Court agrees with Plaintiffs that this statute imposes an objective test and, as with the California and Illinois statutes under which Plaintiffs sue, Defendant's liability to the Illinois class is susceptible to common proof.

Thus, the Court concludes that Plaintiff has shown that common questions predominate regarding the Maryland Class.

### v.    New York Class

Plaintiffs seek to certify a New York Class for violation of the New York General Business Law ("GBL") §§ 349 and 350.  Mem. (Sealed Dkt. 90) at 2 n.2.

Plaintiffs contend that their claims under both these statutes are susceptible to common proof because—as with the previously-discussed California's CLRA, Illinois ICFA, and Maryland MPCA—these two New York GBL statutes define a deceptive act or practice using an "objective definition," whereby deceptive acts or practices, including omissions, are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Leider* v. *Ralfe,* 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005); *Stutman* v. *Chem. Bank*, 95 N.Y.2d 24, 29 (2000) ("[R]eliance is not an element of a section 349 claim.").  The Court agrees, and notes that other courts have reached the same conclusion in certifying consumer class actions under the New York and California consumer protections statutes at issue here.  *See Keegan v. Am. Honda Motor Co., Inc.*, --- F.R.D. ---, CV 10-09508 MMM AJWX, 2012 WL 2250040, *44 (C.D. Cal. June 12, 2012) (certifying California UCL and CLRA, as well as New York GBL § 349 claims); *Guido* v. *L'Oreal, USA, Inc.,* CV 11-1067 CAS JCX, 2012 WL 1616912, at *9-11 (C.D. Cal. May 7, 2012) (certifying California UCL, FAL, and CLRA, as well as NY GBL §§ 349 and 350 claims); *Jermyn* v. *Best Buy Stores, L.P.,* 256 F.R.D. 418, 418, 435 (S.D.N.Y. 2009) (certifying claims under New York GBL §§ 349 and 350).

Thus, the Court concludes that Plaintiff has shown that common questions predominate regarding the New York Class.

> **vi.    Implied Warranty claims under California and New York laws, as well as derivative Magnuson-Moss claims**

Plaintiffs also seek to certify the California and New York Classes for violation of their respective state's implied warranty claims, Cal. Civ. Code 1790 *et seq.* and N.Y. U.C.C. Law § 2-31, as well as a derivative federal claim under the Magnuson-Moss Warranty Act, 15 U.S.C. 2301.  *See* Mem. (Sealed Dkt. 90) at 2 n.2.  "To establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual[,] and reasonably foreseeable manners."  *Porrazzo* v. *Bumble Bee Foods, LLC,* 822 F. Supp. 2d 406, 420-21 (S.D.N.Y. 2011); *Keegan v. Am. Honda Motor Co., Inc.*, --- F.R.D. ---, CV 10-09508 MMM AJWX, 2012 WL 2250040, *27-28 (C.D. Cal. June 12, 2012) (stating same standard applied under California's implied warranty statute, Cal. Civ. Code § 1791.1).

Because an implied warranty claim requires an objective standard and because Plaintiffs' theory here is grounded in a defective design common to all Washers, the "breach of implied warranty claim is therefore susceptible of common proof."  *See Keegan*, 2012 WL 2250040, *44 (certifying "implied warranty under California law" consumer class action).  Indeed, Defendant does not dispute that predominance is met regarding these claims, and courts routinely certify implied warranty classes for this reason.  *See e.g., Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 576 (C.D. Cal. 2011) (certifying class for "implied warranty" and California UCL claims).

Thus, the Court concludes that Plaintiffs have shown that common questions predominate regarding the California and New York Class' implied warranty and Magnuson-Moss claims.

> **vii.   Defendant's statute of limitations defense as applied to the Illinois SOL Class**

Defendant contends in its Supplemental Brief that its statute of limitations defense against the Illinois SOL Class will raise individual issues that will predominate because Plaintiff, in order to toll the statute of limitations, "must prove when [each class member] became aware or had reason to know of the injury."  Def.' Supp. Br. (Dkt. 163) at 5.

The Ninth Circuit has multiple times rejected this same arguments, instead holding that individual questions about when class members' actually discovered or "should have discovered" the elements of their claims do not predominate where, as here, plaintiffs' theory is that defendant's own omissions or deception resulted in plaintiffs remaining unaware about their injury or its cause.  *See Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) (holding that the "existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones" where plaintiff alleged that defendant made misrepresentations and omissions in its communications with class members); *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975) ("The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones.").

Predominance is not defeated because the doctrines used by plaintiffs for "tolling the statute of limitations," such as the doctrine of fraudulent concealment, involve proof "common to the defendants," namely, "the act of concealing" defendant's wrong.  *See In re Linerboard Antitrust Litigation*, 305 F.3d 145, 163 (3d Cir. 2002).  Indeed, "[c]ourts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action."  *Schramm v. JPMorgan Chase Bank, N.A.*, LA CV09-09442 JAK, 2011 WL 5034663, *11-12 (C.D. Cal. Oct. 19, 2011) (holding that statute of limitations defense did not result in individual inquiries about when class members had actual or inquiry notice of their claims and noting that defendant's "speculation that some class members' claims may be barred on the basis of actual knowledge is not sufficient to defeat certification"); 2 Newberg on Class Actions § 4:57 (5th ed.) ("Statute of limitations defenses—like damage calculations, affirmative defenses, and counterclaims—rarely defeat class certification.").

Here, Plaintiffs' arguments to rebut Defendant's Statute of Limitations defense raise common questions of law and fact that are susceptible to common proof.  The common proof includes Defendant's failure to inform consumers of the design defect and continued offers to repair Washers, actions which concealed the cause of the BMFO from consumers such as Tait. In addition, Plaintiffs contend that, even if the statute of limitations began to run on Plaintiff Tait's ICFA claim, the statute of limitations was also tolled by another class action filed in California State court on July 3, 2009.  *See American Pipe* & *Constr. Co.* v. *Utah,* 414 U.S. 538, 551, 559 (1974) (explaining when the statute of limitations is tolled by the filing of a class action until the court makes a decision on certification).

Thus, Defendant's statute of limitations defense does not raise individual inquiries sufficient to defeat the predominance requirement as applied to the Illinois SOL Class.

### viii.  Conclusion regarding predominance

In sum, the Court concludes that the predominance requirement of Rule 23(b) is satisfied as to all Five Classes.

### b.  Superiority

The second prong of the analysis under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  This superiority requirement is met "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Given the small size of each class member's claim at issue here, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action.  *See Pecover v. Elec. Arts Inc.*, 2010 U.S. Dist. LEXIS 140632, at *68 (N.D. Cal. Dec. 21, 2010) ("[T]he modest amount at stake for each purchaser renders individual prosecution impractical. Thus, class treatment likely represents plaintiffs' only chance for adjudication.").  Indeed, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." *Deposit*

*Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *see also Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'"). Furthermore, each member of the class pursuing a claim individually would burden the judiciary, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."); *Delarosa v. Boiron, Inc*., 2011 U.S. Dist. LEXIS 106248, at *37-38 (C.D. Cal. Aug. 24, 2011).

## VIII. Defendant's Remaining Arguments

Defendant offers three other arguments without explaining their relevance to the Rule 23 analysis. Not surprisingly, such lack of clarity does not coalesce into a persuasive opposition to class certification. The Court addresses the arguments here. First, Defendant argues that Plaintiff Tait's likely failure to win at trial precludes class certification of the Illinois Class. Second, Defendant contends that the CLRA and UCL claims of the California Class should not be certified because Plaintiff Tait has presented "no proof of an unreasonable safety hazard." Defs. Opp'n (Dkt. 110) at 17. Finally, Defendant seeks to exclude Plaintiffs' experts Brian Clark and Chin Yang.

### a. Defendant's argument that Plaintiff Tait can not succeed at trial has no bearing on this class certification motion regarding the Illinois Class

It is well established that a plaintiff's purported likelihood to lose on the merits is an impermissible basis for denying class certification. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) ("[A] district court is required to examine the merits of the underlying claim in [the class certification] context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims."); *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir. 1982) ("[T]he class representative need not demonstrate a likelihood of success on the merits in order to maintain a class action.") *vacated on other grounds* 459 U.S. 810 (1982).

Defendant contends that Plaintiff Tait can not ultimately win at trial because an Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim based on an omission requires that Plaintiff "*see* a statement by" Defendant and that the statement be "more than mere puffery." Defs. Opp'n (Dkt. 110) at 23 n.14. As Plaintiffs note, Defendant appears to simply be relitigating this Court's denial of Defendant's motion to dismiss the SCAC, given that the cases Defendant cites are the same as those it advanced in the motion to dismiss.

Regardless of whether Defendant is correct about the elements of an ICFA claim based on omissions—which this Court very much doubts—Defendant's argument can not defeat class certification because it has nothing to do with the Rule 23 analysis. Rather, Defendant's position appears to be simply that this Court should deny class certification because Plaintiff Tait will lose on the merits, a position which is contrary to well-established precedent. *See Ellis*, 657 F.3d 970, 983 (9th Cir. 2011); *Sullivan v. Chase Inv. Services of Boston, Inc.*, 79 F.R.D. 246, 265 (N.D. Cal. 1978) ("If [a defendant] could defeat class certification simply by disclosing evidence that suggests a valid defense against a representative plaintiff, 'it would follow that no class action could stand until the plaintiff proved every material element of his individual claim' and rebutted every arguable defense[,] an approach that clearly violates Rule 23.").

Not only is Defendant's position contrary to black-letter law, it also would have the absurd result of prematurely ending viable class actions before plaintiffs have obtained the discovery necessary to support their case. Indeed, it is often easy for a defendant to paint a dismal picture of plaintiffs' prospects because, at the class certification stage, plaintiffs do not have the benefit of discovery into the merits of a case and defendants frequently have withheld exactly the information needed to prove plaintiffs' case. *Cf. In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 612-13 (8th Cir. 2011) (explaining that plaintiffs do not have the benefit of discovery into the merits of a case at the class certification stage because it is common in putative class action for defendants to seek "bifurcated discovery" between class certification and merits issues, and this bifurcation "result[s] in a limited record at the class certification stage").

Thus, this Court is not persuaded to deny class certification based on Defendant's argument that Plaintiff Tait's ICFA claims will fail on the merits.

### b. The Court declines to follow *Tietsworth* because it violated clearly established precedent in denying class certification based on a determination on the merits

Defendant contends that class certification under the CLRA and UCL must be denied "[w]here there is no proof of an unreasonable safety hazard."[7]  Opp'n (Dkt. 110) at 17.  For this proposition, Defendant relies on two cases.  First, Defendant quotes the Ninth Circuit's unsupported dicta in *Wilson v. Hewlett-Packard Co.* that "California courts have generally rejected a broad obligation to disclose," in which the Ninth Circuit made this statement without citing to a single California case to support it and in the context of affirming the district court's granting of a motion to dismiss.[8]  668 F.3d 1136, 1141 (9th Cir. 2012).  Then, Defendant analogizes to *Tietsworth*, in which the district court relied on *Wilson* to deny class certification

---

[7] To the extent that Defendant argues that class certification must also be denied under the *FAL* for lack of proof of a safety hazard, this argument fails because even if this Court were to follow *Wilson* and *Tietsworth*, those cases did not involve the FAL.

[8] The Ninth Circuit followed this phrase with the statement that California courts are "adopting instead the standard as enumerated by the California Court of Appeal in *Daugherty v. American Honda Motor Co.,* 144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (Ct.App.2006)."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  However, *Daugherty* itself says nothing about a general rule rejecting a broad obligation to disclose under the CLRA, and the Ninth Circuit cited no California case reaching this holding.  Indeed, such a general rule would be in grave contradiction to the express language of the CLRA, which must "be liberally construed . . . to protect consumers . . . and provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760; *Kasky* v. *Nike, Inc.,* 27 Cal.4th 939, 949 (2002); *Vasquez* v. *Superior Court*, 4 Cal. 3d 800, 808 (1971)("Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority.").

of CLRA and UCL claims arising from alleged omissions of defects in washers.  *See Tietsworth v. Sears, Roebuck & Co.*, 5:09-CV-00288-JF HRL, 2012 WL 1595112 (N.D. Cal. May 4, 2012).

Defendant's argument is unpersuasive because *Tietsworth* simply violated black-letter law by denying a motion for class certification based on the court's impression that defendant would win on the merits.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) ("[At the class certification stage, a] district court . . . [shall] not to determine whether class members could actually prevail on the merits of their claims.").  Indeed, *Tietsworth* acknowledged that it was violating this rule even as it did it.  *Tietsworth v. Sears, Roebuck & Co.*, 5:09-CV-00288-JF HRL, 2012 WL 1595112 (N.D. Cal. May 4, 2012) ("The Court recognizes that a motion for class certification is not the appropriate means for determining whether Plaintiffs' claims under the UCL, CLRA, and common law are subject to dismissal wholly or in part, but in light of *Wilson,* it appears that these claims no longer are viable with respect to non-safety defects such as the manifestation of error codes.").

Alternatively, *Tietsworth* is also bad law because, while ostensibly applying *Wilson*, the court actually failed to read the most relevant holding within *Wilson* in which the Ninth Circuit clarified that the requirement to prove a safety hazard did not apply where the plaintiff "began experiencing problems . . . *within* the express warranty period."  *Wilson* v. *Hewlett-Packard Co.*, 668 F.3d 1136, 1143 & n. 1 (9th Cir. 2012).  In reaching this holding, the Ninth Circuit expressly distinguished a prior decision in the *Tietsworth* case.  *See id.* (citing and finding "distinguishable" *Tietsworth* v. *Sears, Roebuck & Co.,* 720 F. Supp.2d 1123 (N.D.Cal. 2010)).  This distinction has been recognized by other courts both prior to and in the wake of *Wilson*.  *See Keegan v. Am. Honda Motor Co., Inc.*, --- F.R.D. ---, CV 10-09508 MMM AJWX, 2012 WL 2250040, *18 (C.D. June 12, 2012) (describing the requirement that an "undisclosed defect . . . pose 'safety concerns'" as applying only "if a claim based on a failure to disclose arises outside the warranty period"); *Donohue v. Apple, Inc.*, --- F.Supp.2d ----, 11-CV-05337 RMW, 2012 WL 1657119, *10 (N.D. Cal. May 10, 2012) (distinguishing *Wilson* and its progeny, which "reject[] duty to disclose claims based on product defects that manifested themselves after the expiration of a manufacturer's express warranty," from plaintiff's claim that product "failed to

1

2

3    perform as expected" within warranty period); *In re NVIDIA GPU Litig.,* 2009 WL 4020104 at *

     10 (N.D. Cal. Nov. 19, 2009); *Baba v. Hewlett-Packard Co.,* 2010 WL 2486353 at *4 (N.D. Cal.

4    June 16, 2010).[9]

5    _____

6    [9]

7         This Court is skeptical that *Wilson* accurately interpreted California law when it held that

8    "California federal courts have generally interpreted [the California case] *Daugherty* as holding

9    that '[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an

10   affirmative misrepresentation or a safety issue.'" *Wilson,* 668 F.3d at 1141 (quoting *Oestreicher*

11   *v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009). *Wilson* cited one unpublished Ninth

12   Circuit case, two unpublished federal district court cases, and one published federal district court

13   case for this proposition. *Id.* Conspicuously absent from the reasoning in *Wilson* was any

14   California state court decisions. In fact, contrary to *Wilson,* a California court recently held that

15   plaintiffs' "complaint states a violation of the CLRA" where the plaintiffs alleged that

16   defendant's "failure to disclose" a defect "result[ed] in data corruption," without requiring

17   plaintiffs to allege that this defect caused an unreasonable safety hazard. *See Collins v.*

18   *eMachines, Inc.*, 202 Cal. App. 4th 249, 258 (2011).

19        Interestingly, the Ninth Circuit recently granted rehearing en banc where a three-judge

20   panel held that a California statute did not violate the California constitution, despite the

21   contrary holdings of three decisions by the California Court of Appeals and two trial courts that

22   had considered the issue. *Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, *1 (9th

23   Cir. 2012). As the Ninth Circuit explained, the panel's decision was error because "[o]rdinarily,

24   the *Erie* doctrine, would have required our court to 'follow the decisions of [the] intermediate

25   state courts." *Id.* (also citing *Auto Equity Sales, Inc. v. Superior Court*, 57 Cal.2d 450, 455

26   (1962) for the proposition that "[w]here there is no conflict between state courts of appeal,

27   [d]ecisions of every division of the District Courts of Appeal are binding upon all the justice and

28   municipal courts and upon all the superior courts of this state"). The Ninth Circuit reasoned that,

     "were the panel holding to stand . . . , plaintiffs would be able to sue in federal court to enforce

     the state statute, but could not sue in state court to enforce the very same statute." *Id.*

Finally, as Plaintiffs note, *Tietsworth* is especially baffling given that other courts have certified CLRA and UCL omissions claims without requiring proof of a safety hazard. *See, e.g., Parkinson v. Hyndai Motor Am.,* 258 F.R.D. 580, 586-87, 596, 600 (C.D.Cal. 2008); *Wolph v. Acer Am. Corp.,* 272 F.R.D. 477, 447,481,489 (N.D. Cal. 2011).

Given that *Tietsworth* inexplicably misapplied established precedent by denying class certification by second-guessing the case's merits and then failed to closely read the very Ninth Circuit decision ostensibly being applied, this Court is in no way inclined to follow *Tietsworth*.

### c. Expert disputes

Because the parties' primary dispute is over the legal standard that this Court should apply to Defendant's Motions to Exclude Plaintiff's experts, the Court first determines the legal standard and then turns to the merits of the motions.

### i. Legal standard for evaluating expert testimony regarding a motion for class certification

Defendants contend that "a full *Daubert* analysis is to be applied to expert testimony proffered at the [class] certification phase of a case." Mot. (Dkt. 104) at 2-3. In support of this view, Defendants cite: (1) two sentences of dicta in the Supreme Court case *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011); (2) a Ninth Circuit case which references this dicta; and

Like the three-judge panel's decision in *Beeman*, adhering to the holding in *Wilson* would appear to produce an absurd result in violation of the *Erie* doctrine: plaintiffs would be *unable* to sue in federal court to enforce the state statute, but *could* sue in state court to enforce the very same statute. *Compare Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th Cir. 2012) (affirming dismissal of UCL and CLRA claims alleging that defendants "concealed the design defect" because plaintiff failed to allege that the "defect caused an unreasonable safety hazard") *with Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 258 (2011) (holding that plaintiffs' "complaint states a violation of the CLRA" where the plaintiffs alleged that defendant's "failure to disclose" a defect "result[ed] in data corruption," without requiring plaintiffs to allege that this defect caused an unreasonable safety hazard).

(3) a Seventh Circuit case.  By "full *Daubert* analysis," Defendants appear to mean that this Court must evaluate whether the parties experts' opinions satisfy *Daubert* regarding not only their opinions as to the Rule 23 criteria of commonality, but also on merits conclusions that are not relevant to the Rule 23 criteria.

At the outset, it is worth noting what the Supreme Court said in those two sentences in *Wal-Mart*:  "[T]he [d]istrict [c]ourt concluded that *Daubert* did not apply to expert testimony at the certification state of class-action proceedings.  222 F.R.D., at 19.  We doubt that is so . . ." 131 S.Ct. 2541, 2553-54 (2011) (citing *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189. 191 (N.D. Cal. 2004)).  What the Court doubted is the proposition that *Daubert* simply "did not apply."  If the doubt means that *Daubert* does apply, then the Supreme Court's dicta still provides no guidance about the extent and rigor of the appropriate *Daubert* analysis.  Thus, the dicta does not clarify disagreements about applying *Daubert* in class-action certifications, disagreements that predate *Wal-Mart*, and that have endured since.

## 1. District Court decisions in the Ninth Circuit prior to *Wal-Mart*

District courts in the Ninth Circuit prior to *Wal-Mart* routinely applied *Daubert* at the class certification stage only to analyze whether an expert's opinion was sufficiently reliable *to prove or disprove the existence of* the Rule 23 criteria, such as commonality and predominance. *See e.g., Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) ("At the class certification stage[, the expert's] opinion is limited to whether the claims raise a common question for all class members, regardless whether the trier of fact agrees with his analysis at the merits stage."); *Thomas & Thomas Rodmakers v. Newport Adhesives & Composites,* 209 F.R.D. 159, 162-63 (C.D. Cal. 2002) ("Courts have declined to engage in a *Daubert* analysis at the class certification stage of an action on the ground that an inquiry into the admissibility of the proposed expert testimony under *Daubert* would be an inappropriate consideration of the merits of the plaintiff's claims.").  In addition, district courts held that, "[u]nlike a summary judgment motion under Fed. R. Civ. P. 56, a motion for class certification . . . need not be supported by admissible evidence."  *Parkinson v. Hyundai Motor Am.*, 258 F.R.D.

580, 599 (C.D. Cal. 2008) (certifying some classes); *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 U.S. Dist. LEXIS 5296, *8 n. 18 (C.D. Cal. Jan. 7, 2008) (same).  However, the court "should not abandon admissibility standards entirely at the certification stage."  *Parkinson*, 258 F.R.D. at 599.  "For example, when expert reports are cited in support or opposition of certification, the Court need not engage in a full *Daubert* . . . analysis; however, the Court should conduct a limited inquiry into the reliability of the expert opinion and its relevance to determining a Rule 23 requirement."  *Id.*

This Court will refer to this standard as the "tailored *Daubert* standard."  Given that the Ninth Circuit had not yet, prior to *Wal-Mart*, addressed the issue of *Daubert*'s application at the class certification stage, this standard was derived from broad pronouncements by the Ninth Circuit regarding the sufficiency of evidence at the class certification stage.  *See e.g. Moore v. Hughes Helicopters Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) ("[A]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage.")

This tailored *Daubert* standard was also adopted by other circuits.  *See e.g., Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 292 (2d Cir. 1999) ("Though [the defendant's] critique of the class plaintiffs' [expert] evidence may prove fatal at the merits stage, the class plaintiffs need not demonstrate at this stage that they will prevail on the merits.  Accordingly, this sort of 'statistical dueling' is not relevant to the certification determination."), *overruled on other grounds by Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 203 (2d Cir. 2008).

**2.  The Supreme Court's dicta in *Wal-Mart* did not disturb the Ninth Circuit's holding in that case that the district court did not err by failing to apply a full *Daubert* analysis**

In *Dukes v. Wal-Mart Stores, Inc.* (*Dukes I*), the district court certified the largest class action in history for claims of gender discrimination by the defendant-employer, holding that the plaintiffs satisfied the requirements of Rules 23(a) and 23(b)(2).  222 F.R.D. 137, 160-61 (N.D.

Cal. 2004).  In reaching its conclusion, the district court explained that it "delve[d] into the substance of the expert testimony only to the extent necessary to determine if it is sufficiently probative of an inference of discrimination to create a common question as to the existence of a pattern and practice of gender discrimination at" defendant.  *Id.* at 155.  In a separate order, the district court ruled on the parties' motions to strike each other's experts, which were filed concurrently with the motion to certify the class.  *Id.* at 141 n.2; *see also Dukes v. Wal-Mart, Inc.* (*Dukes IV*), 222 F.R.D. 189, 191 (N.D. Cal. 2004) (separate order).

On appeal, the Ninth Circuit substantially affirmed the class certification, holding that the district court properly certified the class of current female employees for back pay and injunctive relief under Rule 23(b) and remanding the claims for punitive damages under Rules 23(b)(2) and (b)(3).  *Dukes v. Wal-Mart Stores, Inc.* (*Dukes II*), 603 F.3d 571, 577 (9th Cir. 2010) (en banc) *rev'd by* 131 S. Ct. 2541 (2011).  In reaching this conclusion, the Ninth Circuit held that there was "no error in the district court's acceptance of [plaintiff's expert] evidence to support a finding of commonality" and rejected the defendant's "contention that the district court was required to strike [plaintiffs' expert] testimony under the *Daubert* test at the class certification stage, simply because the conclusion he reached seemed unpersuasive absent certain corroborating evidence."  *Id.* at 602-03 *rev'd on other grounds by* 131 S. Ct. 2541 (2011).  As the Ninth Circuit explained, "[w]hile a *jury* may ultimately agree" with defendant that plaintiffs failed to meet their burden at trial "based solely on [plaintiff's expert] analysis, . . . that question must be left to the merits stage of the litigation (and presumably will not have to be decided as there will be other evidence)."  *Id.*  However, "[a]t the class certification stage, it is enough that [plaintiff's expert] presented scientifically reliable evidence tending to show that a common question of fact—i.e., 'Does [defendant's] policy of decentralized, subjective employment decision making operate to discriminate against female employees?'—exists with respect to all members of the class."  *Id.*  Thus, the Ninth Circuit held that the district court did not err by failing to strike plaintiffs' expert testimony.  *Id.*

The Supreme Court reversed the Ninth Circuit on the grounds that certifying a nationwide class of female employees was inconsistent with the Rule 23(a) commonality requirement and

that the plaintiffs' back-pay claims should not have been certified under Rule 23(b)(2) because the monetary relief claims were not incidental to the requested injunctive or declaratory relief. *See Wal-Mart Stores, Inc. v. Dukes* (*Dukes III*), 131 S. Ct. 2541, 2556-57 (2011) (regarding 23(a)), 2560-61 (regarding 23(b)(2)).  The Supreme Court also noted in dicta,  as discussed above, that:

> "[T]he [d]istrict [c]ourt concluded that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings.  222 F.R.D., at 191.  We doubt that is so, but even if properly considered, [plaintiffs' expert] testimony does nothing to advance [plaintffs'] case."

*Wal-Mart Stores, Inc. v. Dukes* (*Dukes III*), 131 S. Ct. 2541, 2553-54 (2011) (citing *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 191 (N.D. Cal. 2004)).  This statement is dicta for so many reasons, most importantly: (1) the Supreme Court's citation is to the district court's separate order ruling on the parties' motions to strike each other's experts, which was never appealed and thus never briefed before the Supreme Court; and (2) as the statement itself makes clear, the Supreme Court's holding was not premised on the district court's application or misapplication of *Daubert*.  *See In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 612, 612 n.4 (8th Cir. 2011) (noting that the Ninth Circuit's en banc holding in *Dukes II* that "rejected" the application of a "full and conclusive *Daubert* review" at the class certification stage was reversed "on other grounds" by the Supreme Court in *Dukes III*).  Indeed, as the Ninth Circuit noted when it substantially affirmed the district court's class certification in *Dukes II*, even the defendant in the case did not appear to believe that the district court misapplied *Daubert*, given that the defendant "did not [at the district court level] and does not [on appeal] challenge [plaintiffs' expert's] methodology or contend that his findings lack relevance."  *Dukes v. Wal-Mart Stores, Inc.* , 603 F.3d 571, 602 (9th Cir. 2010).

Interestingly, the Supreme Court's dicta appears to mischaracterize the district court's holding in *Dukes IV*, and this mischaracterization illustrates exactly why Supreme Court dicta on issues neither briefed nor argued before the Supreme Court is a treacherous guide for lower courts.  Contrary to the Supreme Court's characterization, the district court never held that

"*Daubert* did not apply to expert testimony at the certification stage of class-action proceedings."  *Wal-Mart Stores, Inc. v. Dukes* (*Dukes III*), 131 S. Ct. 2541, 2553-54 (2011).  Rather, on the page of the district court's opinion referenced by the Supreme Court, the district court explains that "courts should not . . . apply the *full Daubert* 'gatekeeper' standard at this [class certification] stage," but rather should apply "a lower *Daubert* standard."  *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 191 (N.D. Cal. 2004) (emphasis added).  As the district court explained, this "lower *Daubert* standard" requires a court to determine "whether the expert evidence is sufficiently probative to be useful in evaluating whether class certification requirements have been met."  *Id.*  Tellingly, the district court's characterization of the "lower *Daubert* standard" is *consistent* with the Ninth Circuit and other circuits' legal standard regarding expert evidence as class certification, as discussed in the previous subsection to this Order.  Indeed, the district court's opinion is still cited as good law by courts within this circuit well after the Supreme Court's decision in *Dukes III*.  *See, e.g., State Farm Fire & Cas. Co. v. Electrolux N. Am.*, 2:10-CV-01147 RSM, 2011 WL 6753140, *4 (W.D. Wash. Dec. 23, 2011).

Because the Supreme Court's dicta in *Dukes III* provides no clear guidance on the extent of *Daubert* analysis at this stage of a class-action proceeding, this Court declines to interpret the dicta as commanding a full-blown *Daubert* analysis.

### 3.  Ninth Circuit cases after *Wal-Mart*

Even after *Wal-Mart*, the Ninth Circuit has favorably cited its holding in *Dukes* regarding the application of Daubert at the class certification stage.  Indeed, the Ninth Circuit's holding in *Ellis* undermines rather than assists Defendant's argument.

In *Ellis v. Costco Wholesale Corp.* (*Ellis II*), the Ninth Circuit held that the district court "correctly applied the evidentiary standard set forth in *Daubert*" when conducting an "analysis of [defendant's] motions to strike."  657 F.3d 970, 982 (9th Cir. 2011).  While the Ninth Circuit provided no further reasoning for this cursory holding, the district court's summary of the standard it applied regarding the motions to strike is revealing:

Though a "rigorous examination" of 23(a) factors is required for class certification, *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72

L.Ed.2d 740 (1982), the district court is not to inquire into the merits of the suit during the certification process. *Eisen*, 417 U.S. at 177, 94 S.Ct. 2140. However, the court may properly consider the merits to the extent that they overlap with class certification issues. *See In re Initial Public Offering Sec. Litig.*, 471 F.3d 24 (2d Cir.2006). An evidentiary hearing on class certification is not required, *Bouman v. Block*, 940 F.2d 1211, 1232 (9th Cir.1990), but the court should assess all relevant evidence to determine whether each of the Rule 23 requirements have been met. At this early stage, robust gatekeeping of expert evidence is not required; rather, the court should ask only if expert evidence is "useful in evaluating whether class certification requirements have been met." *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 191 (N.D.Cal.2004) (Jenkins, J.) (*Dukes II* ). The requirements of relevance and reliability set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), serve as useful guideposts but the court retains discretion in determining how to test reliability as well as which expert's testimony is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

*Ellis v. Costco Wholesale Corp.* (*Ellis I*), 240 F.R.D. 627, 635-36 (N.D. Cal. 2007). The district court's summary of the standard reveals several fascinating points. First, the district court in *Ellis* correctly quoted with approval the very district court opinion, *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189 (N.D.Cal.2004), which the Supreme Court in dicta disapproved and mischaracterized. Thus, when the Ninth Circuit held that the district court in *Ellis I* "correctly applied the evidentiary standard set forth in *Daubert*," the Ninth Circuit was affirming the same standard it announced in *Dukes II*. *Ellis II*, 657 F.3d at 982. Furthermore, the Ninth Circuit's approval of the district court's statement that the "requirements of relevance and reliability set forth in *Daubert* . . . serve as useful guideposts" indicates that the Ninth Circuit is not, contrary to Defendant's argument, adopting a new rule requiring courts to apply a full *Daubert* analysis during class certification. *See Ellis I*, 240 F.R.D. at 635-36; *Ellis II*, 657 F.3d at 982 (holding

that the district court "correctly applied the evidentiary standard set forth in *Daubert*" when conducting an "analysis of [defendant's] motions to strike").

In addition, the Ninth Circuit held in *Ellis II* that defendant was "incorrect" in arguing that, in order to satisfy the commonality requirement of Rule 23, the district court had to conduct "an in-depth examination of the underlying merits" by determining whether the evidence showed a "statistical proof of under-promotion of women *and* . . . a plausible link between the practice and the impact." 657 F.3d 970, 983 n.8 (9th Cir. 2011). Rather, the "district court is required to examine the merits of the underlying claim . . . only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Id.* For support for this rule, the Ninth Circuit cited its en banc opinion in *Dukes II*. *Id.* (citing *Dukes v. Wal–Mart Stores, Inc.,* 603 F.3d 571, 592 (9th Cir.2010) (en banc)). The Ninth Circuit also quoted the Supreme Court's observation in *Dukes III* that "[p]laintiffs and defendants disagree on whose statistical findings and observations are more credible, but this disagreement is relevant only to the merits of plaintiffs' claim—whether plaintiffs actually suffered disparate treatment—and not to whether plaintiffs have asserted common *questions* of fact or law." *Id.* (quoting *Wal–Mart,* 131 S.Ct. 2541). The Ninth Circuit explained that "[t]o hold otherwise would turn class certification into a mini-trial." *Id.*

Separate from its ruling upholding the district court's application of a tailored *Daubert* standard at the class certification stage, the Ninth Circuit in *Ellis II* also reversed the district court due to its failure to make a factual finding. The Ninth Circuit held that "the district court was required to resolve any factual disputes necessary to determine whether there was a common pattern and practice that could affect the class *as a whole.*" *Id.* at 983. In its opposition to the motion to certify the class, defendants' expert had "concluded that any gender disparities, if they exist, are confined to two regions," whereas the plaintiffs sought to certify a nationwide class. *Id.* The district court concluded that defendants' expert's analysis was "relevant and reliable for the purposes of commonality and . . . that plaintiffs [had] not raised any significant challenges in this regard." *Id.* (quoting *Ellis I*, 240 F.R.D. at 639). Because the district court merely "concluded that, because both [p]laintiffs' and [defendant's] evidence was admissible, a finding

of commonality was appropriate" and thus "failed to resolve the critical factual disputes centering around the national versus regional nature of the alleged discrimination," the district court applied the wrong legal standard.  *Id.*  Thus, the Ninth Circuit "vacate[d] and remande[d], rather than reverse[d], the district court's commonality determination."  *Id.*

> **4.  The Ninth Circuit's tailored *Daubert* standard is consistent with the holding of the one circuit to reach this question after the Supreme Court's dicta in  *Wal-Mart***

Defendants contend that, "[f]ollowing the Supreme Court's dicta in *Wal-Mart* . . ., a number of circuit courts, including the Ninth Circuit, have adopted the view that a full Daubert analysis is to be applied to expert testimony proffered at the certification stage."  Mot. (Dkt. 104) at 2-3.  For this proposition, Defendants cite *Ellis II* and, curiously, a Seventh Circuit case decided prior to the Supreme Court's dicta in *Dukes III*.  In the previous section, this Court explained why Defendant's interpretation of *Ellis II* as requiring a full *Daubert* analysis is wrong.  The Court now addresses whether the Seventh Circuit's decision in *American Honda Motor Company, Inc. v. Allen*, 600 F.3d 813 (7th Cir.2010) (per curiam) provides any guidance on the Ninth Circuit's rule.

The Eighth Circuit appears to be the only circuit other than the Ninth to address the application of *Daubert* to expert testimony at the class certification stage, noting that:

> "no other circuit has followed the approach advocated in *American Honda,* and at least one court sitting en banc has rejected it.  *See Dukes v. Wal–Mart Stores, Inc.,* 603 F.3d 571, 602 n. 22 (9th Cir.2010) (en banc), *rev'd on other grounds,* 564 U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).

*In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011).

In *In re Zurn*, the Eighth Circuit held that "the district court did not err by conducting a focused *Daubert* analysis which scrutinized the reliability of the expert testimony in *light of the criteria for class certification* and the *current state of the evidence*."  *In re Zurn*, 644 F.3d at 614 (emphasis added).  In *In re Zurn*, as here, the defendant urged that the circuit "adopt a new rule, requiring a district court to determine conclusively at an early stage, not just whether or not

expert evidence is sufficient to support class certification under Rule 23, but also whether that evidence will ultimately be admissible at trial." *Id.* at 611.  The Eighth Circuit provided several excellent reasons for rejecting defendant's new rule and declining to follow *American Honda*. First, the Eighth Circuit noted that its "own circuit precedent does not favor" defendant's rule because the Eighth Circuit previously "approved a district court decision which explicitly rejected a request for a full *Daubert* inquiry at the class certification stage." *Id.* at 612.  Second, Eighth Circuit explained that "requiring an even more conclusive *Daubert* inquiry at the class certification stage would have been impractical" because, as is common in most putative class action, the defendant had "sought bifurcated discovery" between class certification and merits issues, and this bifurcation "resulted in a limited record at the class certification stage, preventing the kind of full and conclusive *Daubert* inquiry [that the defendant] later requested." *Id.* at 612-13.  Because the plaintiff's expert "analysis was circumscribed by the availability of . . . data" that might "become[] available" as "merits discovery unfolds," it would have been improper to conduct a full *Daubert* analysis at the class certification stage. *Id.* at 612-13.  Third, the Eighth Circuit reasoned that the "main purpose of *Daubert* exclusion is to protect *juries* from being swayed by dubious scientific testimony," but "[t]hat interest is not implicated at the class certification stage where the *judge* is the decision maker." *Id.* at 613 (emphasis added).  Finally, the Eighth Circuit rejected the defendant's analogy to the rule that a court may rely "only on admissible evidence at the summary judgment stage," reasoning that "the questions then are quite different than at the class certification stage." *Id.*  As the Eighth Circuit explained, "[b]ecause summary judgment ends litigation without a trial, the court must review the evidence in light of what would be admissible before either the court or jury." *Id.*  "In contrast, a court's inquiry on a motion for class certification is 'tentative,' 'preliminary,' and 'limited.'" *Id.* (quoting *Coopers & Lybrand*, 437 U.S. at 469 n. 11).

This Court is convinced by the excellent reasoning of *In re Zurn* and concludes that the Eighth Circuit's decision in that case perfectly encapsulates the Ninth Circuit's rule regarding the tailored *Daubert* analysis at class certification stage, especially given that the Eighth Circuit relied on the Ninth Circuit's holding in *Dukes II* to reach its conclusion.  Indeed, other courts

within the Ninth Circuit have declined to follow *American Honda* and instead adopted the reasoning of *In re Zurn* because only *In re Zurn* "recognizes the specific criteria under consideration, as well as the differing stage of discovery and state of the evidence, at the class certification stage." *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 629 (W.D. Wash. 2011). Thus, the Court rejects Defendants argument that the Court should follow the Seventh Circuit's decision in *American Honda* and instead adopts the reasoning of the Eighth Circuit in *In re Zurn*.

### 5.  The Court distills these holdings into the following rules

The Court distills the Ninth Circuit's holdings regarding expert testimony at the class certification stage into the conclusion that, at the class certification stage, district courts are not required to conduct a full *Daubert* analysis. Rather, district courts must conduct an analysis tailored to whether an expert's opinion was sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and predominance

First, on a class certification motion, "[d]istrict courts are not required to hold a *Daubert* hearing before ruling on the admissibility of scientific evidence." *Dukes v. Wal-Mart Stores, Inc.* (*Dukes II*), 603 F.3d 571, 602 n.22 (9th Cir. 2010) *rev'd on other grounds* by 131 S. Ct. 2541 (2011); *Millenkamp v. Davisco Foods Int'l, Inc.,* 562 F.3d 971, 979 (9th Cir. 2009). Rather, the "requirements of relevance and reliability set forth in *Daubert* . . . serve as useful guideposts but the court retains discretion in determining how to test reliability as well as which expert's testimony is both relevant and reliable." *Ellis I*, 240 F.R.D. at 635-36 *affirmed on this point by Ellis v. Costco Wholesale Corp.* (*Ellis II*), 657 F.3d 970, 982 (9th Cir. 2011) (holding the district court "correctly applied the evidentiary standard set forth in *Daubert*"). "At this early stage, robust gatekeeping of expert evidence is not required; rather, the court should ask only if expert evidence is 'useful in evaluating whether class certification requirements have been met.'" *Id.* This means that a district court need only conduct a "tailored *Daubert* analysis" which "scrutinize[s] the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *In re Zurn Pex Plumbing Products*

*Liab. Litig.*, 644 F.3d 604, 614 (8th Cir. 2011) (relying on *Dukes II*); *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 629 (W.D. Wash. 2011) (following *In re Zurn*); *cf. Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 644, 646, 648 (N.D. Cal. 2007) (denying defendant's motions to strike plaintiffs' "declarations of three experts . . . in support of their motion for class certification to demonstrate commonality" despite experts' "omission of [a] variable" and failure to "control[] for" another variable where controlling for such variables "may be an accepted practice in the relevant scientific community").

Second, district courts are "required to resolve any factual disputes necessary to determine whether" the Rule 23 criteria are met. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (noting factual dispute regarding commonality and holding that the court is "required to resolve any factual disputes necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*"); *Keegan v. Am. Honda Motor Co., Inc.*, CV 10-09508 MMM AJWX, --- F.R.D. ---, 2012 WL 2250040 (C.D. Cal. June 12, 2012) (quoting *Ellis II* for the proposition that "[o]n a motion for class certification, it is not necessary for the expert testimony to resolve factual disputes going to the merits of plaintiffs' claim or claims; instead, the testimony must be relevant to determining 'whether there was a common pattern and practice that could affect the class as a whole'").

Thus, this Court rejects Defendant's contention that its motions to exclude Plaintiffs' experts require this Court to engage in a full *Daubert* analysis. The Court now applies these rules to Defendant's two motions to exclude Plaintiffs' experts.

### ii.   Expert Clark

Defendant contends that the either the entirety or at least portions of the testimony by Plaintiffs' expert Brian Clark ("Expert Clark") must be excluded under *Daubert* because either his methodology is unreliable or he lacks expertise. Defendant argues that Expert Clark lacks expertise to make statements about Plaintiffs' Washers' propensity to produce BMFO because he: (1) lacks a degree in microbiology (Mot. (Dkt. 104) at 12);

and (2) conceded in his deposition that he was unfamiliar with certain facets of Plaintiffs' Washers (*id.* at 11-12).  Defendant argues that Expert Clark's methodology is unreliable because he failed to: (1) test Plaintiffs' Washers to determine alternative causes for their BMFO, such as misuse, and testing for alternative causes for defects is a part of the methodology Expert Clark employed in his job outside this litigation (*id.* at 5); (2) posit a design alternative (*id.* at 8); (3) quantify or measure certain amounts, such as the humidity and air current rate in the products (*id.* at 8-9); and (4) expand his analysis beyond the small sample size of Plaintiffs' Washers (*id.* at 10).

Plaintiff responds that the Court's analysis of Expert Clark's opinion at the class certification stage must be limited to the purpose for which it is presented, namely, to establish the Rule 23(a) requirement of commonality by showing that the issue of whether the class members' Washers had a propensity to develop BMFO is susceptible to common proof.  As detailed in the Court's long discussion regarding the Ninth Circuit's tailored *Daubert* standard at the class certification stage, the Court agrees that its inquiry is as limited as Plaintiffs contend.

All of Defendants' arguments to exclude Expert Clark's testimony are relevant only to the merits of a defense that this Court has already held to be irrelevant—that is, whether the design defect or consumer misuse *actually* caused Plaintiffs' Washers to develope BMFO—not to whether Plaintiffs have satisfied any Rule 23 requirement.  For example, Defendant argues that Expert Clark's methodology is infirm because it fails to test for alternative causes for BMFO; in short, Expert Clark tested only Plaintiffs theory of the case—BMFO caused by defective design—and not Defendant's defense—BMFO caused by consumer misuse.  However, this critique of Expert Clark has nothing to do with the Rule 23 requirements, but rather goes exclusively to the merits of an irrelevant defense.  The Ninth Circuit has reversed denial of class certification where, as here, the defendant contends that the plaintiffs' evidence regarding a defective product fails to account for consumer misuse because the defendant's argument goes only to the merits of a defense—whether the cause of the defect was design or consumer misuse—and thus

does not defeat class certification under Rule 23.  *See Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1173 (9th Cir. 2010) (reversing denial of class certification where plaintiffs' theory of the case was that the products "had particular characteristics" which made them "defective," whereas defendants theory was that the defect was the result of "tire wear due to individual factors such as driving habits and weather," because this dispute related to the merits of the claim and did not overlap with the predominance test in Rule 23(b)(3)); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 536 n.6 (C.D. Cal. 2011) (following *Wolin* and rejecting defendant's argument that the "alleged misrepresentations were not material because its sales increased after removing the misrepresentations" because this argument "goes to proof of the merits of [p]laintiff's claim, not to whether common questions predominate or whether the class action is a superior vehicle for resolving the dispute); *Delarosa v. Boiron, Inc.,* 275 F.R.D. 582, 594 (C.D.Cal.2011) (same).

Indeed, Defendants identify no particular Rule 23 requirement for which Expert Clark's testimony falls short.  For example, Defendant Expert Clark's testimony regarding a Rule 23 requirement—namely, commonality—is that all "models" at issue in this case "have similar key components, such as the plastic outer tub, clothes basket support, tub-to-pump hose, and door gasket."  Clark Decl. (Dkt. 91) Ex. 1 at 12; *see also* Pls. Opp'n at Mot to Exclude Clark (Dkt. 150) at 10.  To reach this conclusion, as Expert Clark explains, Plaintiffs' "[f]ive washing machines were disassembled and inspected" and then, based on this inspection, "empirical knowledge of washing machine operation developed over 14 years, and a basic understanding of biology, a theory was developed to explain the accumulations" of BMFO.  Clark Decl. (Dkt. 91) Ex. 1 at 10-11.  This methodology of inspection combined with knowledge derived from experience is an accepted washing machine investigation methodology to investigate the cause of poor performance or complaints about front load washers.  *See* Clark Decl. Ex. I at 7-8; Clark Reply Decl. ¶¶ 10-11("[A]ccepted washing machine investigation methods can utilize any number of tools, including observations, logical evaluation and experience . . . in

combination with knowledge of basic sciences.").  Indeed, as Plaintiffs observe, Defendant's own expert, Gerald Zamiski, *agreed* that Expert Clark's methodology for determining whether the Washers had a common design was a proper methodology. Sealed Appendix of Dep. In Support of Mot. to Certify Class (Dkt. 145) at Ex. 2 (Zamiski Decl.) 87:5-89:1 (Q: "So unlike a manufacturing defect, when you investigate a design defect and when the manufacturing entity has testified that they are all the same, there isn't the need to get another part or another new machine to find out what the conditions were before the undesired effect . . . . He can look at one of the five an know what the condition was." A: "I would say yes.").

The case *PixArt Imaging*, which involved a patent dispute, is highly instructive.  In *PixArt*, the court evaluated whether the testimony of the plaintiff's expert regarding the "similarity and interchangeability of technology used in" the products at issue was scientifically reliable.  *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, C 10-00544 JW, 2011 WL 5417090, *7-8 (N.D. Cal. Oct. 27, 2011).  Applying the principles articulated in *Kumho Tire,* the court observed that plaintiff's expert had "reviewed the technical specifications underlying [plaintiff's] devices, reviewed [defendants'] patents and the technology underlying those patents, and made observations about [another] device built by [plaintiff]." *Id.* at * 8.  Based upon his review of defendant's internal documents, plaintiff's expert formed the opinion that the devices were "similar" because "they share[d] three underlying principles." *Id.*  The defendants argued that plaintiff's expert's methodology was not scientifically reliable.  *Id.*  The court rejected this argument, reasoning that plaintiff's expert's methodology was reliable because his opinion "derives from his personal knowledge and experience"—which included an "extensive background in the area of optical science and computer engineering"—"as well as his personal review of patents and technologies at issue in this case." *Id.*

Both the expert in *PixArt Imaging* and Expert Clark in the present case have extensive personal knowledge and experience in engineering the product at issue.  *See*

Clark Dec. Ex. 1 at 14.  Both the experts combined that knowledge and experience with a "review of . . . technologies at issue in this case." *PixArt Imaging*, 2011 WL 5417090 at *8.  Thus, as in *PixArt Imaging*, the Court concludes that Expert Clark is eminently qualified to opine on washing machine design and that he used a reliable scientific methodology to evaluate whether the washing machines had a common design.

In sum, this Court need not reach Defendant's arguments, which are all directed to the issue of whether the a design defect or consumer misuse was the actual cause of BMFO in Plaintiffs' Washers and whether Expert Clark's testimony that the design caused the BMFO is reliable, because these arguments go to the merits of Defendant's defense and not the Rule 23 requirements.  Thus, the Court DENIES Defendant's Motion to Exclude Expert Clark.

## 1.  Expert Yang

Defendant's criticisms of Plaintiffs' Expert Chin Yang ("Expert Yang") are the mirror image of Defendant's criticisms of Expert Clark.  Defendant contends that portions of the testimony by Expert Yang must be excluded under *Daubert* because either his methodology is unreliable or he lacks expertise.  Whereas Defendant attacked Expert Clark for being a washing machine engineer without a microbiology degree, Defendant now seeks to exclude portions of testimony by Expert Yang because he is a microbiologist who is "not an engineer and has no experience in the field of engineering or washing machine design."  Mot (Dkt. 103) at 5.  Alternatively, Defendant contends that Expert Yang's methodology regarding his analysis of two of Plaintiffs' five Washers is unreliable because he relied on samples taken from Washers six to 15 months after they had sat in storage, and thus they were not reliable indicators of the amount of BMFO in the Washers at the time they left their owner's home.  *Id.* at 7.

As this Court has concluded in this Order, a tailored *Daubert* analysis is used at the class certification stage to determine the reliability of the expert's testimony *regarding the Rule 23 requirements*, not the merits of this case.  Here, Defendant does not even

mention the Rule 23 requirements that are relevant to Expert Yang's testimony, much less explain the purported problems with this testimony in relation to Rule 23.

Thus, the Court DENIES Defendant's Motion to Exclude Expert Clark (Dkt. 103).

## IX.    Disposition

For the foregoing reasons, the Court:

(1) GRANTS Plaintiffs' Motion for Class Certification (Dkt. 87) and certifies the California Class, Illinois SOL Class, Maryland Class, and New York Class;

(2) DENIES Defendant's Motion to Exclude Expert Chin S. Yang (Dkt. 103);

(3) DENIES Defendant's Motion to Exclude Expert Brian Clark (Dkt. 104);

(4) GRANTS Plaintiffs request that their counsel be appointed class counsel pursuant to Rule 23(g)(1);

In addition, as an alternative to denying certification of the Illinois Class, this Court GRANTS Plaintiffs leave to amend to substitute another class representative who can represent the entire Illinois Class.  Plaintiff shall file a proposed amendment to the operative SCAC **on or before February 6, 2012**.  To expedite this process, this Court ORDERS Defendant to produce to Plaintiffs, **within 10 days** of the entry of the present class certification Order, Defendant's documents, hardcopy and electronic, with unredacted information about the identity of all Washer owners.

DATED: December 20, 2012

_David O. Carter_

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE