O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **SHARON COBB, *et al.* individually and on behalf of all other similarly situated,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**BSH HOME APPLIANCES CORPORATION,**<br><br>**Defendant.** | Case No.: SACV 10-0711 DOC(ANx)<br><br><br><br>**ORDER DENYING MOTION FOR SANCTIONS [232]** |

Before the Court is Defendant's Motion for Sanctions ("Mot.") (Dkt. 232). After reviewing the Motion, Plaintiffs' Opposition to the Motion for Sanctions ("Opp.") (Dkt. 242), and Defendant's Reply ("Reply") (Dkt. 247) and considering the arguments at the hearing, the Court DENIES the motion.

**I.   Background**

This case arises out of Plaintiffs' allegations that Defendant BSH Home Appliances Corporation failed to disclose various biofilm, mold, and odor problems to consumers of its

front-loading washing machines, leading consumers to pay more for BSH's washing machines than they otherwise would have. Third Consolidated Amended Complaint ("TCAC") (Dkt. 193) ¶ 32, 33, 37, 44.

## II. Legal Standard

The Court has the inherent power to impose sanctions for bad faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991). "The district court may, in its informed discretion, rely on [its] inherent power rather than the federal rules." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). "Bad faith" includes "a variety of types of willful actions, including . . . . an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case." *Id.* at 994. Sanctions may be imposed for fraud upon the court. Fraud upon the court involves "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995).

## III. Discussion

Defendant asserts that Plaintiffs should be sanctioned pursuant to the Court's inherent power because Plaintiffs have attempted to perpetuate a fraud upon the Court. Mot. 8-9. Defendant makes two core allegations: 1) Plaintiffs' counsel advanced a damages theory in this Court based on facts that are irreconcilable with facts that Plaintiffs' counsel is asserting before another federal district court in a similar lawsuit against Defendant's competitor Whirlpool, *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-wp-65000 (N.D. Ohio), *id.* at 2-4; and 2) Plaintiffs' expert in this case copied *Whirlpool* plaintiffs' expert's report without attribution and Plaintiff's counsel attempted to conceal it, *id.* at 5-8.

### i. Irreconcilable Damages Theories

One of Plaintiffs' models for measuring consumers' damages, the price elevation model, involves comparing the prices of Defendant's front-loading washing machines in the "actual world" versus the prices in a "but for" world. Mot. at 3. The "actual world" is a world in which

Defendant had failed to disclose its products' alleged propensity to develop mold and odor problems. The "but for" world is a world in which Defendant did disclose the problems. *Id.* In this action, Plaintiffs' actual world model assumes that BSH failed to disclose the problems while all of its competitors did disclose them. In the *Whirlpool* action, which involves similar claims against BSH's competitor Whirlpool and where plaintiffs are also represented by Plaintiffs' counsel Lieff Cabraser Heimann & Bernstein LLP, the plaintiffs' actual world model assumes that Whirlpool failed to disclose while all of its competitors did disclose. *Id.* The *Whirlpool* plaintiffs also assert in their motion for summary judgment that Whirlpool failed to make adequate disclosures. Reply Ex. 1 at 4. Defendant claims that Plaintiffs' damages theories in this action and the *Whirlpool* action are factually irreconcilable because the facts used to calculate the "actual world" price must be "real world facts," not assumptions, and it is inconsistent for Plaintiffs to assert in one action that BSH failed to disclose while asserting in another that BSH did disclose. Mot. at 4. Plaintiffs respond that the "actual worlds" are not in conflict because it is normal practice for economists to construct models based on factual assumptions and that assumptions had to be made in both models here because it is still legally contested whether BSH and Whirlpool made adequate disclosures. Opp. at 4. Plaintiffs respond also that they have been transparent about the factual assumptions underlying the "actual world" models in each action because they shared the *Whirlpool* export report with Defendant. Opp. at 7.

      The Court agrees with Plaintiffs that assuming in this action that BSH did not disclose the alleged biofilm, mold, and odor problems while asserting in the *Whirlpool* action that BSH did disclose the problems does not constitute assertion of irreconcilable facts. Plaintiffs' damages theories are based on economic models. Models should be based on factual assumptions that are reasonable and based in reality. However, given that models are approximations by nature, the experts cannot claim and Plaintiffs' expert Dr. Rysman does not claim to be using only "real world facts" even in the "actual world" of their price elevation model. Thus, Plaintiffs' counsel did not act in bad faith by instructing Dr. Rysman and the *Whirlpool* plaintiffs' expert Dr. Van Audenrode to use contradictory factual assumptions. To the extent that Defendants are

challenging the soundness of Dr. Rysman's methodology, those concerns should be addressed in the parties' *Daubert* motions or on cross-examination. *Cf. Negrete v. Allianz Life Ins. Co.*, CV 05-6838, 2013 U.S. Dist. LEXIS 176313 (C.D. Cal. Dec. 9, 2013), at *81.

### ii. Copying Without Attribution and Concealment

Defendant argue that sanctions are also justified by Plaintiffs' failure to attribute portions of their expert witness Dr. Rysman's report to Dr. Van Audenrode's report even though Dr. Rysman used the same analysis and virtually identical language in his report. Mot. at 6-7; Mot. Ex. 3. Defendant claims that Plaintiffs tried to hide the copying by allowing Dr. Rysman to testify inaccurately about his authorship of his report and refusing to make available for deposition Dr. Weglein, who worked with both Dr. Rysman and Dr. Van Audenrode on their reports and who could answer questions about them. Mot. at 7-8.

Plaintiffs do not dispute that the language in the two reports are very similar or that Dr. Rysman's report does not cite Dr. Van Audenrode's report. Plaintiffs argue instead it was justified for Analysis Group, the economic consultancy that employed Dr. Weglein and Dr. Van Audenrode and worked with both Drs. Van Audenrode and Rysman, to provide similar language to each expert and for each expert to adopt the language without major changes because that section of the report merely describes basic economic principles. Opp. at 10. Additionally, Plaintiffs contend that there was no fraud because they disclosed Dr. Van Audenrode's report to Defendant seven months before Dr. Rysman's deposition, *id.* at 8, and because Dr. Rysman testified truthfully at his deposition that he had adopted the report as his own, even if he did not write every word. *Id.* at 11.

Although the Court does not condone copying without attribution, the Court does not find that Plaintiffs' counsel's actions amounts to a "fraud" upon the Court. The cases most heavily relied upon by Defendant involve situations where parties or counsel actively hid certain facts from the court or opposing party. In *In re Theokary*, 468 B.R. 729, 740 (Bankr. E.D. Pa. 2012), for instance, a bankruptcy court sanctioned a debtor for attempting to pass off two reports that he plagiarized from a court filing as his expert witness's report. In *Pumphrey*, defendant's

general counsel failed to produce a video in discovery that would have contradicted defendant's claims. 62 F.3d at 1130.

Here, Plaintiffs did not attempt to pass off Dr. Van Audenrode's work as Dr. Rysman's or to hide Analysis Group's role in Dr. Rysman's report. At Dr. Rysman's deposition, Dr. Rysman answered in the affirmative when Defendant's counsel asked him whether he was the one who "designed," "determined," "devised," and "chose" the price elevation methodology, which, when considered in isolation, gives the impression that Dr. Rysman was claiming exclusive or at least principal authorship of the methodology. Reply Ex. 5 (Rysman Dep.) at 32:15-19; 33:8-18; 34:11-13. However, Dr. Rysman also asserted throughout this line of questioning that Analysis Group "provide[d] support in writing as well as in the calculations," *id.* at 33:23-24, and "provided support with collecting the data, analyzing the data, and putting together the report," *id.* at 32:12-14. When asked whether the price elevation methodology section of the report were his own words, Dr. Rysman responded that "[a]ll the words are my words in the sense that I have read and signed off on every statement there. Our writing is collaborative. Some sentences are literally from my own fingertips. Some are sentences that they wrote that I reviewed and oftentimes corrected." *Id.* at 34:1-10. Reasonable minds may differ, but this Court credits Dr. Rysman's openness about Analysis Group's role in drafting the report and his role in reviewing, editing, and adopting the report. Disclosure alone does not excuse plagiarism. However, it is unlikely that Plaintiffs' counsel would have voluntarily disclosed Dr. Van Audenrode's report to Defendant or allowed Dr. Rysman to testify openly as to Analysis Group's role if they were trying to deceive Defendant or the Court regarding who authored Dr. Rysman's report. In light of these facts, this Court finds that Plaintiffs' counsel's actions do not constitute an "unconscionable plan or scheme . . . designed to improperly influence the [C]ourt in its decision." *Pumphrey*, 62 F.3d at 1131.

**IV.   Disposition**

Thus, the Court DENIES the motion for sanctions.

1  DATED: August 20, 2014

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE