1  Stuart M. Eppsteiner (SBN 098973)
   sme@eppsteiner.com
2  Andrew J. Kubik (SBN 246902)
   ajk@eppsteiner.com
3  EPPSTEINER & FIORICA ATTORNEYS, LLP
   12555 High Bluff Dr., Ste. 155
4  San Diego, CA  92130
   Telephone: (858) 350-1500
5  Facsimile: (858) 350-1501

6  Kristen Law Sagafi (SBN 222249)
   klaw@lchb.com
7  Nimish R. Desai (SBN 244953)
   ndesai@lchb.com
8  LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
9  275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
10 Telephone:  (415) 956-1000
   Facsimile:   (415) 956-1008

11
   *Attorneys for Plaintiffs and the Proposed*
12 *Settlement Class*
   *Additional counsel listed on signature page*
13

14              UNITED STATES DISTRICT COURT

15            CENTRAL DISTRICT OF CALIFORNIA

16                  SOUTHERN DIVISION

17

18  SHARON COBB, et al., individually     Case No.  SACV10-711 DOC (ANx)
    and on behalf of all others similarly
19  situated,,                            **PLAINTIFFS' UNOPPOSED MOTION
                                          FOR PRELIMINARY APPROVAL OF
20              Plaintiffs,               CLASS ACTION SETTLEMENT;
                                          MEMORANDUM OF POINTS AND
21  v.                                    AUTHORITIES IN SUPPORT
                                          THEREOF**
22  BSH HOME APPLIANCES
    CORPORATION, a Delaware               Hearing Date:    January 12, 2015
23  Corporation,                          Time:            8:30 a.m.
                                          Place:           Courtroom 9D
24              Defendant.
                                          Assigned to:
25                                        District Judge:  Hon. David O. Carter

26                                        Magistrate Judge:  Hon. Arthur Nakazato

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 12, 2015, at 8:30 a.m., in the Courtroom of the Honorable David O. Carter, United States District Judge for the Central District of California, located at 411 West Fourth Street, Room 1053, Santa Ana, California 92701-4516, Plaintiffs Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth, on behalf of themselves and all others similarly situated, will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an Order preliminarily approving a proposed Settlement Agreement, and for other related relief.

By this unopposed motion, Plaintiffs move the Court for an Order:

1. Preliminarily approving the Settlement in this action pursuant to Federal Rule of Civil Procedure 23(e);

2. Preliminarily certifying a Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3);

3. Appointing Class Counsel and Lead Class Counsel;

4. Appointing Class Representatives;

5. Approving the parties' proposed forms of notice and notice program, and directing that notice be disseminated pursuant to this program; and

6. Setting a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

This Motion is based on the accompanying Memorandum of Points and Authorities and all exhibits thereto, any papers filed in reply, the argument of counsel, and all papers and records on file in this matter.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION...................................................I

MEMORANDUM OF POINTS AND AUTHORITIES.........................1

I.    INTRODUCTION ......................................................... 1

II.   LITIGATION HISTORY ............................................... 2

    A.   Procedural History ........................................... 2

    B.   Plaintiffs' Factual Allegations and Claims................ 4

    C.   Discovery ..................................................... 4

    D.   Settlement Negotiations..................................... 5

III.  SUMMARY OF THE SETTLEMENT TERMS.................. 6

    A.   Settlement Class............................................. 6

    B.   Settlement Consideration.................................... 6

    C.   Proposed Notice Plan....................................... 7

    D.   Attorneys' Fees and Costs and Service Awards.......... 8

    E.   Settlement Release .......................................... 9

IV.  DISCUSSION ........................................................... 9

    A.   This Settlement satisfies the legal standards for obtaining preliminary approval......................................... 9

        1.   The Settlement is the product of arm's-length negotiations and is informed by the litigation.......... 12

        2.   The Settlement is within the range of reasonableness given the benefits conferred and the risks of litigation............................................ 14

        3.   Class Counsel, highly experienced class action attorneys, support the Settlement. ...................... 16

    B.   The Settlement Class should be certified and Class Counsel appointed. ....................................... 16

    C.   The proposed class notice should be approved. ......... 18

    D.   Class Counsel will apply separately for attorneys' fees and costs and service awards. ............................ 19

    E.   The final approval hearing should be scheduled. ........ 19

V.   CONCLUSION........................................................ 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591, 620 (1997)................................................................ 17, 18

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988)................................................................ 14

*Ching v. Siemens Indus.*,
No. C 11-4838 MEJ, 2013 U.S. Dist. LEXIS 169279
(N.D. Cal. Nov. 26, 2013) ................................................................ 10

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir.1992) ................................................................ 12

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013)................................................................ 3

*Eisen v. Porsche Cars N. Am., Inc.*,
No. 2:11-CV-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ....... 13, 16

*Evans v. Jeff D.*,
475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) ........................................ 11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................ 11, 17

*In re Heritage Bond Litig.*,
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)................................... 12

*In re Linerboard Antitrust Litig.*,
296 F. Supp. 2d 568 (E.D. Pa. 2003)................................................................ 14

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ................................................................ 19

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir.2008) ................................................................ 10

*In re Tableware Antitrust Litig.*,
484 F.Supp.2d 1078 (N.D.Cal.2007)................................................................ 11, 18

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions
Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014)................................................................ 12

*Ma v. Covidien Holding, Inc.*,
No. SACV 12-02161-DOC, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014)........... 10

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ................................................................ 14

**TABLE OF AUTHORITIES**
**(continued)**

Page

*McKenzie v. Federal Exp. Corp.*,
No. CV 10-02420 GAF (PLAx), 2012 U.S. Dist. LEXIS 103666,
2012 WL 2930201 (C.D. Cal. July 2, 2012).......................................... 15

*Molski v. Gleich*,
318 F.3d 937 (2003) ......................................................................... 10

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir.1982) .............................................................. 11

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir.2009) .............................................................. 11

*Ross v. Trex Co., Inc.*,
No. C 09–670, 2009 U.S. Dist. LEXIS 69633 (N.D.Cal. July 30, 2009)............. 11

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. Wash. 2003) ..................................................... 10

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012), *leave to appeal denied*, 13-80000,
2013 U.S. App. LEXIS 7023 (9th Cir. Apr. 1, 2013), *cert. denied*,
134 S. Ct. 1273 (U.S. 2014)........................................................... 3, 17

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ........................................................ 16

**RULES**

Fed. R. Civ. P. 23.............................................................................. 9

Fed. R. Civ. P. 23(a) ......................................................................... 17

Fed. R. Civ. P. 23(b)(3) .................................................................... 17

Fed. R. Civ. P. 23(c)(2)(B) ................................................................ 18

Fed. R. Civ. P. 23(e)...........................................................i, 10, 11, 18

Fed. R. Civ. P. 23(g) ........................................................................ 17

**TREATISES**

4 Newberg on Class Actions,
§ 11:22, et seq. (4th ed. 2002) .............................................................. 9

4 Newberg on Class Actions,
§ 11:41 (4th ed. 2002)....................................................................... 12

4 Newberg on Class Actions,
§ 11:53 (4th ed. 2002)....................................................................... 18

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT — SACV10-711 DOC (ANX)

1

## TABLE OF AUTHORITIES
### (continued)

**Page**

4 Newberg on Class Actions,
   § 8.32 (4th ed. 2002) ................................................................................... 18

## OTHER AUTHORITIES

Manual for Complex Litigation (2d ed. 1985)
   § 30.44 ........................................................................................................ 11

Manual for Complex Litigation (3d ed. 1995)
   § 30.42 ........................................................................................................ 12

Manual for Complex Litigation (4th ed. 2004)
   §§ 21.63, et seq. ........................................................................................... 9

Manual for Complex Litigation
   § 21.311 ....................................................................................................... 18

- iv -

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth ("Plaintiffs"), individually and as representatives of the proposed Settlement Class, submit this Memorandum in support of their unopposed motion for preliminary approval of the proposed Settlement Agreement ("Settlement") with Defendant BSH Home Corporation ("BSH"). [1]  The proposed Settlement extends substantial cash relief to consumers nationwide who purchased BSH front-loading washers ("Washers"), which Plaintiffs allege have a propensity to develop biofilm, mold, and foul odors ("BMFO").  The relief is available upon completion of an easy and straightforward claim form.

This comprehensive Settlement is the result of two mediation sessions supervised by retired judges, in addition to direct negotiations following those sessions.  The hard-fought and arm's-length negotiations started well after substantial fact discovery and motions practice had taken place, including class certification, and concluded only after the parties had completed expert discovery and had briefed summary judgment, decertification, and numerous *Daubert* challenges.

The Settlement is well within the range of reasonableness given the consideration offered to Class Members and the risks of ongoing litigation, including the uncertainty in the pending motions, at trial, and on appeal.  This is especially so considering the recent verdict in a similar front-loading washing machine class action case in favor of defendant Whirlpool Corporation in the Northern District of Ohio. Preliminary approval of this valuable Settlement is appropriate and should be granted.

---

[1] Unless otherwise noted, capitalized terms have the same meaning as in the proposed Settlement Agreement.  See Ex. A at 5-7 (§ II).

- 1 -

1    Plaintiffs respectfully request that the Court enter an Order preliminarily

2  approving the Settlement, certifying the Settlement Class, appointing Class Counsel,

3  Lead Class Counsel and Settlement Class Representatives, ordering notice

4  disseminated to the Settlement Class, establishing deadlines for Class Members to

5  opt out or to object to the Settlement, and setting a Final Approval Hearing at which

6  the Court will consider any objections and evaluate the proposed Settlement and a

7  separate motion for attorneys' fees and costs and service awards.

8  **II.    LITIGATION HISTORY**

9        **A.    Procedural History**

10    Plaintiffs Diana Tait and Wentworth filed their Corrected First Amended

11  Complaint against BSH on July 8, 2010 ("*Tait* Action").  Dkt. 4.  On February 14,

12  2011, Plaintiffs Sharon Cobb, Gibson, Isabella, Tait and Wentworth filed the

13  Consolidated Amended Complaint ("CAC").  Dkt. 41.  BSH moved to dismiss the

14  CAC.  Dkt. 43.  In the meantime, the consolidated action was transferred from

15  Judge Cormac J. Carney to this Court.  Dkt. 58.  The Court granted BSH's motion

16  to dismiss with leave to amend (Dkt. 60), and Plaintiffs filed a Second Consolidated

17  Amended Complaint ("SCAC") on June 3, 2011.  Dkt. 66.  BSH renewed its

18  motion to dismiss (Dkt. 67), which the Court granted in part, and denied in part.

19  Dkt. 74.  BSH answered the SCAC on September 21, 2011. Dkt. 75.[2]

20    Plaintiffs moved for certification of their California, Illinois, Maryland, and

21  New York consumer fraud claims and California and New York implied warranty

22  claims on May 16, 2012.  Dkt. 87.  BSH opposed the certification motion and

23  moved to strike Plaintiffs' experts' opinions.  Dkts. 96-102, 103-104.  In an Order

24  dated December 20, 2012 (Dkt. 166), this Court certified a four-state class and

25  denied BSH's motion to exclude Plaintiffs' engineering and biology experts'

26  _____

27  [2] Plaintiff Cobb's claims were dismissed, and Plaintiff Demereckis was substituted
in for Plaintiff Tait in the Third Consolidated Amended Complaint. Dkt. 190.  The
current class representatives are Plaintiffs Dennis Demereckis, Beverly Gibson,
28  Trish Isabella, and Nancy Wentworth.

opinions. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012), *leave to appeal denied*, 13-80000, 2013 U.S. App. LEXIS 7023 (9th Cir. Apr. 1, 2013), *cert. denied*, 134 S. Ct. 1273 (U.S. 2014) .

BSH petitioned the Ninth Circuit for permission to appeal the class certification order on January 3, 2013.  App. Dkt. 1.  At the same time, petitions for certiorari were pending in similar moldy washer cases against Whirlpool Corporation ("*Whirlpool*" or "*Glazer*"), and Sears, Roebuck & Co. ("*Kenmore*" or "*Butler*") challenging class certification decisions by the Sixth and Seventh Circuits.[3]  On April 1, 2013, the Supreme Court granted certiorari in both *Glazer* and *Butler*, vacated the Sixth and Seventh Circuit rulings, and remanded for reconsideration in light of *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ("GVR Orders").  The same day, the Ninth Circuit denied BSH's petition for review.  App. Dkt. 32.  BSH filed a motion for reconsideration, which the Ninth Circuit denied on May 23, 2013.  App. Dkts. 33-34.  Following the GVR Orders, the Sixth and Seventh Circuits reaffirmed their earlier decisions, and Whirlpool and Sears once again petitioned for certiorari.  Earlier, on July 30, 2013, BSH had filed its own petition for a writ of certiorari from the Ninth Circuit's denial of permission to appeal.  The petitions for all three cases were denied on February 24, 2014.

BSH filed a motion for sanctions related to Plaintiffs' damages experts, which the Court denied on August 20, 2014.   Dkts. 232, 252.  Plaintiffs filed a motion for spoliation sanctions related to discovery issues, which was also denied. Dkt. 265.

On August 25, 2014, the Court approved Plaintiffs' proposed Notice Plan and draft forms of notice to the Class.  Dkt. 258.  Certification notice was disseminated to California, Illinois, Maryland, and New York Class Members beginning in late September.

---

[3] On October 30, 2014, following a three-week trial, a jury in the Northern District of Ohio returned a unanimous defense verdict in *Whirlpool*.

- 3 -

On August 29, 2014, BSH filed a motion for partial summary judgment.  Dkt. 259.  Ten days later, BSH filed a motion to decertify the classes.  Dkt. 276.  The parties also filed cross-motions to exclude each other's experts' opinions on the motions and at trial ("*Daubert* motions").  Dkts. 289, 335.  At the time of settlement, the partial summary judgment and decertification motions had been fully briefed and were awaiting hearing and final rulings, and *Daubert* replies were days from being filed.

## B.   Plaintiffs' Factual Allegations and Claims

Plaintiffs' claims against BSH are on behalf of all U.S. residents who purchased one or more Bosch or Siemens brand 27-inch front-loading washing machines (the "Washers").[4]  Dkt. 190-1 [Sealed Third Amended Complaint] ¶ 104.  Plaintiffs alleged that BSH designed, manufactured, marketed, and sold Washers with a propensity to develop bacteria, mold and foul odors ("BMFO"), and that BSH failed to disclose this defect or the extraordinary tasks required to abate or ameliorate BMFO.  *Id*. at ¶¶ 4-7, 44-45.   Plaintiffs brought claims against BSH for violations of state consumer protection statutes, common law fraudulent concealment/nondisclosure, breach of express and implied warranties, and unjust enrichment.  Dkt. 190-1 [TAC] at pp.53-73.

## C.   Discovery

Discovery in this matter was extensive and contentious.  Plaintiffs served multiple sets of document requests, interrogatories, and requests for admissions.  Ex. C [Sagafi Decl.] ¶ 7.  BSH produced over 31,000 pages of documents, including detailed consumer complaint records and internal correspondence regarding the design and marketing of the Washers.  *Id*.  The parties took and defended 28 fact

---

[4] Plaintiffs originally alleged claims related to the 24-inch machines, but those claims were not certified, are not included in the settlement, and will not be released.  Plaintiffs submit herewith a Provisional Fourth Amended Consolidated Complaint that clarifies that the Class includes only purchasers of the 27-inch machines.

witness depositions, including key BSH marketing, engineering, and consumer complaint employees and former employees.  These depositions took place across the country and in The Netherlands.  *Id.*  The Plaintiffs were also deposed.  *Id.*, ¶ 16.

Expert discovery was equally comprehensive.  In total, the parties presented 21 experts who together prepared and served 32 expert reports, including eight disclosed during the class certification stage.  The experts prepared reports related to the Washers' allegedly defective design, mold growth and testing, consumer complaints, consumer perception of BSH's marketing and alleged non-disclosures, and damages.  Ex. C [Sagafi Decl.] ¶ 8.  The parties took and defended a total of 26 expert depositions, with some of the experts being deposed both at the class certification and the merits phases.  *Id.*

### D.    Settlement Negotiations

The Parties first mediated their dispute on December 8, 2013 with Hon. Daniel S. Pratt (Ret.) at JAMS in Orange, CA.  Prior to that mediation, the parties met at the Los Angeles offices of Jones Day on December 3, 2013, at which time Plaintiffs presented their theory of class-wide damages.  Ex. C [Sagafi Decl.] ¶ 9.  At the time of the first mediation, this case and similar cases against other manufacturers of front load washing machines were facing the possibility of U.S. Supreme Court review.  The case did not settle.  *Id.*

Pursuant to the Court's Scheduling Order dated June 30, 2014, the Parties mediated again, this time with Hon. Dickran Tevrizian (Ret.), on September 8, 2014. The Parties reached agreement on some significant issues, but did not reach full agreement on all terms.  Ex. C [Sagafi Decl.] ¶ 10.

Following the second mediation, the Parties resumed active litigation, including continued expert work and briefing on BSH's motion for summary judgment, BSH's motion to decertify the class, and *Daubert* motions, along with trial preparation.  Ex. C [Sagafi Decl.] ¶ 10.  On October 21, 2014, the Parties resumed negotiations without the assistance of the mediator.  The Parties reached

agreement on the outstanding issues and executed a memorandum of understanding ("MOU") on November 3, 2014.  The parties negotiated the amount of attorneys' fees and costs and service awards for the Class Representatives only after completing negotiation of the substantive settlement terms.  Ex. C [Sagafi Decl.] ¶ 11.

## III.   SUMMARY OF THE SETTLEMENT TERMS

The Settlement Agreement resolves all claims of Plaintiffs and the Settlement Class against the Defendants.  The Settlement Agreement is attached as Exhibit A and summarized below.

### A.   Settlement Class

"Settlement Class" means all residents of the United States who were the original purchasers of one or more Bosch or Siemens brand 27-inch Front-Loading Washers.  Excluded from the Class are:  (1) BSH, any entity in which BSH has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) retailers, wholesalers, and other individuals or entities that purchased the Washers for resale; (3) the United States government and any agency or instrumentality thereof; (4) the judge to whom this case is assigned and any member of the judge's immediate family; (5) claims for personal injury, emotional distress and  wrongful death; and (6) persons who timely and validly opt to exclude themselves from the Settlement Class.  Ex. A [Agreement] at 7 (§ II.G.).

### B.   Settlement Consideration

Each Class Member is eligible for a $55 cash payment from BSH obtained through a straightforward claims process.   Ex. A [Agreement] at 7 (§ III.A.).  If BSH already has proof of ownership for Class Members through its warranty records, the ICA shall send a Notice of Eligibility postcard to those Class Members. At that point, Class Members need only confirm their correct mailing address and

submit a statement under penalty of perjury that they are the original purchaser to receive the $55 payment.  *Id.*

Otherwise, to establish eligibility for the $55 payment, Class Members need only provide a receipt, invoice, credit card statement, or picture of their Washer's serial number, along with a statement under penalty of perjury that they were the original purchaser of the Washer.  *Id.*  Class Members will have 120 days from the date upon which Summary Notice is disseminated to submit their claims.  Ex. A at 9 (§ III.G.).

**C.    Proposed Notice Plan**

The proposed Notice Plan incorporates well-established best practices, and provides clear information regarding the Settlement terms, the Fairness Hearing, Class Members' rights to object to or opt out of the Settlement, and the request for attorneys' fees and costs.  See Ex. A [Agreement] at 11-15 (§ V).   The independent claims administrator ("ICA"), KCC, is a leading class administration firm selected by Plaintiffs to provide certification notice and by BSH, with Class Counsel's approval, to provide settlement notice and administration. KCC's  notice expert attests to the quality of the notice plan, which is expected to reach at least 80% of the Settlement Class .  Intrepido-Bowden Decl.

The proposed Notice Plan has the following key components:

1.    First-class mail service of the postcard Summary Notice to Class Members identified by BSH and Class Counsel, which will summarize key features of the Settlement and reference the website and toll-free number (*see* Ex. A [Agreement] at 12 (§ V.A.) and 54-55 [draft Summary Notice]);[5]

2.    Email service of the Summary Notice to identifiable Class Members whose mailing address is not known, following commercially reasonable steps to complete and/or update email addresses for Class Members (*see* Ex. A [Agreement]

---

[5] The ICA shall update all mailing addresses with available national databases to ensure the most accurate mailing addresses for all Class Members.

- 7 -

1    at 12 (§ V.B.));

2        3.      Long Form Notice, available online and by request in English or

3    Spanish, that contains all of the necessary Settlement and procedural information

4    (*see* Ex. A [Agreement] at 13 (§ V.E.) and 67-73 [draft Long Form Notice]);

5        4.      A Settlement website maintained by the ICA that posts all pertinent

6    Settlement documents, including the Summary Notice, Long Form Notice, and

7    Settlement Agreement, pertinent deadlines, and contact information for the ICA and

8    proposed Class Counsel, with links to this Settlement website posted on BSH's

9    website (https://www.bsh-group.com/laender/us/) and on Class Counsel's websites

10   (*see* Ex. A at 13 (§ V.E.));

11       5.      Internet advertisements, including social media placements and banner

12   ads on popular websites (*see* Ex. A at 13 (§ V.D.));

13       6.      Publication Notice to be published in *People*, *National Geographic*,

14   and the *Orange County Register* (*see* Ex. A at 12-13 (§ V.C.) and 62 [draft

15   Publication Notice]);

16       7.      A toll-free telephone line staffed by the ICA to answer any questions

17   about the Settlement, with Class Counsel's assistance (*see* Ex. A [Settlement

18   Agreement] at 12 (§ V.A.)).

19       **D.      Attorneys' Fees and Costs and Service Awards**

20       Defendants agree not to oppose a request by Class Counsel for attorneys'

21   fees and costs of $6.5 million, including experts' fees and costs.  Ex. A [Agreement]

22   at 16 (§ VII).  Defendants also agree not to oppose a request by Class Counsel for a

23   $5,000 service award to each of the Class Representatives.  Ex. A [Agreement] at

24   15 (§ VI).  Class Counsel will submit their motion for an award of attorneys' fees,

25   costs, and service awards for the Class Representatives in advance of the Final

26   Approval Hearing as ordered by this Court.

27

28

### E.   Settlement Release

In exchange for the valuable consideration provided by the Settlement, Plaintiffs agree to an appropriately tailored release of Defendants from liability.  Ex. A [Agreement] at 16-18 (§ VIII).  This release will preclude future claims "arising out of, or in any way relating to any act, failure to act, omission, misrepresentation, fact, event, transaction, or occurrence from the beginning of time until the Effective Date of this Settlement Agreement that were raised or could have been raised in the Action relating related in any way to BMFO in the Washers (including the Nationwide Claims), except for claims for personal injury, emotional distress, or wrongful death."  Ex. A at 17 (§ VIII.B.).  Plaintiffs also agree to dismissal of the action with prejudice.

## IV.   DISCUSSION

### A.   This Settlement satisfies the legal standards for obtaining preliminary approval.

Judicial proceedings under Federal Rule of Civil Procedure 23 follow a three-step procedure for approval of class action settlements:  (1) certification of a settlement class and preliminary approval of the proposed settlement upon written motion to the trial court; (2) dissemination of notice of the proposed settlement to the affected class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.  Federal Judicial Center, Manual for Complex Litigation, §§ 21.63, et seq. (4th ed. 2004) ("Manual").  This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* 4 Newberg on Class Actions, § 11:22, et seq. (4th ed. 2002) ("Newberg").

With this motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval to the Settlement.

This Court recently summarized the preliminary approval standard in *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC, 2014 WL 360196, at *3-4 (C.D. Cal. Jan. 31, 2014):

> A proposed settlement under Federal Rule of Civil Procedure 23(e) must be "fundamentally fair, adequate, and reasonable." [*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. Wash. 2003).] Pursuant to Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir.2008).
>
> To determine the preliminary fairness of an agreement, the Court balances "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; [and] the presence of a governmental participant." *Staton*, 327 F.3d at 959 (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (2003)); *see also* [*Ching v. Siemens Indus.*, No. C 11-4838 MEJ, 2013 U.S. Dist. LEXIS 169279, at *17 (N.D. Cal. Nov. 26, 2013)] (applying these factors to a preliminary approval of class settlement). Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d

1078, 1079 (N.D.Cal.2007) (citing Manual for Complex Litigation, Second § 30.44 (1985)). The question for preliminary approval of a settlement is whether it is "within the range of reasonableness." *Ross v. Trex Co., Inc.*, No. C 09–670, 2009 U.S. Dist. LEXIS 69633, at *9 (N.D.Cal. July 30, 2009).

The initial determination to approve or reject a proposed settlement is "committed to the sound discretion of the trial judge." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982). The Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.2009) (*quoting Officers for Justice*, 688 F.2d at 625). In evaluating a settlement agreement, it is not the Court's role to second-guess the agreement's terms. *Officers for Justice*, 688 F.2d at 625. "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986); *see also* [*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)] ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety."). In general, there is a strong judicial policy

1    favoring class settlements. *Class Plaintiffs v. Seattle*, 955 F.2d 1268,
2    1276 (9th Cir.1992).
3                                          *         *         *
4          The Settlement readily meets the standard for preliminary approval because it
5    is the product of serious, arm's-length negotiations between the parties reached
6    after substantial and hard-fought litigation and thorough investigation.  The
7    Settlement was reached by experienced consumer class action attorneys with the
8    help of well-regarded mediators.  Most importantly, the Settlement provides
9    substantial relief to the Settlement Class and is fair, reasonable, and adequate given
10   the alleged harm, the value provided to Class Members, and the litigation risks.

### 1.    The Settlement is the product of arm's-length negotiations and is informed by the litigation.

13         Where, as here, a settlement is the product of arm's-length negotiations
14   conducted by capable and experienced counsel, the Court begins its analysis with a
15   presumption that the settlement is fair and reasonable.  *See* 4 *Newberg* § 11:41; *In*
16   *re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10,
17   2005) ("A presumption of correctness is said to 'attach to a class settlement reached
18   in arm's-length negotiations between experienced capable counsel after meaningful
19   discovery.'") (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)); *In*
20   *re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
21   295 F.R.D. 438, 450 (C.D. Cal. 2014) ("the court concludes that the settlement is a
22   product of informed, arm's-length negotiations, and is therefore entitled to a
23   presumption of fairness.").
24         The parties were represented by counsel experienced in the prosecution,
25   defense, and settlement of complex class actions.  Ex. C [Sagafi Decl.] ¶ 15; Ex. D
26   [Eppsteiner Decl.]; Ex. E [LCHB Resume]; Ex. F [Levin Fishbein resume].
27   Represented by these counsel, the parties engaged in two, arm's-length mediations.
28   The Honorable Daniel S. Pratt (Ret.) presided over the first mediation in December

1   2013, and the Honorable Dickran Tevrizian (Ret.) presided over the September

2   2014 mediation.  The input and guidance of these experienced mediators weighs in

3   favor of preliminary approval.  *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-

4   09405-CAS, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30, 2014) ("where the services

5   of a private mediator are engaged, this fact tends to support a finding that the

6   settlement valuation by the parties was not collusive.") (citing cases).

7       The first mediation took place after the four-state class was certified and

8   substantial fact and class-related expert discovery, thereby informing the parties'

9   views of the relative merits of the action.  The second mediation took place nine

10  months later, by which time the parties had engaged in additional fact discovery,

11  deposed each other's experts, and filed opening and responding briefs to BSH's

12  summary judgment motion.  Still, no agreement was reached.  Following the

13  second mediation, the parties resumed active litigation, including trial preparation

14  and ongoing briefing related to summary judgment, BSH's decertification motion,

15  and *Daubert* challenges.  Ex. C [Sagafi Decl.] ¶¶ 7-10.

16      With these motions pending, and with Plaintiffs' trial preparation well

17  underway, the Parties restarted negotiations with regard to the outstanding

18  settlement issues.  They reached agreement in principle on October 29, 2014, with a

19  signed memorandum of understanding following on November 3.  Ex. C [Sagafi

20  Decl.] ¶ 11.  The parties negotiated the amount of attorneys' fees and costs, and

21  Class Representative service awards, after completing the negotiation of substantive

22  settlement terms .  *Id.*   The Parties executed the full Settlement Agreement on

23  December 12, 2014 after careful and extended negotiations over the specifics of the

24  claims procedure and the notice program.  *Id.*, ¶ 12.

25      Thus, the parties reached this Settlement when represented by qualified

26  counsel, after thoroughly testing their theories and defenses throughout lengthy and

27  contentious litigation, and with the aid of experienced former judges who served as

28

1    mediators.  Each of these factors strongly favors preliminary approval of the

2    Settlement.

3              **2.      The Settlement is within the range of reasonableness given the benefits conferred and the risks of litigation.**

4

5              The Settlement here provides fair and adequate benefits to the Settlement

6    Class, especially when considered in light of the litigation risks.  Every Class

7    Member can follow the same, simple claims process to receive a $55 cash payment.

8    That figure represents a substantial percentage of plaintiffs' per-Washer damages

9    estimates, which ranged from $113 to $396, depending on the damages

10   methodology employed.  Doc. 259-3 [Rysman Rpt.] ¶ 11.  Notably, the price

11   elevation damages—the only model BSH conceded could be a valid classwide

12   measure (though it disputed the validity of the model on other grounds)—were

13   estimated at $113.  Thus, while "[a] settlement can be satisfying even if it amounts

14   to a hundredth or even a thousandth of a single percent of the potential recovery,"

15   here, the recovery is a significant percentage of potential damages, thereby

16   demonstrating that it falls within the range of reasonableness.  *Behrens v. Wometco*

17   *Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988); *see also Linney v. Cellular*

18   *Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998); *In re Linerboard*

19   *Antitrust Litig*., 296 F. Supp. 2d 568, 581 & n.5 (E.D. Pa. 2003) (gathering cases

20   where courts approved settlements achieving only single-digit percentages of

21   potential recoveries).

22             The Settlement is even more compelling given the substantial litigation risks

23   the Settlement Class faced.  First, while the Settlement provides meaningful

24   benefits to all Class Members nationwide, certifying a nationwide litigation class

25   under California law or the laws of the many states would have been challenging.

26   *See Mazza v. American Honda Motor Co.*, 666 F.3d 581, 590-94 (9th Cir. 2012); *In*

27   *re Pharm. Indus. Average Wholesale Price Litig*., 252 F.R.D. 83, 94 (D. Mass.

28   2008).  Even as to the four certified classes, representing consumers in California,

Illinois, New York, and Maryland, maintaining certification through trial was not guaranteed in light of BSH's pending decertification motion and the expected appeals of any final class certification order.  *Cf. McKenzie v. Federal Exp. Corp.*, No. CV 10-02420 GAF (PLAx), 2012 U.S. Dist. LEXIS 103666, 2012 WL 2930201, *4 (C.D. Cal. July 2, 2012) (even where a class has been certified, "settlement avoids all possible risk" of decertification and therefore weighs in favor of approving the settlement).

The Settlement Class also faced risks beyond class certification.  BSH's summary judgment motion was still pending and sought to eliminate the claims of a significant subset of the certified Classes.  Likewise, BSH challenged each of Plaintiffs' damages theories in its decertification and summary judgment motions, and separately in *Daubert* challenges to Plaintiffs' damages experts.  BSH also sought to greatly limit Plaintiffs' expert testimony related to the Washers' defective design and consumer complaints.  Plaintiffs vigorously opposed each of these motions, but they posed serious risks.

In addition, the recent trial of a class action against Whirlpool for similar alleged misconduct—designing and marketing front-load washing machines with a propensity to develop BMFO—resulted in a complete unanimous defense verdict. While Plaintiffs believe that the *Whirlpool* result is unique to that case, the verdict nonetheless underscores the inherent uncertainty in any trial, even where a party has confidence in their claims, as Plaintiffs do here.  And, even if Plaintiffs could be certain they would succeed on all these fronts and obtain a favorable verdict, defending that verdict on appeal would pose its own set of serious challenges.  This case has already been through a round of appeals, and given the procedural history, further appeals are a virtual certainty if the case were to proceed in active litigation. The value of any judgment would therefore be discounted by the delay the Class Members would suffer in actually obtaining that judgment.  By contrast, the proposed Settlement provides certain, timely, and substantial relief.  *See Vasquez v.*

*Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (in weighing the risk of future litigation, "a court may consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation") (internal quotes omitted).

While Plaintiffs believe they have a strong case, they faced substantial risks. Assessed against the delays and uncertainties associated with trial and appeals, the Settlement provides immediate, substantial cash benefits and falls within the range of reasonableness.

### 3. Class Counsel, highly experienced class action attorneys, support the Settlement.

The judgment of competent counsel regarding the Settlement should be accorded significant weight. *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30, 2014) (in granting final approval, noting that "[t]he recommendations of counsel are given great weight since they are most familiar with the facts of the underlying litigation.") (citing cases).

Class Counsel have plentiful experience litigating and settling consumer class actions and other complex matters. Ex. C [Sagafi Decl.] ¶¶ 4-5, 15; Ex. D [Eppsteiner Decl.]; Ex. E [LCHB Resume]; Ex. F [Levin Fishbein Resume]. They have intensively investigated and litigated the factual and legal issues raised in this action. Ex. C [Sagafi Decl.] ¶¶ 7-11; Ex. D [Eppsteiner Decl.]. The fact that qualified and well-informed counsel endorse the Settlement as fair, reasonable, and adequate weighs in favor of its approval. Ex. C [Sagafi Decl.] ¶ 17.

### B. The Settlement Class should be certified and Class Counsel appointed.

Provisional certification of a settlement class is a required component of preliminary approval. The Court need not consider the manageability of a potential

1    trial involving multiple states' laws because the Settlement, if approved, would

2    obviate the need for a trial. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591,

3    620 (1997); *Hanlon*, 150 F.3d at 1021-23. The Court can and should certify the

4    Settlement Class because the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3)

5    have been met, just as this Court found when certifying the State litigation classes.

6    *Tait v. BSH Home Appliance Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012).

7         The Rule 23(a) factors are met for all the same reasons described in the

8    Court's certification order.  The Settlement Class involves many thousands of

9    consumers.  *Id*. at 473.  The named Plaintiffs, as purchasers of Washers who

10   allegedly suffered economic losses due to the alleged common design defect and

11   BSH's alleged uniform omissions, are typical of and adequately represent the Class.

12   *Id*. at 476-77.  Class Counsel are also qualified and experienced to represent the

13   Settlement Class, just as they were with regard to the certified litigation classes.

14   *See id*.

15        Further, as this Court found in its class certification order, Plaintiffs contend

16   that this litigation continues to involve common class-wide issues that would drive

17   the resolution of Plaintiffs' claims and predominate over any individual issues.  *Tait*

18   *v. BSH Home Appliance Corp.*, 289 F.R.D. 466, 478 (C.D. Cal. 2012) (enumerating

19   common questions that predominate, including the presence of a design defect and

20   BSH's alleged failure to disclose known information about the defect).  Finally, the

21   Court found that the class mechanism is superior to any other for resolution of these

22   common disputes.  *Id*. at 486-87.

23        Pursuant to Rule 23(g), Plaintiffs' counsel also respectfully request that the

24   Court appoint as Class Counsel the same firms it appointed for the certified

25   litigation classes, and Stuart M. Eppsteiner as Lead Class Counsel, a position he has

26   held since so ordered by the Court early in this litigation.  Dkt. 38 and *Tait*, 289

27

28

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT — SACV10-711 DOC (ANX)

F.R.D. at 477.[6]  The attorneys at these firms are capable class action attorneys with a special focus on consumer protection and product defects, and they diligently pursued the litigation and secured this Settlement.  *Id*. at 476-77.  Their appointment as Class Counsel and Lead Class Counsel will facilitate a fair and efficient administration of the Settlement should it be approved. Resumes of the firms proposed to be appointed Class Counsel are attached as Exhibits D through F.

### C.    The proposed class notice should be approved.

Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Notice of a proposed settlement must inform class members (1) of the nature of the pending litigation, (2) of the general terms of the proposed settlement, (3) that more complete information is available on the docket, and (4) that any class member may appear and be heard at the fairness hearing. *See* Newberg § 8:32. The notice also must indicate that the court will exclude from the class any member who requests exclusion, that the judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel. *See* Fed. R. Civ. P. 23(c)(2)(B).

The form of notice is "adequate if it may be understood by the average class member." *Newberg* § 11:53. The notice must be "the best . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617. Publication notice is an acceptable method of providing notice where the identity of specific class members is not reasonably available. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citing *Manual* § 21.311).

---

[6] Proposed Class Counsel are Eppsteiner & Fiorica; Lieff Cabraser Heimann & Bernstein, LLP; and Levin Fishbein, Sedran & Berman, LLP (Ex. A [Agreement] at 6), with Stuart M. Eppsteiner as Lead Class Counsel.

1    The proposed Notice program described above in section III.C. meets these
2    requirements.  The Notice provides the definition of the Settlement Class, describes
3    the nature of the Settlement and its terms, explains the procedure for making
4    comments and objections, and provides contact information so that any Class
5    Member may receive answers to questions regarding the Settlement.  The Notice
6    also provides the date, time, and place of the final approval hearing, and informs
7    Class Members that they may enter an appearance through counsel.  The Notice
8    further informs the Class how to exercise their rights, including how to comment on
9    or object to the Settlement, and that the judgment will be binding upon them if they
10   do not opt out.  Finally, the Class Notice informs the Settlement Class about the
11   request for attorneys' fees and costs and service awards.

12   
13   **D.      Class Counsel will apply separately for attorneys' fees and costs and service awards.**

14   Class Counsel intend to apply for an award of attorneys' fees of $6.5 million,
15   inclusive of reasonable litigation costs.  This figure reflects a negative multiplier on
16   Class Counsel's current lodestar.  BSH agrees not to oppose this request.  *See* Ex. A
17   [Agreement] at 16 (§ VI.A.).  Class Counsel also intend to apply for a $5,000
18   service award payment to each of the Class Representatives in recognition of their
19   service benefiting the Settlement Class and the risks they took in prosecuting the
20   underlying actions.  *Id.* at 15 (§ V.I.).  *See In re Mego Fin. Corp. Sec. Litig.*, 213
21   F.3d 454, 463 (9th Cir. 2000) (affirming named plaintiff service awards of $5,000).

22   **E.      The final approval hearing should be scheduled.**

23   The last step in the approval process is a Fairness Hearing at which this Court
24   may hear all evidence and argument necessary to determine whether to grant final
25   approval to the Settlement. Plaintiffs respectfully request that the Court set the
26   following schedule for further Settlement-related proceedings:

27   
28

| | |
|---|---|
| Deadline for Class Counsel to file their fee application and motion for final approval. | 60 days after the Court grants preliminary approval. |
| Deadline for Class Members to opt out of the Settlement Class or submit objections to the proposed Settlement and/or to Class Counsel's fee application. | 60 days following mailing of the Summary Notice or 30 days from the last publication notice, whichever is later. |
| Deadline for Class Counsel to submit their responses to any objections. | 75 days after mailing of Summary Notice or 45 days after final publication notice, whichever is later. |
| Final Fairness Hearing. | 90 days after mailing of Summary Notice or 60 days after final publication notice, whichever is later. |

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that the Court should: (1) grant preliminary approval to the Settlement; (2) certify the Settlement Class; (3) appoint as Class Counsel Eppsteiner & Fiorica; Lieff Cabraser Heimann & Bernstein, LLP; and Levin Fishbein, Sedran & Berman, LLP, with Stuart M. Eppsteiner as Lead Class Counsel; (4) appoint Plaintiffs Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth as Settlement Class Representatives; (5) approve the proposed Notice Program and order notice to be disseminated; and (6) schedule a hearing for considering final approval of the Settlement and the motion for attorneys' fees and costs and service awards.

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

Dated:  December 12, 2014

By:  _____

Kristen Law Sagafi

1    Kristen Law Sagafi (SBN 222249)
     klaw@lchb.com
2    Nimish R. Desai (SBN 244953)
     ndesai@lchb.com
3    LIEFF CABRASER HEIMANN &
4    BERNSTEIN, LLP
     275 Battery Street, 29th Floor
5    San Francisco, CA  94111-3339
     Telephone:  (415) 956-1000
6    Facsimile:   (415) 956-1008

7    Jason L. Lichtman, *pro hac vice*
     LIEFF CABRASER HEIMANN &
8    BERNSTEIN, LLP
     250 Hudson Street, 8th Floor
9    New York, NY  10013-1413
     Telephone:  (212) 355-9500
10   Facsimile:   (212) 355-9592

11   Stuart M. Eppsteiner (SBN 098973)
     sme@eppsteiner.com
12   Andrew J. Kubik (SBN 246902)
     ajk@eppsteiner.com
13   EPPSTEINER & FIORICA ATTORNEYS,
     LLP
14   12555 High Bluff Dr., Ste. 155
     San Diego, CA  92130
15   Telephone: (858) 350-1500
     Facsimile: (858) 350-1501
16

17   Daniel C. Levin, *pro hac vice*
     dlevin@lfsblaw.com
18   LEVIN FISHBEIN SEDRAN & BERMAN
     510 Walnut Street Suite 500
19   Philadelphia, PA 19106
     Telephone: (215) 592-1500
20   Facsimile: (215) 592-4663

21   *Attorneys for Plaintiffs and the Class*

22

23

24

25

26

27

28

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT — SACV10-711 DOC (ANX)