# EXHIBIT A

<u>**SETTLEMENT AGREEMENT AND RELEASE**</u>

This Settlement Agreement and Release ("Settlement" or "Agreement") is made and entered into by and between (1) Plaintiffs Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth (collectively "Plaintiffs"), individually and as Class Representatives of the "Settlement Class," defined below in Section IIG; and (2) Defendant BSH Home Appliances Corporation ("BSH"), defined below in Section IIB.  The Plaintiffs and BSH are collectively referred to herein as the "Parties."

**I.      <u>RECITALS</u>**

This Agreement is made for the following purpose and with reference to the following facts:

A.      Plaintiffs filed a consolidated putative nationwide class action complaint against BSH on behalf of all U.S. residents who own or have owned one or more Bosch or Siemens brand 27" front-loading washing machines (the "Washers").  The complaint also asserted claims relating to BSH or Siemens brand 24" front-loading washing machines.  The action was filed in the United States District Court for the Central District of California (the "Court"), thereby commencing the civil action entitled *Tait, et. al v. BSH Home Appliances Corporation*.  Plaintiffs alleged that BSH acted negligently, deceptively and improperly in designing, manufacturing, marketing, selling, and servicing the Washers, that the Washers had an undisclosed propensity to develop bacteria, mold and foul odors, ("BMFO"), that undisclosed tasks were required to abate or ameliorate BMFO , and that BSH violated state consumer protection statutes, engaged in common law fraudulent concealment/nondisclosure, breached the express and implied warranties for the Washers, and was unjustly enriched.

1

B.      Plaintiffs Tait and Wentworth filed their Corrected First Amended Complaint against BSH on July 8, 2010. (Dkt. 4.) On February 14, 2011, Plaintiffs Cobb, Gibson, Isabella, Tait and Wentworth filed the Consolidated Amended Complaint ("CAC"). (Dkt. 41.) BSH moved to dismiss the CAC.  (Dkt. 43.) The consolidated complaint was transferred from Judge Cormac J. Carney to Judge David O. Carter. (Dkt. 58.) The Court granted BSH's motion to dismiss with leave to amend (Dkt. 60), and Plaintiffs filed a Second Consolidated Amended Complaint ("SCAC") on June 3, 2011. (Dkt. 66.) BSH renewed its motion to dismiss (Dkt. 67), which the Court granted in part, and denied in part. (Dkt. 74.) BSH answered the SCAC on September 21, 2011. (Dkt. 75.)

C.      On May 16, 2012, Plaintiffs filed their motion for class certification seeking to certify classes of original purchasers of 27" Washers in New York, Illinois, Maryland and California only.  On December 20, 2012, the Court granted Plaintiffs' motion for class certification and certified state classes in New York, Illinois, Maryland and California. (Dkt. 166.)  Pursuant to the Court's Order granting class certification, Plaintiffs filed a motion to substitute the Illinois Plaintiff (Dkt. 175.), which the Court granted on February 11, 2013. (Dkt. 179.) BSH petitioned the Ninth Circuit for review of the class certification order on January 3, 2013. (App. Dkt. 1.) On, April 1, 2013 the Ninth Circuit denied BSH's petition for review. (App. Dkt. 32.) BSH filed a petition for reconsideration. (App. Dkt. 33.) On May 23, 2013, the Ninth Circuit denied BSH's petition for reconsideration. (App. Dkt. 34.)  On July 30, 2013, BSH petitioned the United State Supreme Court for a Writ of Certiorari. The petition was denied on February 24, 2014. The parties have devoted significant time and resources to fact and expert discovery, including more than 55 depositions across the country and abroad. Following the

2

1208193.8

close of discovery, BSH filed motions for summary judgment and decertification.  The Parties each filed a motion to exclude certain expert testimony at trial.

D.      BSH denies all claims asserted against it in this litigation and denies all allegations of wrongdoing or liability of any kind associated with the claims alleged in any and all complaints filed by Plaintiffs and further contends that, for any purpose other than settlement, the Action is not appropriate for class treatment.  BSH contends that, among other things, it has complied at all times with all applicable laws.

E.      Plaintiffs contend that the Action is meritorious and that the Court correctly granted class certification for all claims asserted in the operative complaint.  However, Class Counsel and Plaintiffs have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interest of the Settlement Class after considering the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex and time consuming litigation, including appellate review of multiple decisions and issues, and assessing the likelihood of the success on the merits of the Action.

F.      The Parties have engaged in more than 4 years of extensive research, investigation, discovery, expert work, and motion practice to reach this Agreement.  Discovery has included written responses to interrogatories and requests for production, production of more than 31,000 pages of documents, more than 55 depositions, including 24 expert depositions and a total of 29 expert reports.

G.      Pursuant to the Court's Scheduling Order dated June 30, 2014, the Parties mediated Plaintiffs' claims with Hon. Dickran Tevrizian (Ret.) on September 8, 2014.  During

3

the course of this mediation, the Parties engaged in arm's-length negotiations with the assistance of Judge Tevrizian. At the mediation, the Parties reached agreement on some, but not all, issues required to resolve the case.

H.      Following the mediation, the Parties resumed active litigation, including continued expert work and briefing on BSH's motion for summary judgment, BSH's motion to decertify the class, and trial preparation. On October 21, 2014, the Parties resumed negotiations with regard to unresolved settlement issues without the assistance of the mediator.  After reaching agreement on the terms of substantive relief for the Settlement Class to resolve the Nationwide Claims (defined below), the Parties commenced negotiation with regard to the amount of attorneys' fees and costs that BSH would pay to Class Counsel (subject to Court-approval) and the amount of service awards for the Class Representatives. The Parties reached agreement in principle with regard to the last remaining issue—class representative stipends—on October 29, 2014. The Parties reduced their agreement to a Memorandum of Understanding, which was executed by Class Counsel on October 29, 2014 and by BSH and its counsel on November 3, 2014.

I.      The Parties desire to settle the Action in its entirety with respect to all claims, including the Nationwide Claims, as defined in Section IIE., relating to BSH Washers sold in the United States which claims were or could have been alleged in the Action (other than claims for personal injury, emotional distress, or wrongful death).  The Parties intend this Agreement to bind BSH, the Plaintiffs, and all members of the Settlement Class who do not timely opt out of the Settlement Class.

J.      The Parties stipulate that Plaintiffs will file a Provisional Fourth Consolidated and

4

Amended Complaint (FCAC) along with their motion for preliminary approval of Settlement and notice plan.  The FCAC will assert claims substantially identical to those in the Third Amended Complaint on behalf of a nationwide Class of original purchasers of one or more Bosch or Siemens brand 27" Front-Loading Automatic Washers (the "Washers"), expect that the FCAC will not include claims involving BSH 24" washing machines.

     K.     The Parties agree that the Court shall certify a nationwide class solely for the purpose of implementing the Settlement provided for in this Agreement.

     L.     It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of any and all claims against BSH, arising from or relating in any way to the allegations contained in any and all complaints filed in the Action which concern BSH Washers sold in the United States.

     NOW THEREFORE, in consideration of the terms, conditions and covenants herein, the undersigned agree as follows:

## II.    <u>DEFINITIONS</u>

     In addition to any definitions set forth above or elsewhere in this Agreement, the following terms, as used in the Agreement, shall have the meaning set forth below:

     A.     The "Action" means *Sharon Cobb, et al v. BSH Home Appliances Corp*., Case No. SACV 10-711 DOC (ANx).  (Ms. Cobb is no longer a party to the Action.)

     B.     "BSH" means BSH Home Appliances Corporation., a Delaware Corporation with its principal place of business in Irvine, California, and each of its parents (including specifically BSH Bosch und Siemens Hausgerate GMBH), predecessors, subsidiaries, affiliates, officers, directors, partners, employees, agents, servants, assignees, counsel, successors, and/or other

5

1208193.8

Exhibit A – page 5

transferees or representatives.

C.    "Class Counsel" means:

**EPPSTEINER & FIORICA ATTORNEYS, LLP**

Stuart M Eppsteiner
stuarteppsteiner@eppsteiner.com
12555 High Bluff Dr, Suite 155
San Diego, California 92130
(858)-350-1500
(858)-350-1501 (fax)

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

Kristen Law Sagafi
klaw@lchb.com
275 Battery St., 30th Floor
San Francisco, CA  94111-3343
(415) 956-1000
(415) 956-1008 (fax)

**LEVIN FISHBEIN SEDRAN & BERMAN, LLP**

Daniel C. Levin
dlevin@lfsblaw.com
510 Walnut St, Suite 500
Philadelphia, PA 19106
(215) 592-1500
(215) 592-4663 (fax)

D.    "Class Member" means each member of the Settlement Class.

E.    "Nationwide Claims" means those claims alleged in the Third Amended

Consolidated Complaint relating to the 27" Washers and expanded to a nationwide Class by the

Parties' Settlement Agreement, including Plaintiffs' allegations that BSH acted negligently,

deceptively and improperly in designing, manufacturing, marketing, selling, and servicing the

Washers, that the Washers had an undisclosed  propensity to develop bacteria, mold and foul

6

odors, ("BMFO"), that undisclosed tasks were required to abate or ameliorate BMFO, that BSH violated various state consumer protection statutes, engaged in common law fraudulent concealment/nondisclosure, breached the express and implied warranties for the Washers, and was unjustly enriched.

      F.     "Parties" means Plaintiffs, the Settlement Class, and BSH.

      G.     "Settlement Class" means all residents of the United States, including all states, the District of Columbia and all commonwealths, territories or places within the jurisdiction of the United States, who were the original purchasers of one or more Bosch or Siemens brand 27" Front-Loading Automatic Washers (the "Washers").  Excluded from the Class are:  (1) BSH, any entity in which BSH has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) retailers, wholesalers, and other individuals or entities that purchased the Washers for resale; (3) the United States government and any agency or instrumentality thereof; (4) the judge to whom this case is assigned and any member of the judge's immediate family; (5) claims for personal injury, emotional distress and  wrongful death; and (6) persons who timely and validly opt to exclude themselves from the Settlement Class.

## III.   <u>CONSIDERATION OF SETTLEMENT</u>

      A.     Class Members who file a claim with proof sufficient to establish that they were the original purchaser of a Washer will be eligible to receive a cash payment of $55.  To establish eligibility for a cash payment, Class Members must submit either (1) a picture of the serial number of their Washer plus a statement under penalty of perjury that they were the original purchaser of the Washer; or (2) the Washer receipt or invoice, plus a statement under penalty of perjury that they were the original purchaser of the Washer.  For purposes of this

1208193.8

section, a credit card receipt will be sufficient. To the extent that BSH has proof of ownership for any Class Member through registration of the Class Member's warranty, such proof will be sufficient to establish eligibility for relief under the Settlement, however the Class Member still must submit a statement under penalty of perjury that they were the original purchaser.

      B.      Any Class Member who does not exclude himself or herself from the Settlement will release all claims that were brought or could have been brought against BSH in this action relating to the Washers and will be forever barred from asserting such claims, including the Nationwide Claims, regardless of whether the Class Member submits a claim or receives any benefits under the Settlement. Claims by Class Members for personal injury, property damage, emotional distress, or wrongful death that arise from the Washer are not released by the Settlement. No Class Member who received from BSH either a full refund of the purchase price of the Washer or a free exchange of a Washer or a new washing machine of any model will be entitled to relief under the Settlement.

      C.      No later than December 4, 2014, BSH will retain, and the Parties will jointly oversee, a professional, independent class action Claims Administrator ("ICA"), who is responsible to process claims pursuant to the Settlement.  BSH will pay all costs and fees charged by the ICA for work done under the Agreement.  BSH will not pay Class Counsel or Plaintiffs for time or expenses Class Counsel or Plaintiffs incur related to notice or claims administration. All decisions regarding the sufficiency of proof of eligibility for relief shall lie with the ICA.  If necessary, the ICA will consult with Class Counsel and BSH's counsel to answer any questions or resolve any disputes that arise.  The ICA will submit monthly written status reports jointly to BSH and Class Counsel. The status reports shall include, but shall not be

limited to, the name and address of each Class Member who submits a claim pursuant to this Agreement and shall indicate whether or not each Class Member was sent a cash payment.

D.      BSH will cooperate in making its warranty registration data available to the ICA to facilitate distribution of the Settlement notice and payment of class member claims. Not later than 60 days after distribution of the Summary Notice (described below), the ICA shall send a Notice of Eligibility postcard, attached hereto as Exhibit 1(a) to any Class Member that BSH can identify as an original purchaser through warranty records. Class Members who receive a Notice of Eligibility postcard and confirm to the ICA their correct mailing address and submit a statement under penalty of perjury that they are the original purchaser within thirty (30) days of receipt of the Notice of Eligibility will be paid $55 by BSH, through the ICA, within sixty (60) days of confirmation or the Effective Date of this Agreement, whichever is later, without the necessity of filing a claim.

E.      The Claim Form shall be substantively identical to the form attached hereto as Exhibit 1(b).

F.      Claim Forms will be made available to Class Members by the ICA.  Claim Forms may be submitted online, by facsimile, or by U.S. Mail. Claim Forms and instructions regarding electronic submission of claims will be available on the ICA's website in both English and Spanish.

G.      The period for filing claims ("Claims Period") shall run one hundred twenty (120) days from dissemination of the Summary Notice.  In order to be timely, Claim Forms must be submitted online or postmarked no later than one hundred twenty (120) days from dissemination of the Summary Notice.  Claims will not be accepted if submitted online or postmarked after

9

such date.

H.      If the ICA receives a timely claim that is deficient, the ICA shall notify the Class Member of the deficiency and afford the Class Member 30 days to cure the deficiency. The ICA shall develop and the Parties shall jointly review and approve a protocol for handling deficient claims.

## IV.   <u>COURT APPROVAL</u>

A.      Preliminary Approval

1.      Upon full execution of this Agreement, the Parties will take all necessary steps to obtain an Order from the Court, substantially in a form to be agreed upon by the Parties prior to filing the Motion for Preliminary Approval, granting conditional certification of the Settlement Class, granting preliminary approval of this Agreement, and approving the forms and methods of notice to the Settlement Class set forth herein ("Preliminary Approval Order").

2.      If the Court does not enter a Preliminary Approval Order, this Agreement shall terminate, upon the notification of termination by a Party, and be of no force or effect, unless the Parties voluntarily agree to modify this Agreement in the manner necessary to obtain Court approval.  If the Court enters a Preliminary Approval Order that materially alters a substantive term in this Settlement, this Agreement shall terminate, upon the notification of termination by a Party, and be of no force or effect, unless the Parties voluntarily agree to modify this Agreement in the manner described by the Court.

B.      Final Approval

10

This Agreement is subject to and conditioned upon the entry by the Court, following a fairness hearing, of a Final Order and Judgment granting final approval of the Agreement ("Final Order and Judgment").  Such Final Order and Judgment shall:

1. Confirm certification of the Settlement Class;

2. Confirm the appointment of Class Counsel;

3. Confirm the appointment of the Plaintiffs as class representatives;

4. Dismiss with prejudice the Provisional Fourth Amended Complaint in the Action;

5. Bar and enjoin all Class Members from asserting any of the Released Claims (as defined below);

6. Release BSH from the Released Claims which any Class Member has, had, or may have in the future;

7. Determine that this Agreement is fair, adequate and reasonable, and in the best interests of the Settlement Class; and

8. Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including BSH and all Class Members, to administer, supervise, construe and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties.

## V.   NOTICE TO THE CLASS AND OPT-OUT AND OBJECTION RIGHTS

The Parties agree that Notice of Class Settlement shall track closely the notice program relating to class certification previously approved by the Court and implemented in this case except that Notice for the Settlement shall be nationwide to account for the expanded geographic scope of the Settlement Class.  The Parties agree to and will request approval by the Court of the forms and methods of notice set forth in the proposed Notice Plan, attached hereto as Exhibit 1.

11

The key components of the proposed Notice Plan are as follows:

A.      BSH, through the ICA, will send a postcard with Summary Notice directing Class Members to the ICA's settlement website and toll-free phone number. A copy of the Summary Notice is attached hereto as Exhibit 1(c).  The Summary Notice will be sent by first-class mail to the last-known mailing addresses of any Washer owners following preliminary approval of the Settlement. No later than December 22, 2014, BSH shall provide to the ICA mailing addresses and email addresses contained in BSH warranty and customer service database(s) in computer readable format and shall cooperate in good faith with the ICA in transmitting this information in the manner that is most efficient. No later than December 22, 2014, Class Counsel shall provide to the ICA mailing addresses and email addresses obtained from Washer owners who contacted Class Counsel. The ICA shall update all mailing addresses with available national databases to ensure the most accurate mailing addresses for all Class Members.  Summary Notice shall be mailed within 30 days of entry of the Preliminary Approval Order, but not before January 1, 2015 and not less than sixty (60) days prior to the date by which objections and exclusions are due.

B.      The ICA will send an electronic copy of the Summary Notice to Class Members for whom an email address is known but a mailing address is not known. The ICA shall take commercially reasonable steps to complete and/or update email addresses for Class Members. Email notice shall be sent within 30 days of entry of the Preliminary Approval Order, but not before January 1, 2015, and not less than sixty (60) days prior to the date by which objections and exclusions are due.

C.      Publication Notice, a copy of which is attached hereto as Exhibit 1(d), shall also

12

1208193.8

be published in People, National Geographic, and the Orange County Register within 30 days of entry of the Preliminary Approval Order.

D.      For a period commencing from the date of mailing of the Summary Notice and ending on the last day for Class members to file a Claim, Internet Notice will be visible on a variety of popular websites and social media outlets.  Viewers who click on the Internet Notice will be directed automatically to a separate website to be established and maintained by the ICA dedicated to the Settlement. Copies of the forms of Internet Notice are attached hereto as Exhibit 1(e)

E.      For a period commencing from the date of mailing of the Summary Notice and ending on the last day for Class members to file a Claim, BSH shall maintain on the homepage of its website, "https://www.bsh-group.com/laender/us/," a link to a separate website to be established and maintained by the ICA dedicated to the Settlement.  The ICA's settlement website, which shall be operative no later than the date of mailing the Summary Notice, shall contain downloadable copies of the Long Form and Summary Notices, Settlement Agreement, and Claim Forms, and shall contain a link through which a Class Member can submit a claim online.  The Long Form Notice will also be available from the ICA in English and Spanish upon request.  A copy of the Long Form Notice is attached hereto as Exhibit 1(f).

F.      For a period commencing from the date of mailing of the Summary Notice and ending on the last day for Class Members to file a Claim, Class Counsel shall maintain on their respective websites a link to the separate website to be established and maintained by the ICA dedicated to the Settlement.

G.      All Class Members shall have the right to opt out of the class at any time during

13

the opt-out period. The opt-out period shall run for sixty (60) days following mailing of the Summary Notice or 30 days from the last publication notice, whichever is later. Any Class Member who elects to opt out of the Class (i) shall not be bound by any orders or judgments entered in this Action; (ii) shall not be entitled to relief under, or be affected by, this Agreement; (iii) shall not gain any rights by virtue of this Agreement; and (iv) shall not be entitled to object to any aspect of this Agreement. Any Class Member who wishes to opt out of the Class may do so by mailing a letter clearly stating the Class Member's desire to opt out to the ICA. Any Class Member who has opted out and wishes to revoke his or her request for exclusion may do so by mailing a letter stating clearly the desire to revoke the previous request for exclusion to the ICA before the opt out deadline.

H.     The ICA shall provide Class Counsel and BSH's counsel with copies of all completed opt-out requests on a weekly basis during the opt-out period.

I.     Class Members may serve written objections to the Settlement, or to Class Counsel's application for Attorneys' Fees and Expenses. To be considered, any such objection must be mailed to the Clerk of the Court and counsel for both parties at the addresses provided in the Notice not later than sixty (60) days after the mailing of Summary Notice or thirty (30) days after the last publication notice, whichever is later, and must include (i) the Class Member's full name and current address and telephone number; (ii) the serial number of the Washer the Class Member owns or owned; (iii) all of the Class Member's objections, the reasons therefore, and any and all supporting papers, including, without limitation, all briefs, written evidence, and declarations; and (iv) the Class Member's signature. Class Members submitting objections who wish to appear at the Fairness Hearing and present their objections to the Court orally must

14

include a written statement of intent to appear at the Fairness Hearing in the manner prescribed by the Notice.  Only Class Members who specify in their objections that they intend to appear at the Fairness Hearing will have the right to present their objections orally at the Fairness Hearing. Persons who do not submit timely written objections will not be permitted to present their objections at the Fairness Hearing.

## VI.   CLASS REPRESENTATIVES STIPENDS

A.      Class Counsel shall petition the Court for, and BSH shall not oppose, a Class Representative Stipend in an amount of $5,000 to each of the four named Plaintiffs in the Action, in recognition of their efforts on behalf of the Class.    The Court's award of any Class Representative Stipend shall be separate from its determination of whether to approve the Settlement.   In the event the Court approves the Settlement, but declines to award a Class Representative Stipend in the amount requested by Class Counsel, the Settlement will nevertheless be binding on the Parties.

B.      To the extent awarded by the Court, BSH shall pay the Class Representative Stipends within 20 days of the Court's entry of the Final Order and Judgment, pursuant to the Stipulated Undertaking between the Parties ("Stipulated Undertaking"), attached hereto as Exhibit 2, which requires repayment of stipends and fees by Class Counsel should the Final Order and Judgment be reversed or materially modified or the stipend and fee order reversed or reduced on appeal.  The Stipulated Undertaking shall provide that Class Counsel are jointly and severally liable to BSH for the repayment of stipends and fees should the Final Order and Judgment be reversed or materially modified or the stipend and fee order reversed or reduced on appeal.

15

1208193.8

C.      Payment by BSH of the Class Representative Stipend is separate from, and in
addition to, the other relief afforded to the Class Members in this Agreement.

## VII.   <u>PAYMENT OF ATTORNEYS' FEES AND COSTS</u>

A.      BSH shall not oppose Class Counsel's request for an award of attorneys' fees and
expenses, including expert fees and costs, up to a maximum of $6.5 million. Subject to the
Court's approval, BSH agrees to pay Class Counsels' Court-approved fees and expenses up to a
maximum of $6.5 million.

B.      The payment by BSH of the Class Counsels' fees and expenses is separate from
and in addition to the Class Representative Stipends and relief afforded the Class Members in
this Agreement.  In the event the Court approves the Settlement, but declines to award Class
Counsels' fees and expenses in the amount requested by Class Counsel, the Settlement will
nevertheless be binding on the Parties.  Further, the Parties negotiated and reached agreement on
the Class Counsels' fees and expenses only after reaching agreement on all other material terms
of the Agreement.

C.      Class Counsel shall be entitled to payment of fees and expenses awarded by the
Court, up to a maximum of $6.5 million, within 20 days of the Court's entry of the Final
Approval Order, notwithstanding any appeal, pursuant to the terms of the Stipulated Undertaking
attached hereto as Exhibit 2.

## VIII.  <u>RELEASE</u>

A.      In moving for entry of the proposed Final Order and Judgment, Class Counsel
shall execute, file, and serve a request for dismissal with prejudice of the Third Amended
Complaint.

16

1208193.8

B.       Upon the Effective Date (defined below), Plaintiffs and Class Members hereby unconditionally release and forever discharge BSH, including, but not limited to, all present and former parent companies (including specifically BSH Bosch und Siemens Hausgerate GMBH), subsidiaries, affiliate companies, shareholders, officers, directors, employees, partners, agents, servants, representatives, attorneys, insurers, successors, predecessors, and assigns from any and all claims, (including the Nationwide Claims), rights, demands, actions, causes of actions, suits, debts, liens, contracts, liabilities, agreements, costs, expenses or losses of any kind whatsoever, including any known or unknown claims, which Plaintiffs or Class Members have or may claim to have against BSH based upon, arising out of, or in any way relating to any act, failure to act, omission, misrepresentation, fact, event, transaction, or occurrence from the beginning of time until the Effective Date of this Settlement Agreement that were raised or could have been raised in the Action related in any way to BMFO in the Washers (including the Nationwide Claims), except for claims for personal injury, emotional distress, or wrongful death ("Released Claims").

C.       With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Order and Final Judgment shall have waived, the provisions, rights and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Further, Plaintiffs shall expressly waive, and each Class Member shall be deemed to have expressly waived, and by operation of the Order and Final Judgment shall have waived, any and

17

all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542.  Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs shall expressly, fully, finally and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including without limitation conduct that is negligent, intentional, with or without malice, and a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs acknowledge, and each Class Member shall be deemed by operation of the Final Order and Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

## IX.   **EFFECTIVE DATE OF AGREEMENT**

The Effective Date of this Agreement shall be the first day after which all of the following events and conditions of this Agreement had been met or have occurred:

A.   Plaintiffs, BSH, and their counsel have executed this Agreement;

B.   Class Counsel and counsel for BSH  have fully executed the Stipulated Undertaking;

C.   Dismissal of the Complaint with prejudice;

18

D.      The Court has entered the Final Order and Judgment approving the Agreement; and

E.      The Judgment has become final in that the time for appeal or writ has expired or, if an appeal and/or petition for review is taken and the settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired. If the Judgment is set aside, materially modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the Judgment shall not become "final."

## X.      NO ADMISSION OF LIABILITY

A.      The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever to any other party.

B.      Neither the Agreement, nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Agreement, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Agreement, in any proceeding in any court, administrative agency or other tribunal.

C.      This Agreement is a settlement document and shall be inadmissible in evidence in

19

any proceeding, except an action or proceeding to approve, interpret, or enforce this Agreement.

D.      To the extent permitted by law, the Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of this Agreement.

**XI.    MISCELLANEOUS PROVISIONS**

A.      Extensions of Time

Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

B.      Parties' Authority

The respective signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the respective Parties hereto to the terms and conditions hereof.

C.      Integration

This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any party hereto, except as provided for herein.

D.      Governing Law

The Agreement shall be construed in accordance with, and be governed by, the laws of California, without regard to the principles thereof regarding choice of law.

E.      Gender and Plurals

As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others wherever the context so indicates.

20

1208193.8

F.     Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.

G.     Cooperation of Parties

The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any efforts that become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Class Counsel shall take all necessary steps to assure the Court's final approval of this Agreement.

H.     No Prior Assignments

Plaintiffs represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

I.     Voiding the Agreement

If ten (10) percent or more of potential Class Members opt out of the Settlement, BSH may at its option elect to withdraw from the Settlement and void this Agreement.

J.     Captions and Interpretations

21

Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.  Each term of this Agreement is contractual and not merely a recital.

K.      Modification

This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.  This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the parties hereto.

L.      Binding on Assigns

This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

M.      Execution Voluntary

This Agreement is executed voluntarily by each of the Parties without any duress or undue influences on the part, or on behalf, of any of them.  The Parties represent and warrant to each other that they have read and fully understand the provisions of this Agreement and have relied on the advice and representation of legal counsel of their own choosing.  Each of the Parties has cooperated in the drafting and preparation of this Agreement and has been advised by counsel regarding the terms, effects, and consequences of this Agreement.  Accordingly, in any construction to be made of this Agreement, this Agreement shall not be construed as having been drafted solely by any one or more of the Parties.

N.      Notices

1.      All Notices to Class Counsel provided for herein shall be sent by email to Stuart M Eppsteiner, Eppsteiner & Fiorica Attorneys, telephone (858) -350-1500, email:

22

sme@eppsteiner.com,  and Kristen Law Sagafi, Lieff Cabraser Heimann & Bernstein, LLP, telephone (415) 956-1000, email: klaw@lchb.com, with a hard copy sent to each counsel by overnight mail.

   2.   All Notices to BSH provided for herein shall be sent by email to Rick McKnight and Erik K. Swanholt, Jones Day, 555 South Flower Street, 50th Floor, Los Angeles, California 90071, telephone (213) 489-3939, email: fmcknight@jonesday.com and ekswanholt@jonesday.com, with a hard copy sent by overnight mail.

   3.   The Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filing received as a result of the Class Notice.

   O.   Class Counsel Signatories

   It is agreed that because the Class Members are so numerous, it is impossible or impractical to have each Class Member execute this Agreement.  The Summary Notice and Long Form Notice, Exhibits 1(b) and 1(d) hereto, will advise all Class Members of the binding nature of the release and shall have the same force and effect as if this Agreement were executed by each Class Member.

   P.   Retention of Jurisdiction

   The Court shall retain jurisdiction to resolve any future disputes arising out of the terms and conditions of this Settlement Agreement and Release.

   IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed on its behalf by its duly-authorized counsel of record, all as of the day set forth below.

Dated: _12 - 11 - 2014_                          _Dennis Demereckis_
                                                                      Dennis Demereckis
                                    23

Dated: December 11, 2014

_Beverly J. Gil_
Beverly Gibson

Dated: _____

_____
Trish Isabella

Dated: December 11, 2014

_Nancy Wentworth_
Nancy Wentworth

Dated: 12-12-14

EPPSTEINER & FIORICA, LLP

_____
Stuart M. Eppsteiner
*Class Counsel*

Dated: _____

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

_____
Kristen Law Sagafi
*Class Counsel*

Dated: _____

LEVIN FISHBEIN SEDRAN & BERMAN

_____
Daniel C. Levin
*Class Counsel*

24

LAI-383229025v1

Dated: December 11, 2014

_Beverly J. Gib_
Beverly Gibson

Dated: _____

_____
Trish Isabella

Dated: _____

_____
Nancy Wentworth

Dated: _12-12-14_

EPPSTEINER & FIORICA, LLP

_____
Stuart M. Eppsteiner
*Class Counsel*

Dated: _____

LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP

_____
Kristen Law Sagafi
*Class Counsel*

Dated: _12-12-14_

LEVIN FISHBEIN SEDRAN & BERMAN

_____
Daniel C. Levin
*Class Counsel*

24

LAI-383229025v1

Exhibit A – page 25

Dated: December 11, 2014

Beverly Gibson

Dated: _____

Trish Isabella

Dated: _____

Nancy Wentworth

Dated: 12-12-14

EPPSTEINER & FIORICA, LLP

Stuart M. Eppsteiner
*Class Counsel*

Dated: 12-12-14

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

Kristen Law Sagafi
*Class Counsel*

Dated: 12-12-14

LEVIN FISHBEIN SEDRAN & BERMAN

Daniel C. Levin
*Class Counsel*

24

LAI-383229025v1

Dated: _____

_____
Beverly Gibson

Dated: 12/11/14

_____
Trish Isabella

Dated: _____

_____
Nancy Wentworth


Dated: _____        EPPSTEINER & FIORICA, LLP

                                _____
                                Stuart M. Eppsteiner
                                *Class Counsel*

Dated: _____        LIEFF CABRASER HEIMANN &
                                  BERNSTEIN, LLP

                                _____
                                Kristen Law Sagafi
                                *Class Counsel*

Dated: _____        LEVIN FISHBEIN SEDRAN & BERMAN

                                _____
                                Daniel C. Levin
                                *Class Counsel*


24

LAI-383229025v1

Dated: _____

BSH Home Appliances Corporation

_____
Name
*Title*

Dated: _____

BSH Home Appliances Corporation

_____
Name   CHRISTIAN   WESTERBE
*Title*   EVP & CFO

Dated:  12.12.14

JONES DAY

_____
Erik K. Swanholt
*Counsel for BSH Home Appliances Corp.*

Steule

CEO and President
12/12/2014

25

LAI-383229025v1

Exhibit A – page 28

# EXHIBIT 1
# TO
# EXHIBIT A



**Legal Notification Services**

_____

# Settlement Notice Plan

## *Cobb, et al v. BSH Home Appliances Corp.,*

## Case No. SACV 10-711 DOC (ANx)

### United States District Court

### Central District of California

**Prepared: December 12, 2014**

_____

© 2014 KCC LLC
Proprietary and Confidential

# Table of Contents

|  | Page |
|---|---|
| Legal Notification Services | 3 |
| Our Experts | 4 |
| Relevant Case Experience | 5 |
| Expert Services | 7 |
| Media Terms | 8 |
| Media Resources | 9 |
| Program Overview | 10 |
| Notice Schedule | 12 |
| Target Analysis | 13 |
| Media Selection | 15 |
| Individual/Direct Notice | 16 |
| Consumer Magazines | 17 |
| Internet Banners | 18 |
| CLRA Notice Requirement | 19 |
| Response Mechanisms | 20 |
| Notice Design Strategies | 21 |
| Draft Forms of Notice | 22 |
| Conclusion | 23 |

© 2014 KCC LLC
Proprietary and Confidential

Exhibit A – page 31

## Legal Notification Services

KCC's Legal Notice experts, Gina M. Intrepido-Bowden and Carla A. Peak, specialize in the design and implementation of class action notice programs devised to reach class members with clear, concise, plain language notices. With over a decade of legal notice consulting experience, Ms. Intrepido-Bowden and Ms. Peak have been directly responsible for more than 100 effective and efficient notice programs, including some of the largest and most complex in history, reaching class members or claimants around the globe and providing notice in over 35 languages.

Their programs satisfy due process requirements, as well as all applicable state and federal laws. Judges, including in published decisions, have recognized the reach calculation methodology and notice design strategies they use. Their notices follow the principles in the Federal Judicial Center's (FJC) illustrative model notices, which were written and designed to embody the satisfaction of the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).

© 2014 KCC LLC
Proprietary and Confidential

## Our Experts

Consistent with the judicial standards set forth by *Daubert* and *Kumho* and as illustrated in the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, KCC's experts utilize the same practices and statistical analyses that are relied upon in the advertising industry when they design and measure the effectiveness of the notice programs they develop. Gina M. Intrepido-Bowden and Carla A. Peak have personally designed the "Notice Plan" (Plan) and proposed notice documents (Notice or Notices) that follow, and will directly oversee its implementation.

### Gina Intrepido-Bowden

With more than 20 years of media research, planning and buying experience, Gina brings substantive expertise to her role as Director, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has personally designed more than 80 media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As an expert witness, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude.

### Carla Peak

With over a decade of industry experience, Carla specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude.

## Relevant Case Experience[1]

Our experts have designed and implemented numerous notice programs targeting consumer Class members, for example:

- **Demmick v. Cellco Partnership**, No. 2:06-CV-2163 (D. N.J.)

  - Honorable José L. Linares (November 19, 2014): *The Court finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden: (a) constitutes the best notice practicable under the circumstances of this Action; (b) constitutes due and sufficient notice to the Settlement Classes of the pendency of the Action, certification of the Settlement Classes, the terms of the Settlement Agreement, and the Final Approval Hearing; and (c) complies fully with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law…The Court further finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden, will adequately inform members of the Settlement Classes of their right to exclude themselves from the Settlement Classes so as to not be bound by the Settlement Agreement.*

- **Poertner v. The Gillette Co. and The Procter & Gamble Co.**, No. 6:12-CV-00803 (M.D. Fla.)

  - Judge Gregory A. Presnell (August 21, 2014): *This Court has again reviewed the Notice and the accompanying documents and finds that the "best practicable" notice was given to the Class and that the Notice was "reasonably calculated" to (a) describe the Action and the Plaintiff's and Class Members' rights in it; and (b) apprise interested parties of the pendency of the Action and of their right to have their objections to the Settlement heard. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810 (1985). This Court further finds that Class Members were given a reasonable opportunity to opt out of the Action and that they were adequately represented by Plaintiff Joshua D. Poertner. See Id. The Court thus reaffirms its findings that the Notice given to the Class satisfies the requirements of due process and holds that it has personal jurisdiction over all Class Members.*

- **Roberts v. Electrolux Home Products, Inc.**, No. 8:12-cv-01644 (C.D. Cal.)

  - Honorable Christina A. Snyder (May 5, 2014): *The Court finds that the Notice Plan set forth in the Settlement Agreement (§ V. of that Agreement)…is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice. The Court further preliminarily finds that the Notice itself is appropriate, and complies with Rules 23(b)(3), 23(c)(2)(B), and 23(e) because it describes in plain language (1) the nature of the action, (2) the definition of the Settlement Class and Subclasses, (3) the class claims, issues or defenses, (4) that a class member may enter an appearance through an attorney if the member so desires, (5) that the Court will exclude from the class any member who requests exclusion, (6) the time and manner for requesting exclusion, and (7) the binding effect of a judgment on Settlement Class*

---

[1] Includes work performed by our experts when employed at other firms.

© 2014 KCC LLC
Proprietary and Confidential

5

Exhibit A – page 34

*Members under Rule 23(c)(3) and the terms of the releases. Accordingly, the Court approves the Notice Plan in all respects…*

- ***Beck-Ellman v. Kaz USA, Inc.***, No. 3:10-cv-02134 (S.D. Cal.)

  o   Judge Marilyn L. Huff (June 11, 2013): *The Notice Plan has now been implemented in accordance with the Court's Preliminary Approval Order. The Publication Notice was designed to provide potential class members with information about the Settlement and their rights, in easy-to-comprehend language… The Notice Plan was specially developed to cause class members to see the Publication Notice or see an advertisement that directed them to the Settlement Website. KCC identified that the class members belong to a demographic group known as "Pain Relief Users." The Heating Pads are considered a Pain Relief product. The publications that KCC's Notice Plan used are publications and websites whose viewers and readers include a high percentage of Pain Relief product users…The Court concludes that the Class Notice fully satisfied the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure and all due process requirements.*

- ***Shames v. The Hertz Corporation***, No. 3:07-cv-02174 (S.D. Cal.):

  o   Honorable Michael M. Anello (November 5, 2012): *…the Court is satisfied that the parties and the class administrator made reasonable efforts to reach class members. Class members who did not receive individualized notice still had opportunity for notice by publication, email, or both…The Court is satisfied that the redundancies in the parties' class notice procedure—mailing, e-mailing, and publication—reasonably ensured the widest possible dissemination of the notice…The Court OVERRULES all objections to the class settlement…*

  *(May 22, 2012): The Court approves, as to form and content, the Notice of Proposed Settlement of Class Action, substantially in the forms of Exhibits A-1 through A-6, as appropriate, (individually or collectively, the "Notice"), and finds that the e-mailing or mailing and distribution of the Notice and publishing of the Notice substantially in the manner and form set forth in ¶ 7 of this Order meet the requirements of Federal Rule of Civil Procedure 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.*

See **Exhibit 1 of the Declaration of Gina Intrepido-Bowden** for additional recognition and example cases.

© 2014 KCC LLC
Proprietary and Confidential

# Expert Services

Our Legal Notification Services include:

**Pre-Settlement Consulting**
- Review and advise clients of any potential obstacles relative to class definition or legal notification processes
- Develop a noticing plan strategy
- Provide judicial decisions that are relevant to the case or terms of the settlement

**Demographic Analysis**
- Define the target audience through research and analysis of class demographics
- Identify the geographic location of potential class members giving specific consideration to the class period
- Research class member media usage to define the communication channels that will be most effective

**Notice Programs**
- Create custom notice programs that incorporate media such as newspapers, magazines, trade journals, radio, television and the internet to meet due process requirements
- Develop press releases, broadcast public service announcements (PSAs), and a content-rich, case-specific website, as needed
- Track media activity to verify the adequacy of placements

**Plain Language Communication**
- Consider audience's level of understanding and devise communications strategy accordingly
- Design, draft and distribute plain-language notices that capture attention and are easily understood by class members
- Incorporate response mechanisms, such as a toll-free number, case website address, and/or QR code into notice documents

**Expert Testimony**
- Provide defensible opinions and testimony from subject-matter experts to verify the effectiveness of notice programs
- Supply proof of performance for each notice served, as required by the Courts
- Provide evidence and judicial decisions to overcome objections

© 2014 KCC LLC
Proprietary and Confidential

Exhibit A – page 36

# Media Terms

The following provides the meaning of media terms highlighted throughout the Notice Plan:

**Audience:** Net number of persons or different persons exposed to a media vehicle. It is larger than a publication's circulation because it includes pass-along readers who may obtain the publication second hand (e.g., from a reception room, neighbor, friend).

**Circulation:** Total number of publication copies sold through all channels of distribution (e.g. subscriptions, newsstand, bulk).

**Frequency:** Estimated average number of times a population group is exposed to a media vehicle or combination of media vehicles containing a notice within a given period of time.

**Impressions or Exposures:** Total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. It is a gross or cumulative number that may include the same person more than once. Impressions can exceed the population size.

**Reach or Coverage:** Net percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once within a given period of time. Reach factors out duplication, representing the total different/net persons.

**Selectivity Index:** Shows the concentration of a specific population group relative to the general adult population. For example, a publication selectivity index of 175 among men indicates that the publication's readers are 75% more likely to be men as compared to the general adult population.

## Media Resources

The resources we use to quantify our plan approach include the same resources used by media professionals to guide the billions of dollars of advertising we see today:

### Alliance for Audited Media (AAM)

AAM is a nonprofit organization that connects North America's leading media companies, advertisers and ad agencies. Founded in 1914 as the Audit Bureau of Circulations, the AAM is the preeminent source of cross-media verification and information services, providing standards, audit services and data critical to the advertising industry. The organization independently verifies print and digital circulation, mobile apps, website analytics, social media, technology platforms and audience information for newspapers, magazines and digital media companies in the U.S. and Canada.

### GfK Mediamark Research & Intelligence, LLC (MRI)

MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with the readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's *Survey of the American Consumer*™ is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

### Telmar

Telmar is the world-leading supplier of computer based advertising media information services. Its software provides for survey analysis, data integration, media planning and optimization. With over 5,000 users in 85 countries, Telmar's clients include many of the world's leading advertising agencies, publishers, broadcasters and advertisers.

# Program Overview

**Objective**

To design a notice program that will effectively reach Class members and capture their attention with notices communicated in clear, concise, plain language so that their rights and options may be fully understood. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers 70-95% reach among class members reasonable.

**Class Definition**

The Class (or Class members) consists of all residents of the United States who were the original purchaser of a Washer (defined as Bosch and Siemens brand 27" Front-Loading Automatic Washers) for primarily personal, family or household purposes, and not for resale, excluding (1) BSH Home Appliances Corporation ("Bosch"), any entity in which Bosch has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (2) Washers purchased through Bosch's Employee Purchase Program; (3) the Judge to whom this case is assigned, any member of the Judge's staff, and any member of the Judge's immediate family; (4) persons or entities who distribute or resell the Washers; (5) government entities; and (6) claims for personal injury, wrongful death, and/or emotional distress. The Class is estimated to include 650,000 Class members.

**Case Analysis**

The following known factors were considered when determining our recommendation:

1. The Class consists of approximately 650,000 Class members.
2. Class members are located throughout the U.S., including large cities and rural areas.
3. The case claims include violations of California's Consumer Legal Remedies Act (CLRA); therefore, CLRA notice requirements must be included.
4. Contact information is available for a limited portion of the Class; however, a reasonable effort cannot identify and locate *all* Class members. Therefore, in addition to individual notice, the Class must be reached through a consumer media campaign.
5. Effective reach and notice content is vital to convey the importance of the information affecting Class members' rights.

**Target Audience**

The specific washing machines included in this settlement are not measured by MRI. Therefore, to verify the program's effectiveness, MRI data was studied among people who own a high efficiency or standard washing machine ("Washing Machine Owners"), because this broad target group best represents the Class.

**Strategies**

The Notice Plan we designed uses a combination of individual notice to known Class members and a schedule of paid notices in leading consumer magazines and on a variety of websites to effectively reach the Class. To fulfill the CLRA notice requirement, the Notice Plan also includes <u>four</u> placements, once a week for four consecutive weeks, in the *Orange County Register.*

**Plan Delivery**

The Notice Plan will reach approximately 80.1% of likely Class members on average 1.7 times each. Coverage will be further enhanced by the CLRA notice placements in the *Orange County Register*.

**Notice Design**

The Notices have been designed to provide a clear, concise, plain language statement of Class members' legal rights and options. To increase response, the toll-free number and website address has been provided in all printed notice documents. The ad units are adequately sized to attract attention to the notice:

- Half-page units in standard sized publications
- Standard leaderboard, medium rectangle, and wide skyscraper banner notices

## Notice Schedule

Below is a notice schedule that can start within 30 days of notice approval. The exclusion and objection deadline would be at least 30 days from the last notice appearance.

| Notice Tactic | Issued | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Individual Emails | | ■ | | | | | | | | | |
| Individual Mailings | | | | | | | | | | | |
| *National Geographic** | Monthly | | | | | | | | | | ■ |
| *People* | Weekly | | | | | | ■ | | ■ | | |
| *Orange County Register* | Daily | | ■ | ■ | ■ | ■ | | | | | |
| Internet Banner Notices | Constant | | ■ | ■ | ■ | ■ | ■ | ■ | ■ | | |
| Case Website | Constant | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ |

Blocks indicate when readers first receive publications (the on-sale date, not the issue/cover date). All media subject to change based on availability at the time of placement.

*The last notice will appear in Week 10 at the very latest.

Exhibit A – page 41

## Target Analysis

Knowing the characteristics, interests, and habits of a target group aids in the media selection process.

**Demographic Highlights**

Demographic highlights of Washing Machine Owners include the following:

- 99.0% speak English most often;
- 91.1% have graduated from high school and 62.9% have attended college or beyond;
- 89.9% are 25 years of age or older, 73.8% are 35 years of age or older, and 56.3% are 45 years of age or older;
- 89.0% live in a household consisting of two or more people and 72.2% live in a household consisting of 2-4 people;
- 85.2% are White;
- 81.6% live in a Metropolitan CBSA;[2]
- 79.3% own a home;
- 76.3% have a household income of $40,000 or more, 67.9% have a household income of $50,000 or more, and 59.7% have a household income of $60,000 or more;
- 66.8% own a home valued at $100,000 or more and 59.0% own a home valued between $100,000-$499,999;
- 63.9% have lived at their current address for five years or more;
- 62.6% are married; and
- 53.2% are women.

On average, Washing Machine Owners:[3]

- are 48 years of age;
- have a household income of $86,473; and
- own a home valued $249,002.

Compared to the general adult population, Washing Machine Owners are:

- 25.2% more likely to own a home valued between $200,000-$499,999, 22.4% more likely to own a home valued at $500,000 or more, and 20.1% more likely to own a home valued between $100,000-$199,999;
- 24.2% more likely to have a household income between $100,000-$149,999, 23.3% more likely to have a household income of $150,000 or more, and 19.5% more likely to have a household income of $60,000 or more;
- 18.7% more likely to work in Management/Business/Finance Operations and 16.9% more likely to work as a Manager/Professional;
- 18.5% more likely to own a home;
- 17.4% more likely to have graduated from college;
- 17.2% more likely to be married;

---

[2] The Office of Management and Budget defines metropolitan and micropolitan statistical areas (metro and micro areas) as geographic entities for use by Federal statistical agencies in collecting, tabulating, and publishing Federal statistics. The term "Core Based Statistical Area" (CBSA) is a collective term for both metro and micro areas. A metro area contains a core urban area of 50,000 or more population, and a micro area contains an urban core of at least 10,000 (but less than 50,000) population. Each metro or micro area consists of one or more counties and includes the counties containing the core urban area, as well as any adjacent counties that have a high degree of social and economic integration (as measured by commuting to work) with the urban core.

[3] The average age for U.S. adults is 47, the average household income is $75,616, and the average home value is $241,338.

© 2014 KCC LLC
Proprietary and Confidential

- 16.4% more likely to live in a Micropolitan CBSA;
- 13.6% more likely to be 55-64 years of age, 4.9% more likely to be 65 years of age or older, and 4.4% more likely to be 45-54 years of age;
- 13.3% more likely to live in County size D and 9.5% more likely to live in County size C;[4]
- 12.6% more likely to be White;
- 12.6% more likely to have lived at their current address for five years or more;
- 12.3% more likely to live in the Midwest Census Region;
- 8.3% more likely to live in a household consisting of two people; and
- 8.0% more likely to be working women.

---

[4] According to Nielsen, "A" counties are the counties of the top 25 metropolitan areas; "B" counties are all remaining counties with a population over 150,000 plus counties that are part of the metro areas of cities in B counties; "C" counties are all remaining counties not included above with populations over 35,000 plus counties that are part of the metro areas of cities in C counties; and "D" counties are all other remaining counties.

© 2014 KCC LLC
Proprietary and Confidential

## Media Selection

To create the optimal notice program, we evaluated the strengths and weaknesses of the various media, as well as their reach and frequency potential, composition, format/content and efficiencies. Our recommended media mix provides:

- Broad national coverage into the largest cities as well as the smallest towns throughout the nation.

- A large percentage of likely Class members to be reached;

- A written summary of key information that may be easily referred to or passed on to others as a result of placements in leading consumer publications;

- Easy access to the notice documents through an established case website, and

- A direct link to the case website through the email notice and internet banner notices.

© 2014 KCC LLC
Proprietary and Confidential

## Individual/Direct Notice

### Postcard Notice

- A Postcard Notice will be mailed to approximately 156,989 known Class members.
- Prior to mailing, the names and addresses will be:
  - o Checked against the United States Postal Service (USPS) National Change of Address (NCOA)[5] database;
  - o Certified via the Coding Accuracy Support System (CASS);[6] and
  - o Verified through Delivery Point Validation (DPV).[7]
- Postcard Notices returned as undeliverable will be re-mailed to any address available through postal service information; for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but is still during the period that the USPS returns the piece with the new address indicated.
- Any returned mailing that does not contain an expired forwarding order with a new address indicated may be researched through a third party look-up service, if applicable.
- Factoring in return undeliverable mail, we estimate that the individual mailings alone will reach approximately 141,290 Class members, or 21.74% of the Class.

### Email Notice

- An Email Notice containing a summary of the settlement in the body of the email, as well as a link to the settlement website will be sent to all available email addresses for which a postal address does not exist.
- It is our understanding that email addresses are available for approximately 303 Class members.
- Factoring in email bounce backs, we estimate that the individual emails alone will reach approximately 242 Class members, or 0.04% of the Class.

Combined, the individual mailed and email notice efforts are estimated to reach 141,533 Class members, or 21.77% of the Class.

---

[5] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[6] The Coding Accuracy Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[7] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

## Consumer Magazines

To build upon the individual notice reach, we recommend placing one half page notice in *National Geographic* and <u>two</u> half page notices in *People*. Combined, the three insertions reach 35.4% of Washing Machine Owners.

The following provides details for each of the recommended consumer magazines:



- Reaches 14.1% of Washing Machine Owners
- Readers are 6.8% more likely to be Washing Machine Owners, as compared to the general population
- Circulation: 3,572,348
- Adult Audience: 31,155,000
- Monthly magazine with editorial focusing on culture, nature, geography, ecology, science and technology and encompassing people and places of the world
- Extends reach among affluent, educated adults



- Reaches 19.0% of Washing Machine Owners
- Readers are 4.9% more likely to be Washing Machine Owners, as compared to the general population
- Circulation: 3,510,533
- Adult Audience: 42,726,000
- Weekly entertainment magazine featuring celebrity news, biographies and gossip
- Provides a large number of pass along readers

## Internet Banners

According to MRI data, 81.7% of Washing Machine Owners have access to the internet at home using a computer and 85.4% have looked at or used the internet in the last 30 days. Compared to the general population, Washing Machine Owners are 6.2% more likely to have access to the internet at home using a computer and 5.1% more likely to have used the internet in the last 30 days. As a result, to further extend reach among the Class, we recommend purchasing 136.5 million *unique* impressions over a 4-6 week period. The banners will be targeted to adults 25 years of age or older (Adults 25+) and will contain an embedded hyperlink to the case website. It is estimated that the internet activity will reach approximately 60.7% of likely Class members. Sample sites may include:

   

  

    

    

© 2014 KCC LLC
Proprietary and Confidential

Exhibit A – page 47

## CLRA Notice Requirement

According to CALIFORNIA CIVIL CODE SECTION 1750 et seq Consumers Legal Remedies Act:

> *If the action is permitted as a class action, the court may direct either party to notify each member of the class of the action. The party required to serve notice may, with the consent of the court, if personal notification is unreasonably expensive or it appears that all members of the class cannot be notified personally, give notice as prescribed herein by publication in accordance with Section 6064 of the Government Code in a newspaper of general circulation in the county in which the transaction occurred.*

According to Section 6064 of the Government Code:

> *Publication of notice pursuant to this section shall be once a week for four consecutive weeks. Four publications in a newspaper regularly published once a week or oftener, with at least five days intervening between the respective publication dates not counting such publication dates, are sufficient. The period of notice commences with the first day of publication and terminates at the end of twenty-eighth day, including therein the first day.*

As a result, to fulfill the CLRA notice requirement, four eighth-page notices (approximately 4.53" x 4") will appear once a week for four consecutive weeks in the *Orange County Register*.

© 2014 KCC LLC
Proprietary and Confidential

Exhibit A – page 48

## Response Mechanisms

**Case Website**
- Provides a simple way for Class members to obtain additional information about the settlement
- Allows Class members the ability to access documents including the Long Form Notice, Claim Form, Settlement Agreement and any other information that the parties may agree to provide or that the Court may require
- Prominently displayed in all printed notice materials and accessible through a hyperlink embedded in the email notice and Internet Banners

**Toll-Free Telephone Support**
- Provides a simple way for Class members to obtain additional information about the settlement
- Allows Class members the opportunity to learn more about the case in the form of frequently asked questions and answers
- Allows Class members to request to have more information mailed directly to them
- Prominently displayed in all printed notice materials

.

© 2014 KCC LLC
Proprietary and Confidential

20

Exhibit A – page 49

## Notice Design Strategies

The design and content of all of the notice materials are consistent with the FJC's "illustrative" forms of model plain language notices, available at www.fjc.gov. All information required by Federal Rule of Civil Procedure 23, as well as the *Manual for Complex Litigation, Fourth*, has been incorporated into the notice documents.

### Email, Postcard, and Publication Notice

- Bold headline captures attention and speaks directly to Class members, alerting them that they should read the Notice and why it is important
- Publication notice size promotes attention, readership, and comprehension
- Legal significance is highlighted in the Publication Notice to ensure readers that the communication carries legitimate information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number and case website invite response, allowing Class members the opportunity to obtain additional information
- Embedded hyperlink in the Email Notice allows quick access to the case website

### Detailed Notice

- Prominent "Your Rights and Options" table on first page immediately informs readers of their rights and options in the case
- Bold headline captures attention and speaks directly to Class members, alerting them that they should read the Notice and why it is important
- Concise plain language without "legalese" enhances comprehension
- Provides more detailed information than that of a Summary Notice
- Content includes all essential information in simple format
- Toll-free number and case website invite response, allowing Class members the opportunity to obtain additional information

### Internet Banner Notices

- Simple rotating message alerts Class members about the litigation
- An embedded link allows immediate access to the case website

### Notice of Eligibility Postcard Notice

- Bold call-out on the front of the postcard captures attention and speaks directly to Class members, alerting them that they are eligible for a payment from the settlement
- Concise plain language without "legalese" enhances comprehension
- Toll-free number and case website invite response, allowing Class members the opportunity to obtain additional information

## Draft Forms of Notice

Exhibits 1a through1f of the Settlement Agreement contain the draft forms of the notice documents:

- Exhibit 1a - The **Notice of Eligibility Postcard** that will be mailed to all known Class members who have filed warranty registration information with the Defendants

- Exhibit 1b – The **Claim Form**

- Exhibit 1c – The **Postcard Notice** and **Email Notice** that will be sent to known Class members

- Exhibit 1d - The **Publication Notice** as it will appear in the publications identified in this Notice Plan

- Exhibit 1e - The **Internet Banners** that will be posted on a variety of web properties

- Exhibit 1f - The **Detailed Notice** that will be made available at the website, as well as mailed to people who call the toll-free number to request one

## Conclusion

Our recommended Notice Plan:

- Was designed by experts who are trained and experienced in their specific area of expertise
- Is consistent with other effective settlement notice programs
- Is consistent with the "desire to actually inform" due process communications standard of *Mullane*
- Provides the best notice practicable
- Meets due process requirements
- Provides the same reach and frequency evidence that Courts have approved, is recommended by the FJC, and that has withstood appellate scrutiny, other expert critiques, as well as collateral review
- Leaves no holes or vulnerabilities that would leave the parties open to challenge

© 2014 KCC LLC
Proprietary and Confidential

# Exhibit 1a

<u>NOTICE OF ELIGIBILITY</u>

# You are eligible for a <u>$55 cash payment</u> from a class action settlement involving Bosch and Siemens 27" front-loading washing machines.

*Submit your sworn statement online by MONTH 00, 2015.*

**1-8_____**
**www.BoschSiemensWashing**
**MachinesClassAction.com**

## BHT

Bosch Siemens Washing Machines
Class Action Administrator
P.O. Box _____
City, ST  _____-_____

| First-Class |
| Mail |
| US Postage |
| Paid |
| Permit #__ |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
Postal Service: Please do not mark barcode

BHT—«ClaimID»      «MailRec»

«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip» «Country»

A Settlement has been reached in a class action lawsuit about the advertising and effectiveness of Bosch and Siemens brand 27" front-loading washing machines.

- Warranty records show that you are included in the Settlement and eligible for a cash payment of $55.

- To receive your payment you submit a sworn statement online by _____, **2015**.

The Court will hold a hearing on _____, 2015 to consider whether to approve the Settlement. Payments will be made if and when the Court approves the Settlement and it becomes final. Please be patient.

**For more information: 1- _____**
**www.BoschSiemensWashingMachinesClassAction.com**

# Exhibit 1b

✚

**Bosch Siemens Washing Machines**
**Class Action Administrator**
P.O. Box XXXXX
Providence, RI  XXXXX-XXXX

# BHT

## «Barcode»

Claim #: BHT-«ClaimID»    «MailRec»
«First1» «Last1»
«co»
«Addr1» «Addr2»
«City», «ST»  «Zip»
«Country»

| SETTLEMENT CLAIM FORM |
|---|

This Claim Form is to be used only by original purchasers of one or more Bosch or Siemens brand 27" Front-Loading Automatic Washers (the "Washers"). No Class Member who received from BSH either a full refund of the purchase price of the Washer or a free exchange of a Washer or a new washing machine of any model will be entitled to relief under the Settlement.

You must return your completed Claim Form and all required documentation **postmarked no later than MM, DD YYYY** to Bosch Siemens Washing Machines, Class Action Administrator, P.O. Box #####, Providence, RI #####-####.

| YOUR INFORMATION |
|---|

**Please provide your name and address:**

| First name | Middle initial | Last name |
|---|---|---|

| City | State | Zip code |
|---|---|---|

**Provide your contact information:**

(_____) _____   _____
Telephone number                                          Email address

| WASHER INFORMATION ELIGIBILITY |
|---|

To be eligible to receive a $55 cash payment, you must provide with your claim form **either**:

1. A picture of the serial number of the Washer, OR
2. The Washer receipt or invoice (a credit card receipt will be sufficient)

To the extent that BSH has proof of ownership for any Class Member through registration of the Class Member's warranty, such proof will be sufficient to establish eligibility for relief under the Settlement.

| SWORN STATEMENT |
|---|

**Please note that you will not be eligible unless you sign and date this statement:**

I swear, under the penalties of perjury recognized by the laws of the United States of America, that I am the original purchaser of one or more Bosch or Siemens brand 27" Front-Loading Automatic Washers.

_____        _____
Signature                                                                    Date

■                                                                                                        ✚

# Exhibit 1c

LEGAL NOTICE TO U.S. RESIDENTS

## Original purchasers of Bosch and Siemens 27" front-loading washing machines could get a cash payment from a class action lawsuit.

**Includes Nexxt, Vision, and ultraSense models**

*A Federal Court authorized this notice. This is <u>not</u> a solicitation from a lawyer.*

**1-888-315-6097**
**www.BoschSiemensWashing**
**MachinesClassAction.com**

BHT

Bosch Siemens Washing Machines
Class Action Administrator
PO Box 43306
Providence, RI 02940-3306

First-Class Mail
US Postage
Paid
Permit #____

|||||||||||||||||||||
Postal Service: Please do not mark barcode

XXX—«ClaimID»    «MailRec»

«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip» «Country»

A Settlement has been reached in a class action lawsuit about the advertising and effectiveness of Bosch and Siemens brand 27" front-loading washing machines ("Washers"). If you are the original purchaser of a Washer you may be eligible for a cash payment of $55 from a proposed Settlement.

**Who's Included?** The Settlement includes any U.S. residents who are original purchasers of a Washer. You do not need to still own the Washer.

**What does the Settlement provide?** If the Settlement is approved and becomes final, Class Members who submit a claim proving that they are the original purchaser of a Washer will receive a $55 payment from the Settlement (unless they previously received a full refund or free exchange of a Washer) and will release all claims against Bosch and Siemens (see also "What are my rights?" below).

**How can I get a payment?** File a claim online at www.BoschSiemensWashingMachinesClassAction.com by _____, 2015 or call 1-888-315-6097.

**Who represents me?** The Court has appointed Eppsteiner & Fiorica Attorneys, LLP as Lead Counsel to represent the Class in this case. You do not have to pay Class Counsel or anyone else to participate. You may hire your own lawyer to represent you at your expense.

**What are my rights?** You have a choice of whether to stay in the Class or not. If you submit a claim, file an objection or do nothing, you are choosing to stay in the Class, and you will be bound by the Court's decisions and the Parties' Final Settlement. Any claims you may have against Bosch and Siemens relating to the Washers will be released and you will be forever barred from asserting these claims against them. If you want to keep your right to sue the Defendants yourself, you must exclude yourself from the Settlement Class by _____, **2015**. If you exclude yourself, you cannot get a payment from this Settlement. To ask to be excluded from the Class, send a letter to _____ postmarked by _____, **2015** stating you want to be excluded from *Cobb v. BSH Home Appliances Corp.*, Case No. 8:10-cv-00711. Include your name, address, telephone number, and signature. If you stay in the Settlement Class, you may object to the Settlement by _____, 2015. Visit www.BoschSiemensWashingMachinesClassAction.com for details about how to object.

The Court will hold a hearing on _____, **2015** to consider whether to approve the Settlement, a request for attorneys' fees of up to $6.5 million and a $5,000 payment to each of the four Class Representatives. You or your own lawyer may appear at the hearing at your own expense.

**For more information or a Claim Form: 1-888-315-6097**
**www.BoschSiemensWashingMachinesClassAction.com**

# Exhibit 1d

LEGAL NOTICE TO U.S. RESIDENTS

# If you purchased a Bosch or Siemens 27" front-loading washing machine, you may be entitled to a cash payment.

## *Includes: Nexxt, Vision, and ultraSense models*

A Settlement has been reached in a class action lawsuit about the advertising and effectiveness of Bosch and Siemens brand 27" front-loading washing machines ("Washers"). If you are the original purchaser of a Washer you may be eligible for a cash payment of $55 from a proposed Settlement.

**Who's Included?** The Settlement includes any U.S. residents who are original purchasers of a Washer. You do not need to still own the Washer.

**What does the Settlement provide?** If the Settlement is approved and becomes final, Class Members who submit a claim proving that they are the original purchaser of a Washer will receive a $55 payment from the Settlement (unless they previously received a full refund or free exchange of a Washer) and will release all claims against Bosch and Siemens (see also "What are my rights?" below).

**How can I get a payment?** File a claim online at www.BoschSiemensWashingMachinesClassAction.com by _____, **2015** or call 1-888-315-6097.

**Who represents me?** The Court has appointed Eppsteiner & Fiorica Attorneys, LLP as Lead Counsel to represent the Class in this case. You do not have to pay Class Counsel or anyone else to participate. You may hire your own lawyer to represent you at your expense.

**What are my rights?** You have a choice of whether to stay in the Class or not. If you submit a claim, file an objection or do nothing, you are choosing to stay in the Class, and you will be bound by the Court's decisions and the Parties' Final Settlement. Any claims you may have against Bosch and Siemens relating to the Washers will be released and you will be forever barred from asserting these claims against them. If you want to keep your right to sue the Defendants yourself, you must exclude yourself from the Settlement Class by _____, **2015**. If you exclude yourself, you cannot get a payment from this Settlement. To ask to be excluded from the Class, send a letter to Bosch Siemens Washing Machines Class Action Administrator, PO Box 43306, Providence, RI 02940-3306 postmarked by _____, **2015** stating you want to be excluded from *Cobb v. BSH Home Appliances Corp.*, Case No. 8:10-cv-00711. Include your name, address, telephone number, and signature. If you stay in the Settlement Class, you may object to the Settlement by _____, **2015**. Visit www.BoschSiemensWashingMachinesClassAction.com for details about how to object.

The Court will hold a hearing on _____, 2015 to consider whether to approve the Settlement, a request for attorneys' fees of up to $6.5 million and a $5,000 payment to each of the four Class Representatives. You or your own lawyer may appear at the hearing at your own expense.

**1-888-315-6097          www.BoschSiemensWashingMachinesClassAction.com**

Exhibit A – page 62

# Exhibit 1e

## Internet Banners & Facebook Ad

1. Leaderboard—728 x 90 pixel



2. Medium Rectangle—300 x 250 pixel

3. Skyscraper—160 x 600 pixel



# Exhibit 1f

# If you purchased a Bosch or Siemens 27" front-loading washing machine, you may be entitled to a cash payment.

---

### *Includes: Nexxt, Vision, and ultraSense models*

---

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- Please read this notice carefully as it impacts your rights and provides you with information regarding how to file a claim. Your legal rights are affected whether or not you take action.

- A Settlement has been reached in a class action lawsuit about whether BSH Home Appliances Corporation, including its parent company and related entities (specifically, Bosch Und Siemens Hausgerate) ("BSH") manufactured, marketed, advertised, and sold certain washing machines that may have a tendency to develop mold, mildew, bacteria, and foul odors.

- The Settlement includes all U.S. residents who purchased a 27" Bosch Nexxt, Bosch Vision, or Siemens ultraSense front-loading washing machines ("Washer") for personal use.

- If you submit a timely Claim Form demonstrating that you are the original purchaser of a Washer, you will receive a cash payment of $55. If you do not exclude yourself from the settlement, your rights against BSH regarding the Washers will be lost forever, regardless of whether you file a claim.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to get a cash payment under the Settlement. |
| | If you submit a Claim Form, you are choosing to stay in the Class and give up your right to sue BSH in the future for the claims being resolved by this Settlement. See Question 14 (below) for details. |
| **ASK TO BE EXCLUDED** | Get out of this lawsuit. Get no money or benefits. Keep your rights against BSH. |
| | If you ask to be excluded, you will not receive a cash refund. But, you will keep the right to sue BSH on your own in a separate lawsuit. If you do not exclude yourself, you are choosing to stay in the class and you will be bound by the Settlement; any claims you have against BSH relating to the Washers will be released, and you will be forever barred from bringing them against BSH, regardless of whether you submit a claim or get a payment. |
| **OBJECT TO THE SETTLEMENT** | Write to the Court about why you don't like the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement at the Fairness Hearing. |
| **DO NOTHING** | If you do nothing, you will not receive a cash payment from this Settlement and any claims you have against BSH relating to the Washers will be released and be forever barred from bringing them against BSH. If you do not exclude yourself, you will be bound by the Settlement, and any claims you have against BSH relating to the Washers will be released and you will be forever barred from bringing them against BSH. |

- Your rights and options are explained in this notice. To file a claim you must act by **Month 00, 2015**. To ask to be excluded, you must act by **Month 00, 2015**. To object you must act by **Month 00, 2015**.

- The Court in charge of this case has to decide whether to approve the proposed Settlement. If you qualify and submit a timely claim, you may receive a cash payment if the Court approves the Settlement and after any appeals are resolved. Please be patient.

QUESTIONS? CALL **1-888-315-6097** TOLL FREE--OR--VISIT www.BoschSiemensWashingMachinesClassAction.com

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ...................................................................................................3
   1.    Why was this notice issued?
   2.    What is a class action?
   3.    Why is there a Settlement?

**THE CLAIMS IN THE LAWSUIT** ........................................................................................3
   4.    What is the lawsuit about?
   5.    How does BSH answer?

**WHO IS IN THE SETTLEMENT?** .......................................................................................4
   6.    How do I know if I am included?
   7.    Are there exceptions to being included?
   8.    I'm not sure if I'm included in the Settlement.

**THE SETTLEMENT BENEFITS – WHAT YOU GET IF YOU QUALIFY** ...........................................4
   9.    What does the Settlement provide?
   10.   How can I get a cash payment?
   11.   How do I complete the Claim Form?
   12.   When will I get my cash payment?
   13.   What rights am I giving up to get a payment and stay in the Class?
   14.   What are the Released Claims?

**THE LAWYERS REPRESENTING YOU** ...............................................................................5
   15.   Do I have a lawyer in this case?
   16.   Should I get my own lawyer?
   17.   How will the lawyers be paid?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................................................6
   18.   What happens if I exclude myself?
   19.   How do I ask to be excluded?

**OBJECTING TO THE SETTLEMENT** ...................................................................................6
   20.   How do I object to the Settlement?
   21.   What's the difference between objecting and asking to be excluded from the Settlement?

**THE COURT'S FINAL APPROVAL HEARING** ........................................................................6
   22.   When and where will the Court decide whether to approve the Settlement?
   23.   Do I have to attend the Final Approval Hearing?
   24.   May I speak at the Final Approval Hearing?

**IF YOU DO NOTHING** .....................................................................................................7
   25.   What happens if I do nothing at all?

**GETTING UPDATES AND MORE INFORMATION** ...................................................................7
   26.   Is more information about the Settlement available?

QUESTIONS? CALL 1-___-___-____ TOLL FREE--OR--VISIT www.BoschSiemensWashingMachinesClassAction.com

**-2-**

1208798.2

# BASIC INFORMATION

### 1. Why was this notice issued?

A federal Court authorized this Notice because as an original purchaser of a Bosch or Siemens 27" front-loading washing machine, you have a right to know about a proposed Settlement of this class action, including the right to make a claim for a cash payment, and about all of your options, before the Court decides whether to give "final approval" to the Settlement. If the Court approves the parties' Class Settlement Agreement ("Settlement"), and after any objections and appeals are resolved, cash payments will be made to those who qualify and submit a valid claim.

This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible to receive them, and how to get them.

Judge David O. Carter of the United States District Court for the Central District of California is overseeing this class action. The case is known as *Cobb v. BSH Home Appliances Corporation,* Case No. 8:10-cv-00711. The people who sued are called the Plaintiffs. The company they sued, BSH Home Appliances Corporation, is called the Defendant or BSH.

### 2. What is a class action?

In a class action, one or more people, called Class Representatives (in this case Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth), sue on behalf of all people who have similar claims. Together, these people are called a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. More information about why this case is a class action can be found in the Court's Class Certification Order, which is available at www.BoschSiemensWashingMachinesClassAction.com.

### 3. Why is there a Settlement?

The Court has not decided in favor of the Plaintiffs or BSH. By agreeing to the Settlement, both Plaintiffs and BSH avoid the cost and risk of further litigation and a trial, and the people affected will get a chance to receive compensation. The Class Representatives and their attorneys think the Settlement is best for the Class and recommend the Settlement to Class Members. BSH denies any liability and asserts that BSH Washers are not defective. The Court has not decided who is right.

# THE CLAIMS IN THE LAWSUIT

### 4. What is the lawsuit about?

Plaintiffs claim that the Washers have a tendency to develop mold, bacteria, and/or other biofilm (a thin layer of bacteria or fungus that sticks to the inside surfaces of the washing machine), which can cause unpleasant odors. The lawsuit claims the washing machines: (a) do not effectively clean themselves or clothes, or work as advertised; (b) cause Washers or washed clothes to carry unpleasant odors; and (c) develop mold, mildew, bacteria, and/or other biofilm, which can lead to unpleasant odors. It also claims consumers paid more than they would have for the washing machines because BSH did not tell them, prior to purchase, about the machines' tendency to develop mold, bacteria, other biofilms, and unpleasant odors, or about the upkeep required to reduce these issues. More specifically, the lawsuit alleged that BSH acted negligently, deceptively and improperly in designing, manufacturing, marketing, selling, and servicing Bosch and Siemens brand 27" front-loading automatic washing machines. It also alleges that (1) the Washers had an undisclosed tendency to develop bacteria, mold and foul odors, ("BMFO"); (2) undisclosed tasks were required to reduce or improve BMFO; and (3) BSH violated state consumer protection statutes, engaged in common law fraudulent concealment/nondisclosure, breached the express and implied warranties for the Washers, and was unjustly enriched ("Nationwide Claims").

More information can be found in the Third Consolidated Amended Complaint, available at www.BoschSiemensWashingMachinesClassAction.com.

### 5. How does BSH answer?

BSH denies that it misled consumers or violated any laws. It also denies that its Bosch and Siemens brands 27" front-loading automatic clothes washing machines are defective or have a tendency to develop bacteria, mold, other biofilms, and/or unpleasant odors. BSH maintains that the upkeep it recommends is not extraordinary and, if performed, will

prevent bacteria, mold, other biofilms, and/or unpleasant odors from developing. BSH further contends that many consumers knew of the maintenance requirements for high efficiency washing machines before purchasing them, like the Washers, and that even for those who were unaware, that the knowledge of the maintenance required to appropriately operate the Washers would not have resulted in lower purchase prices.

To see BSH's Answer, go to www.BoschSiemensWashingMachinesClassAction.com.

## WHO IS IN THE SETTLEMENT?

### 6. How do I know if I am included?

You are included in the Settlement as a Class Member if you are the original purchaser of a 27" Bosch Nexxt, Bosch Vision, or Siemens ultraSense horizontal axis/front-loading automatic clothes washing machine that you used for your personal use and you have not taken steps to exclude yourself. You do not need to still own the Washer.

### 7. Are there exceptions to being included?

Yes. If you are NOT the <u>original retail purchaser</u> of a Washer, you are not included in the Class. The following are also excluded from the Class: (1) BSH, any entity in which BSH has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) retailers, wholesalers, and other individuals or entities that purchased the Washers for resale; (3) the United States government and any agency or instrumentality thereof; (4) the judge to whom this case is assigned and any member of the judge's immediate family; (5) claims for personal injury, emotional distress and wrongful death; and (6) persons who timely and validly opt to exclude themselves from the Settlement Class.

### 8. I'm not sure if I'm included in the Settlement.

If you are not sure whether you are included in the Settlement, you may call 1-888-315-6097with questions or visit www.BoschSiemensWashingMachinesClassAction.com. You may also mail questions to Bosch Siemens Washing Machines Class Action Administrator, PO Box 43306, Providence, RI 02940-3306, or email to XXXX@XXXXXXXXXXXXXXX.com.

## THE SETTLEMENT BENEFITS – WHAT YOU GET IF YOU QUALIFY

### 9. What does the Settlement provide?

The Settlement provides a $55 cash payment to Class Members who submit a timely and valid claim form. If you submit a Claim Form, that means you are staying the Class, and you will give up your right to sue BSH in the future for the claims that will be resolved if this Settlement is approved by the Court. See Question 14 (below) for details.

To learn more about the Settlement go to www.BoschSiemensWashingMachinesClassAction.com.

### 10. How can I get a cash payment?

To be eligible to receive a cash payment, you must submit a valid Claim Form by _____, 2015. Claim Forms may be submitted online at www.BoschSiemensWashingMachinesClassAction.com, printed from the website, or obtained by calling 1-888-315-6097, sending an email to XXXX@XXXXXXXXXXXXXXX.com, or by writing to Bosch Siemens Washing Machines Class Action Administrator, PO Box 43306, Providence, RI 02940-3306.

### 11. How do I complete the Claim Form?

Read all of the Claim Form instructions carefully. Complete the entire form and submit a photograph of the serial number or provide proof of purchase (such as a receipt). The serial number is located inside the door frame cavity when the door is open. See photo below:

[Insert 2-3 Photos Showing Location of Serial Number 1) outside of washer with door open; 2) closer shot of label with serial number relative to other parts of machine]; 3) close up of label identifying serial number]

Submitted your Claim Form online or mail it so it is postmarked **no later than**_____, 2015. If your mailed Claim Form is postmarked after _____, 2015, you will not receive a cash payment. Keep a copy of your mailed Claim Form or your confirmation email. The Settlement Administrator may request additional information to verify your claim. If you do not comply with a request for verification, your Claim may be denied.

QUESTIONS? CALL 1-888-315-6097 TOLL FREE–OR–VISIT www.BoschSiemensWashingMachinesClassAction.com

**-4-**

### 12. When will I get my cash payment?

The Court will hold a hearing on ⬚⬚⬚⬚⬚⬚, 2015 to decide whether to approve the Settlement (see "The Court's Final Approval hearing" below). If Judge Carter approves the Settlement, there may be appeals. Resolving appeals can take a long time.  Please be patient. Cash payments will be mailed to qualifying Class Members after the Court has granted final approval of the Settlement and the deadline to file an appeal has passed or all appeals are resolved.

### 13. What rights am I giving up to get a payment and stay in the Class?

Unless you exclude yourself, you are staying in the Class. If the Settlement is approved and becomes final all of the Court's orders will apply to you and legally bind you. That means you won't be able to sue, continue to sue, or be part of any other lawsuit against BSH and related parties for the legal issues (*see* the Nationwide Claims described in Question 4) and claims resolved by this Settlement. Generally, your claims or complaints against BSH relating to the Washers, except those for personal injury, bodily injury and damage to other property, will be forever barred. The specific rights you are giving up are called Released Claims (*see* Question 14).

### 14. What are the Released Claims?

"Released Claims" means that the Plaintiffs and Class Members will unconditionally release and forever discharge BSH and all present and former parent companies (including specifically Bosch und Siemens Hausgerate GMBH), subsidiaries, affiliate companies, shareholders, officers, directors, employees, partners, agents, servants, representatives, attorneys, insurers, successors, predecessors, and assigns from any and all claims, rights, demands, actions, causes of actions, suits, debts, liens, contracts, liabilities, agreements, costs, expenses or losses of any kind whatsoever, including any known or unknown claims, that they have or may claim to have against BSH based upon, arising out of, or in any way relating to any act, failure to act, omission, misrepresentation, fact, event, transaction, or occurrence from the beginning of time until the Effective Date (the date that the Settlement has been approved and the time for appeal has expired or the Settlement is affirmed) of the Settlement Agreement that were raised or could have been raised in the lawsuit relating to the alleged defects in the Washers, except for claims for personal injury, emotional distress, or wrongful death.

The Settlement Agreement, available at www.BoschSiemensWashingMachinesClassAction.com, describes the released claims with specific descriptions. If you have any questions you can talk to the lawyers listed in Question 15 for free, or you can, of course, talk to your own lawyer if you have questions about what this means.

# THE LAWYERS REPRESENTING YOU

### 15. Do I have a lawyer in this case?

Yes. The team of lawyers representing the Class includes Eppsteiner & Fiorica Attorneys, LLP; Lieff Cabraser Heimann & Bernstein, LLP; Levin, Fishbein and Sedran & Berman. Stuart Eppsteiner of Eppsteiner & Fiorica is Lead Plaintiffs' Counsel. These lawyers have experience handling similar cases. More information about these law firms and lawyers is available at www.eppsteiner.com, www.lieffcabraser.com and www.lfsblaw.com.

### 16. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is representing you and all the other members of the Class. If you want someone other than Class Counsel to speak for you, you may hire your own lawyer at your own expense.

### 17. How will the lawyers be paid?

Class Counsel will ask the Court to approve a payment of up to $6.5 million for attorneys' fees and expenses. Class Counsel will also request a payment of $5,000 each for Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth for their services as the Class Representatives. The Court may award less than these amounts. If approved by the Court, BSH will separately pay the requested attorneys' fees and expenses and Class Representative payments and will not reduce the amount of money available to Class Members. BSH will also separately pay all costs to administer the Settlement.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 18. What happens if I exclude myself?

If you exclude yourself from the Settlement you: (1) will not be able to get a payment from this Settlement ; (2) will not be legally bound by the Court's judgments; and (3) will keep any rights you may have to sue BSH for the legal claims included in this lawsuit and resolved by this Settlement.

### 19. How do I ask to be excluded?

To exclude yourself, send a letter to the Settlement Administrator stating that you want to be excluded from *Cobb v. BSH Home Appliances Corporation* No. 8:10-cv-00711. Include your name, address, telephone number, and signature. You must mail your exclusion request so that it is postmarked by **Month 00, 2015** to: Bosch Siemens Washing Machines Class Action Administrator, PO Box 43306, Providence, RI 02940-3306.

## OBJECTING TO THE SETTLEMENT

### 20. How do I object to the Settlement?

If you are a Class Member and do not exclude yourself, you can object to the Settlement or some part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views before making a decision. To object, you must prepare and sign a written objection that includes: (1) the case number "Case No. 8:10-cv-00711-DOC-AN"; (2) your full name, current address and telephone number; (3) the serial number of the Washer you own or owned;(4) a written statement of your objections and the specific reasons for each; (5) any supporting papers, evidence or documents; (6) a statement of whether you intend to appear and present your objections at the Fairness Hearing (see Question X); and (7) your signature. You must file your objection with the Court no later than **Month __, 2015** and mail copies to the Settlement Administrator, Class Counsel and Defense Counsel so it is postmarked by **Month __, 2015.**

| COURT | SETTLEMENT ADMINISTRATOR | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|---|
| United States District Court Central District of California Southern Division Ronald Reagan Federal Building and U.S. Courthouse 411 W. 4th Street Santa Ana, CA 92701 | Bosch Siemens Washing Machines Class Action Administrator PO Box 43306 Providence, RI 02940-3306 | Eppsteiner & Fiorica Attorneys, LLP Stuart M. Eppsteiner 12555 High Bluff Drive Suite 155 San Diego, CA 92130 | Jones Day Erik Swanholt 555 South Flower Street Fiftieth Floor Los Angeles, CA 90071 |

### 21. What's the difference between objecting and asking to be excluded from the Settlement?

Objecting is telling the Court that you don't like something about the proposed Settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

The Court will hold a "Final Approval Hearing" or "Fairness Hearing" to decide whether to approve the Settlement. You may attend the Final Approval Hearing and you may ask to speak, but you are not required to.

### 22. When and where will the Court decide whether to approve the Settlement?

The Final Approval Hearing will be on _____ at _____before Judge David O. Carter, at Ronald Reagan Federal Building and U.S. Courthouse, Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, CA 92701 in Courtroom 9D.

At this Hearing, the Court will consider whether the proposed Settlement and all of its terms are adequate, fair, and reasonable. If there are objections, the Court will consider them. The Court may listen to people who have asked for permission to speak at the hearing (*see* Question 24). The Court may also decide how much to award Class Counsel for fees and expenses and how much to award the Class Representatives for representing the Class. At or after the Hearing,

the Court will decide whether to finally approve the proposed Settlement. There may be appeals after that. We do not know how long these decisions will take.

## 23. Do I have to attend the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you file your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but it is not required.

## 24. May I speak at the Final Approval Hearing?

Yes. You may ask the Court to speak at the Final Approval Hearing. To do so, you must include a request to argue or comment at the hearing with your objection (see Question 20). You must provide copies of any documents you intend to rely upon, including the names and addresses of any witnesses who will appear at the hearing, and the name of any counsel representing you as an objector. Ultimately, the Court will decide who will be allowed to speak at the Fairness Hearing.

# IF YOU DO NOTHING

## 25. What happens if I do nothing at all?

If you do nothing you won't get a payment from this Settlement. If the Court approves the Settlement, you will be bound by its terms, and you will give up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against BSH about the legal issues or claims resolved by this Settlement.

# GETTING UPDATES AND MORE INFORMATION

## 26. Is more information about the Settlement available?

Yes. More information about the lawsuit and this Settlement is available at www.BoschSiemensWashingMachinesClassAction.com, by calling toll-free 1-888-315-6097, writing to Bosch Siemens Washing Machines Class Action Administrator, PO Box 43306, Providence, RI 02940-3306, or contacting Class Counsel. Updates about the status of the Settlement and any changes in the deadlines will also be posted at the website and made available by calling the toll-free number.

PLEASE DO NOT CALL THE JUDGE OR THE COURT TO ASK QUESTIONS ABOUT THIS LAWSUIT OR NOTICE. THEY CANNOT ANSWER YOUR QUESTIONS. THE COURT WILL NOT RESPOND TO LETTERS OR TELEPHONE CALLS. IF YOU WISH TO ADDRESS THE COURT, YOU MUST FILE AN APPROPRIATE PLEADING OR MOTION WITH THE CLERK OF THE COURT IN ACCORDANCE WITH THE COURT'S USUAL PROCEDURES.

# EXHIBIT 2
# TO
# EXHIBIT A

1   Stuart M. Eppsteiner (SBN 098973)
    sme@eppsteiner.com
2   Andrew J. Kubik (SBN 246902)
    ajk@eppsteiner.com
3   **EPPSTEINER & FIORICA ATTORNEYS, LLP**
    12555 High Bluff Dr., Ste. 155
4   San Diego, CA  92130
    Tel: (858) 350-1500
5   Fax: (858) 350-1501

6   *Counsel for Plaintiffs and the Class*

7   Elwood Lui (SBN 45538)
    elui@jonesday.com
8   Frederick L. McKnight (SBN 55183)
    fmcknight@JonesDay.com
9   Erik K. Swanholt (SBN 198042)
    ekswanholt@JonesDay.com
10  **JONES DAY**
    555 South Flower Street, 50th Floor
11  Los Angeles, California 90071-2300
    Tel:  (213) 489-3939
12  Fax:  (213) 243-2539

13  *Counsel for Defendant*
    BSH HOME APPLIANCES CORPORATION
14

15  [Additional Counsel Listed on Signature Page]

16

17              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
18                   **SOUTHERN DIVISION**

19  SHARON COBB, et al., individually      )
    and on behalf of all others similarly  )  **CLASS ACTION**
20  situated,                              )
                                           )  Case No. SACV10-711 DOC (ANx)
21            Plaintiffs,                  )
                                           )
22         vs.                             )  **STIPULATED UNDERTAKING**
                                           )  **RE:  ATTORNEYS' FEES AND**
23  BSH HOME APPLIANCES                    )  **COSTS**
    CORPORATION, a Delaware                )
24  Corporation,                           )
                                           )
25            Defendant.                   )  **Courtroom: 9D**
                                           )  **Judge:     Hon. David O. Carter**
26                                         )
27

28

---
STIPULATED UNDERTAKING RE: ATTORNEYS' FEES AND COSTS
                                              Case No. SACV10-711 DOC (ANx)

1204403.1

Exhibit A – page 75

Plaintiffs Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth (collectively "Plaintiffs") and Defendant BSH Home Appliances Corporation ("BSH") (collectively the "Parties"), by and through their undersigned counsel stipulate and agree as follows:

WHEREAS, Class Counsel (as defined in the underlying Settlement Agreement) and their respective law firms desire to give an undertaking for repayment of their award of attorney fees and costs ("Undertaking"), as is required by the Settlement Agreement,

NOW, THEREFORE, each of the undersigned Class Counsel, on behalf of themselves as individuals and as agents for their respective law firms, hereby submit themselves and their respective law firms to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

The obligations of Class Counsel and their respective law firms are joint and several.

BSH will pay Class Counsel the full amount of attorney fees and costs approved by the Court within twenty (20) Days of the Final Approval Order.

In the event that the Final Approval Order is reversed or modified on appeal, in whole or in part, Class Counsel shall, within fourteen (14) Days after the order reversing or modifying the Final Approval Order, in whole or in part, becomes final, repay to BSH the full amount of the attorney fees and costs paid by BSH to Class Counsel and the stipends paid to named plaintiffs, including any accrued interest.

In the event the Final Approval Order is not reversed on appeal, in whole or in part, but the attorney fees and costs awarded by the Court are vacated or modified on appeal, Class counsel shall, within fourteen (14) Days after the order vacating or modifying the award of attorney fees and costs becomes final, repay to BSH the

STIPULATED UNDERTAKING RE: ATTORNEYS' FEES AND COSTS
Case No. SACV10-711 DOC (ANx)

1204403.1

Exhibit A – page 76

1  attorney fees and costs paid by BSH to Class counsel in the amount vacated or
2  modified, including any accrued interest.

3       This Undertaking and all obligations set forth herein shall expire upon finality
4  of the Final Approval Order.

5       In the event Class Counsel fails to repay to BSH any attorneys' fees and costs
6  and/or stipends that are owed to it pursuant to this Stipulated Undertaking, the Court
7  shall, upon application of BSH and notice to Class Counsel, summarily issue orders,
8  including but not limited to judgments and attachment orders against each Class
9  Counsel, and may make appropriate findings for sanctions for contempt of court.

10       The undersigned stipulate, warrant and represent that they have both actual
11  and apparent authority to enter into this stipulation, agreement and undertaking on
12  behalf of their respective law firms or organizations.

13       This Undertaking may be executed in one or more counterparts, each of which
14  shall be deemed an original but all of which together shall constitute one and the
15  same instrument.  Signatures by facsimile shall be as effective as original signatures.

16       The undersigned declare under penalty of perjury under the laws of the State
17  of California and the United States that they have read and understand the foregoing
18  and that it is true and correct.

19
20
21
22
23
24
25
26
27
28

2
STIPULATED UNDERTAKING RE: ATTORNEYS' FEES AND COSTS
Case No. SACV10-711 DOC (ANx)

1204403.1

Exhibit A – page 77

DATED: December 12, 2014     **JONES DAY**

                          */s/   Erik K. Swanholt*
                       By:       Erik K. Swanholt
                       555 South Flower Street, 50th Floor
                       Los Angeles, CA 90071-2300
                       Tel:   (213) 489-3939
                       Fax:  (213) 243-2539

                       *Counsel for Defendant*
                       BSH Home Appliances Corporation

DATED: December 12, 2014     **EPPSTEINER & FIORICA ATTORNEYS, LLP**

                          */s/   Stuart M. Eppsteiner*
                       By:       Stuart M. Eppsteiner
                       Andrew J. Kubik
                       12555 High Bluff Drive, Ste. 155
                       San Diego, CA 92130
                       Tel:   (858) 350-1500
                       Fax:  (858) 350-1501

DATED: December 12, 2014     **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

                          */s/   Kristen Law Sagafi*
                       By:       Kristen Law Sagafi
                       Nimish R. Desai
                       275 Battery Street, 29th Floor
                       San Francisco, CA 94111-3339
                       Tel:   (415) 956-1000
                       Fax:  (415) 956-1008

1   DATED: December 12, 2014

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEVIN, FISHBEIN, SEDRAN & BERMAN**


      */s/   Daniel C. Levin*
By:      Daniel C. Levin
(dlevin@lfsblaw.com)
(admitted pro hac vice)
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel:  (215) 592-1500

*Counsel for Plaintiffs and the Class*

---

4

STIPULATED UNDERTAKING RE: ATTORNEYS' FEES AND COSTS

Case No. SACV10-711 DOC (ANx)

1204403.1