1  Stuart M. Eppsteiner (SBN 098973)
   Andrew J. Kubik (SBN 246902)
2  EPPSTEINER & FIORICA
     ATTORNEYS, LLP
3  12555 High Bluff Dr., Ste. 155
   San Diego, CA  92130
4  858.350.1500

5  Kristen L. Sagafi (SBN 222249)
   LIEFF CABRASER HEIMANN
6    & BERNSTEIN, LLP
   275 Battery St. 29th Floor
7  San Francisco, CA  94111
   415.956.1000
8
   Jason L. Lichtman, *pro hac vice*
9  LIEFF CABRASER HEIMANN
     & BERNSTEIN, LLP
10 250 Hudson Street, 8th Floor
   New York, NY  10013-1413
11 212.355.9500

12 Attorneys for Plaintiffs
   *(Additional Counsel on Signature Page)*
13

14                 IN THE UNITED STATES DISTRICT COURT

15            FOR THE CENTRAL DISTRICT OF CALIFORNIA

16                         SOUTHERN DIVISION

17

18 SHARON COBB, et al., individually       Case No.  SACV10-711 DOC (ANx)
   and on behalf of all others similarly
19 situated,                               **STIPULATION RE: FILING OF
                                           PROVISIONAL FOURTH
20            Plaintiffs,                   CONSOLIDATED AMENDED
                                           COMPLAINT**
21         vs.

22
   BSH HOME APPLIANCES
23 CORPORATION, a Delaware                  Judge:     Hon. David O. Carter
   Corporation,
24
              Defendant.
25

26

27

28

   224498

Plaintiffs Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth (collectively "Plaintiffs") and Defendant BSH Home Appliances Corporation ("BSH") (collectively the "Parties"), through their respective counsel of record, submit the following Stipulation Re Filing of Provisional Fourth Consolidated Amended Complaint.

## **STIPULATION**

1.      Whereas, the Parties have finalized their proposed class action Settlement, and, concurrently herewith, are submitting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion") and supporting materials;

2.      Whereas, Plaintiffs wish to amend the currently operative Third Consolidated Amended Complaint ("TCAC") to better reflect the scope of the Settlement by removing references to 24" Bosch Axxis and Siemens UltraStack machines from the list of subject washing machines in the TCAC as they are not part of the certified or settlement class;

3.      Whereas, Defendant has reviewed Plaintiffs' proposed Conditional Fourth Consolidated Amended Complaint, attached hereto as Exhibit 1;

4.      Whereas, BSH expressly denies the allegations set forth in the proposed Provisional Fourth Amended Consolidated Complaint, but for settlement purposes only does not object to the filing of the Provisional Fourth Consolidated Amended Complaint;

5.      Whereas, the Parties agree that this stipulation is subject to revocation by any party in the event that:  (i) the Court does not enter the Preliminary Approval Order; (ii) the Court does not enter the Final Approval Order; (iii) any such Final Approval Order does not become final and effective for any reason; or (iv) the Settlement Agreement is terminated.  Upon any such event, the parties shall notify the Court and the Third Consolidated Amended Complaint shall again

1   become the operative complaint for all purposes as if the proposed Provisional
2   Fourth Consolidated Amended Complaint were never filed;
3        WHEREAS, the Parties agree that Defendant's time to respond to the
4   proposed Provisional Fourth Consolidated Amended Complaint shall be stayed
5   pending the settlement approval process.
6        NOW THEREFORE, the Parties, by and through their undersigned counsel,
7   stipulate and agree that Plaintiffs should be granted leave to file the Provisional
8   Fourth Consolidated Amended Complaint.
9        A proposed form of Order is submitted herewith.
10

11      **IT IS SO STIPULATED.**
12

13   Dated:  December 12, 2014        JONES DAY
14
                                      /s/     Erik K. Swanholt
15
                                      By:  Erik K. Swanholt
16                                    555 South Flower Street, 50th Floor
                                      Los Angeles, CA 90071-2300
17                                    Tel: (213) 489-3939
                                      Fax: (213) 243-2539
18
                                      Counsel for Defendant
19                                    BSH Home Appliances Corporation
20
21   Dated:  December 12, 2014        Respectfully submitted,
                                      EPPSTEINER & FIORICA
22                                      ATTORNEYS, LLP
23                                     /s/ Stuart M. Eppsteiner
24                                    By : Stuart M. Eppsteiner (SBN 098973)
                                      Andrew J. Kubik (SBN 246902)
25                                    EPPSTEINER & FIORICA
                                        ATTORNEYS, LLP
26                                    12555 High Bluff Dr., Ste. 155
                                      San Diego, CA  92130
27                                    858.350.1500
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kristen L. Sagafi (SBN 222249)
LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP
275 Battery St. 29th Floor
San Francisco, CA  94111
415.956.1000

Jason L. Lichtman, *pro hac vice*
LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
212.355.9500

Daniel C Levin, *pro hac vice*
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street Suite 500
Philadelphia, PA  19106
215.592.1500

*Attorneys for the Classes*

- 3 -

# EXHIBIT 1

Stuart M. Eppsteiner (State Bar No. 098973)
sme@eppsteiner.com
Andrew J. Kubik (State Bar No. 246902)
ajk@eppsteiner.com
**EPPSTEINER & FIORICA ATTORNEYS, LLP**
12555 High Bluff Dr., Ste. 155
San Diego, CA  92130
Tel. (858) 350-1500
Fax (858) 350-1501

Lead Counsel for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| DENNIS DEMERECKIS, BEVERLY GIBSON, TRISH ISABELLA, and NANCY WENTWORTH, individually and on behalf of all others similarly situated, <br><br> PLAINTIFFS, <br><br> vs. <br><br> BSH HOME APPLIANCES CORPORATION, a Delaware Corporation, <br><br> DEFENDANT. | Case No. SACV10-711 DOC (ANx) *(Consolidated with Case No.* SACV10-01562 CJC (FFMx) ) <br><br> **PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT** |

Plaintiffs Beverly Gibson ("Ms. Gibson"), Trish Isabella ("Ms. Isabella"), Dennis Demereckis ("Mr. Demereckis"), and Nancy Wentworth ("Ms. Wentworth") (jointly referred to as "Consumer Representatives") by and through their undersigned counsel, individually and on behalf of all others similarly situated (the "Class" (The Class and Consumer Representatives jointly are referred to as

"Plaintiffs")), allege the following facts and claims upon personal knowledge and upon information and belief as to all other matters as follows.

## INTRODUCTION

1.    The Consumer Representatives bring this class action on behalf of themselves, and all others similarly situated, against Defendant BSH Home Appliances Corporation ("Defendant," "Bosch" or "Siemens") seeking damages, restitution, a constructive trust, and injunctive relief for the proposed Class as defined herein.

2.    This action is brought to remedy violations of law in connection with Defendant's design, sale, and warranting of only its 27" Horizontal Axis/Front-Loading Automatic Clothes Washers, including, but not limited to, Bosch Nexxt and Vision Models, and Siemens ultraSense models (hereinafter collectively referred to as "Washing Machine(s)" or "Machine(s)").   Bosch marketed its 27" Machines under the Nexxt, Vision, and Siemens ultraSense model lines.  The specific Bosch and Siemens brand Washing Machines, in contrast to all of the other Bosch and Siemens brand Washing Machines, parts, pieces, operation, and materials are the same.

3.    The North American washing machine market today is comprised of both vertical (top-loading) and horizontal axis (front-loading) washing machines.  The Washing Machines do not effectively self clean.  Instead the Machines' defective parts, including, its sump area, backside of the Outer Tub, detergent dispenser, gaskets, and baffles attached to the interior of the Clothes Basket retain dirty water and moisture which cause Biofilm (defined below) to be deposited in areas of the machine which wash water comes in contact with and which fosters and causes bioorganic material to develop inside of them and emit Foul Odors (defined below).

4.    The Foul Odors are proof of the actual problem: the Washing Machines' defective parts retain dirty wash water that foments the development of Biofilm, which begets mold and bacteria and Mold Problem (defined below), which produce

Foul Odors.  The dirty wash water carries and has within it, remnants and particles of detergent, fabric softeners, dirt, scum, skin, hair, oil, bugs, food, beverages and other organic material. The defects in the parts of the Machines have defects that were unintended by Bosch.  Bosch has proclaimed that its design intention is to design parts and assembled Machines that evacuate and eliminate, during the Machine's operation, dirty wash water and the particles and remnants described above.  However because of unintended defects in the parts used to assemble the Machines, and defects in assembled and completed Machines, they produce Biofilm, the Mold Problem (defined below) and the Foul Odors. "Biofilm," an amalgamation of remnants and particles of detergents, fabric softeners, dirt, scum, skin, hair, oils, bugs, food, beverages, and other organic material, develops within the Washing Machines in places where consumers cannot remove it.  Bacteria, mold, fungus, and other bioorganic matter begin to feed and grow on and become incorporated into the Biofilm ("Mold Problem").  Within a short time after the Machines are put to use, the Mold Problem produces odors that offend the olfactory senses of Plaintiffs ("Foul Odors").

5.    The Washing Machines' have defective parts that cause, even when the Machines are used as Bosch recommends, the accumulation of Biofilm, and development of Foul Odors and the Mold Problem.  These defective parts presently known by Plaintiffs, which they reserve the right to amend to add other parts that they may learn are also defective and contribute to the development of Biofilm, The Mold Problem or Foul Odors are the back wall of the Outer Tub, the Baffles or Paddles, the Clothes Basket Support Bracket, the detergent dispenser, the detergent dispense boot, the door bellow, and the Sump/Heating Element area of the Outer Tub (the "Defective Parts").  The Defective Parts cause dirty wash water retained in the Machines, after the wash cycle is completed to develop Biofilm, the Mold Problem and Foul Odors.

224098

6.     As a result of the presence of the Defective Parts in the Machines and the effects they cause, e.g. Biofilm, the Mold Problem and Foul Odors, the Washing Machines do not satisfy the purpose for which they were purchased; *i.e.*, to clean clothes, towels, bedding, and other washable items (hereinafter collectively referred to as "Clothes") and make Clothes smell fresh and clean.

7.     As a result of the presence of the Defective Parts in the Machines and the effects they cause, e.g. Biofilm, the Mold Problem and Foul Odors, the Washing Machines cause all Machine Owners' Clothes to not be clean, smell foul, stink, and carry and emit offensive and obnoxious odors.

8.     The Consumer Representatives assert claims on behalf of themselves and a Nationwide Class, or a California subclass in the alternative, for violations of the "Unfair," Unlawful" and "Fraudulent" prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*  ("UCL"), Cal. Bus. & Prof. Code § 17500 *et seq*. ("FAL"), and Cal. Civ. Code § 1750 *et seq*. ("CLRA") and breach of implied warranty under the Magnuson-Moss Warranty Act ("MMWA")

9.     In addition, and in the alternative to the Nationwide Class, Plaintiff Gibson asserts claims on behalf of a Maryland Subclass (defined below) for violation of the Maryland Consumer Protection Act, Maryland Code, Commercial Law § 13-101, *et seq*. , and breach of express warranty under Maryland Commercial Law § 2-313.

10.     In addition, and in the alternative to the Nationwide Class, Plaintiff Isabella asserts claims on behalf of a New York Subclass (defined below) for violation of New York General Business Law §§ 349 and 350, and breach of implied warranties under the MMWA, and N.Y. UCC § 2-314, and New York common law.

11.     In addition, and in the alternative to the Nationwide Class, Plaintiff Wentworth asserts claims on behalf of a California Subclass (defined below) for breach of express written and implied warranties under the MMWA, California

Commercial Code §§ 2313, the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq.*
("Song-Beverly"), and California common law.

12.   In addition to, and in the alternative to the Nationwide Class, Plaintiff
Demereckis asserts claims on behalf of an Illinois Subclass (defined below) for
violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815
ILCS 505/1, *et seq*. The Nationwide Class, Maryland Subclass, New York Subclass,
California Subclass and Illinois Subclass are cumulatively hereinafter referred to as
the "Class".

## THE PARTIES

**Plaintiffs**

13.   Plaintiff Beverly Gibson is a citizen of Maryland.   On or about
January 7, 2009, Plaintiff Gibson purchased a Bosch Nexxt 800 Washing Machine
from US-Appliance.com, an online appliance retailer located in Michigan.

14.   Within several months of owning and operating the Washing Machine
under normal household conditions, and as recommended by Bosch, the Washing
Machine accumulated Biofilm, and developed Foul Odors and the Mold Problem.
Ms. Gibson notified Bosch that her Washing Machine had defective parts and the
Mold Problem within one year of her date of purchase of the washer.

15.   Plaintiff Gibson purchased a Bosch Washing Machine and used it for its
intended purpose, to clean Clothes, and as recommended and instructed by Bosch.
Ms. Gibson experienced, during Bosch's express warranty period, and continues to
experience the accumulation of Biofilm, Foul Odors, and the Mold Problem in her
Washing Machine and on Clothes washed in her Washing Machine.   Ms. Gibson
provided Bosch with pre-suit notice of her belief that her Washing Machine had
defects that caused Biofilm and the Mold Problem in her Machine to manifest and
followed actions Bosch recommended to avoid and eliminate Biofilm, Foul Odors,
and the Mold Problem.   Bosch sent instructions to Ms. Gibson regarding products to

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
Case No. SACV10-711 CJC (ANx)
224098

purchase, which it claimed would rid her Machine of Biofilm, Foul Odors and Mold Problems. Ms. Gibson followed Bosch directions of what to do to her Machine to rid it of Biofilm, Foul Odors and Mold Problems; however, Ms. Gibson's Washing Machine continues to have Biofilm, Foul Odors and the Mold Problem.

16.   Plaintiff Trish Isabella is a citizen of New York and resides in Johnstown, New York. On or about September 19, 2007, Trish Isabella purchased a Bosch Nexxt 500 Series Washing Machine from a Showcase Furniture retail store in Johnstown, New York. Within several months of owning and operating the Machine under normal household conditions, and as recommended by Bosch, Ms. Isabella noticed the Mold Problem. Ms. Isabella tried to remediate the Biofilm, Mold Problem, and Foul Odors on numerous occasions, but her Washing Machine continues to have Biofilm, the Mold Problem and Foul Odors.

17.   Plaintiff Nancy Wentworth is a citizen of California and resides in San Diego, California. On or about February 20, 2008, Plaintiff Wentworth purchased a Bosch Nexxt DLX Washing Machine from a Pacific Sales retail store located in San Diego, California. Within several months of owning and operating the Washing Machine under normal household conditions, and as recommended by Bosch, the Washing Machine accumulated Biofilm, and developed Foul Odors and the Mold Problem. Ms. Wentworth notified Bosch of the Mold Problem within two years of her date of purchase of her Washing Machine.

18.   Plaintiff Wentworth purchased a Bosch Machine and used it for its intended purpose and as recommended and instructed by Bosch. Plaintiff Wentworth experienced and continues to experience the accumulation of Biofilm, Foul Odors, and the Mold Problem in her Washing Machine and on Clothes washed in her Washing Machine. Plaintiff provided Bosch with pre-suit notice that she believed her Washing Machine had defective parts and of the Biofilm, Foul Odors and Mold Problem in her Machine and followed actions Bosch recommended to avoid and eliminate Biofilm, Foul Odors, and the Mold Problem. Bosch replaced the

6

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT

door gasket in Wentworth's Washing Machine on January 19, 2010; however Ms. Wentworth's replacement door gasket quickly developed new Biofilm, Foul Odors and the Mold Problem.  In addition, Plaintiffs are informed, believe and contend that Ms. Wentworth's Machine had Biofilm and Mold on the back wall of the Outer Tub when she notified Bosch of the defects and their effects, which defect part was not replaced by Bosch in response to Ms. Wentworth's notice.

19.    Indeed, on June 17, 2010, Bosch, through its employee and counsel, visually inspected and operated Ms. Wentworth's machine.  This event happened within six months of Bosch's replacement of the Machine's door gasket.   By June 17, 2010, Ms. Wentworth's 6-month old gasket was inundated with the Mold Problem.  A subsequent inspection and disassembly of Ms. Wentworth's washer in the presence of Bosch's counsel, followed by laboratory analysis of swab samples taken from the inside parts of Ms. Wentworth's Machine confirmed the presence of mold, Biofilm, and bacteria inside Ms. Wentworth's washer.

20.    Plaintiff Dennis Demereckis is a citizen of Illinois and resides in Mokena, Illinois.  On or about May 22, 2009, Plaintiff Demereckis purchased a Bosch Nexxt Washing Machine from Grant's Appliances Electronics and More ("Grant's") located in Orland Park, Illinois. Within six months of owning and operating the Machine for normal household purposes and use, and as recommended by Bosch, the Machine accumulated Biofilm and developed Foul Odors and the Mold Problem.  Plaintiff Demereckis spoke to a Bosch service representative within 3 months of purchasing his Bosch Nexxt Washer regarding Foul Odors and the Mold Problems in his Machine and Bosch's service representative advised him to run empty bleach cycles with hot water every three months and to use powder detergents for the purpose of trying to reduce the Foul Odors and Mold Problem Demereckis had experienced in his Washing Machine.

21.    Demereckis has followed Bosch's supplemental directions and original maintenance instructions, keeping the Washer's door open between groups of wash

1   cycles, removing the detergent drawer and placing it under running water or placing

2   it in a bleach/water solution, and using powder HE detergent.  Despite these efforts,

3   Demereckis' Washer has transferred foul odors to clothing and other items run

4   through it, and required constant application of extraordinary care and attention.

5   **Defendant**

6   22.   BSH Home Appliances Corporation is a Delaware corporation and

7   maintains its principal place of business at 5551 McFadden Avenue, Huntington

8   Beach, California 92649, where its Washing Machine design team, executive offices,

9   and sales, marketing, finance, logistics, information technology, human resources

10  and customer support departments are located.  When class members of the proposed

11  Nationwide Class call the warranty service telephone number disseminated by

12  Defendant, they speak with BSH Home Appliances Corporation employees located

13  in Irvine, California, who as a pattern and practice deny Class members' warranty

14  claims.

15  23.   BSH Home Appliances Corporation is a wholly-owned subsidiary of

16  BSH Bosch and Siemens Home Appliances Group based in Munich, Germany.

17  Bosch is the third largest manufacturer of "high-end" appliances and sells its

18  products in the United States under the Bosch, Siemens, Thermador and Gaggenau

19  brands.  Bosch & Siemens Washing Machines are manufactured in New Bern, North

20  Carolina.

21  24.   BSH stopped production of its 27" Machines at its New Bern, NC

22  facility at the end of 2011.

23

24                        **JURISDICTION AND VENUE**

25  25.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)

26  because the amount in controversy exceeds $5,000,000, exclusive of interest and

27  costs, and this is a class action in which the members of the proposed Class and

28  Defendant are citizens of different states.

26.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this district and is a resident of this judicial district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims took place within this district.  See attached as Exhibit 1, the declarations from Consumer Representatives Wentworth, Gibson, and Isabella regarding proper venue for this action.

## FACTUAL BACKGROUND

27.   Defendant is in the business of manufacturing, producing, distributing, and/or selling Washing Machines throughout the United States under the brand names Bosch and Siemens.  The Washing Machines sold under both brands are substantially identical, and the Consumer Representatives are informed and believe both brands of the Washing Machines are and were manufactured in the same facilities.

28.   Bosch manufactured, produced, and/or distributed Washing Machines for sale by its network of authorized dealers including several leading retailers in the United States, such as ABT, Best Buy, Lowe's, Pacific Sales, Sears, and other large retail chains.  Bosch and Siemens model Washing Machines are sold at retail for between $600 to over $1500.

## NON-FRAUD ALLEGATIONS REGARDING DEFENDANT'S VIOLATION OF THE UNFAIR PRONG OF THE UCL

29.   The following allegations apply to Plaintiffs' claim that Defendant's conduct violated the unfair prong of the UCL.  These allegations do not sound in fraud, and the requirements for pleading fraud do not apply to Plaintiffs' claim under the unfair prong of the UCL.  Plaintiffs expressly disclaim any allegations that could be construed as sounding in fraud as applied to this claim, and those allegations expressly are not incorporated by reference in this section of complaint.  Furthermore, the conduct complained of that gives rise to Plaintiffs' unfair-prong

9

claim is separate and apart from the course of conduct giving rise to Plaintiffs' claims under the fraudulent prong of the UCL, as well as the CLRA and FAL.

30.   Defendant's unfair conduct in violation of the unfair prong of the UCL is Defendant's sale of Washing Machines that develop Mold Problems, even during the warranty period.

31.   Plaintiffs reasonably expected the Washing Machines to operate without Mold Problems.   This was a material consideration in Plaintiffs' purchasing decisions.  Simply put, Plaintiffs would not have purchased Washing Machines that have Mold Problems and certainly would not have paid the amounts that they paid for Machines that have Mold Problems.  Plaintiffs did not receive the product that they bargained for, namely a Washing Machine that does not develop Mold. Washing Machines with Mold Problems are not worth as much as Washing Machines without Mold Problems.

32.   Plaintiffs also expected that the Washing Machines, which are front load washers, are more efficient than top loading machines, which is supposed to justify their significantly higher price.  In fact, as further alleged herein, consumers must regularly run extra hot-water cleaning cycles on the Machines when they are empty in an attempt to remedy the Mold Problems, thereby negating any purported water and energy efficiencies that they expected from the purported superior design and efficiency of front-load washing machines.

33.   The presence of mold and mildew in the Machines also poses a threat to Plaintiffs' safety and to the safety of others which results in further economic loss from the time that Plaintiffs purchased their Machines.  (Plaintiffs' standing is not predicated on a threat of future harm but on actual economic loss resulting from purchasing the Machines.  Further, Plaintiffs herein are not asserting claims for personal injury, only economic injury resulting from overpaying for unsafe machines.   Inhaling and touching mold can cause allergic reactions, including sneezing and skin rash.  Allergic reactions to mold are common.  Mold exposure can

also irritate the eyes, skin, nose, throat and lungs.  Severe sufferers may endure shortness of breath, tightening of the throat and even respiratory distress.  Mold can also cause other problems such as severe memory impairment, irritable bowel syndrome and chronic fatigue.  Plaintiffs paid for safe, Mold-free Washing Machines, but instead received unsafe, Mold-forming Washing Machines.  The overpayment for the unsafe Machines constitutes further economic loss.

34.   Consumer complaints and Defendants' own documents confirm the existence of Mold Problems with the Machines as alleged below and attached to this Complaint.  Defendants' conduct satisfies the prerequisites for unfair conduct under the UCL in that Defendant's practice offends an established public policy and/or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.   Further, consumers' injuries are substantial; the injury is not outweighed by any countervailing benefits to consumers or competition; and consumers' injury is an injury that consumers themselves could not reasonably have avoided.  Defendants' conduct also significantly threatens or harms competition.

35.   The injury to consumers is substantial, particularly because the Machines are defective at the time of sale and developed Mold Problems even during the warranty period.   Plaintiffs paid hundreds of dollars for Washing Machines that they would not otherwise have spent for washing machines that have Mold Problems.   Moreover, the presence of Mold Problems defeated the primary purpose of the Washing Machines, which is to remove stains, odors and bacteria.

36.   The injury to consumers is not outweighed by any countervailing benefits to consumers or competition.  Furthermore, any purported efficiency benefit of Bosch's front-load design is not realized by consumers as they paid hundreds of dollars more for the Washers than top-loaders at the outset, and then were forced to pay to regularly run their Machines empty (as often as once per week) with the additional cost of specialized cleaning agents (as much as $3-4 per cycle when using Affresh).  Even if higher efficiency were achieved, consumers should not have to

11

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT

Case No. SACV10-711 CJC (ANx)

224098

endure Mold Problems as a trade-off for purported energy and water efficiencies. Any purported benefits to consumers from the design of the Machines is negated by the propensity of the Machines to develop Mold Problems and the Extraordinary Actions required of consumers.

37. The injury to consumers is not an injury that consumers themselves could not reasonably have avoided because consumers did not know about the Mold Problems before they bought the Machines. Further, Defendants' recommended Extraordinary Actions are ineffective and result in additional operating expenses such as higher energy and water bills, as well as the cost of specialized cleaning agents. Moreover, the source and situs of the Mold Problems (as alleged herein) are in parts of the Machine that are not reasonably accessible to consumers.

38. Defendant's conduct also is immoral, unethical, oppressive and/or unscrupulous given the evidence above that confirms the existence of Mold Problems in the Washing Machines. In addition, it is unethical and oppressive to charge a premium price for a product that fails of its essential purpose of washing Clothes without the Machines developing Mold. Further, as alleged in detail below, Defendant actually knew about the existence of Mold Problems with the Machines, which renders Defendant's conduct particularly immoral, unethical, oppressive and unscrupulous.

39. Defendant's conduct also offends established public policies concerning consumer protection and class action litigation. The California Supreme Court has found that "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." *Vasquez v. Super. Ct*., 4 Cal. 3d 800, 808 (1971). Moreover, the public policy at the very core of the class action mechanism is to overcome the problem that relatively small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively small potential recoveries into something worth someone's time and labor.

*Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). California also has established a public policy against allowing manufacturers to escape liability for placing defective consumer products in the stream of commerce by imposing liability on them, and subjecting them to penalties, under the implied warranty of merchantability by operation of law under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq*.

40.    Defendant's conduct also significantly threatens or harms competition. But for Bosch's consumption of market share through the sale of defective Washing Machines, other manufacturers of non-defective washing machines could enter the market and increase consumer choice or otherwise benefit the consumer marketplace by occupying a meaningful share of the market and being able to allocate greater resources to research and development of better washing machines. Furthermore, the sale of inefficient and defective Washing Machines that grow mold diminishes the good will and reputation of the entire front-load washing machine market, and drives consumers away from a market segment that could otherwise provide water and energy savings for consumers, as well as municipalities. This is evidenced by the entry of high-efficiency top loaders into the market in recent years by manufacturers other than Bosch. Still more, by using Defective Parts, Bosch is able to sell its Washing Machines at the lower end of the premium segment, thereby taking business away from manufactures of washing machines who have opted not to build defective washing machines.

## BOSCH'S OMISSIONS OF MATERIAL FACTS AT THE POINT OF SALE ON LABELS ON THE WASHING MACHINES IN RETAIL STORES WHERE THE MACHINES ARE SOLD

41.    Bosch fails to disclose to Plaintiffs, at the time of purchase, the material facts that: 1) the Washing Machines' have defective parts and have been assembled into a defective machine that has and have a high propensity to accumulate Biofilm and develop Foul Odors and the Mold Problem, 2) the need for Extraordinary

13

Actions (defined below); and 3) the inevitable incurring of Undisclosed Additional Operating Expenses (defined below).

42.   Consumer Representatives now plead their material omission claims with the requisite particularity to satisfy Rule 9(b) and incorporate all other paragraphs by reference hereto.   Plaintiffs expressly disclaim any claims for affirmative misrepresentations and seek relief only for Bosch's omissions of material fact, some of which are based on partial disclosures as explained below.

### WHO:

43.   BSH Home Appliances Corporation is the entity that fails to disclose Material Fact (defined below) at the point of purchase to Plaintiffs.

### WHAT:

44.   Bosch fails to disclose Material Facts (defined below) at the time of purchase.   Bosch fails to disclose that the Washing Machines each have the Defective Parts, as defined herein, and that even if consumers operate the Washing Machines as instructed by Bosch the Defective Parts will cause Biofilm, the Foul Odors and the Mold Problem to develop and be present in each Washing Machine due to the Defective Parts in the Washing Machines.   Bosch fails to disclose, at any time prior to the consumers purchase of the machine, that it requires consumers to periodically run extra bleach or vinegar and hot water cleaning cycles, wipe-down the clothes basket and door bellows after each wash, and/or leave the door "ajar" between washes (collectively hereinafter referred to as the "Extraordinary Actions") in order to combat the development and accumulation of Biofilm, Mold Problem and Foul Odors.   The Extraordinary Actions require Washing Machine owners to pay for the additional energy, water, and bleach (or other cleaning agents such as Affresh or Tide Washing Machine Cleaner) needed to regularly run hot-water cycles in an attempt to redress the effects of the Defects in the Washing Machines (the additional

cost for energy, water and bleach or other cleaning agents, to perform the Extraordinary Actions is hereafter referred to as the "Undisclosed Additional Operating Expenses").  Bosch labels the Washing Machines as "High Efficiency" on the Machines (See Figures 2, 6, 8, 9, 12 and 13) and "Energy Star" **1** compliant on stickers or placards it places on or in the Washing Machines, but does not disclose the fact that the Washing Machines require the Extraordinary Actions and Undisclosed Additional Operating Expenses that render the Washing Machines inefficient.

45.   As to Bosch Sanitary Models (defined below) and Siemens ultraSense models, Bosch makes partial representations through the label "XXTRA SANITARY" (See Figures 1, 5, 12 and 14), and "Sanitary 170," but fails to disclose that the Machines are defective and cannot sanitize Clothes or the Machines themselves. (The facts in paragraphs 47-48 of this Complaint are collectively hereinafter referred to as the "Material Facts").

**WHEN**:

46.   Plaintiffs relied on Bosch's omissions of Material Fact at the point of sale. **Consumer Representative Gibson:** At the time of deciding to purchase a Washing Machine from US-Appliance.com, on January 7, 2009, Ms. Gibson researched, observed and examined the Washer online.  She logged on to US-Appliance.com and viewed the landing page for the Bosch Nexxt 800 model (see Ex. 2).  Through the US-Appliance.com Bosch Nexxt 800 landing page she clicked on the hyperlink "Performance Details and Photos" (See Ex. 2).  The "Performance Details and Photos" hyperlink directed her web browser to the Bosch Nexxt 800 features       website       landing       page       at       the       URL       www.bosch-

---

[1] ENERGY STAR is a voluntary labeling program designed to identify and promote energy-efficient products through a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy.  Bosch tests its own Washing Machines and submits its tests results to the U.S. Department of Energy who then applies a standard formula to calculate the energy rating.  The tests performed by Bosch do not take into account the empty-hot water and bleach cycles that Bosch recommends Class members run to avoid or remedy the Mold Problem.

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
Case No. SACV10-711 CJC (ANx)
224098

home.com/us?product_id=848&Page_Header=Bosch%20%20Key%20Features&hty
pe=2 (see e.g. Ex. 3).

47.    On the Bosch landing page on bosch-home.com she observed and read
the <u>partial representations</u> "XXTRASANITARY – NSF Certified Eliminates 99.9%
of Bacteria," "NSF Certified – Eliminates 99.9% of Bacteria," "Exceeds Energy Star
2011 Guidelines – Uses only 151 KWh/yr.," "Bosch Washers Exceed Federal
Energy Standards by up to 102%."  Through the Bosch Nexxt 800 landing page on
bosch-home.com she was able to view the Washer through interactive features she
read words and labels on the Machines.  Ms. Gibson used this feature to observe the
labels "High Efficiency," "High Care," and "XXTRA SANITARY."

48.    Nowhere on the bosch-home.com website or on the Washer did Bosch
disclose that the washer had a high propensity to develop the Mold Problem, Foul
Odors, Biofilm, or that it required Extraordinary Actions (defined below) that would
cause her to incur Undisclosed Additional Operating Expenses.

49. The following Figures depict the labels Ms. Gibson observed at the time of purchasing her Washing Machine:

**Figure 1: Right Side of Consol/Control Panel**



**Figure 2: Left Side of Consol/Control Panel**



1

**Figure 3: Right Side of the Consol/Control Panel**



**Figure 4: Warning Labels on Door Frame**



PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT

Case No. SACV10-711 CJC (ANx)

224098

50.   **Consumer Representative Isabella**.   Ms. Isabella observed and examined a Washer at Showcase Furniture on September 19, 2007 at which time she specifically observed and read labels on the Washer including "High Efficiency," "High Care" the warning labels, as well as the recommendation to use "High Efficiency Detergent."  Nowhere on the Washing Machine did Bosch disclose that the washer had a high propensity to develop the Mold Problem, Foul Odors, Biofilm, or that it required Extraordinary Actions that would cause her to incur Undisclosed Additional Operating Expenses.

51.   The following Figures depict the labels Ms. Isabella observed at the time of purchasing her Washing Machine:

**Figure 5: Right Side of Control Panel**



PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
Case No. SACV10-711 CJC (ANx)

224098

1

2     **Figure 6: Dispenser Lid/Left Side of Consol/Control Panel**

3

4     

5

6

7

8

9

10

11

12

13

14

15

16    **Figure 7: Warning Labels on Door Frame**

17

18    

19

20

21

22

23

24

25

26

27

28

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
Case No. SACV10-711 CJC (ANx)

224098

52.   **Consumer Representative Demereckis**.  Mr. Demereckis observed and examined a Washer at Grant's in Orland Park, IL on or about May 22, 2009, including opening the door, as well as the detergent dispenser lid.  While at Grant's for the purpose of shopping for a new washer and dryer, Mr. Demereckis observed and read labels on the Washer itself, including the phrase "High Efficiency," the Woolite label, the recommendation to use "High Efficiency Detergent," as well as a yellow U.S. Department of Energy "EnergyGuide" label on or in the Machine. Nowhere on the Washing Machine that Mr. Demereckis observed at Grant's did Bosch disclose that the Washer had a high propensity to develop the Mold Problem, Foul Odors, Biofilm, or that it required Extraordinary Actions that would cause him to incur Undisclosed Additional Operating Expenses.

53.   The following Figures depict the labels Mr. Demereckis observed at the time of purchasing her Washing Machine:

**Figure 8: Console Overview**



PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
Case No. SACV10-711 CJC (ANx)

224098

**Figure 9: Dispenser Lid Open**



**Figure 10: Labels on Door Frame**

**Figure 11: Control Panel**



54. **Consumer Representative Wentworth**. Ms. Wentworth observed and examined a Washer at Pacific Sales on February 20, 2008 at which time she specifically observed labels on the Washer including "High Efficiency," "High Care" the warning labels, as well as the recommendation to use "High Efficiency Detergent." Nowhere on the Washer did Bosch disclose that the washer had a high propensity to develop the Mold Problem, Foul Odors, Biofilm, or that it required Extraordinary Actions (defined below) that would cause her to incur Undisclosed Additional Operating Expenses.

55.    The Following figures depict the labels Consumer Representative Wentworth observed when deciding to purchase her Washing Machine:

**Figure 12: Console/Control Panel Overview**



PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
Case No. SACV10-711 CJC (ANx)

224098

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Figure 13: Detergent Dispenser Lid on Left Side of Control Panel**



**Figure 14: Right Side of Control Panel**



25
PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT

**Figure 15:  Underside of Detergent Dispenser Lid**

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
Case No. SACV10-711 CJC (ANx)

224098

**Figure 16:  Warning Labels on Door Frame**



**WHERE**:

56.    Defendant omits the Material Facts on labels located on the Washing Machines themselves in retail stores where the Washing Machines are sold as specifically alleged herein for Consumer Representatives Gibson, Isabella, Demereckis and Wentworth in the immediately preceding paragraph.  Bosch also omits the Material Facts on its website bosch-home.com as alleged herein for Consumer Representative Gibson.

**WHY and HOW:**

57.    All the Material Facts are material because a reasonable consumer would consider them important when deciding whether to buy a Washing Machine.  Had

Bosch disclosed the Material Facts, Consumer Representatives Gibson, Isabella, Demereckis and Wentworth would have acted differently by not buying the Machines or not paying as much for the Machines.  Each one of Bosch's omissions of Material Fact are materially false and misleading:

58.  **Omission of the Defective Parts**: the omission of the material fact that the Machines contain Defective Parts is false and misleading because noticeable and/or sufficient levels of bacteria and/or mold and bacteria and mold spores remain in the Clothes and the Washing Machines after use as evidenced by the Biofilm, Foul Odors, and Mold Problem that develop and accumulate in the Washing Machines and impregnate the Clothes washed in them and laboratory testing of swab samples taken from the Wentworth and Demereckis Machines.   Attached as Exhibit 4, are testing results of swab samples taken from the Wentworth and Demereckis Machines which demonstrate fungal growth in both Machines.  Had Bosch not concealed the Defective Parts and their deleterious effects, Plaintiffs would not have purchased the Washing Machines.  Bosch had a duty to disclose the Defective Parts and their expected deleterious and effects because it was in exclusive possession of the knowledge regarding the existence of the Defective Parts and their deleterious effects and made incomplete representations of the Washing Machine's performance through labels such as "Xxtra Sanitary" while concealing the Defective Parts and the Biofilm, Mold Problem and Foul Odors that result from them.  Bosch also had a duty to disclose the Defective Parts because it knew that they cause the Mold Problem which is material information directly related to safety and health as alleged herein. **Extraordinary Actions, Undisclosed Additional Operating Expenses, "High Efficiency," and "Energy Star" Omissions:** The partial representations of "High Efficiency" and Energy Star gave rise to a duty to disclose the need for Extraordinary Actions and resulting Undisclosed Additional Operating Expenses (defined below), material facts that Bosch suppressed.   The "High Efficiency" and "Energy Star" representations were known to be false by Bosch

when they were made because Bosch recommends to consumers only after the point of purchase the material fact that they must regularly run extra empty hot-water cycles in an attempt to ameliorate the Biofilm, Foul Odors, and the Mold Problem in the Washing Machines.  The omission of this information is false and misleading because when Washing Machine owners run the extra hot-water cycles, they lose the water and electricity savings that Bosch represented were the benefits and characteristics of owning its Energy Star-compliant Washing Machines.  Bosch concealed its knowledge that consumers must regularly run extra empty hot-water cleaning cycles for its Washing Machines to operate as Bosch intends, which cause them to be inefficient.  Bosch was also required to disclose the Extraordinary Action of leaving the door "ajar" between washes as it relates directly to safety of the Washing Machines as more fully alleged below.

59.   Plaintiffs purchased the "Energy Star" Washing Machines on the basis that they would save water and energy.  In reality, at the recommendation of Bosch and independently, Class members have to perform Extraordinary Actions and incur Undisclosed Additional Operating Expenses to combat the Mold Problem, foul Odors, and/or Biofilm, contrary to Bosch's express representations that the Washing Machines would lead to water and energy savings.

60.   **XXTRA SANITARY.**  Bosch makes the partial representation that the Machine is capable of sanitizing Clothes, but does not disclose that the Machines have Defective Parts that cause the Mold Problem and impregnate Clothes with mold, mildew, and Foul Odors even when the XXTRA SANITARY cycle is used on a regular basis.  A reasonable consumer would not knowingly purchase an appliance designed to clean Clothes that actually makes Clothes smell like mold and mildew.

61.   Defendant was obliged to disclose the Material Facts because: 1) Defendant had exclusive knowledge of the Material Facts not known to Plaintiffs and the Class, since only Defendant had exclusive access to the aggregate data from its retailers, its own tests, and complaints from its customers; 2) Defendant actively

concealed and suppressed the Material Facts from Plaintiffs by knowing and not warning of the Defective Parts and their effects at the time of purchase and by performing warranty and/or repair work that it knew would not cure the Defective Parts or stop their effects, all of which was unknown to Plaintiffs, and by recommending remedies to complaining consumers that it knew would not cure the Defective Parts or resulting problems thereby causing damages; and/or 3) Defendant made partial representations through labels on its machines such as Energy Star, High Care, High Efficiency, and Xxtra Sanitary and Sanitary 170.  As a result of Bosch's concealment of the Extraordinary Actions and the resulting Undisclosed Additional Operating Expenses, Washing Machine owners were not provided material information, known by Bosch, before they decided which brand of washing machine to buy.  The Washing Machines are worth less than the price Plaintiffs paid for them, as ownership and operation of the Washing Machines will cost more and/or require more maintenance than the ownership and operation of comparable non-defective washing machines, the Machines fails to achieve their primary purpose of cleaning Clothes, and the value of the Washing Machines is diminished.

## BREACH OF IMPLIED WARRANTIES

62.   As part of the sale of each Washing Machine, Defendant warranted that the defective Machines were of merchantable quality fit for the ordinary purpose for which washing machines are used, *i.e.*, to clean Clothes, make them smell appealing, and clean the Washing Machines themselves.   In fact, the Machines are not merchantable because they have the Defective Parts; whose presence in the Machines causes them to develop Biofilm, Foul Odors, the Mold Problem, and damages and devalues the Clothes that go through wash cycles in the Washing Machines.

**BOSCH'S POST-SALE RECOMMENDED CARE DIRECTIONS ACCELERATE THE BREAK-DOWN OF THE MACHINES AND THE REPAIRS IT MADE TO THE MACHINES DID NOT REMOVE THE DEFECTIVE PARTS.**

63.    Among the Extraordinary Actions that Bosch recommends its customers perform is wiping dry the door gasket after every wash and/or using a water and bleach mixture for the purpose of removing Biofilm and bioorganic material that develop on and in the rubber door gasket material.  However these recommendations accelerate the deterioration of the door gasket by removing a lubricant that is on the door gasket.  Deteriorated rubber door gaskets result in inadequate sealing of the door; this, in turn results in consumers having to pay additional money to replace door gaskets more frequently than they would if they did not have to wipe them, as directed by Bosch, with bleach mixtures to mitigate the Biofilm, Foul Odors and Mold Problem.

64.    As explained above, Bosch also recommends that complaining Class members run empty cycles of bleach and hot water to try to rid their Machines of Biofilm, Foul Odors, and the Mold Problem.  However, hot water and/or bleach may only kill bacteria and mold with which they come in contact, and will not kill all mold and/or bacteria spores.  Because mold and bacteria establish themselves and survive in parts of the Washing Machines that do not come into contact with water, or in contact with insufficient quantities of hot bleach water, to kill the Biofilm, mold, bacteria and other organic material that has taken root in the Machines as a result of the Defective Parts (but receive moisture from the humid air or condensation inside the Washing Machines), and the spores of some or all of these common household organisms are very resistant to bleach and hot water, the Foul Odors and Mold Problem cannot be eliminated by Machine Owners operating their Machines by running empty cycles of bleach and hot water.

65.    Bosch recommends to Plaintiffs that they leave the Washing Machine door ajar between washes to reduce the incidence and affects of Biofilm and the

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
Case No. SACV10-711 CJC (ANx)

224098

Mold Problem.   Not only does this recommendation not remove or repair the Defective Parts, it does not solve or prevent Biofilm, Foul Odors and the Mold Problem and exposes children and pets to injury.   Indeed, the Consumer Product Safety Commission is investigating the death of a 4 year-old girl who climbed into a front load machine that her younger brother turned on.   In addition, LG, another manufacturer of front load washing machines, has recalled certain of its front load models in Korea to adjust the door lock so that the washer door can be opened from the inside following the death of a 7 year-old boy who suffocated inside an LG washer.

66.   Bosch was in exclusive possession of information about the Defective Parts; that the Defective Parts would cause Biofilm, the Foul Odors, the Mold Problem, and the Undisclosed Additional Operating Expenses that Class Members would expend; all of which were material to Plaintiffs' decisions to buy the Washing Machines.   Bosch had a duty, under the circumstances, to disclose the Defective Parts, Biofilm, the Foul Odors, the Mold Problem and the Undisclosed Additional Operating Expenses to Plaintiffs prior to completing their purchases.   Nevertheless, Bosch has failed and refused to warn its customers, prior to the completion of their purchase, of the serious Defective Parts in the Washing Machines, or to warn them about Biofilm, the Foul Odors, the Mold Problem and Undisclosed Additional Operating Expenses they will incur and pay for as a result of the Defective Parts. Instead, Bosch has kept silent while uninformed consumers purchased and continue to purchase the defective Washing Machines.

67.   Bosch has also refused, and continues to refuse, to modify the Defective Parts, or how the Machines' parts are uniformly assembled into a working integrated product, so that the Machines do not produce Biofilm, the Foul Odors and the Mold Problem and cause their owners to pay for the Undisclosed Additional Operating Expenses.   Bosch could cure the Mold Problem by not using defectively manufactured parts, which do not achieve Bosch's intent of their design, which is to

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT

result in the elimination and removal of all dirty wash water after a wash cycle is completed and reducing the moisture level in the Machines, after completion of a wash cycle, such that the assembled and integrated parts of the Machine do not develop Biofilm, the Foul Odors and the Mold Problem or cause their owners to pay for the Undisclosed Additional Operating Expenses.  In light of Bosch's knowledge of the serious results caused by continuing to assemble Washing Machines with the Defective Parts Bosch knew, or should have known, when it sold Washing Machines to consumers that they had a value that was substantially less than the Bosch recommended retail purchase price and substantially less than the price range at which Bosch was informed or believed third parties would sell their Machines.

68.   The presence of the Defective Parts substantially reduce the Washing Machines' value, in that: a) Bosch sold the Washing Machines without the intent to sell them as advertised; b) the Washing Machines do not have uses, benefits and characteristics Bosch represented they had, including the most basic use, benefit and characteristic; e.g. that the Washing Machines would clean Clothes placed in them during a wash cycle and would produce clean Clothes that did not smell offensive, noxious or foul; and c) the Washing Machines are not of the standard, quality or grade Bosch represented.

69.   Further, Plaintiffs also reasonably expected that the Washing Machines would not require extensive and expensive repairs so as to eliminate and cease the recurrence of Biofilm, the Mold Problem and Foul Odors as a result of the inclusion of Defective Parts into the assembled Machines, which fact was known to Bosch before and at the time the Washing Machines were sold to Plaintiffs.  If Bosch had not misrepresented and concealed material information regarding the presence of Defective Parts incorporated into the Washing Machines, Plaintiffs would not have purchased the Washing Machines at premium prices on the terms offered.  As such, Defendant's acts and practices are separately and discretely each of the following: unfair, unlawful, fraudulent, and deceptive.

70.    Bosch also has profited, either directly or indirectly, by concealing the inclusion of the Defective Parts into the completed and assembled Washing Machines because Bosch has been able to convince a large number of consumers to purchase the Washing Machines, and to pay Bosch directly for repair services and replacement parts (from which Bosch earns a profit), such as new door gaskets, to try to address the effects of the incorporation of the Defective Parts; which include Biofilm accumulation, the presence of Foul Odors, the Mold Problem and paying Undisclosed Additional Operating Expenses *even though Bosch has no cost-effective way to remove and replace the Defective Parts*, and knows that replacement parts it offers the Class do not remove all of the Defective Parts and therefore even after repair by Bosch, the Machines continue to produce additional Biofilm, the Mold Problem, Foul Odors and unclean and offensive smelling Clothes.

71.    Woolite is a fabric softener, which Bosch recommended be used. See e.g. a Woolite label shown on Figure 17 below on Consumer Representative Nancy Wentworth's Bosch Nexxt DLX Washing Machine.  However, after the Machines were sold, Bosch states that using fabric softeners in the Machines causes the development of Biofilm, the Mold Problem, Foul Odor and Clothes present in the Machine during a wash cycle to emit noxious and offensive odors.

**Figure 17:  Woolite Label on Bosch Nexxt DLX Washing Machine**



**Bosch's Reckless Disregard of the Defective Parts and Mold Problem**

72.   Bosch is aware that it incorporated Defective Parts into the assembled Washing Machines it sold to the Class Members, and that the Defective Parts cause the accumulation of Biofilm and the development of Foul Odors and the Mold Problem, and Class Members to pay Undisclosed Additional Operating Expenses, and has been aware of this information since 2004.

73.   The Consumer Representatives and many Class members have alerted Defendant to the presence of Biofilm, Foul Odors, and the Mold Problem by complaining to Defendant directly and/or to Defendant's authorized retailers and service representatives and/or through the Bosch or Siemens internet web sites.

74.   Furthermore, the Internet is replete with references and complaints regarding the Washing Machines that confirm that a) Class Members have the

35

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT

Case No. SACV10-711 CJC (ANx)

224098

Defective Parts in their Machines and that b) the Defective Parts cause the development and presence of Biofilm, the Mold Problem, Foul Odors. Representative relevant excerpts from a sampling of these complaints are set forth below:

| Source | Comments |
|---|---|
| fixya.com<br><br>**Nov 24, 2008**<br><br>http://www.fixya.com/support/t1288980-bosch_nexxt_series_washing_machine_front<br><br>(last accessed 3/31/2010) | **Our front loading washer has a terrible mold issue in the front gasket.** The water doesn't drain completely from the gasket area (the holes are roughly 3/4" above the bottom of the inside front of the gasket) and after each wash I wipe dry the remaining water. I cannot even close the door between washings, it must be left ajar. We were away for a week and my husband had closed the door...needless to say the gasket was covered in mold! Disgusting! **I even have to wipe it down with bleach periodically and that does not even remove all the mold.** I have read on another website other individuals with this problem, but no remedy. Have had the techs from the installer out and they do not know what to do to solve this. Ongoing problem for 2 years and I am sick of it. Please help. Have spoken to Bosch reps who say they have not heard of this problem, just referenced me to another repair company. |
| consumeraffairs.com<br><br>**November 24, 2009**<br><br>http://www.consumeraffairs.com/homeowners/bosch_p4.html<br><br>(last accessed<br><br>3/31/2010) | We bought a new Bosch front loading washing machine in 2005 and have problems with it since the beginning. **I have had a mold build up in the machine and front window and now everything smells like mold.** |
| Epinions.com<br><br>**Nov 22 2007**<br><br>http://www0.epinions.com/review/pr-Siemens_ultraSenseT | I Have a Siemens washer model WFXD5200. I have had this washer for about 2 years. **I have had a problem trying to keep the mold from growing on the door seal.** The washer holds water in the door gasket. This water will sit in the door seal and give the mold a place to grow. **The mold will create an unpleasant smell that can affect the scent of your clean laundry if left in the machine when washing is** |

| | |
|---|---|
| 3_7_Cu_Ft_15_Program_Super_Capacity_Washer_White_WFXD5200UC/content_408310615684<br><br>**(last accessed<br><br>3/31/2010)** | **finished.** I have tried to dry the water in the seal and also leave the door open to let door area air dry. I have been unable to resolve this problem and am not pleased with this washing machine. I will be contacting the manufacturer to see what they will do to remedy this problem. I would like to know if this is common with other buyers and if a solution was offered by the company. I have tried to go to the web site and talk to customer service to see if any solution was available but the web site is not available. **I paid around $1,000 dollars for this machine and feel like this mold problem is a factory defect in the door seal.** |
| consumeraffairs.com<br><br>**March 27, 2010**<br><br>http://www.consumeraffairs.com/homeowners/bosch.html<br><br>**(last accessed<br><br>3/31/2010)** | We purchased a Bosch Next 700 front loading washing machine. **We have had to replace gasket after gasket. All tear at same place. Now we have mold.** Why is no one doing anything about these poorly constructed washers? Water leakage causing mold. Water danger near electric circuits etc... |

75.     As a result of the flurry of consumer complaints regarding the Defective Parts that Defendant would not repair or remove and replace, and as a testament to the widespread nature of the problem, several entrepreneurs created and marketed products designed to treat, eliminate and/or minimize the Foul Odors and Mold Problems caused by the Washing Machines' Defective Parts.   These products include SmellyWasher, NuFreshNow, Tide Washing Machine Cleaner, and Affresh. Due to the widespread and intractable nature of the Foul Odors and the Mold Problem once they have manifested, these entrepreneurs have sold tens of thousands, if not millions, of their products to consumers.  None of these products fix or replace the Defective Parts that cause Biofilm, the Foul Odors, the Mold Problem and Machine owners to pay the Undisclosed Additional Operating Expenses.  Indeed,

these products are but one of the Undisclosed Additional Operating Expense Class Members pay.

76.   Defendant failed to adequately inspect, prototype, and test the Defective Parts before including them in the assembled Washing Machines.

77.   Before Defendant began selling the Washing Machines in the United States, Defendant knew, or was reckless in not knowing, that: (a) the Defective Parts were defective; (b) the assembled Machines, which incorporated the Defective Parts and operating controls were, as an assembled and integrated product, defective; (c) the assembled and integrated Machines were defective in the workmanship and manner in which they were incorporated into an integrated finished product; and (d) they were not of merchantable quality or fit for their ordinary purpose.

78.   Plaintiffs are informed and believe Defendant's employees, officers and agents, knew, discussed and acknowledged to each other that the Biofilm, Foul Odors, and the Mold Problem resulted from, inter alia, the inclusion  Defective Parts into the Washing Machines and the incorporation and assembly of the Defective Parts and operation controls into the a finished integrated washing machine.

79.   Despite having repeated notice that there were Defective Parts in its Washing Machines that the presence of Defective Parts in the Washing Machines causes the accumulation of Biofilm, the Foul Odor and the Mold Problem, and that the reasonable expectations of consumers, created by Defendant's marketing of its Washing Machines is that the Machines would not develop Biofilm, the Foul Odor or the Mold Problem or would require Extraordinary Actions or Undisclosed Additional Operating Expenses, Defendant has engaged and continues to engage in the following routine, albeit, wrongful course of conduct, where Defendant:

a)   Sells Washing Machines that have the Mold Problem in the premium segment of the washing machine market;

b)   Designs parts, and integrated and assembled finished Washing Machines, which it in turns sells which have Defective Parts that cause Biofilm, the

38

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT

Case No. SACV10-711 CJC (ANx)

Foul Odors and the Mold Problem and require Machine owners to pay Undisclosed Additional Operating Expenses;

c)     Fails to disclose that the Washing Machines have the Defective Parts within them that cause Biofilm, the Foul Odors and the Mold Problem and require Machine owners to pay Undisclosed Additional Operating Expenses;

d)     Continues to represent the Washing Machines as "High Efficiency" and "High Care" without disclosing material facts, such as that Machine owners will have to take Extraordinary Actions and pay Undisclosed Additional Operating Expenses.

e)     Continues to represent expressly or by necessary implication that the Washing Machines that Plaintiffs purchased were dependable, cost effective, and would provide outstanding cleaning and performance as washing machines when it knew that these statements were false;

f)     Continues to manufacture, market, advertise, distribute, and sell the Washing Machines to consumers when it knew or should have known the Machines were not dependable and would not withstand normal operation;

g)     Fails to disclose to Plaintiffs the substantial risk of Washing Machine failure;

h)     Fails to disclose the Defective Parts or the defective workmanship that results in an integrated defective finished product;

i)     Fails to disclose that many Washing Machine owners reported to Bosch that when using the Machine as it directed, their Machines developed Biofilm, the Foul Odors, and the Mold Problem (or that it's attempts to stop the presence of Biofilm, the Mold Problem or Foul Odors did not include replacing all of the Defective Parts; and therefore its repair efforts were unsuccessful and futile);

j)     Fails to implement a recall or repair program to adequately announce to Plaintiffs the presence of the Defective Parts, that the Machines have a high propensity to develop Biofilm, the Foul Odors and the Mold Problem and that

39

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT

224098

Machine owners will have to pay Undisclosed Additional Operating Costs caused by the Defective Parts and defective Machines and fails to provide, without charge to Plaintiffs, an effective solution to a) repair the Defective Parts, b) replace the Defective Parts with non-defective parts or c) stop the Machines from developing Biofilm, the Mold Problem or Foul Odors;

        k)    Fails to take action to correct its concealment of material information or false or misleading implied or express representations about the use, benefits, characteristics, standard, quality, grade and performance of its Washing Machines; and

        l)    Fails to disclose that despite following its recommended actions for the operation of the Washing Machines found within the Defendant's "Operating Instruction" manual, the Washing Machines will develop Biofilm, the Foul Odors, the Mold Problem and Plaintiffs will pay Undisclosed Additional Operating Expenses.

    80.   As a result of Defendant's deceptive conduct and concealment of material information about its Washing Machines, as well as Defendant's other acts and omissions described in this Complaint, Defendant has caused Plaintiffs to suffer injury as a result of the Defective Parts it incorporated into the assembled and finished Washing Machines, including, but not limited to:

        a)    Plaintiffs overpaid for a defective product;

        b)    The value of Plaintiffs' Machines is less than it would have been, if the Washing Machines did not have the Defective Parts; and

        c)    Plaintiffs unknowingly spent money for futile repair attempts of their Washing Machines, and other purported remedies, which money they would not have spent but for the presence of the Defective Parts, Defendant's concealment of material information about the Washing Machines and the efficacy of the Extraordinary Actions.

81.   If Plaintiffs had known that their Washing Machines had Defective Parts, that would cause the Washing Machines to develop Biofilm, the Mold Problem and, Foul Odors and require them to pay Undisclosed Additional Operating Expenses, they would not have paid the significant sums of money that they paid for the Washing Machines.

## CLASS ACTION ALLEGATIONS

82.   Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

83.   The class which the Consumer Representatives seek to represent are defined as follows:

> A class consisting of all original purchasers who are "consumers" within the meaning of Cal. Civ. Code § 1761(d) residing in the United States who purchased, not for resale, a Bosch or Siemens 27" Horizontal Axis/Front-Loading Automatic Clothes Washers, including, but not limited to, Bosch Nexxt and Vision, and Siemens ultraSense models (the "Nationwide Class").

84.   In addition to, and in the alternative to the claims asserted on behalf of the Nationwide Class, Consumer Representative Wentworth also brings this action on behalf of a subclass consisting of all original purchasers who are "consumers" within the meaning of Cal. Civ. Code § 1761(d) who purchased, not for resale, a Bosch or Siemens 27" Horizontal Axis/Front-Loading Automatic Clothes Washers, including, but not limited to, Bosch Nexxt and Vision, and Siemens ultraSense models (the "California Subclass").

85.   In addition to, and in the alternative to the claims asserted on behalf of the Nationwide Class, Consumer Representative Demereckis also brings this action

41

on behalf of a subclass consisting of all original purchasers who purchased, not for resale, a Bosch or Siemens 27" Horizontal Axis/Front-Loading Automatic Clothes Washers, including, but not limited to, Bosch Nexxt and Vision and Siemens ultraSense models (the "Illinois Subclass").

86.   In addition to, and in the alternative to the claims asserted on behalf of the Nationwide Class, Consumer Representative Gibson also brings this action on behalf of a subclass consisting of all original purchases who purchased, not for resale, a Bosch or Siemens 27" Horizontal Axis/Front-Loading Automatic Clothes Washers, including, but not limited to, Bosch Nexxt and Vision, and Siemens ultraSense models (the "Maryland Subclass").

87.   In addition to, and in the alternative to the claims asserted on behalf of the Nationwide Class, Consumer Representative Isabella also brings this action on behalf of a subclass consisting of all original purchasers who purchased, not for resale, a Bosch or Siemens 27" Horizontal Axis/Front-Loading Automatic Clothes Washers, including, but not limited to, Bosch Nexxt and Vision, and Siemens ultraSense models (the "New York Subclass").

88.   The California Subclass, Illinois Subclass, Maryland Subclass, and New York Subclass are referred to collectively herein as the "Subclasses."

89.   Excluded from the Nationwide Class, and Subclasses, are (i) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's employees, officers, directors, agents, and representatives and their family members; and (iv) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
Case No. SACV10-711 CJC (ANx)

224098

## CALIFORNIA'S SUBSTANTIVE LAWS APPLY TO THE PROPOSED NATIONWIDE CLASS

90.    California's substantive laws apply to the proposed Nationwide Class, as defined herein, because Plaintiffs properly bring this Complaint in this District.

91.    California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Nationwide Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, Art. IV., § 1, of the U.S. Constitution.   California has significant contacts, or a significant aggregation of contacts, to the claims asserted by each Consumer Representative and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

92.    Defendant's United States headquarters and principal place of business is located in California.  Bosch also owns property and conducts substantial business in California, and therefore California has an interest in regulating Defendant's conduct under its laws.   Defendant's decision to reside in California and avail itself of California's laws renders the application of California law to the claims herein constitutionally permissible.

93.    California is also the location where Nancy Wentworth and a significant number of Class members were injured by virtue of the misconduct alleged herein. Nancy Wentworth resides in California and bought her Washing Machine in California. A substantial number of members of the proposed Nationwide Class also reside in California and bought Bosch Machines in California.

94.    California is also the State from which Defendant's misconduct emanated and from which it disseminated its omissions.  This conduct similarly injured and affected the Consumer Representatives and Class members residing in other states of the United States.  For instance, Defendant's marketing efforts relating to the Washing Machines were created and orchestrated from its headquarters in

California.  More specifically, California has the following significant contacts to the claims of Plaintiffs and Class members:

a)      Defendant's California office serves as the headquarters for its washing machine design team, as well as marketing, sales, and customer support departments in the United States and provides all sales support;

b)      Upon information and belief, all corporate decisions regarding the Washing Machines, and the representations and acts of concealment which are the subject of this lawsuit were directed by, or disseminated from, Bosch representatives working in California or directly reporting to superiors situated in California;

c)      Defendant's employees who were involved in and are knowledgeable about the marketing and advertising of Bosch's Machines, executive offices, and sales, marketing, finance, logistics, information technology, human resources and customer support departments are located in California;

d)      When members of the proposed Nationwide Class call the warranty service telephone number listed on the Warranty, they speak with Defendant's employees located at its Irvine, California headquarters who regularly deny Class members' warranty claims; and

95.    The application of California's laws to the Nationwide Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of the Consumer Representatives and the proposed Nationwide Class, California has a greater interest in applying its laws here than any other interested states, and California's interests would be more impaired if other states' laws were applied instead of California's.

96.    In the alternative, the Court may apply the substantially similar consumer protection laws of the 50 states and the District of Columbia.

97.    This action has been brought and may properly be maintained as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure

because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable:

a) <u>Numerosity</u>.  The Washing Machines were sold and distributed by Defendant throughout the United States.   The Consumer Representatives are informed and believe that the proposed putative Class is made-up of tens of thousands of customers throughout the United States.

b) <u>Common Issues Exist and Predominate</u>.  Common questions of law and fact exist as to all members of the Class and predominate over any questions which affect only individual members of the Class.  The Washing Machines all have the Defective Parts and have universally and uniformly caused the development of Biofilm, the Mold Problem and Foul Odors; as well as caused each Class Member to pay Unexpected Operating Costs; the Washing Machines do not differ in any manner that is relevant to the Consumer Representatives' allegations of Defect Parts, and the damage and harm caused thereby.  The Consumer Representatives allege herein in greater detail that the Machines all have the same Defective Parts and that the finished integrated Washing Machines were defective when their assembly was completed, when they left Defendant's possession and control, and as they now exist and are being used throughout the United States.  There is a well-defined community of interest in the questions of law and fact involved and that affect Plaintiffs who purchased the Washing Machines, and they all suffer from the same Defective Parts and the defective Washing Machine as it was assembled and sold by Defendant. These questions of law and fact predominate over questions that affect only individual class members.

The common questions of law and fact include, without limitation:

(1)   Whether the Washing Machines' Defective Parts are defective;

(2)   Whether the Washing Machines, given that they were assembled with Defective Parts are a defective finished product;

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
224098

1    (3)    Whether Defendant knew and/or recklessly disregarded the

2    fact that the Washing Machines were and are defective;

3    (4)    Whether Defendant concealed, and failed to disclose to the

4    Class, material facts from its labels, communications and disclosures to Plaintiffs

5    regarding the Defect Parts, which are present in all of Defendant's Washing

6    Machines;

7    (5)    Whether Defendant has engaged in unfair methods of

8    competition, unconscionable acts or practices, and unfair or deceptive acts or

9    practices in connection with the sale of the Washing Machines;

10   (6)    Whether Defendant violated California, and in the

11   alternative, Illinois, Maryland, and New York, consumer protection statutes;

12   (7)    Whether Defendant breached the implied warranty of

13   merchantability under NY UCC § 2-314 and the Song-Beverly Act;

14   (8)    Whether, as a result of Defendant's conduct, Plaintiffs

15   have suffered damages; and if so the appropriate amount thereof; and

16   (9)    Whether, as a result of Defendant's misconduct, Plaintiffs

17   are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

18   These questions of law and fact predominate over questions that affect only

19   individual Class members and there is a well-defined community of interest in the

20   questions of law and fact involved and that affect the Class.

21   c)    <u>Typicality</u>.  The Consumer Representatives' claims are typical of the

22   claims of the Class members in that the Consumer Representatives and Class

23   members have Washing Machines with the same Defective Parts and, which share

24   the same defective assembly, workmanship and that are defective as an integrated

25   and assembled finished product.  Defendant repeatedly made the same, if not nearly

26   identical, uniform omissions of material information about the Defective Parts, the

27   Machines' performance and the effects caused by the Defective Parts and the use

28

and ownership of the defective Washing Machines. Therefore the claims of the Consumer Representatives are and will be typical of Class members.

d) The Class is Ascertainable.  The Consumer Representatives have adequately defined the Nationwide Class so the Court will be able to use the definitions to determine class membership.

e) Adequacy.  The Consumer Representatives will fairly and adequately represent the interests of all Class members.  Consumer Representatives have each purchased a Washing Machine and are adequate representatives of the Class as they have no interests which are adverse to the interests of absent Class members.  The Consumer Representatives have retained counsel with substantial experience and success in the prosecution of complex defective product and consumer protection class action litigation.

f) Superiority.  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would necessarily cause.  The disposition of their claims in this case and as part of a single class action lawsuit, rather than thousands of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds of separate lawsuits.  Furthermore, given the extraordinary expenses and burden in conducting the discovery and presentation of evidence about the Defective Parts and the defective condition of the assembled Washing Machines, it is extremely unlikely, and practically impossible for Machine Owners to obtain equitable redress from Defendant, while an important public interest will be served by addressing the matter as a class action.  Moreover, separate prosecution by thousands of individual members of the Class would likely establish inconsistent standards of conduct for the Defendant and result in the impairment of and potential

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
224098

harm to, Class members' rights and the disposition of their interests through actions to which they were not parties.   The Consumer Representatives are informed and believe that a great amount of time and expense will be saved by conducting the discovery and presentation of evidence about the Defective Parts in the Washing Machines in a single class action lawsuit, in contrast to the repeated discovery and presentation of evidence in hundreds of separate lawsuits brought on the common questions presented by the allegations of this complaint.   The Consumer Representatives know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

**Asserted On Behalf Of the Nationwide Class, and Alternatively, On Behalf of a California Subclass**
**(Violations of Cal. Bus. & Prof. Code § 17200 *et seq.*))**

98.   The Consumer Representatives repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

99.   Defendant has engaged in unfair, unlawful, and fraudulent business acts or practices as set forth above.

100.   The Consumer Representatives bring this cause of action on behalf of themselves and the Nationwide Class, or in the alternative, the California Subclass, pursuant to California Business and Professions Code, § 17200, et seq.

101.   Defendant's conduct constitutes unfair business acts and/or practices because Defendant's practices have caused and are likely to cause substantial injury to Plaintiffs which injury is not reasonably avoidable by Plaintiffs as alleged herein.

102.   Defendant's acts and practices of selling defective Washing Machines offends an established public policy or are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers as alleged herein

103. Furthermore, Bosch acts and practices of selling defective Washing Machines threaten an incipient violation of antitrust laws and/or consumer protection

statutes, or violate the policy and spirit of one of those laws because the effect of the acts and practices are comparable to or the same as a violation of the law or otherwise significantly threaten or harm competition as alleged herein.

104. Defendant's acts and practices are **<u>unlawful</u>** because they violate California Civil Code § 1668.  Defendant's acts and practices are also unlawful because they violate the Song-Beverly Act, Civil Code §§ 1790 et seq., the Consumer Legal Remedies Act, Civil Code §§ 1750 *et seq*., Cal. Commercial Code § 2313, Bus. & Prof. Code § 17500, and the MMWA.

    i.    Defendant violates Cal. Bus. & Prof. Code § 17500 as alleged throughout this Complaint and in the Second Cause of Action, incorporated hereto by reference.

    ii.    Defendant violated the CLRA as alleged throughout this Complaint and in the Third Cause of Action incorporated hereto by reference.

    iii.    Defendant violates Cal. Civ. Code § 1790 et seq. and Cal. Comm. Code §§ 2313 and the MMWA as alleged throughout this Complaint, and in the Fourth, Fifth, and Sixth Causes of Action, incorporated hereto by reference.

105.  Defendant's acts and practices are fraudulent in that they have deceived and/or are likely to deceive Plaintiffs and members of the consuming public, including the Class.  Defendant sold Plaintiffs Washing Machines with Defective Parts that have rendered the Washing Machines essentially unusable for the purposes for which they were purchased.

106. Plaintiffs relied upon Defendant's unfair, unlawful, and fraudulent business acts and practices – the material omissions, and non-disclosures – to their detriment in that they would not have purchased the washers had they known of the true facts.

107.  Plaintiffs have suffered injury in fact and have lost money as a result of Defendant's unfair competition in that they have overpaid for the Washing

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
224098

Machines, incurred expenses in attempting to repair the Washing Machines or remedy the Biofilm, Foul Odors and the Mold Problem, had their Clothes damaged, have paid Undisclosed Additional Operating Expenses and/or would not have bought the Washing Machines had Defendant not misrepresented and omitted disclosing that the Washing Machines have Defective Parts, are defective products in their integrated and finished and assembled state and are unable to effectively self-clean, that they have a high propensity to develop and/or accumulate Biofilm, Foul Odors, and the Mold Problem, and that owners of the Machines will have to spend money for the Undisclosed Additional Operating Expenses.

108. The Consumer Representatives seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.*, plus interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION

**Asserted On Behalf of the Nationwide Class, and Alternatively, On Behalf of a California Subclass**
**(Violations of Cal. Bus. & Prof. Code § 17500 *et seq.*))**

109. The Consumer Representatives repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

110. Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

111. Defendant falsely advertised the performance, uses, benefits, characteristics, quality, grade and standard of the Washing Machines by omission as alleged herein.

112. Defendant's omissions, as more fully described above, did deceive, and are likely to deceive Plaintiffs.

113. Plaintiffs relied upon these material misrepresentations and omissions to their detriment in that they would not have purchased the Washers had they known of the omitted true facts that Defendant did not disclose to them.

114. The above-described false and misleading advertising conducted by Defendant continues to this day and presents a threat to the general public in that Defendant has not acknowledged its wrongdoing to consumers or publicly issued an appropriate conspicuous notice to existing or prospective purchasers of its Washing Machines, and has not disclosed the presence of the Defective Parts in the Washing Machines that cause the development and accumulation of Biofilm, Foul Odors, the Mold Problem and Machine owners to pay Undisclosed Additional Operating Expenses, all of which resulted in Plaintiffs being deceived and misled.

115. As a result of the above-described conduct, Defendant has been, and will continue to be unjustly enriched at the expense of Plaintiffs.

116. Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, the Consumer Representatives seek an order 1) requiring Defendant to immediately cease the unlawful, unfair, and/ or fraudulent business acts and/or practices and false and misleading advertising complained of herein; 2) enjoining Defendant from continuing to misrepresent the Washing Machines' uses, benefits, characteristics, standard, quality and grade by omitting from its labels, advertising and communications regarding the Washing Machines Defective Parts that the Defective Parts when incorporated and assembled into the integrated finished Washing Machine cause Biofilm, Foul Odors, the Mold Problem to develop and accumulate therein which in turn cause Clothes washed in them to emit offensive and obnoxious odors and their owners to pay Undisclosed Additional Operating Expenses; and 3) requiring Defendant to repair or replace the Washing Machines so that they do not develop or accumulate Biofilm, Foul Odors, the Mold Problem therein which in turn cause Clothes washed in them to emit offensive and obnoxious odors and their owners to pay Undisclosed Additional Operating Expenses; or provide full restitution to Consumer Representatives and Class members of all monies wrongfully acquired by means of such acts of unfair competition and false advertising, plus interest, costs, and attorneys' fees.

**THIRD CAUSE OF ACTION**

**Asserted on Behalf of the Nationwide Class, and Alternatively, On Behalf of a California Subclass**
**(Violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*)**

117. Consumer Representatives re-allege and incorporate the above allegations by reference as if fully set forth herein.

118. Consumer Representatives seek to recover for themselves and the Nationwide Class based on Defendant's breach of the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 et seq.

119. At all times relevant hereto, Plaintiffs were "consumer[s]" as that term is defined in Civ. Code § 1761(d).

120. At all times relevant hereto, the Machines constituted "goods" as that term is defined in Civ. Code § 1761(a).

121. At all times relevant hereto, Defendant constituted a "person" as that term is defined in Civ. Code § 1761(c).

122. At all times relevant hereto, Plaintiffs' purchases of Defendant's Bosch and Siemens brand 27" Horizontal Axis/Front-Loading Automatic Clothes Washers, including, but not limited to, Bosch Nexxt and Vision Models, and Siemens ultraSense models and replacement parts constituted a "transaction" as that term is defined in Civ. Code § 1761(e).

123. At all times relevant hereto, Defendant provided "services" to Plaintiffs within the meaning of Civ. Code § 1761(b).

124. The CLRA provides, in relevant part, that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: subsection (a)(5) [r]epresenting that goods . . . have . . . characteristics, uses, benefits . . . which they do not have; ... subsection (a)(7) [r]epresenting that goods ... are of a particular standard, quality or

grade . . . if they are of another; ...  and subsection (a)(9) [a]dvertising goods ... with intent not to sell them as advertised.  Civil Code §§ 1770(a)(5),(7), and (9).

125. Defendant makes uniform written representations that the Washing Machines will make Clothes placed in them during a xxtrasanitary or sanitary cleaning cycle, sanitary and clean, which includes removing dirt, bad smells, deleterious organic material, necessarily including mold, mildew and bacteria, the Machines are "High Efficiency" provide "High Care" to the clothes placed in them during a cleaning cycle: that ownership and use of the Machines will require less operation and use and require less energy to make Clothes placed in them during a wash cycle free of dirt, bad smell, deleterious organic material, necessarily including, mold, mildew, bacteria, Biofilm, the Mold Problem and Foul Odors and have other benefits, standards, and qualities as additionally stated above.  Said statements are representations regarding the characteristics, uses, benefits, standards, and quality of the Washing Machines that are false, deceptive and/or misleading in violation of the CLRA.

126. Defendant misrepresents the characteristics, uses, and benefits of the Washing Machines by failing to disclose material facts which include; a) the Machines have the Defective Parts; b) that the Defective Parts cause Biofilm, the Foul Odors and the Mold Problem; c) Clothes placed in the Machines during a wash cycle will emit offensive and obnoxious odors; d) Machine owners will to undertake Extraordinary Actions (some of which create safety hazards, such as leaving the door ajar in a household with young children); e) the Machines when used as Bosch recommends are not Highly Efficient; f) the Machines do not provide High Care for Clothes placed in them and do not make Clothes placed them clean and free from deleterious organic material and the bad smells and that cause them to pay.

127. The information Defendant conceals and/or does not disclose to Plaintiffs are material facts in that a reasonable consumer would have considered them important in deciding whether to purchase, or whether to pay the stated price

for, the Washing Machines and because Plaintiffs would have been aware of it and behaved differently by not buying the Washing Machines, not paying for repairs, and/or paying less for the Washing Machines.

128. The omission of the Material Facts, as alleged above, is contrary to representations actually made by Defendant, including but not limited to, that the Washing Machines "High Efficiency," "High Care," and "Energy-Star", and "High Care" and/or an omission of fact Defendant was obliged to disclose because: 1) Defendant had exclusive knowledge of the Material Facts not known to Plaintiffs and the Class, since only Defendant had exclusive access to the aggregate data from its retailers, its own tests, and complaints from its customers; 2) Defendant actively concealed and suppressed the Material Facts from Plaintiffs by not warning them that the Washing Machines had Defective Parts incorporated into them which cause the development and accumulation of Biofilm, the Foul Odors and the Mold Problem, Clothes placed in the Machines during a wash cycle to emit offensive and obnoxious odors, require their owners to undertake Extraordinary Actions (some of which create safety hazards, such as leaving the door ajar in a household with young children) and that require them to pay Undisclosed Additional Operating Expenses at the time of purchase; 3) by performing warranty and/or repair work that it knew would not repair and did not replace the Defective Parts such that they were no longer defective; 4) by recommending remedies to complaining consumers that it knew would not repair or replace the Defective Parts with non-defective parts or stop the presence of resulting problems thereby causing damages; 5) Defendant made partial representations such as recommending futile remedies like empty hot-water and bleach cycles, and wiping the door gasket dry after every wash, but also suppressed the Material Facts; and 6) the Material Facts relate to safety in that the Machines develop mold and deleterious organic matter which poses a risk of harm to Machine owners' health and Bosch's recommendation, only post sale, to consumers

that the Washer door must be left "ajar" creates an admitted risk of injury and death to children present in households with Washing Machines.

129.  Plaintiffs justifiably acted or relied to their detriment upon the undisclosed facts as evidenced by their purchase of the defective Washing Machines. Had Plaintiffs known of the Material Facts, they would not have purchased the Washing Machines, or would have paid less for them.

130.  Civil Code § 1780 (a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770.  Plaintiffs are entitled to recover damages as provided by statute, as well as costs, attorney's fees, rescission, and other relief as is deemed appropriate.

131.  Pursuant to Civil Code § 1782, Consumer Representatives have notified Defendant in writing of its particular violations of Civil Code § 1770 and made a demand for corrective action.  Consumer Representatives sent this notice by certified mail, return receipt requested, to Defendant's principal place of business. [See attached Ex. "5"].

## FOURTH CAUSE OF ACTION

### Asserted On Behalf of the California and New York Subclasses (Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* – Breach of Implied Warranty of Merchantability)

132.  Consumer Representatives repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

133.  The Washing Machines are "consumer products" as that term is defined under 15 U.S.C. § 2301(1).

134.  Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3), and utilized the Machines for personal and household use and not for resale or commercial purposes.

135.  Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

136.  Defendant provided Plaintiffs with "implied warranties" as that term is defined by 15 U.S.C. § 2301(7).

137.  In its capacity as a warrantor, and by the conduct described herein, any attempt by Defendant to limit the implied warranty of merchantability in a manner that would exclude coverage for the Defective Parts in the Washing Machines or the defective condition of the Washing Machines in their integrated assembled state is unconscionable and any such effort to disclaim, or otherwise limit, liability for its defective Washing Machines is null and void as alleged above.

138.  This Court has jurisdiction over this cause of action under 28 U.S.C. 1332.

139.  Defendant has failed to conform the Washing Machines to the implied warranty of merchantability.

140.  Plaintiffs fulfilled their obligations under the warranties.

141.  As a result of Defendant's breach of implied warranties, Plaintiffs are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## FIFTH CAUSE OF ACTION
### Asserted On Behalf of the California and New York Subclasses
### (Breach of Implied Warranty under NY UCC § 2-314 and Cal. Song-Beverly Act)

142.  Consumer Representatives Wentworth and Isabella re-allege and incorporate the above allegations by reference as if fully set forth herein.

143.  Consumer Representatives Wentworth and Isabella, respectively, seek to recover for the Subclasses based on Defendant's breach of implied warranty under California's Song-Beverly Consumer Warranty Act and New York UCC §2-314)

144.  Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792 et seq., every sale of consumer goods is accompanied by both a

"manufacturer's and retailer's" implied warranty that the goods are merchantable within the meaning of Cal. Civ. Code § 1791.1(a). Therefore, California consumers need not be in privity with the manufacturer to bring an implied warranty claim.

145. New York recognizes the "thing of danger" exception to the privity requirement. The presence of mold and mildew in the Machines poses a threat to Plaintiffs' safety and to the safety of others.  Additionally, Bosch has admitted that the Washing Machines pose an entrapment risk of injury and death to children when the door is left "ajar" per its own recommendations. In addition, Plaintiffs allege herein that the Mold Problem creates a safety issue with respect to user's and household members' health.

146. The Washing Machines are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

147.  Defendant is a "manufacturer" within the meaning of Cal. Civ. Code §§ 1791(j).

148.  Plaintiff Wentworth bought her Washing Machine at retail in the State of California.

149. At the time of sale, and currently, Defendant is in the business of manufacturing and selling Washing Machines.

150.  By operation of law, Defendant impliedly warranted to Plaintiffs that its Washing Machines were of merchantable quality and fit for the ordinary purposes for which they are used.

151.   Defendant possessed actual superior knowledge that the Washing Machines' Defective Parts caused the development and accumulation of Biofilm, the Foul Odors, the Mold Problem; caused Clothes washed in them to emit offensive and noxious odors and Machine owners to pay Undisclosed Additional Operating Expenses and based on pre-market testing, complaints posted on the internet, and complaints made to Defendant's call center.

152. Defendant's waiver and/or limits on implied warranties are unconscionable, unenforceable, and/or illegal. Plaintiffs had no meaningful choice in determining those time limitations; the warranties were written by Defendant, without input of Plaintiffs; the Warranty overwhelmingly favors Defendant by unreasonably limiting the warranty to 2 years on a product that could reasonably be expected to last 10 or more years; a gross disparity in bargaining power existed as between Defendant and Class members; Defendant knew or should have known that its Washing Machines were defective at the time of sale and would accumulate Biofilm and develop the Foul Odors and the Mold Problem before the end of their useful lives, and Plaintiffs were unfairly surprised by the time limitation upon discovering that Bosch knew Washing Machines has the Mold Problem.

153. Defendant breached the implied warranty at the time of sale by selling defective Washing Machines. In the alternative, as to the California Class only, Plaintiffs' Washing Machine became unfit for their ordinary purpose of cleaning Clothes within the implied warranty period because they accumulated Biofilm, produced Foul Odors, developed the Mold Problem, and caused Clothes placed in them during a wash cycle to emit offensive and noxious odors.

154. Plaintiffs' Washing Machines do not pass without objection in the trade as they are sold as a premium product, but fail to clean Clothes.

155. Plaintiffs' Washing Machines became unfit for their ordinary purpose of cleaning Clothes.

156. Plaintiffs' Washing Machines were not adequately contained, packaged, or labeled as the labels "High Efficiency" and "High Care" "and Xxtra Sanitary" are inaccurate and misleading as alleged herein.

157. Plaintiff's and Class member's Washing Machines do not conform to the promises or affirmations of fact made on the labels including "High Efficiency" "High Care" and "Xxtra Sanitary" as Clothes washed inside the Machines are impregnated with mold and mildew.

158. Plaintiffs were the intended third-party beneficiaries of the implied warranty made by Defendant.  Defendant knew that the retailers to whom it sold the Washing Machines were not going to own the Washing Machines any longer than it took to sell them to Plaintiffs.  Bosch entered into a contract for the sale of all of its Machines to retailers.  In particular, Bosch entered into contracts with all resellers of the Washing Machines, contract which included warranties, express and implied.  Bosch and all resellers to which it sold the Washing Machines knew and understood that the resellers' purpose in purchasing Washing Machines was to sell them to consumers, and not operate or use them itself, and both Bosch and the resellers intended all consumers that purchased their Washing Machines from a reseller to be the beneficiaries of the implied and express warranties that existed because of Bosch's sale of Washing Machines to resellers. In the case of Consumer Representative Wentworth, Ms. Wentworth is the third party beneficiary of a contract for the sale of a Washing Machine from Bosch to Pacific Sales, Inc.  In the case of Consumer Representative Isabella, Ms. Isabella is the third party beneficiary of the contract for sale of a Washing Machine from Bosch to Showcase Furniture.  In the case of Consumer Representative Gibson, Ms. Gibson is the third party beneficiary of a contract for the sale of a Washing Machine from Bosch to US-Appliance.com.   In the case of Consumer Representative Demereckis, Mr. Demereckis is the third party beneficiary of the contract for sale of a Washing Machine from Bosch to ABT Electronics & Appliances.  Indeed, all Class members, either purchased their Machines directly from Bosch or were the intended third party beneficiaries of the contracts for sale of the Washing Machines from Bosch to retailers.

159. Further, Defendant intended that any warranties, whether express or implied, that applied to the Washing Machines were for the benefit of Plaintiffs.

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT

224098

160. Defendant knew Plaintiffs were, and intended that Plaintiffs be, the ultimate beneficiaries of Defendant's implied warranties as they are the owners of the Washing Machines.

161. Defendant, who manufactures and markets the Washing Machines, and/or sellers/resellers of the Washing Machines, knew that Plaintiffs were the end users of the Washing Machines when Defendant entered into any and all sales contracts and subcontracts for the Washing Machines and Defendant's intent to benefit Plaintiffs arises by operation of law pursuant to the "implied covenant of good faith and fair dealing" contained within any and all sales contracts and subcontracts for the Washing Machines entered into by Defendant.

162. Defendant brought itself into privity with Plaintiffs and class members by making representations to them through labels such as "High Efficiency" and "High Care" upon which they relied.

163. Defendant, in addition to and separate and apart from the foregoing created privity with the first using purchasers of the Washing Machines a unilateral contract of express warranty.   By said action Bosch created contractual privity between itself and every first purchasing user.

164. As a proximate result of Defendant's breach of implied warranty, Plaintiffs have sustained damages and other losses in an amount to be determined at trial.  Plaintiffs are entitled to recover damages and attorneys' fees, costs, rescission, and other relief as is as provided by statute or deemed appropriate by the Court.

## SIXTH CAUSE OF ACTION

### Asserted On Behalf Of The Illinois Subclass
### (Violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.*)

165. Consumer Representative Demereckis repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

60

166. The Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA") prohibits "unfair and deceptive practices."

167. Consumer Representative Demereckis and members of the Illinois Subclass are consumers.

168. Consumer Representative Demereckis and members of the Illinois Subclass reasonably expected that their Washing Machines would not have the Defective Parts that caused their Washing Machines to develop and accumulate Biofilm and develop Foul Odors, the Mold Problem, damaged Clothes placed in the Washing Machines during a wash cycle and pay Undisclosed Additional Operating Expenses.

169. Defendant developed, manufactured, marketed and sold the Washing Machines.  The Washing Machines are defective because they have Defective Parts that, which following normal operation and usage of the Washing Machines cause them to develop and accumulate Biofilm, develop Foul Odors and the Mold Problem, make Clothes inside of them during a wash cycle to emit offensive and noxious odors and Machine owners to incur Undisclosed Additional Operating Expenses.

170. Defendant's misconduct, including the omissions of Material Facts, as described above, took place in the course of trade or commerce in Illinois, and arose out of transactions that occurred at retail outlets in Illinois.

171. Defendant had knowledge of the Defect Parts at all relevant times as alleged above.

172. Despite Defendant's knowledge of the Defective Parts in the Washing Machines, and the Material Facts, Defendant has failed to disclose the existence of this material information to Consumer Representative Demereckis and members of the Illinois Subclass at the time each of them purchased the Washing Machines, and/or at the time they made a Warranty claim related to the Defective Parts,

Biofilm, the Foul Odors, the Mold Problem or Clothes that smelled offensive or noxious following their presence in a Washing Machine during a wash cycle.

173. Defendant intended, and continues to intend, that Consumer Representative Demereckis and members of the Illinois Subclass rely on the omissions of Material Facts.

174. In failing to inform consumers of the Defective Parts, Defendant has engaged in an unfair or deceptive act prohibited by the ICFA.

175. If not for Defendant's deceptive and unfair acts of concealing from Plaintiffs the Material Facts as alleged herein, Plaintiffs would not have purchased the Washing Machines, or would have paid less for them.  Defendant, at all relevant times knew or should have known that Plaintiffs did not know or could not have reasonably discovered the Defective Parts prior to their purchases.

176.  Consumer Representative Demereckis and members of the Illinois Class relied on Defendant's omission of the Material Facts at the point of purchase on the Washing Machines' labels in retail stores where the Washing Machines are sold as alleged herein, and would not have purchased the Washing Machines had Defendant disclosed the Material Facts.

177.  As a direct and proximate result of Defendant's violations of the ICFA, Plaintiffs suffered damages, in the form of, among other things, monies spent in attempting to repair the Washing Machines or remedy the Foul Odors and Mold Problems, and/or diminution in value of the Washing Machines.

178. The statute of limitations was tolled by Defendant's fraudulent concealment of the Defective Parts, the discovery rule, and/or the continuing violations rule.

179. Defendant's violation of the ICFA entitles Consumer Representative Demereckis and members of the Illinois Subclass to statutory and actual damages, punitive damages, injunctive relief, and attorney's fees and costs.

**SEVENTH CAUSE OF ACTION**

**Asserted On Behalf Of The Maryland Subclass
(Violation of the Maryland Consumer Protection Act,
Md. Code Ann., Com. Law § 13-101)**

180.  Consumer Representative Beverly Gibson repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

181.  Consumer Representative Beverly Gibson and members of the Maryland Subclass are "consumers" and "persons" within the meaning of Md. Code Ann., Com. Law § 13-101(c) and (h); Defendant is a "merchant" within the meaning of Md. Code Ann., Com. Law § 13-101(f).

182.  The Washing Machines are "consumer goods" and "merchandise" within the meaning of Md. Code Ann., Com. Law § 13-101(d) and (f).

183.  The Maryland Consumer Protection Act proscribes any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" in connection with the sale of consumer goods. Md. Code Ann., Com. Law § 13-301(1);

184.  The Maryland Consumer Protection Act also proscribes "any representation that… [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have"; and "[c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not."  Md. Code Ann., Com. Law § 13-301(2)(i) and (2)(iv).

185.  The Maryland Consumer Protection Act also proscribes as unfair and deceptive trade practices: "[f]ailure to state a material fact if the failure deceives or tends to deceive; [a]dvertisement or offer of consumer goods… [w]ithout intent to sell… them as advertised or offered; [k]nowingly false statement that a service, replacement, or repair is needed; [d]eception, fraud, false pretense, false premise,

63

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT

misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with … [t]he promotion or sale of any consumer goods, consumer realty, or consumer service… or [t]he subsequent performance of a merchant with respect to an agreement of sale.  Md. Code Ann., Com. Law § 13-301(3), (5)(1), (7), (9)(i) and (9)(iii).

186. Defendant falsely represented material facts regarding the Machines which misled Ms. Gibson and members of the Maryland Subclass as more fully alleged herein.

187. Defendant misrepresented the characteristics, uses, benefits, standard, quality, and grade of the Machines as alleged herein.

188.  Defendant failed to disclose on labels attached to the Washing Machines that Ms. Gibson observed at the point of sale Material Facts regarding the Washing Machines and that  owners would be required to take Extraordinary Actions and to pay Undisclosed Additional Operating Expenses.

189.  Defendant advertised the Machines without the intent to sell them as advertised as alleged herein.

190.  Defendant deceived Ms. Gibson and members of the Maryland Subclass by misrepresenting and/or omitting material facts in connection with the sale of the Washing Machines as alleged herein in violation of  Md. Code Ann., Com. Law § 13-301(9)(i).   Defendant also violated Md. Code Ann., Com. Law § 13-301(9)(iii) by falsely representing by omission to Ms. Gibson and Maryland Subclass members that the Washing Machines were not defective, recommending futile Extraordinary Actions, and advising replacement and repairs, such as new door gaskets, that Bosch knew would not repair the Defective Parts or replace the Defective Parts with non-defective parts, which would result in the Washing Machines not developing or accumulating Biofilm, the Mold Problem, Foul Odors and not making Clothes present in them during a wash cycle have noxious and offensive odors. Defendant

knew of the falsity of its omissions and intended to induce reliance by Ms. Gibson and members of the Maryland Subclass as alleged herein.

191. Consumer Representative Gibson and Maryland Class members relied on Defendant's Omissions of Material Fact on the labels attached to the Washing Machines at the point of purchase in retail stores where they purchased the Washing Machines in that they would not have purchased the Washing Machines had Bosch disclosed to them Material Facts through labels on the Machines.

192. As a result of Defendant's conduct, Consumer Representative Gibson and members of the Maryland Subclass did not receive the benefit of the bargain because they overpaid for the Machines.

193. As a result of Defendant's conduct, Consumer Representative Gibson and members of the Maryland Subclass lost money through the diminution in value of their Machines, as well as money spent on Undisclosed Additional Operating Expenses and replacement parts

194. Consumer Representative Gibson and members of the Maryland Subclass seek restitutionary and injunctive relief, as well as damages, costs and attorneys fees.

## EIGHTH CAUSE OF ACTION

### Asserted on Behalf of the New York Subclass
### (Violations of § 349 of New York General Business Law: Deceptive Acts and Practices)

195. Consumer Representative Trish Isabella repeats and realleges all prior paragraphs and incorporates them as if fully set forth herein.

196. NY GBL § 349 makes unlawful any deceptive act or practice, including false advertising, in the conduct of any trade or commerce or in the furnishing of any service in New York.

197.  Ms. Isabella purchased her Washing Machine in New York and brings this action pursuant to NY GBL § 349 on behalf of herself and all members of the

65

New York Subclass.   Ms. Isabella and members of the New York Subclass are consumers.

198.  Defendant has engaged in deceptive practices through omissions of the presence of Defective Parts in the assembled Washing Machines Defendant sold and the  Material Facts directed at Ms. Isabella and members of the New York Subclass, as more fully described above, in connection with the sale of Washing Machines that have Defective Parts  that cause the Washing Machines to develop and accumulate Biofilm, the Mold Problem and emit Foul Odors, cause Clothes present in them during a wash cycle to emit offensive and noxious odors  and cause their owners to pay Undisclosed Additional Operating Expenses.  Defendant's omissions are likely to mislead and did materially mislead Ms. Isabella and other reasonable consumers by causing them to purchase the Washing Machines and to pay for Undisclosed Additional Operating Expenses that they would not have paid for (or would have paid less for their Washing Machine), but for Defendant's omissions.

199.  Defendant made numerous omissions of the Material Facts and presence of the Defective Parts in its printed labels placed on the Washing Machines and which Ms. Isabella and members of the New York Subclass saw and relied on to their detriment. Consumer Representative Isabella and New York Class members relied on Defendant's Omissions of the presence of the Defective Parts in the Washing Machines and Material Facts on the labels attached to the Washing Machines at the point of purchase in retail stores where they purchased the Washing Machines in that they would not have purchased the Washing Machines had Bosch disclosed to them that the Machines had present in them Defective Parts and the Material Facts stating those facts on the labels present on the Machines at New York resellers premises.

200.  The unfair and deceptive trade practices have directly, foreseeably, and proximately caused damages and injury to Ms. Isabella and members of the New York Subclass.  Consumer Representative Isabella and New York Subclass members

have lost money in that they would not have purchased the Washing Machines or would have paid less for them. Consumer Representative Isabella seeks to enjoin Defendant's deceptive conduct, as well as damages and attorneys' fees, and all other relief available under NY GBL § 349.

## NINTH CAUSE OF ACTION

### Asserted on Behalf of the New York Subclass
### (Violations of § 350 of New York General Business Law: False Advertising Unlawful)

201.  Consumer Representative Trish Isabella repeats and realleges all prior paragraphs and incorporates them as if fully set forth herein.

202.  NY GBL § 350 makes false advertising unlawful.

203.  Defendant's advertising of the Washing Machines, as alleged in more detail herein, is and was false within the meaning of NY GBL § 350-a(1).

204.  Consumer Representative Isabella and New York Subclass members were materially misled by Defendant's advertising.

205.  Consumer Representative Isabella and New York Class members relied on Defendant's Omissions of Material Facts on the labels attached to the Washing Machines at the point of purchase in retail stores where they purchased the Washing Machines in that they would not have purchased the Washing Machines had Bosch disclosed to them Material Facts through labels on the Machines.

206.  As a direct and proximate result of Defendant's false advertising, Ms. Isabella and New York Subclass members lost money in that they would not have purchased the Washing Machines or would have paid less for them.

207.  Consumer Representative Isabella seeks to enjoin Defendant's deceptive conduct, as well as damages and attorneys' fees, and all other relief available under NY GBL § 350.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendant for the following:

1.    An order certifying a Nationwide Class, as well as California, Illinois, Maryland, and New York Subclasses, and appointing Beverly Gibson, Trish Isabella, Nancy Wentworth and Dennis Demereckis as representative plaintiffs and their undersigned counsel to be class counsel for the Nationwide Class;

2.    A constructive trust on, and restitution, of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

3.    All recoverable compensatory and other damages sustained by Plaintiffs;

4.    Actual and/or statutory damages for injuries suffered by Plaintiffs in the maximum amount permitted by applicable law;

5.    An order (1) enjoining Defendant's wrongful, unfair, unlawful, fraudulent, and deceptive conduct as set forth above; (2) ordering Defendant to engage in a corrective notice campaign; and (3) requiring Defendant to refund to Plaintiffs the funds paid to Defendant for the defective Washing Machines;

6.    Statutory pre-judgment and post-judgment interest on any amounts;

7.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

224098

8.    Such other relief as the Court may deem just and proper.

The Consumer Representatives, individually and on behalf of all similarly situated persons, hereby demand a trial by jury on all issues so triable.

DATED: December 12, 2014

**EPPSTEINER & FIORICA
ATTORNEYS, LLP**

By: Stuart M. Eppsteiner
Andrew J. Kubik
12555 High Bluff Drive, Ste. 155
San Diego, CA 92130
Tel: (858) 350-1500
Fax: (858) 350-1501

Kristen Law Sagafi (SBN 222249)
klaw@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery St. 29th Floor
San Francisco, CA 94111
Tel. (415) 956-1000

Daniel C. Levin
(dlevin@lfsblaw.com)
(admitted pro hac vice)
**LEVIN, FISHBEIN, SEDRAN &
BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
Case No. SACV10-711 CJC (ANx)

224098

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Elmer Robert Keach, III
(bobkeach@keachlawfirm.com)
(admitted pro hac vice)
**LAW OFFICES OF ELMER
ROBERT KEACH, III, PC**
1040 Riverfront Center
Post Office Box 70
Amsterdam, NY 12010
(518) 434-1718

*Counsel for Plaintiffs and the Class*

PROVISIONAL FOURTH CONSOLIDATED AMENDED COMPLAINT
Case No. SACV10-711 CJC (ANx)

224098

# EXHIBIT 1

**EPPSTEINER & FIORICA ATTORNEYS, LLP**
Stuart M. Eppsteiner, Esq. SBN 098973
Andrew J. Kubik, Esq. SBN 246902
12555 High Bluff Dr., Suite 155
San Diego, CA 92130
T: 858-350-1500
F: 858-350-1501
sme@eppsteiner.com
ajk@eppsteiner.com

Counsel for Plaintiffs and the Class

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| DIANA TAIT and NANCY WENTWORTH, individually and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>vs.<br><br>BSH HOME APPLIANCES CORPORATION, a Delaware Corporation,<br><br>DEFENDANT. | CASE NO.:<br><br>**DECLARATION OF NANCY WENTWORTH**<br><br>[Jury Trial Demanded] |

I, Nancy Wentworth, declare as follows:

1. I am a named plaintiff in this litigation.

2. I have personal knowledge of the matters set forth below except to those matters stated herein which are based on information and belief, which matters I believe to be true.

3. If called as a witness I could and would competently testify to the matters included herein.

4. I am informed and believe that venue is proper in this Court under Civil Code § 1780(d) based on the fact that BSH Home Appliances Corporation resides in, does substantial business in, and has its principal place of business in Orange County, which is located in this District.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct and that this declaration was executed on April 29, 2010 in San Diego, California.

By: _Nancy Wentworth_
Nancy Wentworth

## AFFIDAVIT OF BEVERLY GIBSON

I, BEVERLY GIBSON, submit this affidavit pursuant to §1780(d) of the CAL. CIV. CODE, Consumers Legal Remedies Act, and declare the following:

1.    I am named plaintiff in this litigation.

2.    If called as a witness I could and would competently testify to the matters included herein.

3.    I am informed and believe that the Defendant in this action resides in, conducts substantial business activity in, and has its principal place of business in Orange County, which is located in this District, and therefore this District is a proper place for trial of this action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 4 day of October 2010, in ABERDEEN Maryland.

BEVERLY GIBSON

## AFFIDAVIT OF PATRICIA ANN ISABELLA

I, PATRICIA ANN ISABELLA, submit this affidavit pursuant to §1780(d) of the
CAL. CIV. CODE, Consumers Legal Remedies Act, and declare the following:

1. I am named plaintiff in this litigation.
2. If called as a witness I could and would competently testify to the matters
   included herein.
3. I am informed and believe that Defendant in this action resides in, conducts
   substantial business activity in, and has principal place of business in Orange
   County, which is located in this District, and therefore this District is a proper
   place for trial of this action.

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct. Executed this 1st day of June, 2011, in Johnstown, New
York.

PATRICIA ANN ISABELLA

Sworn to Before this
1st day of June, 2011

Notary Public

**ELMER ROBERT KEACH, III**
Notary Public - State of New York
No. 02KE6197061
Qualified in Montgomery County
Commission Expires 11/24/20 12

# EXHIBIT 2

WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquas... http://web.archive.org/web/20090201022409/http://www.us-appliance...

INTERNET ARCHIVE
WayBackMachine

http://www.us-appliance.com/wfmc8440uc.html          Go

6 captures
5 Dec 08 - 26 May 09

DEC          MAR  Close
◄            ►
2008         2010    Help

## US Appliance

**FREE SHIPPING on ALL MAJOR APPLIANCES!**
Sale through Monday, Feb 2nd. _details_

McAfee SECURE
TESTED DAILY

Call us toll free: (877) 628-9913

Delivery     Customer Service     Track Your Order     View Cart

Search                    Shop By Brand

WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquas...       http://web.archive.org/web/20081205124221/http://www.us-appliance.c



| Home > Laundry > Bosch Laundry > Bosch Washers > WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquastop - Silver and White |

## WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquastop - Silver and White
Code: WFMC8440UC

**Regular price: $1,549.00**
Sale price: $1,399.00
**You Save: $150.00**



Get a free Bosch dishwasher when you purchase a Bosch Appliance Package
Details with Range    Details with Oven   (Expires Dec 31, 2008.)

**FEATURES**     **MORE INFO**     **WARRANTY**     **REVIEWS**

**Performance**
- XXTRASANITARY™ Cycle
- KIDSCARE™ Cycle
- Jeans Cycle
- AQUAGUARD™ Cycle
- Comforter Cycle
- Performance Details and Photos

**Efficiency**
- ECOACTION™
- ENERGY STAR® Qualified
- 1,200 rpm Spin Speed
- Efficiency Details and Photos

**Quietness**
- 54dB - Silence Rating
- Quietest Washer in U.S.
- Nearly Silent Wash System
- Quietness Details and Photos

**Capacity**
- 4.2 Cubic Foot Large Capacity Washer

**Washer Safety**
- AQUASTOP® Leak Protection
- Safety Details and Photos

**Gentle Care**

### Navigation sidebar

REFRIGERATION
Side by Side
French Door
Bottom Mount
Top Mount
Built-In
Wine Coolers
Ice Makers
Freezers
SHOP BY BRAND

COOKING
Ranges
Cooktops
Microwaves
Ovens
Ventilation
Outdoor Grills
Warming Drawers

CLEAN UP
Dishwashers
Compactors
Disposers
Vacuum Cleaners

LAUNDRY
Washers
Dryers
SHOP BY BRAND

ELECTRONICS
HDTVs - Free Shipping
Sony Electronics Store
Home Video & Games
Home Theater & Audio
Portable MP3-GPS-DVD
Cameras & Camcorders
Telephones & 2-Way
Stocking Stuffers

CHEF'S CORNER
Bakeware
Carts/ Cutting Boards
Coffee & Tea
Cookware
Cutlery/Tools
Entertaining
Pot Racks
Small Appliances

Rebates - Huge Savings
Instant Financing
Extended Warranties
Appliance Parts

WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquas...          http://web.archive.org/web/20081205124221/http://www.us-appliance.c

- SENSOTRONIC® PLUS
- ARCHIE® Paddles
- Internal Water Heater
- Gentle Care Details and Drying

**Approximate Overall Dimensions:**

| | |
|---|---|
| Height | 36 15/16" |
| Width | 27" |
| Depth | 31 9/16" |

Before install, consult installation instructions packed with product/kit for current dimensions.

SHARE

**More Bosch Washers**

- WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquastop - Silver and White
- WFMC8401UC Bosch Nexxt 800 Series Front Load Washer - Silver and White
- WFMC8400UC Bosch Nexxt 800 Series Front Load Washer - White

View More ...

| About Us | Customer Service | |
|---|---|---|
| Order Tracking | Contact Us | |
| FAQ | Testimonials | |
| Privacy | | |

**(877) 628-9913**

For knowledgeable Sales assistance
or to Place Your Order Over the Phone
Monday - Friday, 8:00 - 6:00 EST

We accept











Amana | Asko | Bertazzoni | Best | Bosch | Broan | Capital | Dacor | DCS | Ducane | Fisher & Paykel
Five Star | Frigidaire | Gaggenau | GE | Jenn-Air | KitchenAid | LG | Maytag | Miele | Monogram | Thermador
U-Line | Viking | Whirlpool | Zephyr | Helpful Links

Popular Items by:   Popularity | Our Choices | All-Round Favorites | Title
View Categories by:   Title | Price

© US Appliance 2008. All Rights Reserved.

WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquas...          http://web.archive.org/web/20081205124221/http://www.us-appliance.c

INTERNET ARCHIVE **WayBackMachine** http://www.us-appliance.com/wfmc8440uc.html          Go          NOV   FEB   Close

6 captures
5 Dec 08 - 28 May 09                                                                    2007   2009   Help

# US Appliance

*The most convenient, factory authorized,*
*source for all your home appliance needs.*

McAfee SECURE
TESTED DAILY

Call us toll free: (877) 628-9913          Delivery     Customer Service     Track Your Order     View Cart

Search          🔍          Shop By Brand

WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquas...          http://web.archive.org/web/20090201022409/http://www.us-appliance.

**REFRIGERATION**

Side by Side
French Door
Bottom Mount
Top Mount
Built-In
Wine Coolers
Ice Makers
Freezers

**COOKING**

Ranges
Cooktops
Microwaves
Ovens
Ventilation
Outdoor Grills
Warming Drawers

**CLEAN UP**

Dishwashers
Compactors
Disposers
Vacuum Cleaners

**LAUNDRY**

Washers
Dryers
SHOP BY BRAND

**VALUE APPLIANCES**

Value Refrigerators
Value Cooking
Value Laundry
Value Dishwashers

**ELECTRONICS**

HDTVs - Free Shipping
Sony Electronics Store
Home Video & Games
Home Theater & Audio
Portable MP3-GPS-DVD
Cameras & Camcorders
Telephones & 2-Way

**CHEF'S CORNER**

Bakeware
Carts/ Cutting Boards
Coffee & Tea
Cookware
Cutlery/Tools
Entertaining
Pot Racks
Small Appliances

Rebates - Huge Savings
Instant Financing
Extended Warranties
Appliance Parts

| Home > Laundry > Bosch Laundry > Bosch Washers > WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquastop - Silver and White |

## WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquastop - Silver and White
Code: WFMC8440UC




**Regular price: $1,399.00**
Sale price: $1,329.00
**You Save: $70.00**

 Get a free Bosch dishwasher when you purchase a Bosch Appliance Package
Details with Range    Details with Oven    (Expires Feb 28, 2009.)

FEATURES      MORE INFO      WARRANTY      REVIEWS

**Performance**
- XXTRASANITARY™ Cycle
- KIDSCARE™ Cycle
- Jeans Cycle
- AQUAGUARD™ Cycle
- Comforter Cycle
- Performance Details and Photos

**Efficiency**
- ECOACTION™
- ENERGY STAR® Qualified
- 1,200 rpm Spin Speed
- Efficiency Details and Photos

**Quietness**
- 54dB - Silence Rating
- Quietest Washer in U.S.
- Nearly Silent Wash System
- Quietness Details and Photos

**Capacity**
- 4.2 Cubic Foot Large Capacity Washer

**Washer Safety**
- AQUASTOP® Leak Protection
- Safety Details and Photos

**Gentle Care**

WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquas...        http://web.archive.org/web/20090201022409/http://www.us-appliance.c

- SENSOTRONIC® PLUS
- ARCHIE® Paddles
- Internal Water Heater
- Gentle Care Detergent and Photos



**Approximate Overall Dimensions:**

| | |
|---|---|
| **Height** | 36 15/16" |
| **Width** | 27" |
| **Depth** | 31 9/16" |

Before install, consult installation instructions packed with product/kit for current dimensions.

SHAPE

**More Bosch Washers**

- WFMC8440UC Bosch Nexxt 800 Series Front Load Washer with Aquastop - Silver and White
- WFMC544SUC Bosch Nexxt 500 Plus Series Front Load Washer with Aquastop- Silver
- WAS24460UC Bosch AXXIS Plus Front Load Washer 1200 RPM - White

View More ...

| About Us | Customer Service |
|---|---|
| Order Tracking | Contact Us |
| FAQ | Testimonials |
| Privacy | |

**(877) 628-9913**
For knowledgeable sales assistance
or to Place Your Order Over the Phone
Monday - Friday: 8:00 - 6:00 EST

We accept

YAHOO!



 TRUSTe





Amana | Asko | Bertazzoni | Best | Bosch | Broan | Capital | Dacor | DCS | Ducane | Fisher & Paykel
Five Star | Frigidaire | Gaggenau | GE | Jenn-Air | KitchenAid | LG | Maytag | Miele | Monogram | Thermador
U-Line | Viking | Whirlpool | Zephyr | Helpful Links

Popular Items by:  Popularity  |  Our Choices  |  All-Round Favorites  |  Title
View Categories by:  Title  |  Price

© US Appliance 2009. All Rights Reserved.

# EXHIBIT 3

WFMC8440UC                    http://www.bosch-home.com/us/WFMC8440UC.html?source=search

🔍
Search
✉
Contact
🛒
Where to buy
↻
My Bosch
05/26/2011
Terms of Use

Invented for life    **BOSCH**

Startpage Bosch USA    Home Page

## WFMC8440UC

Nexxt 800 Series
Washer
Silver and White Duo-Tone

- Overview
- Technical specs
- Additional documents
- 



 Click to enlarge

**Product features**

**Performance –**

- 4.2 cu.ft Drum Capacity
- 15 programs
- Spin Speed: 1200 rpm
- Internal Water Heater Heats Water Quickly and Efficiently
- Durable, Scratch Resistant, Mekalit Worktop
- Backed by Good Housekeeping Seal - Two Year Limited Warranty
- XXTRASANITARY® - NSF Certified Eliminates 99.99% of Bacteria
- Stain Removal Option Removes 14 Everyday Stains
- Comforter Cycle to Deeply Clean Bulky Items Like Comforters
- Quick Wash Cycle Completes Full Loads in as Little as 45 Min.
- Jeans Cycle Prevents Fading and Extends Fabric Life

- KIDSCARE™ Cycle Removes a Variety of Tough Stains

**Efficiency –**

- Exceeds ENERGY STAR® 2011 Guidelines - Uses only 151 kWh/yr
- ECOACTION™ Option Reduces Energy Usage by up to 20%
- Washer Sensors Reduce Water Usage by up to 76%
- Bosch Washers Exceed Federal Energy Standards by up to 102%

**Quietness –**

- Virtually Silent: 53 dBA

**Safety –**

- AquaStop® Leak Protection Protects From Costly Water Damage

**Gentle Care –**

- NSF Certified - Eliminates 99.9% of Bacteria
- SENSOTRONIC PLUS Sensors Analyze Load and Optimizes the Cycle
- High Quality, Snag Free Stainless Steel Drum
- Additional Rinse Option Removes Any Traces of Detergent

# EXHIBIT 4

# *Prestige EnviroMicrobiology, Inc*

Client: Iowa Environmental Services, Inc.

Client Project: Eppsteiner – Bosch Front Load Newton, IA

Sample date: 11-4-2010

Submittal date: 11-4-2010

Samples submitted by: Nancy Ivers

Data analysis completed: November 8, 2010

Prestige number: 101105-03

## Microscopic Method: Analysis of Tape-Lift Samples for Fungi by Optical Microscopy

| Client sample ID Location | Sample dimension | Fungal ID | Fungal structures observed | Fungal density | Notes |
|---|---|---|---|---|---|
| 119284 Inner door gasket right of 6:00, before cycle | 3/4" x 3/4" | *Aspergillus* | spores, conidiophores, hyphae | 5 | Fungal growth |
| 119285 Inner door gasket 8:00, before cycle | 2 1/2" x 3/4" | *Cladosporium* | spores, conidiophores, hyphae | 1 | Fungal growth |

1. The samples in this report were received in good, acceptable conditions.
2. Fungal density rating 1-5 (1 being the lowest and 5 the highest) indicates density of fungal growth structures observed. No fungal density is provided for loose spores, hyphal fragments and other structures.

Report approved: _____
Theresa Lehman, MPH, Lab Director

Quality control check: _____
Chin S Yang, Ph.D.

Report review: _____

## Prestige EnviroMicrobiology, Inc

*AIHA Environmental Microbiology PAT Program participant*
*Laboratory ID Number 192810*
*Website: www.prestige-em.com*

Client: Iowa Environmental Services, Inc.

Client Project: Eppsteiner – Bosch Front Load Newton, IA

Sample date: 11-4-2010

Submittal date: 11-4-2010

Inoculation dates: 11-5-2010 (Swabs & Bulks)

Samples submitted by: Nancy Ivers

Data analysis completed: November 12, 2010

Prestige number: 101105-03

### Culture Method: Culture Analysis of Swab Samples for Fungi Speciation

| Client sample ID Location | Area (in²) | Medium used | Dilution factor | Fungal Identification | Colony counts | Conc. (CFU/ in²) | Percentage |
|---|---|---|---|---|---|---|---|
| 119282 Inner door gasket right of 6:00, before cycle | 1/2 | MEA | 10,000x | *Aspergillus niger* | 114 | 2,300,000 | 81% |
| | | | | *Aspergillus flavipes* | 26 | 520,000 | 19% |
| | | | | | | Total 2,800,000 | |
| 119287 sump in outer tub | 1/2 | MEA | 1,000x | *Aspergillus versicolor* | 17 | 34,000 | 74% |
| | | | | *Penicillium citreonigrum* | 4 | 8,000 | 17% |
| | | | | *Penicillium citrinum* | 1 | 2,000 | 4% |
| | | | | *Penicillium restrictum* | 1 | 2,000 | 4% |
| | | | | | | Total 46,000 | |
| 119290 drain boot | 1/2 | MEA | 1,000x | *Aspergillus versicolor* | 22 | 44,000 | 71% |
| | | | | *Paecilomyces marquandii* | 1 | 2,000 | 3% |
| | | | | *Penicillium chrysogenum* | 1 | 2,000 | 3% |
| | | | | *Penicillium decumbens* | 7 | 14,000 | 23% |
| | | | | | | Total 62,000 | |
| 119292 button trap front upper | 1/2 | MEA | 1,000x | *Aspergillus fumigatus* | 1 | 2,000 | 2% |
| | | | | *Aspergillus sydowii* | 9 | 18,000 | 18% |
| | | | | *Aspergillus versicolor* | 14 | 28,000 | 28% |
| | | | | *Paecilomyces marquandii* | 16 | 32,000 | 32% |
| | | | | *Penicillium chrysogenum* | 1 | 2,000 | 2% |
| | | | | *Penicillium citrinum* | 1 | 2,000 | 2% |
| | | | | *Penicillium corylophilum* | 1 | 2,000 | 2% |
| | | | | *Penicillium decumbens* | 4 | 8,000 | 8% |
| | | | | *Penicillium restrictum* | 1 | 2,000 | 2% |
| | | | | *Penicillium viridicatum* | 2 | 4,000 | 4% |
| | | | | | | Total 100,000 | |
| 119294 button trap back lower | <1/2 | MEA | 100x | *Aspergillus versicolor* | 16 | >3,200 | 89% |
| | | | | *Penicillium implicatum* | 1 | >200 | 6% |
| | | | | *Penicillium viridicatum* | 1 | >200 | 6% |
| | | | | | | Total >3,600 | |

# Prestige EnviroMicrobiology, Inc

AIHA Environmental Microbiology PAT Program participant
Laboratory ID Number 192810
Website: www.prestige-em.com

| 119299 top of spinner support | 1/2 | MEA | 1,000x | Aspergillus sydowii | 1 | 2,000 | 1% |
|---|---|---|---|---|---|---|---|
| | | | | Aspergillus versicolor | 92 | 180,000 | 67% |
| | | | | Penicillium decumbens | 5 | 10,000 | 4% |
| | | | | Penicillium implicatum | 1 | 2,000 | 1% |
| | | | | Penicillium restrictum | 37 | 74,000 | 27% |
| | | | | Penicillium variabile | 1 | 2,000 | 1% |
| | | | | | | Total 270,000 | |
| 119301 gasket – tub flange 6:00 | 1/2 | MEA | 10,000x | Aspergillus flavipes | 8 | 160,000 | 36% |
| | | | | Aspergillus fumigatus | 7 | 140,000 | 32% |
| | | | | Aspergillus versicolor | 5 | 100,000 | 23% |
| | | | | Penicillium viridicatum | 2 | 40,000 | 9% |
| | | | | | | Total 440,000 | |

## Culture Method: Culture Analysis of Bulk Samples for Fungi Speciation

| Client sample ID Location | Wt. (g) | Medium used | Dilution factor | Fungal Identification | Colony counts | Conc. (CFU/ g) | Percentage |
|---|---|---|---|---|---|---|---|
| 119286 Back (rear half) of outer tub | 0.1152 | MEA | 10,000x | Aspergillus fumigatus | 2 | 170,000 | 1% |
| | | | | Aspergillus sydowii | 82 | 7,100,000 | 32% |
| | | | | Aspergillus versicolor | 41 | 3,600,000 | 16% |
| | | | | Penicillium decumbens | 42 | 3,600,000 | 16% |
| | | | | Penicillium fellutanum | 8 | 690,000 | 3% |
| | | | | Penicillium restrictum | 78 | 6,800,000 | 31% |
| | | | | Penicillium variabile | 1 | 87,000 | <1% |
| | | | | | | Total 22,000,000 | |
| 119289 outer tub seal | 0.0456 | MEA | 1,000x | Aspergillus flavipes | 1 | 22,000 | <1% |
| | | | | Aspergillus fumigatus | 1 | 22,000 | <1% |
| | | | | Aspergillus sydowii | 3 | 66,000 | 1% |
| | | | | Aspergillus versicolor | 226 | 5,000,000 | 94% |
| | | | | Chaetomium globosum | 1 | 22,000 | <1% |
| | | | | Exophiala jeanselmei | 1 | 22,000 | <1% |
| | | | | Penicillium decumbens | 3 | 66,000 | 1% |
| | | | | Penicillium fellutanum | 1 | 22,000 | <1% |
| | | | | Penicillium restrictum | 3 | 66,000 | 1% |
| | | | | Penicillium variabile | 1 | 22,000 | <1% |
| | | | | | | Total 5,300,000 | |
| 119296 paddle | 0.0115 | MEA | 100x | Aspergillus fumigatus | 2 | 17,000 | 1% |
| | | | | Aspergillus sydowii | 4 | 35,000 | 2% |
| | | | | Aspergillus versicolor | 178 | 1,500,000 | 87% |
| | | | | Penicillium decumbens | 8 | 70,000 | 4% |
| | | | | Penicillium fellutanum | 2 | 17,000 | 1% |
| | | | | Penicillium restrictum | 4 | 35,000 | 2% |
| | | | | Penicillium variabile | 1 | 8,700 | <1% |
| | | | | Penicillium viridicatum | 3 | 26,000 | 1% |
| | | | | Scopulariopsis chartarum | 2 | 17,000 | 1% |
| | | | | | | Total 1,700,000 | |

## Prestige EnviroMicrobiology, Inc

AIHA Environmental Microbiology PAT Program participant
Laboratory ID Number 192810
Website: www.prestige-em.com

| 119297 spinner support | 0.1761 | MEA | 10,000x | Aspergillus ustus | 3 | 170,000 | 5% |
|---|---|---|---|---|---|---|---|
| | | | | Aspergillus versicolor | 6 | 340,000 | 10% |
| | | | | Penicillium decumbens | 6 | 340,000 | 10% |
| | | | | Penicillium restrictum | 37 | 2,100,000 | 60% |
| | | | | Penicillium viridicatum | 3 | 170,000 | 5% |
| | | | | Scopulariopsis chartarum | 7 | 400,000 | 11% |
| | | | | | | Total 3,500,000 | |
| 119298 top of spinner support | 0.0374 | MEA | 10,000x | Aspergillus versicolor | 12 | 3,200,000 | 50% |
| | | | | Penicillium decumbens | 3 | 800,000 | 13% |
| | | | | Penicillium restrictum | 9 | 2,400,000 | 38% |
| | | | | | | Total 6,400,000 | |

Report approved: _____
Theresa Lehman, MPH, Lab Director

Quality control check: _____
Chin S Yang, Ph.D.

Report review: _____

1. The samples in this report were received in good, acceptable conditions.
2. Percentage is for each group in total population.
3. Concentrations and percentages are rounded to the nearest two significant digits. Total percentage may not add up to 100% due to rounding.
4. MEA=2% malt extract agar.
5. All culture samples are incubated at $25\pm0.5°C$ unless otherwise indicated.
6. The detection limit of this analysis is one fungal colony. The quantitation limits vary from analysis to analysis and by air volume. Contact us to determine your quantitation limits.
7. For technical information on result interpretation, please visit www.Prestige-EM.com.

*Tait*

## Prestige EnviroMicrobiology, Inc

Client: United Analytical Services, Inc.

Client Project: 1099492-01

Sample date: 11-2-2010

Submittal date: 11-2-2010

Samples submitted by: Kevin Aikman

Data analysis completed: November 8, 2010

Prestige number: 101103-06

### Microscopic Method: Analysis of Tape-Lift Samples for Fungi by Optical Microscopy

| Client sample ID Location | Sample dimension | Fungal ID | Fungal structures observed | Fungal density | Notes |
|---|---|---|---|---|---|
| #EF-01T Gasket Inside | 3/4" x 3/4" | *Cladosporium* | spores, conidiophores, hyphae | 1 | Fungal growth |
| #EF-02T Gasket Inside | 3/4" x 3/4" | *Cladosporium* yeasts | spores, conidiophores, hyphae budding cells | 1 1 | Fungal growth |
| #EF-08T Front Half of Outer Tub | 3/4" x 3/4" | *Cladosporium* yeasts | spores, conidiophores, hyphae budding cells | 1 1 | Mites and their fecal matter observed; Bacteria observed; Fungal growth |
| #EF-09T Back Half of Outer Tub | 3/4" x 3/4" | yeasts | budding cells | 1 | Bacteria observed; Fungal growth |
| #EF-10T Back Half of Outer Tub – Rear Rib Str. | 3/4" x 3/4" | *Cladosporium* yeasts unknown | spores, conidiophores, hyphae budding cells other structures | 1 1 NA | Mites and their fecal matter observed; Nematodes observed; Bacteria observed; Fungal growth |
| #EF-07T Back of Det. Dispenser – Main Discharge Tube | 3/4" x 3/4" | *Cladosporium* | spores, conidiophores, hyphae | 5 | Bacteria observed; Fungal growth |

1. The samples in this report were received in good, acceptable conditions.
2. Fungal density rating 1-5 (1 being the lowest and 5 the highest) indicates density of fungal growth structures observed. No fungal density is provided for loose spores, hyphal fragments and other structures.

Report approved: _____
Theresa Lehman, MPH, Lab Director

Quality control check: _____
Chin S Yang, Ph.D.

Report review: _____

## *Prestige EnviroMicrobiology, Inc*

Client: United Analytical Services, Inc.

Client Project: 1099492.01

Sample date: 11-2-2010

Submittal date: 11-2-2010

Date of inoculation: 11-3-2010 (swabs)

Samples submitted by: Kevin Aikman

Data analysis completed: November 12, 2010

Prestige number: 101103-06

Culture Method: Culture Analysis of Swab Samples for Bacteria (Heterotrophic Plate Count)

| Client sample ID Location | Area (inch²) | Medium used | Dilution factor | Colony counts | Conc. (CFU/ inch²) |
|---|---|---|---|---|---|
| EF-01B Gasket Inside | 1 | PCA | 20,000x | 436 | 8,700,000 Total 8,700,000 |
| EF-02B Gasket Inside | 1 | PCA | 20,000x | 87 | 1,700,000 Total 1,700,000 |
| EF-03B Gasket Inside | 1 | PCA | 20,000x | 166 | 3,300,000 Total 3,300,000 |
| EF-04B Gasket Inside | 1 | PCA | 20,000x | 34 | 680,000 Total 680,000 |
| EF-05B Gasket Inside | 1 | PCA | 20,000x | 31 | 620,000 Total 620,000 |
| EF-06B Gasket Inside | 1 | PCA | 20,000x | 143 | 2,900,000 Total 2,900,000 |
| EF-07B Back of Detergent Dispenser – Main Drain | 1 | PCA | 20,000x | 138 | 2,800,000 Total 2,800,000 |
| EF-08B Front Half of Outer Tub | 1 | PCA | 20,000x | 474 | 9,500,000 Total 9,500,000 |
| EF-09B Back Half of Outer Tub | 1 | PCA | 20,000x | 497 | 9,900,000 Total 9,900,000 |
| EF-10B Back Half of Outer Tub – Rear Rib Str. | 1 | PCA | 20,000x | 248 | 5,000,000 Total 5,000,000 |
| EF-11B Bearing Seal | 1 | PCA | 20,000x | 482 | 9,600,000 Total 9,600,000 |
| EF-12B Spinner Support | 1 | PCA | 20,000x | 492 | 9,800,000 Total 9,800,000 |
| EF-13B Under Spinner Support | 1 | PCA | 20,000x | 334 | 6,700,000 Total 6,700,000 |
| EF-14B Drum Baffle | 1 | PCA | 20,000x | 357 | 7,100,000 Total 7,100,000 |
| EF-15B F. Blank | NA | PCA | 200x | NA | NA |

## *Prestige EnviroMicrobiology, Inc*

Report approved: _____

Theresa Lehman, MPH, Lab Director

Quality control check: _____

Chin S Yang, Ph.D.

Report review: _____

1. The samples in this report were received in good, acceptable conditions.
2. Percentage is for each group in total population.
3. Concentrations and percentages are rounded to the nearest two significant digits. Total percentage may not add up to 100% due to rounding.
4. PCA=plate count agar.
5. All culture samples are incubated at $25\pm0.5$°C unless otherwise indicated.
6. The detection limit of this analysis is one fungal or bacterial colony. The quantitation limits vary from analysis to analysis and by air volume. Contact us to determine your quantitation limits.

*Prestige EnviroMicrobiology, Inc*

*AIHA Environmental Microbiology PAT Program participant*
*Laboratory ID Number 192810*
*Website: www.prestige-em.com*

Client: United Analytical Serv., Inc.

Client Project: 1099492.01

Sample date: 11-2-2010

Submittal date: 11-2-2010

Inoculation dates: 11-3-2010 (Swab)

Samples submitted by: Kevin Aikman

Data analysis completed: November 15, 2010

Prestige number: 101103-06

Culture Method: Culture Analysis of Swab Samples for Fungi

| Client sample ID Location | Area (in²) | Medium used | Dilution factor | Fungal Identification | Colony counts | Conc. (CFU/ in²) | Percentage |
|---|---|---|---|---|---|---|---|
| EF-01M Gasket inside | 1 | MEA | 1,000x | Fusarium solani | 3 | 3,000 | 1% |
| | | | | Paecilomyces marquandii | 1 | 1,000 | <1% |
| | | | | Scolecobasidium constrictum | 6 | 6,000 | 2% |
| | | | | yeasts | 245 | 250,000 | 96% |
| | | | | | | Total 260,000 | |
| EF-02M Gasket inside | 1 | MEA | 10,000x | Scolecobasidium constrictum | 1 | 10,000 | 3% |
| | | | | yeasts | 32 | 320,000 | 97% |
| | | | | | | Total 330,000 | |
| EF-03M Gasket inside | 1 | MEA | 10,000x | Fusarium solani | 16 | 160,000 | 11% |
| | | | | Geotrichum candidum | 2 | 20,000 | 1% |
| | | | | yeasts | 127 | 1,300,000 | 88% |
| | | | | | | Total 1,500,000 | |
| EF-04M Gasket inside | 1 | MEA | 10,000x | Fusarium solani | 11 | 110,000 | 3% |
| | | | | Geotrichum candidum | 7 | 70,000 | 2% |
| | | | | Paecilomyces marquandii | 4 | 40,000 | 1% |
| | | | | Scolecobasidium constrictum | 15 | 150,000 | 4% |
| | | | | yeasts | 358 | 3,600,000 | 91% |
| | | | | | | Total 4,000,000 | |
| EF-05M Gasket inside | 1 | MEA | 10,000x | Fusarium solani | 11 | 110,000 | 6% |
| | | | | Geotrichum candidum | 4 | 40,000 | 2% |
| | | | | yeasts | 183 | 1,800,000 | 92% |
| | | | | | | Total 2,000,000 | |
| EF-06M Gasket inside | 1 | MEA | 1,000x | Aspergillus sydowii | 1 | 1,000 | <1% |
| | | | | Fusarium solani | 5 | 5,000 | 2% |
| | | | | Geotrichum candidum | 2 | 2,000 | 1% |
| | | | | Paecilomyces marquandii | 1 | 1,000 | <1% |
| | | | | Scolecobasidium constrictum | 1 | 1,000 | <1% |
| | | | | yeasts | 286 | 290,000 | 97% |
| | | | | | | Total 300,000 | |
| EF-07M Back of detergent dispenser – main drain | 1 | MEA | 10,000x | Aspergillus sydowii | 1 | 10,000 | 3% |
| | | | | Cladosporium spp. | 18 | 180,000 | 62% |
| | | | | Geotrichum candidum | 1 | 10,000 | 3% |
| | | | | Scolecobasidium constrictum | 9 | 90,000 | 31% |
| | | | | | | Total 290,000 | |

# Prestige EnviroMicrobiology, Inc
*AIHA Environmental Microbiology PAT Program participant*
*Laboratory ID Number 192810*
*Website: www.prestige-em.com*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| EF-08M<br>Front half of<br>outer tub | 1 | MEA | 10,000x | *Cladosporium* spp.<br>*Geotrichum candidum*<br>*Scolecobasidium constrictum*<br>yeasts | 13<br>1<br>1<br>9 | 130,000<br>10,000<br>10,000<br>90,000<br>Total 240,000 | 54%<br>4%<br>4%<br>38% |
| EF-09M<br>Back half of<br>outer tub | 1 | MEA | 1,000x | *Geotrichum candidum*<br>*Rhodotorula glutinis*<br>*Scolecobasidium constrictum*<br>yeasts | 1<br>1<br>1<br>31 | 1,000<br>1,000<br>1,000<br>31,000<br>Total 34,000 | 3%<br>3%<br>3%<br>91% |
| EF-10M<br>Back half of<br>outer tub – rear<br>rib str. | 1 | MEA | 1,000x | *Aspergillus carbonarius*<br>*Penicillium* spp.<br>*Trichoderma atroviride*<br>yeasts | 2<br>2<br>1<br>92 | 2,000<br>2,000<br>1,000<br>92,000<br>Total 97,000 | 2%<br>2%<br>1%<br>95% |
| EF-11M<br>Bearing seal | 1 | MEA | 100x | *Acremonium kiliense*<br>*Aspergillus sydowii*<br>*Chaetomium globosum*<br>*Harposporium anguillulae*<br>*Penicillium* sp.<br>*Scolecobasidium constrictum* | 6<br>5<br>3<br>53<br>1<br>14 | 600<br>500<br>300<br>5,300<br>100<br>1,400<br>Total 8,200 | 7%<br>6%<br>4%<br>65%<br>1%<br>17% |
| EF-12M<br>Spinner support | 1 | MEA | 10,000x | *Acremonium kiliense*<br>*Aspergillus carbonarius*<br>*Paecilomyces marquandii*<br>*Scolecobasidium constrictum* | 51<br>1<br>3<br>2 | 510,000<br>10,000<br>30,000<br>20,000<br>Total 570,000 | 89%<br>2%<br>5%<br>4% |
| EF-13M<br>Under spinner<br>support | 1 | MEA | 1,000x | *Acremonium kiliense*<br>*Fusarium solani*<br>*Scolecobasidium constrictum* | 2<br>23<br>5 | 2,000<br>23,000<br>5,000<br>Total 30,000 | 7%<br>77%<br>17% |
| EF-14M<br>Drum baffle | 1 | MEA | 100x | *Fusarium solani*<br>*Harposporium anguillulae* | 2<br>1 | 200<br>100<br>Total 300 | 67%<br>33% |
| EF-15M<br>Field blank | NA | MEA | 100x | No fungal growth detected | NA | NA | NA |

Report approved: _____
Theresa Lehman, MPH, Lab Director

Quality control check: _____
Chin S Yang, Ph.D.

Report review: _____

1. The samples in this report were received in good, acceptable conditions.

# Prestige EnviroMicrobiology, Inc

*AIHA Environmental Microbiology PAT Program participant*
*Laboratory ID Number 192810*
*Website: www.prestige-em.com*

2. Percentage is for each group in total population.

3. Concentrations and percentages are rounded to the nearest two significant digits. Total percentage may not add up to 100%
due to rounding.

4. MBA=2% malt extract agar.

5. All culture samples are incubated at 25±0.5°C unless otherwise indicated.

6. The detection limit of this analysis is one fungal colony. The quantitation limits vary from analysis to analysis and by air
volume. Contact us to determine your quantitation limits.

7. For technical information on result interpretation, please visit www.Prestige-BM.com.

# EXHIBIT 5

# EPPSTEINER & FIORICA ATTORNEYS
LLP

| San Diego | Stuart M. Eppsteiner' | Colorado |
|---|---|---|
| 11355 High Bluff Drive | Andrew E. Fiorica | 1426 Pearl Street |
| Suite 155 | Robert J. Priblish | Suite 202 |
| San Diego, California 921 30 | Brian K. Findley | Boulder, Colorado 80 102 |
| Tel (858) 350-1500 | Andrew J. Kubik | Tel (877) 480-1500 |
| Fax (858) 350-1501 | ' Also Admitted In Colorado | Fax (858) 350-1501 |

www.eppsteiner.com

December 15, 2009

## VIA CERTIFIED U.S. MAIL – RETURN RECEIPT REQUESTED

| BSH Home Appliances Corporation 5551 McFadden Avenue Huntington Beach, CA 92649 | Pacific Sales, Inc. 24120 Garnier Street Torrance, CA 90505 |
|---|---|
| Michael Traub 5551 McFadden Avenue Huntington Beach, CA 92649 | Pacific Sales Kitchen and Bath Centers, Inc. 7601 Penn Avenue S. Richfield, MN 55423 |
| Best Buy Company Incorporated Legal Department 7601 Penn Avenue S. Richfield, MN 55423 | CT Corporation Re: Pacific Sales Kitchen and Bath Centers, Inc. 818 West Seventh Street Los Angeles, CA 90017 |

**Re:** **Notice of Violation of the California Consumer Legal Remedies Act (California Civil Code section 1750 et seq.) Related to the Advertising and Marketing of Bosch Frontload Washing Machines**

To Whom It May Concern:

The law firm of Eppsteiner & Fiorica Attorneys, LLP represents Nancy Wentworth, a California resident who purchased a Bosch DLX Series frontload washing machine from Pacific Sales, Inc. of Torrance, California for her personal, family and household use.

This letter serves as a pre-litigation notice of BSH Home Appliances Corporation's ("Bosch") violations of California Civil Code § 1750 et. seq., the California Legal Remedies Act ("CLRA") and demand for corrective action pursuant to the CLRA. This pre-litigation notification is made on behalf of Ms. Wentworth and all consumers that are similarly situated to Ms. Wentworth (e.g. other buyers of front load washing machines manufacturers by Bosch and sold under the brands Bosch and Siemens ("Machines").

Bosch has engaged in acts and practices, which are proscribed by the CLRA (See §

74847

BSH Home Appliances
December 13, 2009
Page 2

1770), by selling its defective frontload washers under the Bosch and Siemens brands.
Specifically the Machine(s) have inherent design defects, defects in component parts and defects
in workmanship that cause them to:

1.        retain water and moisture;
2.        retain detergent and fabric softener such that residue accumulates and
causes the growth of mold, mildew and similar bio-organic material
("Mold") and malodorous scents resulting from their presence;
3.        accumulate residue and Mold, and emit malodorous scents after the
Machines are operated using the amount and type of detergent or softener
Bosch recommends;
4.        accumulate residue when detergent and softener dispenser compartments
are filled to, or below, the detergent and softener fill lines Bosch placed in
the Machines;
5.        grow and accumulate Mold on parts, pieces and areas that are within the
Machines;
6.        produce foul and noxious odors;
7.        grow and retain Mold and make clothes washed in the Machines smell
moldy and malodorous;
8.        be unsafe for the ordinary purpose for which the washing machines were
designed and sold (e.g. making clothes clean and removing unpleasant
odors);
9.        not be able to clean themselves in a manner necessary for a Machine to
produce clean clothes free of malodorous smells; and
10.     be run with high temperature water and/or with special scented or anti-
mold agents in an effort to temporarily remove Mold and malodorous
smells associated with the presence Mold.

The defects result in Mold growing on and becoming imbedded in the rubber
gasket/bellows/boot and/or the portions of the washer adjacent to, or in contact with, the door
gasket/bellows/boot.

Water and moisture are retained in areas of the Machines that cause and allow Mold to
appear, grow and be retained within the Machines. The presence of Mold causes: 1) the
Machines to smell malodorous; 2) clothes washed in the Machines to smell malodorous; 3)
clothes washed in the Machines to be rendered worth less; and 4) illness and injury to people.

The Machines are designed, made of component parts and materials, and assembled such
that it is impossible to clean the Machines of Mold once Mold appears in or on materials within
the Machines.

Bosch knew before it sold the Machines that they would cause Mold to grow inside of
them and would make clothes washed in them smell malodorous. Furthermore, Bosch knew that
Mold causes adverse reactions in many people causing illness and injury. However, Bosch
concealed this material information from Ms. Wentworth, all similarly situated consumers, and
all parties in the chain of commerce that led to Ms. Wentworth's purchase and similarly situated

BSH Home Appliances
December 15, 2009
Page 3

consumers' purchases of Machines. Had Bosch made said material information known to Ms. Wentworth and all other similarly situated consumer purchasers of Machines, none of them would have bought a Machine.

Selling washing machines that have inherent properties that cause Mold to grow and accumulate and which Mold impregnates portions of the Machines and clothes washed in them with malodorous scents violates <u>California Civil Code § 1770</u>. These violations include, but are not limited to subsections 1770(a)(5) and 1770(a)(7) by representing that the Machines (i) have "... characteristics, ... uses, [or] benefits, ... which [they do] not have," and/or (ii) are of "a particular standard, quality, or grade."

## <u>Bosch's Omissions of Material Facts in Violation of the CLRA</u>

As described above, Bosch misrepresented the use and characteristics of the Machines through concealment and omission of material facts. Bosch failed to inform consumers directly or through wholesalers and retailers that Mold would grow in their Machines and that clothes washed in the Machines would smell like Mold and carry malodorous scents when the Machines were used in a foreseeable manner and as recommended by Bosch. A washing machine is used to clean clothes and rid them of bad smells. The Machines make clothes smell bad and carry Mold. The Machines were misrepresented regarding their characteristics, uses and benefits. They do not clean clothes; rather they make them moldy and smell bad.

## <u>Bosch's Misrepresentations of the Uses, Benefits and Characteristics of the Machines</u>

At the most basic level, the function of a washing machine is to clean clothes so that they are clean and either fresh smelling, or at the very least, odorless. The Machines fail this most basic purpose. The Machines do not clean things, which is the use for which they were sold and the benefit of using them. The fact that Bosch knew the Machines generated mold and made clothes washed in them smell moldy means that Bosch knew it was not selling products that washed clothes. Effectively, calling the Machines "washing machines" or "washers" was a misrepresentation of their characteristics, benefits and uses. Bosch did not intend to sell a washing machine as advertised (e.g. one that cleans clothes, since it knew the Machines would grow and accumulate mold). The very representation that the Machines are "washing machines" is false. All representations Bosch made with regard to cleanliness of laundry that comes out of the Machines is also false.

Bosch also violated the California Consumer Legal Remedies Act, <u>California Civil Code § 1770</u>(a)(9) by "advertising goods or services with intent not to sell them as advertised." First, Bosch knew the Machines grew and accumulated mold. Second, it knew when it advertised the Machines as "washing machines" or "washers" that the Machines would not wash or clean things, but make them moldy and smelly. Therefore, Bosch advertised the Machines with the intention of not selling machines that washed or cleaned clothes.

BSH Home Appliances
December 15, 2009
Page 4

## Mold Issues

Mold, according to the Federal Centers for Disease Control and Prevention, can cause
symptoms that include nasal stuffiness, eye irritation, wheezing, skin irritation, fever, and
shortness of breath. For people with chronic lung illnesses, mold infections can develop in their
lungs, and exposure to mold can also bring on asthma attacks.

In response to consumer complaints about the mold problem, Bosch employees have
recommended that consumers periodically run extra bleach and hot water cleaning cycles, and
wipe-down the drum and bellows after each wash. These recommendations are not part of
normal washing machine ownership. The need to spend money to remove the malodorous scent
from the Machines and to pay for electricity and water needed to run hot water cycles to try and
redress the effects of the Machines' defects is a damage each Machine owner has borne and one
that will grow and increase with time.

Water accumulates in or adjacent to the door frame gasket/bellow of the Machines after
every wash cycle. This post-wash moisture and water accumulation is the result of defects
inherent in the Machines about which Ms. Wentworth, and others similarly situated, complain.

### Request for Material That Supports Bosch's Failure to Disclose that the Machines Grow and Accumulate Mold

On behalf of our clients and absent class members, we ask that Bosch provide all
information and data, including when said information and data came into Bosch's
possession, which supports the conclusion that the Machines do not grow and accumulate
mold. If Bosch fails to produce this information within thirty calendar days, it will be
presumed that Bosch has no information that the Machines do not grow and accumulate
mold, further demonstrating that Bosch concealed material information and
misrepresented the Machines' uses, characteristics, benefits and did not intend to sell the
Machines as advertised.

### Demand for Corrective Action & Response to This Demand

On behalf of Ms. Wentworth, and all similarly situated Machine owners, we hereby
demand that Bosch correct, repair or modify their Machines so that they do not cause Mold to
grow within them and make clothes washed in them malodorous. An alternative to repair or
modification is for Bosch to provide replacement Machines to Ms. Wentworth and all similarly
situated consumers. Our clients are also open to consider accepting cash payments from Bosch
so they can purchase replacement washing machines if Bosch will not offer to repair/modify
them so that they will not grow and accumulate mold.

Replacement of Machine door frame gasket/bellows/boot with a new gasket/bellows/boot
that is the same as the original gasket/bellows/boot will not be a repair or remedy of the defect
that causes Mold to grow in Bosch front load gasket/bellows/boot. The replacement of a part
that is the same that was used in the Machines' original manufacture will only assure future mold
growth in the Machines. To repair the conditions that cause mold to grow in the Machines,

74847

BSH Home Appliances
December 13, 2009
Page 5

Bosch must provide a repair or modification of the Machines that keeps Mold from growing on and in the Machines. To date it has not done so. However, this office, on behalf of Ms. Wentworth and all similarly situated Machine purchasers, remains open to learning about Bosch's proposals of how to modify and truly repair the Machines so that mold will not grow within them. Please call me as soon as possible to discuss Bosch's proposals to address the matters described above.

Please, within **30 calendar days** of your receipt of this letter, agree to repair and modify the Machines so that they indefinitely do not grow mold inside of them. If Bosch does not contact me to address the foregoing matter, our client, and through him, those similarly situated, will sue Bosch for, among other things, violation of the California Consumer Legal Remedies Act (California Civil Code § 1750 et. seq.).

## Demand Bosch Not Destroy Writings and Preserve the Writings Listed Below

The last point of this letter is to demand that Bosch preserve and maintain all of the following "Writings[1]" pending its production to us in litigation or the resolution of this matter:

a. Writings regarding the growth, presence and accumulation of mold, mildew, or similar bio-organic material in Bosch frontload washing machines sold in California (the "Machine(s)");

b. Writings that are advertisements, brochures, pamphlets, sales and marketing material disseminated in or from California and that are regarding the Machines;

c. Writings that were, or are with regard to communications to wholesalers or retailers in the chain or distribution of the Machines sold in California.

d. Writings that Bosch intended to be disseminated to Machine purchasers and that are regarding the Machines;

e. Writings that are complaints or are regarding complaints communicated from any source regarding the Machines;

f. Writings that communicate all or some of the following: the names, addresses, phone numbers of Machine owners;

g. Writings that communicate complaints regarding the performance of a Machine;

---

[1] The term or terms "WRITING" and "WRITINGS" as used herein means writings as defined in California Evidence Code § 250, and includes the original or a copy of handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them. "WRITINGS" also includes all electronic or magnetic files, or mediums that store information, including but not limited to electronic or computer stored files, email, CAD files, spreadsheets, databases, data used in a database, PowerPoint presentations, or other firm of computer based visual presentations. "WRITINGS" that exist in electronic, magnetic or computer based formats include as part of those "WRITINGS" any associated metadata, including date and time stamps. Do not remove metadata from the "WRITINGS".

7-18-17



BSH Home Appliances
December 15, 2009
Page 6

h.     Writings from absent class members regarding breaches of Bosch's express warranty that applied to the Machines;

i.     Writings that identify the names, addresses and phone numbers of entities which Bosch approved and authorized to service/repair the Machines;

j.     Writings to Bosch approved service/repair providers regarding Mold in the Machines;

k.     Writings regarding how many Machines Bosch manufactured and sold in the United States in the last ten years;

l.     Writings that identify the names, addresses and phone numbers of Bosch authorized wholesalers and retailers of the Machines;

m.     Writings that are or with regard to communications between Bosch and the Consumer Product Safety Commission;

n.     Writings regarding the health hazard of Mold in the Machines;

o.     Writings regarding health risks to household members that live in homes with frontload washers that have mold in them; and

p.     Writings regarding safety issues relating to leaving the door open after each use.

I look forward to being contacted by Bosch and receipt of its proposal to remedy the Mold problem in the Machines.

Yours truly,

EPPSTEINER & FIORICA ATTORNEYS, LLP

Stuart M. Eppsteiner

SME/AJK/mmg
Enclosure: Service List of Addresses to Which Letter was sent via certified mail return receipt requested.

7-4347

TITLE OF MATTER
Bosch DLX Series Frontload Washing Machines
ATTORNEY(S) NAME AND ADDRESS
TELEPHONE  858-350-1500
Stuart M. Eppsteiner, SBN 98973
Andrew P. Fiorica, SBN 200732
Eppsteiner & Fiorica Attorneys, LLP
12555 High Bluff Drive, Suite 155
San Diego, CA 92130
ATTORNEY(S) FOR: Nancy Wentworth

## PROOF OF SERVICE
C.C. P. 1010.5, 1010.6, 1010.2, 1013a (3)

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I am employed in the county of San Diego, State of California.  I am over the age of 18 and not a party to the matter; m business address is: Eppsteiner & Fiorica Attorneys, LLP, 12555 High Bluff Drive, Suite 155, San Diego, CA 92130.

On December 15, 2009, I served the following document(s) described as: **NOTICE OF VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT** on interested parties as follows:

| | |
|---|---|
| BSH Home Appliances Corporation<br>5551 McFadden Avenue<br>Huntington Beach, CA 92649 | Pacific Sales, Inc.<br>24120 Garnier Street<br>Torrance, CA 90505 |
| Michael Traub<br>5551 McFadden Avenue<br>Huntington Beach, CA 92649 | Pacific Sales Kitchen and Bath Centers, Inc.<br>7601 Penn Avenue S.<br>Richfield, MN 55423 |
| Best Buy Company Incorporated<br>Legal Department<br>7601 Penn Avenue S.<br>Richfield, MN 55423 | CT Corporation<br>Re: Pacific Sales Kitchen and Bath Centers, Inc.<br>818 West Seventh Street<br>Los Angeles, CA 90017 |

X       **(BY CERTIFIED MAIL, RETURN RECEIPT)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S postal service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

X       (State) I declare under penalty of perjury under the laws of the state of California that the above is true and correct.

Dated: December 15, 2009

_____
LUPE SURO HORN

7-1870

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☑ Agent ☐ Addressee

B. Received by ( Printed Name )

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

DEC 2 1 2009

1. Article Addressed to:

Pacific Sales Kitchen
and Bath Centers, Inc.
7601 Penn Ave S.
Richfield, MN 55423

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (or from service label)
7000 1670 0009 7954 2746

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee

B. Received by ( Printed Name )

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

1. Article Addressed to:

CT Corporation
RE: Pacific Sales Kitchen
and Bath Centers, Inc.
818 West Seventh Street
Los Angeles CA 90017

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (or from service label)
7000 1670 0009 7954 2739

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee

B. Received by ( Printed Name )

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

1. Article Addressed to:

BSH Home Appliances Corp
5351 McFadden Avenue
Huntington Beach CA 92649

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (or from service label)
7000 1670 0009 7954 2___

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Michael Traub
5551 McFadden Avenue
Huntington Beach CA 9264?

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
12-15-09

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:            ☐ No

3. Service Type
☐ Certified Mail     ☐ Express Mail
☐ Registered         ☐ Return Receipt for Merchandise
☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7000 1670 0009 7954 2175

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Best Buy Company, Inc
Legal Department
7601 Penn Avenue S
Richfield, MN 55423

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:            ☐ No

DEC 2 1 2009

3. Service Type
☐ Certified Mail     ☐ Express Mail
☐ Registered         ☐ Return Receipt for Merchandise
☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7000 1670 0009 7954 2788

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540