Stuart M. Eppsteiner (SBN 098973)
sme@eppsteiner.com
Andrew J. Kubik (SBN 246902)
ajk@eppsteiner.com
EPPSTEINER & FIORICA ATTORNEYS, LLP
12555 High Bluff Dr., Ste. 155
San Diego, CA 92130
Telephone: (858) 350-1500
Facsimile: (858) 350-1501

Kristen Law Sagafi (SBN 222249)
klaw@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Attorneys for Plaintiffs and the Proposed
Settlement Class*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SHARON COBB, et al., individually and on behalf of all others similarly situated,,<br><br>Plaintiffs,<br><br>v.<br><br>BSH HOME APPLIANCES CORPORATION, a Delaware Corporation,<br><br>Defendant. | Case No. SACV10-711 DOC (ANx)<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: June 1, 2015<br>Time: 8:30 a.m.<br>Place: Courtroom 9D<br><br>Assigned to:<br>District Judge: Hon. David O. Carter<br><br>Magistrate Judge: Hon. Arthur Nakazato |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 1, 2015, at 8:30 a.m., in the Courtroom of the Honorable David O. Carter, United States District Judge for the Central District of California, located at 411 West Fourth Street, Room 1053, Santa Ana, California 92701-4516, Plaintiffs Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth, on behalf of themselves and all others similarly situated, will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an Order granting final approval of the proposed Settlement Agreement, and for other related relief.

This Motion is based on the accompanying Memorandum of Points and Authorities and all exhibits thereto, any papers filed in reply, the argument of counsel, and all papers and records on file in this matter.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION.................................................................i

MEMORANDUM OF POINTS AND AUTHORITIES...........................................1

    I.      INTRODUCTION ................................................................1

    II.     LITIGATION HISTORY ......................................................2

          A.    Procedural History ..................................................2

          B.    Plaintiffs' Factual Allegations and Claims................4

          C.    Discovery..................................................................4

          D.    Settlement Negotiations...........................................5

    III.    SUMMARY OF THE SETTLEMENT TERMS.......................6

          A.    Settlement Class......................................................6

          B.    Settlement Consideration..........................................6

          C.    Attorneys' Fees and Costs and Service Awards........7

          D.    Settlement Release...................................................7

          E.    Class Notice Program ..............................................8

    IV.    LEGAL STANDARD .........................................................8

    V.     DISCUSSION ....................................................................10

          A.    The Settlement provides meaningful benefits while avoiding the significant risks of continued litigation. ............. 10

          B.    The Settlement is informed by extensive discovery and litigation, was reached with the aid of well-regarded mediators, and is endorsed by qualified and experienced Class Counsel...........................................................12

          C.    Government officials have not objected to the Settlement.......14

          D.    Class Members have reacted positively to the Settlement. ......14

    VI.    CONCLUSION..................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Astiana v. Kashi Co.*,
2014 U.S. Dist. LEXIS 127624 (S.D. Cal. Sept. 2, 2014) ...................................15

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988).........................................................................12

*Churchill Vill., LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ...................................................................10, 12, 14

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013)...........................................................................................3

*Create-A-Card, Inc. v. Intuit, Inc.*,
2009 U.S. Dist. LEXIS 93989 (N.D. Cal. Sept. 22, 2009)................................15

*Eisen v. Porsche Cars N. Am., Inc.*,
No. 2:11-CV-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) .............14

*In re Heritage Bond Litig.*,
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)..................................14

*In re Linerboard Antitrust Litig.*,
296 F. Supp. 2d 568 (E.D. Pa. 2003) ..................................................................12

*In re Pharm. Indus. Average Wholesale Price Litig.*,
252 F.R.D. 83 (D. Mass. 2008)............................................................................11

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions
Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) .........................................................................14

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir. 1998) .............................................................................12

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ...............................................................................11

*McKenzie v. Federal Exp. Corp.*,
No. CV 10-02420 GAF (PLAx), 2012 U.S. Dist. LEXIS 103666,
2012 WL 2930201 (C.D. Cal. July 2, 2012).........................................................11

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012), *leave to appeal denied*, 13-80000,
2013 U.S. App. LEXIS 7023 (9th Cir. Apr. 1, 2013), *cert. denied*,
134 S. Ct. 1273 (U.S. 2014)...................................................................................2

*Van Ba Ma v. Covidien Holding, Inc.*,
No. SACV 12-2161, 2014 U.S. Dist. LEXIS 76359
(C.D. Cal. May 30, 2014) ..........................................................................9, 12, 14

# TABLE OF AUTHORITIES
## (continued)

Page

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) .......................................................... 11

**RULES**

Fed. R. Civ. P. 23(e) ...................................................................................... i

**TREATISES**

Newberg on Class Actions, § 13:53 (5th ed. 2013) .................................... 14

**OTHER AUTHORITIES**

Manual for Complex Litigation (3d ed. 1995)
  § 30.42 .................................................................................................... 14

Manual for Complex Litigation (4th ed. 2004)
  §§ 21.63, et seq. ....................................................................................... 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiffs Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth ("Plaintiffs"), individually and as representatives of the proposed Settlement Class, submit this Memorandum in support of their motion for final approval of the proposed Settlement Agreement ("Settlement") with Defendant BSH Home Corporation ("BSH"). [1]

The proposed Settlement extends substantial cash relief to consumers nationwide who purchased 27" BSH front-loading washers ("Washers"), which Plaintiffs allege have a propensity to develop biofilm, mold, and foul odors ("BMFO").  The relief is available upon completion of an easy and straightforward claim form.  At the same time, the Settlement saves Class Members the substantial risks of ongoing litigation, including the uncertainty in the pending motions, at trial, and on appeal.  The Court-approved class notice has commenced and will be completed on schedule, and constitutes the best practicable notice through its combination of direct, publication, and online notice to the Class.  While it is still very early in the claims period, there have been no opt-outs and only two objections so far.

The Settlement is the result of two mediation sessions supervised by retired judges, in addition to direct negotiations following those sessions.  The hard-fought negotiations started well after substantial fact discovery and motions practice had taken place, including class certification, and concluded only after the parties had completed expert discovery and had briefed summary judgment, decertification, and numerous *Daubert* challenges.

Final approval of this valuable Settlement is appropriate and should be granted.

---

[1] Unless otherwise noted, capitalized terms have the same meaning as in the proposed Settlement Agreement.  *See* Dkt. 363-1[Agreement] at 5-7 (§ II).

## II.    LITIGATION HISTORY

### A.    Procedural History

Plaintiffs Diana Tait and Wentworth filed their Corrected First Amended Complaint against BSH on July 8, 2010.  Dkt. 4.  On February 14, 2011, Plaintiffs Sharon Cobb, Gibson, Isabella, Tait and Wentworth filed the Consolidated Amended Complaint ("CAC").  Dkt. 41.  BSH moved to dismiss the CAC.  Dkt. 43. In the meantime, the consolidated action was transferred from Judge Cormac J. Carney to this Court.  Dkt. 58.  The Court granted BSH's motion to dismiss with leave to amend (Dkt. 60), and Plaintiffs filed a Second Consolidated Amended Complaint ("SCAC") on June 3, 2011.  Dkt. 66.  BSH renewed its motion to dismiss (Dkt. 67), which the Court granted in part, and denied in part.  Dkt. 74. BSH answered the SCAC on September 21, 2011. Dkt. 75.[2]

Plaintiffs moved for certification of their California, Illinois, Maryland, and New York consumer fraud claims and California and New York implied warranty claims on May 16, 2012.  Dkt. 87.  BSH opposed the certification motion and moved to strike Plaintiffs' experts' opinions.  Dkts. 96-102, 103-104.  In an Order dated December 20, 2012 (Dkt. 166), this Court certified a four-state class and denied BSH's motion to exclude Plaintiffs' engineering and biology experts' opinions. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012), *leave to appeal denied*, 13-80000, 2013 U.S. App. LEXIS 7023 (9th Cir. Apr. 1, 2013), *cert. denied*, 134 S. Ct. 1273 (U.S. 2014) .

BSH petitioned the Ninth Circuit for permission to appeal the class certification order on January 3, 2013.  App. Dkt. 1.  At the same time, petitions for certiorari were pending in similar moldy washer cases against Whirlpool Corporation ("*Whirlpool*" or "*Glazer*"), and Sears, Roebuck & Co. ("*Kenmore*" or

---

[2] Plaintiff Cobb's claims were dismissed, and Plaintiff Demereckis was substituted in for Plaintiff Tait in the Third Consolidated Amended Complaint. Dkt. 190.  The current class representatives are Plaintiffs Dennis Demereckis, Beverly Gibson, Trish Isabella, and Nancy Wentworth.

"*Butler*") challenging class certification decisions by the Sixth and Seventh Circuits. On April 1, 2013, the Supreme Court granted certiorari in both *Glazer* and *Butler*, vacated the Sixth and Seventh Circuit rulings, and remanded for reconsideration in light of *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ("GVR Orders"). The same day, the Ninth Circuit denied BSH's petition for review. App. Dkt. 32. BSH filed a motion for reconsideration, which the Ninth Circuit denied on May 23, 2013. App. Dkts. 33-34. Following the GVR Orders, the Sixth and Seventh Circuits reaffirmed their earlier decisions, and Whirlpool and Sears once again petitioned for certiorari. Earlier, on July 30, 2013, BSH had filed its own petition for a writ of certiorari from the Ninth Circuit's denial of permission to appeal. The petitions for all three cases were denied on February 24, 2014.[3]

BSH filed a motion for sanctions related to Plaintiffs' damages experts, which the Court denied on August 20, 2014. Dkts. 232, 252. Plaintiffs filed a motion for spoliation sanctions related to discovery issues, which was also denied. Dkt. 265.

On August 25, 2014, the Court approved Plaintiffs' proposed Notice Plan and draft forms of notice to the Class. Dkt. 258. Certification notice was disseminated to California, Illinois, Maryland, and New York Class Members beginning in late September.

On August 29, 2014, BSH filed a motion for partial summary judgment. Dkt. 259. Ten days later, BSH filed a motion to decertify the classes. Dkt. 276. The parties also filed cross-motions to exclude each other's experts' opinions on the motions and at trial ("*Daubert* motions"). Dkts. 289, 335. At the time of settlement, the partial summary judgment and decertification motions had been fully briefed and were awaiting hearing and final rulings, and *Daubert* replies were days from being filed.

---

[3] On October 30, 2014, following a three-week trial, a jury in the Northern District of Ohio returned a unanimous defense verdict in *Whirlpool*.

## B.     Plaintiffs' Factual Allegations and Claims

Plaintiffs' claims against BSH are on behalf of all U.S. residents who purchased one or more Bosch or Siemens brand 27-inch front-loading washing machines. Dkt. 370 [Provisional Fourth Amended Complaint] ¶ 2.[4] Plaintiffs alleged that BSH designed, manufactured, marketed, and sold Washers with a propensity to develop bacteria, mold and foul odors ("BMFO"), and that BSH failed to disclose this defect or the extraordinary tasks required to abate or ameliorate BMFO. *Id.* at ¶¶ 4-7, 44-45. Plaintiffs brought claims against BSH for violations of state consumer protection statutes, common law fraudulent concealment/nondisclosure, breach of express and implied warranties, and unjust enrichment. *Id.* at ¶¶ 98-207

## C.     Discovery

Discovery in this matter was extensive and contentious. Plaintiffs served multiple sets of document requests, interrogatories, and requests for admissions. Ex. A [Sagafi Decl.] ¶ 8. BSH produced tens of thousands of pages of documents, including detailed consumer complaint records and internal correspondence regarding the design and marketing of the Washers. *Id.* The parties took and defended 28 fact witness depositions, including key BSH marketing, engineering, and consumer complaint employees and former employees. These depositions took place across the country and in The Netherlands. *Id.* The Plaintiffs were also deposed. *Id.*, ¶ 22.

Expert discovery was equally comprehensive. In total, the parties presented 21 experts who together prepared and served 32 expert reports, including eight disclosed during the class certification stage. The experts prepared reports related to the Washers' allegedly defective design, mold growth and testing, consumer

---

[4] Plaintiffs originally alleged claims related to the 24-inch machines, but those claims were not certified, are not included in the settlement, and will not be released. As noted, the operative Fourth Amended Consolidated Complaint clarifies that the Class includes only purchasers of the 27-inch machines.

complaints, consumer perception of BSH's marketing and alleged non-disclosures, and damages. Ex. A [Sagafi Decl.] ¶ 9. The parties took and defended a total of 26 expert depositions, with some of the experts being deposed both at the class certification and the merits phases. *Id.*

### D.  Settlement Negotiations

The Parties first mediated their dispute on December 8, 2013 with Hon. Daniel S. Pratt (Ret.) at JAMS in Orange, CA. Prior to that mediation, the parties met at the Los Angeles offices of Jones Day on December 3, 2013, at which time Plaintiffs presented their theory of class-wide damages. Ex. A [Sagafi Decl.] ¶ 12. At the time of the first mediation, this case and similar cases against other manufacturers of front load washing machines were facing the possibility of U.S. Supreme Court review. The case did not settle. *Id.*

Pursuant to the Court's Scheduling Order dated June 30, 2014, the Parties mediated again, this time with Hon. Dickran Tevrizian (Ret.), on September 8, 2014. The Parties reached agreement on some significant issues, but did not reach full agreement on all terms. *Id.* ¶ 13.

Following the second mediation, the Parties resumed active litigation, including continued expert work and briefing on BSH's motion for summary judgment, BSH's motion to decertify the class, and *Daubert* motions, along with trial preparation. *Id.* ¶¶ 13-14. On October 21, 2014, the Parties resumed negotiations without the assistance of the mediator. The Parties reached agreement on the outstanding issues and executed a memorandum of understanding ("MOU") on November 3, 2014. The parties negotiated the amount of attorneys' fees and costs and service awards for the Class Representatives only after completing negotiation of the substantive settlement terms. *Id.* ¶ 14.

Following the MOU, there were careful and extended negotiations over the specifics of the claims process and the notice program, including repeated consultation with the claims administrator, KCC. In parallel with these efforts,

Class Counsel worked diligently on preparing the preliminary approval motion. Ex. A [Sagafi Decl.] ¶ 18. On December 12, 2014, the Parties fully executed the Settlement Agreement, and that same day, Class Counsel moved for preliminary approval. Dkt. 363.

On December 29, 2014, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval, finding the Settlement to be "fair, reasonable, and adequate," and "direct[ed] the Claims Administrator and the Parties to carry out the Notice Plan as provided for in the Settlement." Dkt. 368 at 1, 4.

## III. SUMMARY OF THE SETTLEMENT TERMS

### A. Settlement Class

"Settlement Class" means all residents of the United States who were the original purchasers of one or more Bosch or Siemens brand 27-inch Front-Loading Washers. Excluded from the Class are: (1) BSH, any entity in which BSH has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) retailers, wholesalers, and other individuals or entities that purchased the Washers for resale; (3) the United States government and any agency or instrumentality thereof; (4) the judge to whom this case is assigned and any member of the judge's immediate family; (5) claims for personal injury, emotional distress and wrongful death; and (6) persons who timely and validly opt to exclude themselves from the Settlement Class. Dkt. 363-1 [Agreement] at 7 (§ II.G.).

### B. Settlement Consideration

Each Class Member is eligible for a $55 cash payment from BSH obtained through a straightforward claims process. Dkt. 363-1 [Agreement] at 7 (§ III.A.). For those Class Members for whom BSH had proof of ownership through its warranty records, the ICA sent Notice of Eligibility postcards to them on March 5, 2015, well ahead of schedule. These Class members need only confirm their

correct mailing address and submit a statement under penalty of perjury that they are the original purchaser to receive the $55 payment. *Id.*

Otherwise, to establish eligibility for the $55 payment, Class Members need only provide a receipt, invoice, credit card statement, or picture of their Washer's serial number, along with a statement under penalty of perjury that they were the original purchaser of the Washer. *Id.* Class Members will have until May 28, 2015 to submit their claims. Dkt. 371; Dkt. 363-1 at 9 (§ III.G.).

## C. Attorneys' Fees and Costs and Service Awards

Defendants agree not to oppose a request by Class Counsel for attorneys' fees and costs of $6.5 million, including experts' fees and costs. Dkt. 363-1 [Agreement] at 16 (§ VII). Defendants also agree not to oppose a request by Class Counsel for a $5,000 service award to each of the Class Representatives. Dkt. 363-1 [Agreement] at 15 (§ VI). Class Counsel are concurrently filing a motion seeking the Court's approval of these fees, costs, and stipends.

## D. Settlement Release

In exchange for the valuable consideration provided by the Settlement, Plaintiffs agree to an appropriately tailored release of BSH from liability. Dkt. 363-1 [Agreement] at 16-18 (§ VIII). This release will preclude future claims "arising out of, or in any way relating to any act, failure to act, omission, misrepresentation, fact, event, transaction, or occurrence from the beginning of time until the Effective Date of this Settlement Agreement that were raised or could have been raised in the Action relating in any way to BMFO in the Washers (including the Nationwide Claims), except for claims for personal injury, emotional distress, or wrongful death." Dkt. 363-1 at 17 (§ VIII.B.). Plaintiffs also agree to dismissal of the action with prejudice.

## E.    Class Notice Program

The Court-approved notice is being implemented by the Parties and the Claims Administrator, KCC, and will be completed on schedule.  Robin Decl., ¶ 12. Out of the estimated 650,000 Class Members, direct individual notice of the Settlement was sent by mail or email to over 140,000 Class Members.  Ex. B [Robin Decl.] ¶¶ 7-9.

In addition, the Class will be notified through an extensive Internet and publication notice program, which is proceeding apace.  Publication Notice has so far appeared in the *Orange County Register* on four occasions, and will appear in *People* and *National Geographic* in March and April.  *Id.* ¶ 11.  The Internet banner ads are also being delivered on schedule.  *Id.*  The Settlement Website has been live since January 28, 2015, and is linked to by Class Counsel's websites.  *Id.* ¶ 14; Ex. A [Sagafi Decl.] ¶ 19.

## IV.    LEGAL STANDARD

Rule 23 class action settlements follow a three-step court approval procedure: (1) certification of a settlement class and preliminary approval of the proposed settlement upon written motion to the trial court; (2) dissemination of notice of the proposed settlement to the affected class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.  Federal Judicial Center, Manual for Complex Litigation, §§ 21.63, et seq. (4th ed. 2004) ("Manual").

The first two steps in this process are complete.  With this motion, Plaintiffs respectfully request that the Court take the third and last step in the process by granting final approval to the Settlement agreed upon by the parties. This Court recently summarized the final approval standard in *Van Ba Ma v. Covidien Holding,*

*Inc.*, No. SACV 12-2161, 2014 U.S. Dist. LEXIS 76359, *4-6 (C.D. Cal. May 30, 2014):

> In considering final approval of a proposed settlement, the Court's discretion is guided by the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

> "This list is not exhaustive, and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). In addition to these factors, the Court may consider the procedure by which the parties arrived at the settlement to determine whether the settlement is truly the product of arm's length bargaining, rather than the product of collusion or fraud. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

> The Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*quoting Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). In evaluating a settlement agreement, it is not the Court's role to second-guess the agreement's terms. *Officers for Justice*, 688 F.2d at 625. "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or

fall in its entirety."). In general, however, there is a strong judicial policy favoring class settlements. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

## V. DISCUSSION

The Settlement readily meets the standard for final approval. It provides meaningful benefits and avoids the substantial risks of ongoing litigation, was reached after extensive discovery, litigation, and two mediation sessions overseen by respected former judges, is endorsed by Class Counsel and the named Plaintiffs, and has been well-received by the Class.

### A. The Settlement provides meaningful benefits while avoiding the significant risks of continued litigation.

The first four *Churchill* factors are: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; and (4) the amount offered in settlement. *Churchill*, 361 F.3d at 575. Here, the Settlement provides fair and substantial benefits to the Settlement Class, especially in light of the litigation risks.

Under the first two factors, while Plaintiffs believe they have a strong case, it still carries significant litigation risks, as virtually any complex case like this does. BSH's pending summary judgment motion sought to eliminate the claims of a significant subset of the certified Classes. Likewise, BSH challenged each of Plaintiffs' damages theories in its decertification and summary judgment motions, and separately in *Daubert* challenges to Plaintiffs' damages experts. BSH also sought to greatly limit Plaintiffs' expert testimony related to the Washers' defective design and consumer complaints. Plaintiffs vigorously opposed each of these motions, but they posed serious risks.

In addition, the trial last Fall of a class action against Whirlpool for similar alleged misconduct—designing and marketing front-load washing machines with a propensity to develop BMFO—resulted in a unanimous defense verdict. While Plaintiffs believe that the *Whirlpool* result is unique to that case, the verdict

nonetheless underscores the inherent uncertainty in any trial, even where a party has confidence in their claims, as Plaintiffs do here. Further, even if Plaintiffs could be certain they would succeed on all these fronts and obtain a favorable verdict, defending that verdict on appeal would pose its own set of challenges. This case has already been through a round of appeals, and given the procedural history, further appeals are a virtual certainty if the case were to proceed in active litigation. The value of any judgment would therefore be discounted by the delay the Class Members would face in actually obtaining that judgment. By contrast, the proposed Settlement provides certain, timely, and substantial relief. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (in weighing the risk of future litigation, "a court may consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation") (internal quotes omitted).

Likewise, under the third factor, maintaining class action status was itself a significant risk. While the Settlement provides meaningful benefits to all Class Members nationwide, certifying a nationwide litigation class under California law or the laws of the many states would have been challenging. *See Mazza v. American Honda Motor Co.*, 666 F.3d 581, 590-94 (9th Cir. 2012); *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008). Even as to the four certified classes, representing consumers in California, Illinois, New York, and Maryland, maintaining certification through trial was not guaranteed in light of BSH's pending decertification motion and the expected appeals of any final class certification order. *Cf. McKenzie v. Federal Exp. Corp.*, No. CV 10-02420 GAF (PLAx), 2012 U.S. Dist. LEXIS 103666, 2012 WL 2930201, *4 (C.D. Cal. July 2, 2012) (even where a class has been certified, "settlement avoids all possible risk" of decertification and therefore weighs in favor of approving the settlement).

Finally, under the fourth factor, the Settlement is an excellent result for the Class. Every Class Member can follow the same, simple claims process to receive a $55 cash payment. That figure represents a substantial percentage of plaintiffs' per-Washer damages estimates, which ranged from $113 to $396, depending on the damages methodology employed. Doc. 259-3 [Rysman Rpt.] ¶ 11. Notably, the price elevation damages—the only model BSH conceded could be a valid classwide measure (though it disputed the validity of the model on other grounds)—were estimated at $113. Thus, while "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery," here, the recovery is a significant percentage of potential damages. *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988); *see also Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.5 (E.D. Pa. 2003) (gathering cases where courts approved settlements achieving only single-digit percentages of potential recoveries).

While Plaintiffs believe they have a strong case, they faced substantial litigation, class certification, trial, and appellate risks. Assessed against these delays and uncertainties, the Settlement provides immediate, substantial cash benefits and falls well within the range of reasonableness.

**B.** **The Settlement is informed by extensive discovery and litigation, was reached with the aid of well-regarded mediators, and is endorsed by qualified and experienced Class Counsel.**

The next *Churchill* factors are: (5) the extent of discovery completed and the stage of the proceedings and (6) the experience and views of counsel. The Court may also consider "the procedure by which the parties arrived at the settlement to determine whether the settlement is truly the product of arm's length bargaining, rather than the product of collusion or fraud." *Ma*, 2014 U.S. Dist. LEXIS 76359, at *4-6.

The fifth factor supports approval because the Settlement was reached a mere two months before trial was set to commence, and only after extensive fact discovery, expert discovery, and motions practice. The first mediation took place after the four-state class was certified and after substantial fact and class-related expert discovery, thereby informing the parties' views of the merits of the action. The second mediation took place nine months later, by which time the parties had conducted additional fact discovery, deposed each other's experts, and filed opening and responding briefs to BSH's summary judgment motion. Still, no agreement was reached. Following the second mediation, the parties resumed active litigation, including trial preparation and ongoing briefing related to summary judgment, BSH's decertification motion, and *Daubert* challenges. *See* § II.C-D., *supra*; Ex. A [Sagafi Decl.] ¶¶ 8-16.

With these motions pending, and with Plaintiffs' trial preparation well underway, the Parties restarted negotiations with regard to the outstanding settlement issues. They reached agreement in principle on October 29, 2014, with a signed memorandum of understanding following on November 3. Ex. A [Sagafi Decl.] ¶ 14. The parties negotiated the amount of attorneys' fees and costs, and Class Representative service awards, after completing the negotiation of substantive settlement terms. *Id*. The Parties executed the full Settlement Agreement on December 12, 2014 after careful and extended negotiations over the specifics of the claims procedure and the notice program. *Id*. ¶¶ 15-17.

The sixth factor, the experience and views of counsel, also supports final approval. The Class was represented by counsel experienced in the prosecution and settlement of complex class actions. *Id*. ¶¶ 3-4; Dkt. 363-4 [Eppsteiner Decl.]; Dkt. 363-5 [LCHB Resume]; Dkt. 363-6 [Levin Fishbein resume]. Class Counsel intensively investigated and litigated the factual and legal issues raised in this action, and wholeheartedly endorse the Settlement as fair, reasonable, and adequate. Ex. A [Sagafi Decl.] ¶¶ 23-24.

The court may also consider the procedure by which the settlement was reached, and that factor also supports approval here.  *Ma*, *supra*, at *4-6.  The parties engaged in two, arm's-length mediations with well-respected former judges: the Honorable Daniel S. Pratt (Ret.) presided over the first mediation in December 2013, and the Honorable Dickran Tevrizian (Ret.) presided over the September 2014 mediation.  *Cf. Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30, 2014) ("where the services of a private mediator are engaged, this fact tends to support a finding that the settlement valuation by the parties was not collusive.") (citing cases); *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) ("the court concludes that the settlement is a product of informed, arm's-length negotiations, and is therefore entitled to a presumption of fairness."); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'") (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)); *see also* Newberg on Class Actions, § 13:53 (5th ed. 2013).

### C.   Government officials have not objected to the Settlement.

The seventh *Churchill* factor is "the presence of a governmental participant." *Ma*, 2014 U.S. Dist. LEXIS 76359 at *4-6 (citing *Churchill*, 361 F.3d at 575).   As in *Ma*, Defendant BSH "notified both federal and state officials to provide them with an opportunity to intervene," and those "officials have not raised any concerns with the settlement."  "Therefore, this factor weighs slightly in favor of final approval."  *Id*. at *11.

### D.   Class Members have reacted positively to the Settlement.

The eighth and final enumerated factor is the reaction of class members to the proposed settlement.  *Churchill*, 361 F.3d at 575.  All of the Class

1  Representatives, who actively participated in this litigation, endorse the Settlement.

2  *See* Declarations of Demereckis, Gibson, Isabella, and Wentworth (filed with

3  Plaintiffs' concurrent motion for fees, costs, and stipends).  While it is still early in

4  the claims administration process—direct notice was sent at the end of January, and

5  the claims period lasts through May 28—there have already been 5,484 claims

6  filed.  Ex. B [Robin Decl.] ¶ 17.  At the same time, there have been no opt-outs and

7  only two objections to date (those deadlines pass on April 30).  *Id.* ¶¶ 15-16.[5]

8  *Compare Astiana v. Kashi Co.*, 2014 U.S. Dist. LEXIS 127624, *30 (S.D. Cal.

9  Sept. 2, 2014) ("The small number of objectors supports the fairness,

10  reasonableness, and adequacy of the settlement."); *Create-A-Card, Inc. v. Intuit,*

11  *Inc.*, 2009 U.S. Dist. LEXIS 93989, *15 (N.D. Cal. Sept. 22, 2009) ("A court may

12  appropriately infer that a class action settlement is fair, adequate, and reasonable

13  when few class members object to it.").

14  **VI.  <u>CONCLUSION</u>**

15      For the foregoing reasons, Plaintiffs respectfully request that the Court grant

16  final approval of the Settlement.

17

18  Dated:  February 27, 2015          Respectfully submitted,

19                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

20                           By:    <u>/s/ *Kristen Law Sagafi*</u>

21                                 Kristen Law Sagafi

22                           Kristen Law Sagafi (SBN 222249)
    klaw@lchb.com

23                           Nimish R. Desai (SBN 244953)
    ndesai@lchb.com

24                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

25                           275 Battery Street, 29th Floor
    San Francisco, CA  94111-3339

26                           Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008

27

---

[5] Class Counsel will update these claims rate figures for the Court ahead of the Fairness Hearing, and will address any objections in their Reply memorandum.

Jason L. Lichtman, *pro hac vice*
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Stuart M. Eppsteiner (SBN 098973)
sme@eppsteiner.com
Andrew J. Kubik (SBN 246902)
ajk@eppsteiner.com
EPPSTEINER & FIORICA ATTORNEYS,
LLP
12555 High Bluff Dr., Ste. 155
San Diego, CA 92130
Telephone: (858) 350-1500
Facsimile: (858) 350-1501

Daniel C. Levin, *pro hac vice*
dlevin@lfsblaw.com
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

*Attorneys for Plaintiffs and the Class*