Stuart M. Eppsteiner (SBN 098973)
sme@eppsteiner.com
Andrew J. Kubik (SBN 246902)
ajk@eppsteiner.com
EPPSTEINER & FIORICA ATTORNEYS, LLP
12555 High Bluff Dr., Ste. 155
San Diego, CA  92130
Telephone: (858) 350-1500
Facsimile: (858) 350-1501

Kristen Law Sagafi (SBN 222249)
klaw@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

*Attorneys for Plaintiffs and the Proposed Settlement Class*
*Additional counsel listed on signature page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SHARON COBB, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BSH HOME APPLIANCES CORPORATION, a Delaware Corporation,<br><br>Defendant. | Case No.  SACV10-711 DOC (ANx)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS**<br><br>Hearing Date:  June 1, 2015<br>Time:  8:30 a.m.<br>Place:  Courtroom 9D<br><br>Assigned to:<br>District Judge:  Hon. David O. Carter<br>Magistrate Judge:  Hon. Arthur Nakazato |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. SETTLEMENT IMPLEMENTATION ..................................................... 1

    A. Class Notice .................................................................................... 1

    B. Claims, Opt-Outs, and Objections .................................................. 1

III. DISCUSSION ............................................................................................ 3

    A. The Court should approve the Settlement. .................................... 3

        1. The Settlement provides meaningful benefits while avoiding the significant risks of continued litigation. ................................................................................ 4

        2. Class members have reacted positively to the Settlement. ................................................................................ 7

        3. The remaining Churchill factors favor approval. .............. 9

    B. Plaintiffs respectfully submit that the requested fees and costs should be approved. ............................................................... 9

    C. The service awards are reasonable and warranted. ..................... 12

IV. CONCLUSION ....................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Barcia v. Contain-A-Way, Inc.*,
  No. 07cv938-IEG-JMA, 2009 U.S. Dist. LEXIS 17118
  (S.D. Cal. Mar. 6, 2009) ...................................................................................... 8

*Brazil v. Dell Inc.*,
  Case No. C-07-01700 RMW, 2012 U.S. Dist. LEXIS 47986
  (N.D. Cal. Apr. 4, 2012) ..................................................................................... 10

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ........................................................................ passim

*Create-A-Card, Inc. v. INTUIT, Inc.*,
  Case No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989
  (N.D. Cal. Sept. 22, 2009) ................................................................................. 10

*Curtis-Bauer v. Morgan Stanley & Co.*,
  No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 85028
  (N.D. Cal. Oct. 22, 2008) ..................................................................................... 8

*Eisen v. Porsche Cars N. Am., Inc.*,
  No. 2:11-cv-09405, 2014 U.S. Dist. LEXIS 14301
  (C.D. Cal. Jan. 30, 2014) .................................................................................. 6, 8

*Glass v. UBS Fin. Servs.*,
  No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476
  (N.D. Cal. Jan. 26, 2007) ..................................................................................... 8

*Henderson v. J.M. Smucker Co.*,
  No. CV 10-4524-GHK, 2014 U.S. Dist. LEXIS 27517
  (C.D. Cal. Feb. 28, 2014) .................................................................................. 11

*Hughes v. Microsoft Corp.*,
  No. C98-1646C, 2001 U.S. Dist. LEXIS 5976
  (W.D. Wash. Mar. 21, 2001) ............................................................................... 8

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................. 11

*In re Consumer Privacy Cases*,
  175 Cal. App. 4th 545 (2009) ............................................................................ 11

*In re LDK Solar Secs. Litig.*,
  No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 73530
  (N.D. Cal. Jun. 21, 2010) .................................................................................... 6

*In re Linerboard Antitrust Litig.*,
  296 F. Supp. 2d 568 (E.D. Pa. 2003) .................................................................. 6

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Nucoa Real Margarine Litig.*,
  Case No. CV 10-00927 MMM (AJWx), 2012 U.S. Dist. LEXIS 189901
  (C.D. Cal. June 12, 2012) ................................................................................ 4

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .......................................................................... 8

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions
  Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ........................................................... 5, 7, 8

*Jaffe v. Morgan Stanley & Co.*,
  No. C 06-3903 THE, 2008 U.S. Dist. LEXIS 12208
  (N.D. Cal. Feb. 7, 2008) ................................................................................. 4

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) .................................................................. 2, 6, 11

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ..................................................................... 4, 5

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977) ........................................................................ 8

*Moore v. Verizon Communs., Inc.*,
  Case No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 122901
  (N.D. Cal. Aug. 28, 2013) ..................................................................... 7, 8, 9

*Officers for Justice v. Civil Service Com.*,
  688 F.2d 615 (9th Cir. 1982) ....................................................................... 4, 5

*Pelletz v. Weyerhaeuser Co.*,
  255 F.R.D. 537 (W.D. Wash. 2009) ............................................................... 8

*Reed v. 1-800 Contacts, Inc.*,
  Case No. 12-cv-02359 JM (BGS), 2014 U.S. Dist. LEXIS 255
  (S.D. Cal. Jan. 2, 2014) .................................................................................. 5

*Rutti v. Lojack Corp.*,
  No. SACV 06-350 DOC JCX, 2012 U.S. Dist. LEXIS 107677
  (C.D. Cal. Jul. 31, 2012) .............................................................................. 11

## I. INTRODUCTION

Plaintiffs file this combined reply memorandum in support of their *Motion for Final Approval of Class Action Settlement* (Dkt. 373) and *Motion for Attorneys' Fees and Reimbursement of Expenses, and Plaintiffs' Request for Service Awards* (Dkt. 372). Plaintiffs respectfully request that the Court grant their motions and overrule the objections.

## II. SETTLEMENT IMPLEMENTATION

### A. Class Notice

Plaintiffs' final approval motion summarizes the class notice program. Dkt. 373 at 8. All elements have been successfully implemented, including direct notice and the print and Internet advertisements. Ex. 1, 5/15/15 Robin Decl. ¶¶ 3-8. The program met its goal of reaching over 80% of the Class. *Id.* ¶ 8. In addition, on May 13, Class Counsel sent a reminder email to their contacts regarding the May 28 claims deadline. Ex. 2, Desai Decl. ¶ 2.

### B. Claims, Opt-Outs, and Objections

BSH estimated total Class members nationally at approximately 650,000, *i.e.*, all residents of the United States who were the original purchasers of one or more Bosch or Siemens brand 27-inch Front-Loading Washers. By mid-March, the Claims Administrator sent direct notice to over 140,000 Class Members. Ex. 1, 5/15/15 Robin Decl., ¶ 3. When the objection and opt-out deadline ran on April 30, there were only 3 objections (0.004% of the Class and 0.002% of direct notice recipients), and 30 opt-outs (0.005% of the Class and 0.02% of the direct notice recipients). So far, the Claims Administrator has received 17,904 claims, representing 2.8% of the estimated Class, and almost 13% of the direct notice recipients, with weeks left until the claims deadline on May 28.

1    Three Class members timely objected to the Settlement.[1] Roger Kerr objects
2    that the $55 settlement is inadequate because the biofilm, mold, and foul odors
3    ("BFMO") problem, combined with his washer's ineffective spin cycle, led him to
4    donate his machine within 18 months of purchase and replace it with a competitor's
5    product. Ex. 4. Jeffrey Rudy objects that the BMFO problem in his washer
6    required a gasket to be replaced in May 2010 at a cost of $147, and that as of 2015
7    the replacement gasket also showed BMFO despite his following BSH's
8    recommended maintenance tasks. He also objects to the fee request in a single
9    sentence. Ex. 5. Finally, Bobby Ameen, through counsel Scott Kron, contends the
10   Settlement fails to compensate for out-of-pocket losses, is inadequate, and requests
11   that the Class Representatives' service awards and Class Counsel's fees be reduced.
12   Dkt. 374. On May 11, 2015, the Court granted Plaintiffs' *ex parte* application to
13   take Ameen's deposition, and ordered Plaintiffs to file a response to his objections
14   within 48 hours of completion of the deposition. Dkt. 377. The deposition is set
15   for May 20, and Plaintiffs will respond to his objection on May 22.[2]

16   Class Counsel learned of another objection yesterday, May 14, 2015,
17   submitted by Joseph McLaughlin, a securities attorney at Sidley Austin's New
18   York office. Ex. 8; Ex. 2, Desai Decl., ¶ 3. He does not object to the Settlement
19   benefits, but does object to the requested attorneys' fees and costs award because
20   "the communications regarding the proposed settlement do not set forth the actual
21   or probable magnitude of the aggregate cash awards to the class. It is therefore
22   impossible to determine whether the proposed fee and expense award is reasonable."
23   Ex. 8.

---

[1] A fourth Class Member, Charles Moore of Michigan, "objects" to the Settlement because he contends that BSH did nothing wrong. However, he does not contend that the Settlement is inadequate or unfair to the Class, and therefore his objection is not addressed any further. Ex. 6. A fifth Class member, Carole Manuwa, objected on January 3, 2015, but withdrew her objection on March 6 after receiving clarification on the claims process. Ex. 7.
[2] Plaintiffs will also submit a proposed order on May 22.

Mr. McLaughlin's objection failed to comply with the plainly-stated Notice requirements that: "You must file your objection with the Court no later than April 30, 2015 and mail copies to the Settlement Administrator, Class Counsel and Defense Counsel postmarked by April 30, 2015." Dkt. 373-2 at Page ID # 35751.[3] Instead, Mr. McLaughlin sent the objection only to the Claims Administrator—he did not file it with the Court or serve it on Class Counsel. The objection also fails to list the serial numbers of Mr. McLaughlin's washers, as the Notice requires. *Id*. Finally, the objection is late, as it was postmarked May 1. Ex. 8 at pg. 3; Ex. 2, Desai Decl. ¶ 3. In light of these deficiencies from a sophisticated lawyer, the Court should disregard his objection, as discussed further below; nonetheless, Plaintiffs address his objection substantively as well. *See* § III.B.

## III. DISCUSSION

### A. The Court should approve the Settlement.

In considering final approval of a proposed settlement, the Court's discretion is guided by the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The Court should approve the Settlement because it easily satisfies all of these criteria. The few objectors demand that the Settlement provide greater benefits, but they forget that settlement is by definition a compromise, and ignore that the Settlement actually provides a substantial percentage of estimated damages. Further, the objectors totally ignore the risks the Class faced with continued

---

[3] Available to the public at the Settlement Website, https://eclaim.kccllc.net/caclaimforms/bht/Documents/BHT_NOT.pdf

litigation and appeals. Notably, the three (or four, counting Mr. McLaughlin) objectors are an infinitesimal percentage of the Class, and of the almost 18,000 individuals that have claimed benefits so far.

### 1. The Settlement provides meaningful benefits while avoiding the significant risks of continued litigation.

The first four *Churchill* factors are: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; and (4) the amount offered in settlement. *Churchill*, 361 F.3d at 575.

All of the objectors focus exclusively on the fourth factor—the amount offered in Settlement—and brush aside the first three, which focus on the risk of the ongoing litigation. That is contrary to the applicable legal standard. "'[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 624 (9th Cir. 1982)) (affirming settlement approval). A settlement is therefore not to be judged against a "hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625 (emphasis in original).

As such, "a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial. Again, the issue is not whether the settlement 'could be better,' but whether it falls within the range of appropriate settlements." *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 THE, 2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 7, 2008). "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Nucoa Real Margarine Litig.*, Case No. CV 10-00927 MMM (AJWx), 2012 U.S. Dist. LEXIS 189901, at *46 (C.D. Cal. June 12, 2012).

1  Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the
2  potential recovery does not, in and of itself, mean that the proposed settlement is
3  grossly inadequate and should be disapproved." *Linney*, 151 F.3d at 1242 (internal
4  quotation omitted).[4]

5      By any objective measure backed by evidence and admissible damages
6  theories, the Settlement is a fine result and well within the range of reasonable
7  settlements. The only measure of damages that BSH conceded could conceivably
8  be presented on a classwide basis was the price elevation theory. Plaintiffs'
9  damages experts, leaders in their fields, estimated each Class Member's damage
10 under this theory at $119. Thus, by this Settlement, Class members are entitled to
11 recover 46% of their estimated damages—all by filling out a simple claim form and
12 providing proof of purchase, including a receipt, invoice, credit card statement, *or*
13 picture of the Washer's serial number. Doc. 259-3 [Rysman Rpt.] ¶ 11. The
14 Settlement is also 14% of Plaintiffs' *most* aggressive damages theory of $396 per
15 Washer, which was based on lifetime cost to clean the Washers and was therefore
16 rigorously challenged by BSH on *Daubert* and *Comcast* grounds.

17     This percentage recovery strongly supports final approval. Indeed, district
18 courts in the Ninth Circuit routinely approve settlements with much larger
19 differences between the settlement amount and estimated damages. *See*, *e.g.*, *In re*
20 *Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
21 295 F.R.D. 438 (C.D. Cal. 2014) (granting final approval of a settlement providing
22 for vouchers to class members, the total value of which was 3% of possible
23 recovery (vouchers worth up to $391.5 million, released claims worth up to $13.05
24 billion)); *Reed v. 1-800 Contacts, Inc.*, Case No. 12-cv-02359 JM (BGS), 2014 U.S.
25 Dist. LEXIS 255 (S.D. Cal. Jan. 2, 2014) (granting final approval where settlement

---

[4] *See also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.").

1257413.3     - 5 -    PLAINTIFFS' REPLY ISO MOTIONS FOR FINAL, APPROVAL, FEES & COSTS, CLASS REP STIPENDS
SACV10-711 DOC (ANX)

1 | represented 1.7% of possible recovery (net settlement fund of $8,288,719.16,
2 | resolving claims worth potentially $499,420,000)); *In re LDK Solar Secs. Litig.*, No.
3 | C 07-5182 WHA, 2010 U.S. Dist. LEXIS 73530, at *6 (N.D. Cal. Jun. 21, 2010)
4 | (granting final approval where settlement was 5% of estimated damages); *see also*
5 | *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.5 (E.D. Pa. 2003)
6 | (gathering cases where courts approved settlements achieving only single-digit
7 | percentages of potential recoveries).

8 | Objectors have not provided any compelling counterarguments. Objector
9 | Rudy claims $147 in out-of-pocket costs, and perhaps more if his second gasket is
10 | to be replaced. The $55 payment compensates a significant share of those costs
11 | without requiring Mr. Rudy to incur the risk and expense of any litigation.
12 | Objector Kerr complains of paying for a replacement washer, but one of his reasons
13 | for doing so—inadequate washer spin drying—has nothing to do with this litigation;
14 | his claim with respect to spin drying is not released. To the extent Mr. Rudy
15 | contends that he should receive full reimbursement of his purchase price or
16 | replacement cost for his washer's BMFO issue, this was not a measure Plaintiffs'
17 | economists opined as to, and whether a plaintiff could ever recover it under the
18 | certified causes of action under these facts is, at least, an open question. Of course,
19 | if Mr. Rudy wished to pursue a full refund, he could have opted out. *See Eisen v.*
20 | *Porsche Cars N. Am., Inc.*, 2014 U.S. Dist. LEXIS 14301, 19 (C.D. Cal. Jan. 30,
21 | 2014) ("In any event, class members could have opted out if they objected to the
22 | benefits offered by the settlement.").

23 | Critically, the objectors focus on the settlement amount while ignoring the
24 | other half of the analysis mandated by *Churchill*—the risks the Class faced in
25 | continuing the litigation. As detailed in Plaintiffs' final approval motion, those
26 | risks were serious and manifold, including pending summary judgment, *Daubert*,
27 | and decertification motions, a defense verdict in nearly identical litigation against a
28

1   different manufacturer, and lengthy appeals. Dkt. 373 at 10-11. Especially in light
2   of these risks, the Settlement is an excellent result and worthy of final approval.
3          Finally, the objectors ignore that this litigation was exceptionally hard fought
4   by competent counsel. The Defendant rigorously challenged all aspects of the case,
5   and Plaintiffs' claims—and class status—were at risk. The objectors also ignore
6   that the Settlement was reached after lengthy, repeated negotiations supervised by
7   experienced mediators. The result represents the best settlement possible given
8   both the strengths and weaknesses of Plaintiffs' case, and was achieved even as a
9   similar case being tried during these negotiations resulted in those class members
10  receiving nothing. *See* Ex. 3, 5/15/15 Eppsteiner Decl. Indeed, comparing the
11  Ohio *Whirlpool* class's position with the nationwide Bosch class's position is an
12  irrefutable demonstration of the merits of the Settlement. *Cf. Moore v. Verizon*
13  *Communs., Inc.*, Case No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 122901, 21-22
14  (N.D. Cal. Aug. 28, 2013) (final approval granted in part because prior class action
15  lawsuits challenging similar conduct "resulted either in outright dismissal or in
16  settlements with no significant recovery…").

17          **2.     Class members have reacted positively to the Settlement.**
18          The Court should also consider the reaction of class members to the proposed
19  settlement. *Churchill*, 361 F.3d at 575. "In order to gauge the reaction of other
20  class members, it is appropriate to evaluate the number of requests for exclusion, as
21  well as the objections submitted." *In re Toys "R" Us-Del., Inc. Fair & Accurate*
22  *Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 455 (C.D. Cal. 2014).
23  Here, the reaction has been overwhelmingly positive. BSH estimated total Class
24  members nationally at approximately 650,000, *i.e.*, all residents of the United States
25  who were the original purchasers of one or more Bosch or Siemens brand 27-inch
26  Front-Loading Washers. By mid-March, the Claims Administrator sent direct
27  notice to over 140,000 Class Members. Ex. 1, 5/15/15 Robin Decl., ¶ 3. When the
28  objection and opt-out deadline ran on April 30, there were only 3 timely objections

and 30 opt-outs. Measured against the total Class members or even just the direct notice recipients, these numbers are miniscule. "The negligible number of opt-outs and objections indicates that the class generally approves of the settlement." *In re Toys "R" Us-Del.,* 295 F.R.D. at 456.[5]

At the same time, almost 18,000 Class members have claimed the $55 benefit so far. This is 2.8% of the entire Class, and almost 13% of the direct notice recipients, with almost two weeks left until the May 28 claims deadline. Though the claims can only increase, even at current levels, the claims, opt-out, and objection rates are consistent with other approved settlements. *See*, *e.g.*, *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405, 2014 U.S. Dist. LEXIS 14301, *6 (C.D. Cal. Jan. 30, 2014) (in product defect case, 235,152 potential class members, 3,275 claims (1.4%), 243 opt outs, 53 objections); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir. 2015) (35 million class members, 1.1 million claims (3.1%), 722 opt outs, and 30 objections); *Moore*, 2013 U.S. Dist. LEXIS 122901, *30 (noting a "positive" reaction that supported approval where, out of 8,089,893 class members, 250,236 (3%) submitted claims, 621 opted out, and 28 objected).

---

[5] *See also Churchill*, 361 F.3d at 577 (affirming class settlement with 45 objections and 500 opt-outs from a class of 150,000); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approval granted where one percent of the class disapproved); *Curtis-Bauer v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 85028, at *15 (N.D. Cal. Oct. 22, 2008) (9 objections and 24 opt-outs in a class of 1,300); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *15-16 (N.D. Cal. Jan. 26, 2007) (class of approximately 13,000, and 280 opt-outs and 9 objections); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 U.S. Dist. LEXIS 17118, at *11 (S.D. Cal. Mar. 6, 2009) (56 opt-outs out of 2,385 member class); *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 544 (W.D. Wash. 2009) (119 opt outs and 3 objections of a class estimated between 110,000 and 140,000); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 21, 2001) (class of approximately 40,000, nine objections and 86 opt-outs).

### 3. The remaining Churchill factors favor approval.

Finally, the Court should also consider (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant. *Churchill*, 361 F.3d at 575. For all the reasons stated in Plaintiffs' motion, these factors favor approval. Dkt. 373 at 12-14. None of the objectors contend otherwise.

### B. Plaintiffs respectfully submit that the requested fees and costs should be approved.

Three objectors challenge Plaintiffs' requested award of $6.5 million, which includes $2,311,019.39 in costs and $4,188,981.61 in attorneys' fees. Dkt. 372 at 9.[6] Objector Rudy disparages the award but offers no explanation of his criticism. Ex. 5.[7] Mr. McLaughlin objects that "the communications regarding the proposed settlement do not set forth the actual or probable magnitude of the aggregate cash awards to the class." Ex. 8. The third fee objection is from Ameen. Dkt. 374 at 3-4. Plaintiffs will address his specific criticisms in their May 22 submission.

Preliminarily, the Court should disregard Mr. McLaughlin's objection, which failed to comply with important procedural requirements that were made eminently clear on the Class Notice, the settlement website "Frequently Asked Questions," and the settlement website "Dates and Deadlines" page. The objection was late, it was not filed with the Court, it was not served on Class Counsel, and it failed to include his washers' serial numbers. *See* § II.B., *supra*; Ex. 8. Mr. McLaughlin had notice of these requirements because the postcard notice he viewed clearly stated that a Class Member is to "[v]isit [the settlement website] for details about how to object." Dkt. 373-2 at 11-12; Ex. 2, Desai Decl. ¶ 3. These are sufficient grounds to overrule the objection. *See Moore*, 2013 U.S. Dist. LEXIS 122901, 35

---

[6] None of the objectors challenges the cost reimbursement. While Mr. Rudy objects to the entire $6.5 million request, he refers to it as the "fees" request, and offers no criticism specific to costs. Ex. 5.

[7] The Court should therefore reject the objection because it "states no substantive ground for objecting" to the fees. *Moore*, 2013 U.S. Dist. LEXIS 122901, 37.

(overruling objections "because they failed to comply with the proper procedures to object to the Settlement."); *id*. at *43 (overruling objection for failing to file it with the court). While Class Counsel ordinarily would not seek to have the Court hold a *pro se* class member strictly to such requirements, Mr. McLaughlin is differently situated because he is a lawyer and the Court reasonably can and should expect him to strictly comply. These procedural failures undermine the Settlement procedure and prejudice Class Counsel's ability to respond, as they learned of the objection only yesterday morning, May 14, 2015. Ex. 2, Desai Decl., ¶ 3.

More importantly, both objections fail substantively. They both lose sight of the fact that Class Counsel are seeking less than 45% of their total, compensable lodestar incurred in pursuit of the Class's claims over the course of five years of intense litigation.[8] Though a percentage of the fund cross-check is not required, it too points to the reasonableness of the award, as explained in the motion. Dkt. 372 at 20-21. Allegations of "excessive" fees under these facts are baseless and should be rejected.

First, the objectors do challenge the use of the lodestar method, and even if they had, they do not present any case law or factual basis for doing so. Indeed, it is the preferred method where, as here, the agreement calls for an uncapped, claims-made settlement. *See*, *e.g.*, *Brazil v. Dell Inc.*, Case No. C-07-01700 RMW, 2012 U.S. Dist. LEXIS 47986 at *1 (N.D. Cal. Apr. 4, 2012); *Create-A-Card, Inc. v. INTUIT, Inc.*, Case No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989 at *1 (N.D. Cal. Sept. 22, 2009).

Second, the objectors also do not challenge the two predicate facts used in calculating Class Counsel's lodestar: (1) the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation),

---

[8] Class Counsel's fee as a percentage of compensable lodestar is less than then the 45% reported with the fees motion because counsel have expended additional hours in implementing the Settlement, and will continue to do so. Ex. 2, Desai Decl., ¶ 4.

1  multiplied by (2) a reasonable hourly rate for the region and for the experience of
2  the lawyer. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.
3  2011). As detailed in Plaintiffs' motion, Class Counsel's rates are reasonable and
4  routinely approved by courts in this and other California districts, as are the hours
5  expended successfully prosecuting this litigation over many years leading up to
6  trial. Dkt. 372 at 14-16.

7      This settles the inquiry in favor of Plaintiffs: "[t]here is a 'strong'
8  presumption that the lodestar method results in a reasonable fee." *Rutti v. Lojack
9  Corp.*, No. SACV 06-350 DOC JCX, 2012 U.S. Dist. LEXIS 107677
10 (C.D. Cal. Jul. 31, 2012) (citation omitted). Further, as described in the motion, the
11 factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)
12 would support a lodestar-based fee with a *multiplier*. Dkt. 372 at 17-20; *see also
13 Henderson v. J.M. Smucker Co.*, No. CV 10-4524-GHK, 2014 U.S. Dist. LEXIS
14 27517, *4 (C.D. Cal. Feb. 28, 2014). Nevertheless, here, Class Counsel do not
15 even seek the full amount of the presumptively reasonable fee; they seek less than
16 45% of their total combined lodestar. Thus, there is no risk of a windfall or
17 excessive fee to Class Counsel. The opposite is true: Class Counsel willingly
18 sacrificed over half their compensable fee in pursuit of a meaningful, timely,
19 nationwide settlement for the Class.

20     Finally, Mr. McLaughlin objected that he was unable to assess whether the
21 fee was appropriate because he did not have the "actual or probable magnitude of
22 the aggregate cash awards to the class." Ex. 8. Of course, this information was
23 available on the public docket, and Class Counsel would have provided it upon
24 request. Ex. 2, Desai Decl., ¶ 3. Substantively, though the percentage of the fund
25 method is not the preferred method and is not required as a cross-check, *In re
26 Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 (2009), it in fact shows that
27 Plaintiffs' fee request is a maximum of 18.2% of the common fund, and more
28 realistically in the 10-12% range. Dkt. 372 at 20-21. This is well within range the

Ninth Circuit deems reasonable. *Id.* Finally, to the extent Mr. McLaughlin means to argue that the fee award should disregard lodestar altogether and be based solely on a percentage of actual payouts, he provides no authority to support either proposition (despite his obligation to do so). Further, he would essentially be asking the Court to undermine the fee-shifting provisions of consumer protection statutes designed to level the playing field between well-heeled defendants and ordinary consumers, despite Class Counsel's zealous advocacy over 5 years that culminated in a meaningful, national settlement. (Notably, Mr. McLaughlin does not argue that the Class benefit is inadequate or unfair.) That is a legally incorrect and unjust result not warranted in this case.

The Court should grant Plaintffs' fee and costs request and overrule the objections.

### C. The service awards are reasonable and warranted.

As noted in Plaintiffs' motion, the proposed service awards are meant to compensate Plaintiffs' for their diligence, commitment, and effort in representing the Class over a period of five years, including day-long depositions, inspections, answering discovery, and remaining informed of the litigation and Settlement. Ameen is the only Class Member to object to the service awards. Plaintiffs will address his specific criticisms in their May 22 submission.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court overrule the objections to the proposed settlement and grant Plaintiffs' motions for final approval, attorneys' fees and costs, and class representative stipends.

Dated: May 15, 2015                Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: *s/ Kristen Law Sagafi*

| | |
|---|---|
| 1 | Kristen Law Sagafi (SBN 222249) |
| | klaw@lchb.com |
| 2 | Nimish R. Desai (SBN 244953) |
| | ndesai@lchb.com |
| 3 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| 4 | 275 Battery Street, 29th Floor |
| | San Francisco, CA 94111-3339 |
| 5 | Telephone: (415) 956-1000 |
| | Facsimile: (415) 956-1008 |
| 6 | |
| | Jason L. Lichtman, *pro hac vice* |
| 7 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| 8 | 250 Hudson Street, 8th Floor |
| | New York, NY 10013-1413 |
| 9 | Telephone: (212) 355-9500 |
| | Facsimile: (212) 355-9592 |
| 10 | |
| 11 | Stuart M. Eppsteiner (SBN 098973) |
| | sme@eppsteiner.com |
| 12 | Andrew J. Kubik (SBN 246902) |
| | ajk@eppsteiner.com |
| 13 | EPPSTEINER & FIORICA ATTORNEYS, LLP |
| 14 | 12555 High Bluff Dr., Ste. 155 |
| | San Diego, CA 92130 |
| 15 | Telephone: (858) 350-1500 |
| | Facsimile: (858) 350-1501 |
| 16 | |
| | Daniel C. Levin, *pro hac vice* |
| 17 | dlevin@lfsblaw.com |
| | LEVIN FISHBEIN SEDRAN & BERMAN |
| 18 | 510 Walnut Street Suite 500 |
| | Philadelphia, PA 19106 |
| 19 | Telephone: (215) 592-1500 |
| | Facsimile: (215) 592-4663 |
| 20 | |
| | *Attorneys for Plaintiffs and the Class* |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

## CERTIFICATE OF SERVICE

I hereby certify that, on May 15, 2015, the foregoing was filed via the Court's ECF system.

By: /s/ *Nimish R. Desai*

**Lieff Cabraser Heimann & Bernstein, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339