Stuart M. Eppsteiner (SBN 098973)
sme@eppsteiner.com
Andrew J. Kubik (SBN 246902)
ajk@eppsteiner.com
EPPSTEINER & FIORICA ATTORNEYS, LLP
12555 High Bluff Dr., Ste. 155
San Diego, CA  92130
Telephone: (858) 350-1500
Facsimile: (858) 350-1501

Kristen Law Sagafi (SBN 222249)
klaw@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

*Attorneys for Plaintiffs and the Proposed*
*Settlement Class*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SHARON COBB, et al., individually and on behalf of all others similarly situated,,<br><br>Plaintiffs,<br><br>v.<br><br>BSH HOME APPLIANCES CORPORATION, a Delaware Corporation,<br><br>Defendant. | Case No.  SACV10-711 DOC (ANx)<br><br>**PLAINTIFFS' RESPONSE TO BOBBY AMEEN'S OBJECTION TO MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS**<br><br>Hearing Date:    June 8, 2015<br>Time:              8:30 a.m.<br>Place:             Courtroom 9D<br><br>District Judge:    Hon. David O. Carter<br><br>Magistrate Judge:  Hon. Arthur Nakazato |

1   Plaintiffs file this response to Bobby Ameen's Objections to Proposed Class

2   Action Settlement (Dkt. 374).  Plaintiffs respectfully request that the objection be

3   overruled and that their motions for final approval, fees and costs, and service

4   awards be granted.

5   I.   **INTRODUCTION**

6   Bobby Ameen, through his counsel, professional objector Scott Kron,

7   contends the Settlement fails to compensate for out-of-pocket losses, is inadequate,

8   and that Class Representatives' service awards and Class Counsel's fees should be

9   drastically reduced.  The objection provides no legal authority, and only scant

10   references to the factual record, but without citation.  Dkt. 374.  On May 11, 2015,

11   the Court granted Plaintiffs' *ex parte* application to take Ameen's deposition.  Dkt.

12   377.  The deposition took place on May 20.

13   Having now deposed Ameen, Plaintiffs do not doubt the sincerity of his

14   objections—whatever the motives of his counsel, Ameen is a Class Member, has

15   apparently never objected before to a class action settlement, and plainly has a good

16   faith—albeit, in Plaintiffs' view, misguided—belief that this Settlement is not fair.

17   That said, his objection is precisely the sort that the Ninth Circuit has repeatedly

18   held does not warrant disapproving a settlement.  *Hanlon v. Chrysler Corp.*, 150

19   F.3d 1011, 1027 (9th Cir. 1998) ("[T]he question we address is not whether the

20   final product could be prettier, smarter or snazzier, but whether it is fair, adequate

21   and free from collusion.")  Here, his intentions aside, Ameen demands more than

22   just something better, he demands it all: a full refund; reimbursement of all out-of-

23   pocket costs, including the cost of delivery, setup, and cleaning materials purchased

24   for the washer; reimbursement for time and labor; pre- and post-remediation testing;

25   professional cleaning of clothes previously washed in a Washer; and HVAC duct

26   cleaning.  *Id*. at 36-37, 67-69.  This demand is unrealistic for an *individual* action,

27   let alone a class action, and only serves to underscore the weakness of the objection.

28

1258245.3

1    Unlike Ameen, his counsel Scott Kron is no stranger to class action

2 objections: he frequently objects to class action settlements, and is currently doing

3 so in several cases in which Class Counsel here are involved.  Since 2013, he has

4 represented objectors in 10 class action settlements in addition to this one.  In 9

5 instances, he represented himself, his family members, his law partner, a friend, or

6 a pre-existing business client. In two other cases, Kron's client was not identified.

7 Dkts. 375 and 375-1.  This case fits the pattern: Ameen and Kron were high school

8 classmates and remain friends.  Ex. 9, Ameen Dep. at 70, 80-81.  Kron's history,

9 combined with the boilerplate and barebones nature of the objection and the

10 unrealistic demands, raise serious concerns that this is an unfounded "professional

11 objection" that courts have roundly criticized in the past.

12    Ultimately, however, the objection is easily overruled on the merits.

13 Plaintiffs respectfully request that the Court do so, and that it grant final approval

14 and the requests for fees, costs, and service awards.

15 **II.    DISCUSSION**

16    **A.    Ameen's objections to final approval of the Settlement should be**
        **overruled.**
17

18    In their May 15 reply, Plaintiffs reiterated the final approval standards, and

19 for the sake of brevity will not repeat them here.  Dkt. 379, Reply at 3-4.  Ameen,

20 like the few other objectors, focuses exclusively on the amount offered in

21 Settlement, and totally disregards the risk of ongoing litigation—a plain violation of

22 the applicable legal standards.  With the correct standards in mind, the Settlement

23 merits swift approval.  Reply at 4.

24    But even focusing exclusively on the amount offered, Ameen's objections

25 still fail.  The Settlement compensates a significant percentage of the damages

26 recoverable under the certified claims.  *See* Motion at 12; Reply at 5.  Nonetheless,

27 Ameen, through counsel Scott Kron, contends that Class Members are not

28 compensated "for their monetary losses" related to "out-of-pocket" losses (Dkt. 374

PLAINTIFFS' RESPONSE TO AMEEN OBJECTION
SACV10-711 DOC (ANX)

1258245.3

1    at 2:15-20), and that the Settlement "does not compensate Class Members that

2    experienced product defects soon after purchase." *Id*. at 2:21-25.   In fact, *all* Class

3    Members that submit valid claims are compensated for monetary losses through the

4    Settlement because it provides a cash benefit.[1]

5          As Ameen clarified at deposition, in his view, the Settlement should have

6    compensated for *all* monetary losses, out-of-pocket or otherwise.  Thus, Ameen is

7    not just seeking a "better" deal—he seeks relief he almost surely could not obtain

8    via a complete victory in an *individual* action, let alone a class action, including: a

9    full refund; reimbursement of all out-of-pocket costs, including the cost of delivery,

10   setup, and cleaning materials purchased for the washer; reimbursement for time and

11   personal labor; pre- and post-remediation testing; professional cleaning of clothes

12   previously washed in a Washer; and HVAC duct cleaning. Ex. 9, Ameen Dep. at

13   36-37, 67-69.[2]   At minimum, if Ameen insisted on pursuing this ambitious set of

14   damages with no regard to the viability of the legal theories or the ability to certify

15   the claims for class treatment, he should have opted out to do so.  But, Ameen

16   appeared to be unfamiliar with the option, despite being represented by counsel. Ex.

17   9, Ameen Dep. at 105-07.

18         Ameen also contends, confusingly, that the uniform payment to all Class

19   Members creates intra-class conflicts.  However, the common recovery is a natural

20   outgrowth of pursuing common liability and damages theories that were important

21   to securing class certification.  *See In re IKO Roofing Shingle Prods. Liab. Litig.*,

22   757 F.3d 599, 603 (7th Cir. 2014).  Apparently, Ameen proposes individualized

23   damages inquiries—a position which is antithetical to a class action and may have

24   ───────────────

25   [1] Moreover, one of Plaintiffs' damages theories was based on projected out-of-pocket losses for cleaning the Washers.

26   [2] At deposition, Ameen also expressed his admittedly unfounded suspicion of health concerns from the BMFO problem. Ex. 9, Ameen Dep. at 156-58, 158:3-4

27   ("I'm not attacking Bosch for my health.").  But even if it was a substantiated concern, personal injury claims are not released by the Settlement.  Dkt. 363-1

28   [Agreement] at 7 (§ II.G.).

PLAINTIFFS' RESPONSE TO AMEEN OBJECTION
SACV10-711 DOC (ANX)

1258245.3

even threatened certification had it been advanced during the litigation.  Or, perhaps Mr. Ameen is insisting upon individualized damages calculations and prove-ups following a classwide liability determination at trial (assuming Plaintiffs would have won), presumably based on a far more complex, burdensome, and likely prohibitively expensive process, especially when compared to the extraordinarily easy claim forms negotiated by Class Counsel.  Either way, his strident emphasis on individualized damages conflicts with his own later pronouncement that payments to Class Members should have been "automatic."  *See* § B, *infra*. Ultimately, his objection is internally inconsistent and largely uninformed about the claims made in this case and class action practice and procedure in general.  And, again, if it was his intention to seek individualized relief, he can and should have opted out.

To conclude, the Settlement meets all the criteria for final approval. Ameen's demand for a Settlement that covers every conceivable category of damages—and compensates them at 100%—is unrealistic, without legal support, and ultimately not required for final approval.  His disregard for the viability of the claims and damages he would seek, or the ability to pursue them as a class action, only underscores the lack of merit in his objection.  Thus, his objection should be overruled, and final approval of this valuable Settlement should be granted.

### B.  Ameen's objection to the requested fees and costs should be overruled.

Ameen objects to Class Counsel's requested fees and costs award of $6.5 million, which includes $2,311,019.39 in costs and $4,188,981.61 in attorneys' fees.  Dkt. 372 at 9.[3]  He claims that the fee should instead be reduced to between 20% and 40% of actual claims paid out.  Dkt. 374 at 3-4.[4]  Ameen provides no law

---

[3] Ameen brings no specific challenge to the requested cost reimbursement.
[4] Notably, Ameen's counsel does not cite any authority in support of his proposed rule.  Nor does counsel address any of the legal authority or facts in Plaintiffs'

*Footnote continued on next page*

PLAINTIFFS' RESPONSE TO AMEEN OBJECTION
SACV10-711 DOC (ANX)

1  to support his proposed calculation; nor does he attempt to address the law and facts

2  Class Counsel advanced in support of their request.  Ultimately, Class Counsel seek

3  less than 45% of their total, compensable lodestar incurred in pursuit of the Class's

4  claims.  Allegations of "excessive" fees are thus baseless and should be rejected.

5  At the outset, Ameen's objection should be overruled because he fails to

6  challenge the applicability of the lodestar method, the number of hours Class

7  Counsel reasonably expended, or their hourly rates.[5]  These facts settle the inquiry

8  in favor of Plaintiffs, because "[t]here is a 'strong' presumption that the lodestar

9  method results in a reasonable fee," *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC

10  JCX, 2012 WL 3151077, at *1 (C.D. Cal. July 31, 2012) (citation omitted), and

11  Class Counsel seek less than half that presumptively reasonable amount.

12  Ameen's demand for even greater reductions—in his view, the fee should be

13  "between 20% and 40%" of the benefits paid out—fails for multiple reasons.  First,

14  Ameen's argument simply *assumes* that Class Counsel seek recovery under the

15  percentage of the fund method.  They do not; case law clearly supports the lodestar

16  method here.  Reply at 10.  Second, if Ameen is arguing that the low claims rate

17  translates to a poor result that requires a downward adjustment to the fee, that

18  argument fails as well.  The claims, opt-out, and objection rates are consistent with

19  or better than other approved settlements, to say nothing of the significant amount

20  recovered for each Class Member as a percentage of estimated damages.  Reply at

21  7-8.[6]  Even if Ameen's logic held—and it does not, as he tacitly admits through his

_____

*Footnote continued from previous page*

22  
23  motion.  While this would be understandable for a lay objector, Ameen/Kron's bare
assertions violate the spirit, if not the letter, of Local Rule 7-5.

24  [5] Indeed, Ameen openly admitted he had no idea what work Class Counsel
performed during the case. Ex. 9, Ameen Dep. at 31:6-11.  His counsel, of course,

25  had full access to the public record to muster any challenge to these predicate facts

26  used to derive the presumptively reasonable lodestar, and his silence is therefore
telling.

27  [6] Of course, BSH filed multiple motions, including one seeking sanctions, which
challenged Plaintiffs' experts' damages opinions.  Dkt. 373, Final Approval Motion

28  at 2-3.

1258245.3

1    failure to cite any case law in support—Class Counsel have already accepted a 55%

2    reduction in lodestar.

3        Ameen also brazenly declares that "Class Counsel did not align its interests

4    in fees with the Class' [sic] interest in adequate compensation."  In support of this

5    conclusion, he cites only his bare contention that "[i]f Class Counsel's goal was to

6    compensate Class Members, it could have negotiated for the automatic payment of

7    benefits for Class Members known by Defendants that complained about product

8    defects, in addition to a claims-made settlement."  Dkt. 374 at 3:27-28.  Tellingly,

9    however, Ameen does not explain what he means by "automatic" payment, or how

10   BSH could automatically give money to Class Members.  BSH is not a bank or

11   other service provider that can simply credit money back to its customers, nor does

12   it have records of the names and addresses of all—or even a significant number

13   of—Class Members.  It is a manufacturer that sells through third party retailers.

14       In contrast to Ameen/Kron's impracticable payment proposal, Class Counsel

15   vigorously bargained for and won an extraordinarily easy and functional claims

16   process.  Many Class Members received postcards notifying them of their eligibility

17   for benefits.  Once a recipient of this postcard confirms her mailing address and

18   provides a statement that she was an original purchaser, *and without proof separate*

19   *proof of ownership or purchase,* she receives her payment.  Otherwise, to establish

20   eligibility for the $55 payment, Class Members need only provide a receipt,

21   invoice, credit card statement, ***or*** picture of their Washer's serial number, along

22   with a statement under penalty of perjury that they were the original purchaser of

23   the Washer.  Dkt. 363-1 [Agreement] at 7 (§ III.A.).  This is as "automatic" a

24   payment as can be devised for the case.

25       Thus, the only "proof" Ameen musters in support of his odious accusation

26   that Class Counsel sold out the Class is a poorly-reasoned, demonstrably false, bare

27   contention by Ameen or, more likely, his counsel, Scott Kron.  By contrast, they

28   ignore that, in fact, the substantive Settlement terms were negotiated and concluded

- 6 -

PLAINTIFFS' RESPONSE TO AMEEN OBJECTION
SACV10-711 DOC (ANX)

1258245.3

1    *before* Class Counsel and BSH negotiated Class Counsel's fee.  Dkt. 373-1, Sagafi

2    Decl. ¶ 14.  The fee negotiation had no effect on the Class recovery.

3          Ameen and Kron also ignore that Class Counsel bargained for and achieved a

4    state-of-the-art notice program to ensure that Class Members would know about the

5    Settlement and could file claims if they so desired.  The combined direct, print, and

6    Internet notice reached over 80% of the Class.  Dkt. 379-1, Robin Decl., ¶ 8.

7    Separate from this notice program, Class Counsel sent a reminder email to Class

8    Members for whom they had contact information.  Dkt. 379-2, Desai Decl., ¶ 2.

9    Class Members may or may not decide to take advantage of the Settlement benefits

10   for myriad unknown reasons, but the value of the Settlement is made evident by the

11   fact that almost 18,000 people, *including Ameen*, had claimed benefits as of May

12   15, compared to 30 opt-outs, and only 3 timely objections.  Reply at 7-8.

13         Finally, Ameen's attempt to almost wholly eliminate the requested, modest

14   fee would severely undermine the fee-shifting provisions of consumer protection

15   statutes designed to level the playing field between well-heeled defendants and

16   ordinary consumers.  This is not a case where Class Counsel seek a percentage of a

17   settlement that was reached early in the case after incurring only modest lodestar

18   and expenses.  To the contrary, the Class is eligible for benefits today only because

19   the Class Representatives and Class Counsel spent nearly five years successfully

20   advancing complex liability and damages theories and defending them against

21   multiple motions to dismiss, class certification/decertification hurdles, summary

22   judgment, and *Daubert* challenges, and on appeal, to say nothing of conducting the

23   contentious fact and expert discovery underpinning this work.  And, they did so

24   over a period of years and after incurring millions in hard costs and fees that they

25   may have never recovered and which, in fact, they will not fully recover despite the

26   successful resolution.  To adopt Ameen's proposed approach in this case would be

27   to *punish* Class Counsel for zealously and efficiently promoting the Class's

28   interests in the face of a vigorous defense—precisely the opposite goal of the fee-

PLAINTIFFS' RESPONSE TO AMEEN OBJECTION
SACV10-711 DOC (ANX)

1    shifting provisions of consumer protection statutes.  Nothing in the case law

2    demands or counsels such an inequitable result.

3          Ameen's objections to the fee award are unmoored from the facts and the

4    law.  The proposed award should be granted in its entirety.

5          **C.**    **Ameen's objection to the service awards should be overruled.**

6          Ameen is the only Class Member to object to the service awards.  He

7    acknowledges that service awards are permissible, but seeks to impose his own rule

8    on the appropriate limit.  Once again, despite being represented by counsel, the

9    objection makes no effort to address the facts supporting the proposed service

10   awards: Plaintiffs' diligence, commitment, and effort in representing the Class over

11   a period of nearly five years, including day-long depositions, inspections,

12   answering discovery, and remaining informed of the litigation and Settlement.[7]

13         Ameen also ignores the series of cases Plaintiffs cited holding that the

14   proposed $5,000 award is reasonable.  Dkt. 372 at 23:13-19.  Instead, he references

15   (but does not cite) a Ninth Circuit case that he believes would prohibit this award.

16   Dkt. 374, Ameen Obj. at 3:9-12.  To the contrary, as the Ninth Circuit very recently

17   explained: "incentive awards that are intended to compensate class representatives

18   for work undertaken on behalf of a class are fairly typical in class action cases." *In*

19   *re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. Feb. 2, 2015).[8]

20   _____

21   [7] At deposition, Ameen admitted he had no idea how much time and effort
     Plaintiffs had dedicated to the litigation, or even that Plaintiffs were receiving
     service awards.    Ex. 9, Ameen Dep. at 49:10-24, 59:16-21.

22   [8] Why Ameen/Kron would attribute a position to the Ninth Circuit without citing
     the case or advising the Court of a seemingly contrary position taken by the Ninth

23   Circuit in a recent case is a question for Kron to answer.  Class Counsel suspect the
     case Kron had in mind is *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

24   There, however, 29 named class representatives were designated to receive
     payments totaling $890,000.  *Id.*  The Court cited approvingly cases in which it and

25   other courts had approved incentive awards ranging from $2,000-$25,000, but held
     that incentive awards of $50,000, with an average of more than $30,000, were

26   unjustified under the specific facts before it, including the fact that a non-class
     member received an incentive award.  *Id.* at 977-78.  Here, by contrast, the

27   incentive awards of $5,000 to just four named plaintiffs are in line with what the

28   *Footnote continued on next page*

                                                    - 8 -
1258245.3

1    Just as in *Online DVD*, this case does not "involve an *ex ante* incentive

2 agreement between the class representatives and class counsel," or "a settlement

3 which explicitly conditioned the incentive awards on the class representatives'

4 support for the settlement," or structural differences in settlement amounts for

5 different groups that tempted the Plaintiffs to favor their group over others. *Id*. at

6 943. Rather, as in that case and so many others, Plaintiffs are being provided a

7 modest service award for carrying a load on behalf of all Class Members, and

8 enabling all to recover without any investment of time or expense on their part.

9       **D.**    **Kron's boilerplate arguments, without citation to case law or the**
10             **record, raise the reasonable suspicion that his motives are**
             **disingenuous.**

11    Courts have rightfully cast a wary eye at professional objectors like Kron,

12 "who can levy what is effectively a tax on class action settlements, a tax that has no

13 benefit to anyone other than to the objectors. Literally nothing is gained from the

14 cost: Settlements are not restructured and the class, on whose benefit the appeal is

15 purportedly raised, gains nothing." *In re Cathode Ray Tube (CRT) Antitrust Litig.*,

16 281 F.R.D. 531, 533 n.3 (N.D. Cal. 2012) (citations omitted); *see also In re*

17 *Hydroxycut Mktg. & Sales Practices Litig.*, 2013 WL 5275618, at *5 n.3 ("An

18 objection even of little merit, can be costly and significantly delay implementation

19 of a class settlement") (*citing* Manual for Complex Litigation § 21.643 (4th ed.)).

20 Kron is precisely such an objector. *See* Dkts. 375 and 375-1 (outlining Kron's past

21 objections).

22    Kron's filing on behalf of Ameen raises similar concerns. Though the

23 objection Kron filed covers much ground (at least superficially), his client knew

24

25 _____

26 *Footnote continued from previous page*
Ninth Circuit and other Circuit courts have approved, are presumptively reasonable,
27 and are fully justified by the risks and efforts of named the Plaintiffs—including
day long inspections and depositions away from their homes, to name just two
28 examples.

PLAINTIFFS' RESPONSE TO AMEEN OBJECTION
                                                              SACV10-711 DOC (ANX)

1258245.3

1  surprisingly little about the litigation or Settlement.[9]  The objection includes

2  challenges to the service awards, even though Ameen admitted at deposition that he

3  had no awareness of these service awards.  The objection complains about the lack

4  of "automatic" payments, when in fact such a scheme would not be possible here

5  given the relationship between BSH and Class Members (unlike other cases where

6  Kron has represented objectors, which involve banks and other defendants for

7  whom a more direct relationship with the class members is likely).  And, most

8  tellingly, the objection lacks any citation to the record, and no case law cites,

9  despite taking quite stark positions on the applicable standards.

10      Ultimately, the objections are without foundation and should be rejected on

11  their merits.  Nonetheless, the circumstances and content of the objections raise

12  significant concerns that at issue here is not a legitimate dispute with the Settlement

13  grounded in the facts and law, but rather some ulterior motive known only to Kron.

14  **III.   CONCLUSION**

15      For the foregoing reasons, Plaintiffs respectfully request that the Court

16  overrule Ameen's objection in its entirety, along with the other objections, and

17  grant Plaintiffs' motions for final approval, attorneys' fees and costs, and class

18  representative stipends.

19  Dated:  May 22, 2015            Respectfully submitted,

20                                LIEFF CABRASER HEIMANN &
                                  BERNSTEIN, LLP
21

22                                By: *s/ Kristen Law Sagafi*

23

_____

24  [9] Ameen did not know what claims had been brought in the lawsuit (Ex. 9 at
    25:13-23), which claims were certified for class treatment (*id*. at 24-25), the
25  primary arguments advanced by Plaintiffs (*id*. at 23:2-10), whether Class Counsel
    hired any experts (*id*. at 43), whether any discovery was taken (*id*. at 32:25-33:11),
26  whether any depositions were taken (*id*. at 43:14-20), what work Class Counsel did
    on behalf of the Class throughout the litigation (*id*. at 31:6-11), what work Plaintiffs
27  did on behalf of the Class (*id*. at 49:10-24), or whether Plaintiffs were receiving any
28  service awards above and beyond the class recovery (*id*. at 59:16-21).

PLAINTIFFS' RESPONSE TO AMEEN OBJECTION
SACV10-711 DOC (ANX)

Kristen Law Sagafi (SBN 222249)
klaw@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Jonathan D. Selbin (SBN 170222)
Jason L. Lichtman, *pro hac vice*
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Stuart M. Eppsteiner (SBN 098973)
sme@eppsteiner.com
Andrew J. Kubik (SBN 246902)
ajk@eppsteiner.com
EPPSTEINER & FIORICA ATTORNEYS,
LLP
12555 High Bluff Dr., Ste. 155
San Diego, CA  92130
Telephone: (858) 350-1500
Facsimile: (858) 350-1501

Daniel C. Levin, *pro hac vice*
dlevin@lfsblaw.com
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

*Attorneys for Plaintiffs and the Class*

1258245.3

PLAINTIFFS' RESPONSE TO AMEEN OBJECTION
SACV10-711 DOC (ANX)

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that, on May 22, 2015, the foregoing was filed via the

3  Court's ECF system.

4

5                         By: /s/ Nimish R. Desai

6                         **Lieff Cabraser Heimann & Bernstein, LLP**
7                         275 Battery Street, 29th Floor
                          San Francisco, CA  94111-3339
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1258245.3

PLAINTIFFS' RESPONSE TO AMEEN OBJECTION
SACV10-711 DOC (ANX)