IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SHARON COBB, et al., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>BSH HOME APPLIANCES CORPORATION, a Delaware Corporation,<br><br>        Defendant. | Case No.  SACV10-711 DOC (ANx)<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION  FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' REQUEST FOR SERVICE AWARDS**<br><br>Judge:     Hon. David O. Carter |

On February 27, 2015 Plaintiffs filed two motions:   a) Motion for Final Approval of Class Action Settlement; and b) Class Counsel's Unopposed Motion for Attorneys Fees and Reimbursement of Expenses, and Plaintiffs' Request for Service Awards ("Motions"). The Motions duly came on for hearing on June 1, 2015.  Having reviewed the papers, pleadings, objections, and files in this case, and good cause appearing, it is hereby ordered, adjudged and decreed that:

## I.      FINAL APPROVAL OF CLASS ACTION SETTLEMENT

This Final Order and Judgment ("Final Order") incorporates and makes a part hereof: (a) the Settlement, the Notice Plan, the Class Notice, and the Claim Forms and all exhibits thereto [Dkt. Nos. 363-1, 363-2]; and (b) the Court's findings and conclusions in the Preliminary Approval Order. All capitalized terms in this Final Order shall have the same meanings as in the settlement agreement, unless separately defined herein. All preliminary findings and conclusions in the Court's Preliminary Approval Order are hereby made final.

This Court has jurisdiction over the subject matter and parties to the Action pursuant to 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453. This jurisdiction includes, without limitation, jurisdiction to finally certify the Settlement Class for settlement purposes under Fed R. Civ. P. 23(a) and (b)(3), finally approve the Settlement under Fed R. Civ. P. 23(e), and dismiss the Action with prejudice.

The Settlement Class meets the requirements of Fed R. Civ. P. 23(a) and 23(b)(3). The Settlement Class consists of all residents of the United States who were the original purchasers of one or more Bosch or Siemens brand 27-inch Front-Loading Washers. Excluded from the Settlement Class are: (1) BSH, any entity in which BSH has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) retailers, wholesalers, and other individuals or entities that purchased the Washers for resale; (3) the United States government and any agency or instrumentality thereof; (4) the judge to whom this case is assigned and any member of the judge's immediate family; (5) claims for

personal injury, emotional distress and wrongful death; and (6) persons who timely and validly opt to exclude themselves from the Settlement Class. *See* Settlement Section II.G.

Based upon Plaintiffs' submissions and the record before this Court, which Defendant controverts, but does not contest for settlement purposes, the prerequisites for a class action under Fed R. Civ. P. 23(a) and (b)(3) have been satisfied, in that:

a.     The members of the Settlement Class are so numerous that joinder of all members is impractical. Fed. R. Civ. P. 23(a).

b.     This litigation involves common class-wide issues that would drive the resolution of the claims absent the Settlement. Fed. R. Civ. P. 23(b); *Tait v. BSH Home Appliance Corp.*, 289 F.R.D. 466, 478 (C.D. Cal. 2012) (enumerating common questions that predominate, including whether a design defect exists and whether BSH failed to adequately disclose known information about the alleged defect).

a.     The claims of the named Plaintiffs are typical of the claims of the Settlement Class. Fed. R. Civ. P. 23(c). Typicality is satisfied because the conduct at issue is alleged to have caused similar harm at the point of purchase to Plaintiffs and the Settlement Class.

b.     The named Plaintiffs are adequate Class representatives and possess the same interests in the outcome of this case as the other Class Members. Fed. R. Civ. P. 23(d). The named Plaintiffs—like all Class members—purchased a Washer. Accordingly, the Court finally appoints as Class representatives Nancy Wentworth, Trish Isabella, Dennis Demereckis, and Beverly Gibson.

c.     Additionally, having found the following firms qualified to serve as Class Counsel, the Court finally appoints as Class Counsel Eppsteiner & Fiorica Attorneys, LLP, Lieff Cabraser Heimann &

Bernstein, LLP, and Levin Fishbein, Sedran & Berman, LLP, with Eppsteiner & Fiorica Attorneys, LLP as lead class counsel.

d.      Class Counsel and the Class representatives have fully and adequately represented the Settlement Class in the Action, and in entering into and implementing the Settlement, and accordingly have satisfied the requirements of Fed. R. Civ. P. 23(a)(4).

e.      The Court also finds that common issues predominate and the Settlement is a superior way to resolve this controversy. Fed. R. Civ. P. 23(b)(3). The claims of fraudulent omissions and breaches of warranty focus primarily on Defendant's conduct, and the economic loss claims share a common damages measurement.

f.      Therefore, the Court finally certifies the Nationwide Settlement Class under Fed. R. Civ. P. 23(a) and 23(b)(3) for settlement purposes only.

g.      These findings shall be vacated and have no preclusive effect in this or any other forum in the event this Final Order is for any reason (whether as a result of reconsideration, appeal, or otherwise) vacated and the Settlement is disapproved, or if the Settlement otherwise does not become Final or Effective for any reason, including without prejudice to Defendant's rights to contest class certification.

This Court finds that the Claims Administrator caused notice to be disseminated to the Settlement Class in accordance with the Notice Plan and the Preliminary Approval Order, and that notice was given in an adequate and sufficient manner and complies with Due Process and Fed. R. Civ. P. 23. The Court further finds that the Notice Plan was reasonable and provided due, adequate, and sufficient notice to all Persons entitled to receive notice. The Notice Plan complied with Fed. R. Civ. P. 23(c)(2)(B) because it constituted the best notice practicable under the circumstances and provided individual notice to all Class Members who could be

identified through reasonable effort and extensive published notice, as detailed in the Notice Plan. The Court specifically finds that the Class Notices:

    a. Were simply written and were readily understandable;

    b. Were reasonably and fairly calculated to apprise Class Members of (i) the pendency of the Action and the claims asserted by the Settlement Class, (ii) the allegations that are the basis for the Action, (iii) the Class definition, (iv) the terms of the proposed Settlement, including how Class Members may receive benefits, (v) the maximum amount of attorneys' fees that would be sought by Class Counsel, and the proposed incentive awards for the Class representatives, (vi) the Class Members' right to object to or opt out of the Settlement and the time and manner for doing so, (vii) their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) if they did not exclude themselves from the Settlement Class, and (viii) the binding effect of the Settlement and anticipated Final Order on all persons who did not timely and validly request exclusion from the Settlement Class;

    c. Informed the Class Members of the general risks of continued litigation; and

    d. Identified the website address for Class Members to use to submit claims and/or to obtain additional information regarding the Settlement.

In addition, the Court finds that on December 19, 2014, Defendant fully satisfied its obligations of providing Notice of the proposed Settlement to the public officials designated under the Class Action Fairness Act, 28 U.S.C. § 1715 to receive such notice.

Plaintiffs, by and through their counsel, have investigated the pertinent facts and law, have engaged in motion practice and discovery, and have

evaluated the risks associated with continued litigation, decertification, trial, and appeal. The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of well-qualified and experienced mediators, the Honorable Daniel S. Pratt (Ret.) (who presided over the first mediation in December 2013), and the Honorable Dickran Tevrizian (Ret.) (who presided over the September 2014 mediation). The Court further finds that this litigation is complex and that if it were to continue through trial and potential subsequent appeals, it would likely be both contentious and protracted. The Court also notes that Defendant has asserted numerous defenses to Plaintiffs' claims and has vigorously denied any liability or damage, that Plaintiffs' ultimate success in the litigation is not guaranteed, and that the risks of establishing liability on behalf of Class Members are significant. The risks are veritable given the defense verdict in similar litigation involving Whirlpool washing machines.

The Court finds that the Settlement confers substantial benefits upon the Settlement Class and avoids the costs, uncertainty, delays, and other risks associated with continued litigation, trial, and/or appeal. Defendant will pay $55 to each qualifying Class Member who submits a timely Claim through a straightforward claims process.

By all objective measures backed by evidence and admissible damages theories, the Settlement is a fine result and well within the range of reasonable settlements. The only measure of damages that BSH conceded could conceivably be presented on a classwide basis was the price elevation theory. Plaintiffs' damages experts, leaders in their fields, estimated each Class Member's damage under this theory at $119. Thus, by this Settlement, Class members are entitled to recover 46% of their estimated damages—all by filling out a simple claim form and providing proof of purchase, including a receipt,

invoice, credit card statement, or picture of the Washer's serial number.  Dkt. # 259-3 [Rysman Rpt.] ¶ 11.  The Settlement is also 14% of Plaintiffs' *most aggressive* damages theory of $396 per Washer, which was based on lifetime cost to clean the Washers and was therefore challenged by BSH on *Daubert* and *Comcast* grounds.

This percentage recovery strongly supports final approval.  Indeed, district courts in the Ninth Circuit have approved settlements with much larger differences between the settlement amount and estimated damages.  *See*, *e.g.*, *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) (granting final approval of a settlement providing for vouchers to class members, the total value of which was 3% of possible recovery (vouchers worth up to $391.5 million, released claims worth up to $13.05 billion)); *Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2, 2014) (granting final approval where settlement represented 1.7% of possible recovery (net settlement fund of $8,288,719.16, resolving claims worth potentially $499,420,000)); *In re LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 73530, at *6 (N.D. Cal. June 21, 2010) (granting final approval where settlement was 5% of estimated damages); *see also In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.5 (E.D. Pa. 2003) (gathering cases where courts approved settlements achieving only single-digit percentages of potential recoveries).

When the objection and opt-out deadline ran on April 30, there were only 3 timely objections (0.004% of the Class and 0.002% of direct notice recipients), and 30 opt-outs (0.005% of the Class and 0.02% of the direct notice recipients). So far, the Claims Administrator has received over 17,904 claims, representing 2.8% of the estimated Class, and almost 13% of the direct notice recipients. The Court has evaluated this overall reaction of the Settlement Class to the Settlement, and finds that the overall acceptance of the Settlement by Class

Members supports the Court's conclusion that the Settlement is in all respects fair, reasonable, adequate, and in the best interests of the Settlement Class. The Court finds the Settlement fulfills all of the *Churchill* factors. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The Court addresses the specific objections to the Settlement below. Because the terms and provisions of the Settlement have been entered into in good faith and are in full compliance with all applicable requirements of the United States Constitution (including its Due Process Clause), the Federal Rules of Civil Procedure, the rules of this Court and any other applicable law, and are fair, reasonable, and adequate and in the best interests of the Settlement Class, the Court hereby finally approves the Settlement.

The parties and the Claims Administrator are directed to implement the Settlement according to its terms and conditions. Kurtzman Carson Consultants, LLC, is finally appointed to serve as the Claims Administrator as provided under the Settlement. The Claims Administrator is directed to begin processing all validly filed claims.

Except as to those persons who have timely submitted valid requests for exclusion from the Settlement, this Final Order and the Settlement shall be forever binding on Plaintiffs and each Class Member, as well as their heirs, executors, administrators, and their respective predecessors, successors, representatives and assigns, or any and all of them, and those terms shall have res judicata and preclusive effect in all pending and future claims, lawsuits, or other proceedings involving the Released Claims in any state, federal, or territorial court, arbitral forum or other forum of any kind.

Plaintiffs and each Class Member, as well as their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, subrogees, partners, successors, predecessors, and assigns, and all those acting or purporting to act on their behalf, are conclusively deemed to have fully, finally, and forever

released, relinquished and discharged Defendant, including, but not limited to, all present and former parents companies (including BSH Bosch und Siemens Hausgerate GMBH), subsidiaries, affiliate companies, shareholders, officers, directors, employees, partners, agents, servants, representatives, attorneys, insurers, successors, predecessors, and assigns from and against any and all liability for the Released Claims as set forth in Section VIII of the Settlement.

Plaintiffs and each Class member are barred and permanently enjoined from initiating, asserting and/or prosecuting any Released Claims which the Class Member had, has or may have in the future against any Defendant in any court, arbitration, tribunal, or forum of any kind. The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over this Action and to protect and effectuate this Final Order.

As set forth in the Settlement, Defendant has denied, and continues to deny, any wrongdoing or liability of any kind relating to the Action. Neither this Final Order, nor any provisions of the Settlement or any negotiations leading to its execution, may be construed as, offered as, received as, used as, or deemed to be evidence of an admission of any liability or wrongdoing of any kind on the part of Defendant in the Action, or in any other judicial, administrative, regulatory, or other forum of any kind.

## II.   ATTORNEYS' FEES, COSTS, AND REPRESENTATIVE PLAINTIFF INCENTIVE AWARDS

Class Counsel's application for an award of attorneys' fees of $4,188,981.61, is fair, appropriate and reasonable. The Court awards the above amount, in addition to $2,311,018.39 in costs and expenses, plus $5,000 incentive awards to each Class Representative which shall be paid in accordance with Section VI of the Settlement. In support of this Order, the Court makes the following findings of fact and conclusion of law.

As a general matter, the Ninth Circuit has held that in the context of class

action settlements, courts have the discretion to choose either the "lodestar/multiplier" method or the "percentage" method to determine a reasonable attorneys' fee. *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998). In cases that involve fee-shifting statutes, like this Action, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-557 (2009); *Bruno v. Quten Research Inst., LLC*, SACV 11-00173 DOC EX, 2013 WL 990495, *3-4 (C.D. Cal. Mar. 13, 2013). Moreover, where, as here, settlement relief will be paid on a claims-made basis with no cap to the relief available, consideration of attorneys' fees lends itself more readily to the lodestar method.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). "There is a 'strong' presumption that the lodestar method results in a reasonable fee." *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *1 (C.D. Cal. July 31, 2012)(citation omitted.)

Here, Class Counsel's combined lodestar is $9,265,612.75. SME Decl. ¶ 19. Class Counsel requests an award of fees in the amount of $4,188,981.61(which equals the total requested payment of $6.5 million less costs of $2,311,018.39). *Id*. Further Class Counsel have rendered additional services since filing their initial brief regarding attorneys' fees. The requested fee is quite modest; representing a discount of 55%, or a negative multiplier of 0.45.

To assist the court in calculating the lodestar, a plaintiff must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing

in the community for similar services by lawyers of reasonable comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). "[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts look to prevailing market rates in the community in which the court sits. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995); *see also Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Class Counsel's lodestar of $9,265,612.75 is based on 18,730.4 attorney and staff hours, delivered over four and one half years and is supported by fair and reasonable rates and hours. Dkt 372-2 (SME Declaration) ¶¶ 21-23. Class Counsel's rates for work in this case reflect an average of $268.28/hour for paralegals, $478.67/hour for associates to $707.93/hour for partners. *Id*. Ex. 1.

Class Counsel's rates are reasonable and consistent with the rates charged by both plaintiff and defense firms who practice in the Central District of California. In June of 2013, this Court held that rates ranging from $100 per hour for support staff to $800 per hour for partners to be reasonable. *Kearney v. Hyundai Motor Am., No.* SACV 09-1298-JST, 2013 WL 3287996, at *8 (C.D. Cal. June 28, 2013). In March of 2013, this Court approved a class counsel fee request in which counsel calculated lodestar based on partner rates of $680, associate rates ranging from $375-$450, and staff rates ranging from $215-225. *Bruno v. Quten Research Inst., LLC*, No. SACV 11-00173 DOC EX, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013) . Here, the average partner, associate and paralegal lodestar rates are similar to those this Court approved in *Bruno*.

Additionally, The National Law Journal ("NLJ") issues an annual survey of prevailing hourly rates in the nation's largest law firms, and courts rely on this survey evidence of prevailing hourly rates. *See, e.g., Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). According to the NLJ's 2013

Law Firm Billing Survey, the rates Class Counsel have used for calculating lodestar in this case are comparable to the rates employed by many California law firms, including BSH's counsel, Jones Day.

The Court finds and concludes that: Class Counsel's requested hourly rates are reasonable and the prevailing rates in this District for similar work and experience and have been approved by other federal courts.  Further, the number of hours expended in prosecuting the Action are reasonable and that the fees requested by Class Counsel are fully justified by, *inter alia*, (a) the novelty and complexity of the litigation; (b) the skill and experience of counsel; (c) the quality of representation and the results obtained; and (d) the contingent nature of the litigation and preclusion from other work. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997) *citing Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Class Counsel are entitled to compensation for time reasonably spent at all points in the litigation. Courts should avoid engaging in an "*ex post facto* determination of whether attorney hours were necessary to the relief obtained." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id*. Here, Class Counsel expended a total of 18,730.4 hours in litigating this complex class action. Dkt. # 372-2.  This includes, *inter alia*, time billed for: pursuing extensive pre-litigation investigation of the claims, researching and drafting the pleadings; extensive law and motion practice associated with the motions to dismiss, motion for class certification, and motions for sanctions; responding to BSH's petitions for appeal; drafting and responding to discovery; taking or defending over 50 depositions; reviewing extensive and voluminous documents from BSH and third parties; interviewing and retaining engineering, biologic, economic, marketing and consumer survey experts; preparing material for

use at trial; preparing for and participating in meetings, settlement conferences and mediations; drafting preliminary and final approval motions, communicating with class members before and during the litigation related to personal experiences with the Washers, and inquiries related to what claims were asserted; settlement and claims administration, which is ongoing; responding to objections; and drafting the motion for attorneys' fees, costs and service awards. SME Decl. ¶¶ 2-10; Dkt. # 363-3.

As a result of Class Counsel's prosecution of this case and subsequent negotiation of the Settlement, Class Counsel secured a valuable benefit for the Settlement Class. *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (the "most critical factor is the degree of success obtained"). Approximately 650,000 Washer purchasers are eligible to make a claim for a cash payment of $55 each, making approximately $35,750,000 in cash relief available to class members. The cash payments will meaningfully reimburse Class Members for the difference between what they would have paid and did pay for the Washer, had they been informed of the extra obligations associated with owning the Washer. The Settlement achieves the key goal of this litigation of providing compensation to owners of Washers. In addition to the cash relief available to the Class, BSH has agreed to pay up to $6.5 million in Court-awarded attorneys' fees and costs, plus Court-awarded service awards to the named Plaintiffs. Pursuant to the Settlement Agreement, BSH will also pay the cost of claims administration. By any measure, but especially in light of defense verdict in a substantially similar case against Whirlpool, the result achieved here is remarkable.

Efforts by Class Counsel in this complex class action litigation have been without compensation or reimbursement of any kind. The fees incurred and the costs advanced, as noted in the record, have been wholly contingent upon the result achieved. The requested fee is more than justified under the applicable law.

Class Counsel are experienced class action practitioners who provided

quality representation to the Settlement Class.  The Court is satisfied that the reputation, experience, and ability of Class Counsel were essential to success in this litigation Class Counsel's requested attorney fee demonstrates ample satisfaction of the *Kerr* factors.

The attorneys' fees are also fair and reasonable under a percentage-of-the-fund cross-check because the fees represent only 11.8% of the settlement value, well under the 25% benchmark. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Extending the Settlement fund to include costs, renders the fees only 10% of the Settlement fund.

In addition, under applicable case law and the terms of the Settlement, Class Counsel are entitled to recover the out-of-pocket costs and expenses reasonably incurred in investigating, prosecuting, and settling this Action. As documented with this Court, Class Counsel have incurred $2,311,018.39 in unreimbursed, out-of-pocket expenses. The Court finds that these costs and expenses were both reasonable and necessary, and shall be reimbursed as set forth in accordance with Section VII of the Settlement.

Finally, "named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  The record reflects a significant contribution of time to the Action by each of the Plaintiffs, including depositions, conferences with counsel, written discovery, in-home inspections of their washers, and travel.  Incentive awards of $5,000 for each Class representative are reasonable and justified given the circumstances here. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving service awards of $5,000); *Faigman v. AT & T Mobility LLC*, No. C06–04622 MHP, 2011 WL 672648, *5 (N.D. Cal. Feb.16, 2011) ("incentive payments of $5,000 are presumptively reasonable").

The Settlement Class was provided with due and adequate notice, in

compliance with the requirement of constitutional due process and Rule 23 of the Federal Rules and Civil Procedure, pursuant to the Notice Program approved by the Preliminary Approval Order. The Class Notice informed the Settlement Class that Class Counsel intended to apply for an award of attorneys' fees and costs in an amount not to exceed $6.5 million combined.

## III.    THE OBJECTIONS ARE OVERRULED

Charles Moore, Joseph McLaughlin, Roger Kerr, Jeffrey Rudy, and Bobby Ameen[1] have submitted objections the settlement and/or the requested fee and service awards.  The Court has considered each of the objections and addresses each one below.

**Charles Moore**

While Charles Moore frames his letter to Counsel and the Court as an "objection," the substance of his letter shows no objection to the terms of the settlement or the requested fees. Dkt. # 379-4.  Moore's letter asserts that BSH did not do anything wrong.  While Moore is entitled to hold that opinion, his opinion is not evidence nor does it persuade the Court that the settlement is anything other than fair, adequate and reasonable.  Therefore, Moore's objection is overruled.

**Joseph McLaughlin**

Joseph McLaughlin is a securities attorney at Sidley Austin's New York office. He does not object to the Settlement benefits, but does object to the requested attorneys' fees and costs award on the sole basis that "the communications regarding the proposed settlement do not set forth the actual or probable magnitude of the aggregate cash awards to the class. It is therefore impossible to determine whether the proposed fee and expense award is reasonable." Dkt. # 379-8.

---

[1] A fifth Class member, Carole Manuwa, objected on January 3, 2015, but withdrew her objection on March 6 after receiving clarification on the claims process.

McLaughlin's objection failed to comply with the plainly stated Notice requirements that: "You must file your objection with the Court no later than April 30, 2015 and mail copies to the Settlement Administrator, Class Counsel and Defense Counsel postmarked by April 30, 2015." Dkt. #373-2 at Page ID # 35751.[2]  Despite this instruction, McLaughlin failed to file his objection, which was postmarked past the deadline, or serve it on Class Counsel.  Instead, he sent a copy to the Claims Adminstrator. The Court therefore could overrule McLaughlin's objection for procedural deficiencies.

But even if McLaughlin's objection had been timely, the Court would nonetheless overrule it.  As addressed above, the Court-approved notice program implemented in this case was sufficient to inform Class members of the settlement value and the requested fee. Moreover, Class Counsel's motion for attorneys' fees, which sets forth both the lodestar analysis and the percentage cross-check in detail, was readily available on the public docket or from Class Counsel.  To the extent McLaughlin means to argue that the requested fees are excessive relative to the Settlement, the facts do not support this contention.   As detailed above, the requested fees are appropriate under the lodestar method and well within the reasonable range when considered as a percentage of the available fund.

**Roger Kerr**

Roger Kerr objects that the $55 settlement is inadequate because the mold problem, combined with his washer's ineffective spin cycle, led him to donate his machine within 18 months of purchase and replace it with a competitor's product. Dkt. # 379-4.

As a preliminary matter, the ineffectiveness of the spin cycle has nothing to do with this litigation and his claim with respect to spin drying is not released under the Settlement.  With regard to the cash relief made available under the

---

[2] Available to the public at the Settlement Website,
https://eclaim.kccllc.net/caclaimforms/bht/Documents/BHT_NOT.pdf

Settlement, the Court is mindful that "'[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 624) (affirming settlement approval). A settlement is therefore not to be judged against a "hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625 (emphasis in original). As such, "a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial. In other words, the issue is not whether the settlement 'could be better,' but whether it falls within the range of appropriate settlements." *Jaffe v. Morgan Stanley & Co.*, 2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 7, 2008).

Kerr's objection focuses exclusively on the amount offered in the Settlement, and ignores the remaining *Churchill* factors. As explained above, the Court finds the Settlement fair, adequate and reasonable given the facts of this case. Kerr's objection is overruled.

**Jeffrey Rudy**

Jeffrey Rudy objects that the mold problem in his washer required a gasket to be replaced in May 2010 at a cost of $147, and that as of 2015 the replacement gasket also showed mold despite his following BSH's recommended maintenance tasks. Dkt. # 379-5. He also objects to the fee request in a single sentence. *Id*. The $55 payment compensates a significant share of Rudy's costs while allowing him to avoid the risk and expense of litigation. The Settlement is fair, adequate, and reasonable. Rudy's objection to the adequacy of the Settlement relief is overruled.

Rudy criticizes the requested fee award without explanation. The requested amount of attorneys' fees is reasonable. Rudy's objection regarding the amount of attorneys' fees is overruled.

**Bobby Ameen**

Finally, Bobby Ameen, through counsel Scott Kron, contends the Settlement

1   fails to compensate for out-of-pocket losses and is inadequate, and requests that the

2   Court reduce the Class Representatives' service awards and Class Counsel's

3   requested attorneys' fees.  Dkt. # 374.  On May 11, 2015, the Court granted

4   Plaintiffs' *ex parte* application to take Ameen's deposition, and ordered Plaintiffs

5   to file a response to his objections within 48 hours of the deposition.  Dkt. #377.

6   Ameen was deposed on May 20, 2015.

7        Ameen argues that Class members are not compensated "for their monetary

8   losses" related to "out-of-pocket" losses (Dkt. # 374 at 2:15-20), and that the

9   Settlement "does not compensate Class Members that experienced product defects

10  soon after purchase."  *Id*. at 2:21-25.  In fact, the Settlement compensates all Class

11  members for monetary losses.  At his deposition, Ameen clarified that he objects to

12  the settlement because some Class members may not be fully compensated for *all*

13  their monetary losses, out-of-pocket or otherwise. Ameen contends that the

14  Settlement is unfair as drafted—a deficiency that could only be cured by inclusion

15  of the following relief: a full refund of the purchase price of the washer;

16  reimbursement of all out-of-pocket expenses, including costs of delivery, setup,

17  and cleaning material purchased for the washers; reimbursement for time and

18  labor; pre-and-post-remediation testing; professional cleaning of clothes previously

19  washed in the Washer; and HVAC duct cleaning. Dkt. # 381 at 1-2.   As addressed

20  above, the settlement relief is fair adequate and reasonable in light of the *Churchill*

21  factors.  The Court is not persuaded that a better deal was possible here, and

22  certainly not required.  Importantly, however, Ameen seeks far more than a

23  "better" deal; he argues for relief he likely could not obtain in an *individual* action,

24  let alone a class action settlement. If Ameen wished to pursue the remedies he

25  enumerated in deposition, he could have opted out of the settlement and pursued an

26  individual action. The settlement is reasonable. Ameen's objections to the terms of

27  relief are overruled.

28        Ameen also appears to contend that the uniform payment to all Class

1   Members creates interclass conflicts.  This contention ignores the fact that the

2   common recovery is a natural outgrowth of pursuing common liability and

3   damages theories that were important to securing class certification.  There are no

4   conflicts and the objection is overruled.

5           As to fees, Ameen claims that the fee should be reduced to between 20% and

6   40% of actual claims paid out.  Dkt. # 374 at 3-4.  Ameen is wrong as a matter of

7   law as there is no binding authority that supports his contention. Such a finding

8   would severely undermine the fee-shifting provisions of consumer protection

9   statutes designed to level the playing field between well-heeled defendants and

10  ordinary consumers. More importantly, however, Ameen, as with the other

11  objectors, does not challenge the two predicate facts used in calculating Class

12  Counsel's lodestar: (1) the number of hours the prevailing party reasonably

13  expended on the litigation (as supported by adequate documentation), multiplied

14  by (2) a reasonable hourly rate for the region and for the experience of the lawyer.

15  *In re Bluetooth*, 654 F.3d at 941.  As detailed in Plaintiffs' motion and the Court's

16  findings in this Order, Class Counsel's rates are reasonable, as are the hours

17  expended successfully prosecuting this litigation over many years leading up to

18  trial.  Dkt. # 372 at 14-16.  Ameen offers no evidence to overcome the "strong

19  presumption that the lodestar method results in a reasonable fee."  *Rutti v. Lojack*

20  *Corp.*, 2012 WL 3151077, at *1.  Nor does the Court find persuasive Ameen's

21  argument insinuating collusion through the Notice Plan.  Dkt. # 374 at 3:27-28.

22  The Court-approved the Notice Plan satisfies due process.[3]  As noted above, Class

_____

24  [3] The combined direct, print, and Internet notice reached over 80% of the Class.

25  Dkt. 379-1, Robin Decl., ¶ 8.  Separate from this notice program, Class Counsel

    sent a reminder email to their own contacts.  Dkt. 379-2, Desai Decl., ¶ 2.  Class

26  Members may or may not decide to take advantage of the Settlement benefits for

27  myriad unknown reasons, but the value of the Settlement is made evident by the

    fact that almost 18,000 people had claimed benefits as of May 15, 2015, compared

28  to less than 30 opt-outs, and only 3 timely objections.  Reply at 7-8.

1  Counsel's request fee is only 45% of their lodestar.  Based on the *Kerr* factors, the

2  requested fee is fair and reasonable.  Therefore, the Court overrules Ameen's

3  objection as to Class Counsel's fees.

4        Ameen's objection regarding Plaintiffs' incentive awards fails for much of

5  the same reasons as his other objections.  Once again, Ameen fails to supply

6  evidence that would overcome the presumption that the $5000 incentive awards

7  are reasonable.  *Faigman v. AT & T Mobility LLC*, 2011 WL 672648, *5.  Ameen

8  ignores all the facts supporting the proposed service awards: Plaintiffs' diligence,

9  commitment, and effort in representing the Class over a period of five years,

10  including day-long depositions (involving cross-country travel for two of the

11  Plaintiffs), inspections, answering discovery, and remaining informed of the

12  litigation and Settlement.  Plaintiffs are being provided a modest service award for

13  carrying a load on behalf of all Class Members, and enabling all to recover without

14  any investment of time or expense on their part.  The $5000 incentive awards are

15  reasonable.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir.

16  2015). Ameen's objection regarding Plaintiffs' incentive awards is overruled.

17        Lastly, while objections to class action settlements can play a vital role in

18  ensuring fairness, the right to object can also be abused.  Unfortunately, the latter

19  appears to be true here.  Ameen's counsel, Scott Kron, frequently objects to class

20  action settlements.  Since 2013, he has represented objectors in 11 class action

21  settlements, including the instant matter.  In 9 instances, he represented himself,

22  his family members, his law partner, a friend, or a pre-existing business client. In

23  two other cases, Kron's client was not identified.  Dkt. # 375-1, Eppsteiner Decl. ¶

24  15.  This case fits the pattern: Ameen and Kron were high school classmates and

25  remain friends.  Dkt. # 381 at 2.  Given these facts, Ameen's counsel resembles

26  what courts have termed a "professional" or "serial" objector. *See, e.g., In re*

27  *Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012).

28  Kron made little effort to address the relevant law and facts in the objection, and

caused the parties to incur the additional cost of discovery (requiring a court order) and responding to a meritless objection.  The circumstances and content of the objection raise significant concerns that Ameen's objection is not grounded in the facts or the law, but made for ulterior motives.

## CONCLUSION

1.     The objections of Charles Moore, Bobby Ameen, Jeffrey Rudy, Roger Kerr, are Joseph McLaughlin are OVERRULED. Class Counsel shall serve this Order upon each of the objectors and their counsel, if any. If any objector wishes to opt out of the Settlement Class, he may do so by notifying Class Counsel of his desire to opt out within 10 days of entry of this Order.

2.     Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED.

3.     Class Counsel's application for an award of attorneys' fees in the amount of $4,188,981.61, reimbursement of expenses in the amount of $2,311,018.39, and incentive awards in the amount of $5,000 for each Class representative is GRANTED. Class Counsel's attorneys' fees, reimbursement of expenses, and the Plaintiffs' incentive awards shall be paid in accordance with the schedules set forth in Sections VI and VII of the Settlement and Exhibit 2 thereto.

4.     The awarded attorneys' fees and costs shall be transferred into an account designated by Class Counsel for the benefit of Class Counsel upon entry of this Order subject to the terms, conditions and obligations of the Settlement Agreement which terms, conditions and obligations are incorporated herein.

5.     The awarded fees and expenses shall be directed to Class Counsel for distribution in a manner that reflects each firm's contribution to the initiation, prosecution and resolution of this litigation.  The Court authorizes the firms of Eppsteiner & Fiorica Attorneys, LLP and Lieff Cabraser Heimann & Bernstein, LLP to allocate the fee award among the Class Counsel firms.

6.      Without affecting the finality of this Final Order, the Court reserves exclusive jurisdiction as to all matters related to administration, consummation, enforcement, and interpretation of the Settlement and this Final Order, including, without limitation, for the purpose of:

    a.  enforcing the terms and conditions of the Settlement and resolving any disputes, claims, or causes of action that, in whole or in part, are related to or arise out of the Settlement or this Final Order (including, without limitation, whether a person or entity is or is not a Class Member and whether claims or causes of action allegedly related to the Action are or are not barred or released by this Final Order and the Settlement);

    b.  entering such additional orders, if any, as may be necessary or appropriate to protect or effectuate this Final Order and the Settlement, or to ensure the fair and orderly administration of the Settlement;

    c.  and entering any other necessary or appropriate orders to protect and effectuate the Court's retention of continuing jurisdiction;

    d.  ordering any additional discovery of objectors to the Settlement and presiding over any motions for appeal bonds;

7.      The Action is hereby dismissed with prejudice in its entirety, except to the extent that this Court has maintained continuing jurisdiction as stated above. Except as expressly granted by this Final Order and as set forth in the Settlement, it is adjudged that Plaintiffs and all Class Members take nothing by reason of the Action against Defendant, and their claims are hereby dismissed with prejudice. There is no just cause to delay appeal or enforcement of this Final Order.

**IT IS SO ORDERED.**

Dated: _____

                                     HON. DAVID O. CARTER
                                     U.S. DISTRICT COURT JUDGE